# Exhibit K

Sign in

# About Policies

## Summary

As an Apple employee, you are responsible for understanding and abiding by Apple policies and guidelines. You also are responsible for keeping informed of the additions and changes to these policies and guidelines.

After reviewing these policies and guidelines, talk to your manager or Human Resources representative if you have questions or need more information.

Violation of an Apple policy could result in disciplinary action, up to and including termination.

## Ethical Standards

Apple's ethical standards are just as important as Apple policies. Any time you become aware of a potential violation of any of the ethical standards as described in Apple's Business Conduct Policy, you must immediately notify Apple's Law Department,  your Human Resources representative (located on MyPage) or the Business Conduct Helpline.

## Guidelines for Policy Usage

**Policies Apply to All Employees**
These policies apply to all employees of Apple Inc. and participating subsidiaries in the United States. In the case of subsidiaries, portions of these policies may not apply or may be modified, as determined by that subsidiary.

Due to the limited duration of employment – generally for either a three-month or six-month assignment – certain policies may not apply to college interns.

# Exhibit L

Register | Log in



Enjoy complimentary
shipping on all orders

JOHN HARDY

MAIN MENU ▾    MY STORIES: 25 ▾    FORUMS    SUBSCRIBE    JOBS

# GEAR & GADGETS / PRODUCT NEWS & REVIEWS

## Bricks in iPod boxes: the retail employee perspective

The tech world is full of mysteries. We try to answer one of the least …

by Jacqui Cheng - July 12 2009, 11:30pm EDT          158

Rocks in iPod boxes. Bricks in MacBook boxes. Hell, we've even seen meat in iPod boxes.

We hear the stories every few months about some poor sap who thinks he's buying a new gadget from the store, only to discover a next-gen set of cement chips once he gets home and peels the plastic off. But how (and why) does this kind of thing happen? We spoke to three former retail employees to find out.

### Whodunnit

The thing we learned right off the bat is that this phenomenon has been going on for many, many years, though it received more coverage lately because of the blogosphere's popularity explosion. With more people buying music players, laptops, and other gadgets than ever and with more venues available to vent about bad experiences online, it's easy to raise a public outcry when this kind of thing happens.

"We had it happen a few times (mainly replaced by old or broken merchandise), and it was usually a judgment call regarding whether it was credible or not," said one former Cambridge Soundworks employee.

The general consensus, however, is that customers themselves are responsible for the large majority of these cases. People purchase an expensive item, take it home, replace it with bricks, and sometimes even shrinkwrap the box for a return. Many retail stores won't check a box that looks like it was never opened in the first place, making this an easy switch to pull.

"If you get the right customer service rep who's had a bad day—or perhaps even someone you know at the store—then return an item at the right time, they don't check the box and you get your money back," a former Circuit City employee named David told Ars. "Maybe the store is really busy and everyone is in a rush, and people just assume that with many electronics, the weight is enough proof."

Our three-man panel was split on the likelihood of employees being responsible for the switcheroo. David said that his time at Circuit City exposed him to lax return policies from manufacturer warehouses, and he said that there were many times when the store itself could just shrinkwrap a returned item to sell with an open box discount.

"You learn a few other tricks and you can have your own little electronics trade going on," he said. But the Cambridge Soundworks employee disagreed: "Employees have much easier ways of stealing merchandise—there's enough material there for another article altogether!"

Regardless of who's responsible, a former Apple Store employee also named David felt strongly that there's a reason certain chains have this problem more than others—varying inventory management policies. Apple apparently experiences this problem so little (if at all) that it's not even on the radar. Every single returned item must be inspected by a Genius at an Apple Store before taking it back, and Circuit City David agreed that items that have been shrinkwrapped at home still display telltale signs of being opened—an observant employee should be able to identify tampering even with a box that is still wrapped. The key is the "observant" part.

As for employee theft, Apple keeps its stockroom locked with more locked cages inside, and employees must sign out a key from a manager before gaining access to product. And that's not all. "All employees' bags had to be searched by a manager prior to leaving the store at the end of a



TOP FEATURE STORY ◢

FEATURE STORY (2 PAGES)

## Merge ahead? Why it's *not* time to converge your networks

Just because everything runs on IP doesn't mean one network can rule them all.

WATCH ARS VIDEO ◢

## Review: Tesla Motors all-electric Model S is fast—but is it a good *car*?

Ars drives a Model S for 500 miles to try to find the soul inside the machine.

STAY IN THE KNOW WITH ◢

LATEST NEWS ◢

shift," Apple David said. "Any personal tech gear had to be registered with the store, and a manager would issue a 'personal technology card' with your items and their serial numbers, which would be checked every time you left the building with said gear."

Still, when you find yourself with a box full of masonry instead of a laptop, the store's lax inventory management policies are often at the bottom of your list of worries for the moment. Everyone we spoke to recommended either opening the box in the store ("You might look like a douche when stepping aside to open your new gadget, but making sure you actually got your money's worth is rarely a bad idea," Circuit City David said), or calling immediately upon discovery. One person also suggested that requesting another unit instead of a refund can go a long way to back up your claim that you're a victim and not the victimizer.

We have many readers who spent at least some time selling electronics in their youth—what are your experiences with this kind of thing? Can you top the meat story? Have any tips to offer cautious buyers?

READER COMMENTS 158



0 0 0 0 submit
Like 1 g+1 Tweet

Jacqui Cheng / Jacqui is an Editor at Large at Ars Technica, where she has spent the last eight years writing about Apple culture, gadgets, social networking, privacy, and more.
Follow @ejacqui

← OLDER STORY        NEWER STORY →

YOU MAY ALSO LIKE ⌐


Ars readers react to extinct businesses and imaginary IT projects


17 things we learned from Sony's massive PS4 FAQ


Skeptics say LA's free fiber plan as plausible as finding a unicorn


Apple's iCloud Keychain: It works, but with frustrating limitations


Op-ed: Lavabit's founder responds to cryptographer's criticism


An interview with J Craig Venter, the man who sequenced the human genome


Apple's claim that iCloud can store passwords "only locally" seems to be false


Lawmakers blast patent trolls, but split on parts of a key bill


The Xbox One and PS4 share similar specs, but the devil's in the details


How to choose: 13-inch MacBook Air vs. 13-inch retina MacBook Pro


Infant immune systems set on low to encourage microbiome growth


Internet Explorer users face drive-by attacks targeting new 0-day bug (Updated)


Microsoft shouldn't hire any CEO who wants to kill Bing and Xbox


UK spies continue "quantum insert" attack via LinkedIn, Slashdot pages


Desktop Management Suite
ManageEngine.com/DesktopMan…
Install MSI/EXE, Remote Control, Patch & Asset Management. Download!

Nexus 7 from $229

ULINE - Gift Boxes

SITE LINKS
About Us
Advertise with us
Contact Us
Reprints
SUBSCRIPTIONS

MORE READING
RSS Feeds
Newsletters

CONDE NAST SITES
Reddit
Wired
Vanity Fair
Style
Details

Subscribe to Ars

Visit our sister sites

Subscribe to a magazine

VIEW MOBILE SITE

© 2013 Condé Nast. All rights reserved.
Use of this Site constitutes acceptance of our **User Agreement** (effective 3/21/12) and **Privacy Policy** (effective 3/21/12), and **Ars Technica Addendum (effective 5/17/2012)**
**Your California Privacy Rights**
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

**Ad Choices**▷

# Exhibit M

KIMBERLY A. KRALOWEC (Cal. Bar No. 163158)
THE KRALOWEC LAW GROUP
188 The Embarcadero, Suite 800
San Francisco, Ca 94105
Telephone:    (415) 546-6800
Facsimile:    (415) 546-6801
*kkralowec@kraloweclaw.com*

LEE S. SHALOV (admitted *pro hac vice*)
BRETT GALLAWAY (admitted *pro hac vice*)
Mclaughlin & Stern, LLP
260 Madison Avenue
New York, Ny  10016
Telephone:    (212) 448-1100
Facsimile:    (212) 448-0066
*lshalov@mclaughlinstern.com*
*bgallaway@mclaughlinstern.com*

LOUIS GINSBERG (admitted *pro hac vice*)
LAW FIRM OF LOUIS GINSBERG, P.C.
1613 Northern Blvd.
Roslyn, Ny  11576
Telephone:    (516) 625-0105 X.13
*lg@louisginsberglawoffices.com*

*Attorneys for Plaintiffs Amanda Frlekin, Dean Pelle,*
*Adam Kilker, Brandon Fisher and the Putative Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN and DEAN PELLE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 13-cv-3451-WHA<br><br>**DECLARATION OF MELODY IDAKAAR IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| ADAM KILKER and BRANDON FISHER on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 13-cv-3775-WHA |

I, Melody Idakaar, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1)      I am a resident of Livingston, New Jersey.  I have opted into this action by filing a consent form to be a party plaintiff and I submit this Declaration based upon my own person knowledge and experience in support of Plaintiffs' motion to the Court for an order permitting Court supervised notification to potential class members.

2)      I was employed by Defendant Apple, Inc. ("Apple") to work in their retail store located at 767 Fifth Avenue, New York, NY 10153, as a part-time hourly paid Specialist from in or around May of 2011 until in or around April of 2012 and as a full-time hourly paid Specialist from in or around April of 2012 until in or around March of 2013.  As a part-time employee for Apple, I usually worked more than 40 hours per week during product launches and the holiday season and as a full-time employee I worked more than 40 hours per week on a regular basis.

3)      My job duties as a Specialist employed by Apple included, but were not limited, to floor sales, greeting customers, working at the cash wrap, being an assistant presenter for field trips in the Apple store, and general customer service.

4)      From the start of my employment at Apple in or around May of 2011 until in or around July of 2012, I was paid an hourly rate of $14.00.  From in or around July of 2012 until the end of my employment with Apple in or March of 2013, I was paid an hourly rate of $17.00.

5)      As a full-time Specialist, I worked an average of 42-46 hours per week at Apple.  In addition, as a part-time Specialist, I worked up to 40-42 hours per week at Apple during a product launch or the holiday season and an average of 33-35 hours per week at Apple during the non-holiday or non-product launch seasons.  These total hours include time spent undergoing and waiting for "personal package and bag searches" and "personal technology card" checks.  To date, I have not been compensated for all of this time.

6)      When I was initially hired by Apple, I was given a copy of an Apple Training

Manual. I understood that the policies and procedures contained within the Apple Training Manual applied to myself and all other hourly paid Apple retail store employees.

7)   I was verbally instructed by Apple Managers to clock out prior to leaving the store and subjecting myself to the security checks referred to as "personal package and bag searches" and a "personal technology card" check. As a result, during every shift of my employment at Apple, I clocked out prior to undergoing a "personal package and bag search" and "personal technology card" check when taking a meal break and at the end of my shift. Among the numerous Managers and Security Guards, with knowledge of this were Aaron Mounier, Claudio Masseli and Sheba George.

8)   It was widely known by all Apple hourly paid employees that we would have to clock out prior to undergoing a "personal package and bag search" and "personal technology card" check.

9)   I understood that failure to comply with this policy could lead to disciplinary action, up to and including termination.

10)   The "personal package and bag searches" were conducted every time I left the store and required me to find a manager or security guard that was not already assisting a customer. If a security guard was available then the security guard would search the contents of my bags to ensure I had not stolen any merchandise. If a security guard was not available, I had to find a manager who would then have to find another security guard who would then search the contents of my bags to ensure I had not stolen any merchandise.

11)   In addition, that same security guard also had to check my "personal technology card" which contains my name, the Apple product I own and occasionally brought to work (a Macbook Pro), and the serial number of my Macbook Pro. The security guard then compared the serial number on my "personal technology card" with the serial number on my Macbook Pro to ensure I was only leaving with my personal Apple product.

12)   All together, the "personal package and bag search" and "personal technology card" check would often take approximately 13 – 20 minutes per shift to complete. This time was even longer if the security guard was not where he was supposed to be and/or if a large number of

employees were leaving the store at the same time, thus creating a long line of employees waiting to have their bags searched and personal Apple products checked before they were able to leave the store. As a result, I was subjected to waits of as much as 30 minutes off-the-clock at the end of a shift in order to undergo these security checks. Furthermore, customers were never subjected to these security checks, only Apple employees would be forced to undergo these security checks.

13) There were at least 900 individuals employed at my Apple retail store location. Out of these 900 individuals, there would be at least 350 hourly-paid employees working on each shift, and only about 10 managers and 10 security guards on the shift. Given these unequal staffing numbers and the fact that shifts often ended at the same time, many employees were often waiting on long security check lines with me. I was not compensated for any of this time spent waiting or undergoing security checks.

14) I believe that I should have been compensated for the time I spent waiting for and undergoing these security checks. These "personal package and bag search" and "personal technology card" checks were beneficial to Apple as they prevented and deterred stealing amongst Apple retail store employees. The retail store employees, like myself, received no benefit from being forced to subject ourselves to the uncompensated searches every time we left the store.

15) These searches occurred every time I left the store, for either a rest break, meal break, or at the end of my shift. These searches took a substantial amount of time to complete. During any given week as a part-time employee of Apple, I would spend approximately 52-80 minutes waiting in line for and undergoing these uncompensated security checks, and during any given week as a full-time employee of Apple, I would spend approximately 65-100 minutes waiting in line for and undergoing these uncompensated security checks. Over the entire course of my employment with Apple, I have likely been forced to wait for and undergo these uncompensated security checks for approximately 68-105 hours.

16) Because these security checks should have been, but were not compensated for all Apple retail store employees, I have voluntarily opted-in to this lawsuit in order to recover these earned but unpaid straight and overtime wages.

Dated: November 8, 2013

Melody Idakaar

# Exhibit N

/ like [] reply []

**joshuarayer [http://www.cnet.com/profile/joshuarayer]** Jul 30, 2013

Everyone, IT ISNT JUST A BAG CHECK. They also check the serial numbers of all your iDevices that you bring into the store to make sure you arent trying to walk out with a stores iDevice. When you first start working at an Apple retail store, they give you a card that you right down your iDevice serial numbers on, a manager checks it to make sure it matches the serial on your devices and then signs the card to show it was approved/seen/verified by a manager. Every time you leave the store, for a break or getting off the clock, they have to make sure any iDevice you have on you, the serial matches the number written on that card that you keep on you. I worked at an Apple retail store 4 years and this is what they were doing.

11/11/13      MacRumors Forums - View Single Post - Apple Retail Employees File Class Action Lawsuit Over 'Bag Check' Lost Wages

Case5:13-cv-03451-WHA Document67-3 Filed11/13/13 Page15 of 76



MacRumors
news and rumors you care about

| Front Page | Mac Blog | iOS Blog | Roundups | Buyer's Guide | Forums | | Search Forums... |
| Register | FAQ / Rules | Community ▽ | | Forum Spy | Today's Posts | Search ▽ |

You are *viewing* a *single* post from a *discussion thread* on *MacRumors Forums*.

---

**View Single Post**      View Entire Thread: <u>Apple Retail Employees File Class Action Lawsuit Over 'Bag Check' Lost Wages</u>

🗐 Jul 30, 2013, 12:22 AM      #473

**mabhatter**
macrumors 6502

Join Date: Jan 2009

> Quote:
> Originally Posted by **Mr Rabbit** 🗐
> *The problem though is that it's not just "bag checks", you are issued a tech card that carries the make and serial number of any Apple branded technology you bring into work. This includes iPhones, iPads, iPods, Macs, etc. Having to wait ten minutes after clocking out, on an always busy sales floor, people bumping into you, etc just so a manager can glance at your phone & card (rarely actually checking the numbers) to allow you to leave gets to be frustrating as hell after a while. Honestly at the end of the night it was rarely a problem since the managers were MUCH less occupied with pressing issues, i.e. customers.*
>
> *Other managers if there were two at the end of a shift or one of the last employees leaving as the manager locks up. Almost always performed outside the glass doors to ensure no theft.*

Just make sure your personal phone is a Samsung!

○      0 🔼

[ Close this window ]

Case3:13-cv-03451-WHA Document67-8 Filed11/13/13 Page16 of 76



| Front Page | Mac Blog | iOS Blog | Roundups | Buyer's Guide | Forums | Search Forums... |
|---|---|---|---|---|---|---|
| Register | FAQ / Rules | | Community ▽ | Forum Spy | Today's Posts | Search ▽ |

You are *viewing* a *single* post from a *discussion thread* on *MacRumors Forums*.

| **View Single Post** | **View Entire Thread:** Apple Retail Employees File Class Action Lawsuit Over 'Bag Check' Lost Wages |
|---|---|
| 🖪 Jul 30, 2013, 12:31 AM | #474 |

**bedifferent**
macrumors Demi-God

Join Date: Jan 2009
Location: NY

Absolutely. Years back I was in retail management for Apple, we got hammered on employee theft and shrinkage. We weren't nearly as busy as they are today, even still employees had to clock out online in order to be checked out. Myself being diabetic, I have to bring a messenger bag to work for my test kit and insulin in addition to work related documents. Even as manager, we had to be examined before leaving, which cut my hourly by 15-20 minutes, resulting in blood sugar levels becoming a bit off as I had little time to eat and make adjustments.

This isn't about whiny or entitled individuals, it is simply a matter of policy. There is always a back end manager in the office, etc. who can easily check bags as part-time specialists leave. It does add up, and Apple certainly has been aware of the matter for quite a long time. They're a corporate entity, they will do whatever they can to squeeze every last penny from customers and employees. Not news. People used to take it at face value, now people have become empowered by the internet through petitions, determining if legal action is applicable, then find an attorney.

People complain about "unions" while forgetting that unions were established in the face of corporate workplace abuse. Without the efforts of many before us, we would have less recourse in our employment conditions. Now, instead of unions, we have class action lawsuits. The irony.

_____

*Any sufficiently advanced technology is indistinguishable from magic.*

Arthur C. Clarke

2 🔼

| Close this window |

**jman225**

Joined: Jun 2013
Posts: 6

offline

Having worked at an apple store in the past for 2 years I can promise you this is a big deal for employees. They preach "assume positive intent" yet don't practice it. Every time you leave the building you are required to show your iPhone serial number and a "tech card" which has their devices serial number on it and is singed by a manager. Being in a very busy store, it's never easy to find a manager to "check you out". They're always doing something and sometimes that process takes 10 minutes or more. Not cool when you have a 15 minute break and need to be back on time to support your team.

Reply

Apple slapped with lawsuit over mandatory employee bag checks | Apple...      http://news.cnet.com/8301-13579_3-57596064-37/apple-slapped-with-l...

/ **like []reply []**

**joshuarayer [http://www.cnet.com/profile/joshuarayer]** Jul 30, 2013

**@Tastidian [http://www.cnet.com/profile/Tastidian]** Checking the serial doesnt take too
long, but in some stores that are always extremely busy like the store I worked at(Orlando so

Case3:13-cv-03451-WHA   Document67-3   Filed11/13/13   Page19 of 76

lots of tourists all the time), it could take some time before a manager can be made available to check your devices. And at night, everyone has to leave together so there could be 10 employees that all have to be checked at the same time before everyone leaves.

 David August 3, 2013 at 1453

When I was with Apple retail, my store was quite diligent with breaks and ensure all breaks were taken regardless of how busy it was with the purpose of avoiding a lawsuit.

I would agree about the bag check issue though. I have nothing against them and feel they are entirely appropriate, but management at my store and evidently at other stores showed an utter disregard for our personal time. In order to get a bag check you need to be punched out, then you need to run around a crowded store to find a manager. Often time, the manager on the floor will be interacting with a customer and will not briefly pause the interaction for a bag check. Some managers get annoyed too when you're off to the side waiting for them to check your bags. Also if you called the manager's office to ask if someone can come out to perform bag checks because the managers on the floor are busy, they would often make some snarky remarks and act as if we've seriously inconvenienced them.

Due to the traffic in our store, it was not unusual for employees to leave 30 minutes beyond the end of their shift, and we would obviously not be compensated for that time. Also, employees got so fed up with waiting that many simply lied about not having any Apple technology on their person and would leave without having their tech cards checked during breaks.

Reply

# Exhibit O

**REDACTED**

Begin forwarded message:

**From:** REDACTED
**Subject: Clarification of tech check policy?**
**Date:** November 5, 2012 at 3:27:25 PM EST
**To:** crossgates@apple.com

Hi Leadership Team,

I'm writing to ask for clarification of the tech checks policy. I understand that store policy is to perform a personal technology check every time an employee leaves the store. My concern is that since it's a work-related activity, tech checks shouldn't be performed off the clock or while on break. There is an obvious issue here - the point of the policy is to prevent employees from accidentally walking off with store property, but we often have to wait for minutes at a time because of how busy the store has become. If we are being paid for this (since it's a work requirement), it's not a problem, but then we have to go in the back of the store (where there's inventory) to clock out, which seems to negate the effectiveness of the whole policy.

Should we be off the clock when waiting for a tech check, or perform the tech check on the floor, clock out in back, and then leave the store? Should our 15s start (if we are leaving the store) before or after the tech check on the floor? Based on my knowledge of cases like this with major retailers, I am trying to help Apple to avoid a lawsuit by pointing out this potential problem.

REDACTED

# Exhibit P

LONNIE C. BLANCHARD, III (SBN 93530)
JEFFREY D. HOLMES (SBN 100891)
THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:   (213) 599-8255
Fax:             (213) 402-3949
Email:         lonnieblanchard@gmail.com

**DK** PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:   (818) 883-4900
Fax:             (818) 883-4902
Email:         peter@dion-kindemlaw.com

Attorneys for Plaintiff Taylor Kalin, the Classes
and Aggrieved Employees

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| Taylor Kalin, individually and on behalf of all the classes and aggrieved employees, | Case No. |
|---|---|
| Plaintiff, | **Class, Collective and Representative Action Complaint:** |
| vs. | 1.   Failure To Pay Wages |
| Apple, Inc., | 2.   Fair Labor Standards Act Violations |
| Defendant. | 3.   Waiting Time Penalties |
| | 4.   Wage Statement Violations |
| | 5.   Unfair Competition |
| | 6.   Civil Penalties under the Private Attorneys General Act (Labor Code § 2698 *et seq.)* |
| | **Demand for Jury Trial** |

**Class, Collective and Representative Action Complaint**

1

Plaintiff Taylor Kalin ("Plaintiff") brings this Class, Collective and Representative Action Complaint against Defendant Apple, Inc. and on information and belief alleges as follows:

### JURISDICTION

1. Plaintiff, on behalf of himself and all others similarly situated and aggrieved employees, brings this class, collective, and representative action for recovery of unpaid wages and penalties under California Labor Code Sections identified below, Industrial Welfare Commission Wage Order No. 4 ("IWC Wage Order"), California Business and Professions Code Section 17200, *et seq.,* and the Fair Labor Standards Act ("FLSA") and for injunctive relief, declaratory relief, and restitution.

2. This Court has jurisdiction over Defendant's violations of the FLSA pursuant to 29 U.S.C. Section 216 and 28 U.S.C. Section 1331 because the action asserts rights arising under federal law.

3. This Court has jurisdiction over Defendant's violations of the state law provisions alleged herein because these claims derive from the same common nucleus of operative facts as the FLSA claim.

4. Defendant is subject to the personal jurisdiction of this Court pursuant to 28 U.S.C. Section 1391(c) because it operated retails stores where it employed Plaintiff within the Northern District of California.

### VENUE

5. Venue is proper in the Northern District of California under 28 U.S.C. Section 1391 because Apple is headquartered in this judicial district and a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

6. This matter is properly assigned to the San Francisco Division of this District

**Class, Collective and Representative Action Complaint**

pursuant to Civil Local Rule 3-2(c) because Defendant maintains numerous retail stores within the counties comprising the San Francisco Division and employs numerous hourly non-exempt employees at those locations, who, on information and belief, were subjected to Defendant's illegal policies and practices alleged in this action. As stated in Defendant's written rules, the mandatory personal package and bag search policy "appl[ies] to all employees of Apple Inc. and participating subsidiaries in the United States." *See* Apple Employee Policies. Therefore, a substantial part of the events or omissions that give rise to the claims occurred within this Division within the meaning of Civil Local Rule 3-2(c).

## PARTIES

7.      Plaintiff is a California resident residing in San Francisco County. During the four years immediately preceding the filing of the Complaint in this action and within the statute of limitations periods applicable to each cause of action pled herein, Plaintiff was employed by Defendant as an hourly non-exempt employee. Plaintiff has lost money and/or property and has been deprived of the rights guaranteed to him by the FLSA, California Labor Code provisions, California Business and Professions Code Section 17200 *et seq.* (Unfair Competition), and California Industrial Welfare Commission Wage Order 4-2001 (hereafter "Wage Order 4-2001").

8.      Defendant Apple, Inc. is a California corporation that is headquartered in California. During the four years preceding the filing of the Complaint and continuing to the present, Defendant operated retail stores in California and elsewhere within the United States and the world.

## GENERAL FACTUAL ALLEGATIONS

9.      For the purposes of this matter, Class Members include, but are not limited to, Kalin and all non-exempt employees who were employed by Apple as non-exempt

**Class, Collective and Representative Action Complaint**

3

Specialists, Lead Specialists and Expert Specialists ("Specialists") and non-exempt Managers, Senior Managers, Developmental Managers and Business Managers ("Managers,"). Specialists and Managers are collectively referred to as Hourly Employees.

10.    A Specialist's duties include customer support relating to retail sales of Apple products and accessories. Specialists are also required to have knowledge of and be able to perform light diagnostic checks on Apple hardware and software. A Manager's duties include overseeing the Specialists and tending to customer-related needs. Specialists and Managers are non-exempt hourly employees who are entitled to overtime compensation.

11.    Plaintiff was employed by Defendant as a full-time non-exempt Specialist at stores in Spokane and San Francisco from approximately September 2010 to November 2012.

12.    Hourly Employees are required to clock in when they arrive at work, clock out when they go on a meal break, clock in when they return from a meal break and clock out when they leave for the day. The time-keeping system and the procedures for using it are the same at each Apple retail store. In this regard, Apple uses time tracking software developed by Kronos, Inc. The software requires Hourly Employees to enter a username and password to clock in and clock out each day.

13.    Kalin typically was required to arrive 15 minutes or more before his shift was scheduled to begin because there was typically a line of employees waiting to clock in on time and he never knew how long the line would be. On Launch days, it would take up to 30 minutes or more to clock in because of the lines. Similarly, when Hourly Employees returned from their meal periods, they were required to wait in line to clock in.

14.    Apple did not compensate Kalin or the other Hourly Employees for the time they

**Class, Collective and Representative Action Complaint**

4

were required to spend waiting in line to clock in.

15. Kalin and other Hourly Employees were required to use company devices at work. Kalin and other Hourly Employees were required by Apple to check the devices out at the beginning of their shift and check the devices back in at beginning of the meal period if they left the premises and at the end of the shift, after the employees had clocked out. Because many Hourly Employees were required to do this, the check-in time could take anywhere from five to 45 minutes or more.

16. After they had clocked out at the end of their shifts or at the beginning of the meal breaks, after they checked in the devices, Kalin and other Hourly Employees were required to undergo personal package and bag searches before they were permitted to leave the store.

17. Apple has adopted a uniform nationwide policy that provides "[a]ll employees, including managers and Market Support employees, are subject to personal package and bag searches." *See* Apple Employee Conduct Manual. If an Hourly Employee refuses to submit to this security screening or deviates from the corporate policy in any way, it "could result in disciplinary action, up to and including termination." *See* Apple Employee Policies. Hourly Employees were and are required to wait in line and be searched for potential or possible store items or merchandise taken without permission and/or other contraband. Thus, at the discretion and control of the Defendant and solely for its benefit, Plaintiff and other Hourly Employees were and are required to wait in line for security checks for at least 10-15 minutes each day before leaving for their meal breaks and at the end of their shift after they had already clocked out. This daily 10-15 minute uncompensated waiting time during security checks was done in order to undergo searches for possible contraband and/or pilferage of inventory. Because such screening is designed to prevent and deter employee theft, a concern that stems from the nature of the employee's work (specifically, their access to high value

**Class, Collective and Representative Action Complaint**
5

electronics and merchandise), the security checks and consequential wait time are necessary to the employee's primary work and done solely for Apple's benefit.

18.     A large number of Specialists and Managers leave for lunch at the same time and/or end their shifts at the same time. This creates lengthy lines and backups for managers, members of the security team and others authorized to conduct security screenings who are often times engaged in other job related duties. As a result, Hourly Employees are forced to wait in these lines and undergo lengthy off-the-clock security screenings before they are allowed to leave the premises. This work, done primarily for the employer's benefit, is time which Hourly Employees should be, but are not compensated for, both straight hours and overtime hours worked in excess of 40 in a week or, in California, in excess of eight in a day.

19.     Apple's corporate employee conduct policy mandates and requires that Specialists "[f]ind a Manager or member of the security team (where applicable) to search [their] bags and packages before [they] left the store." *See* Apple Employee Conduct Manual. Additionally, the policy forbids Specialists and Managers from leaving the store "prior to having [their] personal package or bag searched by a member of management or the security team (where applicable)." *Id.*

20.     These policies are uniform throughout every Apple retail store and "apply to all employees of Apple Inc. and participating subsidiaries in the United States." *See* Apple Employee Policies. Thus, these uncompensated wait times and security screenings unlawfully deprive Hourly Employees in Apple's retail stores throughout the country of the proper compensation due them.

21.     Waiting in lines to clock in, waiting in lines to check equipment in, and waiting in line and undergoing security checks were significant, integral, indispensable, not de minimis tasks or requests and were done solely for Apple's benefit to allow Apple to track its employees' hours and to prevent employee pilferage.

22.     Apple did not compensate Kalin or the Hourly Employees for this time.

**Class, Collective and Representative Action Complaint**

23. Defendant knowingly and intentionally, as a matter of uniform policy and practice, failed to furnish Plaintiff and members of the Wage Statement Class with accurate and complete wage statements regarding their regular rates of pay, rates of overtime pay, total gross wages earned, and total net wages earned in violation of Labor Code Section 226.

24. Defendant's failure to furnish Plaintiff and members of the Wage Statement Class with complete and accurate itemized wage statements resulted in actual injury because such failures led to, among other things, the non-payment of all their regular and overtime wages and deprived them of the information necessary to identify the discrepancies in Defendant's reported data.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

25. **Class Definition:** Plaintiff brings this action on behalf of himself and the following Classes pursuant to Rule 23 of the Rules of Federal Procedure and the FLSA.

26. **The California Unpaid Wages Class.** This consists of:

> All Hourly Employees who worked in an Apple, Inc. retail store in the United States, who are or were employed within the three years preceding the filing of this action by the Defendant to the present and who were: (a) not compensated for off-the-clock time spent waiting to clock in, waiting to check in equipment, or waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over eight per day and/or over 40 hours per week at overtime rates.

> Excluded from the California Unpaid Wages Class are Defendant, its legal representatives, officers, directors, assigns, and successors, and any individual who has or had a controlling interest in Apple. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Class.

27. **The FLSA Class.** This consists of:

**Class, Collective and Representative Action Complaint**

7

All Hourly Employees who worked in an Apple, Inc. retail store in the United States, who are or were employed within the three years preceding the filing of this action by the Defendant to the present and who were: (a) not compensated for off-the-clock time spent waiting to clock in, waiting to check in equipment, or waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over 40 hours per week at overtime rates.

Excluded from the FLSA Class are Defendant, its legal representatives, officers, directors, assigns, and successors, and any individual who has or had a controlling interest in Apple. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Class.

28.   **The Wage Statement Class.** This consists of members of the California Unpaid Wages Class for whom Defendant failed to pay all compensation owing them.

29.   **The Waiting Time Penalty Class.** This consists of Defendant's formerly employed members of the California Unpaid Wages Class.

30.   **Numerosity/Ascertainability.** The members of the Classes are so numerous that joinder of all members would be unfeasible and impracticable. The membership of the classes and subclasses are unknown to Plaintiff at this time, but Plaintiff estimates that the Classes number greater than 1,000 individuals as to each Class. The identity of such membership is readily ascertainable via inspection of Defendant's employment records.

31.   **Common Questions of Law and Fact Predominate/Well Defined Community of Interest.** There are common questions of law and fact as to Plaintiff and all other similarly situated employees, which predominate over questions affecting only individual members including, without limitation to:

A.   Whether Defendant violated the applicable Labor Code provisions including, but not limited to Sections 510 and 1194 by failing to pay for all regular and/or overtime hours worked;

**Class, Collective and Representative Action Complaint**

8

B.    Whether Defendant failed to keep legally compliant records for the members of the Wage Statement Class pursuant to Labor Code 226;

C.    Whether Defendant failed to maintain accurate records for members of the Record Keeping Class;

D.    Whether Defendant's policies and/or practices for the amount of payment of final wages to members of the Waiting Time Class at the time of the termination of their employment were unlawful;

32.    **Predominance of Common Questions.** Common questions of law and fact predominate over questions that affect only individual members of the Classes. The common questions set forth above are numerous and substantial and stem from Defendant's policies and/or practices applicable to each individual class member, such as their failure to pay for time waiting to clock-in, time waiting to check-in equipment, and/or time waiting in security lines. These common questions predominate over individual questions concerning each individual class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

33.    **Typicality:** Plaintiff's claims are typical of the claims of the Classes because Plaintiff was employed by Defendant as an hourly, non-exempt employee in California and the United States during the statutes of limitation applicable to each claim alleged in the Complaint in this action. Plaintiff, like the members of the Classes, was deprived of all regular and overtime wages, was furnished with inaccurate and incomplete wage statements, and was not paid all wages owed at the time of Plaintiff's termination.

34.    **Adequacy of Representation:** Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Classes. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent the members of the Classes and Plaintiff. Plaintiff's attorneys have

**Class, Collective and Representative Action Complaint**

9

prosecuted numerous wage-and-hour class actions in state and federal courts in the past and are committed to vigorously prosecuting this action on behalf of the members of the classes.

35. **Superiority:** The California Labor Code is broadly remedial in nature and serves an important public interest in establishing minimum working conditions and standards in California. Similarly, the FLSA is remedial in nature and serves an important public interest in establishing minimum working conditions and standards through the United States. These laws and labor standards protect the working employee from exploitation by employers who have the responsibility to follow the laws and who may seek to take advantage of superior economic and bargaining power in setting onerous terms and conditions of employment. The nature of this action and the laws available to Plaintiff and members of the Classes make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each employee were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual plaintiff with their vastly superior financial and legal resources. Moreover, requiring each member of the Classes to pursue an individual remedy would also discourage the assertion of lawful claims by employees who would be disinclined to file an action against their former and/or current employer for real and justifiable fear of retaliation and permanent damages to their careers at subsequent employment. Further, the prosecution of separate actions by the individual class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual class members against Defendant herein; and which would establish potentially incompatible standards of conduct for Defendant; and/ or legal determinations with respect to individual class members which would, as a practical matter, be

**Class, Collective and Representative Action Complaint**

dispositive of the interest of the other class members not parties to adjudications or which would substantially impair or impede the ability of the class members to protect their interests. Further, the claims of the individual members of the class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

36.     As such, the Rule 23 Classes identified above are maintainable as a Class under Rule 23(b)(l) and/or Rule 23(b)(3).

<u>**First Claim for Relief - Failure To Pay Wages**</u>
<u>**(On Behalf of Plaintiff and the California Unpaid Wages Class)**</u>

37.     Plaintiff re-alleges paragraphs 1 through 36.

38.     This cause of action is brought on behalf of the California Unpaid Wages Class pursuant to Labor Code Sections 204, 510, 1194, and 1198, which provide that hourly non-exempt employees are entitled to all overtime wages and compensation for hours worked and provide a private right of action for the failure to pay all compensation for regular and overtime work performed.

39.     Plaintiff and members of the California Unpaid Wages Class worked hours for which they were not compensated, including overtime hours.

40.     Defendant's policy and practice of failing to pay Plaintiff and members of the California Unpaid Wages Class for time spent waiting to clock in, time spent waiting to check in equipment, and/or time spent waiting in security lines violates California labor laws, and Plaintiff and members of the California Unpaid Wages Class are entitled to the unpaid wages owed, including interest thereon, statutory penalties, civil penalties, attorney's fees, and costs of suit.

<u>**Second Claim for Relief - FLSA Violations**</u>
<u>**(On Behalf of Plaintiff and the FLSA Class)**</u>

41.     Plaintiff re-alleges paragraphs 1 through 40.

**Class, Collective and Representative Action Complaint**
11

42. This claim is brought pursuant to 29 U.S.C. Sections 206 and 207.

43. Plaintiff and members of the FLSA Class worked hours for which they were not compensated and/or worked in excess of 40 hours per workweek.

44. Defendant's policy and practice of failing to pay Plaintiff and members of the FLSA Class for time spent waiting to clock in, time spent waiting to check in equipment, and/or time spent waiting in security lines violates the FLSA's wage and overtime requirements including, but not limited to 29 U.S.C. Sections 206 and 207.

45. Defendant's policies and practices constitute a willful violation of the FLSA, within the meaning of 29 U.S.C. Section 255.

46. Plaintiffs and members of the FLSA Class are entitled to unpaid wages and/or overtime owing, including liquidated damages, attorney's fees, costs, and interest.

**Third Claim for Relief - Waiting Time Penalties**
**(On Behalf of Plaintiff and the Waiting Time Penalty Class)**

47. Plaintiff re-alleges paragraphs 1 through 46.

48. Labor Code Section 201 provides in relevant part:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately...

49. Defendant violated Section 201 as to members of the Waiting Time Penalty Class who were discharged by willfully failing to pay the wages earned and unpaid upon the termination of their employment, including unpaid wages for regular hours worked, unpaid overtime, unpaid meal premiums and/or unpaid rest period premiums in the manner required by Section 201.

50. Labor Code Section 202 provides:

> If an employee not having a written contract for a definite period quits hish or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous

**Class, Collective and Representative Action Complaint**

12

notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. .

51. Defendant violated Section 202 as to Plaintiff and members of the Waiting Time Penalty Class who quit by willfully failing to pay the wages earned and unpaid upon the termination of their employment, including unpaid wages for regular hours worked, unpaid overtime, unpaid meal premiums and/or unpaid rest period premiums in the manner required by Section 202.

52. Plaintiff and members of the Waiting Time Penalty Class are entitled to compensation pursuant to Labor Code Section 203, plus reasonable attorney's fees and costs of suit.

### Fourth Claim for Relief - Wage Statement Violations
### (On Behalf of Plaintiff and the Wage Statement Class)

53. Plaintiff re-alleges paragraphs 1 through 52.

54. Defendant knowingly and intentionally, as a matter of uniform policy and practice, failed to furnish Plaintiff and members of the Wage Statement Class with accurate and complete wage statements regarding their hours worked, total gross wages earned, and total net wages earned in violation of Labor Code Section 226.

55. Defendant's failure to furnish Plaintiff and members of the Wage Statement Class with complete and accurate itemized wage statements resulted in actual injury because such failures led to, among other things, the non-payment of all their regular and overtime wages and deprived them of the information necessary to identify the discrepancies in Defendant's reported data.

56. Plaintiff and members of the Wage Statement Class are entitled to damages and/or penalties pursuant to Labor Code Section 226, including statutory penalties, civil penalties, reasonable attorney's fees, and costs of suit.

**Class, Collective and Representative Action Complaint**

13

**Fifth Claim For Relief - Unfair Competition**
**(On Behalf of Plaintiff and All Classes)**

57.   Plaintiff re-alleges paragraphs 1 through 56.

58.   In doing the acts alleged above, Defendant have engaged and continue to engage in unfair and/or unlawful business practices in California in violation of California Business and Professions Code Section 17200 *et seq.*

59.   Defendant's unfair and/or unlawful business practices have deprived Plaintiff and members of the classes compensation and/or moneys to which they are legally entitled

60.   Plaintiff and members of the Classes are entitled to restitution of all moneys withheld, acquired and/or converted by the Defendant pursuant to Business and Professions Code Sections 17203 and 17208.

61.   The acts complained of herein occurred within the last four years immediately preceding the filing of the Complaint in this action.

62.   Plaintiff was compelled to retain the services of counsel to file this court action to protect Plaintiff's interests and those of the Classes and to enforce important rights affecting the public interest. Plaintiff is entitled to recover attorney's fees and costs pursuant to Code of Civil Procedure Section 1021.5.

**Sixth Claim for Relief - Penalties Pursuant to the Private Attorney General Act**

63.   Plaintiff re-alleges paragraphs 1 through 62.

64.   Pursuant to Labor Code Sections 2698, *et seq.*, the Private Attorney General Act of 2004 ("PAGA"), Plaintiff is entitled to recover civil penalties on behalf of himself and other persons who are or were employed by the alleged violator and against whom one or more of the alleged violations was committed.

65.   One or more of the alleged violations alleged herein was committed against Plaintiff, and Plaintiff is therefore an "aggrieved employee" under Labor Code Section 2699(c), which provides in relevant part:

**Class, Collective and Representative Action Complaint**

(c) For purposes of this part, "aggrieved employee" means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.

66. As alleged above, Defendant have committed Labor Code violations against Plaintiff, members of the Classes, and other aggrieved employees.

67. Plaintiff's attorney gave written notice by certified mail to the Labor and Workforce Development Agency ("LWDA") and to the Defendant identifying violations alleged herein. Once thirty-three days have passed from the date of the mailing of the notice, Plaintiff will seek leave to amend this Complaint to allege exhaustion of the administrative requirements for bringing a claim under PAGA.

68. Labor Code Section 2699(g) provides that any "employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Plaintiff has incurred attorney's fees and costs in pursuing this claim.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment for himself and for all others on whose behalf this suit is brought against Defendant as follows:

1. For an order certifying the proposed Classes;

2. For an order appointing Plaintiff as representative of the Classes;

3. For an order appointing Counsel for Plaintiff as Counsel for the Classes;

4. For compensatory damages according to proof;

5. For liquidated damages according to proof;

6. For statutory damages according to proof;

7. For civil penalties according to proof;

8. For restitution according to proof;

9. For injunctive relief according to proof;

10. For costs and attorney's fees according to proof;

11. For prejudgment interest according to proof;

**Class, Collective and Representative Action Complaint**

15

12.     For such other and further relief the Court may deem just and proper.

Dated: October 8, 2013                THE DION-KINDEM LAW FIRM

BY: _____
        PETER R. DION-KINDEM, P.C.
        PETER R. DION-KINDEM
        Attorneys for Plaintiff Taylor Kalin

**Class, Collective and Representative Action Complaint**

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Plaintiff demands a jury trial in this case.

3

Dated: October 8, 2013          THE DION-KINDEM LAW FIRM

4

5

6

7                                BY: _____

8                                     PETER R. DION-KINDEM, P.C.
                                      PETER R. DION-KINDEM
9                                     Attorneys for Plaintiff Taylor Kalin

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Class, Collective and Representative Action Complaint**

## CONSENT OF PLAINTIFF TAYLOR KALIN RE CONSENT TO SUE

I, Taylor Kalin, declare:

1.     I am a Plaintiff in the above-captioned action. I have personal knowledge of the following and would and could competently testify thereto if called as a witness.

2.     I hereby consent to be joined in this suit against Apple, Inc. under the Fair Labor Standards Act, 29 U.S.C. §§ 206 *et seq.*, for unpaid wages and other relief available under the Act.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  Oct 8th 2013                    Taylor Kalin

Taylor Kalin

**Class, Collective and Representative Action Complaint**

# Exhibit Q

FILED

Kimberly A. Kralowec (Cal. Bar No. 163158)
THE KRALOWEC LAW GROUP
188 The Embarcadero, Suite 800
San Francisco, CA  94105
Telephone:    (415) 546-6800
Facsimile:    (415) 546-6801
kkralowec@kraloweclaw.com

Lee S. Shalov (*pro hac vice* application to be filed)
Brett Gallaway (*pro hac vice* application to be filed)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY  10016
Telephone:    (212) 448-1100
Facsimile:    (212) 448-0066
*lshalov@mclaughlinstern.com*
*bgallaway@mclaughlinstern.com*

Louis Ginsberg (*pro hac vice* application to be filed)
LAW FIRM OF LOUIS GINSBERG, P.C.
1613 Northern Blvd.
Roslyn, NY  11576
Telephone:    (516) 625-0105 X.13
*lg@louisginsberglawoffices.com*

Attorneys for Plaintiffs and the Putative Classes

**EDL**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

**CV 13 3451**

AMANDA FRLEKIN and DEAN PELLE, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

        v.

APPLE INC., a California corporation,

        Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

COMPLAINT

1   Plaintiffs ("Plaintiffs"), on behalf of themselves and all other similarly situated persons, by and

2   through their undersigned counsel, allege upon personal knowledge as to themselves and upon

3   information and belief as to other matters (which is based on, among other things, their experiences at

4   Defendant's stores, review of Defendant's records, conversations with Defendant's employees and

5   investigation of their counsel), as follows:

6   **NATURE OF ACTION**

7       1.     Plaintiffs bring this action on behalf of themselves and all other similarly situated

8   current and former hourly paid and non-exempt Specialists, Lead Specialists and Expert Specialists

9   ("Specialists") and Managers, Senior Managers, Developmental Managers and Business Managers

10   ("Managers," and, together with Specialists, "Apple Hourly Employees") of Defendant Apple Inc.

11   ("Apple" or "Defendant"). The Defendant in this action, by virtue of its management and control over

12   the wages and work of Apple Hourly Employees, is an "employer" under applicable labor law.

13       2.     Apple operates as one of the world's largest global technology companies which

14   designs, manufactures and markets mobile communication and media devices, personal computers,

15   and portable digital music players, and sells a variety of related software, services, peripherals,

16   networking solutions, and third-party digital content and applications. Apple has a presence and retail

17   stores in 13 countries, including a permanent presence in California, and employs approximately

18   72,800 people, 42,400 of who work in Apple's retail segment.

19       3.     A Specialist's duties include customer support relating to retail sales of Apple

20   products and accessories. Specialists are also required to have knowledge of and be able to perform

21   light diagnostic checks on Apple hardware and software. A Manager's duties include overseeing the

22   Specialists and tending to customer-related needs. Managers are non-exempt hourly paid employees

23   who are entitled to overtime compensation.

24       4.     As particularized below, Apple has engaged and continues to engage in illegal and

25   improper wage practices that have deprived Apple Hourly Employees throughout the United States of

26   millions of dollars in wages and overtime compensation. These practices include requiring Apple

27   Hourly Employees to wait in line and undergo two off-the-clock security bag searches and clearance

28   checks when they leave for their meal breaks and after they have clocked out at the end of their shifts.

- 1 -

COMPLAINT

1    These "personal package and bag searches" are done for the sole benefit of Apple; are a uniform

2    practice and policy in all Apple retail stores nationwide; and are not imposed on Apple's customers.

3    This illegal practice and policy has been known to the Defendant for years and Apple continues to

4    require Apple Hourly Employees to endure these required but uncompensated security checks.   For

5    these reasons, Plaintiffs bring this action on behalf of themselves and other Apple Hourly Employees

6    to recover unpaid wages, overtime compensation, penalties, interest, injunctive relief, damages and

7    reasonable attorneys' fees and costs under, among other statutes, the Fair Labor Standards Act (the

8    "FLSA") §§ 201 *et. seq.*, Cal. Lab. Code §§ 203, 226(e), 1194, and 1194.2 (the "CLC"), California

9    Unfair Competition Law, Cal Bus. & Prof Code §§ 17200 *et seq.*, and McKinney's Labor Law (the

10   "NYLL"), §§ 190 *et seq.*, §§ 650 *et seq.*, and 12 NYCRR § 142-2.2.

11                            **JURISDICTION AND VENUE**

12          5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action

13   involves a federal statute, the FLSA, 29 U.S.C. §216(b).

14          6.      This Court has original jurisdiction over all claims in this action under the Class

15   Action Fairness Act ("CAFA") 28 U.S.C. 1332(d).  This is a proposed class action in which: (a) there

16   are 100 or more members in each proposed class; (b) at least some members of each proposed class

17   have a different citizenship from the Defendant; and (c) the claims of the proposed class members

18   exceed $5,000,000.00 in the aggregate.

19          7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law

20   wage and hour claims because those claims derive from a common nucleus of operative fact.

21          8.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. §

22   1391(b)(1) and (2) because the Defendant is headquartered in this judicial district and a substantial

23   part of the events giving rise to the claims asserted herein occurred in this judicial district.

24                            **INTRADISTRICT ASSIGNMENT**

25          9.      This matter is properly assigned to the San Francisco Division of this District pursuant

26   to Civil Local Rule 3-2(c) because Defendant maintains numerous retail stores within the counties

27   comprising the San Francisco Division and employs numerous hourly non-exempt employees at those

28   locations, who, on information and belief, were subjected to Defendant's mandatory personal package

1    and bag search policy challenged by this action. As stated in Defendant's written rules, the mandatory

2    personal package and bag search policy "appl[ies] to all employees of Apple Inc. and participating

3    subsidiaries in the United States." *See* Apple Employee Policies. Therefore, a substantial part of the

4    events or omissions that give rise to the claims occurred within this Division within the meaning of

5    Civil Local Rule 3-2(c).

6                                    **THE PARTIES**

7    **Plaintiffs**

8        **Amanda Frlekin**

9            10.    Plaintiff, Amanda Frlekin, is a resident of Los Angeles, California. Ms. Frlekin was

10   employed by Apple on a full-time basis as a Specialist at its Century City retail store in Los Angeles,

11   California from August 2010 until April 2013. Ms. Frlekin was paid an hourly rate of between $12.10

12   and $15.60. Throughout Ms. Frlekin's employment at Apple, she was required to undergo personal

13   package and bag searches before she was permitted to leave the store for her uncompensated meal

14   breaks and before she was permitted to leave the store after she had clocked out at the end of her

15   shifts. These security checks were significant, integral, indispensable, not a de minimis task or request

16   and done solely for Apple's benefit to prevent employee pilferage. By way of example, during any

17   week of her employment from 2010 through 2013, Ms. Frlekin waited in line to undergo a "personal

18   package and bag search" for at least 5-10 minutes without compensation prior to leaving for all of her

19   uncompensated meal breaks and for at least 10 minutes prior to leaving at the end of all of her shift

20   once she had already clocked out. As a specific example, Ms. Frlekin was required to wait in line for

21   off-the-clock security checks before leaving for her meal break and at the end of her shift for 10–15

22   minutes every day during the week of January 8, 2013 to January 12, 2013. However, because of

23   Defendant's improper uncompensated security check policies as described more fully below, Ms.

24   Frlekin was deprived of wages as required by the FLSA and CLC. During any given week, Ms.

25   Frlekin worked approximately 50 minutes to 1.5 hours of uncompensated overtime. By conservative

26   calculations, this equated over the course of one year to an aggregate amount of approximately $1,500

27   in uncompensated hours worked and overtime.

28

1    11.    Supervisors employed at Apple retail stores, including Ms. Frlekin's store, had

2  knowledge of and required Plaintiffs to undergo these uncompensated security screenings in

3  accordance with Apple's corporate policy.  Supervisors in Ms. Frlekin's California store who were

4  aware of these uncompensated personal package and bag searches include: (1) Danya Bonett, the

5  Store Leader; (2) Erik Kinder, a Senior Manager; (3) Breian Krink, a Senior Store Manager; (4)

6  Heather Harte, a Store Manager; (5) Andrew Chantra, a Store Manager; and (6) Greg Schnieder, a

7  Store Manager.  These and other supervisors permitted, required and enforced the corporately derived

8  and mandated security checks and requested that Ms. Frlekin and others similarly situated perform

9  these integral and indispensable duties without proper wages or overtime compensation.

10   **Dean Pelle**

11    12.    Plaintiff, Dean Pelle, is a resident of Brooklyn, New York.  Mr. Pelle was employed

12  by Apple on a full-time basis as a Specialist at Apple's Lennox Mall retail store in Atlanta, Georgia

13  from 2007 until 2008, then in Apple's Wellington Beach retail store in West Palm Beach, Florida

14  from 2008 until 2009, and finally in Apple's West 14th Street retail store in New York, New York

15  from 2009 until March of 2013.  Mr. Pelle was paid an hourly rate of approximately $18.75.

16  Throughout Mr. Pelle's employment at Apple, he was required to undergo personal package and bag

17  searches before he was permitted to leave the store for his uncompensated meal break and before he

18  was permitted to leave the store after he had clocked out at the end of his shift.  These security checks

19  were significant, integral, indispensable, not a de minimis task or request and done solely for Apple's

20  benefit to prevent employee pilferage.  By way of example, during any week of his employment from

21  2008 through 2013, Mr. Pelle waited in line to undergo a "personal package and bag search" for at

22  least 5 minutes without compensation prior to leaving for all of his uncompensated meal breaks and

23  for at least 10 minutes prior to leaving at the end of all of his shift once he had already clocked out.

24  As a specific example, Mr. Pelle was required to wait in line for off the clock security checks before

25  leaving for his meal break and at the end of his shift for 10–15 minutes every day during the week of

26  February 19, 2013 to February 23, 2013.  As a further specific example, Mr. Pelle was required to

27  wait in line for off the clock security checks before leaving for his meal break and at the end of his

28  shift for 10–15 minutes every day during the week of March 5, 2013 to March 9, 2013.  However,

- 4 -
COMPLAINT

because of Defendant's improper uncompensated security check policies as described more fully below, Mr. Pelle was deprived of wages as required by the FLSA and NYLL. During any given week, Mr. Pelle worked approximately 50 minutes to 1.5 hours of uncompensated overtime. By conservative calculations, this equated over the course of one year to an aggregate amount of approximately $1,400 in uncompensated hours worked and overtime.

13.     Supervisors employed at Apple retail stores, including Mr. Pelle's store, had knowledge of and required that Apple Hourly Employees undergo these uncompensated security screenings.   Supervisors who were aware of these uncompensated "personal package and bag searches" include: (1) Arik Nagel, a Developmental Manager from the West 14th Street store location in New York; (2) Anthony Allicock, a Developmental Manager from the West 14th Street store location in New York; and (3) Peter Jordan, a Senior Manager from the West 14th Street store location in New York.  These supervisors, along with numerous others permitted, required and enforced the corporately derived and mandated security checks and requested that Mr. Pelle and others similarly situated perform these integral and indispensable duties without proper straight wages or overtime compensation.

**Defendant**

14.     Apple is a publically traded company which conducts business throughout the United States and abroad.  It was established and incorporated under the laws of California and has its principal headquarters in California.

15.     Apple designs, manufactures and markets mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, peripherals, networking solutions, and third-party digital content and applications.  Apple employs approximately 72,800 people, 42,400 of whom work in Apple's retail segment. Additionally, Apple operates out of 13 countries, has approximately 390 retail stores and generated net sales of $156.5 billion in 2012.

16.     The wages and hours and all of Defendant's related employee compensation policies are and were centrally and collectively dictated, controlled, and ratified.  As such, Defendant had the power to control the wage policies and practices described herein through its oversight of day-to-day

operating procedures, control over employee work schedules, ability to determine employees' rate of pay, and ability to control Apple's record keeping practices. As such, Defendant is the "employer" – single, joint or otherwise – of Plaintiffs and other members of the proposed classes described below.

## FACTUAL ALLEGATIONS

### Background

17.     Apple has thousands of hourly paid non-exempt Specialists and Managers. Each Specialist and Manager is employed at a specific Apple retail store, including Plaintiff Amanda Frlekin's Century City store location in California.

18.     Each Apple retail store has numerous managers who are responsible for overseeing the Specialists and assigning daily tasks. These Managers, who are hourly paid, non-exempt employees, are subject to the same "personal package and bag searches" as those conducted upon Specialists and are members of the putative class that Plaintiffs seek to represent. However, Supervisors and others with executive positions who are paid fixed salaries are not members of the classes that Plaintiffs seek to represent in this action.

19.     Apple hired Plaintiffs and promised to pay hourly wages for their work. On average, full-time Specialists are paid between minimum wage and $18.75 per hour and have a standard work week of 40 hours. Moreover, each full-time employee is entitled to a daily unpaid meal break of one hour.

20.     Apple Hourly Employees are required to clock in when they arrive at work, clock out when they go on a meal break, clock in when they return from a meal break and clock out when they leave for the day. The time-keeping system and the procedures for using it are the same at each Apple retail store. In this regard, Apple uses time tracking software developed by Kronos Inc. The software requires Apple Hourly Employees to enter a username and password to clock in and clock out each day.

### Apple's Personal Package and Bag Check Policy Deprives Employees of Compensation When They Perform Services For The Defendant's Benefit

21.     Pursuant to a uniform nationwide policy originated by Apple, "[a]ll employees, including managers and Market Support employees, are subject to personal package and bag searches." *See* Apple Employee Conduct Manual. If an Apple Hourly Employee refuses to submit to

this security screening or deviated from the corporate policy in any way, it "could result in disciplinary action, up to and including termination." *See* Apple Employee Policies. Apple Hourly Employees were and are required to wait in line and be searched for potential or possible store items or merchandise taken without permission and/or other contraband. Thus, at the discretion and control of the Defendant and solely for its benefit, Plaintiffs and other Apple Hourly Employees were and are required to wait in line for security checks for at least 10–15 minutes each day before leaving for their meal break and at the end of their shift after they had already clocked out. This daily 10–15 minute uncompensated waiting time during security checks was done in order to undergo searches for possible contraband and/or pilferage of inventory. Because such screening is designed to prevent and deter employee theft, a concern that stems from the nature of the employee's work (specifically, their access to high value electronics and merchandise), the security checks and consequential wait time are necessary to the employee's primary work as retail Specialists and done solely for Apple's benefit.

22.     A large number of Specialists and Managers leave for lunch at the same time and/or end their shift at the same time. This creates lengthy lines and backups for managers, members of the security team and others authorized to conduct security screenings who are often times engaged in other job related duties. As a result, Apple Hourly Employees are forced to wait in these lines and undergo lengthy off-the-clock security screenings before they are allowed to leave the premises. This work, done primarily for the employer's benefit, is time which Apple Hourly Employees should be, but are not compensated for, both straight hours and overtime hours worked in excess of 40 in a week or, in California, in excess of 8 in a day.

23.     Apple's corporate employee conduct policy mandates and requires that Specialists "[f]ind a Manager or member of the security team (where applicable) to search [their] bags and packages before [they] left the store." *See* Apple Employee Conduct Manual. Additionally, the policy forbids Specialists and Managers from leaving the store "prior to having [their] personal package or bag searched by a member of management or the security team (where applicable)." *Id.* Furthermore, these policies are uniform throughout every Apple retail store and "apply to all employees of Apple Inc. and participating subsidiaries in the United States." *See* Apple Employee Policies. Thus, these uncompensated wait times and security screenings unlawfully deprive all

1   Specialists in Apple's retail stores throughout the country of proper compensation.

2   **FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS**

3       24.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

4       25.    Plaintiffs, Amanda Frlekin and Dean Pelle, bring the FLSA collective claim described

5   below on behalf of themselves and all other persons similarly situated pursuant to 29 U.S.C. §§ 207

6   and 216(b), specifically, on behalf of:

7       All Apple Hourly Employees who worked in an Apple, Inc. retail store in the United

8       States, who are or were employed within the three years preceding the filing of this
    action by the Defendant, and who were: (a) not compensated for off-the-clock time
    spent waiting in security screening lines and undergoing personal package and bag

9       searches before being allowed to leave the premises; and/or (b) were not fully
    compensated for this time worked over forty hours per week at overtime rates (the

10       "FLSA Collective Class").

11       26.    Excluded from the FLSA Collective Class are Defendant, its legal representatives,

12   officers, directors, assigns, and successors, or any individual who has or had a controlling interest in

13   Apple.  Also excluded are persons and entities who submit timely and otherwise proper requests for

14   exclusion from the FLSA Collective Class.

15       27.    Plaintiffs are unable to state the exact number of class members without discovery of

16   Defendant's books and records but estimate the class to exceed several thousand individuals.

17       28.    Defendant improperly benefited from Plaintiffs' and the FLSA Collective Class

18   members' uncompensated work while waiting in lengthy security check lines and undergoing personal

19   package and bag searches.  Defendant also failed to pay Plaintiffs and members of the FLSA

20   Collective Class time-and-one-half their regular rate of pay for hours worked beyond forty hours in a

21   workweek.

22       29.    Defendant's unlawful conduct has been widespread, repeated and consistent.

23   Moreover, Defendant's conduct was willful and in bad faith and has caused significant damages to

24   Plaintiffs and the FLSA Collective Class.

25       30.    Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and

26   the FLSA Collective Class, and, as such, notice should be sent out to the FLSA Collective Class.

27   There are numerous similarly situated, current and former employees of the Defendant who have been

28   denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised

1   notice of the present lawsuit and the opportunity to join in the action. Those similarly situated

2   employees are known to Defendant and are readily identifiable through Defendant's records.

**CALIFORNIA STATE LAW CLASS ACTION ALLEGATIONS**

31.   The preceding paragraphs are incorporated by reference as if fully set forth herein.

32.   Plaintiff Amanda Friekin brings the California state claims described below on behalf
of herself and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf
of a Class consisting of:

> All Apple Hourly Employees who worked in an Apple, Inc. retail store in the State of
> California, who are or were employed within the four years preceding the filing of this
> action by the Defendant, and who were: (a) not compensated for off-the-cock time
> spent waiting in security screening lines and undergoing personal package and bag
> searches before being allowed to leave the premises; and/or (b) were not fully
> compensated for this time worked over eight hours per day and/or forty hours per week
> at overtime rates (the "California Class").

33.   Excluded from the California Class are Defendant, its legal representatives, officers,
directors, assigns, and successors, or any individual who has or had a controlling interest in Apple.
Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion
from the California Class.

34.   Apple operates numerous facilities and employs thousands of Apple Hourly
Employees in California and systematically fails and refuses to pay them for all compensable hours
worked. The members of the California Class are so numerous that joinder of all members in one
proceeding is impracticable.

35.   Plaintiff's claims are typical of the claims of other California Class members because
they were hourly-wage, non-exempt employees who were not compensated for work performed at the
employer's request while waiting in lengthy security check lines and undergoing personal package and
bag searches. Plaintiffs and other California Class members have sustained similar types of damages
as a result of Defendant's failure to comply with the CLC. Plaintiffs and other California Class
members have been injured in that they have been uncompensated or under-compensated due to
Defendant's common policies, practices, and patterns of conduct.

- 9 -
COMPLAINT

36.     Plaintiffs will fairly and adequately protect the interests of the California Class. Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between the Plaintiffs and the California Class.

37.     Common questions of law and fact exist as to the California Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

        (a)     Whether Defendant failed and/or refused to pay Plaintiffs and the California Class for all of the compensable time that they worked for Defendant while waiting in lengthy security check lines and undergoing personal package and bag searches in violation of the California Unfair Competition Law, Cal. Bus. & Prof Code § 17200 *et seq.*, and the CLC and related regulations (CLC §§ 510, 1194, and 1197 and Cal Wage Order No. 4);

        (b)     Whether Defendant failed to keep true and accurate time records for all hours worked by their employees as required by CLC § 226;

        (c)     Whether Defendant correctly compensated members of the California Class for hours worked in excess of forty per workweek;

        (d)     Whether Defendant correctly compensated members of the California Class for hours worked in excess of eight per day;

        (e)     Whether Defendant engaged in a pattern and/or practice in California of forcing, coercing, and/or permitting Plaintiffs and California Class members to perform work for Defendant's benefit which was not compensated;

        (f)     Whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

        (g)     Whether Defendant failed to comply with CLC §§ 201 and 202 *et seq.* and is thus subject to a waiting time penalty under CLC § 203; and

        (h)     The nature and extent of class-wide injury and the measure of damages for those injuries.

38.     Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the California Class are readily identifiable from Defendant's own records.

39.     Prosecution of separate actions by individual members of the California Class would create the risk of inconsistent or varying adjudications with respect to individual members of the California Class that would establish incompatible standards of conduct for the Defendant.

40.     Without a class action, Defendant will retain the benefit of its wrongdoing and will continue a course of action that will result in further damages to Plaintiffs and the California Class.

### NEW YORK CLASS ACTION ALLEGATIONS

41.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

42.     Plaintiff, Dean Pelle, brings the New York state claims described below on his own behalf and as a class action pursuant to Federal Rule 23 on behalf of a Class consisting of:

> All Apple Hourly Employees who worked in an Apple, Inc. retail store in the State of New York, who are or were employed within the six years preceding the filing of this action by the Defendant, and who were: (a) not compensated for off-the-clock time spent waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over forty hours per week at overtime rates (the "New York Class").

43.     Excluded from the New York Class are Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Apple. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

44.     Apple operates numerous facilities and employs thousands of Apple Hourly Employees in New York State and systematically fails and refuses to pay them for all compensable

- 11 -
COMPLAINT

1    hours worked.  The members of the New York Class are so numerous that joinder of all members in

2    one proceeding is impracticable.

3        45.    Plaintiff's claims are typical of the claims of other New York Class members because

4    they were hourly-wage employees who were not compensated for work performed at the employer's

5    request while waiting in lengthy security check lines and undergoing personal package and bag

6    searches.  Plaintiff and other New York Class members have sustained similar types of damages as a

7    result of Defendant's failure to comply with the NYLL.  Plaintiff and other New York Class members

8    have been injured in that they have been uncompensated or under-compensated due to Defendant's

9    common policies, practices, and patterns of conduct.

10       46.    Plaintiffs will fairly and adequately protect the interests of the New York Class.

11   Plaintiffs have retained counsel competent and experienced in complex class action and wage and

12   hour litigation.  There is no conflict between Plaintiff and the New York Class.

13       47.    Common questions of law and fact exist as to the New York Class that predominate

14   over any questions solely affecting them individually and include, but are not limited to, the

15   following:

16             (a)    Whether Defendant failed and/or refused to pay Plaintiffs and the New York

17                    Class for all of the compensable time that they worked for Defendant while

18                    waiting in lengthy security check lines and undergoing personal package and

19                    bag searches;

20             (b)    Whether Defendant failed to keep true and accurate time records for all hours

21                    worked by their employees as required by New York Labor Law §§ 190 *et seq.*

22                    and 654 *et seq.*;

23             (c)    Whether Defendant correctly compensated members of the New York Class

24                    for hours worked in excess of forty per workweek;

25             (d)    Whether Defendant failed to comply with the posting and notice requirements

26                    of the NYLL;

27             (e)    Whether Defendant engaged in a pattern and/or practice in New York of

28                    forcing, coercing, and/or permitting Plaintiff and New York Class members to

- 12 -
COMPLAINT

perform work for Defendant's benefit which was not compensated;

(f)     Whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(g)     The nature and extent of class-wide injury and the measure of damages for those injuries.

48.     Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Members of the New York Class are readily identifiable from Defendant's own records.

49.     Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for the Defendant.

50.     Without a class action, Defendant will retain the benefit of its wrongdoing and will continue a course of action that will result in further damages to Plaintiffs and the New York Class.

**FIRST CLAIM FOR RELIEF**

**Violations of the Fair Labor Standards Act**

**(On Behalf of All Plaintiffs and the FLSA Collective Class)**

51.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

52.     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed and continues to employ, employees, including Plaintiffs and each of the members of the FLSA Collective Class.

53.     Plaintiffs consent in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibit A is a copy of Plaintiffs' Opt-in forms. As this case proceeds, it is likely that other individuals will sign consent forms and join as Plaintiffs.

54.     The FLSA requires each covered employer such as the Defendant to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek. The FLSA also requires each covered employer to pay the minimum wage for all hours worked.

55.     Plaintiffs and the members of the FLSA Collective Action were and are entitled to be paid minimum wage and overtime compensation for all hours worked.

56.     Defendant, pursuant to its policies and practices, failed and refused to pay minimum wage and overtime premiums to Plaintiffs and the members of the FLSA Collective Class for all of their hours worked in excess of 40 hours per week. Plaintiffs do not assert any claims for "Gap Time" (uncompensated work performed under 40 hours per week) under the FLSA.

57.     By failing to compensate Plaintiffs and the members of the FLSA Collective Class for minimum wage and overtime compensation, Defendant has violated, and continues to violate, the FLSA, 29 U.S.C. § 201, *et seq*.

58.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

59.     Plaintiffs, on behalf of themselves and the FLSA Collective Class, seek damages in the amount of their unpaid wages and overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

60.     Plaintiffs, on behalf of themselves and the FLSA Collective Class, seek recovery of attorney's fees and costs, to be paid by the Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

### SECOND CLAIM FOR RELIEF

**Violations of the California Labor Code – Nonpayment of Minimum and Overtime Wages**
**(Cal. Lab. Code §§ 1194, 1194.2)**

**(On Behalf of Plaintiff Amanda Friekin and the California Class)**

61.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

- 14 -
COMPLAINT

62. Plaintiff Amanda Frlekin and members of the California Class were employees of Apple, while Apple was the employer of Plaintiffs and members of the California Class within the meaning of the California Labor Code and Wage Order 4.

63. Defendants have willfully failed to pay the minimum and overtime wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff Frlekin and members of the California Class.

64. Plaintiff Frlekin and members of the California Class were entitled to be paid no less than minimum wage for all hours worked up to forty in a workweek, and overtime compensation at not less than one and one-half times their regular rates of pay for all hours worked in excess of eight hours per day and/or forty hours in a workweek pursuant to Cal. Lab. Code § 510.

65. Apple was not and is not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the California Class' unpaid minimum or overtime wages sought in this lawsuit.

66. Apple was not authorized by Plaintiff or any California Class members to withhold, divert or deduct any portion of their unpaid minimum or overtime wages sought in this lawsuit.

67. Pursuant to Cal. Lab. Code § 1194, employers such as Defendant who fail to pay an employee minimum or overtime wages in conformity with California law shall be liable to the employee for those unpaid wages, plus interest, reasonable attorneys' fees, and costs of suit. Pursuant to Cal. Lab. Code § 1194.2, employers such as Defendant who fail to pay an employee at least the minimum wage for all hours worked shall be liable to the employee for liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

68. Apple has violated the CLC by failing to pay Plaintiff and the members of the California Class minimum wages for all compensable time and by failing to pay Plaintiff and the members of the California Class for overtime payable at one and one-half times the employees' regular rates of pay.

69. Plaintiff, on behalf of herself and the California Class, seeks the amount of underpayments based on Defendant's failure to pay wages of at least the minimum wage and uncompensated overtime for all hours worked, as provided by the CLC, plus interest, liquidated

1   damages, attorneys' fees, costs, and such other legal and equitable relief as the Court deems just and

2   proper.

3                                    **THIRD CLAIM FOR RELIEF**

4                          **Violations of the California Unfair Competition Law**
                              **(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**
5
                    **(On Behalf of Plaintiff Amanda Frlekin and the California Class)**
6
7        70.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

8        71.     The California Unfair Competition Law ("UCL") prohibits Defendant from engaging

9   in unfair competition, which means "any unlawful, unfair or fraudulent business act or practice." Cal.

10  Bus. & Prof. Code §§ 17200 *et seq.*

11       72.     Defendant's conduct alleged above constitutes an "unlawful" business act or practice

12  within the meaning of the UCL because it violates each of the following laws:

13              (a)     Cal. Lab. Code § 1197 (requiring payment of at least minimum wage for all

14                      hours worked);

15              (b)     Cal. Lab. Code § 510 (requiring payment of overtime at the rate of one-and-

16                      one-half times the employee's regular rate of pay for all hours worked in

17                      excess of eight in a day or 40 in a week);

18              (c)     Cal. Lab. Code §§ 201 and 202 (requiring timely payment to employees who

19                      have been discharged or quit of all wages earned and unpaid);

20              (d)     IWC Wage Order 4 (8 Cal. Code Regs. § 11040); and

21              (e)     The FLSA.

22       73.     Plaintiff Frlekin lost money or property as a result of Defendant's unlawful conduct,

23  because if Defendant had complied with the law, Plaintiff Frlekin would have been timely paid at least

24  minimum wage for all time spent waiting in lengthy security check lines and undergoing personal

25  package and bag searches, and she would have been paid overtime for all such time worked that

26  exceeded eight hours in a day or forty hours in a week.

27       74.     Plaintiff Frlekin and members of the California Class are entitled to restitution of all

28  sums Defendant may have acquired by means of Defendant's unlawful conduct, as well as injunctive

relief, costs of suit, and such other relief as the Court may deem proper.

**FOURTH CLAIM FOR RELIEF**

**Violations of California Labor Code – Wage Statement Penalties**
**(Cal. Lab. Code § 226)**

**(On Behalf of Plaintiff Amanda Frlekin and the California Class)**

75.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

76.     Cal. Labor Code § 226(a) requires every employer, including Defendant, to furnish each employee, semimonthly or at the time of each payment of wages, an accurate itemized wage statement, in writing, showing the total hours worked by the employee and the net wages earned. Similarly, Wage Order 4 requires employers to keep accurate information regarding each employee, including time records showing when the employee begins and ends each work period, and total hours worked in the payroll period. 8 Cal. Code Regs. § 11040, ¶7(A).

77.     Defendant violated section 226(a) and Wage Order 4 by failing to maintain accurate records and by failing to furnish each employee with accurate itemized wage statements either semimonthly or for each pay period that reflected all time spent waiting in line for security checks and undergoing personal package and bag searches. Defendant's refusal to properly record this time, to include it in its itemized wage statements, or to properly pay its employees for this time was willful and intentional. As a result of these violations, Plaintiff and members of the California Class suffered injury because they were not paid for all hours worked.

78.     Pursuant to Cal. Labor Code § 226(e), Plaintiff and each member of the California Class is entitled to a penalty in the amount of $50 for the initial pay period in which a violation occurred, and a penalty of $100 for each violation in a subsequent pay period, up to an aggregate penalty of $4,000, as well as costs of suit and attorneys' fees. Pursuant to Cal. Labor Code § 226(f), each currently-employed member of the California Class is entitled to injunctive relief to ensure Defendant's compliance with section 226.

**FIFTH CLAIM FOR RELIEF**

**Violations of California Labor Code – Waiting Time Penalties**
**(Cal. Lab. Code §§ 201, 202, 203)**

**(On Behalf of Plaintiff Amanda Frlekin and the California Class)**

79.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

- 17 -
COMPLAINT

80. Cal. Lab. Code § 203 states that if an employer willfully refuses to pay, without abatement or reduction, in accordance with Labor Code §§ 201 and 202, any wages of an employee who is discharged or who quits, the employee's wages shall continue as a penalty for up to 30 days from the due date, until paid or until an action to recover those wages is commenced.

81. Plaintiff Frlekin and members of the California Class who are no longer employed by Defendant were entitled to timely payment, upon cessation of their employment, of at least minimum wage for all time spent waiting in line for security checks and undergoing personal package and bag searches, and to overtime wages for such time that exceeded 8 hours in a day or 40 hours in a week. Defendant's refusal to timely pay such wages was willful. Defendant knew or should have known that such wages were due and payable to Plaintiff and the California Class, yet failed to pay them in a timely manner, as required by sections 201 and 202. Those wages remain unpaid.

82. Pursuant to Labor Code section 203, Plaintiff and each member of the California Class who is no longer employed by Defendant is entitled to a penalty in the amount of his or her daily wage multiplied by 30 days.

### SIXTH CLAIM FOR RELIEF

**Violations of New York Labor Law – Nonpayment of Straight Wages**

**(On Behalf of Plaintiff Dean Pelle and the New York Class)**

83. The preceding paragraphs are incorporated by reference as if fully set forth herein.

84. Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendant has willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff Dean Pelle and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

85. Defendant was not and is not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the New York Class' wages that concern this lawsuit.

86. Defendant was not authorized by Plaintiff or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

87.     Pursuant to New York Labor Law § 198, employers such as the Defendant who intentionally fail to pay an employee wages in conformance with New York Labor Law shall be liable to the employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

88.     Defendant has violated the New York Labor Law by failing to pay Plaintiff and the members of the New York Class for all compensable time and by failing to pay Plaintiff and the members of the New York Class for the straight time worked at the established rate.

89.     Plaintiff, on behalf of himself and the New York Class, seek the amount of underpayments based on Defendant's failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF

### Violations of New York Labor Law – Unpaid Overtime

### (On Behalf of Plaintiff Dean Pelle and the New York Class)

90.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

91.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to the Defendant and protect Plaintiff and the members of the New York Class.

92.     Defendant has failed to pay Plaintiff and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

93.     By Defendant's knowing and/or intentional failure to pay Plaintiff and the members of the New York Class overtime wages for hours worked in excess of forty hours per week, it has willfully violated NYLL Article 19, §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

94.    Due to Defendant's violations of the NYLL, Plaintiff and the members of the New York Class are entitled to recover from the Defendant their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, all Plaintiffs, individually and on behalf of the FLSA Collective Class, seek the following relief:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Class (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiffs as the Representatives of the FLSA Collective Class;

C.    Appointment of Plaintiffs' counsel as Lead Counsel for the FLSA Collective Class;

D.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, and injunctive relief requiring termination or modification of the unlawful practices challenged in this Complaint, including Defendant's improper requirement that Apple Hourly Employees wait in lengthy security check lines and undergo personal package and bag searches without compensation for their time;

E.    An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by the Defendant;

F.    An award of costs incurred herein, including expert fees;

G.    An award of attorneys' fees pursuant to 29 U.S.C. § 216;

H.    An award of pre-judgment and post judgment interest, as provided by law; and

I.    All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Amanda Frlekin, individually and on behalf of the California Class, seeks the following relief:

A.    Certification of this action as a class action pursuant to Federal Rule 23 and the appointment of Plaintiffs as the representative of the California Class and Plaintiffs' counsel as Lead Counsel for the California Class;

B.    An award to Plaintiff and members of the California Class of damages for the amount of unpaid minimum wages in addition to interest subject to proof;

C.    An award to Plaintiff and members of the California Class of damages for the amount of unpaid overtime in addition to interest subject to proof;

D.    An award to Plaintiff and members of the California Class of any waiting time penalties under § 203 *et seq.* of the CLC;

E.    An award to Plaintiff and members of the California Class of any itemized wage statement penalties under § 226 of the CLC;

F.    An award to Plaintiff and members of the California Class of restitution under the UCL;

G.    An award to Plaintiff and the members of the California Class of reasonable attorneys' fees and costs pursuant to the CLC;

H.    An award of pre- and post-judgment interest on all monetary relief prayed for above, as may be permitted by law;

I.    An award of attorneys' fees pursuant to sections 226(e) and 1194 of the CLC and/or pursuant to Cal. Code of Civ. Procedure section 1021.5;

J.    An award of costs of suit;

K.    A declaratory judgment that the practices complained of herein are unlawful under the CLC and/or the UCL, and injunctive relief requiring termination or modification of the unlawful

practices challenged in this Complaint, including Defendants' improper requirement that Apple Hourly Employees wait in lengthy security check lines and undergo personal package and bag searches without compensation for their time;

L.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Dean Pelle, individually and on behalf of the New York Class, seeks the following relief:

A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiff as the representatives of the New York Class and Plaintiff's counsel as Lead Counsel for the New York Class;

B.      An award to Plaintiff and members of the New York Class of damages for the amount of unpaid straight wages in addition to interest subject to proof;

C.      An award to Plaintiff and members of the New York Class of damages for the amount of unpaid overtime in addition to interest subject to proof;

D.      An award to Plaintiff and members of the New York Class of reasonable attorneys' fees and costs pursuant to the NYLL;

E.      A declaratory judgment that the practices complained of herein are unlawful under the NYLL, and injunctive relief requiring termination or modification of the unlawful practices challenged in this Complaint, including Defendant's improper requirement that Apple Hourly Employees wait in lengthy security check lines and undergo personal package and bag searches without compensation for their time;

F.      All such other relief as this Court shall deem just and proper.

- 22 -
COMPLAINT

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

DATED: July 25, 2013

By: _____

Kimberly A. Kralowec

Kimberly A. Kralowec (Cal. Bar No. 163158)
THE KRALOWEC LAW GROUP
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone:    (415) 546-6800
Facsimile:     (415) 546-6800
*kkralowec@kraloweclaw.com*

Lee S. Shalov
Brett Gallaway
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone:    (212) 448-1100
Facsimile:     (212) 448-0066
*lshalov@mclaughlinstern.com*
*bgallaway@mclaughlinstern.com*

Louis Ginsbeg
LAW FIRM OF LOUIS GINSBERG, P.C.
1613 Northern Blvd.
Roslyn, NY 11576
Telephone:    (516) 625-0105
*lg@louisginsberglawoffices.com*

Attorneys for Plaintiffs and the Putative Classes

# EXHIBIT A

I consent to be a party plaintiff in a lawsuit against Apple Inc. and/or related entities in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b). I hereby designate The Law Firm of Louis Ginsberg, P.C. and McLaughlin & Stern, LLP to represent me in such a lawsuit.

_____        06/21/2013
Signature                                     Dated


Amanda-Faith Frlekin
_____
Full Legal Name (print)


REDACTED
_____        _____
Address


REDACTED
_____        _____
City, State                                   Zip Code

I consent to be a party plaintiff in a lawsuit against Apple Inc. and or related entities in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b). I hereby designate The Law Firm of Louis Ginsberg, P.C. and McLaughlin & Stern, LLP to represent me in such a lawsuit.

_____   5/29/13
Signature                        Dated

Dean N Pelle
_____
Full Legal Name (print)

REDACTED
_____
Address

REDACTED
_____
City, State           Zip Code

# Exhibit R

**[IMPORTANT NOTICE REGARDING YOUR RIGHTS]**

**NOTICE OF COURT CONDITIONAL CERTIFICATION OF COLLECTIVE
ACTION IN WAGE AND HOUR LAWSUIT AGAINST APPLE, INC.**

*Amanda Frlekin et al. v. Apple Inc.* 3:13-cv-3451-WHA
U.S. District Court for the Northern District of California

**This Notice and its contents have been authorized by the U.S. District Court for the
Northern District of California. However, the Court has _not_ yet expressed any opinion
about the merits of the claims asserted or the defenses raised, and you should _not_ interpret
the sending of this Notice as any indication of the Court's opinion of the ultimate outcome of
the Lawsuit.**

TO:   **ALL NON-EXEMPT HOURLY PAID PERSONS EMPLOYED AS GENIUSES,
SPECIALISTS OR MANAGERS BY APPLE, INC. IN ONE OF ITS RETAIL
STORES IN THE UNITED STATES FROM JULY 25, 2010 TO THE PRESENT.**

**INTRODUCTION**

You have received this Notice because Apple Inc. ("Apple") records indicate that you may be
eligible to join a lawsuit involving the alleged failure to pay wages and overtime compensation in
a collective action entitled *Amanda Frlekin et al. v. Apple Inc.* 3:13-cv-3451-WHA (the
"Lawsuit"). The Lawsuit has been filed in the U.S. District Court for the Northern District of
California.

The Lawsuit alleges that Apple has denied Geniuses, Specialists and Managers (the "Hourly
Employees") wages and overtime compensation under federal law (specifically, the Fair Labor
Standards Act [the "FLSA"]) by requiring them, without pay, to undergo personal package and
bag searches after clocking out from their stores. The Lawsuit seeks recovery of unpaid overtime
compensation, liquidated damages and other relief on behalf of Hourly Employees. Apple denies
any wrongdoing or liability in the Lawsuit. The Court conditionally certified the Lawsuit to
proceed as a "collective action" on behalf of Hourly Employees who worked in one of Apple's
retail stores in the United States from July 25, 2010 to the present.

**YOUR RIGHT TO PARTICIPATE IN THE LAWSUIT**

If you fit the Hourly Employee definition above, you may join the Lawsuit by completing and
mailing the attached "Consent to Join" form at the following address, in the enclosed self addressed
envelope with pre-paid postage.

**[INSERT CLAIM ADMINISTRATOR CONTACT INFORMATION]**

**TO JOIN THIS LAWSUIT, YOU _MUST_ SIGN, DATE, AND MAIL THE "CONSENT TO
JOIN" FORM. IF THE FORM IS NOT TURNED IN 60 DAYS FROM THE MAILING
DATE, _____, 2013, YOU WILL _NOT_ BE ABLE TO ASSERT CLAIMS UNDER
THE FLSA.**

Without sending the "Consent to Join" form, you are not automatically a party to this Lawsuit, nor are you required to become a party.

## EFFECT OF JOINING THIS LAWSUIT

If you choose to join this Lawsuit, you may be required to provide information relevant to the Lawsuit in the form of deposition or courtroom testimony.  If you join the Lawsuit, you will be bound by the judgment or settlement, whether it is favorable or unfavorable.  If the judgment is unfavorable, Apple may request that you pay certain costs, which you and/or Plaintiffs' Counsel have the right to oppose.  Further, if you join the Lawsuit, you designate the collective action representatives as your agents to make decisions on your behalf concerning the litigation.

## COUNSEL FOR PLAINTIFFS

If you choose to join this Lawsuit and agree to be represented by the named Plaintiffs through their attorneys, your counsel in this case will be the McLaughlin & Stern, LLP, The Law Office of Ginsberg, P.C. and The Kralowec Law Group.

Alternatively, you may join this Lawsuit and retain counsel of your own choosing at your own expense.  If you wish to retain your own counsel, your attorney must file your "Consent to Join" form with the Court within **60 DAYS FROM THE MAILING DATE**, _____, 2013 and enter an appearance.

## IF YOU CHOOSE NOT TO JOIN THIS LAWSUIT

If you choose not to join the collective action, you will not be affected by any judgment rendered or settlement reached in this case.   Further, you will be free to file your own lawsuit in any court where such a lawsuit may properly be brought.   IF YOU DO NOT WISH TO BE A PART OF THIS LAWSUIT, THEN DO NOT RETURN THE ATTACHED 'CONSENT TO JOIN' FORM.

## NO RETALIATION IS PERMITTED

Federal law prohibits Apple from discriminating or retaliating against you for joining or deciding not to join in this Lawsuit.

## FURTHER INFORMATION

If you have questions about this Notice, the Consent to Join Form, or the Lawsuit generally, you may contact Plaintiffs' counsel, Brett R. Gallaway of McLaughlin & Stern, LLP or Matthew Cohen of The Law Offices of Louis Ginsberg or at:

Brett R. Gallaway, Esq.                          Telephone: (212) 448-1100
McLaughlin & Stern                               bgallaway@mclaughlinstern.com
260 Madison Avenue
New York, NY 10016

OR

Matthew Cohen, Esq.                          Telephone: (516) 625-0105
The Law Offices of Louis Ginsberg, P.C.      matthewcohen21@gmail.com
1613 Northern Boulevard
Roslyn, NY 11576

**Please do not contact the Court or the Court clerk with questions about this Lawsuit.**

3

## CONSENT TO JOIN FORM
Consent to join under the Fair Labor Standards Act

**THIS FORM MUST BE TURNED IN 60 DAYS FROM THE MAILING DATE, _____, 2013 OR YOU WILL NOT BE A PART OF THIS LAWSUIT**

I work or worked for Apple Inc., at one or more of its retail stores in the United States as a non-exempt hourly employee.

I consent to join the Fair Labor Standards Act collective action entitled *Amanda Frlekin et al. v. Apple Inc.* 3:13-cv-3451-WHA to recover unpaid overtime wages under the federal Fair Labor Standards Act, 29 U.S.C. §216 (b).

I choose to be represented in this matter by the named Plaintiff and counsel (McLaughlin & Stern, LLP, The Law Office of Ginsberg, P.C. and The Kralowec Law Group) in this action.

Name:_____

Address:_____
        Number/Street

_____
    City                  State           Zip Code

Telephone:_____Email:_____

Signature:_____Dated:_____

*Please return in the accompanying postage pre-paid envelope to:*

**[INSERT CLAIMS ADMINISTRATOR CONTACT INFORMATION]**

4

# Exhibit S

Home ▸

| Event | Result |
|---|---|
| Unplanned sick day<br>(unless an approved leave under a separate policy) | One occurrence<br>(consecutive days of sickness count<br>as one occurrence) |
| Unplanned day off for personal reasons | One occurrence |
| Failure to Report<br>(Failing to notify a manager of your absence within 60 minutes after<br>your scheduled start time) | One occurrence and one<br>attendance warning |
| Arriving 11 minutes or more after the start of your shift | One occurrence |
| Returning late from your scheduled break or lunch<br>(no grace period applicable) | One occurrence |
| Departing early from your shift | One occurrence |
| Failing to notify a manager of your tardiness within 60<br>minutes after your scheduled start time | One occurrence and one<br>attendance warning |

## Do

- ☻ Managers should use these policies to determine whether to apply an occurrence.

- ☻ Managers should partner with their HR Leader and Market Leader before terminating an employee for attendance.

- ☻ Contact Apple's Leave Administrator if you need to be gone from work for three or more days.

- ☻ Clock out in and out consistently. We want you to be paid for the time you work.

- ☻ Inform your management team as soon as you know you will be late or absent from work.

Apple Internal Use Only. Updated January 21, 2013, by Retail Scheduling and Retail HR. Version 1.0. United States.
"Shake to Feedback" and choose Support for questions or comments about this policy.