1  KIMBERLY A. KRALOWEC (Cal. Bar No. 163158)
   THE KRALOWEC LAW GROUP
2  188 The Embarcadero, Suite 800
   San Francisco, Ca 94105
3  Telephone:    (415) 546-6800
   Facsimile:    (415) 546-6801
4  *kkralowec@kraloweclaw.com*

5  LEE S. SHALOV (admitted *pro hac vice*)
   BRETT GALLAWAY (admitted *pro hac vice*)
6  WADE WILKINSON (admitted *pro hac vice*)
   Mclaughlin & Stern, LLP
7  260 Madison Avenue
   New York, Ny 10016
8  Telephone:    (212) 448-1100
   Facsimile:    (212) 448-0066
9  *lshalov@mclaughlinstern.com*
   *bgallaway@mclaughlinstern.com*
10
   LOUIS GINSBERG (admitted *pro hac vice*)
11 LAW FIRM OF LOUIS GINSBERG, P.C.
   1613 Northern Blvd.
12 Roslyn, Ny 11576
   Telephone:    (516) 625-0105 X.13
13 *lg@louisginsberglawoffices.com*

14 *Attorneys for Plaintiffs Amanda Frlekin, Dean Pelle,*
   *Adam Kilker, Brandon Fisher and the Putative Classes*
15
                  UNITED STATES DISTRICT COURT
16              NORTHERN DISTRICT OF CALIFORNIA

17 AMANDA FRLEKIN and DEAN PELLE on          CASE NO. 13-cv-3451-WHA
   behalf of themselves and all others similarly
18 situated,                                  **AMENDED NOTICE OF MOTION AND**
                                              **MOTION FOR ORDER GRANTING**
19               Plaintiffs,                  **CONDITIONAL CERTIFICATION OF**
        v.                                    **FLSA COLLECTIVE ACTION AND FOR**
20                                            **ORDER REGARDING MAILING OF OPT-**
   APPLE INC., a California corporation,      **IN NOTICE TO FLSA COLLECTIVE**
21                                            **ACTION MEMBERS; MEMORANDUM**
                 Defendant.                   **OF POINTS AND AUTHORITIES IN**
22                                            **SUPPORT THEREOF**
23
24                                            Date:        December 19, 2013
                                              Time:        8:00 a.m
25                                            Dept.:       8
                                              Judge:       Hon. William H. Alsup
26                                            Action Filed: July 25, 2013
                                              Trial Date:  None
27
28

   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
                        Case No. 13-cv-3451-WHA

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on December 19, 2013 at 8:00 a.m., or as soon thereafter as the matter may be heard in Department 8 of this Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiffs Amanda Frlekin, Dean Pelle, Adam Kilker and Brandon Fisher ("Plaintiffs") on behalf of themselves and all others similarly situated, will and hereby do move this Court pursuant to Section 216(b) of the Federal Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. Sections 201, et seq., for an order:

   (1) Permitting Plaintiffs to proceed as a collective action pursuant to Section 216(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b);

   (2) Compelling Defendant to furnish the names, last known mailing addresses, telephone numbers, dates of employment and locations of employment for those individuals in the collective action;

   (3) Authorizing Plaintiffs to circulate a Collective Action Notice and Consent to Join Form to all individuals who are similarly situated in this action; and

   (4) Appointing McLaughlin & Stern, LLP and the Law Firm of Louis Ginsberg, P.C. as interim class counsel and the Kralowec Law Group as interim liaison counsel pursuant to Federal Rule 23(g).

   This Motion for Conditional Certification is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Lee S. Shalov, Esq. and the exhibits thereto, the files and records in this action, and such other documentary or oral evidence and argument as the Court may permit at the time of hearing on this motion.

Dated: November 14, 2013
       New York, NY                          **McLAUGHLIN & STERN, LLP**

                                             By
                                             Lee S. Shalov, Esq. (*pro hac vice*)
                                             Brett R. Gallaway, Esq. (*pro hac vice*)
                                             Wade Wilkinson, Esq. (*pro hac vice*)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... i-iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I. STATEMENT OF RELIEF SOUGHT................................................................... 1

II. INTRODUCTION ................................................................................................ 1

III. PROCEDURAL BACKGROUND ..................................................................... 3

IV. STATEMENT OF FACTS .................................................................................. 4

    (A)   Apple ............................................................................................ 4

    (B)   Apple's Hourly Employees ........................................................ 4

    (C)   Apple Personal Technology Cards ............................................ 6

    (D)   Apple's Bag and Product Check Policy .................................... 6

V. ARGUMENT ...................................................................................................... 11

    (A)   The Court Should Grant collective Certification Based On Apple's Mandatory Bag Check Policy That Applies To All Retail Store Employees............................. 11

        (1) A Lenient Standard Applies To Conditionally Certify A Collective Action And Facilitate Notice to Company Employees.......................................... 11

        (2) Apple's Employees Are Subject To A Uniform And Mandatory Policy That Requires Them To Wait In Apple Stores For Their Bags To Be Checked Without Compensation ......................................................................... 14

        (3) Individual Inquiries Regarding The Nature, Reasons And Length Of Apple's Bag And Product Check Policy Are Not Appropriate At The Initial Collective Certitfication Phase ........................................................................... 16

        (4) An Analysis Of Potential Conflicts Between Plaintiffs And Absent Class Members Is Not Appropriate At The Initial Certification Phase .................. 17

    (B)   The Court Should Authorize The Issuance of Notice To Apple Employees ........... 18

    (C)   The Court Should Appoint McLaughlin and Ginsberg As Interim Class Counsel And Kralowec As Interim Liaison Counsel ................................................ 19

        (1) Plaintiff's Counsel Has Expended Substantial Resources Identifying And Investigating The Claims In This Lawsuit ............................................... 21

1

(2) Plaintiffs' Counsel Has Extensive Employment Class Action And Complex
Litigation Experience ................................................................................. 22

(i) McLaughlin ................................................................................. 22

(ii) Ginsberg ................................................................................... 22

(iii) Kralowec ................................................................................. 23

(3) Plaintiffs' Counsel Has The Necessary Resources To Effectively Represent
The Proposed Class .................................................................................. 24

CONCLUSION ................................................................................................. 24

1

<u>TABLE OF AUTHORITIES</u>

2

**<u>CASES</u>**

3

4

*Adams v. Inter-Con Sec. Sys.*,

5
   242 F.R.D. 530 (N.D. Cal. 2007)..................................................................... 12,15

6

*Aguayo v. Oldenkamp Trucking*,

7
   2005 WL 2436477 (E.D. Cal. Oct. 3, 2005) ................................................... 13,14

*Akaosugi v. Benihana National Corp.*,

8
   282 F.R.D. 241 (N.D. Cal. 2012)..................................................................... 17,18

9

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,

10
   2007 WL 707475 (N.D. Cal. Mar. 6, 2007)...................................................... 11

11

*Brewer v. General Nutrition Corporation*,

12
   2013 WL 100195 (N.D. Cal. Jan. 7, 2013) ...................................................... 16

13

*Busk v. Integrity Staffing Solutions, Inc.*,
   713 F.3d 525 (9th Cir. 2013) ............................................................................ 2,15

14

*Cranney v. Carriage Services, Inc.*,

15
   2008 WL 608639 (D. Nev. Feb. 29, 2008) ...................................................... 19

16

*Daniels v. Aéropostale West, Inc.*,

17
   2013 WL 1758891 (N.D. Cal. April 24, 2013) ................................................ 12,13,15

18

*Deane v. Fastenal Co.*,

19
   2011 WL 5520972 (N.D. Cal. November 14, 2011)......................................... 15

20

*Escobar v. Whiteside Constr. Corp.*,

21
   2008 WL 3915715 (N.D. Cal. Aug. 21, 2008).................................................. 13

22

*Fasinelli v. Heartland Brewery, Inc.*,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007)............................................................... 19

23

*Fast v. Applebee's Int'l, Inc.*,

24
   243 F.R.D. 360 (W.D. Mo. 2007) ..................................................................... 19

25

*Four In One Co., Inc. v. SK Foods, L.P.*,

26
   2009 WL 747160 (E.D. Cal. Mar. 20, 2009) ................................................... 20

27

*Gessele v. Jack in the Box, Inc.*,
   2013 WL 1326563 (D. Ore. Jan. 28, 2013)....................................................... 18

28

*Gil v. Solectron Corp.*,
　　2009 WL 88346 (N.D. Cal. Jan. 9, 2009) ............................................................. 13

*Gomez v. H & R Gunlund Ranches, Inc.*,
　　2010 WL 5232973 (E.D. Cal. Dec. 16, 2010) ..................................................... 13

*Hallissey v. Am. Online, Inc.*,
　　2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ....................................................... 19

*Harris v. Vector Marketing Corp.*,
　　716 F. Supp. 2d 835 (N.D. Cal. 2010) ............................................................... 13

*Heffelfinger v. Elec. Data Sys. Corp.*,
　　2008 WL 8128621 (C.D. Cal. Jan. 7, 2008) ....................................................... 10

*Hill v. R+L Carriers, Inc.*,
　　690 F. Supp. 2d 1001 (N.D. Cal. 2010) .......................................................... 13,15

*Hoffmann-La Roche Inc. v. Sperling*,
　　493 U.S. 165 (1989) ...................................................................................... 11,12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
　　2008 WL 2024957 (N.D. Cal. May 9, 2008) ..................................................... 20,21

*In re Terazosin Hydrochloride Antitrust Litig.*,
　　220 F.R.D. 672 (S.D. Fla. 2004) ....................................................................... 22

*Keilholtz v. Lennox Hearth Products Inc.*,
　　268 F.R.D. 330 (N.D. Cal. 2010) ...................................................................... 10

*Kress v. PriceWaterhouseCoopers, LLP*,
　　263 F.R.D. 623 (E.D. Cal. 2009) ................................................................... 12-13

*Labrie v. UPS Supply Chain Solutions, Inc.*,
　　2009 WL 723599 (N.D. Cal. March 18, 2009) ............................................. 14,15,16

*Leuthold v. Destination Am., Inc.*,
　　224 F.R.D. 462 (N.D. Cal. 2004) ...................................................................... 13

*Lewis v. Wells Fargo & Co.*,
　　669 F. Supp. 2d 1124 (N.D. Cal. 2009) ....................................................... 13,17,19

*Luque v. AT&T Corp.*,
　　2010 WL 4807088 (ND Cal Nov. 19, 2010) ................................................ 12,13,14

*Masson v. Ecolab, Inc.*,
　　2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ..................................................... 14

*Morton v. Valley Farm Transport, Inc.,*
    2007 WL 1113999 (N.D. Cal. Apr. 13, 2007) ..................................................................... 14

*Parrish v. National Football League Players Inc.,*
    2007 WL 1624601 (N.D. Cal. June 4, 2007) .................................................................... 20

*Rees v. Souza's Milk Transp. Co.,*
    2006 WL 738987 (E.D. Cal. Mar. 22, 2006) .................................................................... 13

*Sanchez v. Sephora USA, Inc.,*
    2012 WL 2945753 (N.D. Cal. July 18, 2012)...........................................14,15,16,17

*Stanfield v. First NLC Fin. Servs.,*
    2006 WL 3190527 (N.D. Cal. Nov. 1, 2006).................................................................... 13

*Stillman v. Staples, Inc.,*
    2007 WL 7261450 (D.N.J. July 30, 2007) ...................................................................... 19

*Underwood v. NMC Mortg. Corp.,*
    245 F.R.D. 720 (D. Kan. 2007).......................................................................................... 19

*Wren v. RGIS Inventory Specialists,*
    2007 WL 4532218 (N.D. Cal. Dec. 19, 2007) ......................................................... 16,17

*Zaborowski v. MHN Government Services, Inc.,*
    2013 WL 1787154 (N.D. Cal. April 25, 2013) ............................................................... 17

## **STATUTES**

29 U.S.C. § 216(b)....................................................................................................... 11,12

## **RULES**

Fed. R. Civ. Pro. 23 ............................................................................................ 20,21,22,24

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF RELIEF SOUGHT

Plaintiffs, Amanda Frlekin, Dean Pelle, Adam Kilker and Brandon Fisher, seek an order pursuant to Section 216(b) of the Federal Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. Sections 201, *et seq.*, granting conditional certification of a collective action asserted against Defendant Apple Inc. ("Apple" or the "Company").  Plaintiffs also seek an order requiring Apple to produce contact information for Apple employees so they have an opportunity to opt in and preserve their rights under the FLSA.  Plaintiffs further seek approval of the collective action notice and opt-in form attached as Exhibit R to the accompanying Declaration of Lee S. Shalov dated November 13, 2013 (the "Shalov Decl.")   Finally, Plaintiffs seek an order pursuant to Federal Rule 23(g) appointing the law firms of McLaughlin & Stern LLP ("McLaughlin") and the Law Firm of Louis Ginsberg, P.C. ("Ginsberg") as interim class counsel and The Kralowec Law Group ("Kralowec") as interim liason counsel.

## II.   INTRODUCTION

Plaintiffs bring this action on behalf of themselves and other current and former hourly paid and non-exempt Specialists, Lead Specialists and Expert Specialists ("Specialists") and Managers, Senior Managers, Developmental Managers and Business Managers ("Managers") Genius Bar Employees ("Geniuses," and, together with Specialists and Managers, "Apple Hourly Employees") of Apple.   In addition to state law claims, Plaintiffs assert a single cause of action against Apple under the FLSA on behalf of:

> All Apple Hourly Employees who worked in an Apple retail store in the United States, who are or were employed within the three years preceding the filing of this action by the Defendant, and who were: (a) not compensated for off-the-clock time spent waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over forty hours per week at overtime rates (the "FLSA Collective Class.")

As described below, Apple has a mandatory policy at all retail stores in the United States that requires "[a]ll employees, including managers and Market Support employees, [to be] subject to personal package and bag searches." (emphasis added)  In furtherance of this policy, Apple admonishes its employees that they may "not leave the store prior to having your personal package … searched by a member of management or the security team (where applicable)."  Apple even warns employees that the "[f]ailure to comply with this policy may lead to disciplinary action, up to and including termination."

Based on multiple employee declarations, Apple documents and other evidence described below, the record shows that Apple employees are adversely impacted by this mandatory bag check policy, as they are required without compensation to spend time waiting for their bags and personal Apple devices to be checked by supervisory personnel after they have clocked out for meals and at shifts end.  As confirmed by the Ninth Circuit in *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. 2013), this practice violates the FLSA and applicable state law.

The record further shows that Apple employees wait 10 minutes or more several times a day for these checks to be completed as they must find a supervisor to conduct the check, wait in line with other employees and finally have the check performed, which includes having the serial numbers on their Apple products matched against a Personal Technology Card to ensure they are not improperly removing Apple merchandise.  The record further shows that these checks are occurring in Apple stores throughout the country, including stores in New York, New York; Los Angeles, California; Mission Viejo, California; San Louis Obispo, California; San Diego, California; Atlanta, Georgia; West Palm Beach, Florida; Cambridge, Massachusetts;  Las Vegas, Nevada; Columbus, Ohio; Nashville, Tennessee; Chandler, Arizona and Scottsdale, Arizona.

Based on the "lenient" standard endorsed by courts in this district, Plaintiffs now move for collective certification of the FLSA Collective Class so they may notify Apple employees of this litigation and allow them to opt-in and assert claims under the FLSA for unpaid wages.   As described below, collective certification is warranted when, as here, Plaintiffs provide "substantial allegations" that proposed class members are adversely impacted by a "single policy or plan." This circumstance is indisputably present here, as Apple has adopted and for many years employed a written, inflexible and unambiguous policy that applies to "<u>all</u>" employees throughout the United States.

In other cases where uniform policies or plans have been shown to exist, courts in this district have not hesitated to certify collective classes of employees working at hundreds of retail stores throughout the United States.   In rendering these decisions at the "first tier" certification phase, these courts have declined to consider competing declarations that some employees are not affected by the policy or the policy may not be enforced at every store.   These courts have also rejected assertions that "individualized" inquiries regarding the policy and its implementation preclude collective certification.

For these reasons, as discussed more fully below, Plaintiffs respectfully request that the Court grant collective certification and approve issuance of notice to members of the FLSA Collective Class.

## III.   **PROCEDURAL BACKGROUND**

The action captioned *Frlekin et al. v. Apple Inc.*, Case No. 13-cv-3451-WHA ("the *Frlekin* action") was commenced by Plaintiffs Amanda Frlekin and Dean Pelle on July 25, 2013.   The action captioned *Kilker et al. v. Apple Inc.*, Case No. 13-cv-3775-WHA ("the *Kilker* action") was commenced by Plaintiffs Adam Kilker and Brandon Fisher on August 14, 2013.   By Order dated September 9, 2013, the Court related the *Kilker* action to the *Frlekin* action pursuant to Local C.R.

3-12.

On October 10, 2013, a tag along action challenging Apple's bag check policy was commenced by an Apple employee captioned *Kalin v. Apple, Inc.*, 13-cv-4727-JSC (the "*Kalin* action"). By Order dated October 28, 2013, the Court related the *Kalin* action to the *Frlekin* action. Plaintiffs' counsel in the *Kalin* action has declined to consent to consolidate the *Kalin* action with *Frlekin* action and the *Kilker* action.

Additionally, on October 15, 2013, another tag along action challenging the same bag check policy was filed in the Superior Court of California, County of Santa Clara, captioned *Gauthier v. Apple Inc.*, 13-cv-254557-JK (the "*Gauthier* action"). On or before November 25, 2013, Apple intends to move to abate and/or stay the *Gauthier* action based upon this Court's jurisdiction over the *Frlekin*, *Kilker*, and *Kallin* actions. *See Frlekin* Docket No. 65.

## IV.   STATEMENT OF FACTS

### A.   Apple

Apple is one of the world's largest global technology companies. The Company designs, manufactures and markets mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, peripherals, networking solutions, and third-party digital content and applications. *See Frlekin* Complaint ¶ 15, *Kilker* Complaint ¶ 13.

Apple sells many of its products in retail stores, approximately 250 of which are located in the United States. Presently, Apple employs over 26,000 individuals in the Company's United States retail segment.[1]

### B.   Apple's Hourly Employees

Apple has several types of employees working in its retail stores. For example, Specialists

---

[1] http://www.apple.com/about/job-creation/

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA

assist customers interested in purchasing Apple products and accessories. Specialists may also perform light diagnostic checks on Apple hardware and software. *See* Shalov Decl., Ex. A, ¶ 3; Ex. B, ¶ 3; Ex. C, ¶ 5; Ex. F, ¶ 3; Ex. M, ¶ 3.

Additionally, the Company employs different levels of Managers in its retail stores. A Manager's duties include overseeing Specialists and tending to customer related needs. *See* Shalov Decl., Ex. E, ¶ 3; Ex. G, ¶ 3.

The Company also employs Geniuses in its retail stores across the country. A Geniuses' duties include assisting customers with hardware and software problems related to their Apple devices and performing detailed diagnostic tests and repairs on broken devices. *See* Shalov Decl., Ex. D, ¶ 3.

Specialists, Mangers and Geniuses are non-exempt employees who get paid hourly. Generally, Specialists are paid between $12.00 and $19.00 per hour,; Managers are paid between $25.00 and $40.00 per hour; and Geniuses are paid approximately $18.00 per hour. *See* Shalov Decl., Ex. A, ¶ 4; Ex. B, ¶ 4; Ex. C, ¶ 3; Ex. D, ¶ 4; Ex. E, ¶ 4; Ex. F, ¶ 4; Ex. G, ¶ 4; Ex. M, ¶ 4. Most Specialists, Managers and Geniuses have a standard work day of 8 hours and standard work week of 40 hours. *See* Shalov Decl., Ex. A, ¶ 2, 4; Ex. C, ¶ 4; Ex. D, ¶ 4; Ex. E, ¶ 4; Ex. F, ¶ 5; Ex. G, ¶ 4; Ex. M, ¶ 5.

Employees who work more than 5 hours a day may take one 30-minute meal period. Employees who work 8 or more hours may take a 60-minute meal period. Meal breaks are unpaid. *See* Shalov Decl., Ex. G, ¶ 9.

At all Apple retail stores in the United States, employees are required to clock in when they arrive at work, clock out when they go on a meal break, clock in when they return from a meal break and clock out when they leave for the day. *Frlekin* Complaint ¶ 20, *Kilker* Complaint ¶ 18. The time-keeping system and the procedures for using that system are the same at each store. *Id.*

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA

According to Apple's handbook, employees are instructed to "[c]lock in and out consistently," purportedly because "[w]e want you to be paid for the time you work." *See* Shalov Decl., Ex. S.

### C.     Apple Personal Technology Cards

Apple's hourly employees use Apple products -- such as IPads and IPhones -- in the course of their employment. To deter employee theft, Apple requires employees to log these and other Apple technology products onto a Personal Technology Card. A sample Personal Technology Card is attached to the Shalov Decl. as Ex. H. Once the card is initially completed, a Manager must verify the serial numbers and sign the card. *Id.*

The card must contain descriptions of each employee's products and their serial numbers. Each card also directs that "[w]hen leaving the store at any time, employees <u>must</u> ensure that the MOD [manager on duty] verifies the products and serial numbers on this card." *Id.* (emphasis added).

### D.     Apple's Bag And Product Check Policy

All Apple hourly employees are subject to a written policy mandating that their bags and Apple products are checked whenever they leave the store. *See* Shalov Decl., Ex. J. Even Apple admits in its Answer to the *Frlekin* Complaint that "it has a policy stating that some employees were subject to personal package and bag searches. *See* Shalov Decl., Ex. I, ¶ 21. Specifically, the applicable page of Apple's written policy states as follows:

**Employee Package and Bag Searches**

All personal packages and bags must be checked by a manager or security before leaving the store.

**General Overview:**

All employees, including managers and Market Support employees, are subject to personal package and bag searches. Personal technology must be verified against your Personal Technology Card (see section in this document) during all bag searches.

Failure to comply with this policy may lead to disciplinary action, up to and including termination.

**Do:**

Find a manager or member of the security team (where applicable) to search your bags and packages before leaving the store.

**Do Not:**

Do not leave the store prior to having your personal package or back [sic] searched by a member of management or the security team (where applicable).

Do not have personal packages shipped to the store. In the event that a personal package is in the store, for any reason, a member of management or security (where applicable) must search that package prior to it leaving the premises.

*See* Shalov Decl., Ex. J.

Apple is strict about compliance with these policies, which "apply to all employees of Apple Inc. and participating subsidiaries in the United States." *See* Shalov Decl., Ex. K. Under the heading "Summary" in its employee handbook, the Company alerts its employees that any "[v]iolation of an Apple policy could result in disciplinary action, up to an including termination." *Id.*

Apple's bag and product check policy applies only to employees. The Company does not conduct searches of the bags or products of customers when they enter and leave the store. *See* Shalov Decl., Ex. A, ¶ 8; Ex. B, ¶ 8; Ex. D, ¶ 8; Ex. E, ¶ 9; Ex. F, ¶ 11; Ex. G, ¶ 9; Ex. M, ¶ 12.

Apple's bag and product checks have received press attention over the last several years. For example, in an article posted in "*ars technica*" dated July 12, 2009 entitled "Bricks in iPod boxes: the retail employee perspective", one Apple employee was quoted as saying:

All employees' bags had to be searched by a manager prior to leaving the store at the end of a shift… Any personal tech gear had to be registered with the store, and a manager would issue a 'personal technology card' with your items and their serial numbers, which would be checked every time you left the building with said gear.

*See* Shalov Decl., Ex. L.

Apple's bag and product checks can take 10 minutes or more for each employee. *See* Shalov Decl., Ex. A, ¶¶ 8-9, 14; Ex. B, ¶¶ 8-10, 15; Ex. C, ¶¶ 9, 15 Ex. D, ¶¶ 8-9, 14; Ex. E, ¶¶ 9, 15; Ex. F, ¶¶ 13-14, 17; Ex. G, ¶¶ 6, 9-10, 15; Ex. M, ¶¶ 12, 15.   Oftentimes, Specialists and Managers leave for lunch or end their shift at the same time, which creates lengthy lines and backups for managers and others authorized to conduct security screenings who are often times engaged in other job related duties. *See* Shalov Decl., Ex. A, ¶¶ 8-9, 14; Ex. B, ¶¶ 8-10, 15; Ex. C, ¶¶ 9-10; Ex. D, ¶¶ 8-9, 11; Ex. E, ¶¶ 6, 10; Ex. F, ¶¶ 11, 15; Ex. G, ¶ 9; Ex. M, ¶ 13.   As a result, employees are forced to wait on lines before checks even begin. *See* Shalov Decl., Ex. A, ¶¶ 8-9, 14; Ex. B, ¶¶ 8-10, 15; Ex. C, ¶¶ 9-10; Ex. D, ¶¶ 8-9, 11; Ex. E, ¶¶ 6, 10; Ex. F, ¶¶ 11, 15; Ex. G, ¶ 9; Ex. M, ¶¶ 5, 15.   Once the check begins, moreover, the serial numbers on the employee's Personal Technology Card may be matched against the products taken from the store, a process that takes additional time and involves more than a perfunctory "eye-ball" check of an employee's bag. *See* Shalov Decl., Ex. A, ¶¶ 6-8; Ex. B, ¶¶ 5, 7-8, 15; Ex. C, ¶¶ 4, 8-10; Ex. D, ¶¶ 5-8; Ex. E, ¶¶ 6-9; Ex. F, ¶¶ 5, 12; Ex. G, ¶¶ 7-9; Ex. M, ¶¶ 11-12.   Significantly, none of the wait time associated with Apple's bag and product check policy is compensated because the checks occur <u>after</u> the employee clocks out for lunch or at shifts end. *See* Shalov Decl., Ex. A, ¶¶ 10-12; Ex. B, ¶¶ 11-13; Ex. C, ¶¶ 11-13; Ex. D, ¶¶ 10-12; Ex. E, ¶¶ 11-13; Ex. F, ¶¶ 8-10; Ex. G, ¶¶ 11-13; Ex. M, ¶¶ 8-9.

The waiting times from Apple's mandatory bag check policy are verified not only in the attached declarations from Apple employees, but in numerous website postings by Apple employees.   For example:

- Everyone, IT ISNT JUST A BAG CHECK. They also check the serial numbers of all your iDevices that you bring into the store to make sure you arent trying to walk out with a stores iDevice. When you first start working at an Apple retail store, they give you a card that you right down your iDevice serial numbers on, a manager checks it to make sure it matches the serial on your devices and then signs the card to show it was approved/seen/verified by a manager. Every time you leave the store,

for a break or getting off the clock, they have to make sure any iDevice you have on you, the serial matches the number written on that card that you keep on you. I worked at an Apple retail store 4 years and this is what they were doing.

- The problem though is that it's not just "bag checks", you are issued a tech card that carries the make and serial number of any Apple branded technology you bring into work. This includes iPhones, iPads, iPods, Macs, etc. Having to wait ten minutes after clocking out, on an always busy sales floor, people bumping into you, etc just so a manager can glance at your phone & card (rarely actually checking the numbers) to allow you to leave gets to be frustrating as hell after a while. Honestly at the end of the night it was rarely a problem since the managers were MUCH less occupied with pressing issues, i.e. customers.

- Absolutely. Years back I was in retail management for Apple, we got hammered on employee theft and shrinkage. We weren't nearly as busy as they are today, even still employees had to clock out online in order to be checked out. Myself being diabetic, I have to bring a messenger bag to work for my test kit and insulin in addition to work related documents.  Even as manager, we had to be examined before leaving, which cut my hourly by 15-20 minutes, resulting in blood sugar levels becoming a bit off as I had little time to eat and make adjustments.

This isn't about whiny or entitled individuals, it is simply a matter of policy. There is always a back end manager in the office, etc. who can easily check bags as part-time specialists leave. It does add up, and Apple certainly has been aware of the matter for quite a long time. They're a corporate entity, they will do whatever they can to squeeze every last penny from customers and employees. Not news. People used to take it at face value, now people have become empowered by the internet through petitions, determining if legal action is applicable, then find an attorney.

- Having worked at an apple store in the past for 2 years I can promise you this is a big deal for employees. They preach "assume positive intent" yet don't practice it. Every time you leave the building you are required to show your iPhone serial number and a "tech card" which has their devices serial number on it and is singed by a manager. Being in a very busy store, it's never easy to find a manager to "check you out". They're always doing something and sometimes that process takes 10 minutes or more. Not cool when you have a 15 minute break and need to be back on time to support your team.

- Checking the serial doesnt take too long, but in some stores that are always extremely busy like the store I worked at (Orlando so lots of tourists all the time), it could take some time before a manager can be made available to check your devices. And at night, everyone has to leave together so there could be 10 employees that all have to be checked at the same time before everyone leaves.

- I would agree about the bag check issue though. I have nothing against them and feel they are entirely appropriate, but management at my store and evidently at other stores showed an utter disregard for our personal time. In order to get a bag

check you need to be punched out, then you need to run around a crowded store to find a manager. Often time, the manager on the floor will be interacting with a customer and will not briefly pause the interaction for a bag check. Some managers get annoyed too when you're off to the side waiting for them to check your bags. Also if you called the manager's office to ask if someone can come out to perform bag checks because the managers on the floor are busy, they would often make some snarky remarks and act as if we've seriously inconvenienced them.

Due to the traffic in our store, it was not unusual for employees to leave 30 minutes beyond the end of their shift, and we would obviously not be compensated for that time. Also, employees got so fed up with waiting that many simply lied about not having any Apple technology on their person and would leave without having their tech cards checked during breaks.

*See* Shalov Decl., Ex. N (sic and emphasis in original).[2]

Apple's bag check policy is not limited to a few random stores.   As the attached declarations reveal, Apple's mandatory written policy is enforced in retail stores throughout the United States.   *See* Shalov Decl., Ex. A, ¶ 2; Ex. D, ¶ 2; Ex. E, ¶ 2  (bag checks conducted in Century City store in Los Angeles, California store); Ex. D, ¶ 2 (bag checks conducted in the Manhattan Beach store in Manhattan Village, California, the Beverly Center store in Los Angeles, California and The Grove store in Los Angles, California); Ex. B, ¶ 2 (bag checks conducted in CambridgeSide Galleria store in Cambridge, Massachusetts and Natick Collection retail store in Natick, Massachusetts); Ex. F, ¶ 2; Ex. M, ¶ 2  (bag checks conducted at Fifth Avenue store in New York, NY); Ex. C, ¶ 2 (bag checks conducted in Easton Towne Center store in Columbus, Ohio and Greenhills store in Nashville, Tennessee); Ex. G, ¶ 2 (bag checks conducted in Chandler Mall store in Chandler, Arizona, Scottsdale Quarter store in Scottsdale, Arizona, the Mission Viejo store, in Mission Viejo, California and the Higuera Street store in San Louis Obispo, California).

---

[2]     Notably, evidence submitted on a collective certification motion need not be admissible for trial purposes. *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not be admissible at trial."); *See also Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621 *n.18 (C.D. Cal. Jan. 7, 2008) *aff'd and remanded*, 492 F. App'x 710 (9th Cir. 2012).

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA

Employee complaints about the policy have also been registered with Apple management. In an e-mail sent to the Apple "Leadership Team" dated November 5, 2012, one employee wrote:

> I'm writing to ask for clarification of the tech checks policy. I understand that store policy is to perform a personal technology check every time an employee leaves the store. My concern is that since it's a work-related activity, tech checks shouldn't be performed off the clock or while on break. There is an obvious issue here - the point of the policy is to prevent employees from accidentally walking off with store property, but we often have to wait for minutes at a time because of how busy the store has become. If we are being paid for this (since it's a work requirement), it's not a problem, but then we have to go in the back of the store (where there's inventory) to clock out, which seems to negate the effectiveness of the whole policy.
>
> Should we be off the clock when waiting for a tech check, or perform the tech check on the floor, clock out in back, and then leave the store? Should our 15s start (if we are leaving the store) before or after the tech check on the floor? Based on my knowledge of cases like this with major retailers, I am trying to help Apple to avoid a lawsuit by pointing out this potential problem.

*See* Shalov Ex. O.

## V.    **ARGUMENT**

### A.    **THE COURT SHOULD GRANT COLLECTIVE CERTIFICATION BASED ON APPLE'S MANDATORY BAG CHECK POLICY THAT APPLIES TO ALL RETAIL STORE EMPLOYEES**

#### 1.    **A Lenient Standard Applies To Conditionally Certify A Collective Action And Facilitate Notice to Company Employees**

Under the FLSA, individuals may bring suit on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). This "collective action" allows employees to effectively enforce their rights under the FLSA and promotes judicial efficiency. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows [employees] the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity."); *see also Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475, at *5 (N.D. Cal. Mar. 6, 2007) ("a proper collective action encourages judicial efficiency

by addressing in a single proceeding claims of multiple plaintiffs"). After the Court conditionally certifies the class, additional employees may join the collective action by filing a written consent to "opt in" to the class. *See* 29 U.S.C. § 216(b); *see also Hoffman-La Roche*, 493 U.S. at 167-68. Thus, "[t]he distinctive feature of a collective action, setting it apart from Rule 23 class actions, is that the members of a collective action must 'opt-in' by providing written consent in order to become party plaintiffs." *Daniels v. Aéropostale West, Inc.*, 2013 WL 1758891, at *2 (N.D. Cal. April 24, 2013) ("*Aéropostale*").

Determining whether a collective action is appropriate is within the Court's discretion. *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007). The plaintiff bears the burden of showing that the proposed collective action members are similarly situated for purposes of Section 216(b). *Id.* at 535-36.

In *Luque v. AT&T Corp.*, the Court addressed the standards for determining whether a class of Plaintiffs is similarly situated. 2010 WL 4807088 (ND Cal Nov. 19, 2010). Describing the process as "a two-step approach", the Court explained the process as follows: *Id.* at *3:

> First, the court makes an initial, conditional determination of whether plaintiffs are similarly situated, deciding whether a collective action should be certified for the purpose of sending notice to potential class members. The initial notice stage determination uses a lenient standard that typically results in certification....Plaintiffs must simply provide substantial allegations, supported by declarations or discovery. Courts need not even consider evidence provided by defendants at this stage. Then, once discovery is complete, and usually prompted by a defendant's motion for decertification, the court makes a second determination, using a stricter standard.

*Id.* at *3 (emphasis added) (citations and internal quotation marks omitted).

Here, because discovery is only beginning, the case is in the first stage where the Court makes only the initial, conditional determination as to whether the Plaintiffs are similarly situated. *Id.* at *3 ("[C]ourts in this Circuit overwhelmingly 'refuse to depart from the notice stage analysis prior to the close of discovery'") (quoting *Kress v. PriceWaterhouseCoopers, LLP*, 263 F.R.D. 623,

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA

629 (E.D. Cal. 2009)).  The first stage has been described as involving a "very light burden." *Luque*, 2010 WL 4807088 at *6; *see Kress*, 263 F.R.D. at 631 ("[P]laintiffs have provided some evidence of similarity.  This suffices at this stage.")  Other courts have described the burden as "a lenient one" and one that is "fairly easy to satisfy."  *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009); *see also Aéropostale*, 2013 WL 1758891, at *2  ("Due to the limited amount of evidence, courts make this determination under a fairly lenient standard which typically results in conditional certification."); *Gil v. Solectron Corp.*, 2009 WL 88346, at *3 (N.D. Cal. Jan. 9, 2009).  In all events, the standard applied is far less rigorous than the commonality and predominance requirements of Federal Rule 23.  *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469-470 (N.D. Cal. 2004).

In the first phase, Plaintiffs need only "provide substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan."  *Luque*, 2010 WL 4807088 at *4 (internal quotation omitted); *Aéropostale*, 2013 WL 1758891, at *2.  "All that need be shown... is that some identifiable factual or legal nexus binds together the various claims of the class members" or that the plaintiffs "are generally comparable to those they seek to represent."  *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010); *Stanfield v. First NLC Fin. Servs.*, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006).  This burden can be met through the filing of just several declarations from affected employees. *See, e.g., Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008) (conditional certification based on three declarations); *Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) ("A handful of declarations may suffice.")[3]

---

[3]    *See also Gomez v. H & R Gunlund Ranches, Inc.*, 2010 WL 5232973 (E.D. Cal. Dec. 16, 2010) (declarations from two plaintiffs and one class member); *Rees v. Souza's Milk Transp. Co.*, 2006 WL 738987 (E.D. Cal. Mar. 22, 2006) (declarations from two plaintiffs); *Aguayo v.*

- 13 -

Moreover, "[t]he Court need not consider Defendants' declarations," as "the fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." *Luque*, 2010 WL 4807088 at *5 (internal quotation omitted). "[W]hile it may be true that the defendants' evidence will later negate the plaintiffs' claims, that should not bar conditional certification at the first stage." *Id.* at *5 (internal quotation and quotation alterations omitted).

Finally, the "similarly-situated" standard does not require that all class member claims must be identical. *Labrie*, 2009 WL 723599 at *4. Instead, a class may be certified under the FLSA "if the named plaintiff can show that his position was or is similar to those of the absent class members. *Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *2 (N.D. Cal. July 18, 2012) (citation omitted).

> **2.**   **Apple's Employees Are Subject To A Uniform And Mandatory Policy That Requires Them To Wait In Apple <u>Stores For Their Bags To Be Checked Without Compensation</u>**

This is a prototypical case for collective certification under the FLSA. As demonstrated above, Apple has imposed a mandatory, written policy that applies to every member of the FLSA Class. That policy is non-discretionary and unambiguous:

> <u>All</u> employees, including managers and Market Support employees, are subject to personal package and bag searches. Personal technology <u>must be</u> verified against your Personal Technology Card (see section in this document) during <u>all</u> bag searches.

*See infra*, pg. 6 (emphasis added). Apple is clear and unmistakably serious about the consequences of failing to abide by this mandate: "Failure to comply with this policy may lead to disciplinary action, up to and including termination." *Id.*

---

*Oldenkamp Trucking*, 2005 WL 2436477 (E.D. Cal. Oct. 3, 2005) (declaration of single named plaintiff); *Morton v. Valley Farm Transport, Inc.*, 2007 WL 1113999 (N.D. Cal. Apr. 13, 2007) (declarations of two plaintiffs and two opt-ins); *Masson v. Ecolab, Inc.*, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) (declarations of one plaintiff and two opt-ins).

Far from "mere averments in a pleading" (*see Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 WL 723599, at *6 (N.D. Cal. March 18, 2009)), the record is replete with eight employee declarations, e-mails and other evidence demonstrating that employees from multiple Apple stores throughout the United States are adversely impacted by a uniform corporate policy that requires them to spend time waiting for their bags and products to be checked by supervisory personnel.[4] This practice and policy, when imposed without compensation as Apple does here, violates applicable federal and state labor laws. *See Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. 2013).

In light of these facts, every factor supporting collective certification exists in this case. First, members of the FLSA Class are "together the victims of a single decision, policy, or plan." *Aéropostale*, 2013 WL 1758891, at *2. Second, there is "some identifiable factual or legal nexus [*to wit*, Apple's bag and product search policy] that binds together the various claims of the class members." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010). Finally, each of the Plaintiffs "are generally comparable to those they seek to represent." *Id.* Viewed alone and certainly when considered together, there are abundant and compelling "substantial allegations" that warrant collective certification in this case. Moreover, based upon similar allegations of uniform plans or policies, courts in this district have not hesitated to certify collective actions involving thousands of employees at retail stores throughout the country. *See, e.g., Deane*, 2011 WL 5520972 (granting collective certification to a class of employees at over 2300 store locations in the United States); *Sanchez*, 2012 WL 2945753 (granting collective certification to class of "Specialists" employed at over 280 retail stores across the United States); *Adams*, 242 F.R.D. at 537–38 (certifying nationwide FLSA class of employees working in over "500 different locations,

---

[4]   *Compare Deane v. Fastenal Co.*, 2011 WL 5520972 (N.D. Cal. November 14, 2011) ("The Court finds particularly persuasive the fact that plaintiffs worked at multiple stores in multiple states, and thus have personal knowledge of the similarities between the stores.")

under more than fifty different contracts and in thirty-six different states.")

### 3. Individual Inquiries Regarding The Nature, Reasons And Length Of Apple's Bag And Product Check Policy Are Not Appropriate At The Initial Collective Certification Phase

In opposing collective certification, Apple may offer declarations and other evidence that some employees did not have their bags checked; some bag checks lasted a few minutes or less; and some stores did not enforce the bag check policy or did so only selectively. Undoubtedly, Apple will assert based on these showings that there are too many "individualized inquires" to warrant certification. *See Frlekin* Joint Case Management Statement, Docket No. 45, pg. 2 ("Apple contends whether bag checks occurred and how long these checks lasted involves individualized inquiries based on a number of factors.")

However, courts in this district have repeatedly rejected such argumentation at the first phase of collective certification.[5] Indeed, as discussed above, Courts have refused to consider declarations submitted by a defendant seeking to refute the plaintiff's allegations of a uniform plan or policy at the initial certification phase.[6] Likewise, the existence of "deviations" from a

---

[5] *See, e.g., Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 WL 723599, at *6 (Rejecting argument that "fact-specific inquiry" precluded certification as the defendant's arguments "raise issues primarily going to the merits and are more appropriately addressed on a motion to decertify or motion for summary judgment  once notice has been given, the deadline to opt-in has passed, and discovery is closed"); *Sanchez*, 2012 WL 2945753 at *4 (Rejecting assertion that "conditional certification is inappropriate on the grounds that determining whether Plaintiff and putative class members are similarly situated will entail individualized inquiries, ostensibly because Specialists' duties vary from store to store."); *Wren v. RGIS Inventory Specialists*, 2007 WL 4532218, at *7 (N.D. Cal. Dec. 19, 2007) ("The Court rejects Defendants' argument that conditional certification should be denied because the time spent donning varies from district-to-district. This variation goes to damages and, as the court in *Adams* explained, such variations are not relevant to the threshold determination of whether the putative class members were subjected to a uniform policy."); *Zaborowski v. MHN Government Services, Inc.*, 2013 WL 1787154, at * 3 (N.D. Cal. April 25, 2013) (Rejecting assertion that that "the individual differences among the MFL Consultants' work experiences means that they are not 'similarly situated' for the purposes of conditional FLSA collective action certification.")

[6] *See, e.g., Brewer v. General Nutrition Corporation*, 2013 WL 100195, at *5 (N.D. Cal. Jan. 7, 2013) ("At this 'notice stage,' the declarations and evidence provided by GNC do not negate the

- 16 -

challenged policy provides no basis for denying certification at the first-tier stage. *See Wren v. RGIS Inventory Specialists*, 2007 WL 4532218, at *7. Accordingly, the potential existence of differing class member experiences in connection with Apple's mandatory bag check policy does not require denial of conditional certification.

### 4. An Analysis Of Potential Conflicts Between Plaintiffs And Absent Class Members Is Not Appropriate At The Initial Certification Phase

Defendants may also assert there are "conflicts of interest" between employees who were subject to Apple's bag check policy and managers who conducted the checks. As with any attempt to create "individualized" and disparate factual issues, such inquiries have no place in evaluating a motion for conditional certification, which does not address the "typicality" and "adequacy" prongs of a Federal Rule 23 motion for class certification where potential conflicts may be a relevant consideration.

Even if such inquiries were appropriate at this phase, the record provides no basis for finding that a disabling conflict of interest exists in this case. Like Specialists and other Apple employees, Managers are themselves subject to precisely the same uniform bag check policy challenged in this litigation. *See* Shalov Decl., Ex. E ¶¶ 5-7; Ex. G, ¶¶ 5-7. In performing such checks, moreover, Managers are not engaging in improper conduct or exercising discretion at the expense of other Apple employees, but merely following a written protocol established by their employer. *See* Shalov Decl., Ex. E ¶ 5; Ex. G, ¶ 5. *Compare Akaosugi v. Benihana National Corp.*, 282 F.R.D. 241, 254 (N.D. Cal. 2012) (Rejecting conflict of interest argument when

---

showing Plaintiff has made for conditional certification."); *Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124, 1128 (N.D. Cal. 2009) ("Defendant's fifty-four declarations, mostly from current employees, do not undermine this showing. Plaintiffs meet their burden at the notice stage, and thus the Court need not consider the declarations at this time."); *Sanchez*, 2012 WL 2945753 at *4 (declining to consider competing declarations because "federal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants.")

"[m]anagers did not retain discretion regarding the forfeiture of vacation benefits."); *Gessele v. Jack in the Box, Inc.*, 2013 WL 1326563, at \*34 (D. Ore. Jan. 28, 2013) (Rejecting conflict of interest argument that "the shoe classes lack typicality because those plaintiffs who were responsible for enforcing Jack in the Box's shoe policies were part of the problem.")  Here, because Managers are adversely impacted by precisely the same policy that affects other Apple employees, they "share[] the same interests as the rest of the members" of the FLSA Class. *Akaosugi*, 282 F.R.D. at 254.

**B.   THE COURT SHOULD AUTHORIZE THE ISSUANCE OF NOTICE TO APPLE EMPLOYEES**

Plaintiffs propose a neutral and straightforward form of notice that will inform potential opt-ins of their statutory opt-in rights.  *See* [Proposed] notice attached to the Shalov Decl. as Ex. R (the "Notice").  Among other things, the Notice explains the nature of the action, Plaintiffs' allegations, and Apple's denial of liability.  It also makes clear that the Court has not adjudicated the merits of the dispute.  The Notice further identifies a website where employees considering their options can obtain further information.  The Notice provides Plaintiffs' counsel's contact information, so that potential opt-ins can speak with the attorneys whom they would be designating to represent them should they choose to opt in.  Further, the Notice explains the procedural posture of the case, the significance of documents and memories as evidence, the consequences of speaking with the parties, and the procedure for opting in.  It also warns that employees who opt in will be bound by the resulting judgment, whether favorable or unfavorable.  The Notice also attaches a form for FLSA Collective Class members to consent to join the litigation.  Finally, the notice complies with this Court's guidance and directives in the *Aéropostale* proceeding.

Dissemination of the Notice by mail and e-mail will help ensure that the Court-ordered Notice will be effective in reaching prospective opt-ins and informing them of their rights.  For various reasons, mailed Notice inevitably fails to reach every single class member.  Corporate

address databases sometimes have errors.  Working people, deluged with mail and busy with the concerns of daily life, may not recognize the Court-issued Notice in a pile of junk mail and bills.  It is also inevitable that some recipients will misunderstand the Notice's significance or requirements.  In addition, individuals no longer working for Apple may have moved, perhaps more than once, since leaving Apple and they may not receive forwarded Notice by mail.

Accordingly, Plaintiffs' counsel also propose disseminating the Notice by e-mail.  This will improve the effectiveness of the Notice by increasing the chances that potential opt-ins will see it.  E-mail notice is an efficient and inexpensive complement to mailed notice and is an increasingly popular means of communication.  It is especially effective in communicating with class members who may be visiting or reside outside the United States at the moment Notice is disseminated.  Courts are increasingly approving the inclusion of e-mail addresses with other contact information for notice purposes in recognition of the growing preference for communication by that method.  *See, e.g. Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124 (N.D. Cal. 2009); *Cranney v. Carriage Services, Inc.*, 2008 WL 608639 (D. Nev. Feb. 29, 2008) (ordering production of e-mail addresses and telephone numbers with other contact information on certification); *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360 (W.D. Mo. 2007)(same); *Underwood v. NMC Mortg. Corp.*, 245 F.R.D. 720 (D. Kan. 2007) (same); *Stillman v. Staples, Inc.*, 2007 WL 7261450 (D.N.J. July 30, 2007) (same); *Fasinelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) (ordering production of e-mail addresses *sua sponte*); *Hallissey v. Am. Online, Inc.*, 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) (ordering production of e-mail address).

**C.      THE COURT SHOULD APPOINT McLAUGHLIN
AND GINSBERG AS INTERIM CLASS COUNSEL
AND KRALOWEC AS INTERIM LIAISON COUNSEL**

As there are several copy-cat complaints and other law firms potentially seeking to prosecute claims surrounding Apple's bag check policy, it is appropriate for the Court to appoint

interim counsel under Federal Rule 23(g)(3) to protect the rights of the class. *See Parrish v. National Football League Players Inc.*, 2007 WL 1624601, at *9 (N.D. Cal. June 4, 2007). As described in the Shalov Decl., the *Kalin* action was filed in this Court on October 10, 2013 and thereafter related to the *Frlekin* action. The *Kalin* action is a "tag along" action that overlaps and duplicates the allegations and claims in the *Frlekin* action. Indeed, entire paragraphs in the *Kalin* action Complaint (*see* Shalov Decl., Ex. P) were copied from allegations contained in the *Frlekin* action Complaint. *Compare* Shalov Decl. Ex. P, ¶¶ 10, 12, 17-20 and Shalov Decl. Ex. Q, ¶¶ 3, 20-23. Like the *Frlekin* action, moreover, the Plaintiff in the *Kalin* action seeks to represent a nationwide class of Apple employees under the FLSA (*see* Shalov Decl. Ex. P ¶ 27) and a class of California employees under Federal Rule 23. *Id.*, ¶¶ 25, 26. In addition, most of the causes of action in the *Kalin* action are the same as the causes of action in the *Frlekin* action. Likewise, the recently filed *Gauthier* action contains substantially the same claims and allegations as those contained in *Frlekin*.

The appointment of interim class counsel is governed by Federal Rule 23(g)(3). Rule 23(g)(3) -- as amended -- authorizes "the court to designate interim counsel to act on behalf of the putative class before the certification decision is made." *See* Federal Rule 23(2)(A) advisory committee's note. Courts routinely utilize the factors set forth in Rule 23(g)(1) to evaluate an application for appointment of interim class counsel. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2008 WL 2024957, at *1 (N.D. Cal. May 9, 2008) (noting that "the criteria specified in Rule 23(g)(1) for the appointment of class counsel shall be used by the Court in making its [interim class counsel] designation"); *see also Four In One Co., Inc. v. SK Foods, L.P.*, 2009 WL 747160, at *1-2 (E.D. Cal. Mar. 20, 2009) (applying the guidelines of Rule 23(g) when appointing interim class counsel). In doing so, Rule 23(g)(1)(A) requires the court consider:

(i)    the work counsel has done in identifying or investigating potential claims in

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA

the action;

  (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

  (iii)  counsel's knowledge of the applicable law; and

  (iv)  the resources that counsel will commit to representing the class[.]

*Id.*   A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *In re CRT*, 2008 WL 2024947, at *1 (citing Fed. R. Civ. P. 23(g)(1)(B)).   McLaughlin, Ginsberg and Kralowec (collectively, Plaintiffs' Counsel") satisfy the requirements of Rule 23(g) and should be appointed Interim Co-Lead Counsel and Liason Counsel in this action.

    1.  **Plaintiffs' Counsel Has Expended Substantial Resources**
      <u>**Identifying And Investigating The Claims In This Lawsuit**</u>

    Federal Rule 23(g)(1)(A)(i) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action[.]"  As described in the Shalov Decl., Plaintiffs' Counsel has already expended significant time and resources in connection with this litigation.   In addition to analyzing and developing the claims asserted in the *Frlekin* Complaint, Plaintiffs' Counsel has: (i) interviewed multiple Apple employees about their experiences and lost compensation in connection with Apple's bag check policy; (ii) secured declarations and documents from many of these employees and been retained to represent employees in multiple states; (iii) drafted and responded to document requests and interrogatories; (iv) arranged for depositions of Plaintiffs and opt-ins in California, Nevada, Massachusetts and New York; (v) prepared a case management statement and appeared for a case management conference before the Court; and (vi) prepared motions to relate, to consolidate and for collective certification. *See* Shalov Decl. Exs. A-G, M; *Frlekin* Docket Nos. 33, 45, 58.

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA

2.    **Plaintiffs' Counsel Has Extensive Employment,
Class Action And Complex Litigation Experience**

The second and third requirements considered under Rule 23(g)(1)(A) are "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" and "counsel's knowledge of the applicable law[.]"  *See* Federal Rule 23(g)(1)(A)(ii) and (iii).  Although no single factor is determinative when evaluating prospective class counsel, courts often consider these two factors together, stating they are the most persuasive factors in choosing lead counsel.  *See In re Terazosin Hydrochloride Antitrust Litig,*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (finding "the most persuasive" consideration when appointing class counsel related to counsel's "experience in, and knowledge of, the applicable law").  Plaintiffs' Counsel satisfy these factors as well.

i.    **McLaughlin**

Established in 1898, McLaughlin has over 100 attorneys and support staff.  The firm provides a diverse range of sophisticated legal services to businesses and individuals and has particular expertise in complex litigation, securities, mergers and acquisitions, hedge funds, and corporate finance.

The McLaughlin partner in charge of this litigation is Lee S. Shalov.  Mr. Shalov has been lead or co-lead counsel in commercial class actions for over 25 years.  These include wage and hour class actions, securities class actions and consumer class actions.    Many of the cases Mr. Shalov has overseen have generated millions of dollars in recoveries for employees, investors and consumers nationwide.  Several of these actions have been venued in state and federal courts in California.  Mr. Shalov also has extensive trial experience, having conducted jury and non-jury trials in class and derivative proceedings.  *See* Shalov Decl., ¶ 5.

ii.    **Ginsberg**

Louis Ginsberg Law Offices has provided legal services almost exclusively to employees

for nearly 20 years.  Always practicing only employment law, Louis Ginsberg Law Offices has been involved in hundreds of federal and state court cases on behalf of workers, including numerous wage and hour class actions.  Louis Ginsberg Law Offices has recovered millions of dollars for its clients.

Louis Ginsberg, the Head of Louis Ginsberg Law Offices, has practiced only employment law for approximately 25 years.  Mr. Ginsberg has represented workers in almost every type of employment dispute, including uncompensated security checks.  Mr. Ginsberg has authored or co-authored articles or been quoted in numerous publications including The American Banker, Working Woman Magazine, The New York Law Journal, The Bureau of National Affair's Daily Labor Report, HR Magazine, The Employment Law Reporter, and The Metropolitan Corporate Counsel.  His cases have been discussed in many newspapers including the N.Y. Daily News, New York Post, and Staten Island Advance. *See* Shalov Decl., ¶ 5.

### iii.   Kralowec

The Kralowec Law Group was founded in 2010 by attorney Kimberly A. Kralowec.  The firm's practice focuses on plaintiffs' class action litigation (antitrust, consumer, wage & hour, and civil rights) in state and federal courts.  During her 20-year career as a litigator, Ms. Kralowec has handled class action matters involving employment (wage and hour and misclassification), consumer finance (mortgage and auto), retail products (mislabeling and nondisclosure), antitrust (price-fixing and monopolization), and civil rights (Unruh Act).  She has also handled numerous class actions alleging violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§17200 *et seq.*) and Consumers Legal Remedies Act (Cal. Civ. Code §§1750 *et seq.*).  Additionally, Ms. Kralowec was named by the *Daily Journal* as one of the Top 100 Labor & Employment Lawyers in California and one of the Top 100 Women Lawyers in California, and received a 2013 *California Lawyer* Attorney of the Year ("CLAY") Award. *See* Shalov Decl., ¶ 5.

**3.   Plaintiffs' Counsel Has The Necessary Resources
To Effectively Represent The Proposed Class**

Finally, courts consider whether "the resources that counsel will commit to representing the class..." are adequate to advance the litigation.  Federal Rule 23(g)(1)(A)(iv).  Here, there is no doubt Plaintiffs' Counsel are, and will continue to be, committed to this litigation.  The firms have compiled a litigation team with the experience and skill capable of seeing a complex lawsuit through from beginning to end.   Plaintiffs' Counsel will continue to commit all the resources necessary to effectively represent the class here, including expending funds and resources for depositions, document review and experts.  As their prior experience in other class actions proves, Plaintiffs' Counsel will provide the resources necessary to litigate this case to a conclusion that secures a successful and meaningful recovery for members of the proposed class.   *See* Shalov Decl., ¶¶ 5-6.

**VI.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for collective certification, issuance of the Notice and appointment of Plaintiffs' Counsel as interim co-lead and liason counsel.

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA

1   Dated: November 14, 2013
    New York, NY                                    **McLAUGHLIN & STERN, LLP**
2

3
                                                    By_____
4                                                   Lee S. Shalov, Esq. (*pro hac vice*)
                                                    Brett R. Gallaway, Esq. (*pro hac vice*)
5                                                   Wade Wilkinson, Esq. (*pro hac vice*)
                                                    260 Madison Avenue
6                                                   New York, NY 10016
                                                    Telephone: (212) 448-1100
7                                                   lshalov@mclaughlinstern.com
                                                    bgallaway@mclaughlinstern.com
8

9

10                                                  Louis Ginsberg, Esq. (*pro hac vice*)
                                                    LAW FIRM OF LOUIS GINSBERG, P.C.
11                                                  1613 Northern Blvd.
                                                    Roslyn, New York 11576
12                                                  Telephone: (516) 625-0105
                                                    lg@louisginsberglawoffices.com
13

14

15                                                  Kimberly A. Kralowec (Cal. Bar No. 163158)
                                                    THE KRALOWEC LAW GROUP
16                                                  188 The Embarcadero, Suite 800
                                                    San Francisco, Ca  94105
17                                                  Telephone:     (415) 546-6800
                                                    *kkralowec@kraloweclaw.com*
18

19                                                  *Attorneys for Plaintiffs, the FLSA Collective*
                                                    *Class, and the individual state classes*
20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION
Case No. 13-cv-3451-WHA