1   KIMBERLY A. KRALOWEC (Cal. Bar No. 163158)
    THE KRALOWEC LAW GROUP
2   188 The Embarcadero, Suite 800
    San Francisco, Ca  94105
3   Telephone:    (415) 546-6800
    Facsimile:    (415) 546-6801
4   *kkralowec@kraloweclaw.com*

5   LEE S. SHALOV (admitted *pro hac vice*)
    BRETT GALLAWAY (admitted *pro hac vice*)
6   WADE WILKINSON (admitted *pro hac vice*)
    Mclaughlin & Stern, LLP
7   260 Madison Avenue
    New York, Ny  10016
8   Telephone:    (212) 448-1100
    Facsimile:    (212) 448-0066
9   *lshalov@mclaughlinstern.com*
    *bgallaway@mclaughlinstern.com*
10
    LOUIS GINSBERG (admitted *pro hac vice*)
11  LAW FIRM OF LOUIS GINSBERG, P.C.
    1613 Northern Blvd.
12  Roslyn, Ny  11576
    Telephone:    (516) 625-0105 X.13
13  *lg@louisginsberglawoffices.com*

14  *Attorneys for Plaintiffs Amanda Frlekin, Dean Pelle,*
    *Adam Kilker, Brandon Fisher and the Proposed Classes*
15
                    UNITED STATES DISTRICT COURT
16                  NORTHERN DISTRICT OF CALIFORNIA

17  AMANDA FRLEKIN, DEAN PELLE, ADAM          CASE NO. 13-cv-3451-WHA
    KILKER and BRANDON FISHER on behalf of
18  themselves and all others similarly situated,

19                              Plaintiffs,    **PLAINTIFFS' FIRST**
                                               **AMENDED COMPLAINT**
20          v.

21  APPLE INC., a California corporation,

22                              Defendant.

23

24

25

26

27

28

Plaintiffs ("Plaintiffs"), on behalf of themselves and all other similarly situated persons, by and through their undersigned counsel, allege upon personal knowledge as to themselves and upon information and belief as to other matters (which is based on, among other things, their experiences at Defendant's stores, review of Defendant's records, conversations with Defendant's employees and investigation of their counsel), as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former hourly paid and non-exempt Specialists, Lead Specialists and Expert Specialists ("Specialists"); Managers, Senior Managers, Developmental Managers and Business Managers ("Managers") and Genius Bar Employees ("Geniuses" and together with Specialists and Managers, "Apple Hourly Employees") of Defendant Apple Inc. ("Apple" or "Defendant"). The Defendant in this action, by virtue of its management and control over the wages and work of Apple Hourly Employees, is an "employer" under applicable labor law.

2.      Apple operates as one of the world's largest global technology companies which designs, manufactures and markets mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, peripherals, networking solutions, and third-party digital content and applications. Apple has a presence and retail stores in 44 states, including a permanent presence in California, and employs approximately 307,250 people in the United States, 26,000 of who work in Apple's retail segment.

3.      A Genius's duties include addressing various hardware and software issues with Apple products. A Specialist's duties include customer support relating to retail sales of Apple products and accessories. Specialists are also required to have knowledge of and be able to perform light diagnostic checks on Apple hardware and software. A Manager's duties include overseeing the Specialists and tending to customer-related needs. Managers are non-exempt

hourly paid employees who are entitled to overtime compensation.

4.      As particularized below, Apple has engaged and continues to engage in illegal and improper wage practices that have deprived Apple Hourly Employees throughout the United States of millions of dollars in wages and overtime compensation.  These practices include requiring Apple Hourly Employees to wait in line and undergo two off-the-clock security bag searches and clearance checks when they leave for their meal breaks and after they have clocked out at the end of their shifts.  These "personal package and bag searches" are done for the sole benefit of Apple; are a uniform practice and policy in all Apple retail stores nationwide; and are not imposed on Apple's customers.  This illegal practice and policy has been known to the Defendant for years and Apple continues to require Apple Hourly Employees to endure these required but uncompensated security checks.  For these reasons, Plaintiffs bring this action on behalf of themselves and other Apple Hourly Employees to recover unpaid wages, overtime compensation, penalties, interest, injunctive relief, damages and reasonable attorneys' fees and costs under, among other statutes, the Fair Labor Standards Act (the "FLSA") §§ 201 *et. seq.*, Cal. Lab. Code §§ 201, 202, 203, 204, 226.7, 510, 1194, and 2698 *et. seq.* (the "CLC"), IWC Wage Order 4 (8 Cal. Code Regs. § 11040), California Unfair Competition Law (Cal Bus. & Prof Code §§ 17200 *et seq.*), McKinney's Labor Law (the "NYLL"), §§ 190 *et seq.*, §§ 650 *et seq.*, and 12 NYCRR § 142-2.2, Mass Gen. Laws Ch. 151 §§ 1A and 1B, and Ohio Revised Code §§ 4111 *et seq.*

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. §216(b).

6.      This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. 1332(d).  This is a proposed class action in which: (a) there are 100 or more members in each proposed class; (b) at least some members of each

proposed class have a different citizenship from the Defendant; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law wage and hour claims because those claims derive from a common nucleus of operative fact.

8.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendant is headquartered in this judicial district and a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

### INTRADISTRICT ASSIGNMENT

9.      This matter is properly assigned to the San Francisco Division of this District pursuant to Civil Local Rule 3-2(c) because Defendant maintains numerous retail stores within the counties comprising the San Francisco Division and employs numerous hourly non-exempt employees at those locations, who, on information and belief, were subjected to Defendant's mandatory personal package and bag search policy challenged by this action.   As stated in Defendant's written rules, the mandatory personal package and bag search policy "appl[ies] to all employees of Apple Inc. and participating subsidiaries in the United States."  *See* Apple Employee Policies.   Therefore, a substantial part of the events or omissions that give rise to the claims occurred within this Division within the meaning of Civil Local Rule 3-2(c).

### THE PARTIES

**Plaintiffs**

**Amanda Frlekin**

10.      Plaintiff, Amanda Frlekin, is a resident of Los Angeles, California.  Ms. Frlekin was employed by Apple on a part-time basis as a Specialist at its Century City retail store in Los Angeles, California from August 2010 until April 2013.  Ms. Frlekin was paid an hourly rate of between approximately $11.50 and $15.67.  Throughout Ms. Frlekin's employment at Apple, she

was required to undergo personal package and bag searches before she was permitted to leave the store for her uncompensated meal breaks and before she was permitted to leave the store after she had clocked out at the end of her shifts.   These security checks were significant, integral, indispensable, not a de minimis task or request and done solely for Apple's benefit to prevent employee pilferage.  By way of example, during any week of her employment from 2010 through 2013, Ms. Frlekin waited in line to undergo a "personal package and bag search" for at least 5-10 minutes without compensation prior to leaving for all of her uncompensated meal breaks and for at least 10 minutes prior to leaving at the end of all of her shift once she had already clocked out.  As a specific example, Ms. Frlekin was required to wait in line for off-the-clock security checks before leaving for her meal break and at the end of her shift for 10–15 minutes every day during the week of January 8, 2013 to January 12, 2013.   However, because of Defendant's improper uncompensated security check policies as described more fully below, Ms. Frlekin was deprived of wages as required by the FLSA and CLC.   During any given week, Ms. Frlekin worked approximately 50 minutes to 1.5 hours of uncompensated overtime.  By conservative calculations, this equated over the course of one year to an aggregate amount of approximately $1,500 in uncompensated hours worked and overtime.

11.    Managers employed at Apple retail stores, including Ms. Frlekin's store, had knowledge of and required Plaintiffs to undergo these uncompensated security screenings in accordance with Apple's corporate policy.  Managers in Ms. Frlekin's California store who were aware of these uncompensated personal package and bag searches include: (1) Danya Bonett, the Store Leader; (2) Erik Kinder, a Senior Manager; (3) Brian Krink, a Senior Store Manager; (4) Heather Harte, a Store Manager; (5) Andrew Chantra, a Store Manager; and (6) Greg Schnieder, a Store Manager.   These and other Managers permitted, required and enforced the corporately derived and mandated security checks and requested that Ms. Frlekin and others similarly situated

perform these integral and indispensable duties without proper wages or overtime compensation.

**<u>Dean Pelle</u>**

12.     Plaintiff, Dean Pelle, is a resident of Brooklyn, New York.  Mr. Pelle was employed by Apple on a full-time basis as a Specialist at Apple's Lennox Mall retail store in Atlanta, Georgia from 2007 until 2008, then in Apple's Wellington Beach retail store in West Palm Beach, Florida from 2008 until 2009, and finally in Apple's West 14th Street retail store in New York, New York from 2009 until March of 2013.  Mr. Pelle was paid an hourly rate of approximately $18.75.  Throughout Mr. Pelle's employment at Apple, he was required to undergo personal package and bag searches before he was permitted to leave the store for his uncompensated meal break and before he was permitted to leave the store after he had clocked out at the end of his shift.  These security checks were significant, integral, indispensable, not a de minimis task or request and done solely for Apple's benefit to prevent employee pilferage.  By way of example, during any week of his employment from 2008 through 2013, Mr. Pelle waited in line to undergo a "personal package and bag search" for at least 5 minutes without compensation prior to leaving for all of his uncompensated meal breaks and for at least 10 minutes prior to leaving at the end of all of his shift once he had already clocked out.  As a specific example, Mr. Pelle was required to wait in line for off the clock security checks before leaving for his meal break and at the end of his shift for 10–15 minutes every day during the week of February 19, 2013 to February 23, 2013.  As a further specific example, Mr. Pelle was required to wait in line for off the clock security checks before leaving for his meal break and at the end of his shift for 10–15 minutes every day during the week of March 5, 2013 to March 9, 2013.  However, because of Defendant's improper uncompensated security check policies as described more fully below, Mr. Pelle was deprived of wages as required by the FLSA and NYLL.  During any given week, Mr. Pelle worked approximately 50 minutes to 1.5 hours of uncompensated overtime.  By conservative calculations, this equated over the course

- 6 -
PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 13-cv-3451-WHA

of one year to an aggregate amount of approximately $1,400 in uncompensated hours worked and overtime.

13.    Managers employed at Apple retail stores, including Mr. Pelle's store, had knowledge of and required that Apple Hourly Employees undergo these uncompensated security screenings.    Managers who were aware of these uncompensated "personal package and bag searches" include: (1) Arik Nagel, a Developmental Manager from the West 14th Street store location in New York; (2) Anthony Allicock, a Developmental Manager from the West 14th Street store location in New York; and (3) Peter Jordan, a Senior Manager from the West 14th Street store location in New York.  These Managers, along with numerous others permitted, required and enforced the corporately derived and mandated security checks and requested that Mr. Pelle and others similarly situated perform these integral and indispensable duties without proper straight wages or overtime compensation.

**Adam Kilker**

14.    Plaintiff, Adam Kilker, is a resident of Milford, Massachusetts.  Mr. Kilker was employed by Apple on a part-time basis as a Specialist at the CambridgeSide Galleria retail store in Cambridge, Massachusetts from October 20, 2007 until August 15 2012 and at the Natick Collection retail store in Natick, Massachusetts from September 1, 2012 until May 27, 2013.  Mr. Kilker was paid an hourly rate of between approximately $14.00 and $18.30.  Throughout Mr. Kilker's employment at Apple, he was required to undergo personal package and bag searches before he was permitted to leave the store for his uncompensated meal breaks and before he was permitted to leave the store after he had clocked out at the end of his shifts.  These security checks were significant, integral, indispensable, not a de minimis task or request and done solely for Apple's benefit to prevent employee pilferage.  By way of example, during any week of his employment from 2007 through 2013, Mr. Kilker waited in line to undergo a "personal package

and bag search" for at least 5-10 minutes without compensation prior to leaving for all of his uncompensated meal breaks and for at least 5-10 minutes prior to leaving at the end of all of his shift once he had already clocked out.  As a specific example, Mr. Kilker was required to wait in line for off-the-clock security checks before leaving for his meal break and at the end of his shift for 10-20 minutes every day during the week of February 2, 2013 to February 8, 2013.  However, because of Defendant's improper uncompensated security check policies as described more fully below, Mr. Kilker was deprived of wages as required by the FLSA and Mass. Gen. Law.  During any given week, Mr. Kilker worked approximately 50 minutes to 1.5 hours of uncompensated straight-time and overtime.  By conservative calculations, this equated over the course of one year to an aggregate amount of approximately $850.00 in uncompensated hours worked and overtime.

15.    Managers employed at Apple retail stores, including Mr. Kilker's stores, had knowledge of and required that Apple Hourly Employees undergo these uncompensated security screenings.  Managers who were aware of these uncompensated "personal package and bag searches" include: (1) Melissa Clarke from the CambridgeSide Galleria store; (2) Jeff Stone from the Natick store; (3) Edwin Morales from the CambridgeSide Galleria store; (4) Sayed Saber from the CambridgeSide Galleria store; (5) Ryan Forcier from the CambridgeSide Galleria store; (6) Tim Prunier from the Natick store; (7) Jessica Kovach from the CambridgeSide Galleria store; (8) Andrea Mercurio from the Natick store; (9) Kristin Gitlitz from the CambridgeSide Galleria store; (10) Nancy Sponpinato from the CambridgeSide Galleria store; (11) Lloyd Madden from the Natick retail store; (12) Cory Adler from the Natick store; (13) Stephanie Carlson from the Natick store; (14) Matt Duff from the CambridgeSide Galleria store; and (15) Samuel Greely from the CambridgeSide Galleria store.  These Managers, along with numerous others permitted, required and enforced the corporately derived and mandated security checks and requested that Mr. Kilker and others similarly situated perform these integral and indispensable duties without proper

- 8 -

straight wages or overtime compensation.

**Brandon Fisher**

16.    Plaintiff, Brandon Fisher, is a resident of Nashville, Tennessee.  Mr. Fisher was employed by Apple on a full-time basis as a Specialist at Apple's Easton Towne Center retail store in Columbus, Ohio from March 2010 until November 2011, and at Apple's Greenhills retail store in Nashville, Tennessee from November 2011 until June 2012.  Mr. Fisher was paid an hourly rate of approximately $14.00.  Throughout Mr. Fisher's employment at Apple, he was required to undergo personal package and bag searches before he was permitted to leave the store for his uncompensated meal break and before he was permitted to leave the store after he had clocked out at the end of his shift.  These security checks were significant, integral, indispensable, not a de minimis task or request and done solely for Apple's benefit to prevent employee pilferage.  By way of example, during any week of his employment from 2010 through 2012, Mr. Fisher waited in line to undergo a "personal package and bag search" for at least 10-15 minutes without compensation prior to leaving for all of his uncompensated meal breaks and for at least 10-15 minutes prior to leaving at the end of all of his shift once he had already clocked out.  As a specific example, Mr. Fisher was required to wait in line for off the clock security checks before leaving for his meal break and at the end of his shift for 20–30 minutes every day during the week of December 19, 2011 to December 25, 2011.   However, because of Defendant's improper uncompensated security check policies as described more fully below, Mr. Fisher was deprived of wages as required by the FLSA and the Ohio Revised Code.  During any given week, Mr. Fisher worked approximately 1 hour to 1.5 hours of uncompensated overtime.   By conservative calculations, this equated over the course of one year to an aggregate amount of approximately $1,000 in uncompensated hours worked and overtime.

17.    Managers employed at Apple retail stores, including Mr. Fisher's store, had knowledge of and required that Apple Hourly Employees undergo these uncompensated security screenings.    Managers who were aware of these uncompensated "personal package and bag searches" include: (1) Janice Vidosh, from the Easton Towne Center store location in Ohio; (2) Bruce Hutflies, from the Towne Center store location in Ohio; (3) Lori Swanson, from the Towne Center store location in Ohio; (4) Jeanette Voss, from the Greenhills store in Tennessee; (5) Jeanne Brock, from the Greenhills store in Tennessee; and (6) Blair Arcaini, from the Greenhills store in Tennessee.    These Managers, along with numerous others permitted, required and enforced the corporately derived and mandated security checks and requested that Mr. Fisher and others similarly situated perform these integral and indispensable duties without proper straight wages or overtime compensation.

**Defendant**

18.    Apple is a publically traded company which conducts business throughout the United States and abroad.  It was established and incorporated under the laws of California and has its principal headquarters in California.

19.    Apple designs, manufactures and markets mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, peripherals, networking solutions, and third-party digital content and applications.  Apple employs approximately 307,250 people, 26,000 of whom work in Apple's retail segment.  Additionally, Apple has approximately 250 retail stores in 44 states and generated net sales of $156.5 billion in 2012.

20.    The wages and hours and all of Defendant's related employee compensation policies are and were centrally and collectively dictated, controlled, and ratified.    As such, Defendant had the power to control the wage policies and practices described herein through its

oversight of day-to-day operating procedures, control over employee work schedules, ability to determine employees' rate of pay, and ability to control Apple's record keeping practices. As such, Defendant is the "employer" – single, joint or otherwise – of Plaintiffs and other members of the proposed classes described below.

## FACTUAL ALLEGATIONS

**Background**

21.     Apple has thousands of hourly paid non-exempt Geniuses, Specialists and Managers.  Each Genius, Specialist and Manager is employed at a specific Apple retail store.

22.     Each Apple retail store has several managers who are responsible for overseeing the Specialists and Geniuses and assigning daily tasks. These Managers, who are hourly paid, non-exempt employees, are subject to the same "personal package and bag searches" as those conducted upon Geniuses and Specialists and are members of the putative class that Plaintiffs seek to represent.

23.     Apple hired Plaintiffs and promised to pay hourly wages for their work.   On average, full-time Specialists are paid between minimum wage and $18.75 per hour and have a standard work week of 40 hours and Geniuses are paid approximately $18.00 and have a standard work week of 40 hours.   Moreover, each full-time employee is entitled to a daily unpaid meal break of either 30 minutes or one hour depending on the length of their shift.

24.     Apple Hourly Employees are required to clock in when they arrive at work, clock out when they go on a meal break, clock in when they return from a meal break and clock out when they leave for the day.  The time-keeping system and the procedures for using it are the same at each Apple retail store.  In this regard, Apple uses time tracking software developed by Kronos Inc.  The software requires Apple Hourly Employees to enter a username and password to clock in and clock out each day.

**Apple's Personal Package and Bag Check Policy Deprives Employees of Compensation When They Perform Services For The Defendant's Benefit**

25.     Pursuant to a uniform nationwide policy originated by Apple, "[a]ll employees, including managers and Market Support employees, are subject to personal package and bag searches." If an Apple Hourly Employee refuses to submit to this security screening or deviated from the corporate policy in any way, it "could result in disciplinary action, up to and including termination." Apple Hourly Employees were and are required to wait in line and be searched for store items or merchandise taken without permission and/or other contraband.  Thus, at the discretion and control of the Defendant and solely for its benefit, Plaintiffs and other Apple Hourly Employees were and are required to wait in line for security checks for at least 10–15 minutes each day before leaving for their meal break and at the end of their shift after they had already clocked out.  This daily 10–15 minute uncompensated waiting time during security checks was and is done in order to undergo searches for possible contraband and/or pilferage of inventory.  This security screening includes the inspection of employee bags and other personal containers as well as checking employee "Personal Technology Cards" which list each employees' personal Apple devices and serial numbers so they can be checked against what devices the employee has on their person or in their belongings prior to exiting the store.  Because such screening is designed to prevent and deter employee theft, a concern that stems from the nature of the employee's work (specifically, their access to high value electronics and merchandise), the security checks and consequential wait time are necessary to the employee's primary work as retail employees and done solely for Apple's benefit.

26.     A large number of Geniuses, Specialists and Managers leave for lunch at the same time and/or end their shift at the same time.  This creates lengthy lines and backups for managers, members of the security team and others authorized to conduct security screenings who are often

1  times engaged in other job related duties.  As a result, Apple Hourly Employees are forced to wait

2  in these lines and undergo lengthy off-the-clock security screenings before they are allowed to

3  leave the premises.  This work, done for the employer's benefit, is time which Apple Hourly

4  Employees should be, but are not, compensated for both straight hours and overtime hours worked

5  in excess of 40 in a week or, in California, in excess of 8 in a day.

6

7      27.    Apple's corporate employee conduct policy mandates and requires that Apple

8  Hourly Employees "[f]ind a Manager or member of the security team (where applicable) to search

9  [their] bags and packages before [they] left the store."  *See* Apple Employee Conduct Manual.

10 Additionally, the policy forbids Apple Hourly Employees from leaving the store "prior to having

11 [their] personal package or bag searched by a member of management or the security team (where

12 applicable)."  *Id.*  Furthermore, these policies are uniform throughout every Apple retail store and

13 "apply to all employees of Apple Inc. and participating subsidiaries in the United States." Thus,

14 these uncompensated wait times and security screenings unlawfully deprive all Apple Hourly

15 Employees in Apple's retail stores throughout the country of proper compensation.

16

17     28.    Apple has been aware for years that the uncompensated security screening policy is

18 improper and has willfully ignored repeated complaints from their employees who have questioned

19 why the required security checks and associated wait time are done off the clock and the legality of

20 such a practice.  In an email sent to the Apple "Leadership Team" on November 5, 2012, one

21 employee wrote:

22

23     I'm writing to ask for clarification of the tech checks policy. I understand that store
       policy is to perform a personal technology check every time an employee leaves the
24     store.  My concern is that since it's a work-related activity, tech checks shouldn't be
       performed off the clock or while on break.  There is an obvious issue here - the
25     point of the policy is to prevent employees from accidentally walking off with store
       property, but we often have to wait for minutes at a time because of how busy the
26     store has become.  If we are being paid for this (since it's a work requirement), it's
       not a problem, but then we have to go in the back of the store (where there's
27

28

inventory) to clock out, which seems to negate the effectiveness of the whole policy.

Should we be off the clock when waiting for a tech check, or perform the tech check on the floor, clock out in back, and then leave the store? Should our 15s start (if we are leaving the store) before or after the tech check on the floor? Based on my knowledge of cases like this with major retailers, I am trying to help Apple to avoid a lawsuit by pointing out this potential problem.

29.     Apple has not addressed and/or changed its uncompensated security screening procedures in response to these employee complaints or any other internal concerns regarding this policy and has continued to willfully deprive employees of millions of dollars in straight and overtime compensation.  By bringing this lawsuit, Plaintiffs intend to finally stop this ongoing and unlawful practice and recover back wages and overtime to which they are rightfully entitled.

### FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

30.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

31.     Plaintiffs, Amanda Frlekin, Dean Pelle, Adam Kilker and Brandon Fisher bring the FLSA collective claim described below on behalf of themselves and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of:

All Apple Hourly Employees who worked in an Apple, Inc. retail store in the United States, who are or were employed within the three years preceding the filing of this action by the Defendant, and who were: (a) not compensated for off-the-clock time spent waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over forty hours per week at overtime rates (the "FLSA Collective Class").

32.     Excluded from the FLSA Collective Class are Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Apple.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective Class.

33.    Plaintiffs are unable to state the exact number of class members without discovery of Defendant's books and records but estimate the class to exceed several thousand individuals.

34.    Defendant improperly benefited from Plaintiffs' and the FLSA Collective Class members' uncompensated work while waiting in lengthy security check lines and undergoing personal package and bag searches as well as personal technology card checks.  Defendant also failed to pay Plaintiffs and members of the FLSA Collective Class time-and-one-half their regular rate of pay for hours worked beyond forty hours in a workweek.

35.    Defendant's unlawful conduct has been widespread, repeated and consistent. Moreover, Defendant's conduct was willful and in bad faith and has caused significant damages to Plaintiffs and the FLSA Collective Class.

36.    Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective Class, and, as such, notice should be sent out to the FLSA Collective Class.  There are numerous similarly situated, current and former employees of the Defendant who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action.  Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

## **CALIFORNIA STATE LAW CLASS ACTION ALLEGATIONS**

37.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

38.    Plaintiff Amanda Frlekin brings the California state claims described below on behalf of herself and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of:

All Apple Hourly Employees who worked in an Apple, Inc. retail store in the State of California, who are or were employed within the four years preceding the filing of this action by the Defendant, and who were: (a) not compensated for off-the-cock

time spent waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over eight hours per day and/or forty hours per week at overtime rates (the "California Class").

39.    Excluded from the California Class are Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Apple. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the California Class.

40.    Apple operates numerous facilities and employs thousands of Apple Hourly Employees in California and systematically fails and refuses to pay them for all compensable hours worked.  The members of the California Class are so numerous that joinder of all members in one proceeding is impracticable.

41.    Plaintiff's claims are typical of the claims of other California Class members because they were hourly-wage, non-exempt employees who were not compensated for work performed at the employer's request while waiting in lengthy security check lines and undergoing personal package and bag searches as well as personal technology card checks.  Plaintiff's and other California Class members have sustained similar types of damages as a result of Defendant's failure to comply with the CLC and other California state labor law statutes.  Plaintiff's and other California Class members have been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct.

42.    Plaintiff will fairly and adequately protect the interests of the California Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between the Plaintiff and the California Class.

43.    Common questions of law and fact exist as to the California Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a) Whether Defendant failed and/or refused to pay Plaintiff and the California Class for all of the compensable time that they worked for Defendant while undergoing bag checks after clocking out for meals and at the end of shifts in violation of the Cal. Lab. Code §§ 201, 202, 203, 204, 226.7, 510, 512, 1194 (the "CLC"), California Unfair Competition Law, IWC Wage Order 4, Cal Bus. & Prof Code §§ 17200 *et seq.*);

(b) Whether Defendant failed to keep true and accurate time records for all hours worked by their employees as required by CLC § 226;

(c) Whether Defendant correctly compensated members of the California Class for hours worked in excess of forty per workweek;

(d) Whether Defendant correctly compensated members of the California Class for hours worked in excess of eight per day;

(e) Whether Defendant engaged in a pattern and/or practice in California of forcing, coercing, and/or permitting Plaintiff and California Class members to perform work for Defendant's benefit which was not compensated;

(f) Whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

(g) Whether Defendant failed to comply with CLC §§ 201 and 202  *et seq.* and is thus subject to a waiting time penalty under CLC § 203; and

(h) The nature and extent of class-wide injury and the measure of damages for those injuries.

44.     Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the California Class are readily identifiable from Defendant's own records.

45.     Prosecution of separate actions by individual members of the California Class would create the risk of inconsistent or varying adjudications with respect to individual members of the California Class that would establish incompatible standards of conduct for the Defendant.

46.     Without a class action, Defendant will retain the benefit of its wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the California Class.

## NEW YORK CLASS ACTION ALLEGATIONS

47.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

48.     Plaintiff, Dean Pelle, brings the New York state claims described below on his own behalf and as a class action pursuant to Federal Rule 23 on behalf of a Class consisting of:

> All Apple Hourly Employees who worked in an Apple, Inc. retail store in the State of New York, who are or were employed within the six years preceding the filing of this action by the Defendant, and who were: (a) not compensated for off-the-clock time spent waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over forty hours per week at overtime rates (the "New York Class").

49.     Excluded from the New York Class are Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest

in Apple.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

50.    Apple operates numerous facilities and employs thousands of Apple Hourly Employees in New York State and systematically fails and refuses to pay them for all compensable hours worked.  The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

51.    Plaintiff's claims are typical of the claims of other New York Class members because they were hourly-wage employees who were not compensated for work performed at the employer's request while waiting in lengthy security check lines and undergoing personal package and bag searches as well as personal technology card checks.  Plaintiff and other New York Class members have sustained similar types of damages as a result of Defendant's failure to comply with the NYLL.  Plaintiff and other New York Class members have been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct.

52.    Plaintiff will fairly and adequately protect the interests of the New York Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiff and the New York Class.

53.    Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a) Whether Defendant failed and/or refused to pay Plaintiff and the New York Class for all of the compensable time that they worked for Defendant while undergoing bag checks after clocking out for meals and at the end of shifts;

(b) Whether Defendant failed to keep true and accurate time records for all hours

worked by their employees as required by New York Labor Law §§ 190 *et seq.* and 654 *et seq.*;

(c) Whether Defendant correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

(d) Whether Defendant correctly compensated members of the New York Class for straight time hours worked under forty per workweek;

(e) Whether Defendant failed to comply with the posting and notice requirements of the NYLL;

(f) Whether Defendant engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiff and New York Class members to perform work for Defendant's benefit which was not compensated;

(g) Whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(h) The nature and extent of class-wide injury and the measure of damages for those injuries.

54.    Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the New York Class are readily identifiable from Defendant's own records.

55.    Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for the Defendant.

56.    Without a class action, Defendant will retain the benefit of its wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the New York Class.

## MASSACHUSETTS STATE LAW CLASS ACTION ALLEGATIONS

57.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

58.    Plaintiff Adam Kilker brings the Massachusetts state claims described below under Mass. Gen. Laws Ch. 151, §§ 1A and 1B on behalf of himself and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of:

> All Apple Hourly Employees who worked in an Apple, Inc. retail store in the State of Massachusetts, who are or were employed within the two years preceding the filing of this action by the Defendant, and who were: (a) not compensated for off-the-clock time spent waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over forty hours per week at overtime rates (the "Massachusetts Class").

59.    Excluded from the Massachusetts Class are Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Apple.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the Massachusetts Class.

60.    Apple operates numerous facilities and employs thousands of Apple Hourly Employees in Massachusetts and systematically fails and refuses to pay them for all compensable hours worked.  The members of the Massachusetts Class are so numerous that joinder of all members in one proceeding is impracticable.

61.    Plaintiff's claims are typical of the claims of other Massachusetts Class members because Plaintiff was an hourly-wage, non-exempt employee who was not compensated for work

performed at the employer's request while waiting in lengthy security check lines and undergoing personal package and bag searches as well as personal technology card checks.  Plaintiff and other Massachusetts Class members have sustained similar types of damages as a result of Defendant's failure to comply with Massachusetts state law.  Plaintiff and other Massachusetts Class members have been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct.

62.    Plaintiff will fairly and adequately protect the interests of the Massachusetts Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between the Plaintiff and the Massachusetts Class.

63.    Common questions of law and fact exist as to the Massachusetts Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a) Whether Defendant failed and/or refused to pay Plaintiff and the Massachusetts Class for all of the compensable time that they worked for Defendant while undergoing bag checks after clocking out for meals and at the end of shifts in violation of Mass. Gen. Laws Ch. 151, §§ 1A and 1B;

(b) Whether Defendant failed to keep true and accurate time records for all hours worked by their employees as required by Mass. Gen. Laws Ch. 151, § 15;

(c) Whether Defendant correctly compensated members of the Massachusetts Class for hours worked in excess of forty per workweek;

(d) Whether Defendant engaged in a pattern and/or practice in Massachusetts of forcing, coercing, and/or permitting Plaintiff and Massachusetts Class members to perform work for Defendant's benefit which was not compensated;

(e) Whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

(f) The nature and extent of class-wide injury and the measure of damages for those injuries.

64.     Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the Massachusetts Class are readily identifiable from Defendant's own records.

65.     Prosecution of separate actions by individual members of the Massachusetts Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Massachusetts Class that would establish incompatible standards of conduct for the Defendant.

66.     Without a class action, Defendant will retain the benefit of its wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the Massachusetts Class.

## **OHIO CLASS ACTION ALLEGATIONS**

67.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

68.     Plaintiff, Brandon Fisher, brings the Ohio state claims described below on his own behalf and as a class action pursuant to Federal Rule 23 on behalf of a Class consisting of:

All Apple Hourly Employees who worked in an Apple, Inc. retail store in the State of Ohio, who are or were employed within the three years preceding the filing of this action by the Defendant, and who were: (a) not compensated for off-the-clock time spent waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises; and/or (b) were not fully compensated for this time worked over forty hours per week at overtime rates (the "Ohio Class").

69.    Excluded from the Ohio Class are Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Apple. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the Ohio Class.

70.    Apple operates numerous facilities and employs thousands of Apple Hourly Employees in the state of Ohio and systematically fails and refuses to pay them for all compensable hours worked.  The members of the Ohio Class are so numerous that joinder of all members in one proceeding is impracticable.

71.    Plaintiff's claims are typical of the claims of other Ohio Class members because they were hourly-wage employees who were not compensated for work performed at the employer's request while waiting in lengthy security check lines and undergoing personal package and bag searches as well as personal technology card checks.  Plaintiff and other Ohio Class members have sustained similar types of damages as a result of Defendant's failure to comply with Ohio Revised Code §4111.03.  Plaintiff and other Ohio Class members have been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct.

72.    Plaintiff will fairly and adequately protect the interests of the Ohio Class.   Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiff and the Ohio Class.

73.    Common questions of law and fact exist as to the Ohio Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a) Whether Defendant failed and/or refused to pay Plaintiff and the Ohio Class for

all of the compensable time that they worked for Defendant while undergoing

bag checks after clocking out for meals and at the end of shifts;

(b) Whether Defendant failed to keep true and accurate time records for all hours worked by their employees;

(c) Whether Defendant correctly compensated members of the Ohio Class for hours worked in excess of forty per workweek;

(d) Whether Defendant correctly compensated members of the Ohio Class for hours worked under forty per workweek;

(e) Whether Defendant failed to comply with the posting and notice requirements of the Ohio Revised Code;

(f) Whether Defendant engaged in a pattern and/or practice in Ohio of forcing, coercing, and/or permitting Plaintiff and Ohio Class members to perform work for Defendant's benefit which was not compensated;

(g) Whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(h) The nature and extent of class-wide injury and the measure of damages for those injuries.

74.     Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the Ohio Class are readily identifiable from Defendant's own records.

75.     Prosecution of separate actions by individual members of the Ohio Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Ohio Class that would establish incompatible standards of conduct for the Defendant.

76.     Without a class action, Defendant will retain the benefit of its wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the Ohio Class.

## FIRST CLAIM FOR RELIEF

### Violations of the Fair Labor Standards Act

### (On Behalf of All Plaintiffs and the FLSA Collective Class)

77.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

78.     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendant has employed and continues to employ, employees, including Plaintiffs and each of the members of the FLSA Collective Class.

79.     Plaintiffs consent in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibit A is a copy of Plaintiffs' Opt-in forms.  As this case proceeds, it is likely that other individuals will sign consent forms and join as Plaintiffs.

80.     The FLSA requires each covered employer such as the Defendant to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

81.     Plaintiffs and the members of the FLSA Collective Action were and are entitled to be paid overtime compensation for all hours worked.

82.     Defendant, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the members of the FLSA Collective Class for all of their hours worked

in excess of 40 hours per week.  Plaintiffs do not assert any claims for "Gap Time" (uncompensated work performed under 40 hours per week) under the FLSA.

83.     By failing to compensate Plaintiffs and the members of the FLSA Collective Class for overtime compensation, Defendant has violated, and continues to violate, the FLSA, 29 U.S.C. § 201, *et seq.*

84.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

85.     Plaintiffs, on behalf of themselves and the FLSA Collective Class, seek damages in the amount of their unpaid wages and overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

86.     Plaintiffs, on behalf of themselves and the FLSA Collective Class, seek recovery of attorney's fees and costs, to be paid by the Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

### Violations of the California Labor Code – Nonpayment of Overtime Wages
### (Cal. Lab. Code §§ 1194 and 1194.2)

### (On Behalf of Plaintiff Amanda Frlekin and the California Class)

87.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

88.     Plaintiff Amanda Frlekin and members of the California Class were employees of Apple, while Apple was the employer of Plaintiff and members of the California Class within the meaning of the California Labor Code and Wage Order 4.

89.     Defendants have willfully failed to pay overtime wages due as set forth in the preceding paragraphs of this Amended Complaint to Plaintiff Frlekin and members of the California Class.

90.    Plaintiff Frlekin and members of the California Class were entitled to be paid overtime compensation at not less than one and one-half times their regular rates of pay for all hours worked in excess of eight hours per day and/or forty hours in a workweek pursuant to Cal. Lab. Code § 510.

91.    Apple was not and is not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the California Class' unpaid overtime wages sought in this lawsuit.

92.    Apple was not authorized by Plaintiff or any California Class members to withhold, divert or deduct any portion of their unpaid overtime wages sought in this lawsuit.

93.    Pursuant to Cal. Lab. Code § 1194, employers such as Defendant who fail to pay an employee overtime wages in conformity with California law shall be liable to the employee for those unpaid wages, plus interest, reasonable attorneys' fees, and costs of suit.  Pursuant to Cal. Lab. Code § 1194.2, employers such as Defendant who fail to pay an employee for all hours worked shall be liable to the employee for liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

94.    Apple has violated the CLC by failing to pay Plaintiff and the members of the California Class wages for all compensable time and by failing to pay Plaintiff and the members of the California Class for overtime payable at one and one-half times the employees' regular rates of pay.

95.    Plaintiff, on behalf of herself and the California Class, seeks the amount of underpayments based on Defendant's failure to pay wages and overtime for all hours worked, as provided by the CLC, plus interest, liquidated damages, attorneys' fees, costs, and such other legal and equitable relief as the Court deems just and proper.

1

### THIRD CLAIM FOR RELIEF

2

3

**Violations of the California Unfair Competition Law
(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

4

**(On Behalf of Plaintiff Amanda Frlekin and the California Class)**

5

96.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

6

7

97.    The California Unfair Competition Law ("UCL") prohibits Defendant from engaging in unfair competition, which means "any unlawful, unfair or fraudulent business act or

8

9

practice." Cal. Bus. & Prof. Code §§ 17200 *et seq.*

10

98.    Defendant's conduct alleged above constitutes an "unlawful" business act or

11

practice within the meaning of the UCL because it violates each of the following laws:

12

(a)    Cal. Lab. Code § 510 (requiring payment of overtime at the rate of one-and-

13

one-half times the employee's regular rate of pay for all hours worked in

14

excess of eight in a day or 40 in a week);

15

16

(b)    Cal. Lab. Code §§ 201, 202 and 203 (requiring timely payment to

17

employees who have been discharged or quit of all wages earned and

18

unpaid);

19

(c)    Labor Code section 204 (requiring that all wages be paid in semimonthly

20

payments);

21

22

(d)    IWC Wage Order 4 (8 Cal. Code Regs. § 11040); and

23

(e)    The FLSA.

24

99.    Plaintiff Frlekin lost money or property as a result of Defendant's unlawful conduct,

25

because if Defendant had complied with the law, Plaintiff Frlekin would have been timely paid

26

overtime wages for all time spent waiting in lengthy security check lines and undergoing personal

27

package and bag searches, and she would have been paid overtime for all such time worked that

28

1    exceeded eight hours in a day or forty hours in a week.

2        100.    Plaintiff Frlekin and other members of the California Class are entitled to restitution

3    of all sums Defendant may have acquired by means of Defendant's unlawful conduct, as well as

4    injunctive relief, costs of suit, and such other relief as the Court may deem proper.

5

6                              **FOURTH CLAIM FOR RELIEF**

7              **Violations of California Labor Code – Wage Statement Penalties**
                              **(Cal. Lab. Code § 226)**

8            **(On Behalf of Plaintiff Amanda Frlekin and the California Class)**

9
10       101.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

11       102.    Cal. Labor Code § 226(a) requires every employer, including Defendant, to furnish

12   each employee, semimonthly or at the time of each payment of wages, an accurate itemized wage

13   statement, in writing, showing the total hours worked by the employee and the net wages earned.

14   Similarly, Wage Order 4 requires employers to keep accurate information regarding each

15   employee, including time records showing when the employee begins and ends each work period,

16
17   and total hours worked in the payroll period.  8 Cal. Code Regs. § 11040, ¶7(A).

18       103.    Defendant violated section 226(a) and Wage Order 4 by failing to maintain accurate

19   records and by failing to furnish each employee with accurate itemized wage statements either

20   semimonthly or for each pay period that reflected all time spent waiting in line for security checks

21   and undergoing personal package and bag searches.  Defendant's refusal to properly record this

22   time, to include it in its itemized wage statements, or to properly pay its employees for this time

23   was willful and intentional.  As a result of these violations, Plaintiff and members of the California

24   Class suffered injury because they were not paid for all hours worked.

25
26       104.    Pursuant to Cal. Labor Code § 226(e), Plaintiff and each member of the California

27   Class is entitled to a penalty in the amount of $50 for the initial pay period in which a violation

28

occurred, and a penalty of $100 for each violation in a subsequent pay period, up to an aggregate penalty of $4,000, as well as costs of suit and attorneys' fees.  Pursuant to Cal. Labor Code § 226(f), each currently-employed member of the California Class is entitled to injunctive relief to ensure Defendant's compliance with section 226.

### FIFTH CLAIM FOR RELIEF

**Violations of California Labor Code – Waiting Time Penalties**
**(Cal. Lab. Code §§ 201, 202, 203)**

**(On Behalf of Plaintiff Amanda Frlekin and the California Class)**

105.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

106.    Cal. Lab. Code § 203 states that if an employer willfully refuses to pay, without abatement or reduction, in accordance with Labor Code §§ 201 and 202, any wages of an employee who is discharged or who quits, the employee's wages shall continue as a penalty for up to 30 days from the due date, until paid or until an action to recover those wages is commenced.

107.    Plaintiff Frlekin and members of the California Class who are no longer employed by Defendant were entitled to timely payment, upon cessation of their employment, of their wages for all time spent waiting in line for security checks and undergoing personal package and bag searches, and to overtime wages for such time that exceeded 8 hours in a day or 40 hours in a week.  Defendant's refusal to timely pay such wages was willful.  Defendant knew or should have known that such wages were due and payable to Plaintiff and the California Class, yet failed to pay them in a timely manner, as required by sections 201 and 202.  Those wages remain unpaid.

108.    Pursuant to Labor Code section 203, Plaintiff and each member of the California Class who is no longer employed by Defendant is entitled to a penalty in the amount of his or her daily wage multiplied by 30 days.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIXTH CLAIM FOR RELIEF

**Penalties Pursuant to the Private Attorney General Act**
**(Cal. Lab. Code §§ 2698 *et seq.*)**

**(On Behalf of Plaintiff Amanda Frlekin and the California Class)**

109.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

110.    Pursuant to CLC §§ 2698 *et seq.*, the Private Attorney General Act ("PAGA") any civil penalties for violations of the CLC may be assessed by the Labor and Workplace Development Agency ("LWDA").  As an alternative, any former or current employee may notify the LWDA in writing of the alleged labor code violations.  If the LWDA does not respond 33 days after they have received notice, a civil action may be commenced by any former or current employee to recover the civil penalties available under PAGA.

111.    On November 12, 2013, Plaintiff Amanda Frlekin, through her attorneys, sent proper written notice by certified mail to the LWDA.  As of the date of this Amended Complaint, Plaintiff Frlekin has not received a response from the LWDA.

112.    CLC § 2699(g)(1) provides that any "employee who prevails in any action shall be entitled to an award of reasonable attorneys' fees and costs." Plaintiff has, and will continue to, incur fees and costs in the prosecution of this action.

## SEVENTH CLAIM FOR RELIEF

**Violations of New York Labor Law – Nonpayment of Straight Wages**

**(On Behalf of Plaintiff Dean Pelle and the New York Class)**

113.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

114.    Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendant has willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this

Amended Complaint to Plaintiff Dean Pelle and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

115.    Defendant was not and is not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the New York Class' wages that concern this lawsuit.

116.    Defendant was not authorized by Plaintiff or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

117.    Pursuant to New York Labor Law § 198, employers such as the Defendant who intentionally fail to pay an employee wages in conformance with New York Labor Law shall be liable to the employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

118.    Defendant has violated the New York Labor Law by failing to pay Plaintiff and the members of the New York Class for all compensable time and by failing to pay Plaintiff and the members of the New York Class for the straight time worked at the established rate.

119.    Plaintiff, on behalf of himself and the New York Class, seeks the amount of underpayments based on Defendant's failure to pay straight wages for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

## EIGHT CLAIM FOR RELIEF

### Violations of New York Labor Law – Unpaid Overtime

### (On Behalf of Plaintiff Dean Pelle and the New York Class)

120.    The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

121.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to the Defendant and protect Plaintiff and the members of the New York Class.

122.    Defendant has failed to pay Plaintiff and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

123.    By Defendant's knowing and/or intentional failure to pay Plaintiff and the members of the New York Class overtime wages for hours worked in excess of forty hours per week, it has willfully violated NYLL Article 19, §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

124.    Due to Defendant's violations of the NYLL, Plaintiff and the members of the New York Class are entitled to recover from the Defendant their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## NINTH CLAIM FOR RELIEF

### Violations of the Massachusetts Overtime Law – Nonpayment of Overtime Wages
### (Mass. Gen. Laws Ch. 151 §§ 1A, 1B)

### (On Behalf of Plaintiff Adam Kilker and the Massachusetts Class)

125.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

126.    Plaintiff Adam Kilker and members of the Massachusetts Class were employees of Apple, while Apple was the employer of Plaintiff and members of the Massachusetts Class.

127.    It is public policy and law in the Commonwealth of Massachusetts that "…no employer in the commonwealth shall employ any of his employees…for a week longer than 40 hours, unless such employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed…" (Mass. Gen. Laws Ch. 151, § 1A).

128.    Mass. Gen. Laws Ch. 151, § 1B provides that employers who willfully or with reckless indifference to the rights of their employees fail to pay the overtime wages required by Ch. 151, § 1A shall be liable in a civil action brought by an aggrieved employee for three times the unpaid overtime wages owed by the employer.

129.    During the class period, Defendant has violated Massachusetts law by failing to pay Plaintiff and the Massachusetts Class time and one-half their regular rate of pay for all hours worked in excess of 40 hours worked within a workweek.

130.    By its conduct as set forth herein, Defendant violated Mass. Gen. Laws Ch. 151, § 1A by failing to pay Plaintiff and the Massachusetts Class time and one-half their regular rate of pay for all hours worked in excess of 40 hours worked within a workweek.

131.    Apple was not and is not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the Massachusetts Class' unpaid overtime wages sought in this lawsuit.

132.    Apple was not authorized by Plaintiff or any Massachusetts Class members to withhold, divert or deduct any portion of their unpaid overtime wages sought in this lawsuit.

133.    Defendant's violations of Mass Gen. Laws Ch. 151, § 1A were repeated, willful and intentional. Accordingly, Plaintiff and members of the Massachusetts class have been damaged by these violations of Mass. Gen. Laws Ch. 151, § 1A.

134.    Pursuant to Mass. Gen. Laws Ch. 151, § 1A and § 1B Defendant is liable to Plaintiff and the members of the Massachusetts Class for three times their unpaid overtime compensation, plus interest, liquidated damages, attorneys' fees, costs, and such other legal and equitable relief as the Court deems just and proper.

### TENTH CLAIM FOR RELIEF

**Violations of Ohio Revised Code §4111.03 – Nonpayment of Overtime Wages**

**(On Behalf of Plaintiff Brandon Fisher and the Ohio Class)**

135.    The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

136.    Defendant is an "employer" within the meaning of Ohio Revised Code §4111.03(D)(2).

137.    Named Plaintiff Brandon Fisher and other members of the Ohio Class are "employees" within the meaning of Ohio Revised Code §4111.03(D)(3).

138.    By refusing to compensate hourly employees for waiting in security screening lines and undergoing personal package and bag searches before being allowed to leave the premises, Defendant has failed to pay Plaintiff and members of the Ohio Class overtime wages to which they are entitled under Ohio Revised Code §4111.03.

139.    Having violated Ohio Revised Code §4111.03, Defendant is liable to Plaintiff Brandon Fisher and other members of the Ohio Class pursuant to Ohio Revised Code §4111.10 for the full amount of the overtime wage rate, less any amount actually paid to the employees by Defendant, as well as reasonable attorneys' fees, costs and interest as provided by law.

## PRAYER FOR RELIEF

**WHEREFORE**, all Plaintiffs, individually and on behalf of the FLSA Collective Class, seek the following relief:

A.      Designation of this action as a collective action on behalf of the FLSA Collective Class (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of Plaintiffs as the Representatives of the FLSA Collective Class;

C.      Appointment of Plaintiffs' counsel as Lead Counsel for the FLSA Collective Class;

D.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, and injunctive relief requiring termination or modification of the unlawful practices challenged in this Amended Complaint, including Defendant's improper requirement that Apple Hourly Employees wait in lengthy security check lines and undergo personal package and bag searches without compensation for their time;

E.      An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by the Defendant;

F.      An award of costs incurred herein, including expert fees;

G.      An award of attorneys' fees pursuant to 29 U.S.C. § 216;

H.      An award of pre-judgment and post judgment interest, as provided by law; and

I.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Amanda Frlekin, individually and on behalf of the California Class, seeks the following relief:

A.      Certification of this action as a class action pursuant to Federal Rule 23 and the

appointment of Plaintiffs as the representative of the California Class and Plaintiff's counsel as Lead Counsel for the California Class;

B.      An award to Plaintiff and members of the California Class of damages for the amount of unpaid overtime in addition to interest subject to proof;

C.      An award to Plaintiff and members of the California Class of any waiting time penalties under § 203 *et seq*. of the CLC;

D.      An award to Plaintiff and members of the California Class of any itemized wage statement penalties under § 226 of the CLC;

E.      An award to Plaintiff and members of the California Class of restitution under the UCL;

F.      An award to Plaintiff and members of the California Class of any and all civil penalties awardable pursuant to PAGA;

G.      An award of pre- and post-judgment interest on all monetary relief prayed for above, as may be permitted by law;

H.      An award of reasonable attorneys' fees pursuant to sections 226(e) and 1194 of the CLC and/or pursuant to Cal. Code of Civ. Procedure section 1021.5;

I.      An award of costs of suit;

J.      A declaratory judgment that the practices complained of herein are unlawful under the CLC and/or the UCL, and injunctive relief requiring termination or modification of the unlawful practices challenged in this Amended Complaint, including Defendant's improper requirement that Apple Hourly Employees wait in lengthy security check lines and undergo personal package and bag searches without compensation for their time;

K.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Dean Pelle, individually and on behalf of the New York Class, seeks the following relief:

A.     Certification of this action as a class action under Rule 23 and the appointment of Plaintiff as the representatives of the New York Class and Plaintiff's counsel as Lead Counsel for the New York Class;

B.     An award to Plaintiff and members of the New York Class of damages for the amount of unpaid straight wages in addition to interest subject to proof;

C.     An award to Plaintiff and members of the New York Class of damages for the amount of unpaid overtime in addition to interest subject to proof;

D.      An award to Plaintiff and members of the New York Class of reasonable attorneys' fees and costs pursuant to the NYLL;

E.     A declaratory judgment that the practices complained of herein are unlawful under the NYLL, and injunctive relief requiring termination or modification of the unlawful practices challenged in this Amended Complaint, including Defendant's improper requirement that Apple Hourly Employees wait in lengthy security check lines and undergo personal package and bag searches without compensation for their time;

F.     All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Adam Kilker, individually and on behalf of the Massachusetts Class, seeks the following relief:

A.     Certification of this action as a class action pursuant to Federal Rule 23 and the appointment of Plaintiff as the representative of the Massachusetts Class and Plaintiff's counsel as Lead Counsel for the Massachusetts Class;

B.     An award to Plaintiff and members of the Massachusetts Class of damages for the amount of unpaid wages in addition to interest subject to proof;

C.     An award to Plaintiff and members of the Massachusetts Class of damages for the amount of unpaid overtime in addition to interest subject to proof;

D.     An award to Plaintiff and the members of the Massachusetts Class of reasonable attorneys' fees and costs pursuant to the Mass. Gen. Laws;

E.     An award of pre- and post-judgment interest on all monetary relief prayed for above, as may be permitted by law;

F.     An award of costs of suit;

G.     A declaratory judgment that the practices complained of herein are unlawful under Mass. Gen. Laws, and injunctive relief requiring termination or modification of the unlawful practices challenged in this Amended Complaint, including Defendant's improper requirement that Apple Hourly Employees wait in lengthy security check lines and undergo personal package and bag searches without compensation for their time;

H.     All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Brandon Fisher, individually and on behalf of the Ohio Class, seeks the following relief:

A.     Certification of this action as a class action pursuant to Federal Rule 23 and the appointment of Plaintiff as the representative of the Ohio Class and Plaintiff's counsel as Lead Counsel for the Ohio Class;

B.     An award to Plaintiff and members of the Ohio Class of damages for the amount of unpaid wages in addition to interest subject to proof;

C.     An award to Plaintiff and members of the Ohio Class of damages for the amount of unpaid overtime in addition to interest subject to proof;

D.     An award to Plaintiff and the members of the Ohio Class of reasonable attorneys' fees and costs pursuant to the Ohio Revised Code;

E.     An award of pre- and post-judgment interest on all monetary relief prayed for above, as may be permitted by law;

F.     An award of costs of suit;

G.     A declaratory judgment that the practices complained of herein are unlawful under Ohio Revised Code, and injunctive relief requiring termination or modification of the unlawful practices challenged in this Amended Complaint, including Defendant's improper requirement that Apple Hourly Employees wait in lengthy security check lines and undergo personal package and bag searches without compensation for their time;

H.     All such other relief as this Court shall deem just and proper.

1

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

DATED:  December 13, 2013

By: _____
Lee S. Shalov (admitted *pro hac vice*)
Brett Gallaway (admitted *pro hac vice*)
Wade Wilkinson (admitted *pro hac vice*)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY  10016
Telephone:    (212) 448-1100
Facsimile:    (212) 448-0066
*lshalov@mclaughlinstern.com*
*bgallaway@mclaughlinstern.com*

Louis Ginsberg (admitted *pro hac vice*)
LAW FIRM OF LOUIS GINSBERG, P.C.
1613 Northern Blvd.
Roslyn, NY  11576
Telephone:    (516) 625-0105
*lg@louisginsberglawoffices.com*

Kimberly A. Kralowec (Cal. Bar No. 163158)
THE KRALOWEC LAW GROUP
188 The Embarcadero, Suite 800
San Francisco, California  94105
Telephone:    (415) 546-6800
Facsimile:    (415) 546-6800
*kkralowec@kraloweclaw.com*

*Attorneys for Plaintiffs Amanda Frlekin, Dean Pelle,*
*Adam Kilker, Brandon Fisher and the Proposed*
*Classes*