1　JULIE A. DUNNE, Bar No. 160544
　　jdunne@littler.com
2　LARA K. STRAUSS, Bar No. 222866
　　lstrauss@littler.com
3　MICHAEL G. LEGGIERI, Bar No. 253791
　　mleggieri@littler.com
4　LITTLER MENDELSON, P.C.
　　501 W. Broadway, Suite 900
5　San Diego, California 92101
　　Telephone: 619.232.0441
6　Facsimile: 619.232.4302

7　TODD K. BOYER, Bar No. 203132
　　tboyer@littler.com
8　KARIN M. COGBILL, Bar No. 244606
　　kcogbill@littler.com
9　NICOLAS T. KELSEY, Bar No. 246060
　　nkelsey@littler.com
10　LITTLER MENDELSON, P.C.
　　 50 W. San Fernando, 15th Floor
11　San Jose, California 95113
　　 Telephone: 408.998.4150
12　Facsimile: 408.288.5686

13　Attorneys for Defendant
　　 APPLE INC.

14

15　　　　　　　　UNITED STATES DISTRICT COURT

16　　　　　　　NORTHERN DISTRICT OF CALIFORNIA

17　　　　　　　　　SAN FRANCISCO DIVISION

18

19　AMANDA FRLEKIN, DEAN PELLE,　　Case No. C 13-03451 WHA
　　ADAM KILKER and BRANDON
20　FISHER, on behalf of themselves and all　　**DEFENDANT APPLE INC.'S**
　　others similarly situated,　　　　　　　**OPPOSITION TO MOTION FOR ORDER**
21　　　　　　　　　　　　　　　　　　**GRANTING CONDITIONAL**
　　　　　　　　Plaintiffs,　　　　　　**CERTIFICATION OF FLSA**
22　　　　　　　　　　　　　　　　　　**COLLECTIVE ACTION**
　　　　　v.
23　　　　　　　　　　　　　　　　　Date: January 16, 2014
　　APPLE Inc., a California Corporation,　　Time: 8:00 a.m.
24　　　　　　　　　　　　　　　　　Judge: Hon. William H. Alsup
　　　　　　　　Defendant.　　　　　　Dept: 8
25

26

27

28

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION　　　　　　　　　　　　Case No. C 13-03451 WHA

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ................. 2

     A.     Procedural History ................................................................................. 2

     B.     Apple Retail Operations and Plaintiffs' Employment Histories .............. 3

     C.     Apple's Bag and Personal Apple Technology Check Process .................... 4

III.   ARGUMENT ..................................................................................................... 5

     A.     Because Significant Discovery Has Already Occurred, A Heightened Standard Of Proof Applies To Plaintiffs' Motion ....................................... 5

     B.     Facts Regarding Ultimate Liability In This Case Are Not Common .......... 7

     C.     Plaintiffs' Wholly Unreliable Evidence Cannot Trigger Conditional Certification ........................................................................................... 9

     D.     Substantial Evidence Confirms The Alleged Circumstances Surrounding Bag and Technology Checks Are Not Common ................................................. 13

          1.     Substantial Evidence Confirms Not All Employees Choose To Bring Personal Belongings To Work ........................................................ 13

          2.     Substantial Evidence Confirms That Implementation Of Apple's Bag And Technology Checks Is Not Consistent Nationwide .................. 14

          3.     Substantial Evidence Confirms That Time Spent Waiting For And Undergoing Bag And Technology Checks Is De Minimis .................. 17

          4.     Not All Time Spent In Bag And Technology Checks Constitutes Overtime ..................................................................................... 18

     E.     Plaintiffs' Off-The Clock Overtime Claim Cannot Manageably Be Litigated On A Collective Basis ............................................................................. 18

          1.     The Class Is Not Ascertainable ..................................................... 19

          2.     Plaintiffs' Claims Are Not Typical ................................................. 20

          3.     There Are Inherent Conflicts Within The Class ............................... 20

          4.     Common Facts Do Not Predominate Plaintiffs' Overtime Claim .......... 21

          5.     Damage Calculations Are Too Individualized For Collective Action ....... 23

     F.     Any Notice Should Be By First Class Mail And A Third Party Administrator ....... 24

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

G.      The Request For Appointment Of Lead And Liaison Counsel Is Premature ............ 24

IV.   **CONCLUSION** ............................................................................................................. 25

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

ii.

1
2
3

## <u>TABLE OF AUTHORITIES</u>

4

**Page(s)**

5

**CASES**

6
*Adams v. Hy-Vee, Inc.,*
7    2012 U.S. Dist. LEXIS 98590 (W.D. Mo. May 22, 2012) ....................................................19

*Aguirre v. SBC Communications, Inc.,*
8    2007 U.S. Dist. LEXIS 17259 (S.D. Tex., March 12, 2007) ...................................................14

9
*Bennett v. Hayes Robertson Group, Inc.*
10    880 F. Supp. 2d. 1270 (S.D. Fla. 2012) ...............................................................14, 22

11  *Blakes v. Ill. Bell Tel. Co.,*
     2011 U.S. Dist. LEXIS 63225 (N.D. Ill. June 15, 2011) ......................................................25
12

*Boelk v. AT&T Teleholdings, Inc.,*
13    2013 U.S. Dist. LEXIS 20606 (W.D. Wis. Jan. 10, 2013) ...................................................19

14
*Brewer v. General Nutrition Corp.,*
15    2013 U.S. Dist. LEXIS 2948 (N.D. Cal., Jan. 7, 2013) .......................................................14

16  *Buckland v. Maxim Healthcare Servs.,*
     2012 U.S. Dist. LEXIS 122281 (C.D. Cal. 2012).................................................................20
17

*Busk v. Integrity Staffing Solutions, Inc.,*
18    713 F.3d 525 (9th Cir. 2013) ...............................................................................8, 9, 17

19
*Castle v. Wells Fargo Fin., Inc.,*
20    2008 U.S. Dist. LEXIS 106703 (N.D. Cal. 2008) ...............................................................23

21  *Clausman v. Nortel Networks, Inc.,*
     2003 U.S. Dist. LEXIS 11501 (S.D. Ind. 2003) ...................................................................7
22

*Colson v. Avnet, Inc.,*
23    687 F. Supp. 2d 914 (D. Ariz. 2010) ...................................................................................7

24  *Comcast Corp. v. Behrend,*
     ___ U.S. ___, 133 S. Ct. 1426 (2013).................................................................................24
25

26  *Daniels v. Aeropostale West, Inc.,*
     2013 U.S. Dist. LEXIS 59514 (N.D. Cal. 2013) ................................................................25
27

*Delpin Aponte v. U.S.,*
28    83 Fed. Cl. 80 (2008) ...........................................................................................................20

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

)

iii.

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2

PAGE

3

*Eng-Hatcher v. Sprint Nextel Corp.*,
2009 U.S. Dist. LEXIS 127262 (S.D.N.Y., Nov. 13, 2009) ........................................7

4

5

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770, 2013 U.S. App. LEXIS 2409 (7th Cir. Feb. 4, 2013) ......................................19

6

*Hargrove v. Sykes Enters.*,
1999 U.S. Dist. LEXIS 20141 (D. Or. June 30, 1999) ............................................10

7

8

*Hart v. U.S. Bank NA*,
2013 U.S. Dist. LEXIS 160147 (D. Ariz. Nov. 8, 2013) ........................................25

9

10

*Harvey v. AB Electrolux*,
2012 U.S. Dist. LEXIS 31507 (N.D. Iowa Mar. 9, 2012) ......................................25

11

*Hernandez v. Paicius*,
109 Cal App. 4th 452 (2003) ....................................21

12

13

*Hinojos v. Home Depot*,
2006 U.S. Dist. LEXIS 95434 (D. Nev. 2006) ............................................7, 9, 13

14

*Hoffmann-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989).........................................7

15

16

*Horne v. United Servs. Auto. Ass'n*,
279 F. Supp. 2d 1231 (M.D. Ala. 2003) ........................................8

17

18

*IBP, Inc. v. Alvarez*,
546 U.S. 21 (2005).........................................9

19

*Jones-Turner v. Yellow Enter. Sys., LLC*,
2011 U.S. Dist. LEXIS 118564 (W.D. Key. 2011) ..........................................21

20

21

*Martinez v. Cargill Meat Solutions*,
265 F.R.D. 490 (D. Neb. 2009).........................................25

22

23

*Mateo v. M/S Kiso*,
805 F. Supp. 761 (N.D. Cal. 1992) ..........................................21

24

*Michaelson v. Arrow Transp. Co.*,
1997 U.S. Dist. LEXIS 23665 (D. Or. June 6, 1997) ..........................................10

25

26

*Mike v. Safeco Ins. Co. of Am.*,
274 F. Supp. 2d 216 (D. Conn. 2003) ..........................................7

27

28

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

iv.

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Pfohl v. Farmers Insurance Group,*
2004 U.S. Dist. LEXIS 6447 (C.D. Cal. 2004)................................................................7

*Ruiz v. Serco, Inc.,*
2011 U.S. Dist. LEXIS 91215 (W.D. Wis. Aug. 5, 2011)...................................................19

*Santiago v. Amdocs, Inc.,*
2013 U.S. Dist. LEXIS 142511 (N.D. Cal. Sept. 30, 2013) ...............................................7

*Shim v. Echosphere, L.L.C.,*
2010 U.S. Dist. LEXIS 135984 (S.D. Fla. Dec. 20, 2010) .................................................22

*Shushan v. University of Colorado at Boulder,*
132 F.R.D. 263 (D. Colo. 1990) .......................................................................................20

*Simmons v. T-mobile USA, Inc.,*
2007 U.S. Dist. LEXIS 5002 (S.D. Tex. 2007) .................................................................23

*Smith v. T-Mobile USA, Inc.,*
2007 U.S. Dist. LEXIS 60729 (C.D. Cal. Aug. 15, 2007).................................................7

*Steiner v. Mitchell,*
350 U.S. 247 (1956).........................................................................................................8

*Thompson v. Speedway SuperAmerica LLC,*
2009 U.S. Dist. LEXIS 3816 (D. Minn., Jan. 20, 2009)...................................................7

*Till v. Saks & Company,*
2013 U.S. Dist. LEXIS 145842 (N.D. Cal. Sept. 30, 2013) ..............................................7

*Trinh v. JP Morgan Chase & Co.,*
2008 U.S. Dist. LEXIS 33016 (S.D. Cal. 2008) ...........................................................7, 8

*Velasquez v. HSBC Fin. Corp.,*
266 F.R.D. 424 (N.D. Cal. 2010)......................................................................................8

*Williams v. Accredited Home Lenders, Inc.,*
2006 U.S. Dist. LEXIS 50653 (N.D. Ga., July 25, 2006)..................................................7

*Williams v. Securitas Sec. Servs. USA,*
2011 U.S. Dist. LEXIS 92337 (E.D. Pa. 2011) ......................................................15, 23, 24

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

STATUTES

29 U.S.C. § 203(g) ..........................................................................................................8

29 U.S.C. § 207(a) ........................................................................................................19

29 U.S.C. § 254(a) ..........................................................................................................8

29 U.S.C. § 256(b) ........................................................................................................25

29 U.S.C.A. § 216(b) .............................................................................................. passim


OTHER AUTHORITIES

29 C.F.R. § 778.223 ........................................................................................................8

Federal Rule of Civil Procedure 23 .................................................................19, 20, 21

Local Rule 3-12................................................................................................................4

Firmwide:124716358.1 999999.7967

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

vi.

## I.    INTRODUCTION

Through their motion for conditional certification, Plaintiffs ask for permission to send notice of this action to tens of thousands of current and former Apple hourly employees nationwide.  To justify notice of this magnitude, Plaintiffs must offer proof that their claim for unpaid overtime is representative of overtime claims that could be asserted by members of the putative class.  Plaintiffs' sparse evidence, standing alone, is insufficient to satisfy even the lenient standard applicable to first-phase motions for conditional certification.  It is certainly insufficient to satisfy the more stringent standard applicable where, as here, Plaintiffs admit "significant" discovery has already occurred. More troubling is that the "facts" stated in Plaintiffs' supporting declarations are not facts at all. Material portions of Plaintiffs' declarations came from counsel rather than Apple employees. Indeed, substantial evidence – including depositions of Plaintiffs and their witnesses, video footage of actual bag and technology checks, and analysis of Apple time records - confirms that the supposed facts underlying Plaintiffs' overtime claim are not uniform at all, but rather personal and individualized to them (if not entirely untrue).

At its core, Plaintiffs' overtime claim is an off-the-clock claim.  Because courts routinely refuse to certify off-the-clock claims, Plaintiffs urge this Court to certify their claim because it supposedly turns solely on whether Apple's bag and personal Apple technology check policy is lawful.  The fallacy of this proposed theory of certification is readily apparent from both Plaintiffs' complaint and their motion.  Plaintiffs nowhere contend that any law arguably prohibits employers from inspecting their employees' personal belongings.  Instead, Plaintiffs' overtime claim turns entirely on the alleged circumstances surrounding the implementation of bag and technology checks. And Plaintiffs admit that the circumstances surrounding the implementation of checks are **not** common - not for individual employees day-to-day, much less **all** Apple hourly employees **every** day.  Their overtime claim therefore cannot be litigated on a collective basis.

Plaintiffs' motion for certification is supported by only nine declarations, representing a startlingly low .0002% of the putative class.  The dearth of Plaintiffs' evidence itself speaks volumes.  What is worse, the nine declarations Plaintiffs submitted are admittedly unreliable. Witnesses confirmed their declarations were fill-in-the-blank forms provided by counsel, and

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION

1

Case No.  C 13-03451 WHA

witnesses signed the declarations without verifying their accuracy.  Indeed, witnesses admitted that material representations contained in the declarations, including time estimates of lengthy bag checks, came from counsel and are false.  Courts should not certify claims that have no reliable basis in fact.  Separately, Plaintiffs ask for certification based on hearsay internet posts regarding bag checks.  Yet, Plaintiffs failed to submit concurrent posts at the very same sites, where Apple employees snubbed Plaintiffs' claim because checks are entirely optional and take mere seconds; posts that prove Plaintiffs' off-the-clock claim is not common across the putative class.

In fact, substantial evidence – including Plaintiffs' own testimony – confirms the alleged circumstances underlying Plaintiffs' overtime claim are not common across all Hourly Employees:

- **The motion** states **all** Apple employees must undergo bag and technology checks. However, **witnesses testified** that only employees who choose to bring personal belongings to work can be subject to checks, and there is no common way to determine which employees choose to bring personal belongings to work on any given day.

- **The motion** states that **all** bag and technology checks are lengthy because employees cannot find managers or because managers are otherwise occupied.  However, **witnesses testified** that many times there is no wait at all, and their estimates regarding how often managers are unavailable varied widely from store to store.  More than 25 hours of video footage of actual inspections shows managers were immediately available for checks.

- **The motion** states **all** bag checks take a long time because multiple employees leave work together.  However, **witnesses testified** t        o lines of widely varying lengths; extensive video footage shows that no appreciable lines form on even the busiest days at Apple stores; and analysis of time punch data confirms that the number of employees simultaneously leaving a store varies throughout the day and from store to store.

Because substantial evidence confirms Plaintiffs' off-the-clock overtime claim cannot be resolved on anything but an individual basis, Apple asks this Court to deny Plaintiffs' motion for conditional certification.

## II.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   Procedural History

On July 25, 2013, Plaintiffs Frlekin and Pelle filed an action alleging that Apple requires "Hourly Employees to wait in line and undergo two off-the-clock security bag searches and clearance checks when they leave for their meal breaks and after they have clocked out at the end of

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    2                    Case No.  C 13-03451 WHA

their shifts."[1]  (Frlekin Complaint, ¶4.)  A month later, and after filing Consents to Join the *Frlekin*

matter (Dkt. Nos. 17-19), Plaintiffs Kilker and Fisher filed a separate action containing the identical

allegation.  (Kilker Complaint at ¶4.)   On September 9, 2013, the Court related the *Frlekin* and

*Kilker* actions pursuant to Local Rule 3-12.  (Dkt. No. 40).[2]  On December 13, 2013, Plaintiffs

Frlekin, Pelle, Kilker and Fisher filed a consolidated First Amended Complaint.  (Dkt. No. 75).

Plaintiffs seek to conditionally certify a "FLSA Collective Class" comprised of:

> All Apple Hourly Employees who worked in an Apple retail store in the United
> States, who are or were employed within the three years preceding the filing of
> [*Frlekin* Action] (specifically, July 25, 2010) by the Defendant, and who were: (a)
> **not compensated for off-the-clock time spent waiting in security screening lines
> and undergoing personal package and bag searches** before being allowed to leave
> the premises; and/or (b) **were not fully compensated for this time worked over
> forty hours per week** at overtime rates.

(Motion at 1:23-28; Proposed Order at ¶1) (emphasis added).

### B. Apple Retail Operations and Plaintiffs' Employment Histories

Since July 2010, Apple has operated 254 retail stores across 43 states and the District of

Columbia.  (Monkowski Decl., ¶3.)   Apple   currently   employs   18,245   Hourly   Employees. [3]

Accounting for average turnover within the Company (Monkowski Decl., ¶9), the putative class is

estimated to be more than 37,000 Hourly Employees.

During the alleged three-year class period, Plaintiffs collectively worked at only six Apple

Retail Stores: Century City (in California), West 14th (in New York), CambridgeSide and Natick

Collection (in Massachusetts), Easton Town Center (in Ohio) and Green Hills (in Tennessee).

(Consolidated FAC (Dkt. No. 75), ¶¶ 10, 12, 14, and 16.  In the nearly five months since this action

has been pending, only seven other individuals have opted in.  (Dkt. Nos. 6, 8, 15, 17, 20, 29, 64).

Collectively, the named Plaintiffs and opt-ins **represent less than 0.0002% of all Apple Hourly**

---

[1] Plaintiffs confirmed they **are not** pursing a claim for unpaid minimum wages under the Fair Labor
Standards Act (FLSA).   (Strauss Decl., ¶12, Ex. K).   The instant motion concerns only whether
Plaintiffs' FLSA overtime claim should be conditionally certified.

[2] On October 10, 2013, a third lawsuit was filed by former employee Taylor Kalin, entitled: *Taylor
Kalin, et al. v. Apple Inc.*, Case No. C 13-4727-WHA ("*Kalin*").   The *Kalin* action includes
substantially identical bag and personal Apple technology check allegations. (Kalin Complaint at
¶¶16-17.)  The Court related the *Kalin* action to the *Frlekin* and *Kilker* actions. (Dkt. No. 62).  A
motion to consolidate all three bag check actions will be heard on January 16, 2014. (Dkt. No. 72.)

[3] Apple relies on Plaintiffs' definition of Apple Hourly Employees.  (*See* Motion at 1:18-21).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION

3

Case No.  C 13-03451 WHA

**Employees** and worked at only 5% of Apple's retail stores nationwide during the alleged limitations period.[4]  In fact, there are 38 states with Apple retail stores, and the District of Columbia, where Plaintiffs (including opt-ins) admittedly never worked during the relevant time period.[5]  Plaintiffs have offered no evidence that they have knowledge of bag or personal Apple technology checks in any of these locations during the statute of limitations period, much less that Hourly Employees were required to wait in long lines without pay for those checks.

### C.    Apple's Bag and Personal Apple Technology Check Process

Apple provides the tools and equipment employees need to perform their jobs.  (Monkowski Decl., ¶10.)  Hourly Employees are not required to bring bags or personal technology to work.  If employees choose to bring personal belongings to work, Apple reserves the right to inspect those employees' bags ("Bag Check") and personal Apple technology ("Technology Check") as employees leave the store.  (To be clear, Apple does not check all personal technology.  It checks only personal Apple technology.  (Monkowski Decl., ¶ 12.)  Employees who bring non-Apple-branded technology to work, like a Kindle or a Samsung mobile phone, are not required to undergo Technology Checks of any kind.)  Thus, not all Apple employees are required to go through Bag or Technology Checks; only employees who choose – for their own personal convenience - to bring those items to work undergo checks.  (Beltzer Depo., 137:9-12.)

Bag Checks generally consist of a visual inspection of the inside of a bag or a pat-down of the exterior of a bag.  Technology Checks generally consist of a comparison of the serial number on an employee's technology card with the serial number on their Apple technology.  Extensive video of both Bag and Technology Checks is provided in Exhibits A and B to the Smith Declaration.

Apple has no uniform practice for implementing Bag or Technology Checks.  (Monkowski Decl., ¶ 13.)  Some stores perform little to no checks because employees store their personal

---

[4] Through their declarations, the opt-ins provided testimony as to the existence of bag checks in only eight additional retail stores.  (Shalov Decl., Ex. D, ¶2; Ex. F, ¶2, Ex. M, ¶2, Ex. G, ¶2).
[5] There is no evidence regarding bag check practices in Alaska, Alabama, Arkansas, Arizona, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, North Carolina, Nebraska, New Hampshire, New Jersey, New Mexico, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington and Wisconsin during the statute of limitations periods.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    4                    Case No.  C 13-03451 WHA

1   belongings in off-site break rooms, (Lemin Decl., ¶9-11; O'Leary Decl., ¶10; Melcher Decl., ¶ 8-13;

2   Policelli Decl., ¶10), or because the employees themselves work in remote stock rooms. (Knopf

3   Decl., ¶14). Some stores conduct checks on the clock for any number of reasons, including (1) time

4   clocks are located in off-site break rooms and employees clock out after leaving the store, and thus,

5   after any check takes place (Melcher Decl. ¶8-13; Lemin Decl., ¶14; Dowling Depo., 109:7-110:3),

6   or (2) because employees unexpectedly engage in additional work after going through a check and

7   re-adjust their clock-out time to account the additional work. (Jordan Depo., 88:17-90:8). Other

8   stores perform Bag and Technology checks only inconsistently. (Knopf Decl., ¶8; Hadfield Decl.,

9   ¶¶8-12; O'Leary Decl., ¶7; Keenan Decl., ¶7-8; Policelli Decl., ¶¶7-12). Some stores conduct

10   primarily only Bag Checks, and other stores conduct primarily only Technology Checks. (O'Leary

11   Decl. ¶12; Brock Decl., ¶7, 10.) And, as Plaintiff Fisher admitted, managers who might normally

12   conduct a check sometimes allow employees to leave the store without undergoing a Bag or

13   Technology Check even if they have such items with them. (Fisher Depo., 58:1-22).

14      Moreover, in some stores, managers conduct Bag and Technology Checks on the retail sales

15   floor. (O'Leary Decl., ¶19). In other stores, managers conduct these checks in their office. (Brock

16   Decl., ¶ 17). Still other stores have full-time, security personnel who are stationed near the back-of-

17   house, who are dedicated to performing the checks. (Kamilar Decl., ¶8).

18      As explained more fully below, all of these different Bag and Technology Check practices

19   affect whether any particular Hourly Employee undergoes a Bag or Technology Check, and if so,

20   how long it takes to do so, rendering Plaintiffs' off-the-clock claim unsuitable for collective action.

21   **III.   ARGUMENT**

22      **A.   Because Significant Discovery Has Already Occurred, A Heightened Standard
           Of Proof Applies To Plaintiffs' Motion**

23

24      Plaintiffs urge this Court to evaluate their motion with "leniency" because "discovery is only

25   beginning." (Motion at 11:18-12:26). Yet Plaintiffs admit they have already conducted

26   "substantial" and "significant" investigation of their claims (Motion at 21:13-28), including

27   interviewing multiple Apple employees about their experiences, securing declarations and

28   documents from employees, being retained to represent employees in multiple states, drafting and

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                5                Case No.  C 13-03451 WHA

1    responding to document requests and interrogatories, and arranging for depositions of witnesses in

2    California, Nevada, Massachusetts, and New York.  (*Id*.)  Courts routinely require plaintiffs to meet

3    the  much  more  rigorous  second  stage  standard  for  conditional  certification  when  significant

4    discovery  has  already  occurred.[6]   Under  this  more  rigorous  standard,  plaintiffs  must  provide

5    "substantial evidence" that they are similarly-situated to those they seek to represent and that their

6    claims  can  be  litigated  through  common  facts  and  evidence.[7]   Moreover,  when  cases  involve

7    thousands of putative class members, courts carefully scrutinize whether conditional certification

8    and notice is justified.[8]

9         Even  if  the  Court  were  to  apply  the  more  lenient  standard  advocated  by  Plaintiffs,

10   "conditional certification at the first stage is by no means automatic."[9]   The collective action

11   mechanism is appropriate **only if** it permits the "efficient resolution in one proceeding of **common**

12   **issues of law and fact** arising from the same alleged . . . activity."[10]   In other words, a court must be

13   satisfied that questions common to a potential group of plaintiffs would predominate a determination

14   of the merits in this case."[11]   Absent such commonality, "it is doubtful that § 216(b) would further

15

16   [6] *See Pfohl v. Farmers Insurance Group*, 2004 U.S. Dist. LEXIS 6447, *9 (C.D. Cal. 2004)
     (applying  the  second  stage  analysis  because  discovery  had  been  undertaken); *Till v. Saks &*
17   *Company*, 2013 U.S. Dist. LEXIS 145842, *31 (N.D. Cal. Sept. 30, 2013) (courts may "commence
     the FLSA certification analysis at the second stage to the extent that the parties have had the
18   opportunity to engage in substantial discovery"); *Smith v. T-Mobile USA, Inc*., 2007 U.S. Dist.
     LEXIS 60729, *4 (C.D. Cal. Aug. 15, 2007) ("Where substantial discovery has been completed,
19   some Courts have skipped the first-step analysis and proceeded directly to the second step.");
     *Hinojos v. Home Depot*, 2006 U.S. Dist. LEXIS 95434 (D. Nev. 2006) (applying the second step
20   analysis).
     [7] *See Santiago v. Amdocs, Inc.*, 2013 U.S. Dist. LEXIS 142511 at *13 (N.D. Cal. Sept. 30, 2013) (at
21   the second stage of the certification process, "it is plaintiffs' burden to provide substantial evidence
     to demonstrate that they are similarly situated") (quoting *Reed v. County of Orange*, 266 F.R.D. 446,
22   449 (C.D. Cal. 2010)).
     [8] *See Thompson v. Speedway SuperAmerica LLC*, 2009 U.S. Dist. LEXIS 3816, *10 (D. Minn., Jan.
23   20, 2009) (denying conditional certification because the plaintiff failed to make a sufficient
     similarity showing for the putative class); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 U.S. Dist.
24   LEXIS 127262, *16-17 (S.D.N.Y., Nov. 13, 2009) (the size and scope of requested class
     certification impacts the factual showing that a plaintiff must make); *Williams v. Accredited Home*
25   *Lenders, Inc.*, 2006 U.S. Dist. LEXIS 50653 (N.D. Ga., July 25, 2006) (applying similarity
     requirement with "some rigor" in case involving "as many as 1,000 potential plaintiffs").
26   [9] *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); *see also Trinh v. JP Morgan*
     *Chase & Co.*, 2008 U.S. Dist. LEXIS 33016, *9-10 (S.D. Cal. 2008); *Clausman v. Nortel Networks,*
27   *Inc.*, 2003 U.S. Dist. LEXIS 11501, *8 (S.D. Ind. 2003).
     [10] *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (emphasis added).
28   [11] *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                     6                    Case No.  C 13-03451 WHA

the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse."[12] Plaintiffs must therefore show that the proposed class of more than 37,000 Hourly Employees from 254 Apples stores nationwide were all forced to wait in lines for uncompensated bag and personal Apple technology checks, and as a result are entitled to overtime compensation.  In the absence of common evidence supporting this theory, the case is not appropriate for judicial intervention, and conditional certification should be denied.[13]  Regardless of which standard the Court applies, Plaintiffs cannot prove that their off-the-clock overtime claim can be litigated on a collective basis.

### B.   Facts Regarding Ultimate Liability In This Case Are Not Common

Plaintiffs' overtime claim depends in part on whether time spent in Bag and Technology Checks constitutes "hours worked."  The FLSA broadly defines "hours worked" to include time during which: (a) an employee **is required** to be on duty at a prescribed workplace; and (b) an employee is suffered or permitted to perform work duties.[14]  The Portal-to-Portal Act generally excludes time spent "walking, riding or travelling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," and "activities which are preliminary and postliminary to said principal activity or activities" from hours worked.[15]

To overcome the general exclusion of preliminary and postliminary activities from "hours worked," a plaintiff must demonstrate that the activity is "integral and indispensable" to the employee's principal work activities.  *Steiner v. Mitchell*, 350 U.S. 247, 332 (1956).  An activity is "integral and indispensable" only if: (1) the activity is **required** by the employer, *i.e.*, it is "**necessary to the principal work performed**"; and (2) "done for the benefit of the employer."[16]

---

[12] *See Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003); *see also Trinh*, 2008 U.S. Dist. LEXIS 33016 at *9 (to determine whether plaintiffs are "similarly situated" for FLSA conditional certification purposes, the court should consider "the extent to which members of the proposed action will rely on common evidence").

[13] *See, e.g.*, *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 431-33 (N.D. Cal. 2010) (denying conditional certification of an off-the-clock overtime claim based on the absence of "single" practice applicable to all putative class members).

[14] *See* 29 C.F.R. § 778.223; 29 U.S.C. § 203(g).

[15] 29 U.S.C. § 254(a).

[16] *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 530 (9th Cir. 2013) (citing *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902-903 (9th Cir. 2003) (emphasis added).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    7                    Case No.  C 13-03451 WHA

1   Even if preliminary or postliminary activities constitute "hours worked," the time spent on those

2   activities must be more than *de minimis* in order to be compensable.[17]

3       Plaintiffs contend that under *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir.

4   2013) (Motion at 2:15-16), time spent in Bag and Technology checks is automatically

5   compensable.[18] But *Busk* is both procedurally and factually distinguishable. Procedurally, *Busk*

6   involved a motion to dismiss where the pleading standards are low and all allegations are assumed

7   true.[19] Here, Plaintiffs seek the right to send notice of this action to tens of thousands of employees,

8   not mere pleading rights, and must demonstrate the allegations underlying their claims are common

9   across the class; allegations of commonality are not assumed to be true.

10      Factually, *Busk* involved a practice where **every** employee was funneled through and subject

11  to a **common** screening procedure.[20] Here, (1) Plaintiffs admit that **only employees who choose to**

12  **bring bags or personal Apple technology to work** may be subject to a check (Dowling Depo.,

13  138:6-139:24 ("It is implied that the first step of a bag check is that – is to determine whether or not

14  the person leaving the store has a bag."));[21] and (2) ample evidence confirms the procedure for

15  conducting checks varies store to store. (Monkowski, ¶13; O'Leary Decl., ¶7; Keenan Decl., ¶7-8;

16  Hadfield Decl., ¶¶8-12; Kamilar Decl., ¶¶8-12; Knopf Decl., ¶8; Bonnett Decl., ¶¶7-17; Brock Decl.,

17  ¶¶7-11; Melcher Decl., ¶¶5-17; Lemin Decl., ¶¶9-14; Policelli Decl., ¶¶7-12).

18      Moreover in *Busk*, the plaintiffs alleged, and therefore the court assumed, the screenings

19  were job-related.[22] Here, Plaintiffs have already admitted that Bag and Technology Checks **are not**

20

21  [17] *Busk*, 713 F.3d at 532 (screenings lasting five minutes or less are *de minimis* and non-
    compensable); s*ee also Hinojos*, 2006 U.S. Dist. LEXIS 95434 at *9 (in FLSA off-the-clock cases,
22  courts should consider whether common evidence predominates questions of both whether the time
    is compensable "work" and whether it is *de minimis*).
    [18] The Supreme Court has rejected the proposition that pre- and post-shift time spent on the
23  employer's premises is automatically compensable. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 35, 41
    (2005).
24  [19] *Busk*, 713 F.3d at 530-31.
    [20] *Busk*, 713 F.3d at 527 ("Employees waited up to 25 minutes to be searched; removed their wallets,
25  keys, and belts; and passed through metal detectors").
    [21] Moreover, Frlekin, Pelle, and Speicher all admit they were not subject to a Technology Check
26  when they did not own personal Apple technology. (Frlekin Depo., 65:10-17, Pelle Depo., 30:9-15,
    Speicher Depo., 108:2-25).
27  [22] *Busk*, 713 F.3d at 531 ("**As alleged**, the security clearances **are necessary** to employees' primary
    work as warehouse employees ... **Assuming, as we must, that these allegations are true**, the
28  plaintiffs have stated a plausible claim for relief") (emphasis added).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    8                    Case No.  C 13-03451 WHA

1    job-related: employees who report to work without bags or personal Apple technology are fully

2    capable of performing their jobs.  (Dowling Depo., 58:24-59:6; Beltzer Depo., 137:9-12; Fisher

3    Depo., 55:2-8; 56:25-57:3; Speicher Depo., 115:1-9).

4           To date, only two witnesses claim that they were required to bring personal Apple

5    technology to work.  (Dowling Depo., p. 59:8-60:24 (alleging he was required to bring his Apple

6    computer to work on four days); Beltzer Depo., 54:11-56:4 ("occasionally" he needed to bring his

7    Apple computer to work, "but it didn't seem like much of a hindrance at the time").  To the extent

8    Plaintiffs rely on this theory to certify their off-the-clock claim, their evidence falls far short of

9    demonstrating Apple had a common policy of requiring all Hourly Employees to bring their personal

10   Apple Technology to work, and hence, to undergo Technology Checks.  In any case, for those

11   instances where an Hourly Employee claims s/he was required to bring bags or personal Apple

12   technology to work, a fact finder would need to individually decide whether the Hourly Employee

13   was actually required to do so.  Plaintiffs have offered no uniform evidence regarding the ultimate

14   question of liability in this case – whether Apple required employees to bring bags or personal Apple

15   technology to work and thereby required them to undergo a Bag or Technology Checks.  Instead,

16   Plaintiffs' have alleged only that "common circumstances" supposedly caused all Hourly Employees

17   to spend more than *de minimis* time in such checks.  Plaintiffs' "evidence" of these alleged

18   circumstances is wholly unreliable.  Plaintiffs, their witnesses and substantial empirical evidence

19   confirm those circumstances vary store by store, employee by employee, and day by day.

20          **C.    Plaintiffs' Wholly Unreliable Evidence Cannot Trigger Conditional Certification**

21          Courts within the Ninth Circuit require plaintiffs to make an affirmative showing that others

22   who are allegedly similarly-situated wish to opt into the action.[23]  Here, Plaintiffs boast that their

23   motion is supported by nine declarations.  But this case involves more than 37,000 individuals,

24   meaning Plaintiffs' offer of proof represents less than .0002% of the putative class.  Plaintiffs have

---

[23] *See, e.g., Hargrove v. Sykes Enters.*, 1999 U.S. Dist. LEXIS 20141, *13-14 (D. Or. June 30, 1999) (denying conditional certification because there was an "insufficient basis for inferring that other potential plaintiffs would wish to opt into the proposed class"); *Michaelson v. Arrow Transp. Co.*, 1997 U.S. Dist. LEXIS 23665 (D. Or. June 6, 1997) ("Before giving notice to potential class members in an FLSA action a court should be satisfied that there are potential members who desire to 'opt in' and who are similarly situated to plaintiff."  *Id.* at *1-2 (emphasis added).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR                    9                    Case No.  C 13-03451 WHA
CONDITIONAL CERTIFICATION

offered no evidence that Hourly Employees in 38 states, as well as the District of Columbia, where Plaintiffs did not work, were forced to wait in long lines without compensation for Bag and Technology Checks.  Plaintiffs' showing is particularly anemic given that the case has been pending for more than five months, has received widespread publicity, and Plaintiffs' counsel have maintained a web site to further advertise this litigation and to solicit opt-ins.  (Strauss Decl., ¶13).

Even more troubling, the nine declarations submitted by Plaintiffs were "fill-in-the-blank" forms prepared by counsel, and Plaintiffs and their witnesses admit their declarations are unreliable.  At deposition, witnesses who submitted declarations confirmed that they had no personal knowledge of some of the material statements made in their declarations and/or the Complaint, and that those material facts were supplied by their counsel.  (*See* Apple's Evidentiary Objections *passim*).  For example, Plaintiff Fisher testified that the estimates of time he spent undergoing Bag and Technology Checks contained in his declaration, ***were not his own estimates, but were counsel's***:

> Q. All right. In paragraph 9 it says, "All together, while I worked at the Columbus Apple Store" - I assume you're referring to Easton Towne Center?
>
> A. Yes. Which page are you on?
>
> ***
>
> Q. "...I spent approximately 16 to 35 minutes per day undergoing 'personal package and bag searches' and 'personal technology card' checks. And while I worked at the Nashville Apple Store, I spent approximately 15 to 25 minutes per day undergoing 'personal package and bag searches' and 'personal technology card' checks.  Do you see that?
>
> ***
>
> A. Oh, okay. I see, I see, I see. Sorry. Yep, I see that.
>
> Q. Whose estimate is that of time?
>
> A. **That estimate -- estimate is -- was made by my lawyers**.

(Fisher Depo., 122:18-123:14.)   Over his attorney's objection, Fisher also confirmed the time estimates in his Complaint came, "from discussions with my lawyers."  (Fisher Depo., 113:13-115:1.)  Plaintiff Pelle had no personal knowledge of the very specific allegations in his Complaint (*Frlekin* Complaint at ¶12) regarding weeks when his checks were supposedly particularly long:

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION

10

Case No.  C 13-03451 WHA

**Q.** So do you recall waiting ten to 15 minutes at the end of your shift every day during the week of February 19th to February 23rd of this year?

**A. At this point, I can't say I remember it.**

**Q.** Okay. (Reading): "As a further specific example, Mr. Pelle was required to wait in line for off-the-clock security checks before leaving for his meal break at the end of his shift for ten to 15 minutes every day during the week of March 5, 2013 to March 9, 2013."

Do you remember specifically waiting in line that particular week?

**A.** That was, from what I believe, my last week. Do I remember specifically in my last week going through bag checks? Yes. **Do I know if they were ten to 15 minutes? I don't recollect that.**

(Pelle Depo., 108:13-109:2) (emphasis added).

Incredibly, even **after Mr. Pelle disavowed those time estimates** at deposition, Plaintiffs subsequently filed a First Amended Complaint **containing the same exact allegations**. (FAC, ¶12.)

Moreover, while Plaintiff Frlekin's declaration states that a check was conducted **every** time she left the store (Frlekin Decl., ¶6), she admitted at deposition that many times she left the store without any check (Frlekin Depo., 128:10-129:17).  While Frlekin's declaration states that security guards performed Bag and Technology checks at her store (Frlekin Decl., ¶6), she admitted at deposition there were no security guards at her store.  (Frlekin Depo., 129:18-130:4).  While Speicher's declaration states that she "was not compensated for **any** of this time waiting for, undergoing or performing security checks" (Speicher Decl., ¶9); she admitted at deposition that checks were sometimes performed on the clock.  (Speicher Depo., 113:18-114:8, 119:8-20).  While Dowling declared that "personal package and bag searches were conducted **every time**" he left the store (Dowling Decl., ¶6), he later admitted this was not in fact true, since he did not always bring a bag to the store.  (Dowling Depo., 138:6-139:24.)  Perhaps most incredibly, Plaintiffs' counsel unabashedly admitted that the declarations submitted in support of the instant motion were not accurate, "We'll stipulate [the declaration] is not 100% correct – it happens." (Frlekin Depo., 224:4-225:18; *see also,* Speicher Depo., 135:18-136:14; 152:13-153:4).

Plaintiffs' testimony must be further questioned since many of the declarants have a personal axe to grind with Apple.  Plaintiff Pelle, who was terminated by Apple for misconduct (Pelle Depo.,

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION

11

Case No.  C 13-03451 WHA

1   Ex. 86), wrote to Plaintiff Frlekin, calling Apple a brainwashing cult and expressing a desire to kick

2   its "a\*\*." (Pelle Depo., Ex. 87). Plaintiff Kilker, and opt-ins Beltzer, Idakaar and Gregoroff, were

3   all fired for policy violations, including falsifying benefits information. (Kilker Depo., 124:15-

4   127:17; Beltzer Depo., 137:13-139:22; Idakaar Depo., 103:16-107:6; Gregoroff Depo., 221:17-

5   223:24.) Plaintiff Frlekin – angry with coaching she had received during her employment – called

6   her manager a "c\*\*\*" and later resigned. (Frlekin Depo., 168:7-171:3, Ex. 15; Bonnett Decl., ¶30).

7        Given the inconsistencies in these witnesses' declarations and depositions, and given their

8   admitted animosity for Apple, Plaintiffs' motion raises real credibility concerns. In *Hinojos*, the

9   court denied conditional certification because "the contradictions between plaintiffs' declarations and

10  their deposition testimony… show the importance of cross-examination of each plaintiff. This

11  suggests the need for separate mini-trials to resolve each individual's claim. Such a result is the

12  antithesis of collective action treatment and would overwhelm the judicial system and eliminate any

13  judicial efficiency that might be gained through a collective approach."[24]

14       The only other evidence Plaintiffs offered in support of their motion was hearsay, internet

15  posts suggesting Hourly Employees had bag check experiences similar to Plaintiffs'. (*See* Apple's

16  Evidentiary Objections No. 21.) Even if the Court considers the posts, Plaintiffs failed to submit

17  several concurrent posts where Hourly Employees reported their experiences were nothing like the

18  Plaintiffs'. On the same Macrumors.com website, and even within the thread from which Plaintiffs

19  pulled the "bedifferent" post, "bearbo" directly contradicts Plaintiffs' allegations:

20      You worked for the Apple Retail store, and you had to wait 15 minutes per shift,
21      every single shift, for bag checks after clocking out? **That's just B.S.**

22      I worked at two different Apple Retail stores (2006-2008), and at both stores, I only
        **occasionally** [sic] asked to show the content of my bags, mostly at the end of the day.
23      I don't remember ever being asked to open by bags during lunch breaks. And **I never
        had to wait more than 1 minute between clocking out and leaving the store**.
24
25      Often times when I worked the last shift, the **managers would even let us clock out
        after checking our bags**.

26  (Strauss Decl., ¶14, Ex. M) (emphasis added). A concurrent post from "Grimace" was similar:

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [24] *See Hinojos,* 2006 U.S. Dist. LEXIS 95434 at \*7-8.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION
12
Case No. C 13-03451 WHA

**5-15 minutes is a complete joke**.  I was an apple sales person and then manager and **it took all of 15 seconds**.  There is always a manager on the floor who is not usually interacting with customers (usually they are managing employees, checking shelf stocks, etc.) so you might wait 30 seconds at the most.

Useless lawsuit, not based in reality.  Plus, it is **their choice to bring in personal items** so it will get tossed.

(Strauss Decl., Ex. N) (emphasis added).

Yet another post from "ryntendo" stated that when s/he worked at Apple, "our bag checks were done by security and **took five seconds or less**." (Strauss Decl., Ex. O) (emphasis added).

In a motion where Plaintiffs are asking the Court for permission to send notice of this action to tens of thousands of Apple employees on the premise that Plaintiffs' experiences are representative of all Apple Hourly Employees, it is particularly troubling that Plaintiffs have not forthrightly disclosed that several putative class members have already emphatically rejected their claims.  Plaintiffs' "evidence," on its own, is insufficient to justify conditional certification.

**D.     Substantial Evidence Confirms The Alleged Circumstances Surrounding Bag and Technology Checks Are Not Common.**

Contrary to Plaintiffs' claim, this Court may still credit Apple's evidence and consider the entire record developed by the parties even if it applies the "lenient" standard.  Courts routinely consider **all** evidence when determining whether a case is properly certified under Section 216(b).[25]

**1.     Substantial Evidence Confirms Not All Employees Choose To Bring Personal Belongings To Work**

Plaintiffs' overtime claim hinges initially on whether Hourly Employees choose to bring personal belongings to work, and whether they make that same choice each day.  Not even Plaintiffs

---

[25] *See Brewer v. General Nutrition Corp.*, 2013 U.S. Dist. LEXIS 2948, *8-9 (N.D. Cal., Jan. 7, 2013) ("Where the parties have conducted discovery, courts generally will evaluate the evidence put before it when considering whether to conditionally certify a collective action"); *Aguirre v. SBC Communications, Inc.*, 2007 U.S. Dist. LEXIS 17259, *28 (S.D. Tex., March 12, 2007) ("[A]ll the depositions, affidavits and documents are properly considered in deciding whether the first-stage requirements are met.  In considering this evidence, the court . . . examines the evidence to determine whether it is appropriate to certify [a class]"); *Bennett v. Hayes Robertson Group, Inc.* 880 F. Supp. 2d 1270, 1284 (S.D. Fla. 2012) (court considered "the deposition testimony and other record evidence in construing Plaintiffs' affidavits to better determine whether or not the case is manageable as a collective action").

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    13                    Case No.  C 13-03451 WHA

and the opt-ins made the same choices every day.  (Dowling Depo., 58:24-59:6; Beltzer Depo., 137:9-12; Fisher Depo., 55:2-8; 56:25-57:3).

Plaintiffs' overtime claim further hinges on whether Hourly Employees: (1) choose to leave the store for breaks; and (2) choose to take their bags and/or personal Apple technology with them when they leave the store for breaks.  Plaintiffs admit Apple does not require Hourly Employees to do either.  (Pelle Depo., 48:18-49:1; Frlekin Depo., 82:11-83:7; Beltzer Depo., 147:13-25; Idakaar Depo., 113:21-114:4; Dowling Depo., 138:6-139:24).   In fact, Plaintiffs and their witnesses all admitted that they and other Hourly Employees did not always leave the store for meals and/or did not always take personal belongings with them when they did so.  Fisher testified:

> **Q.** So if you brought a bag, what percentage of the time would you take it out for lunch? We're just talking about Easton right now.
>
> **A.** 20 percent of the time maybe. Not a lot. Not a lot.
>
> **Q.** When you were at Green Hills, how often would you bring a bag? Was it any different?
>
> **A.** Yeah. Their cafeteria was inside, and so I rarely took my bag out there.

(Fisher Depo., 56:16-24.)

Plaintiffs' own testimony confirms that Hourly Employees make different personal choices every day that determine whether Bag and Technology Checks occur.  Courts refuse to certify claims when liability turns, particularly in such large part, on personal choices.[26]

### 2.   Substantial Evidence Confirms That Implementation Of Apple's Bag And Technology Checks Is Not Consistent Nationwide

Plaintiffs' overtime claim also hinges on their allegation that, due to various circumstances, **<u>all</u>** Bag and Technology Checks take more than a *de minimis* amount of time.  This allegation is perhaps most easily rebutted by Plaintiffs' own demonstrations of Bag and Technology Checks,

---

[26] *See Williams v. Securitas Sec. Servs. USA*, 2011 U.S. Dist. LEXIS 92337 (E.D. Pa. 2011) (denying conditional certification because "[b]ased on the facts before the court, the frequency with which uniforms are cleaned and ironed is entrusted to the individual employee's discretion and, as a result, varies from employee to employee.  Thus, the court simply cannot infer that Securitas employees have similar claims for uncompensated time spent maintaining Securitas uniforms.").

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    14                    Case No.  C 13-03451 WHA

which with obvious efforts to move slowly, lasted from 16 to 33 seconds, [27] and Apple's extensive surveillance video of checks, which show hundreds of actual checks that were much shorter.  (Smith Decl., Exs. A and B.)   In any event, Plaintiffs admit that the circumstances allegedly causing prolonged Bag and Technology Checks vary store to store and day to day.

First, Plaintiffs claim that all Bag and Technology Checks take a long time because ". . . Apple employees . . . ***must find a supervisor to conduct the check***."  (Motion at 2:17-20.)   As a preliminary matter, this allegation has no application to stores, such as 5th Avenue, where designated security guards stationed at specific locations perform Bag and Technology Checks. (Kamilar Decl., ¶ 8-9; Smith Decl., Ex. A, B.)  Even at stores where managers perform Bag and/or Technology Checks on the sales floor generally, managers are usually readily available:

- Jordan testified he never had to wait for a check.  (Jordan Depo., 7:10-21).

- Dowling testified that 40% of the time they left a store, they did not have to wait for a check.  (Dowling Depo. 84:7-12).

- Frlekin testified that 10% of the time she left a store, she did not have to wait for a check.  (Frlekin Depo., 71:5-14).

Moreover, an Hourly Employees' ability to locate a manager would obviously depend on how many managers are working in the store at the time.  Manager staffing levels vary from store to store.  Currently, manager staffing levels in Apple stores across the country vary from 5 to 40 managers. (Monkowski Decl., ¶ 8.)  Thus, testimony of Hourly Employees and substantial empirical evidence confirms the alleged delay caused by needing to find a manager is not common.

Second, Plaintiffs claim that Bag and Technology Checks take a long time because, "***oftentimes[28] [managers are] engaged in other job related duties***."  (Motion 8:3-7) (emphasis added).  Again, witnesses thus far report manager delays from 0% to 90% of the time (see testimony

---

[27] *See* Boyer Decl., Ex. A (Beltzer Depo., Video at 16:15:46-16:16:13 (Bag Check lasted 27 seconds); Beltzer Depo., Video at 13:12:10-13:12:43 (Technology Check lasted 33 seconds); Dowling Depo. Video at 12:08:19-12:08:36 (Bag Check lasted 17 seconds); Dowling Depo. Video at 12:09:18-12:09:50 (combined Bag and Technology Check lasted 32 seconds); Frlekin Depo. Video at 12:24:15-12:24:31 (Bag Check lasted 16 seconds), Frlekin Depo. Video at 5:03:40-5:03:59 (Technology Check lasted 19 seconds); Pelle Depo Video at 16:27:14-16:27:33 (Bag Check lasted 19 seconds)).
[28] The mere fact that Plaintiffs argue this situation arises "oftentimes" confirms it does not arise uniformly or commonly for all Hourly Employees.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    15                    Case No.  C 13-03451 WHA

above) and extensive video footage of actual Bag and Technology Checks show checks occurring with no delay.  (Smith Decl., Ex. B.)  Plus, whether to wait for one manager to conduct a check, or go to another available manager, is an employee's "prerogative."  (Speicher Depo., 67:6-16.)

Third, Plaintiffs' claim "*[o]ftentimes*, Specialists and Managers **leave for lunch or end their shift at the same time, which creates lengthy lines and backups for managers**..."  (Motion 8:3-7) (emphasis added).  This is yet another theory of liability where the alleged circumstance is not common.  Plaintiffs' own testimony confirms the alleged formation of lines varies store to store:

- Frlekin claims the longest lines she experienced at the Century City store was 5 to 10 people.  (Frlekin Depo., 79:21-80:1).

- Beltzer claims the longest line he experienced 5th Avenue was 30 people.  (Beltzer Depo., 65:22-25).

- Beltzer then testified that in three other stores where he worked, the longest line for a Bag or Technology check was only two to three people.  (Beltzer Depo., 176:17-177:12).

Obviously, the formation of lines at any store depends on staffing levels for the store, and staffing levels are not common nationwide.  Some Apple stores have as few as 47 employees and other stores have more than 779 employees.  (Monkowski Decl., ¶ 7).  Analysis of Apple's time-punch data confirms that the number of employees who punch out of work within close temporal proximity of one another varies from store to store, and even throughout the workday at any particular store.  (Hall Decl., Ex. B at p. 1.)  Indeed, Plaintiffs' "line theory" itself demonstrates why their overtime claim cannot be tried on a representative basis.  In a line of 10 people, the first person in the line has no wait.  The amount of time person two spends waiting for a check is entirely dependent on how long it takes person one to complete a check, which in turns depends on how many items person one brought to work.  Once person two's check begins, the amount of time person three must wait depends entirely on the individualized circumstances surrounding the checks for persons one and two, and so on.  Inevitably, the amount of time person ten spends waiting is longer than any of the people ahead of him/her, but whether the time person 10 waited is more than *de minimis* (i.e., more than five minutes under *Busk*), depends on how long each individual check took for the preceding nine employees.  There is no way a trier of fact could determine, on any

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                16                Case No.  C 13-03451 WHA

1    particular workday, whether an Hourly Employee was in a line, where in the line the Hourly

2    Employee was, and whether the time s/he waited in line was more than *de minimis*.

3           **3.**      **Substantial Evidence Confirms That Time Spent Waiting For And**

                           **Undergoing Bag And Technology Checks Is *De Minimis***

4

5        In an apparent attempt to avoid Apple's *de minimis* defense, Plaintiffs allege ". . . employees

6    wait 10 minutes or more several times a day for [bag and technology] checks . . ." (Motion at 2:17-

7    20.) Obviously, the testimony of Plaintiffs and witnesses outlined above confirms that not all Bag

8    and Technology Checks take the same amount of time, and not all checks take ten or more minutes,

9    confirming that checks are *de minimis*. For a broader evaluation of data, Apple retained Dr. Randy

10    Hall, Vice President of Research and a Professor in the Daniel J. Epstein Department of Industrial

11    and Systems Engineering at the University of Southern California, to (1) analyze Apple time punch

12    data from stores where Plaintiffs and opt-ins previously worked, and (2) review surveillance footage

13    from those stores to determine whether Plaintiffs' allegations regarding the time it takes to conduct

14    Bag and Technology Checks is common.[29]

15        Dr. Hall observed that the time to complete an inspection (*i.e.*, wait for and undergo a check)

16    at the roughly 800-employee Fifth Avenue store (Kamilar Decl., ¶ 5), during peak times ranged from

17    zero to 122 seconds, and averaged only 20 to 21 seconds per employee in the sampled video. (Hall

18    Decl., Ex. B at p. 1). Notably, time spent **performing the check** did not increase during peak hours

19    (*Id.*), and the average **waiting time** at the 5th Avenue store during the busiest punch-out period on

20    November 29, 2013, ( "Black Friday") was 9.5 seconds per employee, compared 3.5 seconds during

21    a more typical period (August 31, 2013, from 7:45-8:15 a.m.). (*Id.*) Dr. Hall observed waiting times

22    ranged from zero to 49 seconds. (*Id.*) Dr. Hall opined that a "very high-end estimate" for the

23    average amount of Bag and Technology check time (including **both inspection and waiting time**)

24    for Apple employees is a mere **30 seconds**. (*Id.* at p. 22.) Critically, this high-end estimate is based

---

25    [29] Dr. Hall reviewed video footage of Bag and Technology Checks for specific days at three Apple

26    stores where one or more Plaintiffs or opt-ins worked: the 5th Avenue store in New York City; The Mall at Green Hills in Nashville, Tennessee; and The Mall at Wellington Green in Wellington, Florida. He also analyzed employee time-punch data for the same stores and days. The video times

27    were selected due to the numbers of individuals clocking out in a given period. (Hall Decl.,Ex. B. at p. 8.) Black Friday was selected at 5th Avenue due to the number of employees scheduled to work.

28    (*Id.*)

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION        17        Case No.  C 13-03451 WHA

1   on data applicable to the relatively large 5th Avenue store and is based in large part on data from an

2   atypically high-traffic Black Friday.

3   By comparison, Bag and Technology Checks at Apple's 105-employee Green Hills store

4   (Brock Decl., ¶ 5), lasted no more than  five seconds on the subset of occasions where such checks

5   did occur.  (Hall Decl., Ex. B at p. 1, 20.)  No lines of employees waiting for inspections were

6   observed at all at Green Hills.  (*Id.*)[30]

7   **4.   Not All Time Spent In Bag And Technology Checks Constitutes Overtime**

8   To substantiate their claim for overtime wages, it is not enough to merely allege Hourly

9   Employees worked off-the-clock.  Plaintiffs must further demonstrate that the alleged off-the-clock

10   time constitutes overtime.  Plaintiffs have not (and as explained below cannot) demonstrate that all

11   of the time Hourly Employees spend in Bag and Technology Checks constitutes overtime.

12   Under the FLSA, only time worked in excess of 40 hours in a workweek constitutes

13   overtime.[31]  Of Apple's current 18,245 Hourly Employees, a full 11,237 are part-time employees

14   with a regular schedule of less than 28 hours/week.  (Monkowski Decl., ¶6.)  Even if Plaintiffs'

15   longest time estimates for Bag and Technology checks were true, time spent in those checks still

16   would not put all Hourly Employee over 40 hours in a workweek.  Thus, for a significant portion of

17   the putative class, Plaintiffs have not even alleged sufficient facts to support an overtime claim.

18   **E.   Plaintiffs' Off-The Clock Overtime Claim Cannot Manageably Be Litigated On**
19   **A Collective Basis.**

20   Many Courts of Appeals reviewing conditional certification of FLSA actions have

21   acknowledged the similarities between the conditional standard under the FLSA and the standard

22   under Federal Rule of Civil Procedure 23.[32]  Apple requests that the Court apply Rule 23 standards

---

23   [30] Video at the Wellington Green store showed only four Bag and Technology Checks; a sample too
24   small for analysis.
   [31] 29 U.S.C. § 207(a).
25   [32] *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 2013 U.S. App. LEXIS 2409 *2 (7th Cir.
   Feb. 4, 2013) ("there isn't a good reason to have different standards for the certification of the two
26   different types of action [under Rule 23 and the FLSA], and the case law has largely merged the
   standards[.]"); *Adams v. Hy-Vee, Inc.*, 2012 U.S. Dist. LEXIS 98590, at *13-14 (W.D. Mo. May 22,
   2012) (applying *Dukes* in denying broad conditional certification; noting that *Dukes* "is
27   illuminating" in the Section 216(b) context); *Ruiz v. Serco, Inc.*, 2011 U.S. Dist. LEXIS 91215 *18-
   19 (W.D. Wis. Aug. 5, 2011) (same); *Boelk v. AT&T Teleholdings, Inc.*, 2013 U.S. Dist. LEXIS
28   20606 *38-41 (W.D. Wis. Jan. 10, 2013) (declining to conditionally certify a collective action based

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION

18

Case No.  C 13-03451 WHA

here to the greatest extent possible.  Although litigants often argue otherwise, the court in *Shushan v. University of Colorado at Boulder*, 132 F.R.D. 263 (D. Colo. 1990), demonstrated how FLSA collective actions and Rule 23 class actions are not mutually exclusive.  The *Shushan* court found that representative actions under § 216(b) "must satisfy all of the requirements of Rule 23, insofar as those requirements are consistent with 29 U.S.C.A. § 216(b)."[33]

Moreover, in 2002, the Court of Federal Claims adopted procedural rules that closely follow the Federal Rules of Civil Procedure.  *See* Rules of the U.S. Court of Federal Claims (RCFC) 1, 2002 Rules Committee Note.  The primary difference between RCFC 23 and Rule 23 is that class members must opt into class actions under the RCFC.  RCFC 23's procedures have been applied to several opt-in class actions, including *Delpin Aponte v. U.S.*, 83 Fed. Cl. 80 (2008), which arose under the FLSA.  Thus, Rule 23, with slight changes, can apply to opt-in actions.

### 1.    The Class Is Not Ascertainable

Plaintiffs fail to explain how the parties can identify which Hourly Employees belong in their proposed class.  As the facts above establish, clearly not **all** Hourly Employees belong in the class.  Identification of which Hourly Employees may have a claim for overtime wages based on time allegedly spent in Bag and Technology Checks requires numerous individualized inquiries, including: (1) did an Hourly Employee choose to bring a bag or personal Apple technology to work, and on what days; (2) did an Hourly Employee store his/her bags or personal Apple Technology in the store versus an off-site break room; (3) did an Hourly Employee work in, or clock out from, the store versus an off-site location; (4) for the days the Hourly Employee did choose to bring a bag or personal Apple technology into a store, did the Hourly Employee undergo a Check; (5) did an Hourly Employee spend any more than a *de minimis* amount of time in Bag or Technology Checks; and (6) did the amount of time spent in Bag or Technology Checks during any particular workweek put the Hourly Employee in an overtime position.  Courts routinely decline to certify claims when

in part on concerns of commonality recognized by the Court in *Dukes*); *Buckland v. Maxim Healthcare Servs.*, 2012 U.S. Dist. LEXIS 122281, *11-12 (C.D. Cal. 2012) (analyzing the "similarly situated" requirement under the FLSA in relation to Rule 23's commonality requirement in light of *Dukes*.)

[33] *Shushan*, 132 F.R.D. at 265.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    19                    Case No.  C 13-03451 WHA

the alleged class is grossly overbroad and there is no manageable way to ascertain who belongs in the class.[34]

### 2.  Plaintiffs' Claims Are Not Typical

To proceed on a collective basis, Plaintiffs' individual claims should be typical of those they seek to represent.  Otherwise, Apple would be deprived of its due process rights to cross-examine non-testifying opt-ins.  Plaintiffs here should not be permitted to play both sides of the fence.  They have not, and cannot, prove that their experiences are representative due to the inherently person-specific nature of off-the-clock work cases.  Yet, they want to act like Rule 23 class representatives and try this case on the basis of their experiences.  Permitting that "out" would deprive Apple of its rights to defend against individual claims and cross-examine each opt-in.  Although Plaintiffs claim that a common question is raised by the claims of the putative class, that question does not have a common answer.  As the Supreme Court noted in *Dukes*, "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."[35]

### 3.  There Are Inherent Conflicts Within The Class

Citing no authority, Plaintiffs ask this Court to ignore inherent conflicts within their own class.  However, courts deny certification when such conflicts exist, particularly when the conflicts require class counsel to "skewer" their own proposed clients.[36]  The following excerpt from the deposition of Peter Jordan, the first putative (non-opt-in) class member to be deposed by Plaintiffs' counsel, demonstrates that proposed class counsel will be required to do just that:

---

[34] In this context, the ascertainability requirements of Rule 23 are instructive.  *See Jones-Turner v. Yellow Enter. Sys., LLC,* 2011 U.S. Dist. LEXIS 118564 (W.D. Key. 2011) (denying certification where the only way to ascertain who belongs in the putative class is to reach a determination on the merits of each individual employee); *Mateo v. M/S Kiso,* 805 F. Supp. 761, 773 (N.D. Cal. 1992) (holding that the class definition was "so broad as to be unascertainable, and on that basis alone, un-certifiable").

[35] 180 L. Ed. 2d at 390 (internal citations omitted).

[36] "The spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client demeans the integrity of the legal profession and undermines confidence in the attorney client relationship."  *Hernandez v. Paicius,* 109 Cal App. 4th 452, 467 (2003), *overruled in part on other grounds in People v. Freeman,* 47 Cal. 4th 993 (2010).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    20                    Case No.  C 13-03451 WHA

**Q. So you're saying that you**, including waiting in line, getting your bag checked, getting your technology card checked, **has [sic] never taken more than 30 seconds in your experience**?

A. My day-to-day experience is I do not wait in line, and that process takes 30 seconds, if that.  Sometimes as little as five seconds.

**Q. Have you ever actually timed it, or are you estimating**?

**A**. Yesterday, actually, because I knew I was coming here, I timed it.

(Jordan Depo., 7:10-21.)

As this passage confirms, to prosecute Plaintiffs' overtime claims on behalf of some Hourly Employees, Plaintiffs' counsel will be forced to cross-examine and discredit other Hourly Employees.  That situation alone renders Plaintiffs' claims unsuitable for collective litigation.

### 4.    Common Facts Do Not Predominate Plaintiffs' Overtime Claim.

To grant Plaintiffs' motion, this Court must be satisfied that the case is "manageable as a collective action."[37]  Given the numerous factual discrepancies impacting the liability decision in this case, Plaintiffs at a minimum are required to offer an explanation as to how their case can be tried on a representative basis.  They have offered none.  Apple's expert, Dr. Hall, has concluded that Plaintiffs' overtime claim cannot be litigated on a representative basis.

Dr. Hall analyzed time-punch data and observed extensive surveillance video of checks at three of the stores where Plaintiffs and/or opt-ins had worked.  Dr. Hall noted that the Bag and Technology Check procedures at each of the stores were different: at 5th Avenue, a posted security guard performed the checks; at Green Hills, a manager in the office performed the checks; and at Wellington Green, managers on the floor performed the checks.

Dr. Hall concluded that inspection times depend in large part on individualized factors.  For example, inspections at the 5th Avenue store were highly variable from employee to employee due to: how long the employee conversed with the guard or others; whether the employee was prepared

---

[37] *Bennett*, 880 F. Supp. 2d at 1284-85 (denying motion to conditionally certify tip credit class under the FLSA where "several individualized issues . . . render[ed] the group unmanageable as a collective class"); *Shim v. Echosphere, L.L.C.*, 2010 U.S. Dist. LEXIS 135984, at *5-6 (S.D. Fla. Dec. 20, 2010) (denying conditional certification to a putative class of cable technicians given "significant individual considerations" which would "likely multiply if the Court conditionally certified a nationwide class" and would "not promote judicial and litigant economy, which are, of course, the *raison d'etre* of the § 216(b) collective action").

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    21                    Case No.  C 13-03451 WHA

for inspection upon arrival, and the number and types of items carried.  (Hall Decl., Ex. B at p. 1.)  The testimony of Plaintiffs' witnesses confirms Dr. Hall's findings.  Beltzer testified that a Technology Check would be as few as 30 seconds if he had the screen on his iPhone set to the serial number and his technology card out.  (Beltzer Depo., 77:19-78:17).  He further testified that the time it took for a Technology Check was directly tied to the number of personal Apple products he **chose** to bring to work on any given day.  (Beltzer Depo., 79:22-80:4).  Dowling was able to altogether avoid a Technology Check for his computer by placing a sticker with his name on the computer.  (Dowling Depo., 73:6-23).  Idakaar testified her checks at lunch could be shorter if she chose not to bring all of her personal belongings with her.  (Idakaar Depo., 61:11-22).  Opt-in Speicher confirmed the amount of time for a bag check varies depending on the type of bag.  (Speicher Depo., 60:3-12).

In his report, Dr. Hall provided actual ranges of time and average times to **complete** checks, together with actual ranges of time as well as the average time spent **waiting for checks**.  However, Dr. Hall further confirmed that a fact finder could not extrapolate the average observed time in Bag and Technology Checks to all Hourly Employees because the differences in time spent in such checks was in large part due to Hourly Employees' personal choices and conduct.  In statistical terms, Dr. Hall explained: "The fact that the standard deviation for inspection and waiting times is near or in excess of the value of the average inspection and waiting time suggests both substantial variability and very low predictability on an individual level.  Further, the greater part of the variability I observed resulted from choices made by employees themselves (*e.g.*, the decision to stop and talk to a guard or to come to the bag/technology check process unprepared)."

Based on all of these factors, Dr. Hall concluded that one could not come to any valid or reliable conclusions regarding the average amount of employer-required time experienced by Hourly Employees in all stores across the United States.  Courts routinely deny certification of off-the-clock wage claims precisely because the question of liability depends so fundamentally on individualized questions of fact.[38]  In *Williams v. Securitas Sec. Servs. USA*, 2011 U.S. Dist. LEXIS 92337, the

---

[38] *Castle v. Wells Fargo Fin., Inc.,* 2008 U.S. Dist. LEXIS 106703 (N.D. Cal. 2008) ("The variety of different circumstances under which the declarants were allegedly required to work unpaid overtime also weights against certification").; *Simmons v. T-mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 5002, *24-25 (S.D. Tex. 2007).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION

22

Case No.  C 13-03451 WHA

court denied the security guard plaintiffs' motion for conditional certification based on various off-the-clock pre- and post-shift tasks.  The evidence, however, confirmed that the alleged off-the-clock work was "not required on every shift or at every [work] location."  *Id.* at 11.  Accordingly, any "unpaid pre- and post-shift work would depend on the [work] locations to which each individual guard had been assigned…Determining whether the putative class members were required or suffered to perform such tasks before and after their shifts would require the court to examine the working conditions, job requirements, and customary practices at hundreds of [work] sites."  *Id.* at 11-12.  The same holds true here.  The nature of Plaintiffs' claims would necessarily require the Court to not only examine the Bag and Technology Check procedures at each of Apple's 254 retail stores, but also the circumstances surrounding each alleged check for each Hourly Employee on any given day.

### 5.    Damage Calculations Are Too Individualized For Collective Action

The U.S. Supreme Court has confirmed that certification is improper when putative class member damages must be calculated individually. [39]  The numerous fact questions involved in determining whether any Hourly Employee is entitled to overtime wages in this case precludes certification.  For each Hourly Employee, a fact finder would need to determine: (1) whether the Hourly Employee went through Bag or Technology Checks on any day s/he worked; (2) how many Bag or Technology Checks the Hourly Employee went through each workday (when leaving for both breaks and the end of the day, only when leaving at the end of the day, etc.); (3) how long each of those Bag and Technology Checks took (inspection and waiting); (4) the total time spent in Bag and Technology Checks each workweek; and (5) whether the time spent in Bag and Technology Checks, if any, put the Hourly Employee into overtime for the workweek.  Pursuant to *Comcast*, Courts deny conditional certification when damage calculations are this complex.

---

[39] *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426, 1433 (2013) (certification improper because plaintiffs fell "far short of establishing that damages are capable of measurement on a classwide basis" and, as a result, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class.").

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                          23                    Case No.  C 13-03451 WHA

**F.     Any Notice Should Be By First Class Mail And A Third Party Administrator**

Plaintiffs ask for an order compelling Apple to provide email notice to Hourly Employees on two separate occasions.  (Proposed Order at ¶6).  Courts have concluded that notice exclusively by U.S. mail is perfectly adequate,[40] and have denied requests for e-mail notice because it is unnecessary and disruptive.[41]  If notice is ordered, it should go only to Hourly Employees employed within three years of the date notice is mailed because the three-year statute for FLSA claims runs from the date an employee opts to participate.  29 U.S.C. § 256(b).

Plaintiffs' request for Hourly Employees' telephone numbers should be denied because Plaintiffs have not demonstrated why they are entitled to or need that information at this stage of the proceedings.[42]  Plaintiffs' request for permission to maintain a website containing a link to the notice and counsel's contact information is moot.  For months, their counsel has maintained a website with links to press releases, the Complaint, and how to "Join This Action."  (Strauss Decl., ¶13, Ex. L)

**G.     The Request For Appointment Of Lead And Liaison Counsel Is Premature**

Plaintiffs spend almost as much of their motion on the appointment of interim lead counsel as they do arguing why conditional certification should be granted.  Although Apple does not oppose the appointment of lead counsel, it seems premature for Plaintiffs to seek appointment of lead counsel now, before the Court has decided whether to consolidate *Kalin* with this case.  (Dkt. No. 72).  The appointment of lead counsel could more efficiently be addressed after the consolidation, if there is one, and after the *Kalin* plaintiffs have an opportunity to be heard.

Plaintiffs' request for appointment of "liaison" counsel should be denied.  Plaintiffs do not explain what role "liaison" counsel would have, and it would appear to defeat the purpose of

---

[40] *See Hart v. U.S. Bank NA*, 2013 U.S. Dist. LEXIS 160147, *19 (D. Ariz. Nov. 8, 2013)(denying request for anything other than U.S. mail, noting "[h]ere, the best practicable notice is first class mail. The Court sees no reason why such notice is inadequate.")

[41] *See Hart*, 2013 U.S. Dist. LEXIS 160147 at *19 ("Furthermore, the Court agrees with Defendant that it would be disruptive to send notice to potential opt-in plaintiffs via their Defendant-provided work email address ..."); *Blakes v. Ill. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 63225, at *19-20 (N.D. Ill. June 15, 2011) (denying request for e-mail notice as unnecessary).

[42] *See Daniels v. Aeropostale West, Inc.,* 2013 U.S. Dist. LEXIS 59514 (N.D. Cal. 2013) (denying plaintiff's request for e-mail addresses and telephone numbers since both "are unnecessary for first-class mail delivery."); *Harvey v. AB Electrolux,* 2012 U.S. Dist. LEXIS 31507, at *13-14 (N.D. Iowa Mar. 9, 2012) (denying request for telephone numbers); *Martinez v. Cargill Meat Solutions,* 265 F.R.D. 490, 501 (N. Deb. 2009)(same).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    24                    Case No.  C 13-03451 WHA

1   appointing lead counsel if the Court also appoints a "liaison" counsel.  Apple would still be in a

2   position of not knowing which counsel is authorized to bind the class.

3   **IV.    CONCLUSION**

4          Plaintiffs ask this Court to evaluate their motion under the first stage standard, which they

5   frame as lenient.  Plaintiffs' weak evidentiary showing here does not satisfy even the first stage

6   standard, let alone the second stage standard for conditional certification that should apply because

7   Plaintiffs have admittedly already completed "substantial" and "significant" discovery.  Plaintiffs do

8   not allege that Apple's Bag and Technology check policy is unlawful, and indeed, it is not.

9   Plaintiffs' theory hinges on the alleged uniform unlawful implementation of that policy.  However,

10  the testimony of Plaintiffs and their witnesses, extensive video evidence of actual Bag and

11  Technology Checks and even analysis of empirical time-punch data all confirm that there is no

12  common experience of the putative class, and therefore Plaintiffs' off-the-clock claim for FLSA

13  overtime wages cannot be litigated on a representative basis.  Because resolution of Plaintiffs' FLSA

14  overtime claim depends on countless individualized questions of fact, which in light of due process

15  considerations can only be fairly resolved on an individual basis, Plaintiffs' motion for conditional

16  certification should be denied.

18  Dated: December 23, 2013

19                                               //s// *Julie A. Dunne*
                                                 JULIE A. DUNNE
20                                               LITTLER MENDELSON, P.C.
                                                 Attorneys for Defendant
21                                               APPLE INC.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO MOTION FOR
CONDITIONAL CERTIFICATION                    25                    Case No.  C 13-03451 WHA