# Exhibit 1



# THE DION-KINDEM LAW FIRM

EMAIL: PETER@DION-KINDEMLAW.COM

October 1, 2013

*Via Certified Mail, Return Receipt Requested*

Labor & Workforce Development Agency
801 K Street, Suite 2101
Sacramento, California 95814

Apple, Inc.
1 Infinite Loop
Cupertino, CA 95014

C T Corporation System
818 W Seventh St
Los Angeles, CA 90017

Re: *Notice of California Labor Code violations*

To Whom It May Concern:

    We and The Blanchard Law Group, APC represent Taylor Kalin. Pursuant to the provisions of Labor Code Sections 2699, *et seq.*, please be advised that during the course of Mr. Kalin's employment, Apple, Inc. violated the provisions of the California Labor Code as set forth in Addendum 1 hereto.

                                               Sincerely,

                                               THE DION-KINDEM LAW FIRM

                                               PETER R. DION-KINDEM, P.C.
                                               PETER R. DION-KINDEM

# ADDENDUM 1

## Table of Contents

I. Apple, Inc. ................................................................................................................. 1

II. The Employee Parties. ............................................................................................. 1

    A. Taylor Kalin. ................................................................................................ 1

    B. Aggrieved Employees. ................................................................................ 1

III. Labor law Violations. ............................................................................................... 2

    A. Apple did not pay its Hourly Employees for time spent waiting in line to clock in at the beginning of the shift and when they returned from their meal breaks. ........ 2

    B. Apple did not pay its Hourly Employees for time spent after clocking out for meal breaks and at the end of their shift for checking in equipment and undergoing security checks. ............................................................................................. 2

    C. Apple failed to reimburse employees for business expenses. ................... 3

    D. Apple violated Labor Code Sections 201 and 202 by failing to pay Kalin and Hourly Employees all wages earned and unpaid at the time of the termination of their employment. .............................................................................................. 3

    E. Apple violated Labor Code Section 203 by failing to pay Kalin and Hourly Employees the wages owing pursuant to Labor Code Sections 201 and 202. ......... 3

    F. Apple violated Apple's obligations under Labor Code Section 226(a) and the applicable Wage Order regarding records and the provision of accurate wage statements. .................................................................................................. 4

IV. Apple is liable for penalties pursuant to PAGA. ...................................................... 5

I. APPLE, INC.

Apple Inc. ("Apple") is a California multinational corporation headquartered in Cupertino, California that designs, develops, and sells consumer electronics, computer software and personal computers. Apple is the world's second-largest information technology company by revenue and the world's third-largest mobile phone maker. As of May 2013, Apple maintained 408 retail stores in fourteen countries. Apple is the largest publicly traded corporation in the world by market capitalization, with an estimated value of US$415 billion as of March 2013. As of September 29, 2012, Apple had 72,800 permanent full-time employees and 3,300 temporary full-time employees worldwide.

II. THE EMPLOYEE PARTIES.

A. Taylor Kalin.

Taylor Kalin ("Kalin") is a California resident. Within the last year, Kalin was an employee of Apple who worked at the Apple retail store in San Francisco, California as a non-exempt "Specialist." Kalin's employment with Apple terminated on or about November 12, 2012.

B. Aggrieved Employees.

Pursuant to Labor Code Sections 2698, *et seq.*, the Private Attorney General Act of 2004 ("PAGA"), Kalin is entitled to recover civil penalties on behalf of himself and other persons who are or were employed by the alleged violator and against whom one or more of the alleged violations was committed.

One or more of the alleged violations set forth below was committed against Kalin, and Kalin is therefore an "aggrieved employee" under Labor Code Section 2699(c), which provides in relevant part:

> (c) For purposes of this part, "aggrieved employee" means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.

For the purposes of this matter, the Aggrieved Employees include, but are not limited to, Kalin and all non-exempt employees who were employed by Apple as non-exempt Specialists, Lead Specialists and Expert Specialists ("Specialists") and non-exempt Managers, Senior Managers, Developmental Managers and Business Managers ("Managers,") and provided services in California. Specialists and Managers are collectively referred to as Hourly Employees.

A Specialist's duties include customer support relating to retail sales of Apple products and accessories. Specialists are also required to have knowledge of and be able to perform light diagnostic checks on Apple hardware and software. A Manager's duties include overseeing the Specialists and tending to customer-related needs. Specialists and Managers are non-exempt hourly paid employees who are entitled to overtime compensation.

### III. LABOR LAW VIOLATIONS.

Apple has engaged and continues to engage in illegal and improper wage practices that have deprived Apple Hourly Employees throughout California and the United States of millions of dollars in wages and overtime compensation.

**A. Apple did not pay its Hourly Employees for time spent waiting in line to clock in at the beginning of the shift and when they returned from their meal breaks.**

Kalin and other Hourly Employees were required to clock-in using Apple's computers. Kalin typically was required to arrive 15 minutes before his shift was scheduled to begin because there was typically a line of employees waiting to clock in on time and he never knew how long the line would be. On Launch days it would take up to 30 minutes to clock in because of the lines. Similarly, when Hourly Employees returned from their meal periods, they were required to wait in line to clock in.

Apple did not compensate Kalin or the other Hourly Employees for the time they were required to spend waiting in line to clock in. Apple therefore violated and continue to violate Labor Code Sections 1182.12, 1197, 510, and Paragraphs 3 and 4 of the applicable Wage Order.

**B. Apple did not pay its Hourly Employees for time spent after clocking out for meal breaks and at the end of their shift for checking in equipment and undergoing security checks.**

Kalin and other Hourly Employees were required to use company devices at work. Kalin and other Hourly Employees were required by Apple to check the devices out at the beginning of their shift and check the devices back in at beginning of the meal period if they left the premises and at the end of the shift, after the employees had clocked out. Because many Hourly Employees were required to do this, the check-in time could take anywhere from five to 45 minutes.

After the devices were checked in, Kalin and other Hourly Employees were required to undergo personal package and bag searches before they were permitted to leave the store for their uncompensated meal breaks and before they were permitted to leave the store after they had clocked out at the end of their shifts.

These security checks were significant, integral, indispensable, not a de minimis task or request and were done solely for Apple's benefit to prevent employee pilferage. By way of example, during any week of his employment, Mr. Taylor waited in line to undergo a "personal package and bag search" for at least 5 to 10 minutes without compensation prior to leaving for all of his uncompensated meal breaks and for at least 10 minutes prior to leaving at the end of all of his shifts once he had already clocked out.

Apple did not compensate Kalin or the Hourly Employees for this time. Apple therefore violated and continues to violate Labor Code Sections 1182.12, 1197, 510, and Paragraphs 3 and 4 of the applicable Wage Order.

    C.    **Apple failed to reimburse employees for business expenses.**

Labor Code Section 2802 states that "an employer shall indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

Kalin and other Hourly Employees were encorugaged to use their own personal Apple devices on the floor because Apple did not have enough devices that could demo on the floor. They also made calls on their devices to Apple Support for Apple's customers as well as made appointments for the "Genious Bar" for customers. Apple did not reimburse Kalin and Houlry Employees for this business use in violation of Section 2802.

    D.    **Apple violated Labor Code Sections 201 and 202 by failing to pay Kalin and Hourly Employees all wages earned and unpaid at the time of the termination of their employment.**

Labor Code Section 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately…

Apple violated Section 201 as to Hourly Employees who were discharged by willfully failing to pay the wages earned and unpaid upon the termination of their employment, including unpaid wages for regular hours worked, unpaid overtime, unpaid meal premiums and/or unpaid rest period premiums.

Labor Code Section 202 provides:

> If an employee not having a written contract for a definite period quits Kalin's or her employment, Kalin's or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of Kalin's or her intention to quit, in which case the employee is entitled to Kalin's or her wages at the time of quitting. . . .

Apple violated Section 202 as to Kalin and Hourly Employees who quit by willfully failing to pay the wages earned and unpaid upon the termination of their employment, including unpaid wages for regular hours worked, unpaid overtime, unpaid meal premiums and/or unpaid rest period premiums.

    E.    **Apple violated Labor Code Section 203 by failing to pay Kalin and Hourly Employees the wages owing pursuant to Labor Code Sections 201 and 202.**

Labor Code Section 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections *201*, 201.3, 201.5, *202*, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents himself or himself to avoid payment to him or her, or who refuses to receive the payment when fully tendered

to him or her, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which he or she so avoids payment. (Emphasis added).

Apple violated Section 203 as to Kalin and other Hourly Employees by failing to pay the wages owing to them under Section 201 or 202. Defendants' failure to pay all final wages was willful within the meaning of Labor Code Section 203.

    **F.**    **Apple violated Apple's obligations under Labor Code Section 226(a) and the applicable Wage Order regarding records and the provision of accurate wage statements.**

Apple violated Section 226(a)(1) as to Kalin and other Hourly Employees by failing to provide them statements of wages that accurately showed gross wages actually earned by failing to show all wages earned, including wages for regular hours worked and overtime hours worked.

Apple violated Section 226(a)(2) by failing to provide Kalin and other Hourly Employees statements of wages that accurately showed the total hours worked by Kalin and other Hourly Employees.

Apple violated Section 226(a)(5) by failing to provide Kalin and other Hourly Employees with statements of wages that accurately showed net wages actually earned by failing to show all wages earned, including wages earned for regular hours worked, overtime hours worked, meal period wages, and/or rest period wages.

Apple violated Section 226(a)(9) by failing to provide Kalin and other Hourly Employees with statements of wages that accurately showed the applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by failing accurately to show the actual number of regular hours worked at the applicable hourly rate and by failing accurately to show the actual overtime hours worked at the applicable overtime hourly rate.

California Labor Code Section 1174 requires California employers to keep records showing the names and addresses of all employees employed, and to keep at a central location in the State of California or at the plants or establishments which employees are employed, payroll records showing the hours worked daily by and the wages paid to all employees employed at the respective plants or establishments.

IWC Wage Order No. 4, Section 7(A)(3) further requires employers to keep accurate time records showing when the employee begins and ends each work period. Under Section 7(A)(5), employers must also record each employee's total hours worked and applicable rates of pay, and must make such information "readily available" to the employee upon request.

Defendants' policies and/or practices of failing to pay correct wages for all hours worked and failing to include all required and accurate information on the wage statements have caused these individuals to suffer and they will continue to suffer actual economic harm from the violations set forth above, as they have been, and will continue to be, precluded from accurately monitoring the wages to which they are entitled, have been required to retain counsel and other experts or consults to evaluate and calculate unpaid wages, and have suffered delays in receiving the wages and interest that are due and owing to them.

By willfully failing to maintain the records required by California Labor Code § 1174(c), or accurate and complete records required by § 1174(d), Defendants are also liable for a civil penalty of $500 for each violation under Section 1174.5, which provides:

> Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

IV.    **APPLE IS LIABLE FOR PENALTIES PURSUANT TO PAGA.**

By virtue of Apple's violations, Apple is liable for penalties pursuant to Labor Code Section 2699 and Sections 210, 256, 558, 1174.5, 1197.1, 226, and 226.3, *inter alia*

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7012 1640 0000 6246 5321

Sent To: Apple, Inc.
Street, Apt. No.; or PO Box No.: 1 Infinite Loop
City, State, ZIP+4: Cupertino, CA 95014

PS Form 3800, August 2006                See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7012 1640 0000 6246 5338

Sent To: Labor & Workforce Development Agency
Street, Apt. No.; or PO Box No.: 801 K Street, Suite 2101
City, State, ZIP+4: Sacramento, CA 95814

PS Form 3800, August 2006                See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7012 1640 0000 6246 5314

Sent To: CT Corporation System
Street, Apt. No.; or PO Box No.: 818 W Seventh St
City, State, ZIP+4: Los Angeles, CA 90017

PS Form 3800, August 2006                See Reverse for Instructions

## Receipt 1

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Apple, Inc.
   1 Infinite Loop
   Cupertino, CA 95014

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: X [signature] — Agent / Addressee
B. Received by (Printed Name): Luis Gonzalez
C. Date of Delivery: 10-4
D. Is delivery address different from item 1? ☐ Yes ☐ No

3. Service Type: ☒ Certified Mail  ☐ Express Mail  ☐ Registered  ☒ Return Receipt for Merchandise  ☐ Insured Mail  ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7012 1640 0000 6246 5321

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

## Receipt 2

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Labor & Workforce Development Agency
   801 K Street, Suite 2101
   Sacramento, CA 95814

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: X [illegible stamp] — Agent / Addressee
B. Received by (Printed Name): EMPLOYMENT DEVELOPMENT DEPT / 800 Capitol Mall / Sacramento, CA 95814
C. Date of Delivery: [USPS Sacramento postmark]
D. Is delivery address different from item 1? ☐ Yes ☐ No

3. Service Type: ☒ Certified Mail  ☐ Express Mail  ☐ Registered  ☒ Return Receipt for Merchandise  ☐ Insured Mail  ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7012 1640 0000 6246 5338

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

## Receipt 3

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   CT Corporation System
   818 W. Seventh ST
   Los Angeles, CA 90017

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: X CT CORPORATION SYSTEM — ☒ Agent ☐ Addressee
B. Received by (Printed Name): 818 West Seventh Street, 2nd floor, Los Angeles, CA 90017
C. Date of Delivery:
D. Is delivery address different from item 1? ☐ Yes ☐ No

3. Service Type: ☒ Certified Mail  ☐ Express Mail  ☐ Registered  ☒ Return Receipt for Merchandise  ☐ Insured Mail  ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7012 1640 0000 6246 5314

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

From: Teyler Kalin <tkalin@apple.com>
Date: July 11, 2012 3:01:02 PM PDT
To: Brian Altman <brian.altman@apple.com>
Cc: Chris Lamb <clamb@apple.com>
Subject: Re: Panther House- Q4/W1 Business

Hello Brian,
After looking at this chart and seeing that the amount of people not participating in biz intros is very great. I thought it might be time to let you in on why that is exactly.
The store Red Zone has decided not to do biz intros as a way to retaliate against the Managers/Biz Team Managers. Its as simple as that. The reasons I would guess your aware of? I have developed a very detailed training guide for the managers to use to convert the opinions of the staff and get them back on BIZ intros and having a good perception of the managers and Biz team once again. unfortunately Anna approached me on the floor and informed me that i was not allowed to work on the training anymore.

If you Guys need help fixing this perception and stopping the strike let me know. I already have it developed and prepared.

PEACE/LOVE and everything better for everyone!

Teyler Kalin

On 07/11/12, **Brian Altman** <brian.altman@apple.com> wrote:

> Hello Panther House,
>
> For the the first week (Sun 7/1-Sat 7/7) of the 4th Quarter, here are a sample of just a few qualified introductions contributed by members of our House.
>
> So far this week, I have already seen some great ones coming through.
>
> **Please let me know if you would ever like to look at Engage (the Business team's customer management system) and see what your intros look like. I can also show you your qualified vs. archived rate as well as the sales dollars that your introductions have turned into.**
>
> Christian- 7/6- Delicious Monster Software- San Francisco, CA
>> Delicious Monster Software develops consumer software for both OS X and iOS devices. Zena says that they all use Mac computers within the office. She was unaware of our Business Team upon coming in.
>
> Ericka- 7/6- Seedwell (seedwell.com)- San Francisco, CA.

EXHIBIT 13
WIT: Kalin
DATE: 3-18-14
Shelley M. Sailor, CSR 10254

Seedwell is a creative studio based in San Francisco specializing in video production for viral video, commercial and documentary work. Clients include Google, Microsoft, American Express, Genentech, Paramount, etc.

Jazz- 7/4- Mattson (foodcom,com)- Foster City, CA.

Alanna came in to buy some essentials. I found out she works for Mattson, a company that develops food and beverages for brands such as Campbell's, Dole, Dreyer's, Heinz, Mrs. Fields, Starbucks, and Safeway! They use a lot of Apple products and Alanna thought their company might be connected with our business team, although I did not see it in Engage, so perhaps not. Mattson was founded by Pete Mattson in 1977. Www.foodcom.com

Jeremy Bunch- 7/2- Feebs, Inc.- Huntington Beach, CA

Phoebe came to get an iphone upgrade. She is interested in opening a business account with our store and learning about what the business team can do for her business.

Brian Altman

Apple Store, San Francisco

415-392-0202

www.apple.com/sanfrancisco