1    JULIE A. DUNNE, Bar No. 160544
     jdunne@littler.com
2    LITTLER MENDELSON, P.C.
     501 W. Broadway, Suite 900
3    San Diego, California 92101
     Telephone:    619.232.0441
4    Facsimile:    619.232.4302

5    TODD K. BOYER, Bar No. 203132
     tboyer@littler.com
6    LITTLER MENDELSON, P.C.
     50 W. San Fernando, 15th Floor
7    San Jose, California 95113.2303
     Telephone:    408.998.4150
8    Facsimile:    408.288.5686

9    MICHAEL G. LEGGIERI, Bar No. 253791
     mleggieri@littler.com
10   LITTLER MENDELSON, P.C.
     1255 Treat Blvd., Suite 600
11   Walnut Creek, CA 94597
     Telephone:    925.932.2468
12   Facsimile:    925.946.9809

13   Attorneys for Defendant
     APPLE INC.

14

15               UNITED STATES DISTRICT COURT

16           NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18   AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER; AND TAYLOR KALIN, | Case No. 13cv03451 WHA |
| 19 | **DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 23(C)(4) CERTIFICATION OF PARTICULAR ISSUES** |
| 20                Plaintiffs, | |
| 21 | Date: July 2, 2015 |
| 22        v. | Time: 8:00 a.m. Judge: Hon. William H. Alsup |
| 23   APPLE INC., | Courtroom: 8 |
| 24               Defendant. | Trial Date: September 14, 2015 |

25

26

27

28

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                                 Case No. 13cv03451

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS ................................................................... 3

    A.   Apple Does Not Require Employees To Bring Bags Or Personal Apple
        Technology ...................................................................................................... 3

    B.   Employees Without Bags Or Personal Devices Were Not Searched ......................... 4

    C.   Bag And Personal Apple Technology Check Practices Vary Across Stores.............. 5

    D.   Time Spent In Bag Checks Or Personal Apple Technology Checks, If Any,
        Varied Significantly And Was Generally *De Minimis* ................................................ 7

    E.   Whether Checks Occurred On Or Off The Clock Varied.......................................... 8

III.  PLAINTIFFS' MOTION IS FUNDAMENTALLY IMPROPER BECAUSE
     PLAINTIFFS DID NOT SATISFY THE MANDATORY REQUIREMENTS OF
     RULE 23(A) AND RULE 23(B) ............................................................................... 8

IV.   PLAINTIFFS CANNOT SATISFY RULE 23(A) ................................................... 11

    A.   Plaintiffs Failed To Establish That The Class Is Ascertainable Or Numerous.......... 11

    B.   Fundamental Conflicts Between Plaintiffs' Testimony And Putative Class
        Member Testimony Create Conflicts For Plaintiffs' Counsel ................................... 11

    C.   Plaintiffs Failed To Establish Commonality................................................... 13

V.    PLAINTIFFS CONCEDE THAT RULE 23(B) CANNOT BE SATISFIED ...................... 14

    A.   Individualized Questions Of Fact Predominate As To Whether An Employee
        Brought A Bag Or Personal Apple Technology To The Store On Any Given
        Day.................................................................................................................. 14

    B.   For Employees Who Brought A Bag Or Personal Apple Technology To Work,
        There Is No Manageable Way To Determine Whether A Check Took Place .......... 16

    C.   For Employees Who Brought A Bag, And A Check Took Place, There Is No
        Manageable Way To Determine If The Bag Contained "A Necessity Of Life" ....... 18

    D.   Individualized Questions Predominate As To Whether Employees Spent More
        Than A *De Minimis* Amount Of Time In Checks.................................................... 20

    E.   Individualized Questions Predominate As To Whether Employees Were On
        Or Off The Clock For A Bag Or Technology Check................................................ 22

VI.   RULE 23(C)(4) IS NOT APPLICABLE .................................................................. 23

VII.  PLAINTIFFS' PROPOSAL FOR 12,400 MINI-TRIALS IS NOT A VALID CLASS
     ACTION TRIAL PLAN .............................................................................................. 24

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

i.

Case No. 13cv03451

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

VIII.  CONCLUSION.................................................................................................................. 25

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

ii.

Case No. 13cv03451

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Alvarado v. Costco,*
   2008 WL 2477393 (N.D. Cal. June 18, 2008)......................................................................20

*Amador v. Baca,*
   299 F.R.D. 618 (C.D. Cal. 2014)..............................................................................................9

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)...................................................................................................................9

*Baas v. Dollar Tree Stores, Inc.,*
   2008 WL 906496 (N.D. Cal. April 1, 2008).........................................................................12

*Burlington Northern R.R. Co. v. Dept. of Rev. of State of Wash.,*
   934 F.2d 1064 (9th Cir. 1991) ...............................................................................................25

*Butler v. Sears, Roebuck and Co.,*
   727 F.3d 796 (7th Cir. 2013) ..................................................................................................10

*Cherry v. City College of San Francisco,*
   2005 WL 6769124 (N.D. Cal. June 15, 2005) (Alsup, J.) ....................................................10

*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013)....................................................................................................8, 11, 14

*Ellis v. Costco,*
   657 F.3d 970 (9th Cir. 2011) ..................................................................................................10

*Evans v. IAC/Interactive Corp.,*
   244 F.R.D. 568 (C.D. Cal. 2007)..............................................................................................7

*Hernandez v. Paicius,*
   109 Cal. App. 4th 452 (2003) .................................................................................................12

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2008) ..................................................................................................12

*Jacks v. DirectSat USA, LLC,*
   2015 WL 1087897 (N.D. Ill. March 25, 2015).....................................................................10

*Kayes v. Pacific Lumber Co.,*
   51 F.3d 1449 (9th Cir. 1995) ..................................................................................................12

*La Buy v. Howes Leather Company,*
   352 U.S. 249 (1957)..................................................................................................................25

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Lilly v. Jamba Juice Company,*
2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) ........................................................................10

*Lindow v. United States,*
738 F.2d 1057 (9th Cir. 1984) ................................................................................................20

*Lou v. MA Laboratories, Inc.,*
2014 WL 68605 (N.D. Cal. Jan. 8, 2014) (Alsup, J.) .............................................................12

*Lusby v. Gamestop,*
2015 U.S. Dist. LEXIS 42637 (N.D. Cal. March 31, 2015).....................................................21

*McReynolds v. Merrill Lynch,*
672 F.3d 482 (7th Cir. 2012) ..................................................................................................10

*Ogiamien v. Nordstrom, Inc.,*
2015 U.S. Dist. LEXIS 22128 (C.D. Cal. February 24, 2015) ............................14, 15, 16, 23

*Ogiamien v. Nordstrom, Inc.,*
2015 WL 773939 (C.D. Cal. Feb. 24, 2015)............................................................................14

*Quinlan v. Macy's Corporate Services, Inc.,*
2013 U.S. Dist. LEXIS 164724 (C.D. Cal. August 22, 2013) ....................................... passim

*Scott v. Harris,*
550 U.S. 372 (2007)................................................................................................................22

*Sepulveda v. Wal-Mart Stores, Inc.,*
464 Fed. Appx. 636 (9th Cir. 2011).........................................................................................9

*Stiller v. Costco,*
2014 U.S. Dist. LEXIS 52237 (S.D. Cal. April 15, 2014).......................................................17

*Stiller v. Costco Wholesale Corp.,*
298 F.R.D. 611 (S.D. Cal. 2014) ............................................................................................14

*Stockwell v. City & County of San Francisco,*
2015 U.S. Dist. LEXIS 61577 (N.D. Cal. May 8, 2015)...........................................................9

*Troester v. Starbucks,*
2014 U.S. Dist. LEXIS 37728 (C.D. Cal. March 7, 2014)......................................................20

*Valentino v. Carter-Wallace, Inc.,*
97 F.3d 1227 (9th Cir. 1996) ...................................................................................................9

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

iv.

Case No. 13cv03451

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ................................................................2, 13, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 23 ...................................................................... passim

Fed. R. Civ. P. Rule 23(a) ..............................................1, 3, 8, 9, 10, 11

Fed. R. Civ. P. 23(b) ....................................................1, 3, 9, 10, 11, 23

Fed. R. Civ. P. Rule 23(b)(1) ...............................................................9

Fed. R. Civ. P. Rule 23(b)(2) ...........................................................9, 10

Fed. R. Civ. P. Rule 23(b)(3) ....................................................8, 9, 10, 14

Fed. R. Civ. P. Rule 23(c) ......................................................................9

Fed. R. Civ. P. Rule 23(c)(4) ........................................................ passim

Fed. R. Civ. P. Rule 23(c)(4)(A) ...........................................................9

Fed. R. Civ. P. 38(b) .............................................................................25

Fed. R. Civ. P. 53 .............................................................................1, 25

Fed. R. Civ. P. 53(a)(1) .......................................................................25

Fed. R. Civ. P. 53(a)(1)(B) ..................................................................25

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

v.

Case No. 13cv03451

# I.   INTRODUCTION

Plaintiffs Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Debra Speicher, and Taylor Kalin ask this Court to certify their theory that Defendant Apple Inc. ("Apple") has an unlawful policy of requiring employees to participate in bag and technology checks without compensation. Notably, Plaintiffs admit in their class certification motion that there is no systemic bag or technology check practice across the class.  Specifically, they admit: "(i) not every Apple Employee brings a bag or Apple product to work every day; (ii) not every Apple Employee goes through a Check each time he or she exists a California Store; (iii) there are times when some California Stores do not conduct checks; and (iv) the Checks sometimes take less than a minute in duration and sometimes more."  (Pl. Motion, 1:24-2:4.)

Accordingly, Plaintiffs' theory is not certifiable for the reasons cited in this Court's summary judgment ruling: "[t]he record in this action . . . involves many varying fact patterns and lends itself to a myriad of different interpretations of Apple's policy and practice regarding when an employee is required to undergo a security screening."  (May 30, 2014 Order, 5:9-12 (emphasis added).) Assuming for argument that the time at issue is even compensable (which Apple denies),[1] overwhelming evidence confirms this Court's prior finding that key issues of liability, including whether employees brought bags, what employees carried in their bags (*i.e.*, items of convenience or a life necessity), whether checks took place, and, if so, how long the checks took, vary substantially by store, by employee, and by day.

Indeed, Plaintiffs' motion for certification of "issues" is fundamentally flawed because Plaintiffs make no attempt to satisfy Rule 23(b)'s predominance requirement.  Instead, Plaintiffs try to sidestep the myriad individual questions that determine potential liability for their off-the-clock claim by asking this Court to certify "particular issues" under Rule 23(c)(4).  Substantial precedent, including from the United States Supreme Court and Ninth Circuit, confirms Plaintiffs may prosecute a class action only if they can satisfy Rules 23(a) and 23(b) to certify a class, and also confirms that Rule 23(c)(4) does not provide an independent basis to certify a class action.

Further, Plaintiffs' proposed trial plan is fatally flawed.  First, Federal Rule 53 confirms that

---

[1] *See* Apple's Motion for Summary Judgment, Dkt. No. 156.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    1                    Case No. 13cv03451

1    special masters may not be used in the manner proposed by Plaintiffs here.  Second, as explained by

2    the Supreme Court, "[w]hat matters to class certification . . . is not the raising of common

3    'questions' – even in droves – but, rather <u>the capacity of a classwide proceeding to generate common</u>

4    <u>answers apt to drive the resolution of the litigation</u>."   *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

5    2541, 2551 (2011) (emphasis added).  Plaintiffs' five "common questions" that purportedly relate to

6    Apple's liability for bag checks and technology checks do not generate common answers and, in any

7    event, do not answer the question of Apple's liability.  Plaintiffs' bag check and technology check

8    theories would require more than 12,000 mini-trials to adjudicate individualized issues of liability

9    for each putative class member.  For instance:

10   - Many employees did not bring bags or personal Apple technology to work, and substantial

11     evidence confirms that those employees did not go through a check.  If an employee did not

12     have a bag or Apple personal technology, and therefore did not have a check, the policy

13     cannot create liability as to that employee;

14   - Many stores did not conduct bag or technology checks at all, or did so rarely, at different

15     times throughout the relevant time period.  If no checks were conducted when an employee

16     left the store, the policy cannot create any liability as to that employee;

17   - To the extent Plaintiffs claim putative class members were required to bring a bag to work as

18     a "necessity of life," there is no way to determine on a class-wide basis whether an employee

19     brought a bag to work for personal convenience or to transport a disability accommodation,

20     "necessary" medication, or feminine hygiene products;

21   - Even when a check occurred, there is no way to determine on a class-wide basis whether the

22     check took more than a *de minimis* amount of time, and video evidence establishes checks

23     averaged well less than 10 seconds per employee; and

24   - When a check occurred, whether an employee was or could have been on-the-clock varied.

25        In short, because there are no common answers to the liability questions posed by Plaintiffs'

26   bag and technology check claim, Plaintiffs cannot satisfy the requirements for class certification

27   under Rule 23(a) and Rule 23(b).  And, because Plaintiffs cannot satisfy Rule 23(a) and Rule 23(b),

28   Plaintiffs cannot certify a "particular issue" under Rule 23(c)(4).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

2.

Case No. 13cv03451

## II.    STATEMENT OF RELEVANT FACTS

### A.    Apple Does Not Require Employees To Bring Bags Or Personal Apple Technology

Substantial evidence confirms Apple does not require employees to bring bags or personal Apple technology to work, and that neither bags nor personal Apple technology are "life necessities" for all Apple employees. [2]  Indeed, Plaintiffs admit that Apple employees do not bring bags or Apple devices to work every day.  (Pl. Motion, 5:5-6.)  Moreover, Dr. Randolph W. Hall analyzed video footage of 399 employees departing the San Francisco store, where Plaintiff Kalin formerly worked. Dr. Hall observed that **49%** of the employees left the store without carrying any observable bag or personal technology, thus proving that neither Apple nor life circumstances require all employees to carry a bag or to bring personal Apple technology to work.  (Ex. GG, p. 2.) [3]  Furthermore, many Apple employees confirmed they do not bring bags or Apple devices to work, or do not do so every day.  (*E.g.*, Ex. A-3., ¶ 7 ("I have never brought a bag with me to work at Apple."); Ex. A-24, ¶ 5 ("I rarely bring a bag to work."); Ex. A-19, ¶ 8 ("In over three years of working at Apple, I have brought a bag to work on only two to three occasions when I brought my school backpack to work so that I could do schoolwork during my lunch break."); Ex. A-1, ¶ 13; Ex. A-23, ¶ 4; Ex. A-20, ¶ 4; Ex. OO, at p. 224:3-11; Ex. A-27, ¶ 6; Ex. A-8, ¶ 11; Ex. A-21, ¶ 4; Ex. A-39, ¶ 5, 11; Ex. A-22, ¶ 5; Ex. PP, at p. 81:17-24; Ex. A-10, ¶ 8; Ex. A-24, ¶ 6; Ex. A-30 ¶ 3; Ex. A-9, ¶ 15.)

Notably, Plaintiffs no longer contend that Apple requires employees to bring personal Apple technology to work. [4]  Plaintiffs' contention that Apple effectively requires "many" employees to bring bags to work by requiring them to wear t-shirts and lanyards at work (Pl. Motion, 4:2-14) is negated by substantial evidence.  Plaintiffs incorrectly assert that employees may not wear their Apple shirts outside stores.  (Pl. Motion, 4:8-9.)  The written policy permits employees to wear their

---

[2] All Exhibits are attached to the Declaration of Todd K. Boyer filed herewith ("Boyer Decl."). References to exhibits are denoted "Ex. __ [bates number]."  References to deposition transcripts are denoted as "Ex. __ at (page number)."  References to Declarations are denoted as "Ex. __ ¶__."
[3] Dr. Hall analyzed six hours of video footage of the busiest time intervals of the busiest days at the San Francisco store.  (Ex. GG, p. 2.)  Declarations were produced by Apple on a rolling basis.  (Boyer Decl. ¶¶ 29-39).  Declarations were produced by Apple on a rolling basis.  (Boyer Decl. ¶¶ 5-23.)
[4] Apple also submits substantial evidence confirming this fact.  *See* Boyer Decl., Exs. A and B., including *e.g.*, Exs. A-1, ¶ 14; A-8, ¶ 19; A-13, ¶ 15; A-29, ¶ 14; Ex. B-1, ¶ 50; Ex. B-4, ¶ 45-46.)

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

3.

Case No. 13cv03451

1  t-shirts while traveling to and from work.  Apple simply asks employees to "[b]e sure to cover up

2  when traveling to and from work."  (Ex. CCC (Dkt. No. 156-1), ¶ 6, Ex. A thereto, APL 2435

3  (emphasis added); *see also.*, Ex. A-29, ¶ 15 ("We are not allowed to wear our Apple t-shirts in

4  public, so I cover mine with another shirt when I come and go from work.  When we had the

5  lanyards, I used to just wear it as well under my shirt so that it was not visible."); Ex. A-3, ¶ 6; Ex.

6  A-16,., ¶ 10; Ex. QQ., at p. 97:16-98:8; Ex. A-15, ¶ 20; Ex. A-39, ¶ 5; Ex. A-10, ¶ 8; Ex. A-32, ¶ 9.)

7  Alternatively, employees may hand-carry their t-shirts and lanyards.  (*E.g.*, Ex. A-4, ¶ 8; Ex. A-2, ¶

8  5; Ex. A-21, ¶ 5; Ex. A-7, ¶ 4; E. A-19, ¶ 7; Ex. B-15, ¶ 38.)  Indeed, some stores also have spare

9  shirts for employees to use.  (Ex. RR at p., 147:12-20 ("Q.  Does Apple have spares in the store if

10  somebody doesn't have their shirt for whatever reason?  A.  Yes.").)

11        In addition, extensive evidence, including non-manager declarations, establishes that many

12  Apple employees do not use a bag to carry t-shirts and/or lanyards to work.  (*E.g.*, Ex. A-15,¶ 19, 20;

13  Ex. A-16, ¶ 10; Ex. A-23, ¶ 4; Ex. A-17, ¶ 7; Ex. A-11, ¶ 8; Ex. A-19, ¶ 9; Ex. A-32, ¶ 9; Ex. A-34,

14  ¶ 4; Ex. A-29 ¶ 15; Ex. A-33, ¶ 14; Ex. A-35, ¶ 8; Ex. A-20, ¶ 5; Ex. A-2, ¶ 5; Ex. A-21,¶ 7; Ex. B-2,

15  ¶ 46; Ex. B-15, ¶ 34; Ex. B-12, Sec. Bag And Personal Technology Checks ¶ 7; Ex. B-1, ¶ 42; Ex.

16  B-9, ¶ 44, Ex. B-16, ¶ 34, Ex. B-11, ¶ 53, Ex. B-10, ¶ 36; Ex. B-5 ¶ 27; Ex. B-6 ¶ 21; Ex. B-13 ¶ 15;

17  Ex. B-8 ¶ 54; Ex. B-7, ¶ 19; Shalov Decl., Ex. 26 ¶ 4; *see also* Ex. PP, p. at 33:12-15, 33:23-34:1.)

18        Finally, this testimony is further supported by Dr. Hall's observation that 49% of employees

19  left the San Francisco store during his observation period without a bag, which means they did not

20  need a bag to carry a t-shirt or lanyard.  (Ex. GG, p. 2.)  Video evidence already in the record also

21  shows employees in the San Francisco store hand-carrying or covering-up t-shirts.  (*See* Dkt. No.

22  161-1 (Declaration of Steve Smith, Ex. A.))

23        **B.      Employees Without Bags Or Personal Devices Were Not Searched**

24        The plain language of the bag and technology check policies confirms that only bags and

25  Apple devices – not people themselves – are subject to search.  (Ex. CCC., and Ex. A thereto "[A]ll

26  employees, including managers and Market Support employees, are subject to personal package and

27  bag searches."); *see also* Boyer Decl., Ex. DDD.)  Thus, employees do not participate in bag or

28  technology checks if they do not have a bag or personal Apple technology.  (*E.g.*, Ex. A-22, ¶ 5

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    4.                         Case No. 13cv03451

("When I didn't bring a bag to work, I didn't have to undergo bag checks and I just walked out of the store after clocking out."); Ex. A-26, ¶ 11 ("On days when I did not bring a bag into the store, I did not have to undergo a bag or personal technology check."); Ex. A-31, ¶ 7 ("Since I do not bring a bag to work at Apple, I have never been through a bag check."); Ex. A-18, ¶ 4; Ex. A-8, ¶ 15; Ex. B-7, ¶ 22; Ex. SS, at p. 91:25-92:3; Ex. A-17, ¶ 12; Ex. A-15, ¶ 15; Ex. B-15, ¶ 49, Ex. B-9, ¶ 54; Ex. B-8, ¶ 49; Ex. B-12, Sec. Bag and Personal Technology Checks ¶ 15; Ex. B-16, ¶¶ 31, 49; Shalov Decl., Ex. 25, ¶ 5; Boyer Decl., Ex. AAA, at p. 59:12–17; Ex. TT, at p. 51:24-52:4.)

### C.   Bag And Personal Apple Technology Check Practices Vary Across Stores

Plaintiffs claim "Apple has a written policy that 'all' employees 'must' have their bags searched and personal technology checked 'every time' they leave the store," (Pl. Mot., 1:9-10), but then admit on the very next page that "(ii) not every Apple employee goes through a Check each time he or she exits a California Store; [and] (iii) there are times when some California Stores do not conduct checks," (Pl. Mot., 2:1-3).  Thus, Plaintiffs admit that even if an employee brought a bag or Apple device to work, Apple's bag and technology check policies did not require a check of all employees' bags or devices every time they left the store.

Carol Monkowski, Apple's person most knowledgeable about Apple's bag check policy, testified that Apple empowers Store Leaders to decide whether and to what extent to implement the bag check policy.  (Ex. UU, at p. 91:6-93:9.)  Paul Benjamin, Apple's Director of Loss Prevention, testified: "ultimately bag checks are at the discretion of the store leadership." (Ex. VV, at p. 81:11-14, *see also* pp. 81:15-82:15.)  And Dr. Hall's video analysis confirms that practices vary by store. Based on the video he reviewed: the San Francisco store conducted checks with a dedicated security guard at a separate employee exit; the Century City store and The Grove store did not conduct checks; and only five bag checks (and no technology checks) occurred in the manager's office at the Carlsbad store.  (Ex. GG, at pp. 1-4.)

Some Store Leaders decided not to conduct bag or technology checks at all.  (Ex. B-13., ¶ 10 ("Later in 2010, I decided that we were no longer going to conduct bag checks or technology checks at the Fashion Island store."); Ex. B-6, ¶ 18; Ex. B-8, ¶ 30; Ex. B-2., ¶ 25; Ex. B-12, Sec. Bag and Personal Technology Checks ¶¶ 21-23; Ex. B-1, ¶ 29; Ex. B-9, ¶ 24; *see also*, *e.g.*, Ex. A-13, ¶¶ 8,

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                              5.                           Case No. 13cv03451

12, 15 (no bag or technology checks during his time at Century City or The Oaks during the relevant time period); Ex. A-12, ¶¶ 10, 12, 13 (no bag or technology checks during his time at The Grove, Americana at Brand, or Glendale Galleria); Ex. A-22, ¶ 12 (no technology checks in San Luis Obispo since 2010 except for a one-week period in June 2013; Ex. A-17, ¶ 8 (no bag checks during his time at Century City); Ex. GG, at p. 3 (no bag or technology checks during his observations of Century City and The Grove).)) [5]  For instance, Barbara Davis, the Store Leader for the Santa Barbara store, attempted to implement bag checks and technology checks on Apple computers and iPads (but not iPhones) for approximately a month in 2011.  She decided that the store would no longer conduct checks because she felt that it sent the wrong message.  (Ex. B-2, ¶¶ 21-25.)  Similarly, Tom Montanez, the Store Leader for the Promenade store in Temecula, California, decided in April 2012 that the store would no longer conduct bag or technology checks because he trusted the store's employees and because the store had barely any theft.  (Ex. B-8, ¶¶ 22-24.)

Some stores conducted bag checks, but not technology checks.  (Ex. B-4, ¶ 22.)  Some conducted technology checks on iPads and MacBooks, but not iPhones.  (Ex. NN, at p. 188:7-24; Ex. A-26, ¶ 4; Ex. A-12, ¶ 14.)  And, even in stores where checks occurred, Plaintiffs admit the frequency of the checks varied.  (Pl. Motion, 2:1-3; see, e.g., Ex. SS, at p. 72:13-18 ("Q.  Of the days when you had an iPhone or your laptop with you, how many of those days did you end up going through a tech check or a technology check? A.  I don't recall. Q.  Was it every time? A.  No."); Ex. A-37, ¶ 10 ("I would estimate that I went through a bag or a technology check about 10-15% of the time."); Ex. A-15, ¶¶ 8-10, 18; Ex. WW, at p. 23:8-14; Ex. B-11, ¶ 31.)  Indeed, Dr. Hall confirms that most employees he observed on video for four stores – with or without bags – left the stores without any check.  (See Ex. GG, pp. 16-17.)

Indeed, a number of employees testified that they have never been subject to a bag or a technology check.  (Ex. A-39, ¶ 7 ("I have never gone through or seen a bag or technology check since I started working for Apple in California."); Ex. A-12, ¶ 10 ("I have never undergone a bag

---

[5] Plaintiffs selectively quote a policy as stating "[a]dhere to all store key policies," (Pl. Motion, 6:7-8), but omit the following sentence that shows this policy refers to the actual keys to the store: "Adhere to all store key policies.  Never hand store keys to an unauthorized employee." (Shalov Decl. Ex. 36, APL-FRLEKIN_00002668.)  The key policy is irrelevant to the bag check policy.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

Case No. 13cv03451

1   check at The Grove since coming back here in 2012, even though I have a bag with me in the store.

2   I also bring my iPhone with me every day, but we do not do technology checks at The Grove so that

3   has never been checked either."); Ex. A-16., ¶¶ 11, 13; Ex. A-13, ¶ 17; Ex. A-31, ¶¶ 7, 9; Ex. A-35,

4   ¶ 11; Ex. A-27, ¶ 9; Ex. A-5, ¶¶ 6, 11; Ex. A-3, ¶¶ 9-10; Ex. A-2, ¶¶ 6-7; Ex. A-37, ¶ 16; Ex. A-7, ¶

5   8.)

6       Additionally, some stores have off-site break rooms where employees may store their bags

7   and/or personal Apple technology, and thereby avoid potential bag or technology checks.  (*E.g.*, Ex.

8   SS, at p. 72:5-8 ("Q. Once the offsite break room opened, could you have left any of your bags there

9   if you wanted to avoid having a bag check? A. Yes."); Ex. A-37, ¶ 15 ("At the UTC store, I never

10  went through a bag check because I always stored my bags in the offsite break room."); Ex. A-26, ¶

11  5; Ex. A-12, ¶ 9; Ex. A-31, ¶ 7; Ex. NN, at p. 180:16-20.)

12      **D.    Time Spent In Bag Checks Or Personal Apple Technology Checks, If Any,**
            **Varied Significantly And Was Generally *De Minimis***

13

14      Even if an employee left with a bag or an Apple device and a check occurred, Dr. Hall's

15  analysis showed that the average time for a check was *de minimis* – between .42 and 8.7 seconds -

16  and the average wait time for a check was between zero and .97 seconds.  (Ex. GG, at p. 16.)

17      These findings are supported by substantial evidence, including the testimony of Apple's

18  witnesses (including non-management employees) and the deposition testimony of Plaintiffs'

19  witnesses (as opposed to their declarations), which confirm that the check process generally lasted a

20  *de minimis* amount of time. [6]  (*E.g.*, Ex. A-37, ¶ 13 ("When I did have checks done, the bag and

21  technology check process took together about 15 seconds or less."); Ex. A-26, ¶ 10 ("The longest

22  time, in total, including all waiting and check time, that I've ever experienced in a bag check is about

23  30 seconds.  This (30 seconds' duration) would be exceedingly rare."); Ex. A-15, ¶ 11 ("The bag

24

---

25  [6] Plaintiffs' motion relies, in part, on the declarations of former employees Cherie Coles, Susan
    Schneider and Omar Caputo.  (Shalov Decl. Ex. 20, 24, 59.)  Apple noticed the depositions of these

26  individuals and confirmed the depositions with Plaintiffs' counsel, yet these individuals failed to
    appear for their depositions.  (Boyer Decl. at ¶ 25.)  The Court should therefore disregard their

27  declarations.  *See Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 571 (C.D. Cal. 2007) (on motion
    for class certification, striking declarations for witnesses who were not made available for

28  deposition).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    7.                    Case No. 13cv03451

1  check process usually takes about 10 seconds or less."); Ex. A-22, ¶ 6 (longest wait was "about one

2  minute."), ¶ 7 ("The bag check itself takes at most 15-20 seconds."); Ex. YY at p. 88:17-22 (stating

3  at least 50% of the time a bag check lasted only 30 seconds).

4      **E.    Whether Checks Occurred On Or Off The Clock Varied**

5          Plaintiffs assert that "Apple does not compensate <u>many</u> Apple employees for checks," (Pl.

6  Motion, 10:6 (emphasis added)), which necessarily means that some bag checks and/or technology

7  checks are compensated.  Substantial evidence confirms this fact.  (*See* Ex. WW, at p. 15:15-17 (bag

8  checks sometimes occurred on the clock); Ex. B-4, ¶¶ 25-26; Ex. B-11., ¶ 35; Ex. XX, at p. 85:4-8

9  (testifying that some bag checks were on the clock while some were off the clock).)  Indeed, Plaintiff

10  Speicher admitted it would have been an option for her to wait to clock out until after she had gone

11  through a bag or technology check.  (Ex. TT, p. 119:14-20.)  This is particularly true at stores with

12  time clocks in remote break rooms, where employees could leave their bags or devices in lockers in

13  the remote break rooms or clock out at those locations.  (Ex. B-10, ¶ 42 ("Employees who have their

14  bags or personal technology checked could clock out after the check by leaving the store and

15  clocking out using the computers at the offsite break room."); Ex. OO, at pp. 262:18-264:18; Ex. B-

16  5, ¶ 29; Ex. B-15, ¶ 23.)

17  **III.   PLAINTIFFS' MOTION IS FUNDAMENTALLY IMPROPER BECAUSE
        PLAINTIFFS DID NOT SATISFY THE MANDATORY REQUIREMENTS OF RULE
18      23(A) AND RULE 23(B)**

19          Plaintiffs acknowledge that courts have denied class certification in bag check cases under

20  Rule 23(b)(3) because individual liability questions predominate.  Plaintiffs attempt to avoid these

21  "predominance-related concerns" by skipping Rule 23(b) entirely and moving for certification of

22  particular issues under Rule 23(c)(4).  (Pl. Motion, 22:11-23:3, Pl. Motion, 23:2 ("With this motion,

23  brought under Federal Rule 23(c)(4) rather than Federal Rule 23(b)(3) . . ."); Pl. Notice of Motion,

24  1:6-8 (stating Plaintiffs "will move and hereby do move for an order, pursuant to Rules 23(a) and

25  23(c)(4) of the Federal Rules of Civil Procedure, granting certification of the following Class . . .").)

26  Plaintiffs' failure to satisfy Rule 23(b) is fatal to their motion.

27          In order to certify any type of class, Plaintiffs must meet the prerequisites set forth in Rule

28  23(a) ("Prerequisites") <u>and</u> one of the elements of Rule 23(b) ("Types of Class Actions").  *Comcast*

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    8.                    Case No. 13cv03451

1    *Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591,

2    614 (1997) ("[i]n addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification

3    must show that the action is maintainable under Rule 23(b)(1), (2), or (3).").

4         Rule 23(c), entitled "Certification Order; Notice to Class Members; Judgment; Issues

5    Classes; Subclasses," does not provide an independent basis for class certification.  Rule 23(c) is

6    merely a case management tool a court may employ if it concludes that a dispute may be litigated as

7    a class action under Rules 23(a) and (b).  Courts must – and do – deny class certification when a

8    plaintiff does not carry his burden to establish through evidentiary proof that the action is

9    maintainable under Rule 23(b)(1), (2), or (3).

10        In fact, *Valentino*, upon which Plaintiffs rely, actually reversed and remanded an order that

11   certified issues under Rule 23(c)(4)(A) "<u>because there has been no demonstration of how this class

12   satisfies important Rule 23 requirements, including the predominance of common issues over

13   individual issues and the superiority of class adjudication over other litigation alternatives</u>."

14   *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996) (emphasis added).  As stated

15   by the Ninth Circuit, "[i]n order for a class action to be certified, the plaintiffs must establish the four

16   prerequisites of Fed. R. Civ. P. 23(a) <u>and at least one of the alternative requirements of Fed. R. Civ.

17   P. 23(b)</u>."  *Id*. at 1234 (emphasis added).  Because "the certification order merely reiterates Rule

18   23(b)(3)'s predominance requirement and is otherwise silent as to any reason why common issues

19   predominate over individual issues certified under Rule 23(c)(4)(a)," and because "[t]here has been

20   no showing by Plaintiffs of how the class trial could be conducted," the Ninth Circuit held "[t]he

21   district court abused its discretion by not adequately considering the predominance requirement

22   before certifying the class" *Id*.; *see also Sepulveda v. Wal-Mart Stores, Inc.*, 464 Fed. Appx. 636,

23   637 (9th Cir. 2011) (affirming the district court's denial of certification of specific issues under Rule

24   23(c)(4) based on the court's denial of class certification under Rule 23(b)(2) and 23(b)(3));

25   *Stockwell v. City & County of San Francisco*, 2015 U.S. Dist. LEXIS 61577, *24-28 (N.D. Cal. May

26   8, 2015) (rejecting plaintiffs' request to certify a liability-only class action under Rule 23(c)(4)

27   because the plaintiffs did not seek certification of a liability-only class under Rule 23(b)(2)); *Amador

28   v. Baca*, 299 F.R.D. 618, 636-37 (C.D. Cal. 2014).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    9.                          Case No. 13cv03451

1   Similarly, in another case cited by Plaintiffs, *Cherry v. City College of San Francisco*, 2005

2   WL 6769124 (N.D. Cal. June 15, 2005) (Alsup, J.), this Court stated: "[a] motion for class

3   certification must satisfy the prerequisites of FRCP 23(a) <u>as well as one of the three conditions set</u>

4   <u>forth by FRCP 23(b)</u>." *Cherry*, 2005 WL 6769124, at *2 (emphasis added). The plaintiffs in *Cherry*

5   sought certification of an injunctive relief class under Rule 23(b)(2). *Id*. This Court certified an

6   injunctive relief class, but only after finding that Rule 23(b)(2) was satisfied.[7] *Id*. at *7.

7   So too, in *Lilly v. Jamba Juice Company*, 2014 WL 4652283 (N.D. Cal. Sept. 18, 2014),

8   another case cited by Plaintiffs, where the district court expressly stated that "[c]lass certification

9   under Rule 23 is a two-step process," that requires a plaintiff to satisfy both Rule 23(a) and Rule

10   23(b). *Lilly*, 2014 WL 4652283 at *2. "First, Plaintiff must demonstrate that the four elements of

11   23(a) are met . . ." *Id*. "<u>Second, a plaintiff must also establish that one of the bases for certification</u>

12   <u>in Rule 23(b) is met</u>." *Id*. (emphasis added). The plaintiffs in *Lilly* asserted certification of a

13   damages class was appropriate under Rule 23(b)(3). *Id*. The Court agreed as to liability, and

14   certified a class on that issue: "<u>Since Plaintiff has established that</u>, with the exception of determining

15   damages, <u>all the required elements of class certification have been met</u>, the Court will exercise its

16   discretion pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure to certify the proposed

17   class solely for purposes of liability." *Id*. at *11 (emphasis added). Thus, the Court applied Rule

18   23(c)(4) only <u>after</u> determining that the required elements of certification had been meet under Rule

19   23(a) and Rule 23(b).[8] In short, Rule 23(c)(4) is potentially available as a case management tool

20   only if the plaintiff first satisfies both Rule 23(a) and Rule 23(b) to obtain class certification. Where,

21

22   [7] Plaintiffs here, admittedly, do not seek certification under Rule 23(b)(2). Further, Plaintiffs lack
23   standing to certify a class under Rule 23(b)(2) for injunctive relief because there is no threatened future injury for former employees. *See Ellis v. Costco*, 657 F.3d 970, 988 (9th Cir. 2011) citing *Dukes*, 131 S.Ct. at 2559-60 (only current employees have standing to seek injunctive relief).
24   [8] Additionally, none of the Seventh Circuit cases cited by Plaintiffs held that a court could certify
25   "particular issues" under Rule 23(c)(4) without the plaintiff first satisfying the requirements of Rule 23(a) and Rule 23(b). *See Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801-802 (7th Cir. 2013) (finding that common questions of liability predominate over individual questions under Rule
26   23(b)(3), and therefore permitting class certification); *McReynolds v. Merrill Lynch*, 672 F.3d 482, 483, 492 (7th Cir. 2012) (determining that Rule 23(b)(2) was satisfied, and therefore permitting
27   certification of the issue of injunctive relief under Rule 23(c)(4)); *Jacks v. DirectSat USA, LLC*, 2015 WL 1087897, at *8 (N.D. Ill. March 25, 2015) (decertifying a class as to the entire cause of action
28   where individual issues as to damages predominated, but certifying a new class only as to liability).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION          10.          Case No. 13cv03451
FOR CLASS CERTIFICATION

as here, Plaintiffs cannot satisfy Rule 23(a) and do not even attempt to satisfy Rule 23(b), class certification must be denied.

## IV.   PLAINTIFFS CANNOT SATISFY RULE 23(A)

Rule 23(a) requires Plaintiffs to prove that there are "in fact" sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation. *Behrend*, 133 S. Ct. at 1432; *see also* Fed. R. Civ. P. 23(a).  Plaintiffs cannot make this showing.

### A.   Plaintiffs Failed To Establish That The Class Is Ascertainable Or Numerous

Plaintiffs cannot satisfy Rule 23(a) because it is impossible to determine who belongs in the class, and thus, whether the class is numerous.  In particular, Plaintiffs admit they do not know and have no proposed a methodology for identifying: (1) who brought a bag on any particular day; and (2) who left the store for a meal break with a bag on any particular day.  (Boyer Decl., Ex. BB Nos. 5, 10, 13 18.)

Tellingly, Plaintiffs have been litigating this case for nearly two years and could identify only 23 individuals out of a proposed class of more than 12,400 to provide declarations to support Plaintiffs' claims. This paltry showing of individuals who claim they were somehow harmed by Apple's bag and technology check policy –only approximately .18% of the putative class – does not evidence a class-wide violation.  In contrast, Apple produced declarations from 40 putative class members (not including putative class members who are now Store Leaders): 10 of whom confirmed they <u>never</u> participated in a bag check; 17 of whom worked at stores where checks occurred inconsistently, or no checks occurred for some or all of the time they worked there; and 30 of whom testified the checks they had lasted a *de minimis* amount of time.  At a minimum, this disparity in testimony shows that identifying potential class members, and determining numerosity, requires an employee-by-employee inquiry.

### B.   Fundamental Conflicts Between Plaintiffs' Testimony And Putative Class Member Testimony Create Conflicts For Plaintiffs' Counsel

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the name plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

11.

Case No. 13cv03451

class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2008). "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995). "The spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client demeans the integrity of the legal profession and undermines confidence in the attorney-client relationship." *Hernandez v. Paicius*, 109 Cal. App. 4th 452, 467 (2003).

District courts have repeatedly denied class certification where the plaintiffs' counsel has a conflict of interest. By way of illustration, a conflict was apparent where: "From the testimony in the record, it appears as Plaintiffs' counsel will either have to cross-examine [a client] and impeach his credibility, or 'soft-pedal' their examination of [that client] to the detriment of their representation of the class members in this action." *Baas v. Dollar Tree Stores, Inc.*, 2008 WL 906496, at *3-4 (N.D. Cal. April 1, 2008) (denying class certification); *see also Lou v. MA Laboratories, Inc.*, 2014 WL 68605, at * 1 (N.D. Cal. Jan. 8, 2014) (Alsup, J.) (denying class certification because "[a] class . . . deserves to be championed by its counsel unencumbered by their duties to other clients. Counsel have a conflict and may not serve.")

Here, to reconcile the conflicting testimony in this case, Plaintiffs' counsel will either have to impeach the credibility of those putative class members who, in Plaintiffs' words, "minimize the length of the Checks" and "represent that Checks take place less frequently," thus breaching the duty of loyalty to those non-favorable putative class members, or soft-pedal their examination of the non-favorable putative class members to the detriment of their representation of Plaintiffs and the other putative class members in this action. This is particularly true with regard to the store leaders who are also putative class members, such as Danya Bonnett, Casey Shull, and Margaret Karn. (*See* Ex. B-1, ¶ 2; Ex. B-12, ¶ 4; Ex. B-4, ¶ 4.) Indeed, in the motion to certify issues, Plaintiffs' counsel has already sought to discredit some of their would-be clients' testimony. (*See* Pl. Motion, 6:2-4 ("[O]ne store manager [putative class member Danya Bonnett] actually calling the policy 'voluntary' and 'a nice thing to do.' Ex. 21 at 39. The written record <u>belies</u> these assertions.") (emphasis added).) Plaintiffs' counsel also repeatedly contrasted the testimony of Plaintiffs' proffered witnesses with

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

12.

Case No. 13cv03451

other putative class members who are now managers, such as Shull and Karn. (*See* Pl. Motion, 8:12-13 ("In contrast, the <u>Managers</u> and Store Leaders represent that Checks take place less frequently"), 9:17 ("In contrast, <u>the Manager Declarations minimize</u> the length of the Checks.") (emphasis added).)  If a class is certified, Plaintiffs' counsel will be counsel for all class members, <u>including non-exempt managers</u>, not just Plaintiffs and Plaintiffs' preferred witnesses.  Consequently, there is an irreconcilable conflict.

Further, Plaintiffs Frlekin, Dowling, and Speicher have conflicts of interest with other putative class members who consider them dishonest and/or who directly refute Plaintiffs' individual claims.  (*See* Ex. A-17, ¶ 20 ("I knew Plaintiff Amanda Frlekin when she worked here.  I found her to be not trustworthy and dishonest.  She told a lot of colorful, untrue stories."); Ex. A-12, ¶ 17 (refuting Dowling's claims); Ex. A-15, ¶¶ 24, 25 (refuting Frlekin's and Speicher's claims).)  To prove the named Plaintiffs' claims, Plaintiffs' counsel will have to discredit fellow putative class members Kinder, Glezer, and Hart who do not believe Frlekin's, Dowling's, and Speicher's claims are credible.  Accordingly, Plaintiffs' counsel cannot adequately represent and safeguard the interests of Plaintiffs without attacking other would-be clients on the stand.

### C.   Plaintiffs Failed To Establish Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. 2541, 2551 (internal quotations omitted).  "This does not mean merely that they have all suffered a violation of the same provision of law." *Id*.  Instead, "[t]hat common contention ... must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

As the Supreme Court recognized, any class plaintiff can easily raise common "questions":

> For example: Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? <u>Reciting these questions is not sufficient to obtain class certification</u>.

*Dukes*, 131 S. Ct. at 2551 (emphasis added).

As explained in *Dukes*: "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common

13.

answers apt to drive the resolution of the litigation." *Id*. (quotation omitted).

Here, Plaintiffs' 16 purported common "questions" are remarkably similar to those rejected in *Dukes* both in language and in that they do not have common answers. For example: "Did Apple conduct Checks of Apple Employees at California Stores pursuant to the policy?" "Were Apple Employees who went through Checks subject to Apple's 'control' for purposes of imposing liability under California law?" (*See* Pl. Motion, 18:5-24.) Plaintiffs themselves implicitly acknowledge there are no common answers to these questions. (*See* Pl. Motion, 2:1-4 (admitting the variety of individualized issues).) Because Plaintiffs merely raise common "questions," and further admit those questions do not have common answers, Plaintiffs' motion must fail.

## V.  PLAINTIFFS CONCEDE THAT RULE 23(B) CANNOT BE SATISFIED

As set forth above in Section III(A), Plaintiffs admittedly make no attempt to satisfy the requirements of Rule 23(b), which dooms their motion for class certification. *E.g.*, *Behrend*, 133 S. Ct. at 1432. Moreover, Plaintiffs concede that courts have denied class certification in bag check cases under Rule 23(b)(3) because of "predominance-related concerns" regarding individualized questions of liability. (Pl. Motion, 22:11-23:3 (citing to *Ogiamien v. Nordstrom, Inc.*, 2015 WL 773939 (C.D. Cal. Feb. 24, 2015) and *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 629 (S.D. Cal. 2014); *see also Quinlan v. Macy's Corporate Services, Inc.*, 2013 U.S. Dist. LEXIS 164724 (C.D. Cal. August 22, 2013)]. Substantial evidence and Plaintiffs' own admissions establish that those same "predominance-related concerns" are manifest here, because the record demonstrates that Plaintiffs' theory indisputably involves individual inquiry regarding liability.

### A.   Individualized Questions Of Fact Predominate As To Whether An Employee Brought A Bag Or Personal Apple Technology To The Store On Any Given Day

Most significantly, there is no manageable way to determine on a class-wide basis which employees were even potentially subject to checks on any given day, because there is no manageable way to determine which employees brought a bag or personal Apple technology into the store on any given day. *See Ogiamien v. Nordstrom, Inc.*, 2015 U.S. Dist. LEXIS 22128 (C.D. Cal. February 24, 2015) (denying class certification in a bag check case in part due to individualized issues concerning which employees brought a bag on any given day); *Quinlan v. Macy's Corporate Services, Inc.*,

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

14.

Case No. 13cv03451

2013 U.S. Dist. LEXIS 164724 (same).

By way of illustration, in *Ogiamien*, the court denied class certification in part because even though Nordstrom had a bag check policy that facially covered all its employees, the inspection protocols only applied to employees who brought bags, and many employees did not bring bags on any given day.  *Ogiamien*, 2015 U.S. Dist. LEXIS 22128 at *9.  This "undisputably involves individual inquiries regarding liability," because "[i]f an employee did not carry a bag to work, Nordstrom's bag-check policy cannot create *any* liability for Nordstrom with respect to that employee – there are simply no lost wages," *Id.* (italics in original; underline added).

Similarly, in *Quinlan*, the court denied class certification in part because even though Macy's had a bag check policy that facially covered all its employees, "the inspection protocols only applied to those employees who chose to travel with packages or baggage.  There is no indication what proportion of the 84,000 employees Plaintiff seeks to represent made such a choice." *Quinlan*, 2013 U.S. Dist. LEXIS 164724 at *11.

Here, Plaintiffs admit "not every Apple Employee brings a bag or Apple product to work every day." (Pl. Motion, 1:24-2:1.)  As set forth above in Section II.B., many Apple employees do not bring bags or personal Apple technology to work with them, or do not do so every day.  Indeed, in the San Francisco store alone, Dr. Hall found that 49% of the 399 employees he observed left the store without any bags or packages.  (Ex. GG, p. 2.)  Apple specifically asked Plaintiffs during discovery to identify (1) who brought a bag or personal Apple technology on any particular day; and (2) who left the store for a meal break with a bag or personal Apple technology on any particular day.  Plaintiffs were unable to do so.  (*See* Boyer Decl., Exs. Y, AA, BB.)

Additionally, even if an employee chose to bring a bag on any particular workday, there is no manageable way to determine: (1) whether the employee chose to leave the store for meal breaks; (2) whether the employee took a bag with them when leaving for meal breaks or at the end of their shift; and/or (3) whether the employee left his bag in the remote break room (if any) and therefore was not subject to a check when leaving the store.  (Shalov Decl., Ex. 15, ¶ 6 ("I did not leave the store very often for meal breaks . . ."); Ex. ZZ, at p. 62:2-5 (admitting there were times when employees left for a meal break and did not take a bag with them); Ex. PP, at p. 64:5-6 ("Since it was a meal break, I

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                15.                Case No. 13cv03451

normally didn't bring out my bag."); Shalov Decl., Ex. 59, ¶ 6; Boyer Decl., Ex. B-2., ¶ 36; Ex. B-9, ¶ 51; Ex. B-3, ¶¶ 42, 43.)  Employees who left the store for meal breaks without bags did not take part in checks.  (*E.g.*, Ex. A-20, ¶ 8.)

Because this threshold inquiry – whether an employee even had a bag to be checked when leaving the store – cannot be determined on the basis of evidence equally pertinent to all members of the putative class, class treatment is improper.  Again, this individualized inquiry is critical to liability because if an employee did not carry a bag or personal Apple technology to work, Apple's bag check and technology check policy cannot create any liability for Apple with respect to that employee.  *See Ogiamien*, 2015 U.S. Dist. LEXIS 22128 at *9; *Quinlan*, 2013 U.S. Dist. LEXIS 164724 at *11.

## B.   For Employees Who Brought A Bag Or Personal Apple Technology To Work, There Is No Manageable Way To Determine Whether A Check Took Place

There is also no manageable way to determine on a class-wide basis whether employees who brought a bag or personal Apple technology to work participated in a check on any given day, because the individual practices at each Apple store varied widely as to whether and when checks took place.  Again, Plaintiffs admit "not every Apple Employee goes through a Check each time he or she exists a California Store," and "there are times when some California Stores do not conduct checks."  (Pl. Motion, 2:1-3.)

"[T]he relevant question is not whether a bag check is mandatory once commenced, but whether the store mandates that all employees are checked before they leave the workplace." *Ogiamien*, 2015 U.S. Dist. LEXIS 22128 at *11.  In *Ogiamien*, the district court held that this question could not be resolved on a class basis because "the evidence in the record is quite clear – not every employee carried a bag and not every employee with a bag was checked."  *Id*. at *12 (emphasis added).  As a result, the "proposed class inherently involves issues of individualized inquiry because Nordstrom *cannot* be liable to employees that were never subject to the alleged unlawful policy."  *Id*. at *12-13 (italics in original; emphasis added).

The district court in *Quinlan* reached the same conclusion because: "Managers implement different strategies not only in the different Macy's locations, but even within the same store,

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
16.
Case No. 13cv03451

depending on the time of day, day of the week, season, level of traffic inside the store, and other factors. . .   Indeed, some managers do not conduct random employee package searches at all." *Quinlan*, 2013 U.S. Dist. LEXIS 164724 at *12.

The district court in *Stiller v. Costco*, 2014 U.S. Dist. LEXIS 52237 (S.D. Cal. April 15, 2014), also held that variation in circumstances allegedly resulting in unpaid work time precluded class treatment.  In *Stiller*, the district court decertified a class of Costco employees who alleged they were "locked down" inside stores after closing and without pay, because "Costco has offered convincing evidence that not all employees experienced unpaid delay as a result of the Alleged Policy . . .  And, if it can only be determined on a class-wide basis whether the Alleged Policy sometimes resulted in unpaid OTC [off the clock] time, individualized determinations will be required to determine the question of <u>liability</u>."   *Stiller*, 2014 U.S. Dist. LEXIS 52237 at *20 (emphasis in original).  "This is because liability hinges on whether employees actually performed OTC work."  *Id*.

Here, as in *Ogiamien*, *Quinlan*, and *Stiller*, the evidence overwhelmingly establishes that Apple's policy, even with regard to the more limited subset of putative class members who actually did carry bags or  personal Apple technology to work, does not mandate checks each time an employee leaves the store with a bag or an Apple device.  As this Court previously observed in its ruling on summary judgment, "[t]he record in this action . . . involves <u>many varying fact patterns</u> and lends itself to <u>a myriad of different interpretations</u> of Apple's policy and practice regarding when an employee is required to undergo a security screening."  (May 30, 2014 Order, 5:9-12 (Dkt. No. 166) (emphasis added).)

As set forth above in Section II(C), practices varied significantly among stores as to whether and when checks were conducted at all.  In particular, Apple has provided declarations from 16 Store Leaders, each of whom implements the bag and technology check policy as he or she sees fit.  (Ex. WW, 23:8-14; Ex. B-2, ¶ 18; Ex. B-12, Sec. <u>Bag and Personal Technology Checks</u> ¶ 23; Ex. B-1, ¶¶ 5, 29; Ex, B-9, ¶ 24; Ex. B-11, ¶ 30; Ex. B-4, ¶ 22; B-5, ¶ 20; Ex. B-6, ¶ 17; Ex. B-3, ¶ 29; Ex B-13, ¶ 10; Ex. B-8, ¶ 30; Ex. B-7, ¶ 40.)  Many stores do not conduct bag or technology checks at all. (Ex. A-22, ¶ 12; Ex. A-13, ¶¶ 8, 12, 15; Ex. A-17, ¶ 8; Ex. A-12, ¶¶ 10, 12, 13.)  Ten employees

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

17.

Case No. 13cv03451

1    testified they have <u>never</u> been subject to a bag and/or a technology check.  (Ex. A-39, ¶ 7; Ex. A-16,

2    ¶ 11, 13; Ex. A-13, ¶ 17; Ex. A-37, ¶ 16; Ex. A-12, ¶ 10; Ex. A-31, ¶¶ 7, 9; Ex. A-35, ¶ 11; Ex. A-

3    27, ¶ 9; Ex. A-5, ¶¶ 6, 11; Ex. A-3, ¶¶ 9-10; Ex. A-2, ¶¶ 6-7; Ex. A-7, ¶ 8.)

4         Moreover, some stores have off-site break rooms where employees may store their bags

5    and/or personal Apple technology, and may therefore avoid potential bag or technology checks.  (Ex.

6    SS, 72:5-8; Ex. A-37, ¶¶ 14, 15; Ex. A-26, ¶ 5; Ex. A-12, ¶ 9; Ex. A-31, ¶ 7; Ex. NN, 180:16-20.)

7    Nor were technology check practices uniform.  Some stores checked iPads and MacBooks, but not

8    iPhones.  (Ex. NN, 188:7-24; Ex. A-26, ¶ 4.)   And, even in stores where bag and/or technology

9    checks occurred, the frequency of the checks varied.  (Ex. SS, 72:13-18; Ex. A-37, ¶ 10; Ex. A-15,

10   ¶¶ 8-10, 18; Ex. WW, 23:8-14.)

11        In short, substantial evidence establishes significant variances between the bag and/or

12   technology check experiences, if any, of employees working in Apple's 52 California stores over the

13   now nearly six-year putative class period.  Plaintiffs' bag and technology check theory therefore

14   suffers the same lack of predominance as the off-the-clock theories that were denied certification in

15   *Ogiamien*, *Quinlan*, and *Stiller*. Class certification should be denied here for the same reason.

16        **C.    For Employees Who Brought A Bag, And A Check Took Place, There Is No
              Manageable Way To Determine If The Bag Contained "A Necessity Of Life"**

17

18        Furthermore, Apple's position is that employees voluntarily choose to bring a bag or personal

19   Apple technology to work, and therefore they freely volunteer to potentially participate in a bag

20   check or technology check.[9]   In its Order denying summary judgment, this Court indicated that

21   liability for bag checks may depend on whether "Apple employees may need to bring a bag to work

22   for reasons they cannot control, such as the need for medication, feminine hygiene products, or

23   disability accommodations."  (May 30, 2014 Order, 7:23-25; *see also* May 30, 2014 Order, 7:26-28

24   ("On the other hand, plaintiffs' authorities are also not on point because they all involve

25   requirements placed on all employees by their employer or the nature of their work, rather than by

26   the necessities of life.").)   To the extent potential liability depends on whether an employee was

27

28   _____
     [9] Again, Apple did not require employees to bring a bag to work.  *See* Section II(A) above.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                          18.                                  Case No. 13cv03451

1    forced to carry a bag to transport a "necessity of life," and assuming it was feasible to determine

2    which putative class members brought a bag to work and actually went through a check on a

3    particular day (which it is not), it is impossible to determine on a class-wide basis what was in each

4    putative class member's bag on that day.[10]

5         The record reflects a wide variety of non-essential items that employees brought to work,

6    which demonstrates that individualized inquiry is necessary to discover what was in each bag on

7    each occasion to determine whether it was a "necessity of life."  (*E.g.*, Ex. A-8, ¶ 11 ("On the rare

8    occasions when I brought a bag to work, it's usually to carry a change of clothes to meet up with

9    friends after work."); Ex. A-20, ¶ 4 ("I sell moustache wax, so sometimes I carry moustache wax in

10   my bag to sell during my breaks or when my shift is over."); Ex. YY, 219:4-9 ("I live 12 miles out of

11   town.  So say I was going to stay in town and go to a movie, catch a movie with a friend or go for a

12   bite, I might bring a change of clothes or some additional make-up for the day.").)

13        Moreover, what constitutes a "personal" versus "necessary" item is inherently subjective and

14   specific to each individual, as are the credibility determinations necessary to evaluate each

15   individual's claim.  For instance, in opposition to Apple's motion for summary judgment, Plaintiffs

16   submitted the declaration of former opt-in plaintiff Claudia Wright, who claimed she brought a bag

17   "every day" to carry "essential" and "highly personal" items such as "feminine products" and

18   "medications."  (Pl. Ex. 119 (Wright Decl. ISO Plaintiffs' Opposition to Summary Judgment), ¶ 7.)

19   At deposition, Wright testified the term "feminine products" referred to "[m]y cosmetics, you know,

20   perfume, a hair brush."  (Ex. YY, 218:19-219:13; 220:5-7.)   These are not "necessary" to life.

21   Similarly, Claudia Wright testified she did not carry medication every day, only "maybe ten or 15

22   times over five years."  (Ex. YY, 218:5-13.)  Masch-Al Malek also claimed she used a bag to carry

23   "medication," (Malek Decl., ¶ 3), but she clarified at her deposition that she was referring to over-

24

---

25   [10] To the extent a phone could be considered a "necessity of life," the check policy applies only to
     Apple technology, and consequently, an employee could bring a non-Apple cellphone to avoid the
26   potential for a check.  Further, Lauren Feist is a HR manager whom Plaintiffs incorrectly refer to as
     an "Apple executive," (Pl. Motion, 5:1-3), not a putative class member or an Apple executive.  And,
27   while she did say that "phones" may be "a necessity for things such as emergencies or family
     emergencies," she never said that an iPhone was a necessity of life.  (Ex. XX, 15:20-16:19; 65:9-20;
28   140:9-12.)

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                          19.                              Case No. 13cv03451

the-counter Ibuprofen, (Ex. BBB, 36:18-37:10), which is not "necessary" to life.

Finally, while some female employees may occasionally choose to carry feminine hygiene products to work in a bag, not every female employee chooses to do so or needs to do so every day. Indeed, some female putative class members testified either that they sometimes do not bring a bag, (*e.g.*, Ex. A-30, ¶ 3; Ex. A-13, ¶ 7), or did not include feminine products among the items carried in their bag, (*e.g.*, Ex. A-26, ¶ 7).  Accordingly, to the extent liability depends on whether an employee must bring a bag as a life necessity on a particular occasion, there is no way to answer this question on a class-wide basis.

### D.    Individualized Questions Predominate As To Whether Employees Spent More Than A *De Minimis* Amount Of Time In Checks

Plaintiffs also cannot manageably prove whether any check that did occur lasted more than a *de minimis* amount of time, and therefore is compensable, on a class-wide basis.  *See Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984); *Troester v. Starbucks*, 2014 U.S. Dist. LEXIS 37728, *7-9 (C.D. Cal. March 7, 2014) (granting summary judgment on state law wage claims because alleged unpaid time was less than 10 minutes); *Alvarado v. Costco*, 2008 WL 2477393 at *3-4 (N.D. Cal. June 18, 2008) (granting summary judgment because alleged unpaid time was de minimis).  The California Division of Labor Standards Enforcement has repeatedly confirmed that the *de minimis* standard applies to California wage claims.  (*See* Apple's Request for Judicial Notice, Ex. A (Opinion Letter February 3, 1994 ("It should also be noted that the Division has adopted the *de minimis* rule relied upon by the federal courts.")); Ex. B (DLSE Enforcement Policies and Interpretations Manual § 46.6.4 (DLSE applies *de minimis* rule)   § 47.2.1 (same); § 48.1.9 (same).)

In *Quinlan*, the district court observed that "[a]s a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*."  *Quinlan*, 2013 U.S. Dist. LEXIS 164724 at *13, quoting *Lindow*, 738 F.2d at 1062.  The court also found that: "employee estimates of unpaid waiting time vary widely.  Quinlan himself testified that while some searches took up to twenty minutes, others took only seconds.  Other employee declarants' estimates range from one minute to thirty minutes."  *Id*. Accordingly, "differences in waiting times, not only between employees, but also by the same employee on different occasions, might well affect not only a class member's

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    20.                    Case No. 13cv03451

1    recovery, <u>but the very viability of a particular claim</u>." *Id*. (emphasis added); *cf. Lusby v. Gamestop*,

2    2015 U.S. Dist. LEXIS 42637 at *11 (N.D. Cal. March 31, 2015) (noting that Gamestop would have

3    likely challenged liability on several grounds, including "the amount of time spent on security

4    checks was only a matter of seconds or minutes, making these claims *de minimis*").  The same is true

5    here.

6         At the summary judgment hearing, this Court accurately foretold that Plaintiffs' theory would

7    necessarily get bogged down into individualized issues:

8         [I]f it devolves into 45 minutes in one store and look at the video in the store, look at
          Black Friday in that store, that to me is possibly not something we should be doing as
9         an opt-in class.  I can – you know, I have the authority to just say: I don't care if you
          brought it under the Rule 23 or if you think you brought it under - - <u>whatever you</u>
10        <u>brought it under, that is so bogged down in individual issues, no way.  We're not</u>
          <u>going to do that</u>.

11        (May 22, 2014 Transcript of Proceedings, 54:24-55:7 (emphasis added). Dkt No. 167.)

12

13        But that is exactly the type of individualized inquiry that would be necessary to determine

14   liability under Plaintiffs' bag check and technology check claims.  For instance, with regard to the

15   San Francisco store alone, Dr. Hall analyzed the busiest egress periods on the busiest days identified

16   by Plaintiffs (*i.e.*, launch days and Black Friday) and observed: (1) 50% of employees left the store

17   without undergoing any type of check; (2) of those employees who participated in a check, 91% left

18   the store with <u>zero</u> waiting time, and (3) for those employees who waited for a check, the average

19   waiting time was 1.3 seconds.  (Ex. GG, p. 2.)

20        These findings are supported by the testimony of numerous employees at the San Francisco

21   store, who confirm that even if they actually undergo a check, they do not have to wait for the check.

22   (Ex. A-18, ¶ 8 ("In 3.5 years at this store, the longest I have ever waited in line for a beg / tech check

23   is approximately 15-20 seconds (that would be if 3-4 employees were ahead of me."); Ex. A-26, ¶ 10

24   ("The longest time, in total, including all waiting and check time, that I've ever experienced in a bag

25   check is about 30 seconds.  This (30 seconds' duration) would be exceedingly rare."); Ex. NN,

26   82:19-83:1 ("Q.  – were there any lines to get your bag checked by the security guard"  A.  On exit?

27   Q.  On exit?  A.  There's no lines.  It is not part of – first of all, there is no lines.  You won't see

28   employee lines in the store.  It doesn't exist.  Regardless of the size of the store, things flow in and

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    21.                    Case No. 13cv03451

1   out, very organically.").

2   　　Yet, in direct conflict with both Dr. Hall's video analysis and the testimony of numerous

3   putative class members in the San Francisco store, Plaintiff Kalin asserts that, in the same store, he

4   waited 5 to 45 minutes, and sometimes up to an hour, for bag checks.  (Kalin Decl. ISO Opp to MSJ,

5   ¶ 67.) [11]  Moreover, Plaintiffs' motion suggests that bag checks take 5 to 20 minutes.  (Pl. Motion,

6   9:12-16.)  But Plaintiffs admit time spent in bag checks can be less than 5 minutes: "the Checks

7   <u>sometimes take less than a minute in duration</u> and sometimes more."  (Pl. Motion, 2:3-4 (emphasis

8   added).)  Further, while some of Plaintiffs' witnesses provided estimates in their declarations of the

9   amount of time allegedly spent in bag checks, they admitted at deposition that bag checks can

10  sometimes take far less time.  (*Compare*, *e.g.*, Pl. Ex. 137 ("Wright Decl."), ¶ 16 (claiming "an

11  average of 10 minutes per day and 50 minutes per week" during bag checks) to Ex. YY, 88:17-22

12  (stating at least 50% of the time a bag check lasted only 30 seconds.)

13  　　And, while Plaintiffs suggest there are conflicts only between their witnesses' estimates of

14  time spent in bag checks on the one hand and Apple's managerial witnesses on the other, (Pl.,

15  Motion, 9:11-18), there are similar discrepancies between the time estimates of Plaintiffs' witnesses

16  and Apple's non-managerial witnesses who testified they never wait more than a few seconds for a

17  bag and/or technology check.  (*E.g.*, Ex. A-37, ¶¶ 12, 13; Ex. A-26, ¶¶ 9-10; Ex. A-15, ¶ 11.)

18  　　In short, even if the time at issue were potentially compensable (which, again, Apple denies),

19  Apple still would have no obligation to pay unless the specific employee spent more than a *de*

20  *minimis* amount of time in a particular bag or technology check.  But substantial evidence shows that

21  there is no common evidence to establish whether a particular check, if any, took more than a *de*

22  *minimis* amount of time.  Thus, individual issues of liability will overwhelm any common issues.

23  　　**E.     Individualized Questions Predominate As To Whether Employees Were On Or
24          Off The Clock For A Bag Or Technology Check**

25  　　To the extent an employee brought a bag or personal Apple technology and participated in a

26  bag or technology check on a particular day, and that duration was more than *de minimis*,

---

27  [11] Where video evidence exists that contradicts a party's version of the story such that no reasonable
28  jury could believe it, the court must view the facts "in the light depicted by the videotape."  *Scott v.
    Harris*, 550 U.S. 372, 380-81 (2007).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    22.                         Case No. 13cv03451

1    individualized questions predominate regarding whether the employee was on or off the clock for

2    that check.  As noted above, Plaintiffs assert "Apple does not compensate <u>many</u> Apple employees

3    for checks." (Pl. Motion, 10:6 (emphasis added).)  Again, that necessarily means that some bag

4    checks and/or technology checks are compensated.  (*See* Ex. WW, 15:15-17; Ex. B-4, ¶¶ 25-26; Ex.

5    B-11, ¶ 35; Ex. XX, 85:4-8.)  Plaintiff Speicher admitted it would have been an option for her to

6    wait to clock out until after she had gone through a bag or technology check.  (Ex. TT, 119:14-20.)

7    This is particularly true at stores with remote break rooms with time clocks, because employees

8    could leave their bags or devices in lockers in the remote break rooms avoiding checks altogether

9    and/or clock out at those locations after any check in the store was completed.  (*See*, *e.g.*, Ex. OO,

10   262:18-264:18; Ex. B-16, ¶ 9; Ex. B-10, ¶ 42; Ex. B-5., ¶ 29; Ex. B-15, ¶ 23.)

11          In sum, given the myriad individualized inquiries required to determine liability, class

12   certification must be denied.  *See Ogiamien*, 2015 U.S. Dist. LEXIS 22128, at *12-13; *Quinlan*,

13   2013 U.S. Dist. LEXIS 164724, at *11.

14   **VI.     RULE 23(C)(4) IS NOT APPLICABLE**

15          Even if Plaintiffs had satisfied Rules 23(a) and (b), which they did not, certification of

16   "particular issues" under Rule 23(c)(4) would not be appropriate.  Plaintiffs seek to certify five

17   "common questions" that purportedly relate to Apple's liability for bag checks and technology

18   checks, but these "common questions" do not generate common answers and, in any event, they still

19   do not answer the question of Apple's liability.  (*See* Pl. Motion, 18:27-28 (referring to "Questions

20   One, Two, Three, Four and Thirteen").)

21          Answering Questions One through Four would not result in a common liability finding.

22   Question One asks "Did Apple have a written policy regarding Checks that applied to Apple

23   Employees at California Stores during the Class Period?" (Pl. Motion, 18:5-6.)  As set forth above

24   in Section II(C), Apple did have a written policy regarding bag checks and technology checks, but

25   the policy's application, if any, on a particular employee varied by store, by time, and by employee

26   (*e.g.*, did the employee even bring a bag to work). As this Court observed in its ruling, "[t]he record

27   in this action . . . involves <u>many varying fact patterns</u> and lends itself to <u>a myriad of different</u>

28   <u>interpretations</u> of Apple's policy and practice regarding when an employee is required to undergo a

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                    23.                    Case No. 13cv03451

security screening." (May 30, 2014 Order, 5:9-12 (emphasis added).)   Similarly, Question Three asks "What did Apple tell Apple Employees about how and when the policy should be enforced?" (Pl. Motion, 18:7-8.)   Again, as set forth in Section II(C), there is no common answer to this question because Apple empowered its Store Leaders to decide whether and how to implement the policy, and each Store Leader implements the bag and technology check policy as he or she sees fit. Thus, there are no common answers to these questions.

Question Thirteen asks "Were Apple Employees who went through Checks subject to Apple's 'control' for purposes of imposing liability under California law?" (Pl. Motion, 18:19-21.) Apple's position is that employees are not under its control because they may avoid checks simply by not bringing bags or personal Apple technology into work (and understood that if they chose to bring a bag to work that that bag may be subject to a reasonable search).   Indeed, this Court previously indicated that liability may depend on whether "Apple employees may need to bring a bag to work for reasons they cannot control, such as the need for medication, feminine hygiene products, or disability accommodations."   (May 30, 2014 Order, 7:23-25.)   Thus, to answer Plaintiffs' proposed Question 13, liability necessarily requires an individualized inquiry to prove: (1) an employee carried a bag on a particular day; (2) that bag contained a "necessity of life"; (3) that bag was checked; (4) the check was more than *de minimis*; and (5) the check was off-the-clock. There are no common answers to these questions that could establish liability on a class-wide basis.

## VII.   PLAINTIFFS' PROPOSAL FOR 12,400 MINI-TRIALS IS NOT A VALID CLASS ACTION TRIAL PLAN

Plaintiffs' proposed trial plan, (Pl. Motion, 23:1-25:16), is moot because Plaintiffs failed to establish the required elements for class certification.[12]   Furthermore, Plaintiffs' proposed trial plan is invalid because it is contingent upon the appointment of special masters to adjudicate "issues relating to liability and damages" for the 12,400 putative class members' individual claims, (Pl. Motion, 2:12-13; see also Pl. Motion, 24:16-18 ("Plaintiffs will request appointment of one special master from each California district . . . to adjudicate the claims of individual Class members who

---

[12] Plaintiffs' 24-page "trial plan," Shalov Decl. Ex. 83, is an improper supplemental brief that violates Local Rule 7-2. If the Court is inclined to consider Plaintiffs' separate proposed trial plan, Apple respectfully requests an opportunity to file a separate response to it.

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

Case No. 13cv03451

1    have not opted-out of the Class.").)  But the use of masters here is inappropriate as a matter of law.

2           Special masters may be used only in truly exceptional conditions to aid judges in the

3    performance of specific judicial duties, not to displace the court.  *See La Buy v. Howes Leather*

4    *Company*, 352 U.S. 249, 256 (1957); *Burlington Northern R.R. Co. v. Dept. of Rev. of State of*

5    *Wash.*, 934 F.2d 1064, 1071 (9th Cir. 1991).  Court congestion, complexity of the case, and an

6    anticipated lengthy trial do not constitute exceptional conditions.  *La Buy*, 352 U.S. at 256-258.

7    Under Rule 53, a court may appoint a special master only to: (a) perform duties consented to by the

8    parties; (b) hold trial proceedings and make or recommend findings of fact on issues to be decided

9    by the court without a jury if appointment is warranted by some exceptional condition, or the need to

10   perform an accounting or resolve a difficult computation of damages; or (c) address pretrial and

11   post-trial matters that cannot be addressed effectively and timely by an available district judge or

12   magistrate judge of the district.  Fed. R. Civ. P. 53(a)(1).  None of these grounds exist here.

13          First, Apple does not consent to the use of special masters.  Second, special masters may not

14   be appointed where, as here, all issues of fact must be decided by a jury.  Fed. R. Civ. P. 53(a)(1)(B)

15   (permitting appointment only on "findings of fact on issues to be decided without a jury"); Adv.

16   Comm. Notes to 2003 Amendments to Rule 53(a)(1) ("Rule 53 continues to address trial masters as

17   well, but permits appointment of a trial master in an action to be tried to a jury only if the parties

18   consent."); (Consolidated Complaint, Dkt. No. 220, p. 21 ("Pursuant to Federal Rule of Civil

19   Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.").  And third, the proposed

20   mini-trials of Apple's alleged liability to each putative class member are not pretrial or post-trial

21   matters – they are the trials themselves.  Accordingly, appointment of four special masters to preside

22   over 12,400 mini-trials is not permitted.  Regardless, Plaintiffs' mini-trial proposal is unmanageable.

23   Even if the Court presided over 3 trials a day, it would take 4,133 days to complete them all.

24   **VIII.   CONCLUSION**

25          For the reasons set forth above, Plaintiffs have admittedly failed to meet their burden to

26   establish all elements necessary for class certification.  Plaintiffs' motion should therefore be denied.

27   Dated: May 28, 2015                                    *//s// Julie A. Dunne*

28                                                                   JULIE A. DUNNE
                                                                     Attorneys for Defendant APPLE INC.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION                          25.                          Case No. 13cv03451