# EXHIBIT A

# COMPENDIUM OF

# NON-STORE LEADER

# PUTATIVE CLASS MEMBER

# DECLARATIONS

# EXHIBIT A1

**DECLARATION OF LISA ABEQUA**

I, Lisa Abequa, declare as follows:

1.    I currently work for Apple as an Expert at the Third Street Promenade store in Santa Monica, California. I've been an Expert since 2011. I've worked for Apple since 2007. I started working in the Third Street Promenade store on August 1, 2012, when it was at its old location. The store moved to its current location in December 2012.

2.    As an Expert, I do a lot of employee training. I am one of the mentors in the store. I also helped open the first Apple store in Turkey.

3.    I'm a full time employee. My schedule varies so I don't have set shifts or times. I usually work about 40 hours a week, sometimes a little bit more than that.

4.    If I'm working an early shift, there are about 3 or 4 employees who start their shift at the same time as me, and about 2 of these employees end their shift at the same time as me, because some employees are part time and have shorter shifts. If I'm working a late shift, then about 5 or 6 other employees start their shift at the same time, and about 4 of those employees end their shift at the same time.

5.    When I arrive at work, I go through the front door and walk to the back of the store (back of the house). Usually, I go straight to get an EasyPay device in the back of the house and clock in on the EasyPay. Then I put my bag in a locker in the back of the house, put on my Apple shirt and lanyard, then check my work email or the daily download.

6.    I bring a purse to work every day. I bring a purse, and rarely I bring a backpack with a laptop or iPad instead of my purse. I bring a backpack to work about 3 times a year usually when I have a presentation at school for which I will use my laptop for school work. I use my purse to store personal things so that I can have them with me during the day such my makeup bag, Apple t-shirt, iPhone, extra sweater, keys, hand sanitizer, wallet and lotion. I like to bring a bag, but I don't need it to do my job.

7.    Although I choose to carry my Apple t-shirt in my bag, employees don't have to have a bag to carry their Apple t-shirt to work. Employees who don't bring bags (and some who do bring bags) carry their shirts into the store or wear them underneath other clothes.

1

8.      At the old Third Street Promenade store, I underwent bag checks when I left at the end of the day, but not consistently, less than 40% or 50% of the time.  The bag checks were performed by managers.  Since the new store location opened in December 2012, bag checks are performed only about 40% of the time.

9.      When I do undergo a bag check, it happens very quickly.  The check itself only takes a few seconds.  I open up my bag and lift up my Apple shirt so they can see in the bag, and the manager looks in.  The manager doesn't touch anything in my bag.

10.     I've seen many employees with bags leave without having their bags checked.  This is very common.

11.     I would estimate that about 70% of employees bring bags to work.  If an employee doesn't bring a bag, the employee doesn't have to have his or her bag checked, and is free to leave the store without stopping by a manager or going through any check.

12.     I have had an iPhone since 2007, and since then I have brought an iPhone to work with me every day.  However, I've never had to have a technology check of my iPhone at either the old store or the new Third Street Promenade store.  I know that employees are supposed to have a card that lists their technology, but I haven't had to show a technology card since about December 2013.

13.     At the old Third Street Promenade store, I underwent technology checks only when I brought my Mac laptop to work, about once every two months.  At the new Third Street store, if I bring a laptop, I undergo a technology check about one out of every two times that I bring it.  When I undergo a technology check of my laptop, I show the manager the serial number on the back of my laptop.

14.     I use my iPhone for communicating with friends and family, checking social media and my personal email.  I do not use it for work purposes.  I also bring my iPad to work once in a while to watch movies on break and lunch, but I have almost never had a technology check on my iPad.  On rare occasion, I bring my Mac to work so I can use it for school purposes, including presentations and other schoolwork.  I do not use my iPhone, Mac or iPad for work purposes, and Apple does not require me to own these devices or bring them to work.  Apple doesn't force

1  employees to use iPhones and I don't need my phone for work.  There are employees who don't

2  have iPhones.

3      15.    I have never had my coat or other clothing checked at Apple, and I have never seen

4  anyone check a coat or other clothing at Apple.

5      16.    Before beginning the interview that ultimately resulted in this declaration, I reviewed

6  and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was

7  conducted by Apple's attorney in accordance with the Consent Form.

8      I declare under penalty of perjury under the laws of the United States and the State of

9  California that the foregoing is true and correct.  Executed on February 5, 2015, at Santa Monica,

10  California.

11

12  LISA ABEQUA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits.**  Several lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Dean Pelle, Adam Kilker, Brandon Fisher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores across the United States, including California.  The time period at issue in California is July 25, 2009 to the present.  The longest time period at issue is from July 25, 2007 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line (i) to check out and return company-owned devices upon leaving or entering the store, (ii) to clock in or clock out, and (iii) to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift, and the logistics of starting and ending work (picking up and dropping of EasyPay devices at the beginning and end of your shifts, and clocking in at the beginning of your shifts) at Apple stores.  **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.**  If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits.  We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.**  For that reason, we cannot give you legal advice about your own employment with Apple.  Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential. As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed. It could also hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**. I want to make it clear that you do not have to talk to us. We will not be offended at all if you decide you would rather not talk to us. You are also welcome to change your mind about talking to us once you hear the questions that we have. Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation. Retaliation is against the law. No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us. Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us. In other words, Apple will not make any changes to your employment – good or bad - because of your decision. If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth. You should not worry about what you think may be the "right" answer. We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about. If that happens, it is very important that you not sign anything unless it is completely accurate. If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it. By signing below, I am confirming that I do not have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits. I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s). I am voluntarily choosing to talk to them and I understand I can end the interview at any time. No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers. I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: _10/20/2014_     Signature: _Lisa Abegua_
                        Print Name: _Lisa Abegua_
                        Job Title: _Expert_

# EXHIBIT A2

**DECLARATION OF RICHARD ALTEMUS**

I, Richard Altemus declare as follows:

1.      I currently work for Apple as full-time Lead Genius at the Century City, California Apple store. I have worked for Apple since May of 2010, and started as a part-time back of house Specialist in the New York 5th Avenue Store, and I moved to Los Angeles in November 2012 and then began working in the Century City store. I started in Century City as a Family Room Specialist. I was promoted to Genius in May of 2013, and promoted to Lead Genius in October 2014. I have only worked in the Century City store since moving to California.

2.      As a Genius, my duties are to repair and troubleshoot Apple mobile devices and Macs, and manage repair parts. As a Lead Genius, in addition to the duties of the Genius, I am also responsible for the Geniuses working on shift and dealing with escalated customer issues.

3.      On average, I work about 40-43 hours per week. I typically work shifts of 8 hours, 5 days per week, depending on how I am scheduled. I don't have a consistent schedule or shift. Each week and day is different.

4.      When I first start work, I go through the front entrance of the store. Usually, I go to the back of the house, I grab an EasyPay device and use it to clock in, put my Apple t-shirt on and then go to the Century City Genius room which is located in the back of the house.

5.      I have never brought a bag to me into work since I have worked at Century City. I will carry my t-shirt into work, and when we were required to wear lanyards at work, I would keep that in my pocket. Employees stopped wearing lanyards in November 2014, so now I do not need to bring that to work. There is nothing I need to bring to work other than my t-shirt. Sometimes I keep personal belongings I want to have with me in my car, since the parking structure is only a short walk away.

6.      Because I have never brought a bag to work at Century City, I have never been through a bag check. I have never been through a bag check since working for Apple in the State of California.

7.      I have always had an iPhone since working for Apple, and I bring it with me to work every day. I cannot recall ever going through a tech check at Century City. I do not have tech card

1

1  and I do not recall ever having a tech card at Century City.

2         8.    I have never had a manager stop me from leaving the store without going through a

3  technology check, nor have I ever seen that happen in Century City.  When I clock out after my shift,

4  I grab a parking voucher, which are stored in the back of the house, and I simply walk out the front

5  door.

6         9.    There was a time at Century City when managers possessed the parking vouchers,

7  and once my shift was over and I was ready to leave, I would ask a manager for a parking voucher so

8  that I did not have to pay for parking.  I do not recall ever being asked to produce a tech card or go

9  through a tech check when I asked a manager for a parking voucher.  Now, parking vouchers are

10  stored in the back of the house, so I do not need to see a manager to get a voucher.

11       10.    I've never seen other employees wait in line for bag checks or technology checks at

12  Century City. I have never seen a bag or technology check occur at Century City.

13       11.    I've never had a manager check my coat or clothing, nor have I ever seen a manager

14  check anyone's coat or clothing.

15       12.    I've owned an iPhone since I started at Apple, and bring it to work with me every

16  day.  I don't bring any personal Apple technology other than my iPhone to work.  I bring my iPhone

17  to work but I leave it in my locker during working hours.  I will use it when I am not working to

18  communicate with friends and family.  I do not use it for work purposes and Apple does not require

19  me to bring it to work or require that I own an iPhone.

20       13.    Apple provides me with what I need in order to perform my job, so there is no need

21  for them to bring anything to work other than my Apple t-shirt. Currently, the Apple t-shirt is the

22  only thing I am required to bring to work.

23       14.    I have never heard of any Century City employees complain about bag or personal

24  technology checks.

25       15.    I believe I have been compensated for all of the time I have worked for Apple.  There

26  is no time that I have worked that Apple has not paid me for.  I also have been paid overtime for all

27  overtime I have worked.

28       16.    Before beginning the interview that ultimately resulted in this declaration, I reviewed

1  and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was

2  conducted by Apple's attorney in accordance with the Consent Form.

3       I declare under penalty of perjury under the laws of the United States and the State of

4  California that the foregoing is true and correct.  Executed on February 5, 2015 at Los Angeles,

5  California.

6

7                                                        RICHARD ALTEMUS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

The Bag Check Lawsuits. Two lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Debra Speicher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores in California. The time period at issue is July 25, 2009 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift at Apple stores. YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME. If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple. If you agree to speak with me, I will ONLY be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

What Else You Should Know Before You Decide Whether To Participate. You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits. We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits. If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

Third, we want to make sure you understand that we represent Apple and not you personally. For that reason, we cannot give you legal advice about your own employment with Apple. Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential. As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed. It could also

hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**. I want to make it clear that you do not have to talk to us. We will not be offended at all if you decide you would rather not talk to us. You are also welcome to change your mind about talking to us once you hear the questions that we have. Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation. Retaliation is against the law. No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us. Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us. In other words, Apple will not make any changes to your employment – good or bad - because of your decision. If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth. You should not worry about what you think may be the "right" answer. We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about. If that happens, it is very important that you not sign anything unless it is completely accurate. If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it. By signing below, I am confirming that I do not have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits. I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s). I am voluntarily choosing to talk to them and I understand I can end the interview at any time. No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers. I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 2/5/15

Signature:

Print Name: RICHARD ALTEMUS

Job Title: LEAD GENIUS

# EXHIBIT A3

## DECLARATION OF STEFAN ARNOLD

I, STEFAN ARNOLD, declare as follows:

1.      I work for Apple as a Back-of-House Specialist at the El Paseo Village store in Palm Desert, California. I started working at Apple in May 2014 as a Red Zone Specialist. In November 2014, I transferred to my current position as a Back-of-House Specialist. Since working at Apple, I always have been a part-time employee at the El Paseo Village store.

2.      As a Back of House Specialist, I receive inventory, stock inventory, and bring it to the Red Zone Specialists who sell it to the customers. The inventory consists of Apple products and some third-party products.

3.      As a part-time employee at the El Paseo Village Store, I work an average of 24 hours per week, which usually consists of three eight-hour days per week.

4.      When I arrive to work, I park my car in a public parking lot behind the store. I walk from the parking lot to the "runner room," which is a key-coded room next to the sales floor in the El Paseo Village store. The runner room contains higher ticket Apple products, such as computers, iPhones and iPads. When I enter the runner room from the store, I clock-in using an EasyPay device (now called an "Isaac," although it is the same physical device). I then begin performing my back-of-house duties, such as running product to salespeople or counting product for inventory checks.

5.      I bring lunch, bottled water, my wallet, keys, an iPhone and my Apple shirt with me to work each day. Generally, I put my lunch in a refrigerator in the remote breakroom. Depending on the time of day that I start my shift, I usually put on my Apple shirt in the back of house stock room. I hang my non-work shirt over a desk chair in the back of house stock room.

6.      When I complete my shift each day, I clock-out using an EasyPay (usually in the runner room), put on my non-work shirt over my Apple shirt, and walk out of the front of the El Paseo Village store.

7.      I have never brought a bag with me to work at Apple. I am able to carry my personal belongings and Apple shirt without using a bag, and since my car is parked so close, I can store any other personal items in my car. On rare occasions, I have also placed some personal items in lockers in the remote break room, such as snacks that would not belong in a refrigerator.

1

8.      Apple provides me with everything I need to do my job when I am working and I do not need to bring anything to the store other than my Apple shirt. Apple does not require employees to bring a bag to work at the El Paseo Village store, nor do we need to bring a bag to carry any work items.

9.      Since I do not bring a bag to work at Apple, I have never been through a bag check. I do not recall ever seeing anyone at the El Paseo Village store going through a bag check when leaving work or at any other time.

10.      I have never been through a technology check at Apple. I have a number of personal Apple products, but the only one that I have ever brought to work is my iPhone 5c. When I received new hire core training, Apple issued me a technology card for my iPhone 5c. The "tech card" is a small white card that I keep in my wallet. The tech card identifies my iPhone 5c and its serial number. Although I have other personal Apple products, I received a tech card only for my iPhone. Even though I carry the tech card in my wallet, I have never been asked or stopped to show my tech card before leaving work at the El Paseo Village store.

11.      I bring my iPhone to work for texting personal contacts and using apps, such as Twitter, during my work breaks. Apple has never required me to bring my iPhone or any other personal Apple products to work, and I have never been asked to use my personal iPhone for work.

12.      I do not recall ever seeing a tech check performed on any other employees at Apple. During my employment at the El Paseo Village store, I have never been stopped, nor do I recall seeing anyone else stopped from leaving work. I also do not recall ever seeing any bag or tech check occur in the remote breakroom during my time at the El Paseo Village store.

13.      I have never had my coat or other clothing checked at Apple, nor have I seen any other employees go through a coat or clothing check at Apple.

14.      I believe I have been compensated for all of the time I have worked for Apple. There is no time that I have worked that Apple has not paid me for. I also have been paid overtime for all overtime I have worked.

15.      Before beginning the interview that ultimately resulted in this declaration, I reviewed and signed the Voluntary Interview Consent Form that is attached as Exhibit A. The interview was

conducted by Apple's attorney in accordance with the Consent Form.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on March 10, 2015 at Palm Desert, California.

STEFAN ARNOLD

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits**. Two lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Debra Speicher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores in California. The time period at issue is July 25, 2009 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift at Apple stores. **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.** If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple. If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.** You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits. We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits. If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.** For that reason, we cannot give you legal advice about your own employment with Apple. Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential. As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed. It could also

hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**. I want to make it clear that you <u>do not</u> have to talk to us. We will not be offended at all if you decide you would rather not talk to us. You are also welcome to change your mind about talking to us once you hear the questions that we have. Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation. Retaliation is against the law. No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us. Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us. In other words, Apple will not make any changes to your employment – good or bad - because of your decision. If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth. You should not worry about what you think may be the "right" answer. We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about. If that happens, it is very important that you not sign anything unless it is completely accurate. If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it. By signing below, I am confirming that I <u>do not</u> have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits. I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s). I am voluntarily choosing to talk to them and I understand I can end the interview at any time. No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers. I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 3-10-15

Signature:

Print Name: Stefan Arnold

Job Title: B-O-H Specialist

# EXHIBIT A4

**DECLARATION OF JULIA BAHU**

I, Julia Bahu, declare as follows:

1.     I currently work for Apple as an Inventory Specialist at the Mission Viejo Apple Store in Mission Viejo, California.  I started working for Apple on March 26, 2011 as a part time Specialist, and a few months later became a full time Expert.  I then became an In Store Guest Trainer (ISGT) for six months, then a Lead Creative, and then an Inventory Specialist for the back of house team.

2.     I have always been assigned to the Mission Viejo store, but for about eight months from February through September 2013 I spent every other day at the Irvine Spectrum store as the ISGT.  During that time, I spent about 2 or 3 days a week in that store and the other 2 or 3 days a week at the Mission Viejo store.  I also spent one week working at the Temecula store some time between February 2013 and September 2013 and I spent another week there in March 2014.

3.     As the Lead Inventory Specialist, I lead the Inventory Team, which consists of 6 people including me.  I manage the operational software to organize and review inventory, check inventory in and out, and process customer returns.  As an ISGT, my duties were to create and facilitate in-store training of employees for all areas of the store and to execute new initiatives for training of employees.

4.     I work 5 days a week, approximately 40-45 hours in any given week.  I'm paid on an hourly basis.  I clock in at the beginning of my shift and clock out at the end of my shift.  My shift varies from day to day, and I have no set schedule or days that I work.  Our schedules are set about 30 days in advance.

5.     At Mission Viejo, if I get to work before my shift begins, I walk through the customer entrance at the front of the store to the back of the house to the "technology station" where all the EasyPays are stored in the back of the house. I grab an EasyPay and clock in, then I put on my shirt and lanyard and get ready for work. I have never waited in a line to get an EasyPay device because there are around 75 EasyPays available at any time. Before the EasyPay devices became available to clock in, in around 2012, employees at the Mission Viejo store used iMacs with TaCico timekeeping software in the back of the house to clock in. There were probably 10 computers in the back of the

1

1   house with the TaCico software.  There were a few times I waited in a short line for the TaCico

2   computers, but because the clock in process took less than 10 seconds I never waited more than a

3   minute to clock in.  I've never seen a line to clock in or to get EasyPays at any of the other stores

4   I've worked at.

5        6.       In June or July 2014, the Mission Viejo store opened a remote breakroom that is

6   separate from the store.  The breakroom is located a few minutes' walk from the store next to

7   Forever 21.  The remote breakroom is secured by a locked door with keycode access, so employees

8   can only access it by punching in a code at the door.  There are about 80 lockers in the breakroom

9   where employees can keep bags or other personal things.  There is a kitchen, microwave, sink and

10  restroom in the remote breakroom, and there are computers that employees can use for personal use.

11  Since employees can keep their bags in lockers in the remote breakroom, there is no need for

12  employees to bring their bags into the store, however, some employees do bring small bags into the

13  store.

14       7.       Before the remote breakroom opened at the Mission Viejo store, there were about 80

15  lockers available to employees in the back of the house.  These lockers were removed when the

16  remote breakroom opened.  Generally there are about 60-80 employees on shift at any given time but

17  there can be more on shift during launch times or the holiday season.  There are about 117

18  employees assigned to the store currently, including management and the back of the house teams.

19  When I start my shift in the morning, there are about 3-4 other people who start their shift around the

20  same time.  When I leave at the end of my shift, there are usually about 4-5 other employees who

21  end their shift and leave around the same time.

22       8.       I bring a purse to work every day.  I bring it for my own convenience and I keep

23  personal items in it.  Apple does not require me to bring anything to work in a bag.  We are allowed

24  to hand carry our Apple lanyards and Apple t-shirts to work, so we don't need a bag to carry those.

25       9.       I would estimate about 50-60% of the employees bring bags to work at the Mission

26  Viejo store.

27       10.      Since the current Store Leader Casey Shull became the Store Leader of the Mission

28  Viejo store in the fall of 2011, store management has not conducted bag checks.  I haven't gone

through a bag check since the fall of 2011, and I am not aware of other employees go through bag checks either.   I never went through a bag check at any time at the Irvine Spectrum or Temecula stores.

11.   When there were bag checks at the Mission Viejo store in 2011, they were performed very inconsistently.   Even though I brought a bag, I would go through a bag check only about 50% of the time.   The other 50%, I just walked out with my bag at the end of my shift, usually because management was not very strict on conducting bag checks, or because the closest manager was engaged with a customer.   Nothing happened to me when I walked out without having my bag checked, and no one threatened to discipline me because I didn't have my bag checked.

12.   When I went through bag checks at the Mission Viejo store, the entire process took less than 10 seconds.   The checks took place on the floor, or in the back of the house if I was walking out and there was a manager standing there.   Managers conducted the checks.   I would approach a manager as I was walking out of the store, and open my bag.   The manager would glance into the bag briefly.   I never had a manager move any objects in my bag.

13.   I never had to wait in any line for a check.   If there were a group of employees leaving at the same time, then we would all circle the manager with our bags open, and the manager would glance in the bags and send us on our way.   These checks took less than 10 seconds, even if there were three of us having our bags checked simultaneously.   If a manager was engaged with a customer and could not break free to check bags, he or she would just waive us by and we would not go through any sort of check.   After the fall of 2011, I have never gone through any bag or technology check at any of the stores I've worked at.

14.   I didn't own any Apple technology until I bought an iPhone in 2012, about a year after I started working at Apple.   Before that I owned a BlackBerry phone which I brought to work.   Since I bought my first iPhone in 2012 I bring an iPhone to work every day.   I bring it for my own personal convenience, it's not required to do my job and I use it to communicate with friends and family when I am not working.   There is nothing work-related on my iPhone.   I also owned a MacBook laptop, but I rarely brought that to work.   I never brought my MacBook for any reason other than for my own personal use.   I never used my MacBook for work.

15.     I've never been through a technology check at any of the three stores I've worked at, and I've never had an Apple technology card.  I've actually never seen an Apple personal technology card.

16.     As the Inventory Lead, our inventory control is extremely tight.  I know when something is missing right away, and that is one of the reasons Store Leader Casey decided not to do any bag checks.  We have very low shrink in the store.  Also, we have a culture of positive intent where we assume that team members are not stealing from the store.

17.     When I worked at the Irvine Spectrum store, that store also had a remote breakroom separate from the store where employees could store their bag and personal belongings.  There were also TaCico computers and EasyPays in the breakroom that employees could use to clock in and clock out.  Employees that were assigned to the Irvine Spectrum store clocked in at the remote breakroom, stored any belongings that they had in lockers in the remote breakroom, put on their t-shirts, and then went to the main store to work.  Employees who brought bags to work, including me, stored them in the remote breakroom and didn't bring them into the store.  When I worked at Irvine, at the start of my shift I would go to the remote breakroom and drop off my purse and change into my Apple t-shirt shirt and go to the training room where I would then facilitate employee training.  Because I was technically assigned to the Mission Viejo store, I would text my manager my start time, and end time for my shift so my work time would be accurately recorded.  When my shift was over, I went to the remote breakroom, texted my manager the clock out time, took off my Apple t-shirt, picked up my bag, and then left for the day.  I never saw anyone go through a bag or technology check at the Irvine Spectrum store.

18.     I have never complained to anyone about bag checks.  Nor have I ever witnessed any employee complain about bag checks.

19.     I believe I have been compensated for all of the time I have worked for Apple.  There is no time that I have worked that Apple has not paid me for.  I also have been paid overtime for all overtime I have worked.

20.     Before beginning the interview that ultimately resulted in this declaration, I reviewed and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was

1     conducted by Apple's attorney in accordance with the Consent Form.

2        I declare under penalty of perjury under the laws of the United States and the State of

3     California that the foregoing is true and correct.  Executed on November 7, 2014 at Mission Viejo,

4     California.

5

6                 Julia Bahu

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TLER MENDELSON, P.C.
í. San Fernando, 15th Floor
an Jose, CA  95113.2303
408.998.4150

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits**.  Several lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Dean Pelle, Adam Kilker, Brandon Fisher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores across the United States, including California.  The time period at issue in California is July 25, 2009 to the present.  The longest time period at issue is from July 25, 2007 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line (i) to check out and return company-owned devices upon leaving or entering the store, (ii) to clock in or clock out, and (iii) to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift, and the logistics of starting and ending work (picking up and dropping of EasyPay devices at the beginning and end of your shifts, and clocking in at the beginning of your shifts) at Apple stores.  **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.**  If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money.  Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits.  We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks.  We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.**  For that reason, we cannot give you legal advice about your own employment with Apple.  Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential. As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed. It could also hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**. I want to make it clear that you do not have to talk to us. We will not be offended at all if you decide you would rather not talk to us. You are also welcome to change your mind about talking to us once you hear the questions that we have. Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation. Retaliation is against the law. No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us. Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us. In other words, Apple will not make any changes to your employment – good or bad - because of your decision. If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth. You should not worry about what you think may be the "right" answer. We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about. If that happens, it is very important that you not sign anything unless it is completely accurate. If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it. By signing below, I am confirming that I do not have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits. I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s). I am voluntarily choosing to talk to them and I understand I can end the interview at any time. No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers. I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 11/04/14

Signature: _A Bahu_

Print Name: JULIA BAHU

Job Title: INVENTORY SPECIALIST, R069

# EXHIBIT A5

1    **DECLARATION OF KYLE BOGGS**

2    I, KYLE BOGGS, declare as follows:

3    1.    I currently work for Apple as a Business Specialist at the Third Street Promenade
4    store in Santa Monica, California.  I started working for Apple on July 27, 2012, as an Expert.  I
5    started at the Easton Towne Center, in Ohio, and worked there until September 2013.  I then
6    transferred to the W14th Street store in New York City where I worked until December 2014.  I
7    transferred to the Third Street Promenade Store in December 2014 and have ben working here ever
8    since. I became a Business Specialist in June of 2014 while I was working at the W14th Street store.

9    2.    As a Business Specialist, I support the front of the house team with business
10    customers, such as recommending devices for them, business sales, and continuing to build upon
11    existing business relationships.

12    3.    I am a full-time employee. I work about 40 hours or more per week.

13    4.    When I get to work to begin my shift, I put my backpack on a chair, and I put my
14    lunch in the fridge and then put my bag in a locker, then grab an EasyPay device, clock-in, put on
15    my Apple t-shirt, grab my business cards and Apple device cables, and go to work.

16    5.    I bring a bag to work.  I use it carry personal items like my lunch, a book, my
17    headphones, some personal non-Apple technology, and my Apple t-shirt.  I could wear my Apple t-
18    shirt under another item of clothing, but I prefer to carry it in a bag.  I do bring a shirt to wear over
19    my Apple t-shirt, while I am on break.  I drive to work and I could leave my bag in my car's trunk,
20    but I prefer to have my personal belongings in the store with me, rather than leaving them in the car.

21    6.    I have never been through a bag check at the Third Street store.  I have seen other
22    employees go through a bag check, but it seems to me that they are voluntarily submitting to the bag
23    check.  I have never been asked by a manager to submit a bag check at the Third Street store, and no
24    one has ever stopped me from leaving the Third Street store with a bag.  No one has ever told me
25    that I need to go through bag checks at Third Street.

26    7.    I have never seen employees wait for a bag check in the Third Street store, nor have I
27    ever seen a line of employees waiting for a bag check here at Third Street.  Every day I see
28    employees leave the store without going through bag checks.

1

1    8.    I would say most employees bring a bag to work at the Third Street Promenade store.

2  Apple doesn't require employees to bring a bag, and there are employees who don't bring a bag to

3  work.

4    9.    I have had a number of mobile phones which I have used while employed at Apple,

5  many of which are non-Apple iPhones, such as Samsung Galaxy and Note mobile devices.  For the

6  last two or three months I have been using a Samsung Note 4 as my primary mobile phone and bring

7  it with me to work almost every day.  I like using an Android mobile phone.  I do have an iPhone 6

8  Plus, but I rarely bring it to work.  I do not bring any other personal Apple technology to work.

9  However, I do bring non-Apple personal technology to work, such as my Microsoft Surface 3 tablet,

10  and a Samsung Galaxy Android tablet.   Apple certainly does not require me to bring an iPhone or

11  any other Apple technology to work as I rarely bring my iPhone to work and never bring any other

12  personal Apple technology to work.   Apple provides me with everything I need to do my job when I

13  am working and I do not need to bring anything but my Apple t-shirt.

14    10.    When my shift is over, I let a manager know that I am leaving, then I go downstairs to

15  the back of the house, take off my shirt, punch out, collect my belongings, put a sweatshirt on and

16  walk out the front door.  No one has ever stopped me on my way out of the store for any type of

17  check.  I have never been disciplined for not going through a check, and I am not aware of anyone

18  else ever being disciplined for not stopping for a check.

19    11.    I have never gone through a tech check at the Third Street Promenade store.  It is my

20  understanding that non-apple personal technology is not subject to any technology check.

21    12.    I have never had my coat or other clothing checked at Apple, and I have never seen

22  anyone check a coat or other clothing at Apple.

23    13.    I believe I have been compensated for all of the time I have worked for Apple.  There

24  is no time that I have worked that Apple has not paid me for.  I also have been paid overtime for all

25  overtime I have worked.

26    14.    Before beginning the interview that ultimately resulted in this declaration, I reviewed

27  and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was

28  conducted by Apple's attorney in accordance with the Consent Form.

TLER MENDELSON, P.C.
. San Fernando, 15th Floor
an Jose, CA 95113 2303
408.998.4150

2.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on February 6, 2015 at Santa Monica, California.

KYLE BOGGS

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits**. Two lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Debra Speicher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores in California. The time period at issue is July 25, 2009 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift at Apple stores. **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.** If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple. If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.** You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits. We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits. If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.** For that reason, we cannot give you legal advice about your own employment with Apple. Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential. As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed. It could also

hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**. I want to make it clear that you do not have to talk to us. We will not be offended at all if you decide you would rather not talk to us. You are also welcome to change your mind about talking to us once you hear the questions that we have. Just tell us that you have changed your mind and we will end our conversation

I want to remind you that Apple has a strict policy against retaliation. Retaliation is against the law. No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us. Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us. In other words, Apple will not make any changes to your employment – good or bad - because of your decision. If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth. You should not worry about what you think may be the "right" answer. We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about. If that happens, it is very important that you not sign anything unless it is completely accurate. If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it. By signing below, I am confirming that I do not have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits. I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s). I am voluntarily choosing to talk to them and I understand I can end the interview at any time. No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers. I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 2/6/15

Signature: _K. Boggs_

Print Name: KYLE BOGGS

Job Title: BUSINESS SPECIALIST

# EXHIBIT A6

## DECLARATION OF NIK BOULRICE

I, Nik Boulrice, declare as follows:

1.     I currently work for Apple as an Expert at the San Francisco Flagship store in San Francisco, California.  I have been in this position since about April 2013.  Before April 2013, I worked as a Specialist and had been in that position since November 2011.

2.     I am paid on an hourly basis.  I clock in at the beginning of my shift and clock out at the end of my shift.  My schedule varies, but I currently have Thursdays and Tuesdays off.

3.     I live about 10 minutes away, and I walk to work.  I choose to bring a back pack to work most of the time, but sometimes I don't.  When I don't bring a bag, I just put my keys and phone in my pocket and wear a jacket over my Apple shirt on the walk to and from the store.  I don't need to bring a backpack – when I do, it's my preference and my choice.

4.     I bring my iPhone to work.  I brought a personal iPad or MacBook a few times over the course of the years – but I haven't brought anything more than an iPhone in about a year.  I'm not required to own or bring any personal Apple technology.  The times when I brought an iPad or MacBook, it was to show a colleague some personal (non-Apple) work that I had been doing. Everything I need for work at Apple is provided at the store.  Apple employees are not required to have iPhones; there are several employees in the San Francisco store who have Androids.  In sum, it's entirely my choice whether to bring to work or own any personal Apple technology.

5.     I typically leave my back pack in the lockers in the store.  If a locker isn't available, I store it in a cubbie or throw it on the floor.

6.     When I leave the store, if I have a bag, I get the bag checked by the guard at the Ellis Street exit before I leave.  The check process takes no more than 15-20 seconds.  I've never had a guard pat me down or look into my pants or jackets pockets.  Guards also do not stick their hands or arms into my bag.

7.     I have never had my iPhone checked.  On the rare occasions that I brought an iPad or MacBook, I've shown my tech card to the guard (to verify the serial number), and thus has added a few seconds to the process.

8.     Including any and all waiting time, the bag check process very rarely takes more than

1



a minute.   (Usually, it takes no more than 15-20 seconds.)  I can't recall the bag check process, including any waiting time, *ever* taking more than two or three minutes – and that length of time would only occur if there was a large shipment coming through the same door where we were exiting.

9.     The longest the line I've ever seen for a bag check is about 3 people.  This includes launch days – the busiest days of the year.  I worked on the iPhone 5 launch day in 2012, and have worked at subsequent launch days in 2013 and 2014.

10.     On the days that I have not brought a bag, if someone else is getting checked, I just walk around and wave to the guard, indicating that I don't have anything.  There is no requirement to wait for a guard if you are not carrying a bag, a purchased item from the store, or personal Apple technology such as an iPad or MacBook.

11.     There are rarely more than a couple employees leaving the store at the same time. Employees trickle out individually, or in very small groups, in my experience.

12.     I haven't ever had difficulty finding a security guard to conduct a bag check or personal technology check.

13.     I have never complained to anyone about bag and personal technology checks.  Nor have I ever witnessed any employee complain about bag or personal technology checks.

14.     I believe I have been compensated for all of the time I have worked for Apple.  There is no time that I have worked that Apple has not paid me for.  I also have been paid overtime for all overtime I have worked.

15.     Before beginning the interview that ultimately resulted in this declaration, I reviewed and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was conducted by Apple's attorney in accordance with the Consent Form.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on January 24, 2015 at San Francisco, California.

NIK BOULRICE

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney representing Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits**.  Several lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Dean Pelle, Adam Kilker, Brandon Fisher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores across the United States, including California.  The time period at issue in California is July 25, 2009 to the present.  The longest time period at issue is from July 25, 2007 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line (i) to check out and return company-owned devices at the beginning and end of their shifts, (ii) to clock in or clock out, and (iii) to go through bag checks and technology checks when leaving the store, after clocking out.

We would like to ask you some questions about bag and technology checks, timekeeping and the logistics of starting and ending work at Apple stores as an employee.  If you agree to speak with me, I will <u>only</u> be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits.

**What This Interview Is *Not* About**.  I will not be asking you about any other issues, including meal periods, rest periods, final wages (upon separation or termination), or wage statements.  If you decide to participate in this interview, <u>do not volunteer</u> information about: meal periods; rest periods; final wages (upon separation or termination); or wage statements.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money.  We want you to know this so you can make an informed decision about whether you want to talk to us.

If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, we want to make sure you understand that we represent Apple and not you personally.  For that reason, we cannot give you legal advice about your own employment with Apple.

Third, we want to let you know that what you share with us will not be confidential.  It is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed.  It could also hurt your chances

of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**.  I want to make it clear that you do not have to talk to us.  We will not be offended at all if you decide you would rather not talk to us.  You are also welcome to change your mind about talking to us once you hear the questions that we have.  Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation.  No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us.  Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us.  In other words, Apple will not make any changes to your employment – good or bad - because of your decision.  If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth.  You should not worry about what you think may be the "right" answer.  We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about.  If that happens, it is very important that you not sign anything unless it is completely accurate.  If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it.  By signing below, I am confirming that I do not have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits.  I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I will <u>not</u> be asked questions about – and I <u>will not volunteer</u> information about – the following subjects: meal periods; rest periods; final wages (upon separation or termination); or wage statements.

I understand that I do not have to talk to Apple's lawyer(s).  I am voluntarily choosing to talk to them.  No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers.  I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 1/14/2015

Signature: _____

Print Name: NIK BOULKICE

Job Title: Expert

# EXHIBIT A7

**DECLARATION OF CLINTON BRIGHT**

I, CLINTON BRIGHT, declare as follows:

1.      I work for Apple as a Family Room Specialist at the Fashion Valley store in San Diego, California.  I started working at Apple on October 27, 2007 as a Part-Time Specialist at the Apple store then existing at Legacy Village in Lyndhurst, Ohio.  In early 2008, I moved to a Full-Time Creative position at the same store.  In late-October 2009, I moved to New York City and participated in opening the Upper Westside store as a Full-Time Creative and continued to work in the store.  In mid-2011, I transferred to the University Village store in Seattle, Washington as a Full-Time Family Room Specialist.  In mid-September 2013, I transferred to my current location as a Full-Time Family Room Specialist at the Fashion Valley Store in San Diego, CA.

2.      As a Family Room Specialist, I take customers' mobile appointments and assist with the technical issues with customers' iPhones, iPads and iPods.  I also do check-ins for the Family Room.  In an Apple Store, the first half of the store (near the entrance) is dedicated to sales.  In the second half in the back of the store (called the "Family Room"), we perform service and training.

3.      I am a full-time employee. I work about 40 hours per week, five days per week, and eight hours per day.  As a part-time employee at Apple, I worked approximately 30 hours per week (with more hours in the "back to school" season, and rolling into the holiday season).

4.      In nearly eight years working at Apple in four different stores, I almost never brought a bag to work. On a warm day, I hand carry my Apple t-shirt, and in my pockets, I carry my iPhone, wallet, keys and an e-cigarette.  On a cool day, I may also bring a hooded sweatshirt or a jacket.  On the rare occasion that I bring lunch to work, I carry it by hand in a plastic container.  I have not needed to bring a bag to work because I like to travel light.  I do not like to bring extra unnecessary personal belongings to work.  Apple does not require me to bring a bag or any personal property to work.  The only thing I need to bring for work is my Apple t-shirt.

5.      At Legacy Village, I never brought a bag to work because the Apple store was small without room for personal belongings (which I could keep in the car that I drove to work).  At the Upper Westside, I carried a messenger bag to work because the weather could be cold in the morning, and warmer when I got off work later in the day, so I carried multiple layers of clothing.  I

1

also wanted a secure bag attached to my body while walking through crowds in New York City. In the Seattle store, I never carried a bag because, at the time, I had a car and we also had an offsite remote break room (separate from the store) that had lockers for personal belongings and refrigerators for food. At Fashion Valley, I carried a bag for about four to five months in 2014 because I drove a motorcycle to work. In the motorcycle "riding bag," I stored my gloves, jacket and helmet. I stopped riding a motorcycle to work in 2014. I no longer bring a bag to work because I purchased a car and drive to work, so I no longer need to carry the riding bag.

6.      I own a number of personal Apple technology products. Currently, I own an iMac, iPhone, several iPod Nanos, and an original iPod shuffle. In the past, I have also owned iPads and MacBook Pro laptops. Apple has assigned me a personal technology card for my iPhone and an older MacBook Pro. The "tech card" is a little white card with an employee's name, spaces for your Apple product's serial number and product description, and a space for a manager's signature. It has been over two years since Apple assigned me a tech card, even though I still have personal Apple property, including my iPhone that I bring to work each day for personal use.

7.      In my prior Apple stores, the tech procedure consisted of showing a manager my iPhone's serial number and the matching number on my tech card.

8.      Since working for Apple in California, I have never gone through a bag check or tech check. In the four to five months that I brought my riding bag to work at Apple, I stored it on top of lockers in the remote break room before reporting to work in the Fashion Valley store. I have never gone through a bag or tech check in the Fashion Valley store or its remote break room. Since I started working at the Fashion Valley store, I do not recall ever seeing anyone go through a bag or tech check either in the store or in the remote breakroom.

9.      When I arrive to work each day, I report to the Apple store's back of house, clock-in using an EasyPay, review my schedule for daily tasks, grab any tools that I need, and head into the store. The tools that I use include an iPad, radio, earpiece, EasyPay, cables, and sim ejector tool. Apple provides me with all of these tools that I need to perform my job. I am not required to use or bring any personal property or personal Apple products for work. Aside from my Apple t-shirt that I wear to work each day, Apple does not require me to bring anything to work. Apple does not

1   require employees to bring a bag to work.  During team meetings at Fashion Valley, managers have

2   specifically identified the Apple t-shirt as the only thing that employees are required to bring to

3   work.

4          10.    At the end of my shift each day, I head to the back of house in the Apple store, put

5   away my tools in designated spaces, clock-out on an EasyPay and then walk out of the front of the

6   store.  Since working at the Fashion Valley store, I have never been stopped by a manager or anyone

7   else when leaving work at the end of my shift, including for a bag check or a tech check.  I have

8   never been disciplined for not going through any check at the Apple store, and I am not aware of

9   anyone else ever being disciplined for not stopping for a check when leaving work.

10         11.    At Fashion Valley, I have never seen anyone waiting in line for a bag check or tech

11  check and I do not recall ever seeing a bag or tech check at the Fashion Valley store.  When I

12  worked at the other Apple stores outside California, the bag and tech checks usually took a few

13  seconds to complete, and the entire process usually lasted no more than a minute.  I have never heard

14  anyone complain about bag or tech checks.

15         12.    Since starting work at Fashion Valley, I have never had my coat or other clothing

16  checked at Apple, nor have I seen any other employees go through a coat or clothing check at

17  Fashion Valley.

18         13.    I believe I have been compensated for all of the time I have worked for Apple.  There

19  is no time that I have worked that Apple has not paid me for.  I also have been paid overtime for all

20  overtime I have worked.

21         14.    Before beginning the interview that ultimately resulted in this declaration, I reviewed

22  and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was

23  conducted by Apple's attorneys in accordance with the Consent Form.

24      I declare under penalty of perjury under the laws of the United States and the State of

25  California that the foregoing is true and correct.  Executed on March 9, 2015 at San Diego,

26  California.

27

28  CLINTON BRIGHT

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits.**  Two lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Debra Speicher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores in California.  The time period at issue is July 25, 2009 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift at Apple stores.  **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.**  If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits.  We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.**  For that reason, we cannot give you legal advice about your own employment with Apple.  Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential.  As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed.  It could also

hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**. I want to make it clear that you <u>do not</u> have to talk to us. We will not be offended at all if you decide you would rather not talk to us. You are also welcome to change your mind about talking to us once you hear the questions that we have. Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation. Retaliation is against the law. No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us. Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us. In other words, Apple will not make any changes to your employment – good or bad - because of your decision. If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth. You should not worry about what you think may be the "right" answer. We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about. If that happens, it is very important that you not sign anything unless it is completely accurate. If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it. By signing below, I am confirming that I <u>do not</u> have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits. I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s). I am voluntarily choosing to talk to them and I understand I can end the interview at any time. No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers. I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 3/9/15

Signature: _Clinton Bright_

Print Name: _Clinton Bright_

Job Title: _Family Room Specialist_

# EXHIBIT A8

## DECLARATION OF JAQQWON BURGESS

I, Jaqqwon Burgess, declare as follows:

1.      I currently work for Apple as a full time as an Expert the Mission Viejo Apple Store ("Mission Viejo store") in Mission Viejo, California.  I started working for Apple on November 18, 2011 as a Back of the House Part-Time Specialist.  I have also worked as a full time Preservation and Operations Specialist in the summer of 2012, and a full time Inventory Control Specialist in November 2012 through January 2014.  I have been in my current role since January 2014.

2.      As an Inventory Control Specialist, I count inventory, maintain inventory, and bring out purchased items for customers.   As an Expert, I am responsible for product sales on the sales floor and am a resource for less experienced Specialists on the floor.

3.      I began working for Apple as a part time employee for about 6 months, then became a full time employee.

4.      I worked at the Irvine Spectrum Apple store in Irvine, CA for about two weeks in early 2012 because the Mission Viejo store was closed for remodeling.  I have also worked at the Temecula store, in Temecula, CA for one week.

5.      I generally work about 40-50 hours a week.  Prior to my current role as a Back of the House Specialist, I worked about 40 hours a week regularly, and about 20 hours a week as a part time employee.  I have always worked in the Mission Viejo store.

6.      Most of the time I work from 9:00 a.m to 6:00 p.m.  If I start at 9:00 a.m., about 5-7 employees start with me.  As 10:00 a.m. approaches, which is when the store opens to the public, more employees trickle in to begin working, and will trickle in and out during the day depending on how they are scheduled.  There are probably around 60-90 employees working at the store at any time, depending on the time of day and whether it is a busy season.

7.      When I leave for the day, anywhere from 6-7 people leave at the same time, but that number varies.  On slower days maybe only 3 or 4 people leave at the same time.

8.      When I get to work, I walk through the customer entrance at the front of the store to the back of the store (back of the house), which is an area that's only open to employees.   There's a area in the back of the house where the EasyPay devices are located on a shelf and are available for

1

employees to pick up.   I take an EasyPay device and use it to clock in.  Then if I'm wearing a shirt over my Apple t-shirt I take that shirt off, put my things away in a cubby, check my email, and read other work related items, and attend a daily download with a manager.  The daily download is a meeting where a manager informs us about things like customer feedback, how to improve the customer experience, any new product information, etc.

9.     There are always enough EasyPay devices available to clock in with.  I've never had any delay in getting one and I've never had to wait in line for one.  On a few rare occasions, I wasn't able to use an EasyPay to clock in because the network was down or the system was unavailable for some reason.  On those occasions, I told a manager when I started work, and the manager recorded my start time.

10.     I usually come to work with my Apple t-shirt already on. I either wear a button down shirt over it, or I just wear it without anything covering it.  I leave my lanyard in a cubby at the store. Most employees have a personal cubby in the back of the house where they can store small items.  I keep my sunglasses and small items in the cubby while I'm working.

11.     I rarely bring a bag to work, maybe once or twice a month.  On the rare occasions, when I brought a bag to work, it's usually to carry a change of clothes to meet up with friends after work.  I don't need to bring a bag to carry anything for work.

12.     The Mission Viejo store has an offsite breakroom that's separate from the store where there are lockers that employees can use, but I rarely use the lockers because I don't bring a bag and don't need to store anything there.

13.     I would estimate that 45-50% of employees at the Mission Viejo store bring bags to work, including managers.

14.     Most employees drive to work.  It's a suburban mall location and parking is free and available.

15.     It has been a few years since managers at the Mission Viejo store required any bag checks.  I went through bag checks when they used to do bag checks, on the rare occasions when I brought a bag.  The bag check was less than 5 seconds.  A manager just glanced in my bag but didn't look very thoroughly.  I never waited for a bag check.  If the manager was talking to a customer and

couldn't check my bag, I would just leave.  If I didn't bring a bag to work (which was almost all the time) I didn't have to have my bag checked.

16.     Managers at the Mission Viejo store completely stopped doing bag checks a few years ago.  Since then I haven't gone through a single bag check.

17.     Bag checks have never really been a concern for me., since I rarely bring a bag, and when I actually went through them years ago, they lasted a few seconds.

18.     When I am ready to leave, I let my manager know that I am leaving, then clock out using an EasyPay, put the EasyPay back in the back of the house, get my things from my cubby, and then leave.

19.     I have owned various versions of the iPhone.  I bring my iPhone to work every day to communicate with friends and family when I'm not working.  I bought an iPad in 2012 and a MacBook Air in April of this year.  I've rarely brought my iPad to work, and I've never brought my MacBook Air to work, because I don't need them for work.  The few times I brought the iPad, I used it to review and edit friends' résumés or to watch a movie.  I don't use the iPad for work, nor do I use my iPhone for work.  Apple provides everything I need for work.

20.     If I buy something in the store, I show a manager the receipt the day I buy it.  However, I have never gone through a technology check at any Apple store.  I'm not entirely sure what is required during a technology check.  I've heard of an Apple personal technology card, but have never seen one.

21.     I never took a bag to work at the Irvine Spectrum store.  I never had a bag checked at that store.  I brought my iPhone to work at that store but never went through a technology check.

22.     I took a bag to work a few days at Temecula, but I never went through a bag or technology check at that store either.

23.     I have never heard of anyone being disciplined for not going through a bag or technology check. On the rare occasions when I brought a bag to work when the Mission Viejo store was conducting bag checks and I did not go through a check, I was never reprimanded or disciplined for not going through a bag check.

24.     Before beginning the interview that ultimately resulted in this declaration, I reviewed

1   and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was

2   conducted by Apple's attorney in accordance with the Consent Form.

3        I declare under penalty of perjury under the laws of the United States and the State of

4   California that the foregoing is true and correct.  Executed on November 4, 2014 at Mission Viejo,

5   California.

6

7   Jaqqwon Burgess

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TLER MENDELSON, P.C.
/. San Fernando, 15th Floor
an Jose, CA 95113-2303
408.998.4150

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits.**  Several lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Dean Pelle, Adam Kilker, Brandon Fisher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores across the United States, including California.  The time period at issue in California is July 25, 2009 to the present.  The longest time period at issue is from July 25, 2007 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line (i) to check out and return company-owned devices upon leaving or entering the store, (ii) to clock in or clock out, and (iii) to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift, and the logistics of starting and ending work (picking up and dropping of EasyPay devices at the beginning and end of your shifts, and clocking in at the beginning of your shifts) at Apple stores.  **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.**  If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits.  We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.**  For that reason, we cannot give you legal advice about your own employment with Apple.  Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us <u>will not</u> be confidential.  As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed.  It could also hurt your chances of recovering money in the Bag Check Lawsuits.

**<u>Your Participation Is Entirely Voluntary</u>**.  I want to make it clear that you <u>do not</u> have to talk to us.  We will not be offended at all if you decide you would rather not talk to us.  You are also welcome to change your mind about talking to us once you hear the questions that we have.  Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation.  Retaliation is against the law.  No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us.  Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us.  In other words, Apple will not make any changes to your employment – good or bad - because of your decision.  If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth.  You should not worry about what you think may be the "right" answer.  We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about.  If that happens, it is very important that you not sign anything unless it is completely accurate.  If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it.  By signing below, I am confirming that I <u>do not</u> have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits.  I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s).  I am voluntarily choosing to talk to them and I understand I can end the interview at any time.  No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers.  I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 11/4/14

Signature: _____

Print Name: Jacqueline Jensen

Job Title: Family Room Specialist

# EXHIBIT A9

1   **DECLARATION OF NATASHA ELJURDI**

2   I, NATASHA ELJURDI, declare as follows:

3   1.   I currently work for Apple as a Business Specialist at the Third Street Promenade
4   store in Santa Monica, California. I started working for Apple on August 27, 2011, as a Specialist. I
5   have always worked at the Third Street Promenade, however, in October I worked at the Sherman
6   Oaks Apple store. I became an Expert and then was promoted to Business Specialist, which I have
7   been for about a two years.

8   2.   I was recruited to join Apple. I accepted the job offer with Apple because I felt like it
9   had the company culture I was looking for.

10   3.   I am a full-time employee. For the last six months, I've been participating in a
11   Leadership Experience (an on-the-job management training program) so I have been working on
12   average about 46 hours per week. Before that, I worked about 40 hours per week.

13   4.   I don't know how many total employees start and end their shifts at the same time I
14   do. I'm not sure how the scheduling works. Sometimes I start or end a shift by myself, sometimes
15   there are a few other employees who start or end at the same time I do.

16   5.   When I arrive for my shift, I walk in through the customer entrance at the front of the
17   store to the back of the store (back of the house). The first thing I do when I get to the back of the
18   house is get an EasyPay device from the technology station and clock in on the EasyPay. The
19   EasyPay is a modified iPhone.

20   6.   After I clock in, I look for a locker to place my bag in. I usually bring a bag to work
21   every day. I'm not required to bring one, I do it for my own convenience. I keep personal things
22   that I want to have with me in the bag such as a book to read break or lunch, sunglasses, chapstick,
23   and shirt.

24   7.   The Third Street Promenade store used to be at a different location in the same area.
25   Apple moved the store to its current location in December 2012. I also worked at the old store
26   location.

27   8.   I don't remember ever undergoing a bag check at the old Third Street Promenade
28   store location. I also don't remember ever undergoing a technology check at the old store.

1

9.     Since the store moved locations, bag checks have been very inconsistent. I have undergone a bag check about 40%-50% of the time I bring a bag. I don't know what percentage of employees with bags undergo bag checks. I don't pay much attention to whether other employees get their bags checked and I don't see it as a high priority. We have a culture of positive intent and if an employee with a bag needs to leave without having their bag checked, they are free to do so.

10.    When I undergo a bag check, the bag check itself takes about 10 seconds, at most. I just open my bag so the manager can look inside, and the manager looks in the bag.

11.    I've waited for a bag check on a few occasions when a manager was busy with a customer, but this wasn't because I wanted to have my bag checked, it was because I wanted to talk to the manager for another reason, and wanted to create the appearance that I was having a bag check done rather than just chatting.  I waited for less than a few minutes. I've never actually waited for the purpose of a back check. If a manager is busy talking to a customer but I want to leave, I walk by the manager, and either open my bag as I walk out the door or wave to the manager that I am leaving and walk out without a bag check.

12.    I would say about 80% of employees bring a bag to work at the Third Street Promenade store. Apple doesn't require employees to bring a bag, and there are employees who don't bring a bag to work.

13.    I am considered to be a manager, so I conduct bag checks on employees if they ask me. I've never stopped an employee from leaving without undergoing a bag check. I've never seen a manager stop an employee from leaving without undergoing a bag check. When I conduct checks, they take about 10 seconds. I've never heard of any employee being disciplined for walking out of the store without a bag check. I don't stop employees or discipline them if they leave without having a bag check because I realize that they may have personal matters to attend to.

14.    I have rarely seen an employee wait for a bag check. Most employees just leave if there isn't a manager available to do the bag check right away. I've never waited in a line to have my bag checked, and I have never seen a line of employees waiting for checks. Every day I see employees leave the store without going through bag checks.

15.    I have an iPhone that I bring to work every day. On rare occasions, I have brought a

TLER MENDELSON, P.C.
t. San Fernando, 15th Floor
an Jose, CA 95113 2303
408.998.4150

2.

laptop to work. I bring my iPhone for personal use, and use it for personal reasons such as to communicate with friends, texting, checking the time. Apple does not require me to bring an iPhone or anything else to work other than my Apple t-shirt and lanyard. There are employees in the store who own no Apple technology, and have Samsung or other types of phones.

16.    I've undergone technology checks before, but technology checks have been very inconsistent, even less consistent than bag checks. The technology checks that I have undergone were done at the same time as a bag check. They took about 10 seconds. The technology checks of other employees that I have seen are also about 10 seconds at most. I have had a technology check of my personal iPhone, but these are done very rarely now, and the store has not been performing tech checks of iPhones since the first few months after the store opened in December 2012. Most employees are usually ready with their tech card available and the device set to the screen which shows the serial number.

17.    If an employee does not bring a bag or personal Apple technology to work, they are free to leave the store without any sort of check or engaging a manager in any way.

18.    I worked at the Sherman Oaks Store for a month in August 2014 as part of a Leadership Experience. I brought a bag to work but I never underwent a bag or technology check at that store, nor did I ever see any employees undergoing bag or technology checks at the Sherman Oaks store. I was always free to leave after my shift was over and I had clocked out for the day.

19.    I have never had my coat or other clothing checked at Apple, and I have never seen anyone check a coat or other clothing at Apple.

20.    I believe I have been compensated for all of the time I have worked for Apple. There is no time that I have worked that Apple has not paid me for. I also have been paid overtime for all overtime I have worked.

21.    Before beginning the interview that ultimately resulted in this declaration, I reviewed and signed the Voluntary Interview Consent Form that is attached as Exhibit A. The interview was conducted by Apple's attorney in accordance with the Consent Form.

1     I declare under penalty of perjury under the laws of the United States and the State of

2 California that the foregoing is true and correct. Executed on February 4, 2015 at Santa Monica,

3 California.

4

5                                         NATASHA ELJURDI

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits.**  Several lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Dean Pelle, Adam Kilker, Brandon Fisher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores across the United States, including California.  The time period at issue in California is July 25, 2009 to the present.  The longest time period at issue is from July 25, 2007 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line (i) to check out and return company-owned devices upon leaving or entering the store, (ii) to clock in or clock out, and (iii) to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift, and the logistics of starting and ending work (picking up and dropping of EasyPay devices at the beginning and end of your shifts, and clocking in at the beginning of your shifts) at Apple stores.  **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.**  If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits.  We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.**  For that reason, we cannot give you legal advice about your own employment with Apple.  Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential.  As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed.  It could also hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**.  I want to make it clear that you do not have to talk to us.  We will not be offended at all if you decide you would rather not talk to us.  You are also welcome to change your mind about talking to us once you hear the questions that we have.  Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation.  Retaliation is against the law.  No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us.  Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us.  In other words, Apple will not make any changes to your employment – good or bad - because of your decision.  If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth.  You should not worry about what you think may be the "right" answer.  We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about.  If that happens, it is very important that you not sign anything unless it is completely accurate.  If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it.  By signing below, I am confirming that I do not have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits.  I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s).  I am voluntarily choosing to talk to them and I understand I can end the interview at any time.  No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers.  I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 10-20-14

Signature: _____

Print Name: NATASHA ELJURDI

Job Title: BUSINESS SPECIALIST

# EXHIBIT A10

**DECLARATION OF JOHN FOISSETT, JR.**

I, John Foissett, Jr., declare as follows:

1.     I currently work for Apple as an Inventory Specialist at the Century City store in Los Angeles, California.  I am also Career Experience Leader on the Floor, which means that I in the process of on the job training for store management.  I have been in the Career Experience  for about two years and have been an Inventory Specialist since December 2011.  I also worked at the Sherman Oaks store for about 60 days in July and August 2013.  I started with Apple on October 22, 2010 as a red zone Specialist.  I then became a back of house Specialist in Febraury 2011 and then became an Inventory Specialist.

2.     As an Inventory Specialist, I am responsible for ensuring that inventory is accounted for, shipping and receiving, bringing sold inventory to the sales floor to customers, and ensuring that the EasyPay devices are accounted for at the end of the day as well.  As a manager in training, I perform the roles of a Manager, such as dealing with customer issues, perform employee performance feedback, and have overall responsibility for creating positive experiences on the sales floor for both employees and customers.

3.     I am paid on an hourly basis.  Currently. I record my work time by clocking in and out using an EasyPay device.  The EasyPay device can be used as both a point of sales (POS) device and has timekeeping software.  I have never had any issues with obtaining an EasyPay device, as they are readily available.  Occasionally, there can be issues with the EasyPay device connecting to the Apple store wifi network, however, the EasyPay records the time I punched in, and will upload that time to the network and timekeeping software once it is connected with the network.  If there is some issue with the EasyPay where I cannot clock in, then we can email our manager to adjust our time accordingly.  Prior to the EasyPay devices, we punched in and out using Macintosh computers located in the back of the house.  There was one main computer available for punching in and out and others could be made available as necessary.  If the timekeeping system was down, then the store would manually track time using a manual time sheet where employees would record their time for management to enter into the system later.  Rarely, I would have to wait about 2 minutes to clock in, but this happened at most about once a quarter.  Usually clocking in takes about 10-15 seconds.

1



4.       Typically, when I get into the store at the beginning of my shift, I will put my lunch away, grab an EasyPay, clock in, then go to change into my Apple t-shirt and put on my lanyard and get ready to work.  When I get ready to leave, I usually go to the manager's office, change from my Apple t-shirt into a personal shirt, hang up my t-shirt and lanyard on a hangar, then if I go through a bag check or technology check if the manager desires, I will show the manager in the office, then walk to the EasyPay charging docks, then clock out.  Some of the bag checks and tech checks, to the extent I go through them are on the clock.

5.       On average, I work a little bit more than 40 hours per week.  I have been a full-time employee since April 2011.  I typically work shifts of 8 hours 5 days per week.  I usually have Wednesday and Thursday off every week, but my start time varies during the day.  Initially, I worked 7 am until 4 pm, but now my shift varies on a daily basis.  If I use the 7 am shift, there are around 10 people who start with me, but after that employee start times are staggered.

6.       The Century City store has lockers in the back where employees can keep personal items.  There are about 36-48 lockers in the back of the house.  There can be up to 60-70 people on shift during busy times and thus, a lot of times people share lockers or they store their bag in their car to the extent that they bring one.  The break room does not have lockers or a computer for employees to clock in and out, however, some employees can store their bicycles in the remote breakroom, as it locked with a passcode.  There is a refrigerator in the breakroom so that employees can store any food they bring to work.

7.       I generally bring a lunch bag to work but I do not bring any other bags.  My lunch bag is a reusable tote.  If I did not bring any Tupperware in the lunch bag, then I would roll the bag up and stick it in my pocket when I left after my shift ended.     I hang my lunch bag on a hangar in the back of the house.  Prior to the remote breakroom opening up, there was a small table in the back of the house which was available to employees on breaks on lunches.  Since the remote breakroom opened up, there is no space in the back of the house for employees to eat.  I would estimate that that around 75% of employees bring bags to work.

8.       I would estimate I bring in Tupperware around once a week, the other days I am able to roll up the lunch bag and put it in my pocket.  On the days where I brought a bag with

Tupperware, I will open my bag and walk by a manager who may or may not glance into the bag and I usually never break stride on the way out of the store. When I leave, I put my t-shirt on a hangar, along with my lanyard and carry it out of the store.

9. Since I have been doing a Career Experience, I also have the authority to do bag checks in the store. I estimate that about 15% of employees in the store going through bag checks. The only delays I have seen in a bag check take longer than a few seconds is when the employee is unprepared for the check, and doesn't have his or her bag opened or ready. I have never had to wait for a bag check, even on a closing shift when a number of employees could be leaving the store, as there is a manager standing at the door to check bags if that manager wants to conduct bag checks. Usually, employees are free to leave or walk by the manager with their bag open, so the process takes just a few seconds. When I do perform bag checks on employees, they last about 10-15 seconds and the technology checks last about the same amount of time, but could be slightly longer if the employee is not prepared.

10. I have an iPhone which I bring to work everyday and have since I started. I bring my iPhone to work for personal convenience, as Apple provides everything I need at work which is required to do my job. I have never brought any other Apple technology to work. Currently, I go through a tech check about 10% of the time. There have been times when I went through a tech check about 75% of the time, but that was for about a six month period back in late 2011. I was prepared for my tech checks, as I would have the screen open showing the iPhone serial number and my tech card out, so these checks would take about 10-15 seconds at most. I have never had to wait for a tech check. There are generally three managers on the floor, but if someone is engaged with a customer, employees generally make eye contact with the manager and then leave. Many employees just leave without any sort of check at all, even if they are carrying a bag or have personal Apple technology on them. Often though, employees personalize their iPhone or technology such that it is easily recognizable as theirs and there is no need for any kind of check.

11. We only check Apple technology during a technology check. On days when I did not bring a bag into the store, I did not have to undergo a bag check or personal technology check. It's my understanding that if I don't bring a bag or Apple technology into the store, I won't have to

undergo a check because there is nothing to check. If I didn't have a bag or Apple technology, I am able to leave the store without checking in with a manager. I've never seen another employee who did not bring a bag or personal Apple technology have to check in with a manager. If an employee doesn't have a bag or personal technology the employee can simply leave the store.

12.     There is a parking lot in the mall where many employees park their cars. It is my understanding that some employees store their bags in their car. I have also stored items in my car rather than bring it into the store. The Century City store also provides employees with parking voucher which are now stored in the Inventory department. When an employee seeks a parking voucher, we hand them to them and ask if they have returned the EasyPay device. Only employees that drive to work get the parking voucher. Before the parking vouchers were moved to Inventory, managers had them to give to employees who needed them.

13.     There have been many times that I have walked out of the store at the end of my shift with a bag, without having my bag checked. Nothing happened to me, and no one has threatened to discipline me because I didn't have my bag checked. I am not aware of any employee that has disciplined for walking out of the store without going through a bag or technology check.

14.     When I have had my bag checked it was a manager who performed the check. The checks could occur in the manager's office which is in the back of the house, or on my way out the front door. More often than not, since I am in the management training program, if I go through a bag check it is in the bag of the house in the manager's office.

15.     When I was at Sherman Oaks, I asked one of the managers whether the store performed bag or tech checks, and was advised that these are not done at the store. Therefore, I never went through any bag or technology check for the two months I worked at Sherman Oaks, and never saw any employees go through any sort of check there. I never checked anyone's bag or technology at Sherman Oaks, with the exception of the first day I was there, when I was informed not to perform these checks by another manager.

16.     To the extent I actually go through them, the bag and personal technology checks do not bother me at all because they only last a matter of seconds. On the rare occasions when I do have to undergo a check, I barely notice it. They also allow me the convenience of bringing my bag

1   and personal Apple technology to work.

2       17.   I have never complained to anyone about bag and personal technology checks.  Nor

3   have I ever witnessed any employee complain about bag or personal technology checks.

4       18.   I believe I have been compensated for all of the time I have worked for Apple.  There

5   is no time that I have worked that Apple has not paid me for.  I also have been paid overtime for all

6   overtime I have worked.

7       19.   Before beginning the interview that ultimately resulted in this declaration, I reviewed

8   and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was

9   conducted by Apple's attorney in accordance with the Consent Form.

10      I declare under penalty of perjury under the laws of the United States and the State of

11  California that the foregoing is true and correct.  Executed on October 24, 2014 at Los Angeles,

12  California.

13

14                                             JOHN FOISSETT, JR.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits.**  Several lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Dean Pelle, Adam Kilker, Brandon Fisher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores across the United States, including California.  The time period at issue in California is July 25, 2009 to the present.  The longest time period at issue is from July 25, 2007 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line (i) to check out and return company-owned devices upon leaving or entering the store, (ii) to clock in or clock out, and (iii) to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift, and the logistics of starting and ending work (picking up and dropping of EasyPay devices at the beginning and end of your shifts, and clocking in at the beginning of your shifts) at Apple stores.  **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.**  If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money.  Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits.  We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks.  We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.**  For that reason, we cannot give you legal advice about your own employment with Apple.  Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us <u>will not</u> be confidential. As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed. It could also hurt your chances of recovering money in the Bag Check Lawsuits.

**<u>Your Participation Is Entirely Voluntary</u>**. I want to make it clear that you <u>do not</u> have to talk to us. We will not be offended at all if you decide you would rather not talk to us. You are also welcome to change your mind about talking to us once you hear the questions that we have. Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation. Retaliation is against the law. No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us. Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us. In other words, Apple will not make any changes to your employment – good or bad - because of your decision. If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth. You should not worry about what you think may be the "right" answer. We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about. If that happens, it is very important that you not sign anything unless it is completely accurate. If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it. By signing below, I am confirming that I <u>do not</u> have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits. I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s). I am voluntarily choosing to talk to them and I understand I can end the interview at any time. No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers. I understand that it is important for me to tell the complete truth when talking to Apple's lawyers. I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: _Oct 24 14_

Signature: _[signature]_

Print Name: _John H. Foissett Jr_

Job Title: _Inventory Specialist_

# EXHIBIT A11

**DECLARATION OF EVAN FRANZ**

I, EVAN FRANZ, declare as follows:

1.  I work for Apple as a Manager at the Fashion Valley store in San Diego, California. I started working at Apple in May 2007 as a Part-time Specialist at the Fashion Fair mall in Fresno, CA. Later in 2007, I became a Full-Time Specialist. In early 2008, I went to University Town Center ("UTC") Mall in La Jolla, CA as a Full-Time Specialist for about five or six months. In mid-2008, I transferred as a Lead Specialist to the Fashion Valley store, and shortly thereafter, I was promoted to my current position of Manager at the Fashion Valley store. At all times, I have been an hourly, non-exempt employee at Apple.

2.  As a Manager at the Apple store, we divide our responsibilities in the store. My role is a "People Leader" – which includes more people-oriented tasks (such has hiring, interviews, promotions, and terminations). I foster good working relationships between other managers and their employees. I also perform general manager duties, such as opening and closing the store, taking responsibility for money, and tracking productivity and goal achievement.

3.  I am a full-time hourly employee. I work about 40 hours or more per week. I work minimal overtime. My current weekly schedule varies, but always five days per week. As a part-time employee, I averaged 20-23 hours per week with varying shifts from morning, afternoon and evening. As a part-time employee, I worked a mix between five to nine-hour shifts (including an hour lunch) about three to four days per week.

4.  When I arrive to work, I clock in using an EasyPay or Cico (a software application on an iMac for tracking work hours) in either the remote break room or in the Apple store. If I report first to the remote break room, I usually use the Cico app. If I report directly to the Apple store, I generally use an EasyPay – which includes a software application called "Time" for recording our clock in and out times, and meal break times.

5.  Each day, depending the weather, I bring a jacket, phone, wallet, and keys to work at Apple. I wear my Apple t-shirt to work every day. As a manager, I have a bin in the office within the Apple store. That is where I store my keys, phone and wallet during the workday.

6.  I never bring a bag with me to work at Apple. Since I started working for Apple at

1

the Fresno store and continuing to my work at UTC and the Fashion Valley store, I have not brought a bag with me to work.  Since I do not like to prepare my own food, I buy lunch during my meal break each day that I work at Apple.  I could bring my own lunch if I wanted to do it, but I prefer to eat out during lunch.  I drive to work and park in either the front or back lot of the Fashion Valley mall.  During my entire employment, Apple has never required me to bring a bag to work.

7.     On rare occasions, I have gone shopping at the mall during my break and brought the shopping bag with me back to the store.  In my eight years working for Apple, this has happened no more than two to five times per year.  Usually, I prefer to put the shopping bag in my car before returning to work.  On the few occasions that I have brought a shopping bag back into the store, I have had my shopping bag checked by another manager before I leave work for the day.  The process is that, as I walk from the back of the store to the front exit, I walk over to the first available manager, open my shopping bag, and the manager peeks in the bag for a couple seconds.  The bag check lasts approximately four seconds.  The manager simply looks in the bag and says, "OK."  I have never had to wait in line for a manager to check my shopping bag.  The overall time, including finding a manager and conducting a bag check, takes no longer than one minute.  In the Fashion Valley store, there are always two managers (and usually three managers) on the floor at all times, so if one manager is occupied, then the other manager will be available to perform the bag check.

8.     Aside from my Apple t-shirt (which I choose to wear when I come to work), Apple has never required me to bring anything to work with me.  When Apple store employees used lanyards until late-2014, I chose to leave my lanyard in the Apple store.  There was a dedicated location in the store to hang the lanyard.

9.     In approximately 2013, Apple's Fashion Valley store launched a new off-site remote break room located near the entrance to the mall.  Since the opening of the remote break room, employees are prohibited from bringing bags into the Apple store.  In the off-site break room, there are lockers and hanging spaces for employees to leave bags and other personal belongings.

10.    Before the remote break room opened in 2013, all employees would store personal belongings in the back of the Apple store, and if they brought a bag, they may have a bag check when leaving the store at the end of their shift.  During this time, the bag checks took no longer than

1  a minute, even on the infrequent occasions when there were multiple employees leaving work at the

2  same time.

3        11.    The Apple store issues a technology card for any personal Apple technology that

4  employees bring to the store.  The tech card identifies that the Apple device in an employee's

5  possession belongs to the employee.  Since nearly every employee has an iPhone, we generally do

6  not issue tech cards for iPhones, and I do not remember ever seeing a tech check conducted for an

7  employee's iPhone.  I do not recall whether I have a tech card for my iPhone. Tech cards are

8  generally limited to iPads and Mac computers.

9        12.    If an employee chooses to bring an iPad or personal Mac computer to work, the

10  employee is responsible for storing their device in the remote break room.  Since the opening of the

11  remote break room in 2013, there have been only a small number of bag and tech checks in the

12  Apple store. Prior to the opening of the remote break room, if an employee chose to bring an iPad or

13  Mac computer to work, he or she was responsible for finding a manager to perform a tech check

14  before leaving the store.  This does not happen every time.  On average, a tech check takes

15  approximately five seconds to complete, and about one minute for the entire process of finding a

16  manager and completing the tech check.  It takes the same amount of time if an employee goes

17  through a tech check and a bag check – usually a few seconds and no longer than a minute.

18        13.    Managers do not conduct checks in the remote breakroom, and employees are not

19  required to walk back into the store to undergo any type of check.  Once the employee gathers

20  whatever personal belongings he or she has in the remote breakroom, the employee leaves the

21  remote breakroom without any kind of check.

22        14.    During my entire time working at Apple, I have never been through a technology

23  check. I own personal Apple products, including an iPhone, iPad and iMac.  However, I have never

24  brought my iPad or iMac to work. I am not required to bring any personal Apple technology to work.

25  I choose to bring my iPhone, which I do not carry with me while I work, but I do use it on breaks for

26  watching videos, listening to music, calling people or using email.  I do not use my personal iPhone

27  for work.  I have also never had a tech check performed on my iPhone.  We are encouraged not to

28  bring personal Apple products to work such as Mac computers or iPads.

15.     I have never been stopped by a manager from leaving the store for any reason, including for a bag check or a tech check. I have never been disciplined for not going through any check at the Apple store, and I am not aware of anyone else ever being disciplined for not stopping for a bag or tech check when leaving work.

16.     Apple does not require me to bring an iPhone or any other Apple technology to work. Apple provides me with everything I need to do my job when I am working and I do not need to bring anything but my Apple t-shirt.

17.     At the end of my shift each day, I grab personal items from my bin in the manager's office, clock out for the day, and then walk out of the store. Since I do not bring personal belongings with me to work, I do not need to go to the remote break room before leaving.

18.     I have never had my coat or other clothing checked at Apple, nor have I seen any other employees go through a coat or clothing check at Apple.

19.     I believe I have been compensated for all of the time I have worked for Apple. There is no time that I have worked that Apple has not paid me for. I also have been paid overtime for all overtime I have worked.

20.     Before beginning the interview that ultimately resulted in this declaration, I reviewed and signed the Voluntary Interview Consent Form that is attached as Exhibit A. The interview was conducted by Apple's attorney in accordance with the Consent Form.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on March 9, 2015 at San Diego, California.

EVAN FRANZ

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits.**  Two lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Debra Speicher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores in California.  The time period at issue is July 25, 2009 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift at Apple stores.  **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.**  If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits.  We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.**  For that reason, we cannot give you legal advice about your own employment with Apple.  Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential.  As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed.  It could also

hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**.  I want to make it clear that you <u>do not</u> have to talk to us.  We will not be offended at all if you decide you would rather not talk to us.  You are also welcome to change your mind about talking to us once you hear the questions that we have. Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation.  Retaliation is against the law.  No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us.  Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us.  In other words, Apple will not make any changes to your employment – good or bad - because of your decision.  If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth.  You should not worry about what you think may be the "right" answer.  We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about.  If that happens, it is very important that you not sign anything unless it is completely accurate.  If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it.  By signing below, I am confirming that I <u>do not</u> have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits.  I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s).  I am voluntarily choosing to talk to them and I understand I can end the interview at any time.  No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers.  I understand that it is important for me to tell the complete truth when talking to Apple's lawyers.  I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 3-9-15

Signature: _____
Print Name: Evan Franz
Job Title: Manager

# EXHIBIT A12

**DECLARATION OF GERSHON GLEZER**

I, Gershon Glezer declare as follows:

1.      I currently work for Apple as a Senior Manager at The Grove store in Los Angeles, California.  I started with Apple in October 2005, then left Apple in January 2006 but came back in March 2006.  I started as a Seasonal Mac Specialist, and when I came back to Apple in 2006, I was a part-time Cashier.  I worked my way up through various roles until I became a Manager in 2009 and was promoted to Senior Manager in July 2011.

2.      I worked in the Beverly Center Apple store from October 2005 to January 2006. When I returned to Apple in 2006, I worked at The Grove store from March 2006 to March 2007.  In March 2007, I transferred to the Northridge store, where I worked until June or July of 2009.  I became a Manager in January 2009 while working at the Northridge store.  Next, I worked at the Glendale Galleria store from June or July 2009 until July 2011.  I then was transferred to assist in opening a new Apple store, the Americana at Brand store in Glendale, California, and worked there until about February 2012.  From February 2012 through the present, I have been working at The Grove store.

3.      As a Senior Manager, my main duties are to oversee and manage employees, schedule employees, and assist customers to provide an exceptional customer experience.

4.      I am paid on an hourly basis.

5.      On average, I work about 40 to 43 hours per week.  I typically work shifts of around 8 hours 5 days per week.  My shifts vary.  I don't have a regular start or end time, or regular days that I work.

6.      Generally there are about 4-6 managers on duty on the floor at any time.

7.      I usually bring a bag to work which I store in the manager's office upstairs in the back of the store about 80% of the time.  I keep personal items in the bag, basically anything I think I might want to have with me for the day.  Other managers store their bags in the manager's office as well.  I would estimate that 60-70% of employees bring bags to work at The Grove.

8.      Not everyone in the store owns personal Apple technology as owning personal Apple technology is not required in order to work here.  Apple provides me and other employees with

1

whatever we need to do our jobs so there is nothing we need to bring to work other than our Apple t-shirts and lanyards.  I have never been issued any Apple owned technology which I was required to bring with me to work or take home with me when I left work.

9.     The Grove store has an offsite breakroom that is available to employees.  The offsite breakroom is in another building in the same mall, and is a short walk away from the store itself.  In the offsite breakroom there are lockers for employees to keep their bags or other personal items, computers for employees to use, and EasyPay devices which employees can use to clock in and out.

10.     I have never undergone a bag check at The Grove since coming back here in 2012, even though I have a bag with me in the store.  I also bring my iPhone with me every day, but we do not do technology checks at The Grove so that has never been checked either.  I have never checked any employee's bag or personal Apple technology at The Grove.  We do not check bags here because most employees who bring bags don't bring their bags into the store anyway, they store them in the lockers at the offsite break room.  Bag and technology checks have never been a priority at the Grove since I returned in 2012 as there has not been an employee theft issue in this store.

11.     I have never seen an employee go through a bag or technology check at The Grove in the nearly three years I have been working here.  I also have never seen anyone check a coat at Apple.  I have never checked anyone's coat, nor have I have ever experienced a coat check at Apple.

12.     At the Americana at Brand store, which I helped open, we never did bag checks or technology checks either.  We did do bag checks during two weeks of training that was held at an offsite location at the Pasadena Convention Center because there was a significant amount of Apple products available to employees attending the training.  These checks were done on the clock, however, so the employees were paid for their time while undergoing the checks.  There were no bag or technology checks conducted in the store itself during the year that I worked there.  I never conducted any checks on any employees there either, and the only checks I conducted were at the Pasadena Convention Center.

13.     The Glendale Galleria store was similar to the Americana at Brand store because we also never did any bag or technology checks in that store either.  I never saw, nor conducted any bag checks in the Glendale Galleria store.  Culturally, bag and technology checks were never established

1  at either the Glendale Galleria or the Americana at Brand stores, and technology and bag checks

2  were just not done there.  At both stores, once employees clocked out, they were free to leave the

3  store and did not need to check with anyone before leaving.

4        14.   At Northridge, bag checks were done more consistently.  The check would consist of

5  a manager peeking inside the employee's bag and then sending the employee on his or her way.  As

6  a manager at Northridge, I had my bag checked as well.  The bag check process once I clocked out

7  would take less than a minute to complete.  This includes the time walking out onto the floor, finding

8  a manager and going through the bag check.  The check itself took about 10 seconds.  I never saw

9  more than two or three people trying to have their bag checked at any one time.  The longest wait

10  would be at most a minute.  At Northridge, the only Apple technology that was checked was Mac

11  laptops, and the employee would either show the back of the computer which had the serial number

12  printed or show the screen which showed the serial number of the laptop.

13        15.   At Northridge, not all employees brought bags into the store.  I drove to work and I

14  often left my bag in my car while I was at work, so I usually didn't undergo bag checks.  I rarely

15  brought my personal Apple laptop to Northridge and rarely went through technology checks there as

16  a result.  Most employees drove to work at Northridge, and because the breakroom and storage area

17  was so small there, most employees did not bring bags into the store.

18        16.   If an employee at Northridge came to work without a bag or Apple laptop, they were

19  free to leave without any sort of check once they were clocked out.

20        17.   I knew Opt-in Plaintiff Seth Dowling when he worked at The Grove store in 2012.

21  He was unhappy with his work at Apple.  If Mr. Dowling claims that he underwent bag or

22  technology checks after the offsite breakroom opened after my arrival in 2012, that is not accurate

23  because bag and technology checks have never been conducted at The Grove store since I returned.

24        18.   I have never complained to anyone about bag and personal technology checks.  Nor

25  have I ever witnessed any employee complain about bag or personal technology checks.

26        19.   I believe I have been compensated for all of the time I have worked for Apple.  There

27  is no time that I have worked that Apple has not paid me for.  I also have been paid overtime for all

28  overtime I have worked.

20.    Before beginning the interview that ultimately resulted in this declaration, I reviewed and signed the Voluntary Interview Consent Form that is attached as Exhibit A.  The interview was conducted by Apple's attorney in accordance with the Consent Form.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on March 2, 2015 at Los Angeles, California.

Gershon Glezer

TTLER MENDELSON, P.C
W. San Fernando, 15th Floor
ïan Jose, CA  95113.2303
408.998.4150

# EXHIBIT A

## VOLUNTARY INTERVIEW CONSENT FORM

I am an attorney and outside counsel for Apple, and I hope to ask you some questions about your experiences entering and exiting Apple retail stores in California, focusing on your experience (if any) with bag checks and/or technology checks.

**The Bag Check Lawsuits**.   Several lawsuits, which will be collectively referred to here as the "Bag Check Lawsuits," have been brought by former hourly, non-exempt employees Amanda Frlekin, Dean Pelle, Adam Kilker, Brandon Fisher, Taylor Kalin, and Michael Gauthier.

The Bag Check Lawsuits are brought on behalf of current and former hourly, non-exempt employees who worked in Apple retail stores across the United States, including California.  The time period at issue in California is July 25, 2009 to the present.  The longest time period at issue is from July 25, 2007 to the present.

The Bag Check Lawsuits each state their claims in a slightly different manner but, as a whole, the plaintiffs claim that Apple owes them unpaid wages for "hours worked" because they were required to wait in line (i) to check out and return company-owned devices upon leaving or entering the store, (ii) to clock in or clock out, and (iii) to go through bag checks and technology checks when leaving the store.

We would like to ask you some questions about bag and technology checks, focusing only on those that may occur at the end of your shift, and the logistics of starting and ending work (picking up and dropping of EasyPay devices at the beginning and end of your shifts, and clocking in at the beginning of your shifts) at Apple stores.   **YOU HAVE THE ABSOLUTE RIGHT NOT TO TALK WITH ME.**  If you worked with any of the employees who are involved in the Bag Check Lawsuits or whose names have come up in the Bag Check Lawsuits, we may also ask you some questions about their employment at Apple.  If you agree to speak with me, I will **ONLY** be asking you questions related to the claims for allegedly unpaid wages for "hours worked" in the Bag Check Lawsuits and about the employees who are involved in the lawsuits, and do your best to respond to only the questions asked.

**What Else You Should Know Before You Decide Whether To Participate.**  You may be eligible to participate in the Bag Check Lawsuits and, if they are successful, collect money. Information that you share with me may adversely affect your ability to collect money in the Bag Check Lawsuits.  We want you to know this so you can make an informed decision about whether you want to talk to us.

Before we talk, there are a few issues that we need you to keep in mind.

First, we cannot talk to you if you have a lawyer representing or helping you with any matters that involve the subject matter of the Bag Check Lawsuits.  If you do, please let me know now, and we will end this conversation.

Second, this interview, if you decide to participate, pertains only to bag and technology checks. We will *not* be asking about any other aspect of your employment with Apple.

**Third, we want to make sure you understand that we represent Apple and not you personally.**  For that reason, we cannot give you legal advice about your own employment with Apple.  Please refrain from discussing any aspect of your employment other than the topics relating to the Bag Check Lawsuits described above.

Fourth, we want to let you know that what you share with us will not be confidential.  As noted above, it is possible that information you share with us could help Apple establish that the Bag Check Lawsuits cannot proceed on a class action basis or should be dismissed.  It could also hurt your chances of recovering money in the Bag Check Lawsuits.

**Your Participation Is Entirely Voluntary**.  I want to make it clear that you do not have to talk to us.  We will not be offended at all if you decide you would rather not talk to us.  You are also welcome to change your mind about talking to us once you hear the questions that we have.  Just tell us that you have changed your mind and we will end our conversation.

I want to remind you that Apple has a strict policy against retaliation.  Retaliation is against the law.  No one at Apple will take any negative action against you for choosing to talk to us, or for choosing not to talk to us.  Apple also will not give you any benefits or perks if you decide to talk to us or if you decide not to talk to us.  In other words, Apple will not make any changes to your employment – good or bad - because of your decision.  If you ever have any concerns about retaliation, you should immediately report your concerns to Human Resources or Business Conduct.

Finally, it is very important that you tell us the complete truth.  You should not worry about what you think may be the "right" answer.  We are only interested in the truth.

Either today or at some other point, you may be asked to sign a formal statement called a declaration or affidavit that describes some or all of what we talk about.  If that happens, it is very important that you not sign anything unless it is completely accurate.  If you do sign a declaration or affidavit, please make certain that it is completely accurate before you sign it.

## WITNESS ACKNOWLEDGMENT

I have read this voluntary interview consent form and I understand it.  By signing below, I am confirming that I do not have a lawyer helping me with any matters that involve Apple regarding the subject matter of the Bag Check Lawsuits.  I understand that the information I share is not confidential and it is possible that what I share could hurt my chances of recovering money from the Bag Check Lawsuits.

I understand that I do not have to talk to Apple's lawyer(s).  I am voluntarily choosing to talk to them and I understand I can end the interview at any time.  No one at Apple has threatened me or promised me anything in exchange for talking to Apple's lawyers.  I understand that it is important for me to tell the complete truth when talking to Apple's lawyers.  I also understand that I should not sign a declaration or affidavit unless everything in it is accurate.

Date: 2014 · 10.20

Signature _____

Print Name: GERSHON GLEZER

Job Title: SENIOR MANAGER