Lee S. Shalov (Admitted *Pro Hac Vice*)
Brett Gallaway (Admitted *Pro Hac Vice*)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
Facsimile: (212) 448-0066
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com

Kimberly A. Kralowec (SBN 163158)
Kathleen Styles Rogers (SBN 122853)
Chad A. Saunders (SBN 257810)
THE KRALOWEC LAW GROUP
44 Montgomery St., Ste. 1210
San Francisco, CA 94104
Telephone: (415) 546-6800
Facsimile: (415) 546-6801
kkralowec@kraloweclaw.com
krogers@kraloweclaw.com
csaunders@kraloweclaw.com

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN, TAYLOR KALIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER and TAYLOR KALIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | No. C 13-03451 WHA (lead)<br>No. C 13-04727 WHA (consolidated)<br><br>**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES** |

# TABLE OF CONTENTS

I.   RULE 23(C)(4) IS NOT A MERE "MANAGEMENT TOOL" TO BE USED ONLY WHEN A PROVISION OF FEDERAL RULE 23(B) IS FIRST SATISFIED........................1

II.  APPLE'S RULE 23(A) CHALLENGES ARE WITHOUT MERIT ......................................5

    A. NUMEROSITY AND ASCERTAINABILITY ...............................................................5

    B. COMMONALITY ..........................................................................................................6

    C. ADEQUACY ..................................................................................................................8

III. APPLE'S ARGUMENTS ABOUT PREDOMINANCE ARE MISCONCEIVED ...............10

IV.  APPLE'S CHALLENGE TO PLAINTIFFS' TRIAL PLAN IS WITHOUT MERIT...........11

V.   EVIDENTIARY ISSUES................................................................................................12

VI.  CONCLUSION ...............................................................................................................14

**TABLE OF AUTHORITIES**

**CASES**

*Amador v. Baca*, 299 F.R.D. 618 (N.D. Cal. 2014) ..................................................................... 2

*Arredondo v. Delano Farms, Inc.,* 301 F.R.D. 544 (E.D. Cal. 2014) ............................................ 6

*Avilez v. Pinkerton Government Services*, 596 Fed. Appx. 579 (9th Cir. 2015) ......................... 1

*Baas v. Dollar Tree Stores, Inc.*, 2008 WL 906496 (N.D. Cal., Apr. 1, 2008) ............................ 10

*Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013) ................................................ 4

*Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975) .......................................................................... 8

*Burton v. Nationstar Mortgage, LLC*, 2014 WL 5035163 (E.D. Cal., Oct. 8, 2014) .................... 2

*Cummings v. Connell,* 316 F.3d 886 (9th Cir. 2003) .................................................................... 8

*Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (9th Cir. 2004) ................................................. 9

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal., 2012) ............................................ 2

*Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568 (C.D. Cal. 2007) ............................................ 12

*Friedman v. California State Employees Ass'n*, 2000 WL 288468 (E.D. Cal. Mar. 15, 2000) ....... 10

*Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 428 (N.D. Cal. 2011) ........................................... 7

*Jacks v. DirectSat USA, LLC*, 2015 WL 1087897 (N.D. Ill., March 10, 2015) ............................ 4

*Kamakahi v. American Society for Reproductive Medicine*, 305 F.R.D. 164 (N.D. Cal. 2015) .... 2, 4

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) ....................................................... 11

*Lilly v. Jamba Juice Co.*, 2014 WL 4652283 (N.D. Cal., Sept. 18, 2014) ......................................... 3

*Lou v. Ma Laboratories, Inc.*, 2014 WL 68605 (N.D. Cal., Jan. 8, 2014)(WHA) ............................. 9

*Ogiamien v. Nordstrom, Inc.*, 2015 WL 773939 (C.D. Cal. Feb. 24, 2015) ...................................... 8

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ........................................... 8

*Parker v. Asbestos Processing, LLC*, 2015 WL 127930 (S.C., Jan. 8, 2015) .................................... 2

*Rahman v. Mott's LLP*, 2014 WL 6815779 (N.D. Cal., Dec. 3, 2014) ............................................... 1

*Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523 (N.D. Cal. 2012) ........................................... 6

*Saavedra v. Eli Lilly and Co.*, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ............................... 1, 2

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................................... 9

*Stitt v. San Francisco Mun. Transp. Agency*, 2014 WL 1760623 (N.D. Cal. May 2, 2014) .............. 4

*Taylor v. West Marine Products, Inc.*, 2014 WL 4683926 (N.D. Cal., Sept. 19, 2014)(WHA) ..... 5, 6

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................................................... 1, 4

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ..................................................................... 7

*Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180 (N.D. Cal. 2009) ............................................. 4

**LAW REVIEW ARTICLES**

Jenna C. Smith, "Carving at the Joints": Using Issue Classes to Reframe Consumer Class Actions, 88 Wash. L. Rev. 1187 (2013) ..........................................................................................................1

Michael J. Wylie, In the Ongoing Debate Between the Expansive and Limited Interpretations of ... Fed. R. Civ. P. 23(c)(4)(a), Advantage Expansivists!, 76 U. Cin. L. Rev. 349 (2007) ..........................................................................................................3

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................................................3

Fed. R. Civ. P. 23(a)(1) ....................................................................................................................5

Fed. R. Civ. P. 23(a)(2) ............................................................................................................3, 6, 8

Fed. R. Civ. P. 23(a)(3) ....................................................................................................................8

Fed. R. Civ. P. 23(a)(4) ....................................................................................................................8

Fed. R. Civ. P. 23(b)......................................................................................................................1, 3

Fed. R. Civ. P. 23(b)(3) ...............................................................................................1, 2, 3, 4, 10

Fed. R. Civ. P. 23(c)(4) ..............................................................................................1, 2, 3, 4, 5, 9

Fed. R. Civ. P. 30(b)(6) .................................................................................................................13

Fed. R. Civ. P. 53 ..........................................................................................................................11

I.  **RULE 23(c)(4) IS NOT A MERE "MANAGEMENT TOOL" TO BE USED ONLY WHEN A PROVISION OF FEDERAL RULE 23(b) IS FIRST SATISFIED[1]**

In effectively declaring the Court powerless to adjudicate a class action on behalf of uncompensated Apple Employees, Apple has badly misconstrued Federal Rule 23(c)(4) ("Rule 23(c)(4)"), which permits Courts to certify "particular issues" for class treatment <u>regardless</u> of whether the claim satisfies the predominance requirement of Federal Rule 23(b)(3) or the other provisions of Federal Rule 23(b).  Indeed, in a recent Memorandum dated March 9, 2015, the Ninth Circuit declined to decide the predominance-related issues in a wage and hour class action like this, and, instead, directed the district court to certify a class under Rule 23(c)(4) solely on the "issue whether there exists a prima facie case for liability."  *Avilez v. Pinkerton Government Services*, 596 Fed. Appx. 579, 579-80 (9th Cir. 2015).

The seminal case in the Ninth Circuit applying Rule 23(c)(4) is *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ("*Valentino*"), which endorses an "expansive" interpretation of the Rule.[2]  As the Court in that case observed:

> Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common questions under Rule 23(c)(4) and proceed with class treatment of these particular issues.

*Id*. at 1234.

Since *Valentino*, courts in this Circuit have held that Rule 23(c)(4) is appropriate if it will "materially advance the litigation as a whole."  *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 6815779, at *9 (N.D. Cal., Dec. 3, 2014) ("The language of Rule 23(c)(4) speaks of certifying as to particular issues 'when appropriate,' meaning that '[c]ourts should use Rule 23(c)(4) only where resolution of particular common issues would materially advance the disposition of the litigation as a whole." [citation omitted]); *Saavedra v. Eli Lilly and Co.*, No.

---

[1]  Terms and definitions in Plaintiffs' Motion For Rule 23(c)(4) Certification Of Particular Issues ("Pl. Br. at __") have the same use and meaning herein.  References to pages in Defendant Apple Inc.'s Opposition To Plaintiffs' Motion For Rule 23(c)(4) Certification of Particular Issues are denoted as "Def. Br. at __."

[2]  *See* 88 Wash. L. Rev. 1187, 1188 (2013) ("The majority of circuits, including the Second, Sixth, Seventh and Ninth, interpret Rule 23(c)(4) expansively, and will certify an issue class even if the claim as a whole does not satisfy Rule 23.")

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES**
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

1

2:12-cv-9366-SVW (MANx), 2014 WL 7338930, at *11 (C.D. Cal., December 18, 2014) (declining to grant certification motion under Rule 23(c)(4) because it "will not materially advance the case's resolution."). This determination may be made using the superiority inquiries described in Federal Rule 23(b)(3),[3] but a finding of predominance is <u>not</u> required as a condition to the Rule's application. Indeed, "refusing to certify any issue class under Rule 23(c)(4) unless the predominance requirement was met would render Rule 23(c)(4) a nullity." *Saavedra, supra*, 2014 WL 7338930 at *10.[4]

Some courts granting motions under Rule 23(c)(4) have made "predominance" findings under Federal Rule 23(b)(3), but only as to the common issues certified for class action treatment. For example, in *Kamakahi v. American Society for Reproductive Medicine*, 305 F.R.D. 164, 193 (N.D. Cal. 2015) ("*Kamakahi*"), the Court found that common issues predominated, but only as to whether certain "Guidelines" violated antitrust law; certified the action under Rule 23(c)(4) "to determine whether the Guidelines violate the Sherman Act"; and ruled that the "question of how damages and injury-in-fact should be adjudicated is reserved until the violation phase is complete." *Id.* at 194.[5] "Naturally [however,] when a court chooses to limit class certification only to certain common issues under Rule 23(c)(4), those issues presumably predominate and seemingly satisfy the first element of Rule 23(b)(3)." *Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800-JFA, 2015 WL 127930, at *12 (D.S.C. Jan. 8, 2015).

Unsurprisingly, Apple opposes certification under Rule 23(c)(4), asking the Court to

---

[3] *See Amador v. Baca*, 299 F.R.D. 618, 636 (C.D. Cal. 2014) (Rule 23(c)(4) not applicable where the plaintiffs failed to show that certification was "'superior to other available methods for fairly and efficiently adjudicating the controversy.'"); *Burton v. Nationstar Mortgage, LLC*, No. 1:13-cv-00307-LJO-JLT, 2014 WL 5035163 at *17 (E.D. Cal., Oct. 8, 2014) ("When evaluating … certification under Rule 23(c)(4), the Court considers whether, as under Rule (b)(3), a class action is the superior method of litigation the action.").

[4] *See also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 544 (N.D. Cal. 2012) (observing that Court could utilize Rule 23(c)(4) if common questions were eventually found not to predominate over individualized issues).

[5] Notably, the Court also observed that it could "appoint a … special master to preside over individual damage proceedings…" *Id*.

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

2

endorse the "limited interpretation" of the Rule employed only in the Fifth Circuit.[6] According to Apple, Rule 23(c)(4) is merely a "case management tool" that a court may use only "if it concludes that a dispute may be litigated as a class action under Rules 23(a) and (b)." *See* Opp. Br. at 9. Of course, Apple's trivialization of Rule 23(c)(4) as nothing but a "management tool" cannot be reconciled with the Ninth Circuit's ruling in *Valentino* and multiple other decisions from district courts in California as described above.

Moreover, none of the decisions highlighted by Apple held that Rule 23(c)(4) certification is available only if a provision of Federal Rule 23(b) is first satisfied. In fact, contrary to Apple's description of the decision in *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2014 WL 4652283 (N.D. Cal., Sept. 18, 2014), the court did <u>not</u> hold that the plaintiff was required to -- much less did -- satisfy the predominance requirements of Federal Rule 23(b)(3) before invoking Rule 23(c)(4). Instead, the Court found that there were "numerous questions common to the class" for purposes of Federal Rule 23(a)(2); made <u>no finding</u> on the question of predominance; and, instead, determined to "exercise its discretion pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure to certify the proposed class solely for purposes of determining liability." *Id*. at *8-*11.[7]

Employing the correct standard for utilizing Rule 23(c)(4) in this Circuit, certification of the common issues in this case will "materially advance the litigation as a whole," and, indeed, is the only feasible way of compensating Apple Employees who were subjected to and complied with Apple's Check Policy. In a single proceeding, this Court can adjudicate not just one, but <u>multiple</u> common questions applicable to every member of the Class, including whether Apple: (i) has a company-wide policy regarding Checks of Apple Employees; (ii) is liable under California law to Apple Employees who went through uncompensated Checks; (iii) knew or

---

[6] *See* 76 U. Cin. L. Rev. 349, 354 (2007) (The Fifth Circuit has adopted "the limited interpretation of Rule 23(c)(4)(A); it considers the provision a housekeeping rule incapable of authorizing issue class actions unless the entire action satisfies the predominance requirement of Rule 23(b)(3).")

[7] The Court's concluding observation that "all of the required elements of class certification have been met" (*id*. at *11) -- the sentence highlighted by Apple in its opposition brief (*see* Opp. Br. at 10) -- cannot be construed as holding that predominance was satisfied under Rule 23(b)(3), since the court never made such a determination.

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

3

should have known that Apple Employees went through uncompensated Checks; (iv) has the technological capability to record the time it takes Apple Employees to go through Checks; and (v); and has valid defenses to uncompensated Checks based upon its supposed "good faith" conduct and the statute of limitations. As Chief Magistrate Judge Spero held in *Kamakahi*, adjudicating just the single common question of liability "'would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency'" for purposes of invoking Rule 23(c)(4). *Kamakahi*, *supra,* 305 F.R.D. at 193 (citation omitted).

Moreover, all of the circumstances for finding that a class action is a superior method for adjudicating this controversy exist here.[8] There are no other pending lawsuits by Apple Employees seeking compensation for Checks, and while many Apple Employees have expressed interest in participating in this litigation, there is no reason to believe Class members have an interest in "individually controlling the prosecution" of separate lawsuits. *See* Fed. R. Civ. P. 23(b)(3)(A)(B). In addition, Plaintiffs have provided the Court with a comprehensive Trial Plan to address the "difficulties" in managing the litigation, which, aside from a perfunctory characterization of being "invalid" (Opp. Br. at 24), Apple has not seriously challenged, much less proven to be irremediably flawed.

Finally, even if the Court requires a showing of "predominance" of the certified common questions before invoking Rule 23(c)(4), that finding would be amply supported by the record. As described in Plaintiffs' opening brief, all of the Common Liability, Common Knowledge, Common Damage and Common Defense Questions to be tried during Phase One will focus on Apple's actions, knowledge and defenses regarding the Check Policy, <u>not</u> the individual experiences of Apple Employees. In Phase Two, the impact of the Check Policy on Apple Employees, such as which Apple Employees went through Checks and for how long, will be adjudicated through the procedures outlined in Plaintiffs' Trial Plan.[9] Thus, because there are no

---

[8] Courts in this Circuit routinely find the superiority requirement satisfied in large wage and hour class actions such as this. *Stitt v. San Francisco Mun. Transp. Agency*, No. 12-CV-3704 YGR, 2014 WL 1760623, at *10 (N.D. Cal. May 2, 2014); *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 210 (N.D. Cal. 2009); *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 573 (S.D. Cal. 2013).

[9] *Jacks v. DirectSat USA, LLC*, No. 10-cv-1707, 2015 WL 1087897, at *7 (N.D. Ill., March

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES**
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

4

individual issues to be resolved during Phase One, the Common Questions to be certified necessarily warrant a finding of predominance. Accordingly, unless the Court adopts the restrictive interpretation employed only in the Fifth Circuit (which no court in the Ninth Circuit has done), certification under Rule 23(c)(4) is warranted in this case, either because it will materially advance the litigation as a whole, because the certified common questions predominate, or both.

## II.  APPLE'S RULE 23(A) CHALLENGES ARE WITHOUT MERIT

**A.  Numerosity And Ascertainability**: Apple's challenge to the numerosity requirement of Federal Rule 23(a)(1) is difficult to understand. Apple admits Checks were conducted at every one of its 52 stores for "at least some part of the limitations period." Its purported "expert" reviewed videotapes from just one Apple store that showed almost 200 Apple Employees going through Checks during only a five day period. And both Plaintiffs and Apple submitted Declarations from Apple Employees describing how they and other employees went through Checks at Apple stores. *See* Pl. Br. at 16. Indeed, focusing on a sample of the Manager Declarations reveals that hundreds of Apple Employees went through Checks just at the stores where these managers worked.[10] In a context where as few as 40 class members satisfies the numerosity requirement (*Taylor v. West Marine Products, Inc.*, No. 13-04916 WHA, 2014 WL 4683926, at *8 (N.D. Cal., Sept. 19, 2014)), Apple's assertion that the Class is insufficiently "numerous" (Def. Br. at 11) is not credible.

Apple's challenge to ascertainability -- that it is supposedly "impossible" to determine

---

10, 2015) (certifying common issues under Rule 23(c)(4) in wage and hour action where common issues "are separate and severable from the effect DirectStat's policies and practices had upon individual class members: injury-in-fact and damages.").

[10]  *See* Ex. 66 ¶¶ 11, 24, 32 (the Manhattan Village Store has 160 employees, 75% of whom bring bags and "usually have their bags checked," which means at least 120 employees have gone through a Check at this store); Ex. 60 ¶¶ 11, 1 (pg. 6), 9 (pg. 7) (the Mission Viejo Store has 130 employees, 90% of whom bring bags and 60% of those employees have gone through a Check, which means at least 70 employees have gone through a Check at this store); Ex. 62 ¶¶ 9, 21, 43 (the Santa Barbara, State Street Store has 90 employees, 90% of whom bring bags and 30-40% of those employees have gone through a Check, which means at least 24-32 employees have gone through a Check at this store).

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

5

who belongs in the class (Def. Br. at 11) -- is likewise without merit. As Apple does not dispute, if certification is granted and notice is disseminated to members of the Class, those Apple Employees who went through Checks and wish to be compensated will be clearly known and identified in accordance with the procedures outlined in Plaintiffs' proposed Trial Plan. Moreover, "[t]here is no requirement that 'the identity of the class members ... be known at the time of certification." *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012). As the Court in *Ries* observed, if class actions could be defeated because membership was difficult to ascertain at the class certification stage, "there would be no such thing as a consumer class action." *Id.*; s*ee also Arredondo v. Delano Farms, Inc.,* 301 F.R.D. 544 (E.D. Cal. 2014) (finding class sufficiently ascertainable in wage and hour class action). For present purposes, members of the Class are "identifiable based on knowable and objective factors…" (including Apple's own records), which is all that is required at the class certification stage. *Taylor*, *supra,* 2014 WL 4683926 at *10.

    **B.**    <u>**Commonality**</u>: Apple's challenge to commonality is also lacking in merit. Def. Br. at 13. As demonstrated in Plaintiffs' opening brief, Courts in the Ninth Circuit routinely find that questions regarding an employer's policies, the terms of those policies, the employer's knowledge regarding those policies and the employer's purported defenses to those policies are all common questions that are "apt to drive the resolution of the litigation" for purposes of Federal Rule 23(a)(2). Pl. Br. at 19-20. Apple does not cite or distinguish any of these authorities, and, instead, proclaims that Plaintiffs "admit" these questions do not have common answers. Def. Br. at 14. Of course, the notion that Plaintiffs "admit[ted]" there are no answers to the common questions in this case (thereby dooming their certification motion from the outset) is absurd, and Apple's purported support for this "admission" references individual issues to be addressed in Phase Two of the litigation, <u>not</u> common issues to be resolved during Phase One. *See* Def. Br. at 14, citing Pl. Br. at 2:1-4.[11]

---

[11] The lone case cited by Apple (*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ["*Dukes*"]), could not be more distinguishable. In *Dukes*, a discrimination action involving over 1.5 million employees at 3,400 stores across the country, the Court could discern no "specific employment practice" or policy of discrimination to support a finding of commonality ("Because

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

6

Apple also places significant emphasis on the Court's summary judgment ruling, and, in particular, the Court's suggestion that Apple may be liable for conducting Checks only if employees placed in their bags the "necessities of life." *See* Order Denying Summary Judgment (Dkt. 166, May 30, 2014). According to Apple, "[t]o the extent potential liability depends on whether an employee was forced to carry a bag to transport a 'necessity of life,'…it is impossible to determine on a class-wide basis what was in each putative class member's bag on that day." Def. Br. 18, 19.

Perhaps unwittingly, Apple's own phrasing of this supposed dilemma ("[t]o the extent potential liability depends on") reveals the very common question that goes to the heart of this litigation and applies to every member of the Class. That is, under what circumstances is Apple liable to Apple Employees who have their bags checked at an Apple store, and do those circumstances constitute "work" under California law? *See, e.g., Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 428 (N.D. Cal. 2011) (the Court "considers the question common to all of these experiences, which is whether the activity, regardless of the label the particular employee places on it, constitutes exempt or non-exempt work under California law.") If liability attaches only when employees place in their bags the "necessities of life," then that determination will apply to every member of the Class who participates in Phase Two of the litigation. Thus, "to the extent liability depends on" bringing the "necessities of life" to work in a bag (*id*. at 19), that is a prototypical <u>common</u> question that will be addressed and resolved during Phase One of the litigation, while Apple's concern about determining "what was in each putative class member's bag" on any given day (*id*.) is an <u>individual</u> question to be addressed, if at all, in Phase Two of the litigation.[12]

---

respondents provide no convincing proof of a companywide discriminatory pay and promotion policy, we have concluded that they have not established the existence of any common question."). *Id*. at 2556-57. Here, in marked contrast to *Dukes*, there <u>is</u> a known and identifiable employment policy at the core of the litigation, which, if found to require compensation under California law, will determine an issue that is "central to the validity of each one of the claims in one stroke." *Id*. at 2551.

[12] Even in the case highlighted in Apple's brief (*Ogiamien v. Nordstrom, Inc.*, No. 2:13-CV-05639-ODW-JCG, 2015 WL 773939, at *5 (C.D. Cal. Feb. 24, 2015)), the defendant conceded that commonality was satisfied, which the Court found … "was a smart decision - there is clearly

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

7

But this liability question is by no means the only one common to members of the Class for purposes of Federal Rule 23(a)(2). Apple's liability is also premised on its actual or constructive knowledge that Apple Employees went through Checks without compensation: answering that question yes or no will resolve a central issue in the case in one stroke. Likewise, refuting Apple's *de minimis* defense is premised on showing that Apple had the technological ability to record Checks in one-minute increments or less: answering that question yes or no will resolve a central issue in the case in one stroke. Similarly, Apple's *de minimis* defense is premised on its assertion that the Checks take "seconds" to conduct: establishing the durational scope of the defense is, therefore, a central issue in the case that can be addressed and resolved in one stroke.

**C.** **Adequacy:** Apple next challenges the adequacy of Plaintiffs and their counsel based on the very "speculative conflicts" courts in this Circuit have emphatically rejected.[13] As the Ninth Circuit has made clear, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (citation omitted).[14] The "conflict" Apple conjures up here is neither fundamental to the suit nor an actual one that requires the wholesale denial of class certification.

To manufacture a supposed "conflict," Apple imagines that Plaintiffs' counsel will have to "skewer[]", "impeach" and "discredit" Apple managers who are also members of the Class. Def. Br. at 12. Of course, if these managers did not go through Checks or did so for durations found by the Court to be *de minimis* as Apple maintains, they will not be participating during Phase Two of the litigation when their testimony, assuming it is even introduced, may be

---

a common question of whether Nordstrom's policy resulted in lost wages."
[13] *See Cummings v. Connell,* 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts"); *Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir. 1975) (noting that class members may have differing interests at later stages of litigation, but that "potential conflicts" do not present a valid reason for refusing to certify a class).
[14] Apple does not dispute that the typicality requirement of Federal Rule 23(a)(3) is satisfied.

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

8

relevant.

More fundamentally, were the hypothetical scenario imagined by Apple be considered an irreconcilable "conflict" under Federal Rule 23(a)(4), no class could ever be certified where employees and managers are impacted by the same corporate policy. In fact, the case law in this Circuit reveals the <u>opposite</u> to be true. For example, in *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003), the Ninth Circuit rejected an alleged conflict where the class included "both supervisors and non-supervisory employees." *Id*. at 958 ("We decline" to adopt "any per se rule concerning adequacy of representation where the class includes employees at different levels of an employment hierarchy."). Judge Jenkins of this district reached the same conclusion in *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 168-69 (N.D. Cal. 2004*), rev'd on other grounds by Dukes, supra,* 131 S.Ct. 2541 (2011), where the defendant "conjure[d] a scenario" of plaintiffs' counsel "attacking [the] credibility" of a woman he represents:

> [i]t is unlikely, however, that many, if any, such scenarios would occur given that the liability phase of the trial properly focuses on the existence of a general pattern and practice of discrimination, not individual employment decisions….Defendant's speculation on this point does not warrant a finding that the named plaintiffs cannot adequately represent the class.

Moreover, this case is completely unlike the situation confronted by the Court in *Lou v. Ma Laboratories, Inc.*, No. C 12-05409 WHA, 2014 WL 68605 (N.D. Cal., Jan. 8, 2014), where plaintiffs' counsel was involved in a parallel proceeding with the same defendants and substantially similar claims and evidence, "thereby creating opportunities for counsel to manipulate the allocation of settlement dollars." *Id.* at *2. Instead, this action involves a single class of Apple Employees seeking the same relief from the same corporate policy. To the extent Apple managers were not impacted by the policy; do not wish to participate in the action; or perceive a conflict being represented by Plaintiffs' counsel during Phase Two of the litigation, they have a number of options available to them, including opting-out of the Class or retaining separate counsel. Likewise, there are procedural options available to the Court should the conflict imagined by Apple become an actual one and Plaintiffs' counsel are actually "discrediting" and "impeaching" their own clients, such as creating subclasses or appointing
**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES**
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

9

1 separate counsel. *See, e.g.*, *Friedman v. California State Employees Ass'n*, No. Civ. S000101 WBS GGH, 2000 WL 288468, at *6 (E.D. Cal. Mar. 15, 2000) (If "defendants are able to show a good faith dispute among groups of plaintiffs, the court will consider decertification or another appropriate remedy.").[15]

### III.  APPLE'S ARGUMENTS ABOUT PREDOMINANCE ARE MISCONCEIVED

Unsurprisingly, Apple devotes the majority of its brief arguing that "individual" questions predominate over common questions and that Rule 23(b)(3) is therefore not satisfied. *See* Def. Br. at 14-22. In doing so, Apple pretends the Court is being asked to adjudicate every issue associated with the Checks on a "class-wide basis" in one proceeding (that will ostensibly take "4,133 days to complete" [*id*. at 25]), and then declares there is "no manageable way" to do so.[16] Apple also litters its brief with the words "vary," "variation" and "varied" to support the uncontested notion that there are differences in the ways its Check Policy impacted Apple Employees. The Court is also presented with three inapposite decisions denying certification under Federal Rule 23(b)(3) because the plaintiffs sought to prove individual liability, injury-in-fact and damages for every class member in <u>one</u> proceeding without competent statistical evidence or a manageable plan to accomplish such a task. *See* Def. Br. at 16-18.

Of course, had Plaintiffs sought certification of the Class to adjudicate the individual claims of every Apple Employee in a single trial and on a "class-wide basis," Apple's arguments about predominance and manageability might have merit. But they do not. Instead, Plaintiffs have provided the Court with a detailed trial plan that contemplates a <u>phased</u> approach for

---

[15]  In *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2008 WL 906496 (N.D. Cal., Apr. 1, 2008), the Court discerned an actual an actual and irreconcilable conflict when a store manager -- who was represented by plaintiffs' counsel in a separate action -- would be a witness at trial and contradict the claims of the named plaintiffs -- represented by the same counsel -- that they worked off-the-clock. *Id*. at *3. Here, the three store leaders identified by Apple (Danya Bonnett, Casey Shull and Margaret Karn) will not be called as witnesses by Plaintiffs during Phase One of the litigation (which will focus only on questions common to the Class), nor did these store leaders assert in their Declarations that Plaintiffs never went through Checks at their stores.

[16]  *See* Def. Br. at 16 (there is "no manageable way to determine on a class-wide basis" whether employees participated in Check "on any given day"); *id*. at 19 ("it is impossible to determine on a class-wide basis what was in each putative class member's bag on that day"); *id*. at 20 ("Plaintiffs also cannot manageably prove whether any check that did occur lasted more than a *de minimis* amount of time… on a class-wide basis.").

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

10

resolving the claims of employees affected by a single corporate policy that is not consistently applied. Thus, Apple's predominance-related arguments about "individual practices" that "varied widely" and cannot be managed on a "class-wide basis" (Def. Br. at 16) are a red herring that provide no grounds for denying certification when Plaintiffs have offered a completely different approach that allows common questions to be resolved first and "variations" in Class member experiences to be addressed in separate proceedings.

## IV. APPLE'S CHALLENGE TO PLAINTIFFS' TRIAL PLAN IS WITHOUT MERIT

Addressing none of the authorities cited in Plaintiffs' Trial Plan, Apple declares that the "use of masters here is inappropriate as a matter of law." Def. Br. at 25. Aside from conflicting with Ninth Circuit authority,[17] Apple's arguments about special masters are entirely premature. In moving for class certification, Plaintiffs are not asking the Court to appoint special masters under Federal Rule 53; instead, that determination will be made only if the Class is certified; the common questions adjudicated in Phase One are resolved in Plaintiffs' favor; and the Court finds one of the conditions for appointing special masters is satisfied. In fact, special masters may ultimately be unnecessary if the number of Apple Employees participating in Phase Two is relatively small.[18] In that event, the Court may hear the individual claims of participating Apple Employees on its own or approve different procedures that comport with due process. At the class certification phase, however, the Court's focus is on whether Plaintiffs have presented a workable and efficient plan for conducting the litigation and adjudicating the claims of individual class members, even though the plan may change as future circumstances require. As Plaintiffs' comprehensive Trial Plan reveals, that objective has been accomplished.

---

[17] *See, e.g., Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) (holding that individual inquiries regarding damages is not a basis to deny certification, and that special masters may be appointed under Federal Rule 53 to make such determinations.)

[18] Apple's prediction that there will be "over 12,400 mini-trials" that will take over eleven years to complete (Def. Br. at 25), is not credible, nor can it be reconciled with Apple's assertion that there has been "a paltry showing of individuals who claim they were somehow harmed" by the Check Policy. *Id*. at 11. In addition to the fact that some Apple Employees may not have gone through Checks, experience shows that a substantial portion of employees in wage and hour class actions do not pursue compensation to which they are entitled. As a result, while the number of Apple Employees who ultimately elect to participate in Phase Two of the litigation will not be known until notice is disseminated, the notion that there will not be "over 12,400 mini-trials" is a transparent scare tactic that has no basis in reality.

PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

11

Apple's challenge to Plaintiffs' Trial Plan is also somewhat ironic given the concerns expressed to the Court in its opposition brief. In this regard, Apple's most pressing fear appears to be a finding of liability as to Apple Employees who did not go through Checks. *See* Def. Br. at 2 ("If no checks were conducted when an employee left the store, the policy cannot create any liability as to that employee."); *id*. at 16 ("if an employee did not carry a bag or personal Apple technology to work, Apple's bag and technology check policy cannot create any liability for Apple with respect to that employee.") In fact, this is precisely the outcome Plaintiffs' Trial Plan is designed to prevent and which Apple should resoundingly endorse; *to wit*, a procedure that contemplates the imposition of liability <u>only</u> as to Apple Employees who went through Checks for longer than a *de minimis* period of time. The fact that Apple stridently opposes a process that is structured to protect <u>its</u> due process rights and <u>its</u> affirmative defenses speaks volumes about Apple's true motivation here, which is to defeat any form of certification and thereby immunize itself from liability to the hundreds if not thousands of Apple Employees who are subject to and comply with the Company's Check Policy.

## V. EVIDENTIARY ISSUES

Apple asks the Court to "disregard" the declarations of three former Apple Employees who failed to appear for their depositions in the days just prior to the close of discovery. Def. Br. at 7, fn. 6. However, the lone authority cited by Apple in support of this request (*Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568 (C.D. Cal. 2007), involved a prior "warning" from the court that such relief would be granted if the declarants were not deposed, a circumstance finding no counterpart here. *Id*. at 571. Moreover, given that Apple cited the deposition transcripts of only two of the seven declarants that were deposed (*see* Declaration of Todd K. Boyer, Esq. (the "Boyer Declaration"), Exs. PP and BBB), it can hardly claim prejudice from the failure of three declarants to appear for depositions.

Plaintiffs are also filing a separate motion to strike/exclude the report of Dr. Randolph Hall filed with Apple's opposition brief, on the ground that his report fails to meet the requirements for expert testimony under Rule 702 of the Evidence Code, as it is mere observation

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES**
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

12

and summary and is based on flawed assumptions of fact. *See* Exhibit GG (Dkt. No. 257-4) to the Boyer Declaration. Plaintiffs also object to the video evidence that forms the basis for Dr. Hall's report. In response to Plaintiffs' request for store videotape at the outset of this case, Apple resisted on the ground that the video was irrelevant. *See* Declaration of Kimberly A. Kralowec in Support of Motion to Strike/Exclude the Declaration of Randolph Hall, filed herewith, ¶2 and Ex. 1 ("The purpose of store-level security videos is not to record bag checks. While one of the cameras within a store … may from time to time record a bag check, those records are unpredictable."). Apple produced the videotape evidence Dr. Hall relies upon just two weeks before the discovery cutoff in this case and failed and refused to produce a fact witness pursuant to Plaintiffs' deposition notice under Federal Rule 30(b)(6) regarding that video evidence. Declaration of Kathleen Styles Rogers in Support of Motion to Strike/Exclude the Declaration of Randolph Hall ("Rogers Decl."), filed herewith, ¶3, Exh. 1, and ¶4, Exh. 2. Instead of the requested deposition, Apple unilaterally produced a declaration of an alleged witness, Steve Smith. *Id.* at ¶4. Plaintiffs request that the Steve Smith declaration and all video evidence on which Dr. Hall relies all be stricken. Apple has admitted the video evidence is irrelevant, it failed to produce it in a timely manner to Plaintiffs, and the Smith declaration does not substitute for Apple's obligation to produce a witness for the duly noticed deposition under Fed. R. Civ. Proc. 30(b)(6). *See* Rogers Decl. at Exhs. 1 and 2.

///
///
///
///
///
///
///
///
///

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES**
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

13

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion for certification be granted in its entirety.

Dated: June 4, 2015

Respectfully submitted,

By:   /s/ *Lee S. Shalov*
Lee S. Shalov (Admitted *Pro Hac Vice*)
Brett Gallaway (Admitted *Pro Hac Vice*)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY  10016
Telephone: (212) 448-1100
Facsimile: (212) 448-0066
Email: bgallaway@mclaughlinstern.com
lshalov@mclaughlinstern.com

Kimberly A. Kralowec (SBN 163158)
Kathleen Styles Rogers (SBN 122853)
Chad A. Saunders (SBN 257810)
THE KRALOWEC LAW GROUP
44 Montgomery St., Ste. 1210
San Francisco, CA 94104
Telephone: (415) 546-6800
Facsimile: (415) 546-6801
kkralowec@kraloweclaw.com
krogers@kraloweclaw.com
csaunders@kraloweclaw.com

*Attorneys for Plaintiffs and the Putative Class*

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR RULE 23(c)(4) CERTIFICATION OF PARTICULAR ISSUES**
Case No. 13-cv-3451-WHA; Consolidated Case No. 13-cv-3775-WHA

14