IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN, TAYLOR KALIN, AARON GREGOROFF, SETH DOWLING, and DEBRA SPEICHER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | No. C 13-03451 WHA (lead)<br>No. C 13-04727 WHA (consolidated)<br><br><br><br>**ORDER APPROVING CLASS CERTIFICATION** |

### INTRODUCTION

In this putative wage-and-hour class action, plaintiffs move for class certification. For the reasons stated below, plaintiffs' motion is largely **GRANTED**.

### STATEMENT

Named plaintiffs commenced this now-consolidated action on behalf of themselves and a putative class of over 12,400 current and former hourly-paid and non-exempt specialists, managers, and "genius bar" employees who worked in defendant Apple Inc.'s 52 retail stores in California since July 25, 2009. Plaintiffs seek compensation for time spent undergoing exit searches pursuant to Apple's bag-search and technology-card search policies and for time spent waiting for such searches to occur. These searches occurred when employees left the premises with a bag. Apple searched the bags to see if Apple goods were being pilfered. The issue

is whether the time waiting for the exit searches to be completed was compensable under California law.

\*     \*     \*

These now-consolidated actions commenced in July 2013 and included collective-action claims under the FLSA and class-action claims under California and New York law, based on the theory that the wait time for Apple's bag-search policy was compensable (Dkt. No. 1). In April 2014, Apple moved for summary judgment against all individually-named plaintiffs for all claims. Summary judgment as to plaintiffs' California state-law claims was denied in light of varying fact patterns regarding wait times and reasons for bringing a bag. All other claims were stayed pending the Supreme Court's review of *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. 2013), which addressed the compensability of security screenings under the FLSA. The parties agreed that the laws of New York, Massachusetts, and Ohio mirrored the FLSA such that the Supreme Court's decision would control in adjudication of those claims. The parties continued with discovery as to the California state-law claims.

In December 2014, the Supreme Court decided *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. __, 135 S. Ct. 513, 518 (2014), holding that time spent during mandatory security screenings was not compensable under the FLSA. Following that decision, plaintiffs' FLSA claims, as well as New York, Massachusetts, and Ohio state-law claims were dismissed. Only California claims remained. The undersigned retained supplemental jurisdiction over the remaining California state-law claims. It is now time to decide whether to allow class certification.

\*     \*     \*

Concerned with internal theft of its products, sometimes referred to as "shrinkage," Apple implemented a written policy called the "Employee Package and Bag Searches" policy, which imposed mandatory searches of employees' bags whenever they left the store (Shalov Decl., Exhs. 2, 118):

> **Employee Package and Bag Searches**
>
> All personal packages and bags must be checked by a manager or security before leaving the store.

2

**General Overview**

All employees, including managers and Market Support employees, are subject to personal package and bag searches. Personal technology must be verified against your Personal Technology Card (see section in this document) during all bag searches.

Failure to comply with this policy may lead to disciplinary action, up to and including termination.

**Do**

- Find a Manager or member of the security team (where applicable) to search your bags and packages before leaving the store.

**Do Not**

- Do not leave the store prior to having your personal package or back [sic] searched by a member of management or the security team (where applicable).

- Do not have personal packages shipped to the store. In the event that a personal package is in the store, for any reason, a member of management or security (where applicable) must search that package prior to it leaving the store premises.

Employees' "Personal Technology Cards" listed the serial numbers of their personal Apple devices, which served as proof of ownership that the employees owned the devices listed when those devices were searched under the policy (*id.*, Exh. 3). The text of this policy was available to employees on various digital platforms — such as an interactive "PDF," stored on an in-store computer or Apple's internal communications website — however, there was no uniform manner in which it was communicated to employees (*id.*, Exh. 1).

Apple also published guidelines for the procedure for conducting searches pursuant to the policy, although the record does not reflect how the guidelines were distributed (*id.*, Exhs. 1, 64):

- Ask the employee to open every bag, brief case, back pack, purse, etc.

- Ask the employee to remove any type of item that Apple may sell. Be sure to verify the serial number of the employee's personal technology against the personal technology log.

- Visually inspect the inside of the bag and view its contents. Be sure to ask the employee to unzip zippers and compartments so you can inspect the entire contents of the

3

> bag. If there are bags within a bag, such as a cosmetics case, be sure to ask the employee to open these bags as well.
>
> • At no time should you remove any items inside the bag or touch the employee's personal belongings. If something looks questionable, ask the employee to move or remove items from the bag so that the bag check can be completed.
>
> • In the event that a questionable item is found, ask the employee to remove the item from the bag. Apple will reserve the right to hold onto the questioned item until it can be verified as employee owned. (This will make the employee more aware to log in all items at start of shift.)
>
> • If item cannot be verified by [the manager on duty], contact Loss Prevention . . . .

Each of Apple's 52 stores in California performed searches pursuant to the bag-search policy at some point throughout the claim period, but enforcement of the policy may not have been uniform. For example, in some stores, searches were performed by the manager on duty, while in others the searches were performed by a security guard. Additionally, some stores had off-site break rooms in which employees could store their bags and Apple technology prior to entering the store, obviating the need to undergo a search upon exiting. The process in some stores changed throughout the claim period, as some stores hired security guards or constructed new off-site break rooms (*e.g.*, *id.*, Exhs. 65, 112; Boyer Decl., Exh. NN).

In stores where searches were performed by the manager on duty, some employees say they had to scour the store to find a manager and wait until that manager finished with other duties, such as assisting a customer. Where searches were performed by a security guard, some employees had to wait until a security guard became available. Some employees sometimes had to wait in line. Employee estimates of the duration of the whole process, including both searches and wait times, range from five minutes to up to twenty minutes per search, with the extremes occurring during busy periods such as product launches or holiday seasons. By contrast, managers estimate wait times at only a few seconds (*e.g.*, Shalov Decl., Exhs. 6, 33).

Because the employee time-keeping systems were generally kept within the store, employees had to clock out *prior* to undergoing a search, so employees' recorded hours worked did not account for the time involved in undergoing searches, and there is no evidence that managers manually adjusted those records to reflect wait times. Accordingly, as a rule,

4

employees received no compensation for the time involved in the searches. The limited exceptions were stores with off-site break rooms; there, employees could clock out in the break room after undergoing a search, but employees' ability to store their bags in the off-site break room already limited the need for bags inside the store, so that scenario was rare (*e.g.*, *id.* Exh. 33; Boyer Decl., Exh. B-15).

\*        \*        \*

Apple contends that the written policy wasn't uniformly followed (and thus the case cannot be tried on a class-wide basis). Some store managers, Apple asserts, exercised discretion not to enforce the bag-search policy (Shalov Decl., Exhs. 10, 23, 27, 32, 60–63). For example, one store manager decided in 2010 "that [his store was] no longer going to conduct bag checks or technology checks at the Fashion Island store" (Boyer Decl., Exh. B-13). Another decided to stop conducting searches in the Temecula store after receiving a complaint from an employee that searches "did not show trust and respect for [Apple] employees" (*id.*, Exh. B-8). Moreover, variations arose as to what constituted a "bag" subject to the policy. For example, the pockets of a jacket got searched, a lunch bag was not searched when it was rolled up in a pocket but was searched when it couldn't fit in a pocket, and one purse was rarely searched, while another was searched regularly (*id.*, Exhs. A-10, A-15; Shalov Decl., Exhs. 17, 19).

Apple's Rule 30(b)(6) witness on the subject testified (Boyer Decl., Exh. UU at 93):

> Q: Are managers told that [the Employee Packages and Bag Searches policy] is a discretionary policy?
>
> A: We do not follow up, train, audit, communicate to do this, so um, by practice it is all over the board throughout each store, so they know that there's no — they understand the culture we've created is a leadership culture, and there's a lot of discretion in our policies than one of them.

She admitted, however, that Apple had nothing in writing delegating the discretion to the store managers (*ibid.*). Discretion remained part of Apple's "culture," said one witness (*id.*, Exh. VV at 81–82). To summarize, Apple is probably correct that some deviation from the written policy occurred, but the showing by Apple is not powerful enough to establish that the written policy was the exception rather than the rule. If need be, we can sort out at trial and by special verdict form which stores did and did not follow the written policy.

5

\*                             \*                             \*

Turning to a different theme of individual issues, the record suggests a wide variety of circumstances regarding the necessity for employees to bring a bag. For example, some employees brought bags arguably to carry "necessities of life," such as prescription medication, feminine hygiene products, or items for disabilities. Others brought bags containing merely books, makeup, moustache wax, computers, headphones, hairbrushes, food, clothing, keys, or shopping bags from nearby stores. Some employees carried Apple-provided apparel, which employees had to wear while working but had to remove or cover up while outside the store. Some employees carried their Apple-provided apparel by hand, obviating the need to carry the apparel in a bag. Employee versus manager declarations reflect a wide range of estimates as to how many employees brought bags to work, ranging as low as thirty percent up to "nearly all" (Shalov Decl., Exhs. 4–19, 22–23, 25–27; Boyer Decl., Exhs. A–B).

This order follows full briefing, oral argument, and two sets of supplemental briefing.

**ANALYSIS**

The principal issue in this case is whether employee time spent complying with Apple's policy that "[a]ll personal packages and bags must be checked by a manager or security before leaving the store," was compensable under California law during the period from July 25, 2009, to the present. Plaintiffs seek to adjudicate that particular issue, among several others, on a class-wide basis. Apple contends that individual issues will predominate in class-wide adjudication of those issues.

Generally, "in order for a class action to be certified, the plaintiffs must establish the four prerequisites of [Rule 23(a)] and at least one of the alternative requirements of [Rule 23(b)]." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(b)(3), the subrule here applicable, requires that common questions predominate over individual questions and that class action must be the superior method for fairly and efficiently adjudicating the controversy. The decision in *Valentino* noted:

> Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(a) and proceed with class treatment of these particular issues.

6

*Ibid.* Nevertheless, *Valentino* vacated a district court's class certification order, in part because "the certification order merely reiterate[d] Rule 23(b)(3)'s predominance requirement and [was] otherwise silent as to any reason why common issues predominate[d] over individual issues certified under Rule 23(c)(4)(A)." The predominance problem proves to be the hardest part of the analysis, but first, let's turn to Rule 23(a).

### 1. RULE 23(a).

The requirements of ascertainability, numerosity, commonality, and typicality, as laid out in Rule 23(a), are met. Plaintiffs' counsel can identify all employees through Apple's computer-based employee records, and in turn all employees were "subject to" the policy. That alone is not enough to recover damages, but it is a good, clean, ascertainable group. The class includes more than 12,400 current and former employees, so the numerosity requirement is met. The class representatives allege a similar injury to that allegedly suffered by absent class members, namely unpaid wages, and that injury is due to the same conduct, namely the enforcement of Apple's bag-search policy. Accordingly, the requirement of typicality is met. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). As discussed below, there are at least two common questions capable of class-wide resolution. Accordingly, the commonality requirement of Rule 23(a) is satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S.Ct. 2541, 2556 (2011). An important issue concerning adequacy of representation as it relates to the class-wide issues is best addressed below, but otherwise, it is important to discuss the adequacy of each of the proposed class representatives.

Taylor Kalin, Aaron Gregoroff, Seth Dowling, and Debra Speicher all seek to be appointed class representatives.[1] Kalin worked full-time in the San Francisco store from June 2011–November 2012 and observed the bag-check process both before and after the construction of the off-site break room in that store (Shalov Decl., Exh. 112). Gregoroff worked full-time in the Carlsbad store and did *ad hoc* work in the Fashion Valley, UTC (San Diego), Escondido, Temecula, Irvine and South Coast Plaza stores from April 2011–

---

[1] While this motion was pending, plaintiffs filed a notice of withdrawal of Amanda Frlekin as a proposed class representative, "without prejudice to [her] rights as an individual plaintiff in this action or as a putative class member" (Dkt. No. 287).

7

October 2013 (*id.*, Exh. 106). Dowling worked full-time in The Grove (Los Angeles) store from April 2009–October 2012 and also did *ad hoc* work at the Century City, Pasadena, Manhattan Beach, and Beverly Center stores (*id.*, Exh. 113). Speicher worked full-time at the Century City store from January 2010–August 2012 (*id.*, Exh. 115). Each of the proposed class representatives has been deposed by Apple, and they each submitted declarations in support of this motion and the supplemental briefs requested for this motion as well as in opposition to Apple's motion for summary judgment (Dkt. No. 288-1). The proposed class representatives are a typical cross-section of Apple employees. Their interests will be aligned with the many members of the class. Leaving aside the issue discussed below, adequacy of representation is otherwise satisfied.[2]

### 2. RULE 23(b)(3).

Will common issues predominate over individual issues? That is the main problem on this motion. To evaluate this, it is worthwhile to frame the legal issue under California law.

California Industrial Welfare Commission Wage Order No. 4 defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." In *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586–87 (2000), the California Supreme Court considered that definition of "hours worked" and determined that the compensability of employee time depended on the "level of the employer's control over its employees, rather than the mere fact that the employer require[d] the employees' activity." That decision found that the time employees spent riding an employer-provided bus to work was compensable not only because their employer required them to ride the bus, but also because the employer prohibited employees from commuting in their own cars and thus employees could not choose to run personal errands along their commutes or to leave work early for a personal appointment. Those

---

[2] Apple raises a secondary issue of adequacy by arguing that plaintiffs' counsel cannot adequately represent the class because counsel may have to cross-examine or challenge the credibility of store managers, some of whom are also members of the putative class, who minimize the length of bag searches and wait times. To support its contention, Apple cites *Lou v. Ma Laboratories, Inc.*, No. 12-5409, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014), but that decision is inapposite. In *Lou*, counsel represented different plaintiffs in separate actions, proceeding simultaneously, with similar claims and evidence against the same defendants. This "creat[ed] opportunities for counsel to manipulate the allocation of settlement dollars." *Id.* at *2.

8

facts were held distinguishable from the facts in *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994) (in which time on an employer-provided bus was not compensable), because "the *Vega* employees were free to choose — rather than required — to ride their employer's buses to and from work . . . ." *Morillion*, 22 Cal. 4th at 589 n.5.

In *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 272 (2006), time that employees spent on an employer's shuttle bus from an off-site parking lot to the employee entrance to Disneyland was not compensable because employees had alternative forms of transportation, such as walking or biking the one-mile distance from the off-site parking lot, being dropped off at the employee entrance by a friend, or taking a vanpool (which would have been permitted to park in a closer lot). *Overton* rejected the argument that the employees, "as a practical matter, [were] required to use an employer-provided shuttle because no alternative transportation [was] available or feasible." *Ibid.*

More recently, in *Alcantar v. Hobart Services*, No. 11-1600, 2012 WL 6539547 (C.D. Cal. Dec. 13, 2012) (Judge Phillip Gutierrez), an employee's time spent driving an employer-provided service vehicle between home and work was found non-compensable because he had the option of parking the vehicle at his office and commuting in his own vehicle. Citing *Overton* and *Morillion*, that decision rejected the employee's argument that, as a practical matter, it was not feasible to park the service vehicle at his office because there were not enough parking spots.

The parties agree that the interpretation of the definition of "hours worked" in *Morillion* controls, but they disagree as to the role of employee choice. Plaintiffs contend that any employee who brought a bag was required to undergo an exit search and thus remained under Apple's control. Apple counters that because employees could choose *not* to bring a bag in the first place, employees were not under Apple's control.

Turning now to Rule 23(b)(3), it is true, as Apple asserts, that employees brought bags to work for many different reasons, ranging from personal convenience to necessity. At our hearing, the Court raised a concern that these individual issues would predominate in a class-wide adjudication and inquired as to whether the case could be reduced to the main issue, the lowest common denominator affecting all employees who brought bags to work, namely,

9

whether Apple had to pay them for standing in line *without regard to the reason they brought the bag*. In this way, particular and varying reasons — like medical necessity — would fall away. The class issue would presuppose nothing more than personal convenience, which, no doubt, would be the usual reason for bringing a bag anyway. Plaintiffs' counsel said that they were willing to litigate the issue of Apple's "control" on a class-wide basis subject to that limitation. The Court requested supplemental briefs on this approach. After consideration, this order finds that this generic issue overarches the entire controversy.

It would be unfair, however, to those employees with special needs for a bag to force them to litigate via the lowest common denominator, namely without regard to their special needs. This poses the issue of adequacy of representation alluded to above. To meet this, one alternative would be to litigate class liability without regard to any special reason any employee brought a bag and reserve to individual class members the opportunity to litigate in separate suits any special circumstances. Such a procedure, however, would be unfair to Apple. It would allow class members to split their cause of action, that is, litigate one theory of liability in the class action only to reserve other theories for separate suits. This order finds such a scheme would be inferior to other available methods for fairly adjudicating the controversy.

A different approach, however, would be fair to Apple as well as to employees with special needs and this approach will be adopted. We will certify a class of all employees since July 25, 2009, and litigate the generic policy on a class-wide basis. With respect to those employees who wish to also litigate special needs for a bag at work, the class notice will invite them to intervene (or opt out if they prefer). These will likely be few anyway. We should not let the few exceptions prevent litigation of the general rule. To be specific, the class notice would advise that the case will be litigated on a class-wide basis, in which bag searches will be adjudicated as compensable or not based on the most common scenario, that is, an employee who voluntarily brought a bag to work purely for personal convenience. The notice shall clearly explain that special-needs issues will *not* be litigated except to the extent that individual class members move to intervene in order to present individual circumstances. The notice requirements of Rule 23(c)(2) require advising class members of their right to intervene. The notice must, of course, also advise absent class members of their right to opt out.

10

The Court expects that only a limited number of individuals will actually intervene and raise special circumstances, so consideration of those issues raised by way of intervention would be manageable. The notice will advise class members that the entire cause of action for overtime pay for waiting in line will be adjudicated once and for all. Class members will, thus, become barred from re-litigating this issue, including any individual special circumstances. If it turns out that the Court is wrong and too many individuals wind up intervening to litigate their special needs, making the entire process unmanageable, we will entertain a motion to decertify the class proceeding.

This will solve the unfairness-to-Apple problem. No cause of action by a class member will be split. It will solve the problem of unfairness to absent class members by allowing them to intervene and to litigate any special-needs scenarios. This order finds that under this approach, the common issues will predominate over individual issues likely to actually be raised.

To head off mischief, all please note that while individual class members may intervene to litigate special needs, the Court will not allow intervenors (or named plaintiffs) to seek to represent a subclass of employees with the same alleged special need. That would require new notice and would be too unmanageable.

*             *             *

Apple further contends that the time employees spent pursuant to the bag-search policy was *de minimis*. Our court of appeals has approved a three-factor test in deciding whether time is *de minimis* under the FLSA, which test considers:

> (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.

*Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984). Both the California Division of Labor Standards Enforcement and our court of appeals apply that same test in the context of California wage claims. *Gillings v. Time Warner Cable LLC*, 583 F. Appx. 712, 713 (9th Cir. 2014); DLSE, February 3, 1994 Opinion Letter; DLSE Enforcement and Interpretations Manual 46.64, 47.2.1, 48.19.

11

This too looms as a common issue. That is, if the time is compensable at all, an across-the-board rule, such as sixty seconds, might wind up being the *de minimis* threshold. This issue as well will be litigated on a class-wide basis.

*           *           *

Now this order turns to a different type of "individual" issue. Apple contends that the bag-search policy was not enforced at all stores at all times, in part due to store manager discretion. At trial, Apple will be permitted to put on such proof, but plaintiffs have submitted substantial evidence that Apple had a state-wide written policy, which will serve as a common method of proof for all 52 California stores. Apple will be allowed, of course, to try to explain away its own written policy and maybe it can convince a jury, if the case gets that far, that some stores disregarded the written directive from on high, but those minor, localized instances have not yet been shown to predominate over the centralized policy. This issue will take care of itself anyway, given that recovery will be allowed only for those individuals who prove they stood in line long enough to deserve compensation.[3]

*           *           *

In the event that Apple loses on the merits, it will be necessary, as Apple points out, to litigate the issue of who actually stood in line and for how long. This would be pursuant to a claims process, after yet another class notice, wherein class members would certify under oath the extent to which, if at all, they stood in line beyond any *de minimis* threshold. Claimants would, of course, be subject to cross-examination and counter-proof offered by Apple.

Plaintiffs' counsel proposes an elaborate procedure, which contemplates appointing a special master pursuant to Rule 53. Although such a plan possibly could be adopted, the Court is prepared, if the Seventh Amendment so requires, to give Apple its day in court before a jury,

---

[3] Apple cites to *Ogiamien v. Nordstrom, Inc.*, No. 13-5639, 2015 WL 773939 (C.D. Cal. Feb. 24, 2015) (Judge Otis Wright), and *Quinlan v. Macy's Corporate Services, Inc.*, No. 12-00737, 2013 U.S. Dist. LEXIS 164724 (C.D. Cal. Aug. 22, 2013) (Judge Dean Pregerson), both of which denied class certification because the respective claims required individual inquiries into liability. The facts of those decisions, however, are easily distinguishable from the facts herein because both Nordstrom and Macy's lacked "a specific companywide policy that would give rise to liability." Here, there is strong, clear-cut evidence that Apple has a company-wide policy and limiting the class to pursue its theory of liability without regard to any individual's special need to bring a bag will allow class-wide litigation to "establish[] consistent liability," or the lack thereof. *Ogiamien*, 2015 WL 773939, at *4–6.

12

trying contested claims before one or more juries. If Apple loses on the main issue, then the absence of good records to document the compensable time involved would be Apple's fault, meaning its own fault for failing to keep adequate records. Apple should not be allowed to prevent class certification due to a record-keeping problem of its own making.

This procedure is reasonably close to the example provided in the Advisory Committee Notes on Rule 23(c)(4):

> For example, in a fraud or similar case, the action may retain its "class" character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.

In this regard, the Supreme Court's decision in *Comcast Corporation v. Behrend*, 569 U.S. __, 133 S.Ct. 1426, 1433 (2013), is inapposite. That decision held that when a class-wide economic model will be used to prove class-wide damages (rather than via a claims process), then the class-wide damages model must dovetail with the class-wide theory of proof for liability. Here, we will not be worried with a damages model. Damages will be proven via an old-fashioned claims process.

After *Comcast*, our court of appeals distinguished that decision and held that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3). It is true that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). *Leyva* found "that damages could feasibly and efficiently be calculated once the common liability questions [were] adjudicated." *Id.* at 514.

It is true, as Apple points out, the "fact of injury" cannot be proven on a class-wide basis and individual proof will be needed. That is, if the class prevails and it is determined that the time is compensable, the issue of impact on individual class members will still need to be litigated one-by-one in the same manner that damages will be litigated. That could turn out to consume considerable time, but *Leyva* holds we may, if not must, do so for damages issues, and in this case, the fact-of-injury issue is one and the same as the extent-of-damages issue.

13

This order finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Accordingly, this order certifies a class of all Apple California non-exempt employees who were subject to the bag-search policy from July 25, 2009, to the present. The claim to be tried will be whether or not time spent waiting to be searched is compensable under the wage order.

### 3. CLASS NOTICE AND FURTHER SUMMARY JUDGMENT.

Two items remain. *First*, notice must be sent to the class that emphasizes that this case is being pursued on a class-wide basis only on the generic theory that time spent pursuant to Apple's bag-search policy is compensable without regard to any special reason any employee brought a bag to work. Notice must clearly inform class members of their right to opt out of the class and of their right to intervene in order to litigate any individualized special needs and warn of the preclusive *res judicata* effect. *Second*, both sides shall have a second opportunity to move for summary judgment on the generic issue. This is because the case will now be litigated without regard to any individualized reasons for bringing a bag, which was not the case in Apple's prior motion. The motion should be directed only to the main issue of compensability under California law. These motions shall not be heard until after class notice has been disseminated and the deadline to opt out or intervene has passed. The motion may, however, be filed prior to that date. Accordingly, the last day to file such motions for summary judgment shall be **OCTOBER 1, 2015**.

### CONCLUSION

To the extent stated above, plaintiffs' motion for class certification is **GRANTED**. McLaughlin & Stern, LLP, and The Kralowec Law Group are hereby appointed as class counsel, with Lee Shalov of McLaughlin & Stern to serve as lead counsel.

Counsel shall submit an agreed-on form of notice by **JULY 29, 2015, AT NOON,** together with a plan and proposed order for the dissemination of notice and a timeline for opting out and intervening. The class definition described herein shall apply for all purposes, including settlement. Plaintiffs must pay for the cost of notice. Individual notice by regular mail plus

14

newspaper notice is preferred by the Court. In addition, all current employees should be notified by e-mail. A website dedicated to the class should be established also providing notice.

In light of the new schedule, the current trial schedule is hereby **VACATED**. The pretrial conference shall be on **JANUARY 20, 2016 AT 2:00 P.M.**, and the trial shall begin on **JANUARY 25, 2016**.

**IT IS SO ORDERED.**

Dated: July 16, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE