1  Lee S. Shalov (Admitted *Pro Hac Vice*)
   Brett Gallaway (Admitted *Pro Hac Vice*)
2  MCLAUGHLIN & STERN, LLP
   260 Madison Avenue
3  New York, NY 10016
   Telephone: (212) 448-1100
4  Facsimile: (212) 448-0066
   *Lshalov@mclaughlinstern.com*
5  *Bgallaway@mclaughlinstern.com*

6  Attorneys for Plaintiffs Frlekin, *et al*. and the
   California Class
7
   [Additional counsel listed on signature page]
8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11

12 | AMANDA FRLEKIN, TAYLOR KALIN, AARON | No. C 13-3451 WHA (lead)
   | GREGOROFF, SETH DOWLING, and DEBRA | No. C 13-3775 WHA (consolidated)
13 | SPEICHER, on behalf of themselves and all others | No. C 13-4727 WHA (consolidated)
   | similarly situated,
14 |
   |                              Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION**
15 |                                          | **AND MOTION FOR SUMMARY**
   |                                          | **JUDGMENT**
16 |   v.
   |                                          | Date: November 5, 2015
17 | APPLE INC., a California corporation,    | Time: 8:00 a.m.
   |                                          | Judge: Hon. William Alsup
18 |                              Defendant.  | Ctrm: 8, 19th Floor

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

2

TO DEFENDANT APPLE INC. AND ITS ATTORNEYS OF RECORD:

3

NOTICE IS HEREBY GIVEN that on November 5, 2015, at 8:00 a.m., or as soon

4

thereafter as counsel may be heard by the above-entitled court, located at 450 Golden Gate

5

Avenue, San Francisco, CA 94102, in the courtroom of the Honorable William Alsup, Courtroom

6

8 - 19th Floor, plaintiffs will and hereby do move the Court for summary judgment as to all

7

claims and causes of action pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 56

8

of the Civil Local Rules of this Court, and the Court's Order Approving Class Certification (Dkt.

9

297).  Plaintiffs' motion is made on the ground that there is no genuine issue as to any material

10

fact regarding whether "time spent pursuant to Apple's bag-search policy is compensable without

11

regard to any special reason any employee brought a bag to work," (*see* Dkt. 297 at 14) and,

12

therefore, judgment may be entered for the class on the "main issue of compensability under

13

California law."  *Id.*   This motion is based on this Notice of Motion and Motion, the

14

Memorandum of Points and Authorities filed herewith, the Declaration of Lee S. Shalov In

15

Support Of Plaintiffs' Motion Pursuant To Federal Rule 23(c)(4) For Certification Of Particular

16

Issues (Dkt. No. 280), the pleadings and papers filed herein, and upon such other matters as may

17

be presented to the Court at the time of the hearing.

18

19

Respectfully submitted,

20

Date: October 1, 2015

*/s/ Lee Shalov*

21

Lee Shalov (admitted *pro hac vice*)

22

McLAUGHLIN & STERN, LLP

23

260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
Facsimile: (212) 448-0066
lshalov@mclaughlinstern.com

24

25

26

*Lead Counsel for the Class*

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................................i-ii

STATEMENT OF UNDISPUTED FACTS.........................................................1

POINT I SUMMARY JUDGMENT STANDARDS...........................................3

POINT II STANDARDS UNDER CALIFORNIA LAW
GOVERNING COMPENSATION OF EMPLOYEES .....................................3

      A.      Background .........................................................................3

      B.      Wage Order No. 4 ............................................................4

            1.      "Subject To The Employer's Control".......................5

            2.      "Suffered Or Permitted To Work" ............................8

POINT III THE CHECKS ARE COMPENSABLE UNDER
WAGE ORDER NO. 4 AS A MATTER OF LAW ..........................................9

CONCLUSION ...............................................................................................14

1

## **TABLE OF AUTHORITIES**

2

3

### **CASES**

4
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)......................................................3

5
*Aguilar v. Ass'n for Retarded Citizens*, 234 Cal. App. 3d 21 (Ct. App. 1991).................7

6
*Alcantar v. Hobart Serv.,* 2015 WL 5155449 (9th Cir. Sept. 3, 2015) .........................12

7
8
*Amalgamated Transit Union Local 1589 v. Long Beach Public Transportation Co.*, 2009
WL 1277735 (Cal. Ct. App. May 11, 2009)...............................................................8, 12

9
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).....................................................3

10
11
*Betancourt v. Advantage Human Resourcing, Inc.*, 2014 WL 4365074
(N.D. Cal., Sept. 3, 2014)..............................................................................................6, 9

12
*Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968 (1995)...................... *passim*

13
*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) ...................................4

14
*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)................................................................3

15
16
*Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208 (C.D. Cal. 2009)...........6, 7, 8, 13

17
*Collins v. Overnite Transportation Co.,* 105 Cal. App. 4th 171 (2003)...........................4

18
*Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007) ...................................4

19
*Lusardi Construction Co. v. Aubry,* 1 Cal. 4th  976 (1992) ............................................4

20
*Madera Police officers Assn. v. City of Madera*, 36 Cal. 3d 403 (1984) .......................6

21
*Margolis v. Ryan,* 140 F.3d 850 (9th Cir.1998) ..............................................................3

22
*Martinez v. Combs*, 49 Cal. 4th 35 (2010) ...................................................................4, 9

23
24
*Morillion v. Royal Parking Co.,* 22 Cal. 4th 575 (2000)............................................ passim

25
*Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007)......................................5

26
*Novoa v. Charter Commc'ns, LLC*, 2015 WL 1879631 (E.D. Cal. Apr. 22, 2015) .................6, 14

27
*Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263 (2006)........................................8, 12

28
*Pantoja v. Brent, No.* 2014 WL 726655 (Cal. Ct. App. Feb. 25, 2014)...........................7

i

*People v. Arias,* 45 Cal. 4th 169 (2008) ........................................................................4

*Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785 (1999) ................................................4

*Ridgeway v. Wal-Mart Stores, Inc.*, 2015 WL 3451966 (N.D. Cal., May 28, 2015) ...............7, 13

*Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010) ................................................6, 12

*Sav-on Drug Stores, Inc. v. Superior Court* 34 Cal. 4th 319 (2004) ...........................4

*Singh v. Superior Court*, 140 Cal. App. 4th 387 (2006)................................................4

*Stevens v. GCS Service, Inc.*, 281 Fed. Appx. 670 (9th Cir. 2008) ................................14

*Sullivan v. Kelly Services, Inc.*, 2009 WL 3353300 (N.D. Cal., Oct. 16, 2009) ............................8

*Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557 (1996) ...................................4

*Watterson v. Garfield Beach CVS LLC*, 2015 WL 4760461 (N.D. Cal., Aug. 12, 2015)...............8

*Woodruff v. County of San Diego In-Home Supportive*, 2014 WL 2861431
(Cal. Ct. App. June 24, 2014)........................................................................12

## **STATUTES**

Fed. Rule 23(c)(4) ...........................................................................................1

Fed. Rule 56 ....................................................................................................1

Federal Rule 56(c) ..........................................................................................3

Federal Rule 56(e) ..........................................................................................3

1    Lead Plaintiffs respectfully submit this motion for summary judgment pursuant to Federal

2    Rule 56 on the issue of liability in connection with the claims asserted in their Consolidated Class

3    Complaint.

4    ## STATEMENT OF UNDISPUTED FACTS

5    Lead Plaintiffs were hourly-paid employees of Apple, Inc. ("Apple") who worked at one

6    or more of Apple's 52 retail stores in California (the "California Stores") from July 25, 2009 to

7    the present.  During that time, Lead Plaintiffs and other hourly paid employees at the California

8    Stores (the "Apple Employees") have been subject to a written policy requiring that their bags

9    and Apple products be checked every time they exit a store (the "Check Policy.")  The applicable

10   page of Apple's Check Policy, which "appl[ies] to all employees of Apple Inc…", provides as

11   follows:

12   All employees, including managers and Market Support employees, are subject to
13   personal package and bag searches. Personal technology must be verified against
     your Personal Technology Card (see section in this document) during all bag
14   searches.[1]

15   The technology card policy requires Apple Employees to record all their Apple

16   technology on a personal technology card, including the descriptions and serial numbers of the

17   product.  Shalov Decl. Ex. 3.  Every time an Apple Employee leaves a store "for any reason," he

18   or she "must ensure the sales leader verifies the serial numbers on…the card against the product

19   [the employee is] carrying."  *Id*.

20   Apple alerts employees that "[f]ailure to comply with [the Check] policy may lead to

21   disciplinary action, up to and including termination."   Shalov Decl. Ex. 2.  Thus, Apple

22   Employees who failed to comply with the Check Policy have been forced to attend "Warning

23   Meeting[s]" (Shalov Decl. Ex. 50); been cited for "Behavior to be Corrected" (Shalov Decl. Ex.

24   51); and been subject to a "Coaching Tracker."  Shalov Decl. Ex. 52.  One employee who

25   complained about Checks was told: "you don't get to pick and choose what policies to follow."

26   ---

     [1]     *See* Dkt No. 280: Declaration of Lee S. Shalov In Support Of Plaintiffs' Motion
27   Pursuant To Federal Rule 23(c)(4) For Certification Of Particular Issues, Exhibit No. 2
     (herein after referred to as "Shalov Decl. Ex. __.")

28

1    Shalov Decl. Ex. 53.  Moreover, Apple Employees do not have the right to decide if they want to

2    comply with the Check Policy.  *See* Shalov Decl. Ex. 1 at 100-01.

3         Bag checks and technology checks are performed at the same time.  *See*

4    *Id* at 65.  The procedures for conducting Checks are described in corporate documents published

5    on Apple communication platforms.  *See, e.g.*, Shalov Decl. Ex. 64.  Among other things,

6    managers are instructed to: (i) "open every bag, brief case, back pack, purse, etc…"; (ii) "remove

7    any type of item Apple may sell…"; (iii) "verify the serial number of the employee's personal

8    technology against the personal technology log"; (iv) "[v]isually inspect the inside of the bag and

9    view its contents"; and (v) have the employee remove any "questionable" item from the bag.  *Id.*

10        In addition to the time spent in the actual Check, Apple Employees wait for Checks to be

11   conducted.  These waits are caused by a variety of factors, including searching for a store

12   manager to conduct a Check; waiting for the manager to finish assisting a customer; waiting in

13   line for a Check to be performed; the absence of a guard to conduct the Check; and the actual

14   performance of the Check.[2]  Apple management is aware of these waiting times as internal e-

15   mails confirm.[3]   Apple Employees have also complained to Apple senior management about the

16   Checks and the Check Policy, but those complaints have fallen on deaf ears. *See* Shalov Decl. Ex.

17   73; Ex 6, ¶ 11 ("Employees…who complained about uncompensated security checks, had their

18   complaints ignored and were told that the off-the-clock security check process was simply

19   Apple's policy.")

20        When Checks are conducted, Apple Employees are confined to their stores.  They may

21   not leave the stores beforehand to run personal errands, get meals or engage in other personal

---

[2]     *See* Shalov Decl. Ex. 14, ¶ 6 ("The security checks were time consuming because after I clocked out, I would have to search around the store for a manager [who was often busy helping customers or performing other tasks."]); Shalov Decl. Ex. 22, ¶ 7 ("The time spent looking for or waiting for a manger and then waiting in line for other employees to finish their security checks took up the bulk of the time.")

[3]     *See, e.g.*, Shalov Decl. Ex. 65 ("We know sometimes there is not a guard present at the front door [to perform Checks] because they are opening the side door for shipment, a vendor, etc. and you have to wait until the guard returns to check out."); Shalov Decl. Ex. 44 ("I know it can be a challenge to find a leader at times [to conduct Checks]…")

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

1  activities.  *See e.g.* Shalov Decl. Ex. 16, ¶ 6; Ex. 17, ¶ 5; Ex. 18, ¶ 3; Ex. 20, ¶ 6; Ex. 25; ¶ 3; Ex.

2  58, ¶4; Ex. 68, ¶ 8; Ex. 81, ¶ 4.

### POINT I

### SUMMARY JUDGMENT STANDARDS

A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Federal Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson,* 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence it believes demonstrates the absence of an issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Celotex,* 477 U.S. at 325.   Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the nonmoving party's case.  *Id.*  The burden then shifts to the non-moving party to show there is a genuine issue of material fact that must be resolved at trial. Federal Rule 56(e); *Celotex,* 477 U.S. at 324.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  *Celotex,* 477 U.S. at 322.

### POINT II

### STANDARDS UNDER CALIFORNIA LAW
### GOVERNING COMPENSATION OF EMPLOYEES

**A.** **Background**

The Industrial Welfare Commission (the "IWC") "is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California."

1    *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 561 (1996).  The Division of Labor

2    Standards Enforcement is the "state agency empowered to enforce California's labor laws,

3    including IWC wage orders." *Id.* at 561-62.

4         Wage orders are "quasi-legislative regulations" and are to be "construed in accordance

5    with the ordinary principles of statutory interpretation." *Singh v. Superior Court*, 140 Cal. App.

6    4th 387, 392 (2006) (citing *Collins v. Overnite Transportation Co.,* 105 Cal. App. 4th 171, 178-

7    179 (2003).  "When construing a statute, a court's goal is to ascertain the intent of the enacting

8    legislative body so that [the court] may adopt the construction that best effectuates the purpose of

9    the law." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 567 (2007) (internal quotation

10   omitted); *see also People v. Arias,* 45 Cal. 4th 169, 177 (2008).  The first step in this process is to

11   look to the "ordinary meaning" of the statute's words "in their statutory context," because this "is

12   usually the most reliable indicator of legislative intent."  *Gattuso,* 42 Cal. 4th at 567.

13        The California Supreme Court has held that "the IWC's wage orders are entitled to

14   'extraordinary deference, both in upholding their validity and in enforcing their specific terms.'"

15   *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1027 (2012) (quoting *Martinez v.*

16   *Combs*, 49 Cal. 4th 35, 61 (2010)).  Thus, Wage Orders and "statutes governing conditions of

17   employment are to be construed broadly in favor of protecting employees." *Murphy v. Kenneth*

18   *Cole Prods., Inc.*, 40 Cal. 4th 1094, 1103 (2007) (citing *Sav-on Drug Stores, Inc. v. Superior*

19   *Court* 34 Cal. 4th 319, 340 (2004), *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999),

20   and *Lusardi Construction Co. v. Aubry,* 1 Cal. 4th  976, 985 (1992)).  Moreover, the State of

21   California is "empowered to go beyond … federal regulations in adopting protective regulations

22   for the benefit of workers."  *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 975

23   (1995) ("*Bono Enterprises*").

24   **B.    <u>Wage Order No. 4</u>**

25        The IWC has promulgated fifteen industry and occupation wage orders.  Wage Order No.

26   4, which is an occupation order, governs all "professional, technical, clerical, mechanical and

27   similar occupations," including "sales persons and sales agents."

28        Wage Order No. 4 requires that "[e]very employer shall pay to each employee, on the

1  established payday for the period involved, not less than the applicable minimum wage for all
2  hours worked in the payroll period . . . ."  Subdivision 2(K) of Wage Order No. 4 defines "hours
3  worked" as "[t]he time during which an employee is subject to the control of an employer, and
4  includes all the time the employee is suffered or permitted to work, whether or not required to do
5  so."

6      Importantly, the two phrases -- (i) the time during which the employee is "subject to the
7  employer's control"; and (ii) the time during which the employee is "suffered or permitted to
8  work" -- are "interpreted as independent factors, each of which defines whether certain time
9  spent is compensable as 'hours worked.'"  *Morillion v. Royal Parking Co.,* 22 Cal. 4th 575, 582
10  (2000) ("*Morillion*").  Thus, an employee subject to an employer's "control" does "not have to be
11  working" to be compensated under Wage Order No. 4.  *Id.*

12      **1.    "Subject To The Employer's Control"**

13      The definition of "control" is "neither vague nor unclear."  *Bono Enterprises,* 32 Cal.
14  App. 4th at 975.  In *Bono Enterprises*, the Court referred to the Oxford English Dictionary, which
15  defines "control" as "[t]o exercise restraint or direction upon the free action of; to hold sway
16  over, exercise power or authority over; to dominate, command."  *See Bono Enterprises*, 32 Cal.
17  App. 4th at 975 (citation omitted).  The Court also referred to Webster's New World Dictionary
18  (Third College Edition 1988), which defines "control" as "the exercise of authority over; direct;
19  command . . . ."  *Id.* (citation omitted).  As the court concluded:

20          These definitions are not obscure; they are meanings commonly attributed to the
21          words chosen by the IWC to communicate the obvious-an employer must
22          compensate an employee for the time during which the employer
23          controls the employee.

24  *Id.*

25      Over the years, courts have developed certain guidelines in assessing whether employees
26  are "subject to [an] employer's control."  While a relevant consideration, for example, whether or
27  not the employer "requires" an activity is <u>not</u> dispositive in assessing compensability.  As the
28  California Supreme Court explained, it is "[t]he level of the employer's control over its

1    employees, rather than the mere fact that the employer requires the employee's activity, [that] is

2    determinative." *Morillion*, 22 Cal. 4th at 587.  When the employer determines "when, where,

3    and how" an activity is performed, the employee is entitled to be compensated. *Id.* at 588.

4            The mandatory nature of an activity is sometimes given "heightened consideration" when

5    an employee seeks compensation for commuting time. *Novoa v. Charter Commc'ns, LLC,* 2015

6    WL 1879631, at *6 (E.D. Cal. Apr. 22, 2015).  That is because, as a general matter, the time an

7    employee takes to commute to work is not compensable under California law.   *Id.* at *5 ("In

8    general, the time an employee spends commuting is not compensable.")  Thus, where commuting

9    is at issue, "the California Supreme Court in *Morillion* and the Ninth Circuit in *Rutti* placed

10   particular emphasis on the mandatory nature of the commute in determining that the employer

11   exercised sufficient control for the activity to be compensable under California law." *Id.*

12           In all events, when assessing whether time spent by employees constitutes "work," the

13   fact that employees may "engage in limited activities" such as "reading or sleeping on a bus"

14   does not negate a finding of "control." *Morillion*, 22 Cal. 4th at 586.  Thus, if employees on a

15   bus ride cannot "drop off their children at school, stop for breakfast before work, or run other

16   errands requiring the use of a car," they are still subject to the employer's control and entitled to

17   compensation if they cannot use "the time effectively for [their] own purposes." *Id.* (citation

18   omitted).   In these circumstances, the employees are "foreclosed from numerous activities in

19   which they might otherwise engage…" *Id.*

20           In addition to these considerations, a finding of "control" is warranted when the employer

21   prohibits the employee from an alternative choice and penalizes the employee if he violates that

22   directive.  In *Morillion,* for example, employees were subject to verbal warnings and lost wages

23   if they used their own transportation. *Id.* at 587.  Similarly, in *Cervantez v. Celestica Corp.*, 618

24   F. Supp. 2d 1208, 1216 (C.D. Cal. 2009) ("*Cervantez*"), employees were subject to

25   "'counseling'" if they moved ahead of a coworker in line.

26           Courts also consider whether restrictions on an employee's time "are primarily directed

27   toward the fulfillment of the employer's requirements and policies . . ." *Madera Police officers*

28   *Assn. v. City of Madera*, 36 Cal. 3d 403, 409 (1984).  For example, in *Betancourt v. Advantage*

1   *Human Resourcing, Inc.*, 2014 WL 4365074, at *6 (N.D. Cal., Sept. 3, 2014), the Court found

2   that temporary workers at a staffing agency could be in their employer's "control" during job

3   interviews because "the interviews are conducted for [the employer's] benefit since the purpose

4   of the interviews is to promote temporary staffing relationships, which in turn provides [the

5   employer's] revenue stream."

6         With these guidelines in mind, employees have been found subject to an employer's

7   "control" in a variety of settings.  For example, "[w]hen an employer directs, commands or

8   restrains an employee from leaving the work place during his or her lunch hour and thus prevents

9   the employee from using the time effectively for his or her own purposes, that employee remains

10  subject to the employer's control" and must be paid.  *Bono Enterprises*, 32 Cal. App. 4th at 975.

11  Similarly, when an employee is required to sleep at the work site, he or she is subject to the

12  employer's control during sleeping hours.  *See Aguilar v. Ass'n for Retarded Citizens*, 234 Cal.

13  App. 3d 21 (Ct. App. 1991).  Likewise, when an employer required his employees to: "1) arrive

14  at 7:00 a.m. for a morning briefing; 2) drive to the storage unit to pick up the requisite tools; and

15  3) return the tools to the storage unit at the end of the day," that time is compensable.  *Pantoja v.

16  Brent, No.* 2014 WL 726655, at *3 (Cal. Ct. App. Feb. 25, 2014); *see also Ridgeway v. Wal-Mart

17  Stores, Inc.*, 2015 WL 3451966, at *8 (N.D. Cal., May 28, 2015) (truck drivers subject to

18  employer's control where policy manual required layovers to be taken in tractor cabs.)

19        Employees have also been found subject employer "control" during security screenings

20  like those mandated by Apple here.  For example, as the Court observed in *Cervantez*, 618 F.

21  Supp. 2d at 1218:

22        Plaintiffs have no choice about when to arrive at the security line at the end of the
    shift.  Like the plaintiffs in *Morillon,* Plaintiffs are under the control of their

23        employers while in the security line at the end of the shift: they cannot choose to
    leave the premises without going through the line, nor can they choose to run a

24        personal errand before going through the line.

25        The Court in *Cervantez* was also unpersuaded by the fact that employees could engage in

26  certain activities before they left the facility and participated in a screening, such as going to the

27  restroom, picking up lunch and socializing with co-workers:

28

> According to Celestica, the confines of a factory building allow the class members to engage in many more activities than would a moving shuttle, as in *Morillion*. This slight difference where the employees are confined is unimportant; Defendants confine their employees to the Celestica facility and their activities are restricted as a result. In other words, the class members are under the control of their employer during this post-shift period.

*Cervantez*, 618 F. Supp. 2d at 1219.

Only when employees can freely choose whether or not to engage in an activity (that is, the activity is not required, and, instead, is offered for the employee's convenience), are they not subject to the employer's control.  For example, in *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 269, 271 (2006) ("*Overton*"), employees were free to choose whether to take a shuttle to the resort or go to the resort directly; in other words, employees were not "required" to take the shuttle, which was offered to employees as a convenience.  Similarly, in *Amalgamated Transit Union Local 1589 v. Long Beach Public Transportation Co.*, 2009 WL 1277735, at *3, 4 (Cal. Ct. App. May 11, 2009), bus drivers were free to take their own transportation from the end point of their routes; thus, there was no activity required by the employer.  Likewise, in *Watterson v. Garfield Beach CVS LLC*, 2015 WL 4760461, at *3 (N.D. Cal., Aug. 12, 2015), an employee was not subject to her employer's control for time spent participating in a health screening because the "Defendant did not force Plaintiff to enroll in the Plan"; *i.e.*, the activity was not required.

## 2.     <u>"Suffered Or Permitted To Work"</u>

The words "suffer" and "permit" mean "with the knowledge of the employer."  *Morillion*, 22 Cal. 4th at 585.  Thus, "an employer who knows or should have known that an employee is or was working overtime" must compensate the employee, even if the work is not required (*id.*); indeed, this prong of Wage Order No. 4, by its express terms, <u>eliminates</u> a need to show the activity was "required."

As the Court observed in *Sullivan v. Kelly Services, Inc.*, 2009 WL 3353300, at *6 (N.D. Cal., Oct. 16, 2009), "an employee is 'suffered or permitted to work' when the employer knows or should know that the work is being performed."  As a result, "[u]nauthorized and unrequested work may be compensable under this definition."  *Id.* (holding that employer "suffered or permitted" employees to work when it knew employees were devoting time to interviews with

1  prospective employers.); *see also Betancourt v. Advantage Human Resourcing, Inc.*, 2014 WL

2  4365074 at *5 ("For the purposes of this definition of employment, Advantage cannot dispute

3  that it knew Betancourt would interview with UTL -- Advantage arranged the interview.")

4  Moreover, the "concept of benefit is neither a necessary nor a sufficient condition for liability

5  under the "suffer or permit' standard." *Martinez v. Combs*, 49 Cal. 4th 35, 70 (2010).

**POINT III**

**THE CHECKS ARE COMPENSABLE UNDER
WAGE ORDER NO. 4 AS A MATTER OF LAW**

The record in this case demonstrates that, as a matter of law, the time Apple Employees

spend in Checks is "work" under <u>both</u> prongs of Wage Order 4.  Accordingly, the Court should

grant summary judgment in Plaintiffs' favor on the issue of liability in connection with the claims

asserted in the Consolidated Amended Complaint.

The undisputed facts are as follows:

- **The Checks Are Mandatory**. Apple has a mandatory policy requiring Apple
  Employees to have their bags and Apple technology checked when they leave a store.
  Shalov Decl. Ex. 2.  In addition, Apple Employees do not have the right to choose
  whether to comply with the Check Policy. Shalov Decl. Ex. 53.[4]

- **Apple Employees Are Subject To Discipline**. Apple Employees are subject to
  discipline if they do not comply with the Check Policy.   Apple makes clear in its
  policy documents that disciplinary measures, including termination, may be imposed
  if the Check Policy is not complied with. Shalov Decl. Ex. 2. The record also shows
  that Apple Employees have, in fact, been disciplined for not complying with the
  Check Policy.  *See* Shalov Decl. Exs. 50-53.

- **The Checks Are For Apple's Benefit And Not The Convenience of Apple
  Employees**. The Check Policy is designed to reduce employee theft at Apple Stores,
  and, therefore, is solely for Apple's benefit.  *See* Shalov Decl. Ex. 118 at 29; *See also*

---

[4]     *See also* Shalov Decl. Ex. 54 (identifying the Personal Technology Card policy as one of
several "important Apple policies," and that "as an Apple employee, you are obligated to follow
ALL Apple policies…" [emphasis in original]).

9

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

Shalov Decl. Ex. 118 at 55 (Acknowledging that bag checks "potentially" benefit Apple because "having a policy of a bag check is a deterrent..."); Shalov Decl. Ex. 21 at 20 (bag check policy "ensure[s] that no product that hasn't been purchased by the employee is taken."). Moreover, the Check Policy provides no benefit to Apple Employees and is <u>not</u> an activity that conveniences them in any way.

- **Apple Employees Cannot Use The Time They Spend In Checks Effectively For Their Own Purposes**. Apple Employees cannot use the time they spend in Checks effectively for their own purposes. In particular, Apple Employees may not leave a store until a Check is conducted, and, therefore, are confined by Apple to a particular geographic location when complying with the Check Policy. *See e.g.* Shalov Decl. Ex. 16, ¶ 6; Ex. 17, ¶ 5; Ex. 18, ¶ 3; Ex. 20, ¶ 6; Ex. 25; ¶ 3; Ex. 58, ¶4; Ex. 68, ¶ 8; Ex. 81, ¶ 4. Thus, for example, an Apple Employee cannot leave the store to run errands, get food or engage in other personal activities outside the store until a Check is conducted.

- **Apple Knows Or Should Know That Apple Employees Go Through Checks**. Apple knows, or should know, that Apple Employees go through Checks at Apple Stores. In this regard, Apple: (i) created the Check Policy (*See* Shalov Decl. Ex. 2); (ii) has received complaints about Checks (*See* Shalov Decl. Exs. 73-77); and (iii) acknowledged in discovery that Apple Employees go through Checks and that every Apple Store has conducted Checks. *See* Shalov Decl. Exs. 55-56.

- **Apple Determines All Aspects Of The Checks**. Apple determines all aspects of the Checks and the Check Policy. In particular, Apple: (i) instructs Store Managers about the procedures for conducting Checks (*See* Shalov Decl. Exs. 36-46, Ex. 64); (ii) decides whether Apple Employees should be disciplined for not complying with the Check Policy (*See* Shalov Decl. Ex. 2, Exs. 50-53); (iii) issues technology cards for Apple Employees to identify their Apple products (*See* Shalov Decl. Ex. 2); and (iv) prepares training manuals for Apple Employees that describe the Check Policy and other Apple policies. *See* Shalov Decl. Ex. 2, *see also* Exs. 36-46, Ex. 64.

1    Based on these undisputed facts, the time Apple Employees spend in Checks is

2 compensable "work" under Wage Order No. 4.  First, Apple Employees are subject to Apple's

3 "control" when they go through Checks.  In this regard, the record shows that: (i) Apple's Check

4 Policy is mandatory; (ii) Apple Employees are confined to Apple Stores when the Checks are

5 conducted and may not engage in personal activities outside the stores until they submit to

6 Checks; (iii) Apple determines all aspects of the Check Policy including, "when, where and how"

7 Checks are conducted; (iv) the Checks are exclusively for Apple's benefit and not for the

8 convenience of Apple Employees; and (v) Apple has the right to and does discipline Apple

9 Employees who do not comply with the Check Policy.  Thus, all the indicia of "control" are

10 present for purposes of establishing Apple's liability under Wage Order No. 4 in that Apple

11 "directs, commands, [and] restrains" Apple Employees while they are undergoing Checks and

12 controls all aspects of the Check Policy.  *Morillion*, 22 Cal. 4th at 583, 584; *see also Bono*

13 *Enterprises*, 32 Cal. App. 4th at 975 ("[w]hen an employer directs, commands or restrains an

14 employee from leaving the work place during his or her lunch hour and thus prevents the

15 employee from using the time effectively for his or her own purposes, the employee remains

16 subject to the employer's control.")

17    In addition to Apple's "control" over Apple Employees, the record shows that Apple

18 "suffers" and "permits" Apple Employees to work when they go through Checks.  Specifically,

19 Apple knows, or should know, that Apple Employees spend time going through Checks, which

20 are mandated by Apple and solely for its benefit.   As such, Apple is liable as a matter of law

21 under Wage Order No. 4 to compensate Apple Employees for the time they spend going through

22 Checks.

23    Importantly, these findings are warranted even if Apple does not "require" Apple

24 Employees to bring bags and Apple technology to Apple Stores.  In assessing liability under the

25 "control" standard, the California Supreme Court has clearly held that it is "[t]he level of the

26 employer's control over its employees, rather than the mere fact that the employer requires the

27 employee's activity, [that] is determinative."  *Morillion*, 22 Cal. 4th at 587.   Here, the record

28 shows that Apple Employees are confined by Apple to its stores when they go through Checks

1   and may not leave the premises until the Checks are finished; thus, Apple's "control" over Apple

2   Employees during the Check process is absolute and complete, <u>whether or not Apple "requires"</u>

3   <u>Apple Employees to bring bags to work</u>.  *See Rutti v. Lojack Corp*., 596 F.3d 1046, 1062 (9th Cir.

4   2010) ("Here, the level is total control.")

5       Similarly, under the "suffer" or "permit" standard, liability is imposed on an employer for

6   "the time the employee is suffered or permitted to work, <u>whether or not required to do so</u>."  *See*

7   Wage Order No. 4 (emphasis added).  Indeed, by the express language of the Wage Order, the

8   fact that Apple may not "require" Apple Employees to bring bags and technology to work is

9   irrelevant for purposes of finding that Apple Employees are engaging in compensable "work"

10  when undergoing Checks.

11      Moreover, even if it were an element of Wage Order No. 4, the record shows that Checks

12  <u>are</u> "required" by Apple.  As the language of the Check Policy makes clear, "all" employees

13  "must" submit to bag and technology checks "every" time they leave an Apple store.  Shalov

14  Decl. Ex. 2.  Thus, there is no dispute that Checks are a "required" activity that Apple Employees

15  must comply with <u>not</u> because they want to or because they are a convenience offered by Apple

16  to its employees, but because they are mandatory activity required by their employer.

17      In addition, the authorities Apple previously relied on in support of its first motion for

18  summary judgment -- and other authorities where activities were found not to constitute "work" -

19  - are factually inapposite to the Checks at issue here.  Virtually all of those decisions were

20  commuting cases where the employer offered transportation to employees as a convenience and

21  no activity was "required" by the employer (*see Overton*, 136 Cal. App. 4th at 271), or the

22  employee was able to use a vehicle he was given in any manner he or she saw fit, including when

23  to leave home and how to travel to a work site.[5]   Not only are these cases factually

24  distinguishable, but, as discussed above, commuting is examined differently than other activities

25  because commuting time is ordinarily not compensable.  *See* supra, pg. 7; *see also Alcantar v.*

---

26  [5]    *See Stevens v. GCS Service, Inc*., 281 Fed. Appx. 670, 672 (9th Cir. 2008); *Amalgamated*

27  *Transit Union v. Long Beach Public Transportation*, 2009 WL 1277735, at *4 (Cal. Ct. App.
     May 11, 2009); *Woodruff v. County of San Diego In-Home Supportive*, 2014 WL 2861431, at

28  *25 (Cal. Ct. App. June 24, 2014); and *Novoa v. Charter Communications, LLC*, 2015 WL
     1879631, at *7 (E.D. Cal. Apr. 22, 2015).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

*Hobart Serv.*, 2015 WL 5155449, at \*5 (9th Cir. Sept. 3, 2015) ("An employee's commute is not typically compensable under California labor law, even 'when the employee commutes in a vehicle that is owned, leased, or subsidized by the employer.'" (citation omitted).

The commuting cases, therefore -- where the mandatory nature of the commute is relevant in finding "control" -- are not analogous to the Checks at issue here where Apple Employees are restrained from leaving the premises until Checks are completed.   The cases that <u>are</u> analogous, in contrast, are those where employees are restrained by their employer from leaving the premises for meal breaks (*Bono Enterprises*); directed to stay in tractor cabs during layovers (*Ridgeway*); and subject to security screenings before they may leave the premises (*Cervantez*). These are the hallmarks of "control" that apply with equal force to the Checks Apple Employees must submit to here before they are permitted to leave their stores.

Finally, Apple's assertion in its first motion for summary judgment that Apple Employees may "choose" to avoid Checks by not bringing bags or Apple technology to work is irrelevant in assessing whether time spent in Checks is compensable under Wage Order No. 4.  No court has ever held that an employee, in addition to showing he was subject to the employer's "control" or was "suffered" or "permitted" to work, must prove there was no way to avoid the challenged activity.  Were this the law (and it is not), employers could refuse to compensate employees for virtually every type of work they perform on their employer's behalf.  The employees in *Morillion*, for example, could theoretically "choose" to avoid taking buses to work in the morning by sleeping at their employer's work sites.  The employees in *Cervantez* could theoretically "choose" to avoid submitting to security screenings by not wearing clothes to work. And the employees in *Ridgeway* could theoretically "choose" to avoid staying in their tractor cabs during layovers by spending their layovers at home.  Plainly, the purported "choice" that Apple argues employees may exercise to avoid going through Checks is a false and illusory one that Courts in California do not recognize as a basis for employers to deny compensation to workers who are subject to their control or suffered or permitted to work.

1

## CONCLUSION

2          For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant

3   summary judgment in their favor on the issue of liability, together with such other and further

4   relief as the Court deems just and proper.

5   Dated: October 1, 2015

6

7                                              By: ___/s/_____
                                               Lee S. Shalov (Admitted *Pro Hac Vice*)
                                               Brett Gallaway (Admitted *Pro Hac Vice*)
8                                              MCLAUGHLIN & STERN, LLP
                                               260 Madison Avenue
9                                              New York, NY  10016
                                               Telephone: (212) 448-1100
10                                             Facsimile: (212) 448-0066
                                               Email: lshalov@mclaughlinstern.com
11                                             bgallaway@mclaughlinstern.com

12                                             Kimberly A. Kralowec (SBN 163158)
                                               Kathleen Styles Rogers (SBN 122853)
13                                             Chad A. Saunders (SBN 257810)
                                               THE KRALOWEC LAW GROUP
14                                             188 The Embarcadero #800
                                               San Francisco, CA  94105
15                                             Telephone: (415) 546-6800
                                               Facsimile: (415) 546-6801
16                                             kkralowec@kraloweclaw.com
                                               krogers@kraloweclaw.com
17                                             csaunders@kraloweclaw.com

18                                             *Attorneys for Plaintiffs and the California Class*

19

20

21

22

23

24

25

26

27

28