IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWNLING, DEBRA SPEICHER, and TAYLOR KALIN, on behalf of themselves and all others similarly situated,

    Plaintiffs,

  v.

APPLE INC.,

    Defendant.

No. C 13-03451 WHA (lead)
No. C 13-03775 WHA (consolidated)
No. C 13-04727 WHA (consolidated)

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this wage-and-hour class action, both sides move for summary judgment. For the reasons stated below and to the extent stated below, defendant's motion is **GRANTED**, and plaintiffs' motion is **DENIED**.

## STATEMENT

Named plaintiffs represent a certified class that has been defined to include "current or former hourly-paid and non-exempt employee[s] of Apple Inc. who worked at one or more Apple California retail stores from July 25, 2009 to the present."[1] Plaintiffs seek compensation for time spent undergoing exit searches pursuant to Apple's bag-search and technology-card search policies and for time spent waiting for such searches to occur. These searches occurred

---

[1] Although Amanda Frlekin still appears in the caption of this case, she withdrew as a class representative but remained a party (Dkt. No. 287).

when employees left the premises with a bag, purse, backpack, or briefcase, or with an Apple product, such as an iPhone. Apple searched them to see if Apple goods were being pilfered. The issue is whether the time spent waiting for the exit searches to be completed deserved compensation under California law.

Concerned with internal theft of its products, Apple implemented a written policy called the "Employee Package and Bag Searches" policy, which imposed mandatory searches of employees' bags, purses, backpacks or briefcases, whenever they left the store (Shalov Decl., Exh. 2):

> **Employee Package and Bag Searches**
>
> All personal packages and bags must be checked by a manager or security before leaving the store.
>
> **General Overview**
>
> All employees, including managers and Market Support employees, are subject to personal package and bag searches.
>
> Personal technology must be verified against your Personal Technology Card (see section in this document) during all bag searches.
>
> Failure to comply with this policy may lead to disciplinary action, up to and including termination.
>
> **Do**
>
> • Find a Manager or member of the security team (where applicable) to search your bags and packages before leaving the store.
>
> **Do Not**
>
> • Do not leave the store prior to having your personal package or back [sic] searched by a member of management or the security team (where applicable).
>
> • Do not have personal packages shipped to the store. In the event that a personal package is in the store, for any reason, a member of management or security (where applicable) must search that package prior to it leaving the store premises.

Employees' "Personal Technology Cards" listed the serial numbers of their personal Apple devices, which served as proof that the employees owned the devices listed when those

1  devices were searched under the policy.  Apple also published guidelines for conducting
2  searches pursuant to the policy (*e.g.*, *id.*, Exh. 64):

3   • Ask the employee to open every bag, brief case, back pack, purse, etc.

5   • Ask the employee to remove any type of item that Apple may sell.  Be sure to verify the serial number of the employee's personal technology against the personal technology log.

7   • Visually inspect the inside of the bag and view its contents.

8   • Be sure to ask the employee to unzip zippers and compartments so you can inspect the entire contents of the bag.  If there are bags within a bag, such as a cosmetics case, be sure to ask the employee to open these bags as well.

11  • At no time should you remove any items inside the bag or touch the employee's personal belongings.  If something looks questionable, ask the employee to move or remove items from the bag so that the bag check can be completed.

13  • In the event that a questionable item is found, ask the employee to remove the item from the bag.  Apple will reserve the right to hold onto the questioned item until it can be verified as employee owned.  (This will make the employee more aware to log in all items at start of shift.)

16  • If item cannot be verified by [the manager on duty], contact Loss Prevention . . . .

18  Each of Apple's 52 stores in California performed searches pursuant to the bag-search
19  policy at some point throughout the class period.  In stores where the manager on duty conducted
20  searches, some employees say they had to scour the store to find a manager and wait until that
21  manager finished with other duties, such as assisting a customer.  Where security guards
22  performed the searches, some employees had to wait until a security guard became available.
23  Additionally, some employees had to wait in line if multiple employees sought to leave the store
24  at the same time, such as at the end of a shift.
25  Employee time-keeping systems were generally kept within the store, so employees had
26  to clock out *prior* to undergoing a search, and their recorded hours worked did not account for
27  the time waiting for a search to be completed.  Accordingly, as a rule, employees received no
28  compensation for the time involved in the searches.

These now-consolidated actions commenced in July 2013 and included collective-action claims under the Fair Labor Standards Act and class-action claims under various states' labor laws, including California's, based on the theory that time spent waiting for bag searches to be completed was compensable. In April 2014, Apple moved for summary judgment against all individually-named plaintiffs for all claims. Summary judgment as to plaintiffs' California state-law claims was denied in light of varying fact patterns regarding the duration of wait times and individualized reasons for bringing a bag to work.

The non-California claims were stayed and ultimately dismissed following the Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. __, 135 S. Ct. 513, 518 (2014), which held that time spent during mandatory security screenings was not compensable under the FLSA. Because the other state law claims all mirrored the FLSA, only plaintiffs' California claims remained. This Court then retained supplemental jurisdiction over the remaining California state-law claims.

In June 2015, named plaintiffs moved to certify the class for the adjudication of particular issues pursuant to Rule 23(c)(4). In order to limit the issues regarding plaintiffs' individualized reasons for bringing bags to work, counsel for plaintiffs agreed to reduce the theory of liability to the main issue, namely, whether Apple had to pay plaintiffs for standing in line without regard to the reason they brought the bag. The parties submitted two rounds of supplemental briefing on that issue. An order certified the class to adjudicate whether or not Apple had to compensate its employees for time spent waiting for bag searches to be completed "based on the most common scenario, that is, an employee who voluntarily brought a bag to work purely for personal convenience" (Dkt. No. 297 at 10). That order (and the class notice) invited members of the class with special needs to bring a bag to work to intervene in the action (or to opt out if they prefer). The deadline to opt-out or to intervene has passed. No class members intervened, so there is no special-need scenario in play. Thus, this order binds all "current or former hourly-paid and non-exempt employee[s] of Apple Inc. who worked at one or more Apple California retail stores from July 25, 2009 to the present," who have not timely opted out.

4

1  The order certifying the class also gave both sides a second opportunity to move for
2  summary judgment. Both sides have now moved for summary judgment. This order follows full
3  briefing and oral argument.

**ANALYSIS**

Wage Order 4 requires employers to pay employees a minimum wage for "all hours worked in the payroll period." Subdivision 2(K) of Wage Order 4 defines "hours worked" as "the time during which an employer is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."[2] The California Supreme Court has held that the two phrases — "subject to the control of an employer" and "time the employee is suffered or permitted to work" — are "independent factors, each of which defines whether certain time spent is compensable as 'hours worked.'" *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 582 (2000). Plaintiffs contend that time spent waiting for and undergoing searches constituted "hours worked" under either prong of the definition.

1. **"SUBJECT TO THE CONTROL OF AN EMPLOYER."**

The control theory of liability requires proving two elements. The first is that the employer restrains the employee's action during the activity in question. The second is that the employee has no plausible way to avoid the activity; put differently, the activity must be mandatory and not optional at the discretion of the worker. Here, the first element is met, namely control, for once the worker wishes to leave with a bag, the worker is restricted and must stand in line for the security screening. The second element, however, is not met, for the Apple worker can choose not to bring to work any bag or other items subject to the search rule. There is no decision on point, so this order will now lay out the decisional law.

A.  *Morillion*, *Overton*, and *Alcantar*.

In *Morillion*, 22 Cal. 4th at 586–87, the California Supreme Court considered whether employees must be compensated for time spent riding an employer-provided bus to the fields where they worked. The employer required the employees to ride the bus to the fields. In other

---

[2] Apple contends that plaintiffs' claims are governed by Wage Order 7, which applies to employees in mercantile industries, rather than professional and technical industries, not Wage Order 4. Both orders include the same definition of "hours worked," so this order need not address which applies.

5

words, employees could not drive their own cars or otherwise provide their own means of transportation to the fields. In determining that the employees must be compensated, the California Supreme Court focused on "the level of the employer's control over its employees, rather than the mere fact that the employer require[d] the employees' activity . . . ." *Ibid.* Specifically, the employer had to compensate its employees for time on the bus not only because it required them to take that bus to the fields, but also because the employees could not do personal errands while on the bus (although they could read or sleep). *Morillion* specifically distinguished the facts in *Vega v. Casper*, 36 F.3d 417 (5th Cir. 1994) (in which time on an employer-provided bus was *not* compensable), because "the *Vega* employees were free to choose — rather than required — to ride their employer's buses to and from work . . . ." *Morillion*, 22 Cal. 4th at 589 n.5.

By contrast, *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 272 (2006), held that an employer did not need to compensate its employee for time on an employer-provided shuttle bus from an off-site parking lot to the employee entrance to Disneyland (where he worked). That was because the employee could use alternative forms of transportation, such as walking or biking the one-mile distance from the off-site parking lot, being dropped off at the employee entrance by a friend, or taking a vanpool (which would have been permitted to park in a closer lot), instead of riding the employer-provided shuttle. *Overton* also rejected the employee's argument that "as a practical matter, [he was] required to use an employer-provided shuttle because no alternative transportation [was] available or feasible." *Ibid.*

Finally, in *Alcantar v. Hobart Service*, 800 F.3d 1047 (9th Cir. 2015) — decided after our plaintiffs won class certification — an employee sought compensation for time spent driving an employer-provided truck to and from home, claiming he was subject to the employer's control within the definition of "hours worked" because he could not attend to personal errands while driving that vehicle. The district court granted summary judgment for the employer because it did not require the employee commute in his employer's vehicle. He could freely choose to drive his own vehicle to his employer's facility at the start of his shift. Our court of appeals reversed because there was a genuine dispute of fact as to whether there existed a *de facto* requirement that employees commute in their employer's vehicle. Specifically, the employer

6

provided insufficient space to securely store the vehicle at its facility and held employees liable for the loss of any of the equipment kept in those vehicles.  Thus, two elements had to be proven to satisfy the "control" prong of the definition of "hours worked" — actual control and required activity:

> Therefore, to prevail at trial [the employee] must prove not only that [the employer's] restrictions on him during his commute in [the employer's] vehicle are such that he [was] under [his employer's] control, but also that, despite [the employer's] profession that use of its vehicles is voluntary, employees are, as a practical matter, required to commute in [the employer's] vehicles.

*Id.* at 1054–55.

To repeat, *Morillion*, 22 Cal. 4th at 586–87, held, "the level of the employer's control over its employees, rather than the mere fact that the employer require[d] the employees' activity, is determinative," and found "the fact that the *Vega* employees were free to choose — rather than required — to ride their employer's buses to and from work, a dispositive, distinguishing fact."  *Overton*, 136 Cal. App. 4th at 267, held, "the key factor is whether Disney *required* its employees" to take the shuttle.  *Alcantar*, 800 F.3d at 1054–55, held that to prevail at trial, the employee must prove both that his employer subjected him to restrictions while he drove the employer's vehicle, *and* that he was required to commute in that vehicle.  These three decisions plainly demonstrate that the mandatory nature of an activity is one of two necessary elements of the "control" prong of the definition of "hours worked," along with the actual scope of control exercised by the employer.

Rather than prohibiting employees from bringing bags and personal Apple devices into the store altogether, Apple took a milder approach to theft prevention and offered its employees the option to bring bags and personal Apple devices into a store subject to the condition that such items must be searched when the leave the store.  Apple argues that *Overton* directly applies here because the class is limited to the scenario of bags brought purely for personal convenience, so plaintiffs could freely choose to avoid the Apple's control during the searches by declining to bring a bag.  Further, although class members were invited to intervene to litigate their special needs, if any, to bring a bag, no motions to intervene were filed, so this is not a case with an "illusory" choice, as in *Alcantar*.

7

### B. Applying *Morillion*, *Overton*, and *Alcantar*.

Notwithstanding the two-element test made clear in the holdings of *Morillion*, *Overton*, and *Alcantar*, plaintiffs contend that an employee's freedom to avoid an activity is just one of five factors, none of which is dispositive, that courts consider when evaluating the "control" prong of the definition of "hours worked," along with whether employees could use the time freely, whether the employer determined when, where, and how the employer performed the activity, whether the activity benefitted the employer, and whether the employees could be subject to discipline if they failed to comply with the policy (when applicable). No decision, however, has ever set forth the five-factor test proposed by counsel. Contrary to plaintiffs, employee choice as a dispositive element has not been limited to cases involving commuting and optional affirmative benefits.

#### (1) *Employee Choice is Dispositive.*

Plaintiffs argue that the focus on employee choice as a necessary element of employer "control" is misguided. They cite *Mendiola v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833, 841 (2015), as an example of a decision that focused solely on the scope of the employer's control without even considering whether the activity was mandatory. There, a class of security guards sought compensation for the time they spent on call, during which they could attend to personal activities, such as sleeping, eating, or watching television in a residential trailer on-site, although their employer required them to respond immediately to any calls from their dispatcher. That decision considered a number of factors, including the fact that on-call time benefitted the employer, to determine that the time was compensable.

Plaintiffs are correct that *Mendiola* did not focus on the mandatory nature of the activity. But the issue there was not whether the employer required the plaintiffs to be on call — that was a forgone conclusion. *Id.* at 843. The issue was whether the constraint to the employer's premises constituted *actual* control despite a liberal scope of freedom employees enjoyed while on call.

Plaintiffs also cite *Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-5221, 2015 WL 3451966 (N.D. Cal. May 28, 2015) (Judge Susan Illston), for the position that employee choice is not dispositive. There, a class of truck drivers sought to be paid minimum wages for the time spent

8

during layovers, which were breaks from work mandated by the Department of Transportation. (The employer had been paying a lower wage for that time.)  Drivers could only take their layovers in their tractor-cabs (and they could not be compensated, even at the lower rate, for any layovers taken at home without authorization). *Ridgeway* held that the employer had to pay its drivers minimum wage during layovers because the employer constrained the employees to specific locations during layovers.

Plaintiffs contend that *Ridgeway* found "control" within the definition of "hours worked" even though the employees could avoid their employer's restrictions by taking their layovers at home. Not so. *Ridgeway* specifically held that "drivers were *required* to take layovers in 'designated places' and were *prohibited* from taking layovers at their own homes." *Id.* at *8. That was because the employer in *Ridgeway* penalized employees that took layovers at home without authorization by denying them wages (even at the below-minimum wage rate).  Here, our plaintiffs did not face any penalties if they elected to leave their bags at home. *Ridgeway* is inapposite.

In *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 975 (1995), employees sought compensation for time during their lunch breaks because their employer required them to stay at their work site during that break.  Plaintiffs contend that *Bono* found that time compensable under the "control" prong solely because the employer confined the employees to the premises.   But plainly the rule was a required one.  Employees had to obey.  Lunch breaks, by law, must allow departure from the premises.  By taking away the freedom to leave the premises, the employer imposed a mandatory requirement.  That remained self-evident. What needed to be litigated was whether that restraint, despite the freedom to roam the premises and use the time for personal matters, satisfied the element of *actual* control. *Bono* held that it did.

Plaintiffs also point to *Sullivan v. Kelly Services, Inc.*, No. 08-3893, 2009 WL 3353300 (N.D. Cal., Oct. 16, 2009) (Judge Claudia Wilken), and *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-1788, 2014 WL 4365074 (N.D. Cal. Sept. 3, 2014) (Judge Jon S. Tigar), both of which involved employees of temporary staffing agencies who sought compensation for time they spent interviewing with clients of their respective agencies. Those

9

decisions held the interview time compensable under the "control" prong (as well as under the "suffered or permitted" prong, discussed in more detail below) in part because both agencies arranged the interviews, prepared the employees for those interviews, and the interviews were the "lifeblood" of the agency's business.

Although neither *Betancourt* nor *Sullivan* directly held the mandatory nature of the interviews dispositive, *both* explicitly described the interviews as required. *Betancourt* noted that the plaintiff had alleged that by performing interviews, he was "performing a task — interviewing with [his employer's] client — that his employer required." *Id.* at \*7. *Sullivan*, 2009 WL 3353300, at \*4, also explicitly rejected the employer's argument that participation in interviews was "voluntary" (and therefore not compensable) because an employee that refused to attend an interview would foreclose fifty percent of the work opportunities available. Both decisions explicitly found that the employers *did* require the interviews. By contrast, there is no requirement here, our plaintiffs are limited to arguing for compensation based on the scenario that they freely brought bags for personal convenience and could therefore avoid Apple's control during exit searches. Thus, neither *Sullivan* nor *Betancourt* compels plaintiffs' argument.

Plaintiffs cite *Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208 (C.D. Cal. 2009) (Judge Virginia A. Phillips), which addressed security screenings to which *all* employees had to submit (akin to screenings at an airport). They contend that those employees could theoretically "choose" to avoid mandatory security screenings by going to work naked, yet that time was held compensable under the "control" prong. Similarly, they argue that the employees in *Morillion* could theoretically "choose" to avoid time on their employer's bus by sleeping overnight in the fields. Notwithstanding the absurdity of these proffered scenarios, *Alcantar*, 800 F.3d at 1050, held that an employer cannot avoid compensation for activities on which it imposed restrictions by offering an "illusory" choice to avoid that activity (as opposed to a genuine one), which would plainly address those scenarios. Moreover, *Cervantez* specifically held that employee choice was a key distinction between the compensable travel time in *Morillion* and the non-compensable travel time in *Vega*:

> Applying *Vega* here, the distinguishing factor is obvious: employee choice. The *Vega* plaintiffs had the choice of whether or not to use the employer's transportation, even if the choice was not reasonable for some employees, given their individual circumstances. By contrast, plaintiffs here have no choice; instead, they must submit to security screening and ensuing delay before every shift. As such, *Vega* is distinguishable factually.

*Id.* at 1216.

Again, there is no dispute as to the genuine nature of our plaintiffs' freedom to choose to avoid searches. It is undisputed that some employees did not bring bags to work and thereby did not have to be searched when they left the store. Moreover, the class limited itself to pursuing its theory of liability based on the most common scenario of an employee voluntarily bringing a bag purely for personal convenience. There was nothing illusory about our plaintiffs' choice. The class notice invited employees to intervene to assert claims based on any special-need scenario that might have made the choice to bring a bag or not illusory. No class members did so. Thus, plaintiffs have failed to demonstrate the "required" prong.

At oral argument, counsel for plaintiffs suggested that under Apple's proffered interpretation of control, an employer could establish a policy that required all employees who wore red hats to clean the bathrooms for free. Not so. Although that work would not be compensable under the "control" prong because an employee could avoid the janitorial work by choosing not to wear a red hat, it would be compensable under the "suffered or permitted to work" prong, as discussed in more detail below.

### *(2)   Commuting and Optional, Affirmative Benefits.*

Plaintiffs assert that employee choice has been dispositive only in cases involving commutes, although no decision has ever drawn that distinction. Alternatively, plaintiffs argue that employee choice has been dispositive only in cases involving optional benefits, like a health plan.

In addition to *Morillion*, *Overton*, and *Alcantar*, which all involved commutes, plaintiffs cite a series of decisions that evaluated whether an employee must be compensated for time spent commuting to and from home in an employer-provided vehicle. In cases where the employers *required* their employees to use the employer-provided vehicles and *prohibited* the employee from performing personal activities in that vehicle, the employers had to compensate

11

their employees. *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1061–62 (9th Cir. 2010); *Pantoja v. Brent*, No. A137291, 2014 WL 726655, at *3 (Cal. Ct. App. Feb. 25, 2014); *see also Alcantar*, 800 F.3d at 1054 (remanding for trial on *de facto* requirement). Even if the employer required the employee to commute in the employer-provided vehicle, the commute time was held *not* compensable under the "control" prong, however, if the employer had unrestricted use of the vehicle for his own purposes during the commute. *Stevens v. GCS Service, Inc.*, 281 Fed. Appx. 670, 672 (9th Cir. 2009).

By contrast, *Amalgamated Transit Union Local 1589 v. Long Beach Public Trans. Co.*, No. B205440, 2009 WL 1277735 (Cal. Ct. App. May 11, 2009), denied a claim by a union of bus drivers for compensation for the time drivers spent traveling from the end points of their routes back to their start points, which the drivers could do on the bus free of charge. The employer did not require drivers to return to their start points, and the drivers had a "realistic possibility" of finding alternative means of commuting, such as having a friend pick them up at the end point. Accordingly, the plaintiffs could not be compensated for their commutes under the "control" prong.

Most recently, in *Novoa v. Charter Communications, LLC*, No. 13-1302, 2015 WL 1879631, at *6 (E.D. Cal. Apr. 22, 2015) (Judge Anthony W. Ishii), an employee sought compensation for the time he spent commuting to and from his home in the service van he drove to customers' homes. The employee contended that he deserved compensation under the "control" prong due to the restrictions imposed on his use of the vehicle. The employer's vehicle-use policy prohibited the employee from attending to personal errands, using his personal telephone, or listening to the radio above a certain volume while driving the service van. Additionally, the employee had to wear his uniform whenever he drove the service vehicle. The employer gave the plaintiff the option to start his workday from home (thereby commuting to and from home in his service van), or to store his service van at the employer's facility overnight and commute to that facility in his personal vehicle. The employer won summary judgment because the employer did not require the plaintiff to start his shift in the service van at home, so he could freely avoid his employer's restrictions during his commute. *Id.* at *7. The decision held that although decisions such as *Morillion* "focused on employer control, [they]

12

1  gave heightened consideration to the fact that employer transportation was mandatory." *Id.*
2  at *6. That factor was dispositive in *Novoa*, notwithstanding the scope of the employer's
3  restrictions on the employee's use of the service van.

4  Plaintiffs argue that *Novoa* stands for the proposition that the "heightened consideration"
5  given to employee choice in *Morillion* and subsequent decisions must be limited to cases in
6  which employees seek compensation for *commuting* time, not for other categories of activities.
7  Not so. *Novoa* noted the heightened consideration given to the *mandatory* nature of the activity,
8  not to the fact that the activity involved commuting. No decision has drawn the distinction
9  plaintiffs propose.

10  Contrary to plaintiffs, employee choice has been a dispositive factor in decisions
11  evaluating the compensability of non-commute activities, as now discussed. As stated,
12  *Cervantez*, 618 F. Supp. 2d 1208, distinguished its compensable mandatory security screenings
13  from non-compensable travel time in *Vega* on the grounds of employee choice.

14  Conversely, employee choice proved fatal to a plaintiff's claim for compensation in
15  *Watterson v. Garfield Beach CVS LLC*, No. 14-01721, 2015 WL 4760461, at *4 (N.D. Cal.
16  Aug. 12, 2015) (Judge Haywood G. Gilliam, Jr.), *appeal filed*, No. 15-16623 (9th Cir.
17  Aug. 17, 2014). There, the plaintiff was an employee at a retail store who voluntarily enrolled
18  in her employer's group medical insurance program. The employer required all enrollees in
19  the health plan to undergo an annual health screening, or be subject to additional premiums.
20  The plaintiff sought compensation from her employer for the time spent undergoing those tests,
21  contending she was subject to her employer's control within the definition of "hours worked"
22  because the employer dictated the specific tests to be conducted and which physicians and labs
23  the plaintiff had to visit. *Watterson* held that time was not compensable. Although the employer
24  imposed conditions on plaintiff's enrollment in the insurance plan and dictated the manner for
25  performing the health screenings, there was no dispute that enrollment in the plan was "an
26  optional benefit with strings attached," and the conditions imposed were "not at all related to [the
27  plaintiff's] day-to-day work as a clerk." That decision specifically distinguished the facts of our
28  case as presented in Apple's first motion for summary judgment (before plaintiffs agreed to limit
    their claims to the theory that all employees voluntarily brought bags to work solely for personal

13

convenience). At that stage of our case, some plaintiffs may have been *de facto* required to bring a bag to work due to special needs such as medication or disability accommodations, so there remained a dispute of fact as to whether our plaintiffs could choose to avoid bag searches at all. No such dispute existed in *Watterson*, so summary judgment was granted for the employer.

Our class has now limited itself to adjudicating liability based on the most common scenario, namely, an employee who voluntarily brought a bag to work purely for personal convenience. Additionally, although the class notice and the order certifying the class invited Apple's employees to intervene to assert claims based on special needs to bring bags to work, no one intervened. Thus, *Watterson*'s distinction from our case has fallen away. The ability to bring a bag into Apple's stores is simply an optional benefit with a string attached — the requirement to undergo searches. Just as the plaintiff in *Watterson* could have avoided the health screenings by declining to enroll in her employer's health plan, so too could our plaintiffs have avoided searches by declining to bring bags or Apple technology to work.

Plaintiffs contend that *Watterson* supports their position by asserting that our case did not involve a "purely optional benefit," though *Watterson* did. Plaintiffs misquote the decision: *Watterson* held "the Plan is a purely optional benefit provided by Defendant to its employees." *Id.* at *5. In their brief, plaintiffs write, "Watterson involved 'a purely optional benefit (health screenings) provided by Defendant to its employees'" (Pl.'s Reply at 5 n.4). On that basis, plaintiffs then argue that Apple's searches, for which Apple dictated the procedure, served its *own* purposes, namely, preventing theft, while (according to plaintiffs' quote) *Watterson* described the health screenings, for which the employer therein dictated the procedure, as a purely optional benefit. But it was the health *plan*, not the health *screenings*, that was a "purely optional benefit" to the employees. The health screenings benefitted the employer in *Watterson* (by reducing its health care costs). Plaintiffs' brief misquoted the decision by inserting the parenthetical as if Judge Gilliam had so indicated himself.

Nevertheless, plaintiffs argue that the purely optional benefit here (employees' freedom to bring bags to work for personal convenience) is distinguishable from the benefit offered in *Watterson* and the decisions it relied on because those were *affirmative* benefits offered on top of the standard provisions of a job. Indeed, in *Novoa*, *Alcantar*, and *Amalgamated Transit*, the

14

employees were offered the convenience of commuting to and from home in their service vehicles, rather than commuting in two steps, first in their own cars to their employers' facilities, then to their assignments. Similarly, in *Watterson*, the employer offered the affirmative benefit of a group health plan. Plaintiffs argue the employers offered those perquisites purely for the benefit of their employees, so activities ancillary to those benefits could not be compensable.

Plaintiffs contend the freedom to bring a bag to work is not an *affirmative* benefit, but rather a standard freedom of the job. On the other hand, Apple was concerned that its employees could pilfer merchandise in their bags or claim that they already owned any Apple products they carried out of the store. Apple could have alleviated that concern by prohibiting its employees from bringing personal bags or personal Apple devices into the store. Instead, Apple took the lesser step of giving its employees the optional benefit of bringing such items to work, which comes with the condition that they must undergo searches in a manner dictated by Apple before they exit the store.

Furthermore, the controlling decisions, *Morillion*, *Overton*, and *Alcantar*, do not call out affirmative benefits as *sui generis*. In fact, in *Overton*, the employer provided a bus to accommodate the employees that it assigned to the distant off-site parking lot. The assignment of certain employees to the off-site lot benefitted the employer (by reserving spots in the on-site lot for customers). The employer-provided bus alleviated the inconvenience to employees posed by the assignment. That is no more an affirmative benefit than our plaintiffs' freedom to bring a bag to work in light of Apple's concern for theft. Thus, plaintiffs' attempt to distinguish our facts on that basis is unavailing.

Our plaintiffs agreed to pursue compensation based only on the scenario that they freely chose to bring bags to work purely for personal convenience. Although the order certifying the class and the class notice invited class members to intervene to assert claims based on special needs scenarios, no one intervened. Thus, our plaintiffs could all freely choose not to bring bags to work, thereby avoiding Apple's restrictions during exit searches. That free choice is fatal to their claims.

Case 3:13-cv-03451-WHA   Document 339   Filed 11/07/15   Page 16 of 19

### 2. "SUFFERED OR PERMITTED TO WORK."

The definition of "hours worked" in the applicable wage order also includes "all the time the employee is suffered or permitted to work, whether or not required to do so." Thus, plaintiffs argue, even if they were not subject to Apple's control because they could choose to avoid searches, that time is still compensable under the "suffered or permitted" prong of the wage order, which explicitly does not depend on the mandatory nature of the activity.

Apple objects to plaintiffs' argument based on the "suffered or permitted to work" prong because plaintiffs addressed their class certification motion to the issue of whether or not searches were required, and they have not raised this argument prior to this motion. Plaintiffs, however, did not limit their allegations in their complaint to the "control" prong, and the class was certified to adjudicate "whether or not time spent waiting to be searched is compensable on the wage order," which implicates both prongs. Nevertheless, plaintiffs' theory of liability based on the "suffered or permitted to work" prong lacks merit, as now discussed.

The purpose of the "suffered or permitted to work" prong of the definition of "hours worked" is to impose liability when "[a] proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so." *Martinez v. Combs*, 49 Cal. 4th 35, 69 (2010). Plaintiffs attempt to use this aspect of the definition of "hours worked" as a catch-all for any activity that benefits the employer. "However, the concept of a benefit is neither a necessary nor a sufficient condition for liability under the 'suffer or permit' standard." *Id.* at 70. Again, the touchstone is the failure to prevent *work*.

In support of their theory under the "suffer or permit" standard, plaintiffs again cite *Betancourt*, 2014 WL 4365074, and *Sullivan*, 2009 WL 3353300, which addressed claims for compensation by employees of temporary staffing agencies for the time they spent interviewing for positions with their respective agencies' clients. Although typical job interviews do not constitute "hours worked," both decisions held that the interviews at issue differed from typical job interviews. Rather, in both *Betancourt* and *Sullivan*, the agencies required the plaintiff to attend these as a component of their job responsibilities, and the interviews promoted ongoing

16

1  relationships between the agency and its clients that were key to its revenue stream. Thus, the
2  interviews constituted "hours worked" under the "suffered or permitted" prong. (As discussed
3  above, the interviews *also* satisfied the "control" prong.)

4  Plaintiffs argue that time spent waiting for searches to be completed is analogous to the
5  interviews in *Betancourt* and *Sullivan* simply because Apple knew that searches occurred and the
6  searches benefitted Apple. The plaintiffs in *Betancourt* and *Sullivan* worked for the staffing
7  agency specifically for the purpose of performing those interviews and the temporary work
8  assigned as a result of them. Here, Apple's searches had no relationship to plaintiffs' job
9  responsibilities; they were peripheral activities relating to Apple's theft policies. Moreover, the
10 plaintiffs themselves did not conduct the searches, our plaintiffs passively awaited as their
11 managers or security guards conducted the searches. Plaintiffs did not *work* during that time.
12 *Betancourt* and *Sullivan* are not analogous.

13 At oral argument, counsel for plaintiffs suggested that Apple could establish a policy
14 requiring any employee who wore a red hat to clean the bathrooms without compensation. As
15 discussed above, employees would *not* be entitled to compensation under the "control" prong
16 under that circumstance because they could avoid that assignment by electing not to wear red
17 hats. Rather, that janitorial assignment would be "work" that Apple "suffered or permitted,"
18 because it constituted an active job responsibility, so it would be compensable.

19 Although decided under federal law, the Supreme Court's decision in *Integrity Staffing*
20 *Solutions, Inc. v. Busk*, 574 U.S. __, 135 S. Ct. 513 (2014), offers useful guidance on this point.
21 There, the Supreme Court noted that preliminary and postliminal activities could only be
22 compensable if they constituted "integral and indispensable" parts of the employees' job
23 responsibilities. By contrast, an employee did not deserve compensation for time spent *awaiting*
24 an integral and indispensable activity because waiting was "two steps removed from the
25 productive activity on the assembly line." *Id.* at 518 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21,
26 42 (2005)). The security screenings in *Busk* lacked the integral or indispensable relationship to
27 the employees' job responsibilities necessary, so they did not constitute compensable activities
28 under federal law.

17

1    This order need not determine whether the definition of work under the "suffered or
2 permitted" prong mirrors the scope of compensable activities discussed in *Busk*. The time our
3 plaintiffs spent waiting for the searches to be completed plainly does not constitute "work" under
4 the "suffered or permitted" prong. Our plaintiffs merely passively endured the time it took for
5 their managers or security guards to complete the peripheral activity of a search. Neither the
6 searches nor waiting for them to be completed had any relationship to their job responsibilities.
7 They cannot be compensated for that passive activity under the "suffered or permitted" prong.

8    Plaintiffs' proffered interpretation of "work" would reach any employees' activity that
9 provided some benefit to the employer. Again, the California Supreme Court explicitly
10 foreclosed such a broad definition that relied solely on benefit in *Martinez*. Furthermore, that
11 interpretation would render the "control" prong meaningless. Indeed, under plaintiffs' theory, an
12 employee's commute in his own vehicle would be compensable because the employer benefits
13 by physically having its employees on premises. Thus, plaintiffs' attempt to fit the time they
14 spent waiting for searches to be completed within the "suffered or permitted to work" prong is
15 unpersuasive.

16   **3.    EVIDENCE OBJECTIONS.**

17   Plaintiffs have moved to strike the report of Apple's expert on queue formation, Dr.
18 Randolph Hall, and the exhibits appended thereto. Dr. Hall provided an analysis of the duration
19 and frequency of searches in a sample of stores in California. Apple only cites one figure in Dr.
20 Hall's report in its pleadings, namely the percentage of employees he observed carrying bags out
21 of a particular store during a six-hour time frame. It is undisputed that some employees elected
22 not to bring bags to work, so neither that figure nor any other part of Dr. Hall's report was
23 necessary to this order. Accordingly, plaintiffs' motion to strike Dr. Hall's report and the
24 exhibits thereto is **DENIED AS MOOT**.

25   Apple has also raised several evidentiary objections pertaining to the relevance and
26 foundation for certain documents submitted in support of plaintiffs' class certification motion,
27 which have been incorporated into its motion for summary judgment. Except for Exhibit 64,
28 which was used for illustrative purposes only, the disputed evidence was not necessary to this
order. Apple's objections are **OVERRULED AS MOOT**.

18

**CONCLUSION**

For the reasons stated above and to the extent stated above, Apple's motion for summary judgment is **GRANTED**, and plaintiffs' motion for summary judgment is **DENIED**. To be clear, this order is an adverse ruling against the class and against all named plaintiffs. An order of final judgment will follow. The Clerk shall please **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: November 7, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE