Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

AMANDA FRLEKIN and DEAN PELLE,  )
on behalf of themselves and    )
all others similarly situated, )
                         )
        Plaintiffs,     )
                         )
  VS.                )  **NO. C 13-03451 WHA**
                         )
APPLE, INC., a California     )
corporation,             )
                         )
        Defendant.      )
_____)

San Francisco, California
Wednesday, December 16, 2020

**TRANSCRIPT OF REMOTE ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM WEBINAR:**

For Plaintiffs:

                MCLAUGHLIN & STERN LLP
                260 Madison Avenue
                New York, New York 10016
       **BY:**  **LEE S.SHALOV, ATTORNEY AT LAW**
                **BRETT R. GALLAWAY, ATTORNEY AT LAW**

                KRALOWEC LAW, P.C.
                750 Battery Street, Suite 700
                San Francisco, California 94111
       **BY:**  **KIMBERLY A. KRALOWEC, ATTORNEY AT LAW**
                **KATHLEEN S. ROGERS, ATTORNEY AT LAW**

      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported Remotely By:  Ana M. Dub, RMR, RDR, CRR, CCRR, CRG
                      CSR No. 7445, Official U.S. Reporter

**APPEARANCES**:   (CONTINUED)

For Plaintiffs:
                        THE DION-KINDEM LAW FIRM
                        21550 Oxnard Street, Suite 900
                        Woodland Hills, California 91367
                BY:   **PETER R. DION-KINDEM, ATTORNEY AT LAW**

For Defendant:
                        DLA PIPER LLP
                        401 B Street, Suite 1700
                        San Diego, California 92101
                BY:   **JULIE A. DUNNE, ATTORNEY AT LAW**
                        **MATTHEW B. RILEY, ATTORNEY AT LAW**

```
 1   Wednesday - December 16, 2020                    11:34 a.m.

 2                    P R O C E E D I N G S

 3                        ---o0o---

 4        THE CLERK:  Calling Civil Matter 13-3451, Frlekin,

 5   et al. versus Apple Incorporated.

 6       Starting with plaintiff, will counsel please state your

 7   appearances.

 8        MR. SHALOV:  Good morning, Your Honor.  This is Lee

 9   Shalov from McLaughlin & Stern, co-lead counsel for the

10   plaintiff and the certified class, together with my partner

11   Brett Gallaway.

12        THE COURT:  Okay.  Welcome.

13        MR. GALLAWAY:  Good morning, Your Honor.

14        THE COURT:  Who else?

15        MS. KRALOWEC:  Good morning, Your Honor.  This is

16   Kimberly Kralowec with Kralowec Law, P.C., also for the

17   plaintiffs.

18        THE COURT:  Good morning to you.

19        MS. ROGERS:  Good morning, Your Honor.  Kathleen

20   Rogers, also Kralowec Law, P.C., for the plaintiffs.

21        THE COURT:  Okay.

22        MR. DION-KINDEM:  Good morning, Your Honor.  Peter

23   Dion-Kindem, also for the plaintiffs.

24        THE COURT:  All right.  Next?

25        MS. DUNNE:  Good morning, Your Honor.  This is Julie
```

1   Dunne on behalf of defendant, Apple Inc.

2          **THE COURT:**  Okay.

3          **MR. RILEY:**  Good morning, Your Honor.  This is Matthew

4   Riley on behalf of the defendant, Apple Inc.

5          **THE COURT:**  Anyone else?

6      Okay.  We're back after a long detour that went to the

7   California Supreme Court.  And I've read the decision by the

8   Supreme Court of California.

9          And I'm going to start with Apple because your brief or

10  position in the statement seems to indicate that there's

11  something left to litigate on the merits; but as I read the Cal

12  Supreme Court decision, you have totally lost on the merits,

13  there's nothing left to litigate, and that the plaintiffs

14  should bring a summary judgment motion to determine liability,

15  which I would have to grant, and then we would proceed to

16  figuring out damages.

17         Somehow you keep saying in your statement that they've got

18  to prove it was pursuant to policy.  I disagree with that

19  reading of the opinion.

20         If you read the very last sentence or two in the order by

21  the Supreme Court, it's quite clear that you -- I'll just read

22  it to you now (reading):

23             "We conclude that plaintiffs' time spent on

24         Apple's premises waiting for and undergoing mandatory

25         exit searches of bags, packages, or personal Apple

1          technology devices such as iPhones voluntarily

2          brought to work purely for personal convenience is

3          compensable as hours worked within the meaning of the

4          wage order."

5      All right.  So you explain to me what I'm missing here,

6  Ms. Dunne.

7          **MS. DUNNE:**  Thank you, Your Honor.  This is Julie

8  Dunne speaking.

9      And the linchpin to the California Supreme Court's

10 decision is the changed fact that underlies Apple's request for

11 permission to file a motion to decertify.

12     So if Your Honor will take a look at the decision at

13 pages 1054 to 1055, actually running through 1056, you --

14         **THE COURT:**  I'm sorry.  My law clerk gave me the

15 Pacific Reporter version.  I don't have those pages.  So give

16 it to me by how it's in the -- the paragraph number or

17 something.

18         **MS. DUNNE:**  It would be Section B, titled *"Morillion*

19 *and its Progeny do not Preclude Relief."*  And in that section,

20 it would be the text beginning with (reading):

21          "Finally, notwithstanding the IWC's removal of

22      the word 'required' from Wage Order 7's 'hours

23      worked' control clause . . . ."

24     Do you see that?

25         **THE COURT:**  Yes.

1          **MS. DUNNE:**  Okay.  So beginning there at that

2     paragraph, the California Supreme Court confirmed that its

3     decision rested, in part, on its conclusion that Apple

4     employees were required, as a practical matter, to bring

5     certain bags -- not all bags, but certain bags -- and were

6     required to bring certain Apple technology, not all technology.

7     They referred strictly to the iPhone.

8          **THE COURT:**  That is completely bogus.  Read the last

9     sentence.  The last sentence of the order says (reading):

10              ". . . voluntarily brought to work purely for

11          personal convenience . . . ."

12          **MS. DUNNE:**  I understand that, Your Honor.

13          **THE COURT:**  What?

14          **MS. DUNNE:**  I understand that, Your Honor.

15          **THE COURT:**  All right.  Well, then I'm going to follow

16     the order.  And you're coming up with some -- another

17     splitting-the-hairs argument.  You had your chance to win this

18     in the Cal Supreme Court and get me affirmed, and you did not.

19     I don't mind being reversed, but you're not going to lead me

20     down the path again, Ms. Dunne.  You lose on this issue, and

21     we're going to go to liability -- I'm sorry -- we're going to

22     go to damages.  I completely disagree with your hair splitting.

23     I read this entire order.

24          And in addition -- in addition -- there's another place in

25     the earlier part where -- at page -- well, you don't have the

1    same pages that I have, but it's before Part 2, where it

2    describes what happened in the district court and that

3    (reading):

4              ". . . the district court specified in its

5         certification order that the bag searches would be

6         adjudicated as compensable or not based on the most

7         common scenario -- that is, an employee who

8         voluntarily brought an item subject to search under

9         the bag-search policy to work purely for personal

10        convenience."

11        So it's quite clear to me that that was the predicate,

12   that was the premise of what the Supreme -- they were ruling on

13   the most common case.  They weren't -- you're trying to inject

14   the word "required" in there, and I've just got to tell you,

15   Ms. Dunne, I don't buy it.  I don't buy it at all.  And I'm not

16   even going to entertain briefing on this point.  So you're

17   going to lose on that.

18        So assuming that you're going to lose on that, isn't the

19   next step that the -- well, you can raise it again in

20   opposition to the summary judgment motion.  But it seems to me

21   that the plaintiffs bring a motion for summary judgment

22   class-wide against Apple to establish liability, and then we're

23   going to figure out a way to -- even if I have to do it

24   employee by employee, we're going to figure out a way to figure

25   out the damages.

1      I want to say one other thing.  I'll say this one to the

2   plaintiff.  Ms. Dunne, this one I don't blame you on at all.

3      Back at the time that we had this case before me, I had

4   the distinct impression that the amount of time was in seconds,

5   like 15 seconds, sometimes a minute.  And then I said to the

6   plaintiffs:  Well, do you have anything more than that?  And

7   I think there was one person that you could come up with that

8   was 15 minutes, and even that one seemed sketchy at the time.

9      So to read this opinion now and find these extremely long

10  times that the Supreme Court thought were involved came as a

11  small shock to me.  But nevertheless, that's what they thought,

12  and I wouldn't blame them, really, for -- I don't know.  I

13  don't know what the record was that they saw.

14     But I do want this to be clear.  I'm going to give Apple

15  every opportunity to contest the amount of time.  So if

16  somebody says "I spent 15 minutes in line" and Apple is able to

17  show, no, they didn't spend 15; they spent 5 seconds in line,

18  I'm going to entertain all of that information because I just

19  don't trust these -- I trust my memory of what I learned.  And

20  to have read that you told the Supreme Court it was that long

21  came as a shock to me.

22     So we're going to get to the bottom of how much time it

23  really took for these people to do it.  And if I have to do it

24  case by case, individual by individual, I'm willing to do that.

25     So I think the easy way to deal with this case is,

1   plaintiffs bring a motion for summary judgment, which I'm
2   probably going to grant based on this decision.
3        And then we're going to move straight into a procedure
4   where the class members have to say under oath the amount of
5   time that they spent, identify the dates as best that they can.
6   And then I'm going to let Apple try to take depositions of
7   everyone, if they want, and use their own records to show that
8   somebody is fudging on this.
9        So I'll give each side an opportunity to try to shoot down
10  my theory.  Okay.  Who's going to speak for the plaintiffs?
11        MR. SHALOV:  Your Honor, this is Lee Shalov, co-lead
12  counsel for the plaintiffs.  Thank you very much.
13        Just two things, Your Honor.  One is, we did move for
14  summary judgment.  We actually cross-moved for summary judgment
15  when Apple moved for summary judgment, and Your Honor denied
16  that motion for summary judgment.
17        When the case went back to the Supreme Court -- or went to
18  the Supreme Court, when the Supreme Court found, as you
19  correctly observed, that there were no more issues of
20  liability, that employees must be paid, it went back to the
21  Ninth Circuit.
22        The Ninth Circuit concluded in an opinion in October of
23  this year, 2020, that there were no more disputed issues of
24  material fact, that judgment should be entered in favor of the
25  plaintiffs and the class; and it remanded the case back to you

1    with instructions to, quote, grant plaintiffs' motion for

2    summary judgment on the issue of whether time spent by class

3    members waiting for and undergoing searches pursuant to the

4    policy is compensable as hours worked under California law.

5             **THE COURT:**  I will be inclined to grant that.  But the

6    class as defined is now -- it doesn't come up to the present.

7    It came up to the present as of the date of, I believe, the

8    class certification order.  So if you're thinking that you

9    would be able to sweep the later people in, you would be wrong

10   on that, unless there's a motion to accomplish that.  And then,

11   if we change the class definition to include more people, then

12   we have to -- then you'll need a renewed motion for summary

13   judgment.

14        Now, I'm happy do it the way you decided it, the way you

15   proposed it.  But we froze in some time ago who's in the class,

16   and people after the fact are not in the class -- so be aware

17   of that -- and including even damages after the -- people are

18   in the class and the damages that they incurred thereafter.

19        So this is a procedural problem that the Ninth Circuit did

20   not address.  Maybe you do want to address it.  But it has to

21   be addressed if you're going to try to sweep all that later

22   events into the judgment.

23             **MR. SHALOV:**  Lee Shalov, Your Honor.

24        We may well consider that, Your Honor, because we believe

25   that people continue to go through bag checks after the class

1    certification order.  And we'll discuss that amongst ourselves

2    and revisit that with the Court.

3         I also wanted to address the issue of the amount of time

4    that people stood in lines.  I think what Your Honor might be

5    referring to in terms of the seconds is what defense counsel

6    argued to you is the amount of time people spent in checks.

7         We did submit upwards of 20 to 25 declarations.  We had

8    multiple depositions of members of the class who testified

9    under oath that they spend 5, 10, 15, 20 minutes going through

10   security checks and waiting in lines for managers to conduct

11   the checks.  So there's very substantial evidence in the record

12   for the idea that people spent many, many minutes going through

13   checks.

14             THE COURT:  Was that in the summary judgment record?

15             MR. SHALOV:  Yes, Your Honor, it was.

16             THE COURT:  Well, okay.  I stand corrected then.

17        Now, Ms. Dunne, what do you say to what I just heard about

18   how much time they stood in line?

19             MS. DUNNE:  For the court reporter, this is Julie

20   Dunne.

21        Your Honor, the record reflects contradictory testimony on

22   the issue.  Plaintiff did submit some declarations saying it

23   took 5, 10, 15.  I believe plaintiff Kalin said it took 45.

24   The testimony from a number of other class members was that it

25   takes mere seconds.

1      And the expert that Apple had retained to review video

2   footage of the exit times on the days that plaintiffs claimed

3   were the busiest and created the longest lines and, therefore,

4   resulted in the longest wait in check procedures reviewed that

5   video.  It was Black Friday.  He took the time of the day when

6   the most employees had punched out and were leaving and

7   concluded that, on average, it took 10 seconds.

8      We have submitted that video to you.  Perhaps you recall

9   reviewing that.

10           **THE COURT:**  I did review that.

11           **MS. DUNNE:**  Perhaps you recall --

12           **THE COURT:**  That may be what --

13           **MS. DUNNE:**  Yes.

14           **THE COURT:**  I do remember the video.

15      But it's still possible that the average time could be

16   10 seconds and that someone stood in line for 45 minutes on a

17   particular day.  That's not -- it's like statistics.  A man and

18   woman can drown in a river that's only 6 inches deep on

19   average, but it's deeper in some places and they can drown

20   there.

21      Well, I'm getting ahead of myself.  This is for trial.

22      Here's what we're going to do.  I'm going to give the

23   plaintiff -- if you're willing to stand on the present record,

24   I will enter the judgment that has been -- or at least the

25   order that has been ordered by the Court of Appeals.  But be

1   aware of the limitations that go with that, which is that the

2   damages would be limited and the class membership would be

3   limited.  It's still a big class and still probably big

4   damages, but if you want to expand it, you need to bring a

5   motion to do so.

6       So I'll give you a couple of weeks to make that decision

7   and to bring the motion, or I'll give you even more time to

8   bring the motion, if you wish.  But how much time do you need

9   to bring such a motion if you are going to do that?

10          **MR. SHALOV:**  Lee Shalov, Your Honor.

11      30 days would be acceptable to us if that's convenient for

12   the Court.

13          **THE COURT:**  How about if you file it by January 21?

14          **MR. SHALOV:**  Lee Shalov, Your Honor.

15      Thank you.  Yes, that's fine.

16          **THE COURT:**  And then how about February 4th by Apple

17   to reply?

18          **MS. DUNNE:**  Your Honor, if I may be heard on some of

19   these issues before we jump to them.

20          **THE COURT:**  I'm only setting up a briefing schedule.

21      But go ahead, please.  I want to hear what you have to

22   say.

23          **MS. DUNNE:**  Thank you, Your Honor.

24      With respect to the judgment that was ordered or mandated

25   by the Ninth Circuit, recall that applied only to the

1   overarching issue of whether time spent participating in the

2   checks is work.  A myriad of individual questions remained

3   thereafter.

4        Did somebody bring a bag?  We submitted several

5   declarations from class members who never brought a bag.

6        Did the store conduct a check?  We've submitted

7   substantial evidence that many stores for substantial periods

8   of time did not conduct checks.

9        We submitted evidence that many stores had remote break

10  rooms.  And the California Supreme Court's decision, in

11  Footnote 5, confirms that if an employee had the option to

12  place items or store them in the remote break room and bypass a

13  check, they would have no claim.

14       I'll read from the footnote just so the Court's clear

15  exactly what was stated in Footnote 5 (reading):

16            "However, it is uncontroverted that Apple may

17        impose reasonable restrictions on the size, shape, or

18        number of bags that its employees may bring to work

19        and that it may require employees to store their

20        personal belongings in off-site locations, such as

21        lockers or break rooms.  We also take no issue with

22        Apple's policy prohibiting employees from shipping

23        personal packages to its stores."

24       So, Your Honor, I am not splitting hairs when I say to you

25  that the California Supreme Court's decision is limited.  I

1   understand what the last sentence says.

2       But please note that at page 1055, the California Supreme

3   Court made clear that its decision was based, in part, on its

4   conclusion that -- and I'm quoting (reading):

5           "It is to be expected that many Apple employees

6       feel they have little genuine choice as a practical

7       matter concerning whether to bring a bag or other

8       receptacle containing such items" -- and they were

9       referring to ordinary, everyday items -- "such as a

10      wallet, keys, cell phone, water bottle, food, or

11      eyeglasses to work."

12      So it's not all bags; it's not every bag.  And we know

13  that from that quote there in Footnote 5.

14          **THE COURT:**  I'm going to follow the --

15          **MS. DUNNE:**  Secondly, Your Honor --

16          **THE COURT:**  -- last sentence.

17      I'm going to follow the last sentence in that order, and

18  I'm not going to let you talk me into cutting back on that

19  based upon some other sentences in there.  What you read to me

20  was not convincing.

21      Now, the part about break rooms, okay, if someone brought

22  their bag to the break room and left it, then there's no

23  compensation.  But if they brought it into the workplace, even

24  though they could have left it in the break room, and they had

25  to stand in line, according to this Supreme Court decision,

```
 1  you've got to pay.  P-A-Y.

 2      So --

 3          MR. SHALOV:  Lee Shalov, Your Honor.

 4      That's absolutely right.  Ms. Dunne is splitting hairs.

 5          THE COURT:  Look, here's what I want you to do.  I

 6  want you to bring -- on the motion that you -- you should file

 7  a motion, no matter what, on January 21; and you should include

 8  in that the form of order that you want, even if it's just

 9  to --

10          MR. SHALOV:  Thank you, Your Honor.

11          THE COURT:  -- if it's just to confirm the -- as if we

12  were ruling on the original summary judgment motion and what I

13  should have done then to get it right, in conformity with what

14  the Ninth Circuit is now telling me to do.

15      And then Apple can have their say as to why that's wrong

16  and what alternative order there ought to be.

17      But listen, Apple, Ms. Dunne, you led me down the path

18  once before, and I got reversed.  So I'm going to carefully

19  consider everything that you give me.  But please do not split

20  hairs.  You're not going to talk me out of obeying what

21  the Court of Appeals and the Supreme Court of California have

22  told me I've got to do.

23      And it's time for Apple to pay up and to make good on what

24  the California Supreme Court said it should have been doing all

25  along.  I don't know how much of that for sure you ought to be,
```

 1  but you have lost that main issue.  There may be some smaller

 2  issues where we fight around the margins, but you have lost

 3  this case in the California Supreme Court, and you ought to --

 4  you ought to -- you're not going to escape that.

 5      And so I'm going to do my job.  I will listen to all of

 6  the arguments that you make, but that's where we're headed

 7  here.

 8      Okay.  The schedule --

 9          MR. SHALOV:  Your Honor, Lee Shalov.

10          THE COURT:  Yes.  What?

11          MR. SHALOV:  Yes.  The next step, pursuant to the

12  Ninth Circuit's directives, is for the Court to determine the

13  remedy to be provided to the class members.

14      And the Court observed today and in the class

15  certification decision we're going to use a claims process --

16          THE COURT:  Roll all of that into your motion.  Put

17  all that into your motion so that I'll have a formal motion

18  instead of just a status conference statement.

19      But let me give you my thoughts on this.

20          MR. SHALOV:  Very well, Your Honor.  Thank you.

21          THE COURT:  I'm going to give you -- you're going to

22  win.  Apple is going to lose, and you're going to win because

23  that's what happened in the Cal Supreme Court.  The scope --

24  could be the scope is bigger or smaller.  I don't know.

25      But there's going to be a group of people who are entitled

1   to recover, and we need to figure out a way for them to

2   recover.  Now, I'm willing to do it on a witness-by-witness

3   basis and bring them all in and let them testify one at a time.

4   But it would be more convenient to have them say up front in

5   their declarations the dates that they brought bags, the number

6   of times they stood in line, their best estimates of how long

7   they stood in line, and the stores where they stood in line,

8   whether there was a break room at that facility, why they

9   didn't use the break room.  I'm going to say a two- to

10  three-page declaration from each person who wants to collect

11  money.

12       And then let's say we get 200 of those.  So then Apple can

13  go through those and decide which ones it wants to contest.  So

14  let's say they decide to contest 75 of them.  So they have

15  depositions of 75 people, employees.  They show their own

16  records.  Then you get to look at the records on those 75.  And

17  maybe it turns out that some of those 75 are making it up.

18       You know, any time -- any time there's a Muni bus

19  accident, there are more claims filed than there are people on

20  the bus.

21       So there could be -- among 3- or 400 employees, there

22  could be some phony ones.  So Apple's entitled to look for the

23  phony ones.

24       And then, if we need to have a trial, I'm going to have a

25  trial.  Apple is not going to get away with no trial on this

1  because they're individual people.  And we're going to figure

2  out what their damages are, even if it's 75 cents.  So that's

3  my view on this.

4      So whenever you are telling me in your motion what is our

5  next step forward, what is our way forward, please give me

6  something reasonable, on the plaintiff side, something that is

7  fair to Apple.  Don't give me something where:  Oh, just enter

8  judgment now for 400 million and we'll figure it out later.

9  No, I'm not going to do that.  It's going to have to be on an

10  individual-by-individual basis.

11      So you --

12          **MR. SHALOV:**  Your Honor?

13          **THE COURT:**  And then Apple is going to give me their

14  plan for going forward.

15          **MR. SHALOV:**  Lee Shalov, Your Honor.

16      That's precisely what we contemplated.  We'll provide you

17  with our motion and our proposed plan on January 21st.  It'll

18  discuss with you the idea of sending out a notice and claim

19  forms.  It'll discuss with you a concept for Apple to present

20  whatever defenses it believes it has to the claims.

21      And Your Honor will review that motion, and we'll go to

22  trial.

23          **THE COURT:**  Excellent.  All right.

24          **MR. SHALOV:**  Thank you, Your Honor.

25          **THE COURT:**  Now, did I finish the schedule?  The 21st

1    and then the 4th.  And then the reply brief will be due on the

2    11th.

3         Now, remember, I don't like reply declarations.  So put

4    all of your moving -- if you're going to have declarations, put

5    it in on the 21st.  But a true reply is okay, but not something

6    that you should have put in up front.

7         And then is February 25 available for a hearing, Angela?

8         **THE CLERK:**  Stand by just one moment, sir.

9    Yes, we could do a hearing on February 25th.

10        **THE COURT:**  All right.  So let's say --

11        **MR. SHALOV:**  That works for plaintiffs, Your Honor.

12   Lee Shalov.

13        **THE COURT:**  Okay.  We'll say 8:00 a.m. on February 25.

14   Now, that one might --

15        **MR. SHALOV:**  Lee Shalov.

16   Very well, Your Honor.  Thank you.

17        **THE COURT:**  We'll put it down for in person, but I

18   have a feeling we may have to do that one by phone.

19        **MR. SHALOV:**  Either way works for us, Your Honor.

20   This is Lee Shalov.

21        **MS. DUNNE:**  And, Your Honor, Julie Dunne again.

22   Just so I understand this process, Step 1 is the motion

23   for summary judgment.

24   Will there be a claim process, as directed by your

25   certification order, following that summary judgment --

1          **THE COURT:**  No, that's not right, Ms. Dunn.  That is

2     not right.  That's not right.

3          What counsel is going to do is figure out whether he needs

4     a summary judgment motion or not.  And if he thinks he does,

5     then he's entitled to file it on the 21st.

6          But see, you're trying to set me up so that if they don't

7     file that, then you'll say:  Oh, Judge, you told them to file a

8     summary judgment motion.

9          No.  They are free to file one on the 21st if feel they

10    need to expand the class or expand the damages period.  It

11    could be a motion to redefine the class.  It could be a motion

12    in tandem with a motion for summary judgment.  But it could

13    just simply be:  Look, Judge, we feel like the present record

14    is adequate, and here's what you should do.  You should enter

15    the form of judgment that says A, B, C, just like the

16    Ninth Circuit said, and here's the notice to send to the class,

17    and here's the schedule for Apple to present its side for each

18    individual claimant.

19         And so I am not ordering that it must be a summary

20    judgment motion, but I'm saying if there's going to be one,

21    that's the day to file it.

22         Does that make sense?

23         **MR. SHALOV:**  Lee Shalov, Your Honor.

24    That makes perfect sense for us.

25         **MS. DUNNE:**  Julie Dunne, Your Honor.

1        And so that's what I'm just trying to get clarification

2    of.  It's either going to be a proposal, a brief proposal for

3    go-forward --

4             **THE COURT:**  I said what it is going to be.  Ms. Dunne,

5    you're not going to do that to me.  You're not going to

6    rephrase what I -- like a deposition.  I told it to you, and

7    I'm not going to repeat it.

8             **MS. DUNNE:**  Thank you, Your Honor.

9             **THE COURT:**  All right.  I believe the hearing is at an

10   end.  Okay.

11            **MR. SHALOV:**  Lee Shalov.

12       Thank you, Your Honor.

13            **MS. DUNNE:**  Thank you, Your Honor.

14            **MR. SHALOV:**  Have a nice day.

15                 (Proceedings adjourned at 12:02 p.m.)

16                          ---o0o---

17

18

19

20

21

22

23

24

25

1

2                      **<u>CERTIFICATE OF REPORTER</u>**

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled matter.

5

6     DATE:  Friday, December 18, 2020

7

8

9     _____

10         Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG
              Official Reporter, U.S. District Court
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25