Pages 1 - 38

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

AMANDA FRLEKIN and DEAN PELLE,  )
on behalf of themselves and    )
all others similarly situated,  )
                        )
        Plaintiff,     )
                        )
  VS.                 )    **No. C 13-3451 WHA**
                        )
APPLE INC., a California    )
corporation,            )
                        )
        Defendant.    )
_____)   San Francisco, California
                              Wednesday, March 3, 2021

**TRANSCRIPT OF PROCEEDINGS VIA ZOOM WEBINAR**

**APPEARANCES:** (via Zoom Webinar)

For Plaintiffs:
                    MCLAUGHLIN & STERN LLP
                    260 Madison Avenue
                    New York, New York 10016
              **BY: LEE S.SHALOV, ESQ.**
                  **BRETT R. GALLAWAY, ESQ.**
                  **JASON GIAIMO, ESQ.**

                    KRALOWEC LAW, P.C.
                    750 Battery Street, Suite 700
                    San Francisco, California 94111
              **BY: KIMBERLY A. KRALOWEC, ESQ.**
                  **KATHLEEN S. ROGERS, ESQ.**

           (Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, CRR, RMR
                Official Reporter - U.S. District Court

**APPEARANCES:** (via Zoom Webinar; continued)

For Plaintiffs:

        THE DION-KINDEM LAW FIRM
        21550 Oxnard Street, Suite 900
        Woodland Hills, California 91367
    **BY: PETER R. DION-KINDEM, ESQ.**

For Defendant:

        DLA PIPER LLP
        401 B Street, Suite 1700
        San Diego, California 92101
    **BY: JULIE A. DUNNE, ESQ.**
    **MATTHEW B. RILEY, ESQ.**

<u>**Wednesday - March 3, 2021**</u>                                    <u>**8:07 a.m.**</u>

<u>P R O C E E D I N G S</u>

---oOo---

**THE CLERK:**  This court is now in session, the
Honorable William Alsup presiding.

Calling Civil matter 13-3451, Frlekin, et al., versus
Apple Inc.

Starting with plaintiff, will counsel please state your
appearances.

**MR. SHALOV:**  Good morning, Your Honor.  This is Lee
Shalov, class counsel for the plaintiffs.  With me are my
colleagues Brett Gallaway and Jason Giaimo.

**THE COURT:**  Good morning.

**MR. DION-KINDEM:**  Good morning, Your Honor.  Peter
Dion-Kindem, also plaintiffs' counsel.

**THE COURT:**  Good morning.

**MS. KRALOWEC:**  Good morning, Your Honor.  This is Kim
Kralowec, also representing the plaintiffs.  And with me on the
line is my colleague, Kathleen Rogers.

**THE COURT:**  Okay.  Good morning.

**MS. DUNN:**  Good morning, Your Honor.  This is Julie
Dunn on behalf of defendant Apple Inc.

**THE COURT:**  Good morning.

**MR. RILEY:**  Good morning, Your Honor.  This is Matthew
Riley appearing on behalf of Apple.

1          **THE COURT:**  Good morning.

2      Anyone else?

3      Okay.  You can see we've got a busy calendar today.  And

4  to kind of cut through all of this, I want to say I've read

5  your materials, and I'm going to give you a chance to talk me

6  out of this.  So don't get too worried.

7      What I'm going to do is lay out a plan for going forward,

8  having the benefit of what you've submitted, and then I'll let

9  you try to modify it or say that it's a mistake or whatever.

10  But I feel it will get to the heart of the issues a lot quicker

11  if we do that.  So get your pencil and paper and start making

12  notes.  I'm just going to lay out a plan of action.  And the

13  plan is as follows:

14      I would enter a partial judgment, in favor of the class

15  and against Apple, stating that at all material times Apple was

16  liable to compensate the class members for time spent standing

17  in line and waiting to have their bags checked.

18      Number two, we will proceed with class notice and a claims

19  process on an individual-by-individual basis.  Each individual

20  class member would submit a claim.  And Apple would be given a

21  reasonable opportunity to probe the accuracy of that.

22      I'm going to come in to give you more details on that in a

23  moment, but I'm just giving you the big picture right now.

24      And then with respect to this issue of *de minimus*, it's

25  not clear to me that this was preserved or how it was

1    preserved, but we don't have to decide that now.  It will be up

2    to Apple later to convince me that it was preserved.

3         I know it might not even apply under California law

4    because *de minimus* is an FLSA concept, but if Apple can show me

5    Supreme Court law in the California Supreme Court or something

6    that is very close to it that *de minimus* applies under state

7    law, then we will apply it in those instances where it's proven

8    up.

9         The burden will be on Apple to show in any given case that

10   it was *de minimus*.

11        Okay.  So now I'm going to go into some of the details.

12   Again, the first step would be to enter that partial judgment

13   stating that Apple at all material times was liable to

14   compensate the class members for time spent standing in line

15   and getting their bags checked.

16        Now, with respect to the notice, I'll give you the big

17   picture.  I'm going to order a reasonable amount of notice and

18   Apple to pay for it, but I'm not -- there's no way I'm going to

19   order, at this point, all of the bone-crushing notice that the

20   plaintiffs want.  That conceivably could become important or

21   required later, but I am convinced that the plan of notice that

22   I have, I'm going to give you in just a moment, will work just

23   fine.

24        So here's what we'll do:

25        Once we agree on the form of notice, Apple will send it by

1  first-class mail to each employee or former employee at the

2  last known address.

3       Now, you've got to give the other side, meaning

4  plaintiffs' counsel, exactly the names and exactly the

5  addresses that you use so that there won't be any questions

6  about where it was sent.

7       Now, in my experience, some of those will come back as

8  undeliverable.  And I have had tremendously good luck, better

9  than you would think, using the National Change of Address

10 registry, which is inexpensive and easy to use.

11      So let's say 20 percent comes back undelivered.  We will

12 get at least another 80 percent on the change of address

13 registry.  And so then Apple would send it again at Apple's

14 expense.

15      Meanwhile, parallel email notices will go from Apple to

16 the last known email addresses giving the same notice.  So

17 we're having notice by two means, first class mail and the

18 email notice.

19      Now, on the letter that goes out it should have my name,

20 my court address; in other words, showing it's coming from the

21 U.S. District Court, because, otherwise, people might think

22 it's junk mail.

23      And it shouldn't come from something like claims

24 administrator.  That goes straight into the trash can.  It

25 should have the court's name on it.  And it could have

1   something saying "Important class action notice."  That will be

2   okay.  But it's important that it go by first-class mail and by

3   email.

4       In addition, there should be a website that -- I'm not

5   sure how -- I'm going to leave it to the lawyers to figure out,

6   but there should be a website where the claim form can -- and

7   I'll come to the contents of the claim form in a minute --

8   where the claim form can be easily accessed by members.

9       By the way, I should say that the notice and the letter

10  that goes out should have the simple one-page claim form in it

11  so it can be sent in by mail.  But it can also be done by

12  website, and so that would be an alternative way for class

13  members to check in to -- to put in their sworn claim form.

14      All right.  I'm about halfway through, so don't panic.

15      I will not require further notice at this time because, in

16  my experience, what I've outlined to you will be completely

17  adequate.  But if it's not, then we will have to consider some

18  kind of supplement later on, and we'll cross that bridge if and

19  when we need to.

20      Now, with respect to the amount of time to fill out the

21  claim form and to give notice, 60 days might be enough, but I

22  want to give class members more time, so I'm going to give them

23  120 days to -- from the date that we do the mailing to return

24  the claim form.

25      And the reason for that is somebody who's going to do it

1    accurately needs to think about when they were employed by
2    Apple and to try to think through the estimate that I'm going
3    to require and to give an honest answer.

4         So I think saying 60 days, while it's conceivable, it's --
5    I'm sorry, is somebody interrupting me?

6         All right.  Thank you.

7         Okay.  The form of the notice, I'm not completely sure
8    that I have all the problems with it, but let me give you some
9    things that should definitely be there.  There should be a new
10   opportunity to opt out.

11        I know the prior had a prior opportunity and that it's not
12   required to give a second opt-out, but I do think it's prudent
13   to give them a second opportunity to opt out.

14        And, also, they have a duty -- not a duty, I'm sorry -- I
15   have a duty to advise them of their right to intervene under
16   Rule 23, which Rule 23 says the notice has got to tell them of
17   their right to intervene.

18        So we should give them those notices.  And the notice
19   should further say that the Court -- I'll read this slowly.
20   "The Court has found that Apple must pay its employees for time
21   spent undergoing bag and technology searches."

22        And so that should be in there.  In addition, it should
23   say that class members -- depositions of class members may --
24   might be required.  Might be required.  And that they might be
25   required to testify at a trial.  That's only fair, because it

1   is true.

2       Okay.  Now, I am getting close to the -- I'm about

3   two-thirds of the way through.

4       Apple has to -- now, if Apple wants to use a claims

5   administrator to send out these letters, that's okay, but

6   you've got to pay for it.  Apple's got to pay for it.

7       And the -- but if Apple does it itself, then we have to

8   have a formal proof of service listing every single person and

9   showing proper service.  That's true for both the emails as

10  well as the first-class mail.

11      Apple does not have to turn over social security numbers

12  of its former employees.  So I don't -- we're not going to

13  invade -- put them at risk with social security numbers being

14  divulged at this point.

15      Now, the claim form has got to be simple.  One page.  It's

16  an old defense gimmick to make it so complicated no one will do

17  it.

18      It'll be single page and it will require the name of the

19  class member, the date the class member worked for Apple and at

20  what location or locations, and estimate of the number of times

21  the claimant had to have a bag checked.  And that's an

22  estimate, not a exact number.  You could not expect them to

23  have an exact number.  And an estimated average length of time

24  spent standing in a line and waiting to be searched, and so

25  that would be the average length of time.

1    And my tentative plan at the end is to just multiply that

2  number times the number of times, unless Apple has contrary

3  proof, and award them that amount of money, multiplied times

4  their salary at the time -- wages at the time.  Now, the claim,

5  it has to be under oath.

6    When all of the timely claim forms are received, Apple can

7  then produce its own evidence, if it has any, to challenge the

8  accuracy of any claim form.

9    For example, if Apple records show that the claimant did

10  not work at Apple during the claim time, well, that would be a

11  good point, and so it could submit proof to that effect.

12    Or let's say Apple has proof that the employee worked at a

13  store -- different store than indicated, and at that store

14  there was a locker room where there was never any need for a

15  stand in line, so that would be good proof.  I could imagine

16  five or six other circumstances, but the burden would be on

17  Apple to show all of that.

18    My hunch is that more than half of the claims would go

19  uncontested and some smaller number would be contested, and

20  that then we would turn to how we're going to deal with that.

21    If Apple makes enough of a showing to call into question

22  the accuracy of the claim form, then Apple will be allowed a

23  short deposition, probably by Zoom, to depose the plaintiff; in

24  other words, to test the recollection of the claimant.

25    Likewise, plaintiffs' counsel -- plaintiffs' counsel will

1   be given opportunity to take short depositions to prove the

2   accuracy of all of Apple's counterproof.

3        So, for example, let me imagine that Apple says, oh, wait

4   a minute, at the store in Lone Pine, California, we had a

5   locker room, and the locker room obviated the need for anyone

6   to stand in line; and, therefore, nobody gets to recover from

7   that store.

8        So plaintiffs' counsel could take a deposition to show

9   that Apple is mistaken in that statement and that there's no

10  basis for the statement and Apple itself is mistaken.  So that

11  would only be fair.

12       So after all -- all of the challenges are -- on both sides

13  evidence has been challenged and so forth, if Apple still

14  contests the accuracy of any of the claims, claim forms, we

15  will hold a jury trial -- one or more jury trials to go over

16  the contested claims.

17       And how those are going to be organized in the future

18  depends on -- I can imagine, for example, one way to do it

19  would be to say, okay, everyone who worked at the San Mateo

20  store, we'll have one trial for them and, let's say, that store

21  of people.

22       And the 12 people come in and testify, and Apple gets to

23  cross-examine them.  Then the jury goes and decides who's

24  telling the truth; is it Apple or is it the employee?  And then

25  the jury renders a verdict claim by claim.

 1          Then -- now, I want to turn finally -- I'm almost at the

 2     end.   The *de minimus* defense.   One step is to determine whether

 3     it even applies under California law.   So that part we could

 4     probably get started on soon with some briefing on that issue.

 5     But a related issue is whether or not that issue has even been

 6     preserved by Apple.

 7          Now, it's not necessary to put the *de minimus* defense as

 8     part of the summary judgment motion that Apple made before,

 9     because people all the time bring summary judgment motions on

10     one issue instead of every issue in the case, and they think

11     they can win on that one issue and, therefore, they don't need

12     to bring up all the other backup points.

13          But it still has to be that the *de minimus* defense was

14     preserved and placed in issue by Apple.   And for the life of me

15     I don't remember.   I'm going to give you a chance in a minute

16     to explain how and when you did preserve it.

17          But let's assume for the sake of argument that it was

18     preserved and it is a defense.   It will be easy.   We will

19     decide on what *de minimus* means.   So let's say that it means --

20     I'm making this number up out of whole -- I'm not saying --

21     this is not a ruling.

22          I'm saying let's say it means X seconds.   And so if the

23     number of -- if we think that somebody at the XYZ store, that

24     their line was typically less than X seconds standing in line,

25     then the jury could take that into account in reducing a claim.

1          But I'm not going to require the claimants to list every

2     single date that they stood in line and how long they stood in

3     line.  The reason I'm not is because too much time has passed

4     and we can't expect them to remember those dates.  No one

5     could.  If they did, they would not be telling the truth.

6          So Apple is just out of luck on that point and what will

7     happen.

8          And I'm going to using aggregate numbers.  But if the jury

9     decides that within those aggregate numbers there was probably

10    25 percent that was *de minimus*, then the jury can deduct that

11    from the ultimate award to that claimant.

12         All right.  Now, that's -- that's a pretty good summary of

13    how I think this case should proceed.  And I've given it a lot

14    of thought.  So I'm going to start with the plaintiffs and let

15    you try to talk me out of any of that or add or subtract from

16    it.

17         So, plaintiffs, you get to go first, please.

18         **MR. SHALOV:**  Good morning, Your Honor.  This is Lee

19    Shalov, class counsel for the plaintiffs.  Thank you for that.

20    I think this accomplishes much of what we had proposed, and we

21    do appreciate the Court's consideration of this proposals.

22         A couple of items that Apple has agreed to.

23         In terms of additional notice, we would ask the Court to

24    consider, in light of the fact that the names and addresses of

25    the employees that we have are, for the most part, over five

1    and a half years old -- the Court may remember that when we

2    disseminated notice, that was back in the fall of 2015.  So I

3    think it's safe to assume that a number of employees have moved

4    since that time, particularly in light of COVID.

5         And so that to some extent we have stale addresses, and so

6    direct notice and email notice might not be appropriate.  So we

7    think that the manner of notice that Apple has agreed to,

8    including the publication notice, would be appropriate.  So

9    we'd ask the Court to consider, at least, that method of notice

10   to capture people who have moved.

11        We'd also like to ask the Court to consider two other

12   forms of notice that Apple has agreed to.  One is a -- an

13   initial postcard that we plan on sending to employees just to

14   alert them to the fact that a notice is going to be

15   forthcoming.

16        Our proposed claims administrator, Epic, suggests that

17   that's a way to let class members be on the lookout for a

18   detailed notice package, and might be helpful.

19        In addition, Apple has agreed to, and Epic also proposes,

20   a reminder notice that we've found helpful in other cases

21   where, after some period of time after the initial notice is

22   sent out, another short reminder postcard notice is sent to

23   members of the class to remind them of their ability to submit

24   claims and the impending deadline to do that.

25        So we'd ask the Court to consider those additional forms

1  of notice, particularly in light of the fact that Apple has

2  agreed to that.

3          **THE COURT:**  Okay.  So wait, wait.  Can I interrupt

4  you?  I'll give you more time.

5      On the -- are you saying that Apple agreed that the notice

6  would be published in some journal somewhere?

7          **MR. SHALOV:**  Yes.  We proposed six newspapers, Your

8  Honor, in California that cover approximately 80 percent of the

9  population, and proposed a publication notice in those

10 newspapers.

11         **THE COURT:**  Okay.  And Apple's agreed to that?

12         **MR. SHALOV:**  I'll let Apple respond, but I do believe

13 in their papers they acknowledge that they would agree to those

14 forms of publication.

15         **THE COURT:**  And Apple agreed to pay for that?

16         **MR. SHALOV:**  No, Apple has not agreed to pay for

17 anything, Your Honor.

18         **THE COURT:**  You're going to have to pay for it.

19     I don't think it's necessary, but I will allow it if you

20 want to pay for the publication -- you, the plaintiff.  So

21 you're probably going to say no to that, but that's -- I don't

22 think it's necessary.

23         **MR. SHALOV:**  Your Honor, we'll defer to your guidance,

24 clearly.  I just want to let the Court know, as Your Honor

25 probably already does, that in a circumstance where liability

1   has been established -- and based upon the Court's earlier

2   observations, I believe that you will enter a judgment

3   declaring Apple liable -- that the cost of notice shifts to the

4   defendant pursuant to the Ninth Circuit's decision in the *Hunt*

5   case.

6        **THE COURT:**  I agree with all that, but that's only for

7   notice that I think is reasonably necessary.  Something that is

8   icing on the cake, I don't think I should make Apple pay for

9   that, at least at this point.

10       If it turns out that first-class mail is ineffective and

11   the post office change of address is ineffective, then, yeah,

12   publication.  We might have to back up and give it another run

13   with publication.  But right now I don't think that's going to

14   be necessary.

15       But if you wanted to pay for it, I would -- I would order

16   it.

17       Now, let me ask Apple something.  Did you agree to the

18   postcard and to the reminder notice?

19       **MS. DUNN:**  This is Julie Dunn, Your Honor.

20       Apple did agree in its opposition to the process that if

21   the Court concluded that was appropriate, Apple would agree to

22   it.  But you're correct that that was all on the assumption

23   that plaintiffs would be paying for notice.

24       Apple agrees with your proposed notice plan and agrees to

25   pay for it, so -- the notice plan you outlined earlier in the

1    hearing.

2         **THE COURT:**  Well, I'm going to -- I'm going to add to

3    that the reminder notice at your expense but not the upfront

4    postcard notice.  So I like the idea of the reminder notice.

5         All right.  That would just be for the people who have not

6    responded but it had not come back undelivered.  Let's say that

7    that's probably going to be 5 to 10 percent, max, on the

8    original group.

9         All right.  Okay.  Now, I interrupted the plaintiff.  You

10   were -- because you had more to say.  And so I've now addressed

11   the points you've made on notice so far, but please continue

12   on.

13        **MR. SHALOV:**  Thank you, Your Honor.  Lee Shalov again.

14        Two other points, Your Honor.  I just wanted to get the

15   Court's guidance on our ability to communicate with class

16   members regarding claims.

17        I'm sure the Court knows that we have been appointed as

18   class counsel and that frequently in these types of cases class

19   members will call with questions, they'll ask for information,

20   they'll ask us, they'll ask the claims administrator.

21        And Apple appears to have taken the position that no form

22   of communication is appropriate.  We just think that's wrong,

23   Your Honor, for a number of reasons.

24        **THE COURT:**  Well, I agree with you.  Wait, wait, wait.

25   I agree with you.  You're their lawyer right now.

1          Apple, what possible -- these people might need some

2     guidance from their lawyer.   And I think class counsel has

3     every right to speak to his clients.

4          So what -- what does Apple think here?

5          **MS. DUNN:**   Thank you, Your Honor.   This is Julie Dunn

6     speaking.

7          In our opposition, Your Honor, we did not object to class

8     counsel or the administrator providing guidance regarding how

9     the claim form was to be filled out.

10         The objection submitted, Your Honor, was to plaintiffs'

11    proposal that class counsel and the claims administrator could

12    contact class members and advise them as to how to respond to

13    the form.

14         More specifically, they indicated they would look for,

15    quote-unquote, outliers, people who reported too little time or

16    people who reported too much time.   They would contact them and

17    encourage them to change their responses.

18         We thought that, Your Honor, was inappropriate and akin to

19    this court's standing rule with respect to, for example,

20    depositions, that an attorney cannot coach a witness regarding

21    how to testify when providing testimony under oath.   That was

22    the limited purpose, Your Honor.

23         We point to Federal Rule of Civil Procedure 24(d)(1)(B).

24    As the Court, I'm sure, knows, under that rule the Court can

25    issue rules that require -- under (B), it says the Court may

 1  require communications to protect class members and fairly

 2  conduct the action, giving appropriate notice to some or all of

 3  the class members of... and then it goes through.

 4      So under the Court's authority, pursuant to Rule

 5  23(d)(1)(C), we ask that the Court provide orders to ensure

 6  that the litigation is fairly conducted.

 7      And we submit, Your Honor, that it would be inappropriate

 8  to contact class members and say, we'd like you to revise your

 9  sworn testimony because we think you are a, quote-unquote,

10  outlier.

11          THE COURT:  Well, how's this as a solution to that

12  more limited problem?

13      I want to be clear that before anybody submits a claim, in

14  my view, class counsel has a right to talk with their clients

15  and explain how to fill out the form.

16      I realize that there's a theoretical risk of coaching and

17  so forth, okay, but, nevertheless, they are the lawyers, and

18  I'm going to presume that they honor their ethical obligations.

19      But once somebody has signed it under oath and submitted

20  the form, then I don't want anybody contacting them to try to

21  change it unless you get my prior approval.

22      So you'd have to make a motion at that time and explain

23  why there's a need to talk to the -- to try to revise the sworn

24  statement by the claimant.

25      So I think that's the way we're going to handle that piece

1   of it.

2     All right.  Plaintiff, what's your next point that you

3   have heartburn over?

4     **MR. SHALOV:**  Yes.  One final item, Your Honor.  Thank

5   you.

6     You had indicated that in the claim form employees would

7   have to identify the dates they worked and the stores they

8   worked at.

9     We had proposed, in light of the fact that Apple has this

10   information, that Apple provide the information in a Excel

11   database to the claims administrator so it could be auto

12   populated in the claim forms.

13     That's something that's been done in other cases,

14   particularly in a circumstance where employees have worked at

15   stores eight, nine, ten years ago.

16     I think it would help make the process more effective and

17   efficient if Apple provided us with that information and we

18   included it already in the claim form to allow -- to avoid a

19   situation where employees who forget that information don't

20   have to think back many, many years to what took place.

21     **THE COURT:**  You know, I like that idea.  And I've used

22   that in other cases.

23     It would be something like the notice, it's simple, that

24   says, Dear Mr. X, our records show that you worked at the

25   San Mateo store of Apple from June 3rd, 2012 to June 1, 2015.

1   And if this is incorrect, then please give the correct

2   information.

3        Then go on to state what the -- give blanks to fill in as

4   to the approximate number of times they stood in line and the

5   estimate of how long each -- how long they stood in line each

6   time.

7        So that would be -- I think I like that idea.  But that

8   turns on whether or not Apple actually has the data.

9        So let me ask Ms. Dunn, do you have the data, Ms. Dunn?

10        **MS. DUNN:**  Yes, Your Honor.  Apple does have that

11   data.

12        And, sorry, for the court reporter, this is Julie Dunn

13   speaking.

14        Your Honor, with respect to the claim form, if you'll take

15   a look at Exhibit K to the Riley Declaration, I wanted to

16   clarify that Apple's proposed claim form did not ask class

17   members to report by dates they participated in checks.

18        Instead, kind of along the lines of what you were

19   discussing, it asks the class members to identify the stores at

20   which they worked and at which they participated in checks.

21        And then, for each of those stores, it asks them whether

22   they participated in checks when leaving for meal periods and

23   whether they participated in checks when leaving at the end of

24   their shift.

25        So -- and then for those checks, just estimate the amount

```
 1    of time in seconds or minutes.

 2            THE COURT:  Well, what -- all right.  I missed that,

 3    but let me quiz you on it a minute.  Why would it make a

 4    difference?

 5        I don't like burdening the class members with more and

 6    more blanks to fill in, but if there's a very good reason for

 7    it, maybe we should do it.

 8        So what is the reason for separating out end of the day

 9    versus lunchtime?

10            MS. DUNN:  Your Honor, some employees may not have

11    left for meal periods.  Some employees may not have taken bags

12    out at meal periods.  Some people may have eaten on site.  So

13    that's why we're asking.

14        And, for that matter, some stores may have decided we

15    don't do checks during the middle of the day, but at the end of

16    the day or end of a shift they would.  So to account for that,

17    we just wanted to clarify, because it would matter in

18    accumulation of total amount for the day and total amount for

19    the week.

20        So let's say somebody says, yes, I participated in checks

21    at that store and they lasted on average 30 seconds.  We

22    wouldn't know if that's 30 seconds each shift or 60 seconds

23    each shift, because they did one at the meal period and they

24    did one at the end of their shift.

25            THE COURT:  Well, I'm still confused.
```

1          Let's -- I'll give you a hypothetical.  Let's say that an

2     employee answers the type of form that I was proposing and

3     says, "I estimate that I stood in line 100 times," and,

4     further, that they say, "I stood in line for 45 seconds each

5     time."

6          So why does it matter whether they stood in line at lunch

7     breaks versus end of the day?  Were they --

8               **MS. DUNN:**  Your Honor --

9               **THE COURT:**  Were they compensated at the lunch break?

10              **MS. DUNN:**  They were not, Your Honor.  They were not.

11    That is correct.  We thought it would be -- yes.

12         Go ahead, Your Honor.  I apologize.

13              **THE COURT:**  I'm just trying to understand how it would

14    affect the accuracy of our awards if some of it was lunchtime

15    versus some of it was at the end of the day.

16         Why does it even matter?

17              **MS. DUNN:**  I fully understand, Your Honor.

18         We thought it would be fairer to the class member so that

19    they weren't confused and didn't think they could only report

20    once.  That's all we're saying.

21         We thought, for each store, if they could testify yes or

22    no that they participated in checks at the meal period, yes or

23    no at the end of the shrift, and for each of those checks they

24    provided a time estimate.  That's what we're saying, Your

25    Honor.

1   If Your Honor thinks that one number puts the class member

2 on sufficient notice, that when we say give us a total number

3 of checks you participated in -- oh, by the way, Your Honor,

4 the one problem with your proposal is, if they participated in

5 a check when leaving for a rest break, that would have been

6 paid.  And I think you probably noted in plaintiffs' papers

7 they included discussion of checks at rest breaks.

8   Those couldn't be at issue here in their complaint, as we

9 noted in the opposition, makes clear it's checks occurring

10 during unpaid periods of time, like when leaving for a meal

11 period or leaving at the end of a shift.

12   So your proposal --

13   **THE COURT:**  Well, the form -- those are good points.

14   The form -- claim form should make clear that it would not

15 be for rest breaks, not to include rest breaks.  Because, in

16 other words, if that was already compensated then those fall

17 away.

18   But is it remotely possible -- not remotely possible.  Is

19 it plausible that the length of a line was less at lunch time

20 than less at the end of the day?

21   **MS. DUNN:**  Absolutely, Your Honor.  You can imagine

22 all sorts of scenarios.  But if you're in a small store and

23 they stagger meal periods so that, you know, they have

24 sufficient coverage, an employee may leave and encounter no

25 line.

1    If they leave at the end of the shift, they might be

2    leaving with other employees, and then that may result in more

3    people having their bags checked at the same time.

4    So that's what we're accounting for in asking for

5    different estimates for each type of check.

6              **MR. SHALOV:**  May I respond, Your Honor?

7              **THE COURT:**  Yes, please.  Go ahead.

8              **MR. SHALOV:**  I share Your Honor's observation that

9    really, as a substantive matter, it doesn't make any difference

10   at all whether somebody took -- endured a check during a meal

11   period or at the end of a shift.

12   The reality is that a check is a check whenever it

13   occurred, and that an employee should be compensated either for

14   checks during meal periods or checks at the end of a shift.

15   And the reality is that, as a practical matter, requiring

16   employees to try to remember seven, eight, nine, and even ten

17   years ago when their checks occurred during the period of a

18   day, when they probably went through hundreds, if not thousands

19   of checks for some members of the class over an extended period

20   of time, it's just not reasonable.

21   And so under the circumstances, particularly when,

22   substantively, it doesn't make any difference at all, we don't

23   think that delineating between meal periods and end-of-shift

24   periods is the prudent way of taking care of this.

25             **THE COURT:**  Well, I can imagine one scenario where it

1    would matter.  Let's say that somebody said, I took a hundred

2    breaks at lunch and a hundred breaks at the end -- not breaks,

3    but -- that's the wrong term -- I had to stand in line 100

4    times at the end of the day and I had to go through the bag

5    check 100 different times, but at lunchtime the line was always

6    short and it was never more than 20 seconds.

7        And so let's say that we decide that 30 seconds is a

8    *de minimus* cutoff.  I'm not ruling that now, by the way.  I'm

9    just saying that hypothetically.  Then all of those that were

10   in the lunch line would be less than 30 seconds, or at least --

11   I don't -- there'd be an argument.

12       If we let them -- if we let them break it out now, Apple

13   would -- if *de minimus* is, in fact, a defense, Apple will be

14   entitled to ask at those depositions, okay, let's break down

15   your gross number into lunch versus did you ever go out at

16   lunch?

17       Answer:  Yes.

18       Did you have to stand in line?

19       Well, not as often.

20       Would this be a way to facilitate getting to the heart of

21   it quicker?  Let me -- I want to hold that thought for a

22   second.

23       Go ahead and tell me your next point.  But it's not

24   clear-cut to me what we should do there.  Go ahead.

25           **MR. SHALOV:**  Understood, Your Honor.  Lee Shalov.

1    Perhaps I can make a recommendation, because I am

2  concerned about potential confusion amongst plaintiffs members'

3  inability to recollect.

4    Perhaps if we asked class members whether they can recall

5  if there were different times, waiting times, associated with

6  meal periods and then the shift periods, that they provide that

7  information.  But if they can't, then just to provide an

8  aggregate number for both events; that is, meal periods and

9  end-of-shift periods, so that we don't --

10    **THE COURT:**  That's -- but that's asking them to -- you

11  know, that has the problem of you have more lines to fill in.

12    Let me ask Apple a question.

13    At the end of the day everybody leaves, but did -- was

14  there a break room or someplace on premises that employees

15  could go for lunch?

16    **MS. DUNN:**  Your Honor, there were various options at

17  various stores.  So, yes, some employees could choose to eat in

18  the break room on site.  Some stores had both an on-site break

19  room and an off-site break room.  Other employees might decide

20  to leave and eat somewhere in the mall.  So lots of options at

21  meal periods.

22    And, by the way, Your Honor, some of those remote break

23  rooms, the employees could leave their lunch in the remote

24  break room, go to the store to work, come back without a check

25  and eat lunch in the remote break room because they had no bag

1    to be checked.

2         So that's why we're trying to break down between meal

3    periods and end of shift.  They're different events with

4    different facts and circumstances surrounding them.

5         In thinking forward to the discovery phase and the trial

6    phase, it's not a burdensome amount of information we're asking

7    for.  It's just, for each store that they worked and for each

8    year that they worked at the store, did they participate in

9    checks at meal periods?  Yes, no, sometimes.

10        And if it's yes or sometimes, what amount of times would

11   they estimate.  And we'd leave a blank and ask them to circle

12   seconds or minutes.

13        If we prepopulate this, we can --

14             THE COURT:  Why do we need to ask them year by year?

15        Let's say somebody worked three years.  Why can't they

16   just give an aggregate number?  Even under your view, it would

17   be broken out lunchtime searches and then how long that lasted,

18   and then end-of-the-day searches, how long those lasted, and

19   not require year by year.

20             MS. DUNN:  Your Honor, I believe --

21             MR. SHALOV:  Yeah, I think --

22             MS. DUNN:  -- it's plaintiffs' suggestion that we

23   prepopulate with the stores at which they worked.  We could

24   resolve that, because if we just say here are the stores at

25   which you worked, then they can answer those questions.

1    We would just make clear on the claim form, this is a list

2    of the stores at which you worked.  If you worked there and

3    participated in a check, please answer these questions.  And

4    then we wouldn't need to do the year by year.

5         **THE COURT:**  Go ahead, plaintiff.

6         **MR. SHALOV:**  Yeah.  Your Honor, at this point we start

7    getting concerned that we're undermining the Court's directive

8    to have a simple and concise claim form where we're really just

9    asking class members for information concerning the two salient

10   questions, which are, you know, how many bag checks did you

11   endure, how long did those checks take?

12        And so, now, in the circumstance where Apple is proposing

13   that we separate it out by meal and shift periods, and then we

14   start asking people to separate it out by years, we're sort of

15   inconveniencing people, taxing their memories, and asking for

16   unrealistic responses from class members and making this more

17   difficult than it needs to be.

18        **THE COURT:**  Look, I've got to move on here.

19        Here's what I want you to do.  We're not going to break it

20   out by year.  Just an overall number.  But I do think it should

21   say expressly do not include rest period breaks.

22        But with respect to lunch breaks, how many times do you

23   think you were searched and how long was the average for those?

24   And then a second, for the end of the day, how many times were

25   you searched and what was the average?  That would be four

1 | blanks to fill in.  How many times, average duration for both

2 | of those two times.

3 |     Make clear in the intro that they should not include rest

4 | breaks.  And then populate it with the information that is

5 | available from Apple as to the stores they worked at and when,

6 | but also give them the -- a blank to -- optional blank to

7 | correct that information in case their memory of it is

8 | different.

9 |     **MR. DION-KINDEM:**  Your Honor, this is Peter

10 | Dion-Kindem.  If I could make a suggestion in terms of

11 | prepopulating the claim form, in addition to the dates of

12 | employment, Apple has the data as to the number of shifts they

13 | worked.

14 |     So I think that would be helpful to tell the claimants

15 | that they worked X number of shifts.  Then they can use that

16 | information to determine, you know, the number of meal breaks

17 | and the number of times.  So I think -- and Apple has the

18 | information.  Just giving them the dates of employment is not

19 | as helpful as the number of shifts, which Apple has.

20 |     Thank you.

21 |     **THE COURT:**  What does Apple say to that?

22 |     **MS. DUNN:**  Your Honor, it would obviously take much

23 | longer to pull that and to pull it accurately.  I'd have to

24 | confer with my client to determine how burdensome it is to pull

25 | the number of shifts worked at each store.

1          **THE COURT:**  I'm kind of leaning against that idea

2    because I'm a little afraid that, by saying how many shifts

3    they worked, that that will be too much of a suggestion to say,

4    well, every single time -- you know, I worked 619 shifts, so

5    every single time, and then -- and not try to actually think it

6    through the number of times, if they, in fact, did have to go

7    through the search.  So I'm against that idea.

8         All right.  I need to move on to the next case.  I didn't

9    give Apple --

10        Apple, do you have any heartburn over my proposal as

11   amended?

12        **MS. DUNN:**  Your Honor, the -- the one question we had

13   was with respect to providing notice that class members may opt

14   out.

15        It was our understanding that, at the class action notice

16   juncture, that employees were given the opportunity at that

17   time to opt out, and that if they did not, then they were bound

18   by the proceedings as they went forward.

19        **THE COURT:**  That is true.  That is true.  And it's

20   discretionary with the district judge whether to give them

21   another -- all right.

22        So you don't want them to opt out.  You want them to be

23   stuck in this case.  Is that it?

24        **MS. DUNN:**  Well, Your Honor, it would be cumbersome

25   to -- we defer to Your Honor on that.  If you want to include

1  an opt-out, we're perfectly fine with it.

2       **THE COURT:**  If you both agree that you don't want an

3  opt-out, I guess I'll go along with that.

4       But it's been so long, I somehow feel like if they do have

5  to -- some people might say, "I don't want to go through that.

6  I don't want my deposition taken.  I'll just opt out."  Or "I

7  don't want to put something under oath," and so they just don't

8  want to go through with it.

9       So I feel -- but if the plaintiff wants to delete the

10  opt-out, I will, because it's not required the second time

11  around.

12      Well, wait a minute.  That's not right.  Didn't you expand

13  the class?  I think you did.

14      **MS. DUNN:**  Your Honor, this is Julie Dunn speaking.

15      The damages period was expanded from the date of

16  August 10th, 2015, through December 17th, 2015.

17      **THE COURT:**  All right.

18      **MS. DUNN:**  But the composition, the members of the

19  class, was not changed.

20      **THE COURT:**  Even if there were other employees?

21      In other words, the first group of -- are you saying that

22  anyone who was a member of the second little tagalong period,

23  those names would be identical to the ones in the prior period

24  who already got notice?

25      **MS. DUNN:**  That is correct, Your Honor.

1      **THE COURT:**  Okay.  Well, if that's true -- but if

2   there's even one additional person who has been -- who has

3   been -- what's the word I'm looking for? -- folded into this

4   class action, who wasn't in the first one, they have a right to

5   opt out.  And it would be wrong to -- it kind of surprises me

6   that your employee group would be the same before and after

7   that August date.

8      **MS. KRALOWEC:**  Your Honor, this is Kim Kralowec for

9   the plaintiffs.

10      The membership of the class has not changed.  The parties

11   stipulated to allow the existing class members to claim damages

12   through the additional four months in December.  But there has

13   been no stipulation to change the membership in the class, so

14   there are no new additional class members who did not

15   previously receive an opportunity to opt out.

16      And I think that if someone decides that they -- you know,

17   they don't want to be deposed, their solution is not to submit

18   a claim form.  I think the chances that someone who doesn't

19   submit a claim form would be deposed in this case are probably

20   nonexistent.

21      **THE COURT:**  All right.  Well, that's a fair point too.

22      What you say, though, I didn't realize, raises the specter

23   that there are people from August to December of 2015 who are

24   not in the class, but, nevertheless, were subject to the bag

25   check, and that another lawyer out there is already writing the

1   class action complaint to cover that omitted group.

2        So that's what you lawyers want, so three.  All right.

3            **MS. KRALOWEC:**  Your Honor, this is Kim Kralowec again.

4        That is possible.  And we urged Apple to stipulate to add

5   any such additional persons to the existing class.

6        I tried very hard to persuade Apple that it should want to

7   obtain complete peace for this bag check claim, but Apple did

8   not want to add those additional persons to the class.  It

9   would have been an easy solution to stipulate to add them, but

10  that's where we stand right now.

11       **THE COURT:**  Okay.  I'm not going to criticize

12  either -- what you say is reasonable.  And, actually, that's

13  what I thought had happened, but now I stand corrected.

14       But I can -- you know, I'm just saying I can see within

15  three months Apple will get sued in the tagalong case.  Maybe

16  the statute of limitations has run.  I don't know.  I don't

17  know how that works.

18       Okay.  All right.  Leave out the opt-out.  We don't need

19  to complicate it.  Just leave the second opt-out omitted.  Omit

20  that out.  That was a mistaken idea on my part because I

21  misunderstood where we were in the case.

22       Okay.  Does Apple have any other heartburn issue?

23       (No response.)

24           **THE COURT:**  Okay.  Here's what I want the lawyers to

25  please do.  I want you to meet and confer and draft an order

1   that just sticks to the timeline and the plan going forward.

2        And, please, I didn't cover everything exactly, but what I

3   want you to do is be reasonable and carry out the objectives

4   here and submit that to me with the timeline in the form of an

5   order.  And it will have the form of the notice so that I can

6   look at that one more time, and also the claim form.

7        And, again, I stress the claim form should be simple, one

8   page, under oath, the information that I suggested earlier, and

9   be prepopulated with -- so the example you give me should be an

10  example of one that is prepopulated so that I can see how

11  that's going to look to the recipient.

12       All right.  So I want you to do that -- today is Thursday;

13  right?  How about by next Tuesday?  Can you give me that?  Or

14  is that too soon?

15       Plaintiff first.

16       **MR. SHALOV:**  For plaintiffs, Your Honor, Lee Shalov.

17       We'll undertake our best efforts to give it to you by

18  Tuesday.

19            **THE COURT:**  You've got to meet and confer.

20       **MR. SHALOV:**  Yes.

21            **THE COURT:**  Agree.  Yeah.  Okay.

22       **MR. SHALOV:**  Understood.

23            **THE COURT:**  All right.  And how about that, Ms. Dunn?

24            **MS. DUNN:**  Your Honor, two things.  I was on mute when

25  you asked if we had additional issues.  And if I can just note

1    that we'd like to reserve our right to address these issues as

2    they come up.

3        The first is that the Court indicated it would take the

4    amount of time reported by class members and multiply it by the

5    hourly rate.  We just wanted to note this is a minimum wage

6    claim, and so if it is nonovertime time, it would be multiplied

7    by the minimum wage in effect.

8        Second, the Court indicated that it would conduct trials

9    of all claims from particular stores.  We'd like to address

10   that once the claims process is done, because the practices in

11   any given year may be different and we may get claimants from

12   different years for different stores.

13       And then, lastly, Your Honor, you had not addressed

14   motions *in limine*, but we do want to make sure that there is

15   time built in for Apple to submit its motions *in limine*, some

16   of which will apply classwide and some of which will be

17   individualized.

18           **THE COURT:**  Well, all right.  On the latter point, in

19   your timeline put in a final pretrial conference and then put

20   in some deadlines for bringing motions *in limine*.  And if

21   you're going to have experts, you've got to have a date for

22   expert disclosures there.

23       That's -- but I don't think we're going to reopen fact

24   discovery except with respect to the individual claims.  Roll

25   those dates in.

1        Now, with respect to your point about what will the trial

2    look like, yeah, I'm leaving all of those issues open for

3    future determination.  It could be 14 trials.  It could be one

4    big trial.

5        I don't know yet how we're going to -- and by one big

6    trial, I mean one where -- I can imagine this -- we have a

7    jury, the jury goes and decides the first ten cases, comes back

8    and renders a verdict.  And then they continue on, same jury.

9    We go to the next ten.  They come back, render a verdict on the

10   next ten.

11       You know, I know that's a little innovative, but I defy

12   you to find any case law that says you can't do that.  So there

13   are many possibilities here so that we don't burden too many

14   juries.

15       All of those -- the form and shape of the trial or trials

16   is open for discussion down the road once we see how many claim

17   forms are actually going to be contested.

18       Okay?

19       **MS. DUNN:**  Thank you, Your Honor.

20       And if we could have until next Friday?  I have some

21   hearings in the interim.

22       **THE COURT:**  Okay.

23       **MS. DUNN:**  And so if we could have until next Friday

24   to submit those documents, that would be appreciated.

25       **THE COURT:**  All right.  Friday at noon.  Friday at

1    noon.  All right.

2              MS. DUNN:  Thank you, Your Honor.

3              THE COURT:  Okay.  Good luck to both sides.  And

4    someday we'll have this case behind us.

5              MR. SHALOV:  Thank you, Your Honor.

6              THE COURT:  Maybe I'll still be alive.  Okay.

7              MR. SHALOV:  Thank you.

8              MS. DUNN:  Thank you, Your Honor.

9              THE COURT:  You all hang up.  Thank you.

10         (At 9:05 a.m. the proceedings were adjourned.)

11                         - - - - -

12

13                   __CERTIFICATE OF REPORTER__

14         I certify that the foregoing is a correct transcript

15    from the record of proceedings in the above-entitled matter.

16    DATE: Wednesday, March 3, 2021

17

18

19                 _Katherine Sullivan_

20         _____

21         Katherine Powell Sullivan, CSR #5812, RMR, CRR
                        U.S. Court Reporter
22

23

24

25