Lee Shalov (admitted *pro hac vice*)
lshalov@mclaughlinstern.com
Brett Gallaway (admitted *pro hac vice*)
bgallaway@mclaughlinstern.com
Jason Scott Giaimo (admitted *pro hac vice*)
jgiaimo@mclaughlinstern.com
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Tel:     (212) 448-1100
Fax:     (212) 448-0066

Kimberly A. Kralowec (CA Bar No. 163158)
kkralowec@kraloweclaw.com
Kathleen Styles Rogers (CA Bar No. 122853)
krogers@kraloweclaw.com
**KRALOWEC LAW, P.C.**
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:     (415) 546-6800
Fax:     (415) 546-6801

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRELKIN, TAYLOR KALIN, AARON GREGOROFF, SETH DOWLING, and DEBRA SPEICHER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. C 13-cv-03451 WHA (lead)<br>Case No. 13-cv-3775 (consolidated)<br>Case No. 12-cv-4727 (consolidated)<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  December 16, 2021<br>Time: 8:00 a.m.<br>Place: Ctrm. 12, 19th Floor<br>Judge: Hon. William Alsup |

**<u>NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF</u>**
**<u>CLASS ACTION SETTLEMENT</u>**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 16, 2021, at 8:00 a.m., or as soon thereafter as the matter may be heard, plaintiffs Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Taylor Kalin, and Debra Speicher ("Plaintiffs") will and hereby do move the Court for preliminary approval of the proposed class action settlement and request that the Court:

1. Preliminarily approve the proposed class action settlement reflected in the Settlement Agreement ("Settlement") (attached to the Joint Declaration of Lee S. Shalov and Kimberly A. Kralowec in Support of Plaintiffs' Motion for Preliminary Approval of Settlement dated November 12, 2021 ("Declaration") as Exhibit 1)[1];

2. Approve the parties' proposed notice of the Settlement in the forms attached to the Settlement as Exhibits A and B;

3. Authorize distribution of the parties' proposed notice of the Settlement to Settlement Class Members in the manner described in the Settlement;

4. Modify the existing class definition, for settlement purposes only, to include the New Class Members (as defined in the Settlement);

5. Set deadlines for Settlement Class Members to submit any objections to the Settlement and for New Class Members to opt out of the Settlement;

6. Set a briefing schedule and hearing date for the motion of Class Counsel for an award of attorneys' fees, costs, and service awards for the named plaintiffs; and

7. Schedule a final fairness hearing for final approval of the Settlement.

Plaintiffs make this motion on the grounds that the Settlement is fair, reasonable, and adequate and within the range of possible final approval, and notice should therefore be provided to the Class. This motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in

---

[1]     Unless otherwise defined, capitalized terms used in this notice of motion and in the brief below shall have the same meaning as used in the Settlement.

1  Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; the Declaration,

2  together with the exhibits annexed thereto; the Declaration of Matthew Riley, filed herewith; the

3  Settlement Agreement, filed herewith; the [Proposed] Order, submitted herewith; any oral argument

4  of counsel; all other papers and records in the Court's file, and such additional matters as the Court

5  may consider at the hearing.

6  Dated: November 12, 2021

7                                          Respectfully submitted,

8                      By:      /s/Lee S. Shalov
                                Lee S. Shalov
9                               Brett R. Gallaway
                                Jason S. Giaimo
10                              McLaughlin & Stern, LLP
                                260 Madison Avenue
11                              New York, NY 10016
                                Tel: (212) 448-1100
12                              lshalov@mclaughlinstern.com
                                bgallaway@mclaughlinstern.com
13                              jgiaimo@mclaughlinstern.com

14
                                Kimberly A. Kralowec
15                              Kathleen Styles Rogers
                                Kralowec Law, P.C.
16                              750 Battery Street, Suite 700
                                San Francisco, CA 94111
17                              Tel: (415) 546-6800
                                kkralowec@kraloweclaw.com
18                              krogers@kraloweclaw.com

19
                                *Attorneys for Plaintiffs and the Class*
20

21

22

23

24

25

26

27
                                              2
28     MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
       Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 3

II.  SUMMARY OF THE LITIGATION ..................................................................... 4

A.  The Consolidated Complaint, Class Certification, and the 2015 Class Notice ...................... 4

B.  The Summary Judgment Decision and Plaintiffs' Appeal ........................................ 6

C.  The Ninth Circuit Certified the Central Liability Question to the California Supreme Court, Which Found All Search-Related Time Compensable Under the "Control" Test .. 6

D.  The Ninth Circuit Directs Entry Of Summary Judgment In Plaintiffs' Favor ........................ 7

E.  Summary Judgment Entered In Plaintiffs' Favor ........................................................ 7

F.  The Expanded Damages Period ........................................................................ 8

G.  The Court-Ordered Damages Claim Process for Purposes of Trial ............................... 8

H.  Multiple Mediation Sessions ........................................................................... 8

I.  The Settlement Agreement ............................................................................. 9

   1.  Consideration ........................................................................................... 9

   2.  Releases ................................................................................................. 10

   3.  Allocation and Calculation of Individual Class Payments ............................ 10

   4.  Modified Class Definition for Settlement Purposes ..................................... 11

   5.  Notices ................................................................................................... 12

   6.  Requests for Exclusion and Notices of Objection ....................................... 12

   7.  The Effective Date and Distribution of Payments ...................................... 13

III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL ............................. 13

A.  For Settlement Purposes Only, the Class Definition Should Be Slightly Modified .............. 14

B.  The Settlement is Fair, Reasonable and Adequate .............................................. 15

   1.  The Strength of Plaintiffs' Case Weighed Against the Risks, Expense, Complexity and Likely Duration of Further Litigation ......................... 15

   2.  Risk of Maintaining Class Action Status ................................................. 17

   3.  Amount Offered in Settlement ............................................................... 17

4.  Extent of Discovery Completed and the Stage of the Proceedings .................................. 19

5.  Experience and Views of Counsel ........................................................................ 20

6.  The Presence of a Governmental Participant .................................................... 20

7.  The Reaction of the Class Members to the Proposed Settlement .................................. 21

C.  The Preliminary Approval Standard is Met ........................................................ 21

1.  The Settlement is Within the Range of Possible Approval ............................................. 21

2.  The Settlement Resulted from Arms'-Length Negotiations ............................................ 21

3.  The Settlement is Devoid of Obvious Deficiencies ........................................................ 22

IV. THE PROPOSED NOTICES AND NOTICE PROCEDURE SATISFY DUE PROCESS ........ 24

V.  CONCLUSION ................................................................................................ 25

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Barnes v. AT&T Pension Ben. Plan-NonBargained Program*,
   273 F.R.D. 562 (N.D. Cal. 2011) ............................................................................ 14

4

*Blair v. Rent-A-Center, Inc.*,
   2020 WL 408970 (N.D. Cal. Jan. 24, 2020) ............................................................ 15

5

6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................. 22

7

*Brooks v. Lines*,
8   2011 WL 13374341 (N.D. Cal. May 13, 2011) ................................................. 21, 25

9

*Caudle v. Sprint/United Management Co.*,
   2019 WL 2716291 (N.D. Cal. June 28, 2019) ......................................................... 22

10

*Chavez v Converse Inc.*,
11   15-cv-3746, Dkt. Nos. 210, 219 (N.D. Cal. 2015) ............................................ 11, 19

12

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................... 24

13

*Class Plaintiffs v. City of Seattle*,
14   955 F.2d 1268 (9th Cir. 1992) ................................................................................. 13

15

*Clemens v. Hair Club for Men, LLC*,
   2016 WL 11680926 (N.D. Cal. Sept. 22, 2016) ...................................................... 24

16

*In re Critical Path, Inc.*,
17   2002 WL 32627559 (N.D. Cal. June 18, 2002) ....................................................... 19

18

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................ 23

19

*Echavez v. Abercrombie & Fitch Co., Inc.*,
20   2017 WL 3669607 (C.D. Cal. Mar. 23, 2017) ........................................................ 24

21

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................................. 24

22

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
23   253 F. Supp. 3d 1074 (C.D. Cal. 2017) ............................................................ 23, 24

24

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ................................................................................. 13

25

*Frlekin v. Apple Inc.*,
26   8 Cal.5th 1038 (2020) ....................................................................................... 3, 6, 7

27

28

*Frlekin v. Apple*,
   2015 WL 6851424 (N.D. Cal. Nov. 7, 2015) ........................................................... 6

*Frlekin v. Apple, Inc.*,
   2015 WL 4365374 (N.D. Cal., July 16, 2015) ...................................................... 5

*Frlekin v. Apple, Inc.*,
   870 F.3d 867 (9th Cir. 2017) ................................................................................ 6

*Frlekin v. Apple, Inc.*,
   979 F.3d 639 (9th Cir. 2020) ................................................................................ 7

*Greer v. Dick's Sporting Goods*,
   15-cv-01063, Dkt. Nos. 73, 89 (C.D. Cal. 2015) ........................................... 11, 19

*Greko v. Diesel U.S.A., Inc.*,
   2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ..................................................... 21

*Gribble v. Cool Transports Inc.*,
   2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ..................................................... 20

*Guerrero v. Wells Fargo Bank, N.A.*,
   2014 WL 1365462 (N.D. Cal. Apr. 7, 2014) ....................................................... 22

*Gutilla v. Aerotek, Inc.*,
   2017 WL 2729864 (E.D. Cal. Mar. 22, 2017) ..................................................... 24

*Harris v. Vector Marketing Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ..................................................... 21

*High-Tech Employee Antitrust Litig.*,
   2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ...................................................... 14

*Jordan v. NCI Group, Inc.*,
   2018 WL 1409590 (C.D. Cal. Jan. 5, 2018) ................................................. 23, 24

*Karl v. Zimmer Blomet Holdings, Inc.*,
   2021 WL 2987119 (N.D. Cal. July 15, 2021) ...................................................... 18

*Laffitte v. Robert Half Int'l Inc.*,
   1 Cal.5th 480 (2016) ............................................................................................ 22

*Lao v. H&M Hennes & Morvitz, LP*,
   16-cv-00333, Dkt. Nos. 158, 167 (N.D. Cal. 2016) ....................................... 11, 19

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................ 20

*Low v. Trump University, LLC*,
   881 F.3d 1111 (9th Cir. 2018) ............................................................................. 12

*Maldonado v. Epsilon Plastics, Inc.*,
  22 Cal. App. 5th 1308 (2018) .................................................................................. 18

*Mangold v. Calif. Public Utilities Comm'n*,
  67 F.3d 1470 (9th Cir. 1995) .................................................................................. 22

*McLeod v. Bank of America*,
  2018 WL 5982863 (N.D. Cal. Nov. 14, 2018) ........................................................ 24

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................. 21

*Mejia v. Walgreen Co.*,
  19-cv-00218, Dkt. Nos. 21, 30 (E.D. Cal. 2019) .................................................... 11

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 13, 15, 16, 19

*Officers for Justice v. Civil Service Commission of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................. 12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .................................................................................. 22

*In re Pacific Enterprises Securities Litigation*,
  47 F.3d 373 (9th Cir. 1995) .................................................................................... 20

*In re Portal Software, Inc. Sec. Litig.*,
  2007 4171201 (N.D. Cal. Nov. 26, 2007) ............................................................... 16

*Roberts v. Marshalls of CA, LLC*,
  2018 WL 510286 (N.D. Cal. Jan. 23, 2018) ........................................................... 23

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2003) .............................................................................. 15, 16

*Saechao v. Landrys, Inc.*,
  2016 WL 3227180 (N.D. Cal. June 11, 2016) .................................................... 18, 25

*See In re LendingClub Securities Litig.*,
  2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ........................................................ 21

*Taylor v. West Marine Products, Inc.*,
  2015 WL 2452788 (N.D. Cal. May 21, 2015) ......................................................... 24

*Tellez v. Ulta Salon, Cosmetics & Fragrance Inc.*,
  18-cv-02480, Dkt. Nos. 32, 41 (S.D. Cal. 2018) .................................................... 11

*In re TracFone Unlimited Service Plan Litigation*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) .................................................................... 17

v

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

*Vikram v. First Student Mgmt., LLC,*
  2019 WL 1084169 (N.D. Cal. Mar. 7, 2019)............................................................... 18

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) .................................................................................. 22

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.,*
  229 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................. 14, 16

*Young v. Polo Retail, LLC,*
  2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ............................................................. 14

**Statutes**

FED. R. CIV. P. 23(e) ....................................................................................................... 24

Fed. R. Civ. Proc. 23(c)(1)(C) ....................................................................................... 14

Fed. R. Civ. Proc. 23(e)(2) ............................................................................................ 15

Labor Code § 2699(l)(2) ................................................................................................ 20

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions,*
  § 11:24-25 (4th ed. 2013)............................................................................................ 21
  § 11:35 (4th ed. 2002).................................................................................................. 14
  § 11:45 (4th ed. 2002).................................................................................................. 19

5 *Moore's Federal Practice,*
  § 23.85(2)(e) (Matthew Bender 3d ed.) ...................................................................... 19

*Manual for Complex Litigation* (3d ed. 1995)
  § 30.41........................................................................................................... 13, 21

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

Since this action was filed in 2013, Plaintiffs Seth Dowling, Amanda Frlekin, Aaron Gregoroff, Taylor Kalin, and Debra Speicher ("Plaintiffs") have vigorously pursued their claims against Apple, Inc. ("Defendant" or "Apple") for failure to pay them and others for time spent undergoing required security searches.  The searches were imposed by Apple in a mandatory policy applicable to all retail sales employees in Apple's California stores.  After obtaining class certification in 2015, Plaintiffs pursued their claims through an appeal to the Ninth Circuit, which led to a resounding victory in the California Supreme Court.  *Frlekin v. Apple Inc.*, 8 Cal.5th 1038 (2020).

Now, Plaintiffs are pleased to present to the Court for preliminary approval the Stipulation Regarding Class and Private Attorneys General Act Settlement and Release ("Settlement Agreement" or "Settlement") entered into with Apple.[2]  If approved, this will be the largest reported settlement in a security search case in California.

The Settlement Agreement provides that Apple will pay $29,900,000 (the "Total Settlement Amount") to settle the claims alleged in this action.  This is a significant, non-reversionary settlement reached after nearly eight years of hard-fought litigation, including comprehensive discovery, Plaintiffs' successful motion for class certification, the parties' cross-motions for summary judgment, and Plaintiffs' appeals to the Ninth Circuit Court of Appeals and the California Supreme Court.  The Settlement was reached only after extensive arms'-length negotiations, including three full-day mediation sessions and a mediator's proposal conveyed at the conclusion of the third session.

The Settlement provides a substantial and immediate recovery for the proposed Settlement Class Members.[3]  If approved, and assuming no further opt outs, the Settlement Class Members are expected to receive an average settlement payment of $1,286.96 each.  This figure represents 160%

---

[2]     The Settlement Agreement is attached to the Joint Declaration of Lee S. Shalov and Kimberly A. Kralowec in Support of Plaintiffs' Motion for Preliminary Approval of Settlement dated November 12, 2021 (the "Declaration") as Exhibit 1, filed contemporaneously herewith.

[3]     "Settlement Class Members" means the 13,884 members of the class certified by the Court in 2015 (excluding opt-outs) plus 799 proposed "New Class Members," as discussed below.

of the $801.13 in average estimated unpaid wages owed to each Class Member—assuming 5 minutes of unpaid security search time per day at the Class Members' average hourly contract rate (as opposed to the minimum wage rates advocated by Apple).  If estimated pre-judgment interest is included, the average settlement payment is 90% of estimated average unpaid wages plus interest.[4]  This is an outstanding result in view of the potential hurdles to recovering monetary relief had the case proceeded through trial.  Notably, the Settlement is non-reversionary and no claim forms are required.

For these and other reasons discussed below, Plaintiffs and Class Counsel believe that this Settlement is more than fair, adequate, and reasonable.  Accordingly, Plaintiffs respectfully request that the Court: (i) preliminarily approve the Settlement; (ii) approve the parties' notices of the Settlement annexed to the Settlement as Exhibits A and B; (iii) authorize distribution of these notices in the manner described in the Settlement and below; (iv) modify the class definition, for settlement purposes only, to include the New Class Members; (v) set deadlines for Settlement Class Members to object to or for New Class Members to object to or opt out of the Settlement; (vi) set a briefing schedule and hearing date for the motion of Class Counsel for an award of attorneys' fees, costs, and service awards for the named Plaintiffs; and (vii) set a final fairness hearing.

## II.   SUMMARY OF THE LITIGATION

### A.   The Consolidated Complaint, Class Certification, and the 2015 Class Notice

Plaintiffs originally commenced this action on July 25, 2013, on behalf of themselves and a proposed class of non-exempt, hourly-paid employees who worked at fifty-two Apple retail stores in California.  *See* Dkt. No. 1.[5]  The action alleges that plaintiffs and the proposed class members were subject to a mandatory, written policy requiring that their bags and Apple products be checked every time they exited a store with those belongings (the "Checks" and the "Check Policy").  *See id.*

Discovery confirmed that Apple's Check Policy, which "appl[ied] to all employees of Apple Inc.," provided that "[a]ll employees" "are subject to personal package and bag searches. Personal

---

[4]   If *minimum* wage rates are used, the average settlement payment equals over 400% of estimated average unpaid wages, or 229% of estimated average unpaid wages plus pre-judgment interest.  For further explanation of the calculations stated in this paragraph, see Part III(B)(3), below.

[5]   For a more detailed recitation of the procedural history and relevant background, Plaintiffs respectfully refer the Court to the Declaration, which is being filed contemporaneously herewith.

technology must be verified against your Personal Technology Card (see section in this document) during all bag searches." Dkt. No. 280-2.  The technology card policy required Apple employees to identify their iPhones and other Apple-branded technology on a personal technology card, including the descriptions and serial numbers of such product(s).  Dkt. No. 280-3.  Thus, the policy stated that every time an Apple employee left a store "for any reason," if carrying an Apple-branded device, he or she had to "ensure the sales leader verifie[d] the serial numbers on . . . the card against the product [the employee is] carrying."  *See id.*  The technology checks occurred at the same time as the bag checks, and according to the policy, Apple employees were not permitted to leave their stores until the Checks were finished.[6]  *See* Dkt. No. 280-1 at 65.  Moreover, the Checks were conducted after an employee "clocked out," so Apple did not compensate its employees for the time associated with the Check Policy.  Apple asserted numerous defenses, including the contention that despite the language of its policy, not all stores conducted Checks, not all employees brought bags or Apple devices to work, and when Checks occurred, they lasted only seconds.

Plaintiffs filed a Consolidated Complaint on January 19, 2015 asserting five causes of action relating to Apple's Check Policy:  (i) First Claim for Relief, for Violations of Lab. Code – Nonpayment of Minimum and Overtime Wages (Cal. Lab. Code §§ 204, 510, 1194, 1194.2 and 1198); (ii) Second Claim for Relief, Violations of California's Unfair Competition Law (the "UCL") (§ 17200 *et seq.*, unlawful prong, predicate violation of Lab. Code §§ 201, 202, 203, 204, 510, and the applicable IWC Wage Order); (iii) Third Claim for Relief, Violations of Lab. Code § 226 – Wage Statement Penalties; (iv) Fourth Claim for Relief, Violations of Lab. Code §§ 201, 202, 203 – Waiting Time Penalties; and (v) Fifth Claim for Relief, Penalties Pursuant to the Private Attorney General Act ("PAGA") (Lab. Code §§ 2698 *et seq.*).  Dkt. Nos. 220-228.  Apple answered the Consolidated Complaint on February 16, 2015.  Dkt. No. 240.

On July 16, 2015, after extensive discovery, briefing and a hearing, the Court certified a "class of all Apple California non-exempt employees who were subject to the bag-search policy from July

---

[6]     Unless otherwise indicated, the generic term "Check" includes all activities associated with Apple's Check Policy, including: (i) the time spent finding a manager to conduct a Check; (ii) the time spent waiting in line for the Check to be conducted; (iii) the time spent having a bag searched; and (iv) the time spent undergoing a technology check.

25, 2009 to the present." *See Frlekin v. Apple, Inc.*, 2015 WL 4365374 (N.D. Cal., July 16, 2015); Dkt. No. 287.[7]  The Court appointed McLaughlin & Stern, LLP and the predecessor to Kralowec Law, P.C. as Class Counsel, with Lee Shalov to "serve as lead counsel." *Id.* at *9.  Notice was mailed to 14,293 Apple employees in August 2015. *See* Dkt. No. 378, ¶ 3.  No employee intervened in the action and 407 opted out, leaving 13,884 certified class members. *See id.*[8]

**B.    The Summary Judgment Decision and Plaintiffs' Appeal**

At the Court's direction, the parties cross-moved for summary judgment on the issue of whether time spent by Apple employees undergoing Checks is compensable under California law. These motions extensively briefed the question of whether the security search time met the tests for compensable "hours worked" under the applicable IWC Wage Order.  On November 7, 2015, the Court granted Apple's summary judgment motion and denied Plaintiffs' cross-motion, concluding that neither the "control" test nor the "suffered or permitted to work" test had been met.  *Frlekin v. Apple*, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015).  Judgment for Apple was entered on November 7, 2015, and Plaintiffs appealed. *See* Dkt. Nos. 340, 342.

**C.    The Ninth Circuit Certified the Central Liability Question to the California Supreme Court, Which Found All Search-Related Time Compensable Under the "Control" Test**

In the Ninth Circuit, Plaintiffs argued that the time spent in bag and technology Checks constituted compensable "hours worked" under both the "control" test and the "suffered or permitted to work" test under California law.  Plaintiffs also requested that the central question of compensability be certified to the California Supreme Court for decision.  After full briefing and oral argument, the Ninth Circuit granted that request.  *Frlekin v. Apple, Inc.*, 870 F.3d 867, 869 (9th Cir. 2017).

The California Supreme Court agreed to decide the following certified question, as modified:

> Is time spent on the employer's premises waiting for, and undergoing, required exit searches of packages, bags, or personal technology devices voluntarily brought to work purely for personal convenience by employees compensable as "hours worked" within the meaning of Wage Order 7?

---

[7]    Apple thereafter sought permission for leave to appeal pursuant to Federal Rule 23(f), which application was denied on October 20, 2015. *See* Dkt. No. 333.
[8]    *See also* Declaration of Matthew Riley in Support of Settlement ("Riley Decl."), filed concurrently herewith, ¶ 2.

1  *Frlekin*, 8 Cal.5th at 1042.  After extensive briefing by the parties, amicus briefing from a number of

2  interested parties, and comprehensive oral argument, the California Supreme Court answered the

3  certified question in the affirmative.  *See id.* at 1042, 1046-57.

4         In reaching its conclusion, the California Supreme Court found that "Apple employees are

5  clearly under Apple's control while awaiting, and during, the exit searches." *Id*. at 1047.[9]  The Court

6  observed that "Apple controls its employees during this time in several ways," including: "requir[ing]

7  its employees to comply with the bag-search policy under the threat of discipline, up to and including

8  termination"; "confin[ing] its employees to the premises as they wait for and undergo an exit search";

9  and "compel[ling] its employees to perform specific and supervised tasks while awaiting and during

10  the search."  *Id.*  The Court also rejected Apple's core argument, holding that "[r]edefining the control

11  clause to cover only unavoidably required employer-controlled activities would limit the scope of

12  compensable activities, resulting in a narrow interpretation at odds with the wage order's fundamental

13  purpose of protecting and benefitting employees." *Id*. at 1048.  For these reasons, the Court concluded

14  that Plaintiffs and other Apple employees "must be paid" for all time spent waiting for and undergoing

15  Checks.  *Id*. at 1056 (citation omitted).[10]

16         **D.**    **The Ninth Circuit Directs Entry Of Summary Judgment In Plaintiffs' Favor**

17         After the California Supreme Court issued its opinion, the Ninth Circuit ordered further

18  briefing, after which it directed the district court to grant summary judgment in favor of Plaintiffs and

19  the class on the central liability question of whether the search time is compensable "hours worked."

20  *See Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020).

21         **E.**    **Summary Judgment Entered In Plaintiffs' Favor**

22         In accordance with the Ninth Circuit's instructions, on remand, this Court entered judgment

23  on liability in favor of Plaintiffs and the certified class on April 14, 2021, as follows: "At all material

24  times Apple was liable to compensate the class members for time spent standing in line and waiting

25

26  [9]    Because the time was compensable under the "control" test, the Court had no need to decide
whether the time also met the "suffered or permitted to work" test.  8 Cal.5th at 1057.

27  [10]    The Court also declined Apple's request to apply its holding prospectively only ("we see no
reason to depart from the general rule that judicial decisions apply retroactively.").  8 Cal.5th at 1057.

28  The Court summarily denied Apple's rehearing petition on May 13, 2020.

7

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

to have their bags checked," including "all time spent waiting for and completing the check, including the time it took to find a manager or security guard to conduct the check, the time it took waiting for the check, and the time it took for the check itself to be conducted." Dkt. 407 at 1:25-26, 3:21-24.

### F. The Expanded Damages Period

By stipulation and order filed February 4, 2021, the end date of the damages period for the certified class members was extended through December 17, 2015. *See* Dkt. No. 384.

### G. The Court-Ordered Damages Claim Process for Purposes of Trial

When the Court granted class certification in 2015, it determined that damages "will be proven *via* an old-fashioned claims process." Dkt. No. 297 at 13:14-15. Accordingly, after the Ninth Circuit remanded the case and summary judgment was entered in Plaintiffs' favor, the parties submitted extensive briefing on the proper procedure and notice for such claims process. *See* Dkt. Nos. 377-78, 386-87, 390. Ultimately, the Court determined that a detailed notice of the claims process, along with a claim form, would be distributed to the Class Members, who would then have 120 days to complete and return the claim form. *See* Dkt. No. 407. The claim form would ask the Class Members to attempt to recall and estimate: (1) the number of Checks they participated in when leaving the store for a meal period; (2) the average duration of the Checks when they left the store for a meal period; (3) the number of Checks they participated in when leaving the store at the end of their shift; and (4) the average duration of the Checks when they left the store at the end of their shift. *See id.*

The Court also held that Apple would have the right to conduct discovery as to the completed claim forms, including possible depositions of Class Members, and that Apple would have the opportunity to challenge the Class Members' testimony by calling them to the stand at trial. *See id.*

### H. Multiple Mediation Sessions

Since the fall of 2015, the Parties engaged in several mediation sessions, including a Settlement Conference before Magistrate Judge Joseph C. Spero on October 1, 2015 (Dkt. No. 312); two full-day mediation sessions with the Hon. Jay C. Gandhi (Ret.) of JAMS on October 20 and December 12, 2020; and a full-day mediation session with the Hon. Edward A. Infante (Ret.) of JAMS on May 6, 2021. At the conclusion of the latter mediation session, Judge Infante made a mediator's proposal of a non-reversionary settlement totaling $29.9 million, which the Parties each subsequently

accepted.  At all times, the Parties were represented by their respective counsel during the arm's-length negotiations facilitated by Magistrate Judge Spero, Judge Gandhi, and Judge Infante.  The agreement was memorialized in a Memorandum of Understanding signed in July 2021 and formalized on November 11, 2021 in the long-form Settlement Agreement of which approval is now sought.

## I.  <u>The Settlement Agreement</u>

### 1.  <u>Consideration</u>

Pursuant to the terms of the Settlement Agreement, Apple will pay $29.9 million to settle the claims alleged in this litigation.  *See* Settlement at § 3.4.1.  Apple has also agreed to separately pay the employer's share of the payroll taxes owed on the wage portion of the settlement fund.  *See id.* at § 3.6.2.  This is valued at approximately $756,000, for a total settlement value of approximately $30,656,000.  *See* Declaration ¶ 36 & n.6 (explaining this valuation).

The Settlement is non-reversionary; that is, no portion of the $29.9 million fund will ever revert back to Apple.  Settlement at § 1.46.  What is more, no Settlement Class Members will be required to submit a claim form.  *Id.* at §§ 1.16, 1.32 & 3.4.1.7.  Instead, if the Settlement is approved, checks will be mailed directly to the Participating Settlement Class Members[11] in the amount of their pro rata share of the $29.9 million fund, net of any Court-approved deductions (see below).  *See id.* at §§ 3.6.8, 3.4.1.7.

The Net Settlement Amount to be distributed directly to the Settlement Class Members is estimated at approximately $18,895,333.33.[12]  *Id.* at § 1.22.  Assuming no further opt-outs, average Settlement Class Member payments are expected to be $1,286.96, representing 160% of estimated average wages owed for unpaid Check time, or 90% of average wages plus pre-judgment interest.  *See* Declaration at ¶¶ 37, 67.  The calculation of these shares is discussed in detail in Part I(2), *infra*.

The following sums, if approved by the Court, will be deducted from the Total Settlement Amount of $29.9 million to arrive at the Net Settlement Amount: (1) $89,500 to Angeion Group, Inc.,

---

[11]    A "Participating Settlement Class Member" is defined as all Existing Class Members and all New Class Members who do not timely opt out.  *Id.* at § 1.33.

[12]    This figure does not include the portion of the proposed PAGA allocation that would be distributed to PAGA Settlement Class Members.  With that figure (which is $112,125, explained below), the total net figure to be distributed to eligible class members is $19,007,458.33.

the proposed Settlement Administrator, for administration services including issuance of notice of the settlement, distribution of checks, and related administration costs (Settlement at §§ 1.42, 3.3); (2) service awards of $10,000 to each of the five named Plaintiffs in recognition of their time and effort in prosecuting the Action (*id.* at § 3.4.1.1, 3.4.1.2); (3) attorneys' fees of up to one third of the Total Settlement Amount (or $9,966,666.67), in recognition of the extraordinary results achieved by Class Counsel, to be allocated among all firms who represented the Plaintiffs in the litigation (id. at § 3.4.1.3); (4) out-of-pocket litigation costs of up to $450,000, to be allocated among all firms who represented the Plaintiffs in the litigation and who incurred out-of-pocket litigation costs, including the cost of the 2015 class notice (*id.* at § 3.4.1.4); (5) an allocation of $448,500 (1.5% of the Total Settlement Amount) to the PAGA claim, with 75% of that sum ($336,375) to the LWDA and 25% of that sum ($112,125) to the eligible class members (the proposed "PAGA Settlement Class Members") (*id.* at §§ 3.4.1.6, 3.4.6.1, 3.4.6.2).  The Agreement as a whole shall be binding and enforceable even if the Court does not approve all of these proposed sums. *See id.* at § 3.4.

## 2.   <u>Releases</u>

If the Settlement is finally approved, the Class Representatives and the Participating Settlement Class Members will release the Released Parties[13] from all Class Claims, while Plaintiffs Kalin and Frlekin, the PAGA Settlement Class Members, and the State of California will release the Released Parties from the PAGA Claims. *See id.* at §§ 3.4.2, 3.4.3.  "Class Claims" and "PAGA Claims" are narrowly defined and limited to claims arising out of the facts alleged in the Action—that is, claims arising out of Apple's failure to pay for all time worked pursuant to the Check policy. *See id.* at §§ 1.3, 1.27.  The five named Plaintiffs have also agreed to a general release. *Id.* at § 3.4.4.

## 3.   <u>Allocation and Calculation of Individual Class Payments</u>

If the Settlement is approved, the Settlement Class Members will not be required to submit a claim in order to receive a share of the Settlement. *See id.* at §§ 1.16, 1.32 & 3.4.1.8.  Instead, they

---

[13]   Released Parties means "Defendant Apple Inc. and its subsidiaries, affiliates, and/or parent companies; the employee benefit plans sponsored or maintained by any of the foregoing; the respective successors and predecessors in interest of the foregoing; the officers, directors, employees, administrators, fiduciaries, trustees, beneficiaries, attorneys, and agents of the foregoing; and each of their past, present, and future officers, directors, shareholders, employees, agents, principals, representatives, accountants, auditors, consultants, insurers, and reinsurers." *See* Agreement at § 1.37.

will simply be mailed a check for their pro rata share of the Net Settlement Amount. *See id.* at § 3.6.3 Their shares (referred to in the Settlement Agreement as the "Individual Class Payments") will be calculated pro rata based on the number of shifts they worked at an Apple retail store in California during the Class Period (July 25, 2009 through Dec. 31, 2015),[14] as reflected in Apple's business records. *Id.* at §§ 1.16, 3.4.1.7. This is consistent with judicially approved individual settlement class member payments in other bag check and security check class settlements.[15]

In addition, PAGA Settlement Class Members will also receive a share of the $112,125.00 PAGA allocation (25% of the total PAGA allocation), calculated pro rata based on the number of pay periods they worked during the PAGA Period (July 25, 2012 through Dec. 31, 2015), as reflected in Apple's business records. *Id.* at §§ 1.32, 3.4.1.6.2.

### 4.    Modified Class Definition for Settlement Purposes

For settlement purposes only, the Court will be asked to modify the previously-certified class definition to embrace 799 additional persons, known as the "New Class Members." Doing so would increase the existing class size by 5.7%.[16] The New Class Members worked at an Apple retail store in California from August 3, 2015 through December 27, 2015[17] and the 2015 class notice was not sent to them. *Id.* at § 1.23.[18] They would be given a tailored class notice and afforded objection and opt-out rights (as discussed below). *Id.* at §§ 1.23, 1.25. If approved, the Settlement would embrace all persons to whom Apple's Check Policy applied in California from July 25, 2009 until Apple

---

[14]    The Settlement proposes an expansion of the damages period by 14 days, from December 17, 2015 to December 31, 2015. *See id.* at § 1.5, 1.29.

[15]    *See, e.g.*, *Lao v. H&M Hennes & Morvitz, LP*, 16-cv-00333, Dkt. Nos. 158, 167 (N.D. Cal. 2016); *Greer v. Dick's Sporting Goods*, 15-cv-01063, Dkt. Nos. 73, 89 (C.D. Cal. 2015); *Tellez v. Ulta Salon, Cosmetics & Fragrance Inc.*, 18-cv-02480, Dkt. Nos. 32, 41 (S.D. Cal. 2018); *Mejia v. Walgreen Co.*, 19-cv-00218, Dkt. Nos. 21, 30 (E.D. Cal. 2019); *Chavez v Converse Inc.*, 15-cv-3746, Dkt. Nos. 210, 219 (N.D. Cal. 2015).

[16]    As mentioned above, the existing class, excluding the 2015 opt-outs, consists of 13,884 persons. Adding 799 New Class Members would be a modest 5.7% increase over that figure.

[17]    Although Apple discontinued its Check Policy as of approximately December 17, 2015 (Dkt. No. 368), this end date was used "because the data Apple pulled to identify the New Class Members showed a quarterly 'snapshot' of employee data as of December 26, 2015." Riley Decl. ¶ 4.

[18]    Sixteen people worked for Apple in a California retail store between August 3 and August 10, 2015, but the 2015 class notice was not sent to them. Riley Decl. ¶3. The Settlement proposes that these sixteen individuals be treated as New Class Members and afforded opt-out rights. *See* Settlement at § 1.23.

1   discontinued the Policy, except those who timely exercised their opt-out rights.  *See* Dkt. No. 384.

2           **5.**    **Notices**

3       As further discussed in Point IV below, the Settlement Administrator shall send by U.S. Mail

4   and *via* email (to the extent email addresses are available) a "Notice of Settlement" to all Existing

5   Class Members (*see* Settlement Ex. A) and a specially tailored version to the New Class Members to

6   advise them of their opt-out rights (*see id.*, § 1.25 & Ex. B).  *See id.* at § 3.5.6.  In easy-to-understand

7   language, the proposed Notice of Settlement advises all proposed Settlement Class Members of the

8   key terms of the Settlement, as well as the deadlines to opt-out ("New Class Members" only) or file

9   an objection, and also summarizes the claims, explains the recovery formula and the Settlement Class

10  Member's own projected recovery amount, explains the scope of the release to be given, and provides

11  contact information for Class Counsel and the Administrator, the address for the settlement website,

12  and the date for the final approval hearing.  *See id.*, Ex. A, Ex. B.

13          **6.**    **Requests for Exclusion and Notices of Objection**

14      In August 2015, Existing Class Members were afforded the opportunity to exclude themselves

15  from the class, which resulted in 407 opt-outs.  *See* Dkt. No. 378.  Accordingly, the Settlement

16  provides that only New Class Members may exclude themselves from the class action aspects of the

17  Settlement.[19]  Settlement at § 1.23.  They may do so by submitting a written Request for Exclusion

18  to the Settlement Administrator within 60 calendar days after the Settlement Administrator mails and

19  emails the Notices of Settlement to Settlement Class Members.  *Id.* at §§ 1.25, 1.39.

20      Settlement Class Members who wish to object to the Settlement must file a written Notice of

21  Objection with the Court within 60 calendar days of issuance of the class notice.  *See id.* at § 3.5.10.

22  The Notice of Objection must: (a) contain the full name, address and last four digits of the social

23  security number of the Settlement Class Member (required for identification purposes); (b) state the

24  case name and number, *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA, state the

25

---

26  [19]    *See Low v. Trump University, LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (holding that class members must only be given "a single opportunity to opt out" and that due process does not compel

27  a second opt-out opportunity); *see also Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 622-23 (9th Cir. 1982) ("There is no authority of any kind suggesting that

28  due process requires that members of a Ruler 23(b)(3) class be given a second chance to opt out").

1   basis for the objection, and state whether the Settlement Class Member intends to appear at the Final

2   Approval Hearing; and (c) be signed by the Settlement Class Member.  *See id.*

3   ### 7.   The Effective Date and Distribution of Payments

4   The "Effective Date" is the date by which the Settlement is finally approved and the Court's

5   final approval order and the Judgment become binding and no longer subject to appeal.  *See id.* at

6   § 1.11.  Within ten calendar days following that date, Apple shall fund the Settlement by transferring

7   $29.9 million to the Settlement Administrator, along with the employer's share of payroll taxes on

8   the wage component of the Individual Class Payments (valued at approximately $756,000).  *See id.*

9   at § 3.6.2; *see* Declaration at ¶ 36 & n.6.  The Settlement Class Members' shares of the Net Settlement

10  Amount and the LWDA's share of the PAGA allocation will then be distributed by check within

11  thirty calendar days of the Effective Date.  *See id.* at §§ 3.6.6-3.6.8.  The Settlement Class Members

12  will have 180 days after mailing to cash their checks.  *Id.* at § 3.6.8.  Ninety days after the original

13  mailing date, reminder notices will be sent to any Settlement Class Members who have not yet cashed

14  their checks.  *Id.* at § 3.6.9 & Ex. F.   Re-issued checks, if any, must be cashed within 30 days of

15  remailing or within 180 days of original mailing, whichever is later.  *Id.* at § 3.6.10.

16  No portion of the $29.9 million will revert to Apple.  *Id.* at § 1.46.  Subject to the Court's

17  approval, any unclaimed funds resulting from Settlement Class Members' failure to timely cash their

18  checks shall be paid to the California Alliance of Boys & Girls Clubs, Inc. ("Boys & Girls Clubs"),

19  with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness

20  program/job training.  *See id.* at § 3.6.10.  None of Plaintiffs' Counsel have a financial or other

21  relationship with the Boys & Girls Clubs.  *See* Declaration at ¶ 48.

22  ## III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

23  The Ninth Circuit has declared a strong judicial policy in favor of class action settlement.

24  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989); *Class Plaintiffs v. City of Seattle*, 955

25  F.2d 1268, 1276 (9th Cir. 1992).  "Approval under Rule 23(e) involves a two-step process in which

26  the Court first determines whether a proposed class action settlement deserves preliminary approval

27  and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural*

28  *Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing *Manual for*

13

1  *Complex Litig.*, Third, § 30.41 (1995)); *see also In re Volkswagen "Clean Diesel" Marketing, Sales*

2  *Practices, and Products Liability Litig.*, 229 F. Supp. 3d 1052, 1062 (N.D. Cal. 2017) ("*In re*

3  *Volkswagen*").  Preliminary approval is merely an initial assessment of the fairness to determine

4  whether the proposed settlement is within the range of reasonableness and thus whether notice to the

5  Class and the scheduling of a formal fairness hearing is worthwhile.  *See* 4 Alba Conte & Herbert B.

6  Newberg, *Newberg on Class Actions*, § 11:35 (4th ed. 2002) ("*Newberg on Class Actions*"); *see also*

7  *Young v. Polo Retail, LLC*, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).

8        If the preliminary evaluation of the proposed settlement "does not disclose grounds to doubt

9  its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives

10  or of segments of the class, or excessive compensation for attorneys, and appears to fall within the

11  range of possible approval," the court should direct that notice under Rule 23(e) be given to the class

12  members of a formal fairness hearing, at which arguments may be presented in support of and in

13  opposition to the settlement.  *In re High-Tech Employee Antitrust Litig.*, 2014 WL 3917126, at *3

14  (N.D. Cal. Aug. 8, 2014); 4 *Newberg on Class Actions* § 11:35 (4th ed. 2002).

15      **A.**     **For Settlement Purposes Only, the Class Definition Should Be Slightly Modified**

16        As discussed above, for Settlement purposes only, the Parties propose that the class previously

17  certified by this Court be modified to embrace the 799 New Class Members.  Settlement at § 1.23.

18  The Court has authority to modify the class definition at any time before final judgment.  Fed. R. Civ.

19  Proc. 23(c)(1)(C); *Barnes v. AT&T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562

20  (N.D. Cal. 2011) (modifying certified class definition to add new members).  The New Class

21  Members satisfy the criteria for Rule 23 certification because they are so numerous that joinder of all

22  of them is impracticable, there are common questions of law or fact common to the New Class

23  Members, the claims of the Class Representatives are typical of the claims of the New Class Members,

24  the Class Representatives will fairly and adequately protect the interests of the New Class Members,

25  the questions of law or fact common to New Class Members predominate any questions affecting

26  only individual New Class Members, and that a class action is superior to other available methods for

27  fairly and efficiently adjudicating the controversy.  The Court is respectfully asked to approve, for

28  settlement purposes only, the proposed modification of the class definition so that the Settlement may

encompass (subject to the New Class Members' opt-out rights) all persons to whom Apple's Check Policy applied in California during the limitations period.

### B.   The Settlement is Fair, Reasonable and Adequate

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2).  In making this determination, a trial court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963 (9th Cir. 2003); *Blair v. Rent-A-Center, Inc.*, 2020 WL 408970, at *2 (N.D. Cal. Jan. 24, 2020 (Alsup, J.).  Not all of these factors will apply to every class action settlement and district courts have "wide discretion in assessing the weight and applicability of each factor." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 525.  Plaintiffs address each relevant factor below.

#### 1.   The Strength of Plaintiffs' Case Weighed Against the Risks, Expense, Complexity and Likely Duration of Further Litigation

Plaintiffs' case is strong on liability, but the Class Members would face significant challenges in proving their right to monetary relief at trial and in establishing the amount of such relief.

On the issue of the base amount of unpaid wages owed for the Check time, Apple has repeatedly claimed that the amount of time spent undergoing Checks was *de minimis* and that the time is therefore non-compensable under California law.  Apple has also repeatedly argued that the unpaid wages should be calculated using the *minimum* wage rates in effect at the time of the Checks, rather than the contract rates.  These arguments, if accepted, would significantly reduce, if not eliminate, the Class Members' claim for base unpaid wages and interest.  The average minimum wage during the relevant period ($8.26) is less than 40% of  the estimated average contract rate ($20.89; see below).

Assuming the Class Members overcame these hurdles, the derivative claims for waiting time and wage statement penalties under Labor Code sections 203 and 226(e), and for liquidated damages under Labor Code section 1194.2, would be subject to even more potential defenses.  Apple has

argued that waiting time and wage statement penalties both require proof that the employer's conduct was "willful." Apple has also contended that in order to recover these penalties, the Class Members must have suffered a separate "injury" beyond their lost wages. Also, Apple has made clear its intention to argue that it believed in "good faith" that the Check time was not compensable under California law, which, according to Apple, represented a complete defense to the Class Members' claims for waiting time and wage statement penalties, as well as liquidated damages. Any or all of these defenses might have wholly eliminated Class Members' ability to recover these forms of relief, which represent the lion's share of their projected maximum potential damages.

A further impediment to full recovery is Apple's failure to maintain records of the Check time. While Plaintiffs intended to seek various evidentiary presumptions due to the missing records, as a practical matter, the absence of records led the Court to order a comprehensive claims process. As a result, an employee's ability to secure compensation had the Action proceeded to trial—and the amount of that compensation—would have depended upon, among other factors: (i) the employee submitting a timely claim in connection with the trial process; (ii) the employee recalling the approximate number and duration of the security Checks he or she went through at a California store (events that for some occurred as long as twelve years ago); (iii) Apple's right to challenge an employee's claim, including the ability to seek to depose the employee upon Court approval; and (iv) the employee appearing for trial if required to do so.

Finally, it is highly likely that the losing party at trial would have appealed the judgment, further extending the litigation and delaying any payment to the Class Members. Where, as here, the Class Members are hourly-paid wage earners, the ability to secure an immediate and meaningful cash payment is a far more desirous outcome than the uncertainty of a higher payment years from now. Settlement is favored in cases, like this one, that are complex, expensive, and lengthy to try. *See In re Volkswagen*, 229 F. Supp. 3d at 1065 (citing *Rodriguez*, 563 F.3d at 966). Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Tele. Coop*, 221 F.R.D. at 526; *see also, e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2007 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

2.      **Risk of Maintaining Class Action Status**

Although the Court had already granted class certification at the time the Settlement was reached, there is a risk that Apple would challenge that decision in a post-judgment appeal. Indeed, Apple already attempted to challenge the ruling in a Rule 23(f) petition (which was denied, *see* Dkt. No. 333). The Settlement avoids the risk of an appellate challenge to class certification.

3.      **Amount Offered in Settlement**

The amount offered in the settlement is considered the "most important variable in assessing a class settlement." *In re TracFone Unlimited Service Plan Litigation*, 112 F. Supp. 3d 993, 1001 (N.D. Cal. 2015). Here, the $29.9 million Settlement provides significant monetary recovery for Settlement Class Members when compared against their potential recovery at trial. If none of the New Class Members opt out of the Settlement, average Settlement Class Member payments are expected to be $1,286.96—a sum equal to approximately 160% of the average estimated unpaid wages recoverable by a Class Member, or 90% with interest. *See* Declaration at ¶¶ 37, 67.

A Class Member who worked the average number of shifts during the class period (460 shifts, equivalent to roughly 92 weeks or 1 year and 10 months of employment) would be entitled to recover $801.13 in base unpaid wages at the average contract rate of $20.89, assuming one Check per shift with an average duration of 5 minutes. *See id.* at ¶ 66 & Ex. 2.[20] With prejudgment simple interest at 10% per annum from February 1, 2014[21] through November 1, 2021, this Class Member would be entitled to $1,422.01 in base wages plus interest. *Id.*[22] Using average *minimum* wage rates, the average Class Member's projected base unpaid wages plus interest would drop to $562.27. *Id.*[23]

Thus, the Settlement would afford 90% of estimated average base wages plus interest at

---

[20]    The stated average contract rate was calculated using the Class Members' *final* rates of pay, without accounting for lower starting pay rates. The average final rate of pay is higher than the actual average rate of pay across the entire limitations period. If the lower, actual average rate of pay were used, estimated average unpaid base wages would be lower than $801.13. *See* Declaration at ¶ 65.

[21]    This date is approximately 460 shifts (1 year and 10 months) before December 2015, when Apple discontinued the Check policy. It represents an average starting point for interest.

[22]    As mentioned in above, the $1,422.01 figure would be lower if the actual average contract rate of pay were used instead of the average *final* contract rate of pay. *See* Declaration at ¶ 65.

[23]    For the Court's convenience, the Declaration of Class Counsel filed concurrently herewith includes charts with various alternative damages calculations using different assumptions, such as contact rates vs. minimum wage rates; 1, 5 or 10 minutes of estimated unpaid check time.

contract rates,[24] or 229% at minimum wage rates.  Put another way, the Class Members, on average, will be made whole, or almost whole, for their estimated lost wages and interest.  This is an outstanding result by any measure.

While the Class Members are also entitled to seek penalties and liquidated damages, Apple's potential defenses to those remedies (summarized above) are more numerous—and stronger—than Apple's defenses to the claim for base unpaid wages.  For example, as recognized in *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *5 (N.D. Cal. Mar. 7, 2019), there was a serious risk that the Class would not be entitled to wage statement penalties, as the California Court of Appeal in *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1334 (2018) found that "inaccurate wage statements alone do not justify penalties; the plaintiffs must establish injury flowing from the inaccuracy."  Indeed, as the *Vikram* court held, "there is a substantial risk of no recovery to any Plaintiff on the penalty claims, which are worth the vast majority of the full verdict value of the non-PAGA claims."  *Vikram*, 2019 WL 1084169 at *5; *see also Saechao v. Landrys, Inc.*, 2016 WL 3227180, at *2-3 (N.D. Cal. June 11, 2016) (Alsup, J.) (granting preliminary approval of class action settlement with a net settlement fund of $500,000 and recognizing that although the total possible recovery for the class was $1.5 million, a significant portion of that sum was comprised of PAGA penalties which could be reduced at the district judge's discretion).

Absent approval of this Settlement, the average Class Member would be able to seek an estimated additional sum of $626.70 in waiting time penalties; $4,000 in wage statement penalties; and $316.77 in liquidated damages, for a total of $4,943.47.  *Id.*  The proposed Settlement would afford approximately 20.2% of the average Class Member's estimated *maximum* potential recovery, an excellent result given the greater weaknesses in their claims for penalties and liquidated damages, and given that the Settlement affords at least an estimated 90% to 160% of the Class Members' estimated actual lost wages plus interest.  *See, e.g.*, *Karl v. Zimmer Blomet Holdings, Inc.*, 2021 WL 2987119, at *2 (N.D. Cal. July 15, 2021) (Alsup, J.) (granting preliminary approval of a settlement

---

[24]     The actual figure is *higher than 90%*, because the average rate of pay across the limitations period, instead of the higher average final rate of pay, was used to calculate the average unpaid base wages and interest figures stated in the text above.  *See* Declaration at ¶¶ 65, 67.

1  representing approximately 15.3% of the defendant's total exposure in the suit); *In re Critical Path,*
2  *Inc.*, 2002 WL 32627559, at *5-6 (N.D. Cal. June 18, 2002) (Alsup, J.) (approving settlement of $17
3  million, representing 8.5% of estimated damages).

4        The Settlement compares favorably with results achieved in analogous settlements in bag
5  check/security check cases, both in terms of total dollar value and the average amount of recovery
6  per class member.  *See, e.g., Lao v. H&M Hennes & Morvitz, LP*, 16-cv-00333, Dkt. Nos. 163, 167
7  (N.D. Cal. 2016) ($3.8 million settlement approved on behalf of approximately 13,500 class
8  members, representing 9.6% of total possible recovery and average $164.17 per class member);
9  *Chavez v Converse Inc.*, 15-cv-3746, Dkt. Nos. 217, 219 (N.D. Cal. 2015) ($1.875 million settlement
10 approved on behalf of approximately 1,500 class members, representing 7.6% of total possible
11 recovery and average $363.63 per class member); *Greer v. Dick's Sporting Goods*, 15-cv-01063, Dkt.
12 Nos. 81, 89 (C.D. Cal. 2015) ($2.9 million settlement approved on behalf of approximately 10,700
13 class members, with an average payment per class member of $155).

14        **4.    Extent of Discovery Completed and the Stage of the Proceedings**

15        A court is more likely to approve a settlement if most of the discovery is completed because
16 it suggests that the parties arrived at a compromise based on a full understanding of the relevant legal
17 and factual issues.  *See Nat'l Rural Tele. Coop*, 221 F.R.D. at 526 (quoting 5 *Moore's Federal*
18 *Practice*, § 23.85(2)(e) (Matthew Bender 3d ed.).  "If all discovery has been completed and the vase
19 is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of the
20 settlement." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11:45 (4th ed. 2002).

21        At the time the Settlement was reached, the parties had conducted and completed extensive
22 discovery.  Specifically, Plaintiffs served Defendant with 65 requests for production of documents,
23 51 interrogatories, and 100 requests for admissions to which Defendant responded.  *See* Declaration
24 at ¶ 52. In total, Defendant served over 57,414 pages of documents (including videos) related to
25 Plaintiffs' allegations.  *Id*.  Defendant served Plaintiffs a combined total of 207 requests for production
26 of documents and 120 interrogatories to which Plaintiffs responded. Plaintiffs produced
27 approximately 1,162 pages of documents.  *Id*.  Defendant took a total of 20 depositions (including the
28 Plaintiffs' depositions).  Plaintiffs took a total of 14 depositions (including Defendant's persons most

1   knowledgeable, and Defendant's store leaders and managers).  *Id.*  Discovery on liability was

2   complete and discovery on damages was nearly so.

3        Additionally, when the Settlement was reached, the Court had granted class certification and

4   entered summary judgment in Plaintiffs' favor as to liability.  Thus, the case was sufficiently advanced

5   for Plaintiffs to negotiate a fair, reasonable, and adequate settlement.

6             **5.**    **Experience and Views of Counsel**

7        Parties represented by competent counsel are in the best position to produce a settlement that

8   fairly reflects each party's expected outcome in litigation.  *In re Pacific Enterprises Securities*

9   *Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  Plaintiffs are represented by experienced wage and hour

10  class action counsel who have successfully litigated and been appointed class counsel in a significant

11  number of class action settlements, and whom this Court has already appointed to represent the

12  certified class.  *See* Dkt. No. 297; *see* Declaration at ¶¶ 74-76, 79-85.  In the experience and view of

13  Class Counsel, the Settlement is fair, reasonable, and adequate.  *See* Declaration at ¶ 73.  This opinion

14  is premised on a variety of factors, including, *inter alia*: (i) the $29.9 million settlement consideration

15  and the estimated class member shares will provide the Settlement Class Members with, on average,

16  over 100% of the estimated unpaid wages owed, which is an outstanding result and far exceeds similar

17  metrics in other bag check settlement cases; (ii) Participating Settlement Class Members do not need

18  to submit claim forms as a condition to obtaining compensation; and (iii) no part of the $29.9 million

19  will revert to Apple.  Thus, this factor supports preliminary approval.  *See, e.g.*, *In re Linkedin User*

20  *Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015); *Gribble v. Cool Transports Inc.*, 2008 WL

21  5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of

22  counsel, who are most closely acquainted with the facts of the underlying litigation.").

23            **6.**    **The Presence of a Governmental Participant**

24       Because the Settlement resolves Plaintiffs' PAGA claims, the Settlement must be, and will

25  be, submitted to the LWDA at the same time it is submitted to the Court.  *See* Labor Code § 2699(l)(2);

26  Settlement at § 3.5.3.  Additionally, pursuant to CAFA, notice of the Settlement will be forwarded to

27  all State Attorney Generals as well.  *Id.* at § 3.5.4.  Thus, while there was no governmental participant

28  in the underlying litigation, there will be notice to governmental entities regarding the Settlement.

**7.** **The Reaction of the Class Members to the Proposed Settlement**

As this is Plaintiffs' motion for preliminary approval, notice has not yet been distributed to Class Members.  Assuming that the Court grants this motion, upon application for final approval, Plaintiffs will address the existence of any objections or other reactions by Class Members.

**C.** **The Preliminary Approval Standard is Met**

As discussed, *supra*, the settlement is fair, reasonable, and adequate.  For these reasons, and because the proposed settlement falls within the range of possible approval, is the product of serious, informed and non-collusive negotiations, and has no obvious deficiencies, the Court should grant preliminary approval of the Settlement and direct that notice be given.  *See Harris v. Vector Marketing Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *Manual for Complex Litigation* (3d ed. 1995) § 30.41; Newberg *et al.*, *Newberg on Class Actions* (4th ed. 2013) § 11:24-25.

**1.** **The Settlement is Within the Range of Possible Approval**

The Settlement is well within the range of possible approval.  As discussed, *supra*, average Settlement Class Member payments are expected to be at least 90% to 160% of the average wages owed for unpaid Check time, plus interest.  Moreover, as mentioned above, the settlement far exceeds similar metrics in other bag check settlements.  Thus, the Parties' $29.9 million settlement, which provides an immediate and substantial all-cash monetary benefit to Settlement Class Members, is well within the range of possible approval.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a settlement amount of one-sixth of the potential recovery to be fair and adequate); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (finding settlement amount of 34% reasonable); *Brooks v. Lines*, 2011 WL 13374341, at *5 (N.D. Cal. May 13, 2011) (Alsup, J.) (holding that that the benefit to class members favored preliminary approval).

**2.** **The Settlement Resulted from Arms'-Length Negotiations**

As discussed, *supra*, the Settlement was reached only after the parties engaged in three full-day mediation sessions before two well-respected mediators.  That the Settlement came about as a result of extensive, supervised mediation efforts further supports a finding that the Settlement is the product of serious, informed, and non-collusive negotiations.  *See In re LendingClub Securities Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (Alsup, J.) ("Another factor weighing in favor of

1  preliminary approval is that the proposed settlement agreement came about as a result of extensive

2  mediation efforts supervised by Chief Magistrate Judge Joseph Spero . . . .").

### 3.   <u>The Settlement is Devoid of Obvious Deficiencies</u>

**Release:** The proposed scope of the release for absent class members (Settlement at §§ 1.3, 1.27) is limited to claims arising out of the facts asserted in the Action.  *See Caudle v. Sprint/United Management Co.*, 2019 WL 2716291, at *4 (N.D. Cal. June 28, 2019) (Alsup, J.); *Guerrero v. Wells Fargo Bank, N.A.*, 2014 WL 1365462, at *3 (N.D. Cal. Apr. 7, 2014) (Alsup, J.).  As such, the scope of the release is proper and should be preliminarily approved.

**<u>Attorneys' fees, litigation expenses, and service awards</u>:** If preliminary approval is granted, Class Counsel will file detailed formal motions for approval of an award of attorneys' fees, litigation expenses and service awards for the named Plaintiffs, in which each requested sum will be fully supported.  In brief, Class Counsel intend to seek a fee award of $9,966,666.67, or one third of the Total Settlement Amount.[25]  The requested fee is reasonable under California law[26] in light of the outstanding results achieved by Class Counsel.  Class Counsel revived this case by successfully appealing this Court's summary judgment determination.  In so doing, Class Counsel deployed high-level appellate advocacy to achieve a binding and precedential California Supreme Court decision declaring that time spent waiting for and undergoing employer-required onsite security searches is compensable as a matter of law.  Few class actions involve such extraordinary and successful efforts by counsel.  The skilled, high-quality work was done on a pure contingency basis with no guarantee of a successful outcome.  Absent Class Counsel's high-risk efforts, this Settlement would not exist.  Moreover, based on estimated lodestar figures, the proposed award would represent a modest multiplier of approximately less than 1.2, a well-deserved enhancement of the base lodestar.  *See*

---

[25]      Awarding fees as a percentage of the gross settlement is equitable because it spreads the fees "proportionally among those benefited by the suit," "in the exact proportion that the value of [each absent class member's] claim bears to the total recovery."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479, 480 (1980); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (affirming fee award calculated as percentage of "entire" gross settlement fund); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480 (2016) (same).

[26]      Because the claims arise under California law, California law governs the calculation and award of attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

Declaration at ¶ 56.  The proposed award is well within the range of reasonableness under the circumstances of this case.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 456, 463 (9th Cir. 2000) (affirming award of fees equal to one-third of gross settlement); *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) (same); *Laffitte*, 1 Cal.5th at 486, 506 (same).

The proposed litigation expenses, not to exceed $450,000, include out-of-pocket costs incurred by Plaintiffs' counsel, such as court reporter services for over 14 depositions, the cost of the 2015 class notice, expert witness costs, and document hosting of ESI discovery.  *See* Declaration at ¶ 57.  All of these expenses are reasonable and inured to the benefit of the class.

The proposed service awards of $10,000 for each named Plaintiff are appropriate in light of the duration of this litigation and the substantial efforts of each named Plaintiff, including responding to voluminous discovery requests and being deposed.  The named Plaintiffs also faced reputational risks and the risk of a costs award against them if the case were unsuccessful.  *See* Dkt. Nos. 351, 352 (orders awarding costs to Apple of over $34,000, subsequently vacated).  The named Plaintiffs stood firm against these risks, and the valuable Settlement benefiting the class is the result.  *See, e.g.*, *Roberts v. Marshalls of CA, LLC*, 2018 WL 510286, at *20 (N.D. Cal. Jan. 23, 2018) (awarding the named plaintiffs service awards of $10,000 each); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (same).

Formal motions for approval of these sums will be filed no later than 30 days before the objection and opt-out deadline and will be posted to the settlement website within one business day thereafter.  [Proposed] Order, filed herewith, ¶ 27.

**PAGA Penalties:** "When PAGA claims are settled, the court must 'review and approve' the settlement."  *See Jordan v. NCI Group, Inc.*, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018).  However, "neither the California legislature, nor the California Supreme Court, nor the California Court of Appeal, nor the [LWDA] has provided any definitive answer as to what the appropriate standard is for approval of a PAGA settlement."  *Id.* (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017).  A number of district courts, however, approve PAGA settlements upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.  *See Jordan*, 2018 WL 1409590

23

1  at *2 (citing *Flores*, 253 F. Supp. 3d at 1077; *Echavez v. Abercrombie & Fitch Co., Inc.*, 2017 WL

2  3669607, at *3 (C.D. Cal. Mar. 23, 2017); *Gutilla v. Aerotek, Inc.*, 2017 WL 2729864, at *3 (E.D.

3  Cal. Mar. 22, 2017)).  In doing so, courts evaluate the PAGA settlement allocation as a percentage of

4  the total settlement value.[27]  Courts also evaluate the parties' proposed division of the civil penalties

5  under Labor Code § 2699(i).  *See Jordan*, 2018 WL 1409590 at *3.

6  Here, the PAGA settlement amount of $448,500.00, which represents 1.5% of the Total

7  Settlement Amount, is fundamentally fair, adequate, and reasonable.  Moreover, the parties' proposed

8  allocation of the PAGA settlement amount pursuant to Labor Code § 2699(i), with 75% going to the

9  LWDA and 25% going to eligible class members, is also more than fair, adequate, and reasonable.

10  *See* Settlement, § 3.4.1.6; *see also McLeod v. Bank of America*, 2018 WL 5982863, at *3 (N.D. Cal.

11  Nov. 14, 2018) (approving PAGA settlement, in part, because the parties allocated the PAGA

12  settlement amount pursuant to Labor Code § 2699(i)); *Jordan*, 2018 WL 1409590 at *3 (same).

13  **IV.     THE PROPOSED NOTICES AND NOTICE PROCEDURE SATISFY DUE PROCESS**

14  Federal Rule 23(e) requires that notice to absent class members be the best notice reasonably

15  practicable under the circumstances.  *See* FED. R. CIV. P. 23(e).  Notice is satisfactory if it "generally

16  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

17  investigate and to come forward and be heard."  *See Churchill Village, L.L.C. v. General Electric*,

18  361 F.3d 566, 575 (9th Cir. 2004).  Moreover, notice that is mailed to each member of a settlement

19  class "who can be identified through reasonable effort" constitutes reasonable notice.  *Eisen v.*

20  *Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  Here, the parties' proposed notice satisfies due

21  process and is the best notice reasonably practicable under the circumstances.

22  In easy-to-understand language, the proposed Notice of Settlement advises Class Members of

23  the key terms of the Settlement, as well as the deadlines to opt-out (for New Class Members only) or

24

25  [27]    *See, e.g.*, *Clemens v. Hair Club for Men, LLC*, 2016 WL 11680926, *1-2 (N.D. Cal. Sept. 22, 2016) (Alsup, J.) (approving $3,750 PAGA allocation in $500,000 class settlement, representing

26  approximately .75% of the settlement fund); *McLeod v. Bank of Am., N.A.* 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (finding $50,000 PAGA allocation for claims estimated at $4.7 million –

27  approximately 1.1 percent – adequate); *Taylor v. West Marine Products, Inc.*, 2015 WL 2452788, at *2-3 (N.D. Cal. May 21, 2015) (approving $5,000 PGA allocation in $435,000 class settlement,

28  representing approximately 1.1% of the settlement fund) (Alsup, J.).

1  file an objection, and also summarizes the claims, explains the recovery formula and the Settlement

2  Class Member's projected recovery amount, the scope of the release to be given by Settlement Class

3  Members; and provides contact information for Class Counsel, the address for the settlement website,

4  and the date for the final approval hearing.  Settlement, Ex. A, Ex. B.

5        The manner of distribution is also reasonable.  Angeion, an experienced class action

6  administration firm, is the proposed Settlement Administrator.  *See* Settlement at § 3.3.  If preliminary

7  approval is granted, Apple will provide Angeion with an "Employee List" including last known

8  contact information for the Settlement Class Members; Angeion will take steps to update the

9  addresses; and the Notices will be distributed by U.S. Mail and email (to the extent email addresses

10  are available).  *Id.* at §§ 1.12, 3.5.5-.6.  In addition, Angeion will establish a toll-free number and a

11  website with links to documents relevant to the Action.  *See id.* at § 3.3.  All of this will be completed

12  within 36 days after preliminary approval is granted (15 days for Apple to provide the Employee List

13  and 21 days thereafter for Notice to be sent).  *Id.* at §§ at §§ 3.5.5, 3.5.6.  Any Notice returned as non-

14  deliverable within 30 days of mailing shall be re-mailed to the forwarding address affixed thereto or

15  to any updated mailing address Angeion locates with reasonable effort.  *See id.* at § 3.5.7.

16        The notice procedures accord with the Northern District of California's Procedural Guidance

17  for Class Action Settlements and they meet the requirements of due process.  Hence, the Court is

18  respectfully asked to authorize the distribution of the proposed Notices pursuant to the proposed

19  notice procedure.  *See Saechao*, 2016 WL 3227180, at *4-5; *Brooks*, 2011 WL 13374341 at *8-9.

20  **V.     CONCLUSION**

21        Based on the foregoing, Plaintiffs respectfully request that the Court: (i) preliminarily approve

22  the Settlement; (ii) modify the class definition, for settlement purposes only, to embrace the New

23  Class Members; (iii) approve the parties' notices of the Settlement annexed to the Declaration as

24  Exhibits A, B, & F; (iv) authorize distribution of these notices in the manner described below; (v) set

25  deadlines for Class Members to object to or opt out of the Settlement; (v) set a briefing and hearing

26  schedule for the motion of Class Counsel for an award of attorneys' fees, costs, and service awards

27  to the named Plaintiffs; and (vi) set a final fairness hearing for the entry of final approval of the

28  proposed Settlement Agreement.

Dated: November 12, 2021

Respectfully submitted,

*/s/ Lee S. Shalov, Esq.*
Lee S. Shalov, Esq. (*pro hac vice*)
Brett R. Gallaway, Esq. (*pro hac vice*)
Jason S. Giaimo, Esq. (*pro hac vice*)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Tel.: (212) 448-1100
Facsimile: (212) 448-0066
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com
jgiaimo@mclaughlinstern.com

Kimberly A. Kralowec, Esq.
Kathleen Styles Rogers
KRALOWEC LAW, P.C.
750 Battery Street, Suite 700
San Francisco, CA  94111
Telephone:      (415) 546-6800
Facsimile:      (415) 546-6801
*kkralowec@kraloweclaw.com*
*krogers@kraloweclaw.com*

*Attorneys for Plaintiffs and the Class*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA