Lee Shalov (admitted *pro hac vice*)
lshalov@mclaughlinstern.com
Brett Gallaway (admitted *pro hac vice*)
bgallaway@mclaughlinstern.com
Jason Scott Giaimo (admitted *pro hac vice*)
jgiaimo@mclaughlinstern.com
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Tel:      (212) 448-1100
Fax:      (212) 448-0066

Kimberly A. Kralowec (CA Bar No. 163158)
kkralowec@kraloweclaw.com
Kathleen Styles Rogers (CA Bar No. 122853)
krogers@kraloweclaw.com
**KRALOWEC LAW, P.C.**
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:      (415) 546-6800
Fax:      (415) 546-6801

*Co-lead Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER; AND TAYLOR KALIN, on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>        v.<br><br>APPLE INC.,<br><br>                          Defendant. | Case No. 13cv03451-WHA (lead)<br>Case No. 13cv04727-WHA (consolidated)<br><br><br>**JOINT DECLARATION OF LEE S. SHALOV AND KIMBERLY A. KRALOWEC IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

{N0400668.1}

Lee S. Shalov and Kimberly A. Kralowec hereby affirm under penalty of perjury as follows:

1.     Our firms, McLaughlin & Stern, LLP ("M&S") and Kralowec Law, P.C. are Class Counsel for Plaintiffs Amanda Frlekin, Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher and the certified class.[1]   We respectfully submit this declaration in support of Plaintiffs' motion pursuant to Federal Rule 23 to preliminarily approve a $29.9 million settlement between Plaintiffs and Defendant Apple Inc. ("Apple" or the "Company").  We are fully familiar with the facts and circumstances set forth herein.

## PROCEDURAL HISTORY

### Background

2.     Given the lengthy history of the action, Class Counsel provide the following summary of the procedural history and relevant background for the Court's ease of reference and to supplement the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement being filed contemporaneously herewith.

3.     On July 25, 2013, Plaintiffs Amanda Frlekin and Dean Pelle commenced an individual and proposed class action against Apple on behalf of themselves and other hourly paid employees who worked at Apple retail stores (the "*Frlekin* Action").  In principal part, the Complaint in the *Frlekin* Action alleged that Apple had a mandatory policy requiring all employees to undergo unpaid searches of their bags and Apple devices every time they left an Apple retail store.  Based on these uncompensated searches, Plaintiffs asserted claims against Apple for unpaid minimum and overtime wages, waiting time and wage statement penalties, interest, injunctive relief, damages, and attorneys' fees and costs pursuant to the Fair Labor Standards Act ("FLSA") and California and New York law.  *See* Dkt. No. 1.  On October 10, 2013, a Complaint with similar allegations and claims against Apple was filed in this Court by Plaintiff Taylor Kalin (the "*Kalin* Action").

---

[1]     Unless otherwise defined, capitalized terms used herein shall have the same meaning as used in the Stipulation Regarding Class and Private Attorneys General Act Settlement and Release (the "Settlement" or "Settlement Stipulation"), a copy of which is annexed hereto as Exhibit 1.

Case No. 13-cv-03451 WHA
DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

4.      By Order dated October 28, 2013, the Court related the *Frlekin* Action and the *Kalin* Action pursuant to Civil Local Rule 3-12 and thereafter consolidated the *Frlekin* Action and the *Kalin* Action for all purposes pursuant to Federal Rule 42(a).  *See* Dkt. No. 214.[2]  In addition, on October 1, 2013 and November 12, 2013 respectively, Plaintiffs Kalin and Frlekin notified the California Labor and Workforce Development Agency (the "LWDA") of their intent to bring representative actions against Apple under the Private Attorneys General Act of 2004, California Code section 2698, *et seq*. ("PAGA").

5.      By Order dated February 2, 2014, the Court permitted Apple to move for summary judgment, which Apple filed on April 10, 2014 (the "First Summary Judgment Motion").  *See* Dkt. No. 156.  By Order dated May 30, 2014, the Court denied the First Summary Judgment Motion, finding that "the summary judgment record is at best ambiguous" regarding whether time spent undergoing security searches was compensable under applicable law. Dkt. No. 166.  Nevertheless, the Court stayed the Action to assess the potential impact of the United States Supreme Court's then impending review of *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. 2013), wherein the United States Court of Appeals for the Ninth Circuit held that employee security screenings may be compensable under the FLSA.  *Id*.

6.      On December 9, 2014, the United States Supreme Court reversed the Ninth Circuit in *Busk* and ruled that time spent by employees in security checks is not compensable under the FLSA.  *See Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014).  In light of the Supreme Court's decision, this Court dismissed with prejudice Plaintiffs' claims under the FLSA and the state laws of New York, Massachusetts and Ohio (which, the Court determined, largely mirror the FLSA). Dkt. No. 214.  The Court also directed Plaintiffs to seek leave to file an amended complaint and to address whether the Court should exercise supplemental jurisdiction over Plaintiffs' remaining California claims.  *Id*.

---

[2]      Unless otherwise indicated, the *Frlekin* Action and the *Kalin* Action are collectively referred to as the "Action."  Plaintiffs in the *Frlekin* Action were represented by the law firms of McLaughlin & Stern, LLP, Kralowec Law, P.C. and the Law Offices of Louis Ginsberg, P.C., while the plaintiffs in the *Kalin* Action were represented by the Blanchard Law Group and the Law Offices of Peter Dion Kindem.

7.      On January 9, 2015, Plaintiffs moved for leave to file a Consolidated Complaint asserting claims against Apple under California law.  Dkt. No. 223.  Specifically, the Consolidated Complaint asserted the following five cause of action relating to Apple's security check policy: (i) First Claim for Relief, for Violations of California Labor Code  – Nonpayment of Minimum and Overtime Wages (Labor Code §§ 204, 510, 1194, 1194.2 and 1198); (ii) Second Claim for Relief, Violations of California's Unfair Competition Law (the "UCL") (§§ 17200 *et seq.*, unlawful prong, predicate violation of Labor Code §§ 201, 202, 203, 204, 510, Wage Order 4); (iii) Third Claim for Relief, Violations of Labor Code § 226 – Wage Statement Penalties; (iv) Fourth Claim for Relief, Violations of Labor Code §§ 201, 202, 203 – Waiting Time Penalties; and (v) Fifth Claim for Relief, penalties pursuant to PAGA.  *See id.*

8.      By Oder dated February 2, 2015, the Court granted Plaintiffs leave to file the Consolidated Complaint and determined to exercise supplemental jurisdiction over Plaintiffs' California claims given, among other things, the "progress [that] has been made and "[t]he hard work that has been done . . . ."  Dkt. No. 237.  Apple filed its Answer to the Consolidated Complaint on February 16, 2015.  Dkt. No. 241.

**The Class Certification Motion and the Class Notice**

9.      On May 11, 2015, Plaintiffs moved for certification of particular issues on behalf of a class of Apple employees pursuant to Federal Rule 23.  Dkt. No. 242.  Apple opposed the motion on a variety of grounds, including that predominance of common questions could not be shown under Federal Rule 23 because many Apple employees did not go through security checks while working at California retail stores, and that most security checks, when they occurred, lasted for brief periods of time, and, thus, were not compensable under the *de minimis* doctrine.  *See* Dkt. No. 255.  As a result, Apple asserted that the Court would be required to conduct individual mini-trials to determine which Apple employees went through security checks, whether those employees were required to bring bags and Apple devices to work, and whether those checks lasted long enough to be compensable under California law.  *See id.*

10.     After extensive discovery, briefing and a hearing held on July 2, 2015, the Court certified a "class of all Apple California non-exempt employees who were subject to the bag-search policy from July 25, 2009 to the present." *Frlekin v. Apple, Inc.*, 2015 WL 4365374 (N.D. Cal. July 16, 2015). The Court held that the requirements of "ascertainability, numerosity, commonality, and typicality" were each satisfied for purposes of Federal Rule 23(a). *Id*. at *4. The Court further held that predominance was satisfied for purposes of Federal Rule 23(b)(3) because the question of Apple's "control" over Apple employees during security checks -- without regard to the "reason" he or she brought a bag to work -- constitutes the "generic issue" that "overarches the entire controversy." *Id*. at *6.

11.     The Court also addressed the "individual" issue of compensability and damages, holding that damages "will be proven *via* an old-fashioned claims process." *Id*. at *8. Specifically, the Court ruled that questions about "who actually stood in line and for how long" will be resolved "pursuant to a claims process, after yet another class notice, wherein class members would certify under oath the extent to which, if at all, they stood in line beyond any *de minimis* threshold . . . ." *Id*.

12.     The Court appointed M&S and The Kralowec Law Group (now known as Kralowec Law, P.C.) as Class Counsel and Lee Shalov to "serve as lead counsel." *Id*. at *9. The Court also permitted both parties to move for summary judgment on the "generic issue" of whether "Apple's bag-search policy is compensable [under California law] without regard to any special reason any employee brought a bag to work." *Id*.

13.     Pursuant to the Court's Order dated August 11, 2015 (Dkt. No. 310), notice of the Class Certification Order was mailed to 14,293 Apple employees. *See* Dkt. No. 378, ¶ 3.[3] No Apple employee intervened in the Action and 407 employees opted out of the class, leaving a certified class of 13,884 members. *Id*.

---

[3]     As further set forth in the Declaration of Matthew Riley ("Riley Declaration"), which is being filed contemporaneously herewith, subsequent to the 2015 notice, Apple learned that two of the individuals who were mailed notice appeared on the notice distribution list twice because they each appeared on the class list with two distinct employee ID numbers. *See* Riley Declaration at ¶ 2. Accordingly, only 14,291 Apple employees were mailed notice.

1  14. Apple thereafter sought permission for leave to appeal the class certification order to

2  the Ninth Circuit pursuant to Federal Rule 23(f).  That application was denied by Order dated

3  October 20, 2015.  Dkt. No. 333.

4  **The Second Summary Judgment Ruling**

5  15. Based on the Court's directive in the class certification order, the parties each moved

6  for summary judgment on the issue of whether time spent by Apple employees undergoing checks

7  is compensable under California law.  By Order dated November 7, 2015, the Court granted Apple's

8  motion for summary judgment and denied Plaintiffs' cross-motion for summary judgment.  *See*

9  *Frlekin v. Apple, Inc.*, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015).

10  16. In rendering its decision, the Court ruled that Apple employees were not subject to

11  Apple's "control" during security checks for purposes of the applicable Wage Order and the

12  California Supreme Court's leading decision in *Morillion v. Royal Packing Co.*, 22 Cal 4th 575

13  (2000).  In this regard, the Court held that "control" was absent because "[t]he ability to bring a bag

14  into Apple's stores is simply an optional benefit with a string attached -- the requirement to undergo

15  searches."  *See Frlekin v. Apple*, 2015 WL 6851424 at *3.

16  17. With regard to the "suffered or permitted" prong of the Wage Order for purposes of

17  determining "hours worked," the Court ruled that the checks were a mere "passive activity" that

18  were not compensable.  Specifically, the Court ruled:

19  Our plaintiffs merely passively endured the time it took for their managers or security
20  guards to complete the peripheral activity of a search.  Neither the searches nor
    waiting for them to be completed had any relationship to their job responsibilities.
21  They cannot be compensated for that passive activity under the 'suffered or
    permitted' prong.

22  *Id*. at *11.

23  18. The Court entered final judgment for Apple on November 7, 2015 and subsequently

24  awarded costs in favor of Apple in the amount of $34,859.12.  Dkt. Nos. 340, 351, 352.  Plaintiffs

25  appealed the judgment on December 3, 2015.  Dkt. No. 342.

28  {N0400668.1}                    6

**Proceedings Before The Ninth Circuit**

19.     Plaintiffs requested that the Ninth Circuit reverse the judgment because, Plaintiffs argued, the time spent participating in bag and technology Checks constitutes compensable "hours worked" under both the "control" and the "suffered or permitted to work" tests.  Plaintiffs also requested that the questions presented on appeal be referred to the California Supreme Court for decision under Cal. R. Ct. 8.548.

20.     After oral argument, the Ninth Circuit entered an Order on August 17, 2017, certifying the following question of state law to the California Supreme Court:

> Is time spent on the employer's premises waiting for, and undergoing, required exit searches of packages or bags voluntarily brought to work purely for personal convenience by employees compensable as 'hours worked' within the meaning of California Industrial Welfare Commission Wage Order No. 7?

*Frlekin v. Apple, Inc.*, 870 F.3d 867, 869 (9th Cir. 2017).

21.     In certifying this question to the California Supreme Court, the Ninth Circuit observed:

> Once an employee has crossed the threshold of a work site where valuable goods are stored, an employer's significant interest in preventing theft arises.  The employer's exercise of control over the bag-toting employee—albeit at the employee's option of bringing a bag—advances the employer's interest in loss prevention. For that reason, the mandatory/voluntary distinction applied in *Morillion* may make less sense here.  Although the search is voluntary in that the employee could have avoided it by leaving his or her belongings at home, the employer nevertheless exercises control over the employee who does bring a bag or package to work.  It is unclear under *Morillion* whether, in the context of on-site time during which an employee's actions and movements are compelled, the antecedent choice of the employee obviates the compensation requirement.

*Id*. at 873.

22.     The Ninth Circuit further observed that "[t]he consequences of any interpretation of the Wage Order will have significant legal, economic, and practical consequences for employers and employees throughout the state of California, and it will govern the outcome of many disputes in both state and federal courts in the Ninth Circuit."  *Id.*

**The California Supreme Court Answers The Certified Question In the Affirmative**

23.     On September 20, 2017, the California Supreme Court accepted the Ninth Circuit's request to decide whether the search time was compensable under California law.[4]  After extensive briefing by both sides, amicus briefing from a number of interested parties and oral argument, the California Supreme Court answered this question in the affirmative by Opinion dated February 13, 2020.  *See Frlekin v. Apple, Inc.*, 8 Cal. 5th 1038 (2020).

24.     In reaching its conclusion, the California Supreme Court found that "Apple employees are clearly under Apple's control while awaiting, and during, the exit searches."  *Id*. at 1047.  The Court observed in this regard that "Apple controls its employees during this time in several ways", including: "requir[ing] its employees to comply with the bag-search policy under the threat of discipline, up to and including termination; "confin[ing] its employees to the premises as they wait for and undergo an exit search"; and "compel[ling] its employees to perform specific and supervised tasks while awaiting and during the search."  *Id*.  The Court also rejected Apple's assertion that an employee's activity must be "unavoidable" since "[r]edefining the control clause to cover only unavoidably required employer-controlled activities would limit the scope of compensable activities, resulting in a narrow interpretation at odds with the wage order's fundamental purpose of protecting and benefitting employees."  *Id*. at 1048.  For these reasons, the Court concluded, Plaintiffs and other Apple employees 'must be paid' for the time spent undergoing Checks."  *Id*. at 1056 (citation omitted).[5]

**The Ninth Circuit Directs Entry of Summary Judgment In Plaintiffs' Favor**

25.     Following the California Supreme Court decision, the Ninth Circuit requested briefing as to whether disputed questions of material fact existed that precluded an award of

---

[4]     By Order dated August 14, 2019, the California Supreme Court reformulated the Certified Question by adding "personal technology devices" to the items subject to search in connection with the Apple's check policy.
[5]     The California Supreme Court also declined Apple's request to apply its holding prospectively ("we see no reason to depart from the general rule that judicial decisions apply retroactively.").  *Id*. at 1057.  In addition, the California Supreme Court denied Apple's Petition for Rehearing of the Supreme Court Opinion by Order dated May 13, 2020.

{N0400668.1}                                      8

1    judgment in Plaintiffs' favor on the issue of liability.  In an Opinion dated September 2, 2020, the

2    Ninth Circuit found the answer to be no.  *See Frlekin v. Apple, Inc.*, 973 F.3d 947 (9th Cir. 2020).

3    As the Ninth Circuit observed, the "disputed facts" posited by Apple (such as the fact that some

4    Apple employees did not bring bags to work or participate in checks), "pertain solely to individual

5    remedies, not to the main legal question as to class-wide relief." *Id.* at 952.  As a result, the Ninth

6    Circuit reversed this Court's "grant of Apple's motion for summary judgment and denial of

7    Plaintiffs' motion for summary judgment" and remanded "for further proceedings with instructions

8    to: (1) grant Plaintiffs' motion for summary judgment on the issue of whether time spent by class

9    members waiting for and undergoing exit searches pursuant to the Policy is compensable as 'hours

10   worked' under California law; and (2) determine the remedy to be afforded to individual class

11   members." *Id.*  The Ninth Circuit issued its Mandate on November 6, 2020.  Dkt. No. 361.

12   **The Expanded Damages Period and Entry of Judgment in Plaintiffs' Favor**

13         26.     Following a case management conference before this Court on December 16, 2020

14   (Dkt. No. 369), Plaintiffs moved to expand the period during which Apple employees could seek

15   damages; specifically, from July 25, 2009 to August 10, 2015 (the date the Court approved

16   distribution of the First Notice) to July 2009 to December 17, 2015 (the date Apple terminated the

17   security check policy).  Dkt. No. 374.  Thereafter, the parties stipulated that Apple employees "shall

18   be permitted to seek recovery for time spent participating in bag and technology checks through and

19   including December 17, 2015 and no later" (the "Stipulation").  Dkt. No. 384.  The Court approved

20   the Stipulation on February 4, 2021.  Dkt. No. 384.

21         27.     The parties thereupon engaged in substantial briefing regarding the language of the

22   judgment to be entered in Plaintiffs' favor, the content of the notice to be distributed to class

23   members regarding the status and procedural posture of the Action, and the content of the claim

24   forms employees would need to submit to secure compensation for unpaid security checks they

25   experienced.  *See* Dkt. Nos. 377-78, 386-87, 390.  Thereafter, by Order dated April 14, 2021, the

26   Court vacated the 2015 judgment and costs award in Apple's favor, and instead entered judgment

27   for Plaintiffs "as follows: At all material times Apple was liable to compensate the class members

28   {N0400668.1}                                      9

for time spent standing in line and waiting to have their bags checked." Dkt. No. 407.  The Court also established timelines and procedures for: (i) the distribution of notice to class members regarding their submission of claims for damages (the "Claims Notice"); (ii) Apple's right to challenge specific claims and the circumstances under which Apple would be permitted to conduct class member depositions; and (iii) Class Counsel's ability to communicate with class members regarding their claims.  *Id*.  The Court also ruled that employees could not seek compensation for security checks when they left a California store for rest breaks.  Finally, the Court directed that Apple "bear all reasonable costs incurred … in the administration of the claims process."  *Id*.

28.     Following entry of the April 14, 2021 Order, Class Counsel began preparing for distribution of the Claims Notice that would begin the damages phase of the litigation and ultimate trial of the Action.

**The Mediations and the Memorandum of Understanding**

29.     Since the fall of 2015, the parties engaged in several mediations regarding a potential settlement of the Action.  Specifically, on October 1, 2015, the parties participated in a settlement conference before Magistrate Judge Joseph C. Spero, but no settlement was reached.  Dkt. No. 312. On October 20, 2020 and December 12, 2020, the parties participated in full-day mediation sessions with the Honorable Jay C. Gandhi (Ret.), a well-known and experienced wage-and-hour class action mediator, but no settlement was reached.  On May 6, 2021, the Parties participated in a third full-day mediation with the Honorable Edward A. Infante (Ret.), another well-known and experienced wage-and-hour mediator.  In conjunction with these mediation sessions, Class Counsel regularly communicated by telephone and email with Judges Gandhi and Infante regarding various aspects of a potential settlement.

30.     Needless to say, the parties expressed widely contrasting views over the course of this litigation regarding their assessments of Plaintiffs' claims, Apple's potential defenses and the amount of recoverable damages.  For example, there were contested issues as to whether: (i) minimum wage rates instead of regular hourly wage rates should apply in calculating employee compensation for unpaid security checks; (ii) checks that lasted for seconds or other brief periods

Case No. 13-cv-03451 WHA
DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

of time were compensable under California law (Apple's "*de minimis*" defense); and (iii) Apple had a viable "good faith" defense, which may have undermined Plaintiffs' claims for several forms of relief under the Labor Code, including liquidated damages under Labor Code section 1194.2, waiting time penalties, and wage statement penalties.  As a result of these and other substantive points of disagreement, the parties were often far apart in their assessments of the value of the case, particularly given other security check cases involving settlement figures far less than that reached here.  While lengthy and often complex, the negotiations were always undertaken by Class Counsel in good faith, at arm's-length and in a non-collusive manner, and with the direct oversight of Judges Spero, Gandhi and Infante.

31.   Throughout the mediation process, and in preparation for litigation should the case go to trial, Class Counsel engaged in extensive due diligence with regard to potential trial outcomes, class member recoveries and claims rates.  They communicated extensively with representatives of Epiq (an experienced claims administrator in the wage and hour field) to evaluate potential claims rates should the Action proceed to trial.  They reviewed scores of employee declarations and deposition transcripts to assess the average number and duration of security checks experienced by class members during the relevant period.  And they performed a variety of hypothetical damage calculations factoring in a range of variables regarding the security checks, including average rates of pay, how many checks class members experienced and the duration of the checks (which varied from mere seconds to as long as 20 minutes).

32.   Class Counsel was focused on ensuring that: (i) the maximum number of Apple employees would receive compensation for time spent in security checks; (ii) claim forms would not be necessary for employees to receive compensation; (iii) there be no preferential treatment among class members, except for the service awards described below; (iv) "new" class members would have an easy and efficient means to exclude themselves the Settlement; and (v) class members would have an easy and efficient means to object to the Settlement.

DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1    33.    Ultimately, this lengthy negotiation process resulted in an agreement in principle to

2  resolve the Action for $29.9 million, which the parties memorialized in a Memorandum of

3  Understanding dated July 19, 2021 ("MOU").

4    34.    As a result of the MOU, the Court extended the deadline for distribution of the

5  Claims Notice on several occasions, most recently to November 12, 2021.  Dkt. No. 415.  During

6  this time, the parties engaged in extensive negotiations regarding the terms of a formal settlement

7  agreement to submit to the Court for final approval.

8    35.    As a result of those negotiations, on November 11, 2021, the parties entered the

9  Settlement Stipulation.

10                    **THE SETTLEMENT STIPULATION**

11  **The Settlement Consideration**

12    36.    Pursuant to the terms of the Settlement Agreement, Apple will pay the Total

13  Settlement Amount of $29.9 million to resolve the claims alleged in this litigation, which is

14  inclusive of, to use the defined terms in the Settlement Agreement, the Class Representative

15  Payments to Class Representatives, the Service Payment to Plaintiff Amanda Frlekin, the Attorneys'

16  Fees, the Litigation Costs, the Settlement Administration Costs, the PAGA LWDA Payment, all

17  Individual PAGA Payments, and all Individual Class Payments.  *See* Ex. 1 at § 3.4.1.  On top of the

18  $29.9 million, Apple is also required to pay employer's share of payroll taxes on the wage

19  component of the Individual Class Payments.  *See id.* at § 3.6.2.  (The value of the employer's share

20  of payroll taxes is estimated at approximately $756,000.[6])  Significantly, the Settlement is non-

21  reversionary and claim forms are not required.  *Id.* at § 1.46, 1.16, 1.32, 4.4.1.7.  In the event the

22  Court approves the requested Class Representative Payments, the Service Payment, the Attorneys'

23  Fees, the Litigation Costs, the Settlement Administration Costs, and the PAGA Settlement Amount,

24

25  _____
     [6]    This valuation assumes that the employer's share of payroll taxes will equal roughly 20% of

26  the wage component of the Settlement.  The Settlement provides that 20% of the Net Settlement
     Amount will be allocated to wages.  Ex. 1 at § 3.4.1.7.  Here, assuming the Court approves a Net

27  Settlement Amount of $18,895,333.33, and the proposed 20% allocation to wages, then Apple's
     estimated 20% share of payroll taxes would be $755,813.33.

28  {N0400668.1}                              12

1    there will be $18,895,333.33 remaining for distribution to Participating Settlement Class Members.[7]

2    *Id.* at § 1.22.[8]

3          37.    If none of the proposed New Class Members opt out of the Settlement, average

4    Settlement Class Member payments are expected to be $1,286.96.  *See* Exhibit 2.

5          38.    Specifically, each Participating Settlement Class Member (defined as Existing Class

6    Members and New Class Members who do not timely "opt out") will receive from the Net

7    Settlement Amount his or her "Individual Class Payment" (in other words, his or her share of the

8    net settlement).  *See* Ex. 1 at §§ 1.16, 1.33.  The Individual Class Payment will be calculated on a

9    *pro rata* basis based on the number of shifts each Participating Settlement Class Member worked at

10   an Apple retail store in California during the "Class Period" (*i.e.,* the period from July 25, 2009

11   through and including December 31, 2015).  *Id.* at § 1.16.  Specifically, each Individual Class

12   Payment shall be calculated by dividing a Participating Settlement Class Member's individual shifts

13   worked for Defendant at an Apple retail store in California during the Class Period by the total of

14   all shifts worked by all Participating Settlement Class Members for Defendant at an Apple retail

15   store in California during the Class Period, and multiplying this result by the Net Settlement

16   Amount.  *Id.* at § 3.4.1.7.  The total number of shifts worked by individual Settlement Class

17   Members and the total number of shifts worked by all Settlement Class Members shall be

18   determined based on Defendant's business records, which shall be supplied by Apple to the

19   _____

20   [7]     "Settlement Class Members" means all Existing Class Members (defined as all current and
     former non-exempt employees of Apple who worked at an Apple retail store in California between

21   July 25, 2009 and August 10, 2015 who were previously provided notice of the Action in 2015 and
     who did not opt out of the class), and all New Class Members (defined as all individuals who began

22   working as a non-exempt employee at an Apple retail store in California between August 3, 2015
     and December 26, 2015 and to whom a class notice was not sent in 2015).  Ex. 1 at § 1.44.  The use

23   of August 3, 2015, rather than August 10, 2015, for New Class Members accounts for sixteen new
     employees to whom the 2015 class notice was not sent, according to the settlement administrator's

24   records and the records of Apple, as explained in the Riley Declaration.  *See* Riley Declaration at
     ¶ 3.  The use of December 26, 2015, rather than December 17, 2015, is "because the data Apple

25   pulled to identify the New Class Members showed a quarterly 'snapshot' of employee data as of
     December 26, 2015," according to the Riley Declaration.  *See id.* at ¶ 4.

26
     [8]     In addition, as explained in more detail below, a portion of the PAGA Settlement Amount

27   will be distributed to PAGA Settlement Class Members, bringing the net figure up to
     $19,007,458.33.  Ex. 1 at §§ 1.31, 1.32.

28   {N0400668.1}                                    13

Settlement Administrator within fifteen calendar days after preliminary approval of the Settlement. *Id.* at 3.5.5. The Individual Class Payments will be allocated 20% as wages, 20% as interest, and 60% as penalties. *Id.* at 3.6.8. Participating Settlement Class Members are not required to submit a claim form to receive an Individual Class Payment. *Id.* at §§ 1.16, 1.32, 1.46, 3.4.1.7, 3.6.8.

39.     As part of this motion for preliminary approval, Plaintiffs also ask that the Court slightly modify the previously-certified class definition to include, for settlement purposes only, New Class Members as part of the class previously certified in the Court's Order dated July 16, 2015, and to afford the New Class Members the right to opt out. Apple has produced data indicating that 799 persons worked in a California retail store from August 3, 2015 through December 26, 2015, to whom notice was not sent in 2015. If these New Class Members are included for settlement purposes, then the size of the certified class will increase by approximately 5.7%, and the Settlement will embrace all persons covered by Apple's Check policy from July 25, 2009 through the discontinuance of the policy (according to documents produced by Apple; *see* Dkt. No. 384), except those who timely opt out.

40.     The Total Settlement Amount shall also be used to pay the following (s*ee* Ex. 1 at § 1.22 – Net Settlement Amount):

- **Settlement Administration Costs** – Up to $89,500 to the Settlement Administrator (Angeion Group ("Angeion")) for costs incurred to administer the Settlement and disseminate notice as described in Exhibit G to the Settlement Stipulation;[9]

- **Class Representative Payments and the Service Payment** – Subject to the Court's approval, up to $10,000 to class representatives Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher (the "Class Representative Payments"), and a $10,000 service payment to plaintiff Amanda Frlekin (the "Service Payment") in recognition of their time and effort in prosecuting the Action, including responding

---

[9]     Two widely experienced claims administrators in wage and hour cases such as this (Angeion and Epiq) were asked to submit bids for the services performed in connection with administration and notice of the Settlement. Angeion's bid – capped at $89,500 – was the superior bid. Class Counsel, Kralowec Law, P.C., has previously worked with Angeion in two other recent class actions.

DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

to multiple discovery requests, appearing for depositions, and interacting with Class Counsel since the Action was commenced in 2013 (*see* Ex. 1 at §§ 3.4.1.1, 3.4.1.2);

- **Attorneys' Fees** – Subject to the Court's approval, attorneys' fees as compensation for, among other things, the thousands of hours spent prosecuting the Action for over eight years, the extraordinary all-cash benefits they secured on behalf of the class and the risks they undertook in prosecuting the Action on a fully contingent basis, Class Counsel intend to seek an award of one-third of the Net Settlement Amount, or $9,966,666.67 as further discussed below;

- **Litigation Costs** -- Up to $450,000 to reimburse Plaintiffs' Counsel for the costs incurred in the investigation, litigation, and resolution of the Action (*id.* at § 3.4.1.4); and

- **The PAGA Settlement Amount** -- Up to $448,500 in settlement of Plaintiffs' PAGA Claims, of which 75% shall be paid to the LWDA and 25% ($112,125) shall be paid to PAGA Settlement Class Members (*id.* at § 3.4.1.6).

**Notice of the Settlement**

41.    Within fifteen days after preliminary approval of the Settlement, Apple will provide the Settlement Administrator an "Employee List" that includes, among other information, each Settlement Class Member's full name, last known address, last known telephone number and work email address for individuals currently employed by Apple.  *Id.* at § 3.5.5.

42.    Twenty-one calendar days after receipt of the Employee List, the Settlement Administrator shall send by U.S. Mail and *via* email (to the extent email addresses are available) a "Notice of Settlement" to all Existing Class Members (*see* Exhibit A to the Settlement Stipulation) and a tailored "Notice of Settlement" to all New Class Members advising them of their right to opt out (*see* Exhibit B to the Settlement Stipulation).  *Id.* at § 3.5.6.  Any Notice of Settlement returned to the Settlement Administrator as non-deliverable on or before thirty calendar days before the "Response Deadline" (*i.e.*, sixty calendar days after the Settlement Administrator mails and emails the Notices of Settlement) shall be re-mailed to the forwarding address affixed thereto, and if no

1    forwarding address is provided, the Settlement Administrator shall make reasonable efforts to obtain

2    an updated mailing address.  *Id.* at § 3.5.7.

3          43.     In easy-to-understand language, the Notice of Settlement for Existing Class

4    Members and the Notice of Settlement for New Class Members describe the background of the

5    Action, the Settlement's principal terms and provisions, the manner in which the Individual

6    Settlement Payments and the PAGA Settlement Payments will be calculated, the estimated

7    Individual Class Payment for that Existing or New Class Member, tailored to her or his length of

8    employment, the estimated PAGA Payment to each PAGA Settlement Class Member, tailored to

9    her or his length of employment, the Attorneys' Fees, Litigation Costs and Class Representative

10   Payments to be requested by Class Counsel, the scope of the release to be given by Settlement Class

11   Members,  the manner in which Settlement Class Members can object to or, for New Class Members

12   only, opt out of the Settlement, contact information for Class Counsel and the Settlement

13   Administrator, how to access the Settlement website, and the date of the final fairness hearing.  *See*

14   *id.*, Ex. A, Ex. B.

15         44.     In addition, the Settlement Administrator will establish a toll-free number for

16   Settlement Class Members to call and a website with links to documents and judicial opinions

17   relevant to the Action.  *Id.* at § 3.3.

18   **Requests for Exclusion and Notices of Objection**

19         45.     In August 2015, Existing Class Members were afforded the opportunity to exclude

20   themselves from the class, which resulted in 407 opt-outs.  *See* Dkt. No. 378, ¶ 3.  Accordingly,

21   only New Class Members may exclude themselves from the class action aspects of the Settlement

22   by submitting a written Request for Exclusion to the Settlement Administrator within 60 calendar

23   days after the Settlement Administrator mails and emails the Notice of Settlement to the New Class

24   Members.  *See* Ex. 1 at § 3.5.9.1.

25         46.     Settlement Class Members who wish to object to the Settlement must file a written

26   Notice of Objection with the Court within 60 calendar days after the Settlement Administrator mails

27   and emails the Notices of Settlement.  *Id.* at § 3.5.10.  The Notice of Objection must: (a) contain the

28   {N0400668.1}                                   16

full name, address and last four digits of the social security number of the Settlement Class Member (required for identification purposes); (b) state the case name and number, *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA, state the basis for the objection, and state whether the Settlement Class Member intends to appear at the Final Approval Hearing; and (c) be signed by the Settlement Class Member.  *Id.*

**The Effective Date and Distribution of Payments**

47.    The "Effective Date" of the Settlement is the date by which the Settlement is finally approved and the Court's final approval order and the Judgment become binding and no longer subject to appeal.  *Id.* at § 1.11.  Within ten calendar days following that date, Apple shall fund the Settlement by providing to the Settlement Administrator the Total Settlement Amount and the amount of the employer's share of payroll taxes on the wage component of the Individual Class Payments.  *Id.* at § 3.6.2.   Within thirty calendar days of the Effective Date, the Settlement Administrator shall distribute the Individual Class Payments and the Individual PAGA Payments by mailing checks to the class members.  *Id.* at §§ 3.6.7, 3.6.8.  Settlement Class members will have 180 days to cash their checks.  *Id.* at § 3.6.8.  Reminder notices will be mailed 90 days after the original check mailing date.  *Id.* at § 3.6.9.  Settlement Class Members must cash any re-issued checks within 30 days after mailing or within 180 days after the original mailing date, whichever is later.  *Id.* at § 3.6.10.  Additionally, within thirty calendar days of the Effective Date, the Settlement Administrator shall distribute the Class Representative Payments and the Service Payment, distribute the Attorneys' Fees and Litigation Costs (provided the Court's order regarding these awards is "final" and not subject to appeal), and issue a check to the LWDA for the PAGA LWDA Payment.  *Id.* at §§ 3.6.3, 3.6.4, 3.6.6.

48.    There is no reversion to Apple of the Total Settlement Amount.  *Id.* at § 1.46.  Subject to the Court's approval, any unclaimed funds resulting from Settlement Class Members' failure to timely cash their checks shall be transmitted by the Settlement Administrator to the California Alliance of Boys & Girls Clubs, Inc. ("Boys & Girls Clubs"), with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training.  *Id.* at 3.6.10.

None of Plaintiffs' Counsel have a financial or other relationship with the Boys & Girls Clubs.

**The Releases**

49.     The named Plaintiffs are providing general releases to Apple, while the release to be given by Settlement Class Members and PAGA Class Members is limited to the Class Claims and PAGA Claims asserted in the Action.  *See id.* at § 3.4.4.

50.     The proposed scope of the release for Settlement Class Members and PAGA Settlement Class Members is appropriately limited to the claims asserted in the Action and does not release claims beyond those at issue.  *See id.* at §§ 3.4.2, 3.4.3.

**ATTORNEYS' FEES, LITIGATION COSTS AND THE**
**CLASS REPRESENTATIVE AND SERVICE PAYMENTS**

**Attorneys' Fees**

51.     Since filing of the initial Complaint in July 2013, Class Counsel have devoted thousands of hours prosecuting the Action in the face of enormous risks and obstacles and against a well-financed adversary represented by several large and prestigious law firms.  Despite these innumerable hurdles, Class Counsel secured a multi-million all-cash benefit for their clients representing the largest security check settlement in California.

52.     Examples of the work performed by Class Counsel over the last eight years include the following:

- Drafting complaints, amended complaints and the Consolidated Complaint, and extensive factual and legal research regarding the allegations and claims contained in those pleadings;

- Speaking with over 100 Apple employees regarding their experiences undergoing security checks at Apple retail stores, and drafting and securing declarations from many of those employees for use in opposing motions for summary judgment and in support of the Motion for Class Certification;

- Preparing and serving 65 requests for production of documents, 51 interrogatories, and 100 requests for admission to Apple regarding Apple's security check policy,

Case No. 13-cv-03451 WHA
DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

and responding to a combined total of 207 requests for production of documents and 120 interrogatories propounded by Apple regarding Plaintiffs' employment experiences with the Company, including producing approximately 1,162 pages of documents;

- Engaging in scores of telephonic and email meet and confer sessions with defense counsel and briefing multiple motions to compel with regard to a variety of discovery-related issues, including: (i) the scope of electronically stored information ("ESI") in Apple's database to be searched for responsive documents; (ii) the propriety of confidential designations attached to materials produced by Apple during discovery; (iii) the relevant time period governing Apple's search for responsive discovery materials; (iv) the production of email addresses and other employee contact information; and (v) the scheduling and timing of depositions and responses to discovery requests.

- Retaining and interacting with an experienced vendor to assist in the storage of substantial volumes of ESI and other discovery materials;

- Retaining and interacting with a consulting firm to perform a comprehensive survey of Apple employees regarding their experiences undergoing security screenings at Apple retail stores in California;

- Reviewing and cataloguing 57,414 pages of ESI and other materials produced by Apple, including: (i) scores of employee paystubs and time records; (ii) Apple's written policies governing employee conduct at Apple retail stores; (iii) complaints from Apple employees regarding the security check policy; (iv) email communications between store leaders and Apple management regarding the security check policy; and (v) videos of Apple employees undergoing security checks at certain Apple stores;

- Preparing for and conducting 14 total depositions of Apple store leaders and members of management; including: (i) multiple California store managers; (ii)

Apple's Director of US Loss Prevention; (iii) Apple's Vice President of Customer Experience; and (iv) an Apple Regional Director;

- Preparing and defending Apple employees in over 20 depositions conducted by Apple's counsel;

- Drafting multiple briefs and declarations in connection with two motions for summary judgment served by Apple and a cross-motion for summary judgment served by Plaintiffs;

- Drafting multiple briefs and declarations in connection with the Class Certification Motion and Apple's subsequent application to the Ninth Circuit for review of the Class Certification Order pursuant to Federal Rule 23(f);

- Moving to strike the expert report of Randolph Hall submitted by Apple in opposition to the Class Certification Motion;

- Drafting multiple briefs in the Ninth Circuit and the California Supreme Court that led to precedent-setting decisions relating to security screenings and employer liability under California law, including the Supreme Court Opinion and the Ninth Circuit Opinion;

- Preparing for and attending complex and often lengthy oral arguments before the Court, the Ninth Circuit and the California Supreme Court regarding Apple's liability to retail store employees arising out of the security check policy;

- Performing extensive legal research on a variety of contested legal issues, including: (i) the application of the *de minimis* defense to Apple's security checks; (ii) whether retail store employees were subject to Apple's "control" during security checks for purposes of establishing employer liability under  the applicable Wage Order and applicable legal authority; (iii) the Court's exercise of supplemental jurisdiction over Plaintiffs' state-law claims; (iv) whether "predominance" of common questions exists for purposes of satisfying the class certification requirements of Federal Rule

23(b)(3); and (v) the amount and measure of damages and penalties recoverable by Apple employees in connection with the security check policy;

- Retaining and working with an experienced claims administrator to prepare and disseminate the First Notice regarding the Class Certification Order to over fourteen thousand Apple employees;

- Attending and participating by telephone in at least eight status conferences and oral arguments before the Court regarding motions to compel discovery, the timing and status of discovery, two motions for summary judgment, the Class Certification Motion, the form and content of notices for dissemination to class members, settlement-related matters and other litigation issues;

- Preparing a comprehensive case management plan to govern the damages claims process, pre-trial procedures and a trial of the Action;

- Performing extensive analyses of potential claims rates and the damages recoverable by employees who went through security checks at Apple retail stores;

- Drafting multiple mediation statements, attending four mediation sessions and participating in numerous email and telephonic conversations with Judges Gandhi and Infante with regard to the settlement of the Action; and

- Engaging in multiple email and telephonic conversations with defense counsel regarding the terms of the MOU and the Settlement Stipulation, including the exhibits attached thereto.

53.    In addition to the work performed by Class Counsel, four other law firms also performed certain tasks for the benefit of the class.  Through October 15, 2021, Plaintiffs' Counsel collectively spent over 10,700 hours prosecuting the Action on a wholly contingent basis, which results in an approximate aggregate lodestar of $8,550,000.  Detailed additional information regarding the hours worked and tasks performed will be provided in the formal motion for an award of attorneys' fees and litigation costs to be filed if preliminary approval is granted.

54.     In performing this work over the last eight years, Class Counsel endeavored to avoid duplication of effort and minimize the expenditure of attorney time as much as reasonably possible. For example, the majority of depositions were attended by a single attorney, and junior attorneys performed most of the document review, legal research, communications with Plaintiffs and class members, drafting of discovery requests and responses to discovery requests.

55.     At the final hearing, Plaintiffs' Counsel intend to request an award of Attorneys' Fees representing one-third of the Total Settlement Amount, or $9,966,666.67.  This percentage is based upon a number of factors that, in Class Counsel's opinion, support an award exceeding the Ninth Circuit's 25% benchmark, including: (i) the complexity of the Action, which involved complex questions of law regarding the proper interpretation of the "control" and "suffered or permitted to work" prongs of the applicable Wage Order; (ii) the outstanding result achieved by Class Counsel on behalf of the class in achieving a binding, published precedent from the California Supreme Court holding that time spent waiting for and undergoing employer-required onsite security searches is compensable as a matter of law, which led to reversal of the judgment against the certified class and entry of a new judgment in favor of the certified class on liability; (iii) the $29.9 million that Apple has agreed to pay in settlement, which is by far the largest settlement realized in a security check case in California; (iv) the extraordinary obstacles Class Counsel confronted in achieving this result against a well-financed adversary, including successfully arguing before the California Supreme Court, securing reversal of summary judgment before the Ninth Circuit and overcoming Apple's vigorous opposition to class certification; (v) the more than eight-year duration of the Action, which will necessarily result in a substantial delay in the payment of Attorneys' Fees to compensate Class Counsel for work performed many years ago on a pure contingency basis with no guarantee of payment; and (vi) the sheer volume of the efforts undertaken by Class Counsel during this eight-year period, which saw the case progress through the completion of merits discovery, the granting of class certification, proceedings before the California Supreme Court and the Ninth Circuit, the Court's entry of summary judgment on the issue of liability and preparing for the damages phase of the case and ultimate trial.

56.     Based on their estimated lodestar through October 15, 2021, including the projected hours from the other firms who represented the plaintiffs in this action, the firms' combined lodestar is approximately $8,550,000, and a one-third award will result in a multiplier of less than 1.2, which is far less than multiples awarded in other class actions before this and other courts. We respectfully submit that a modest multiple is appropriate in this case given the many years the Action has been pending, the substantial work Class Counsel performed during this period, the substantial costs Class Counsel incurred with no assurance of recovery, and the outstanding result achieved through the Settlement against a well-financed adversary.

**Litigation Costs**

57.     At present date, Plaintiffs' Counsel have incurred approximately $370,000 in unreimbursed expenses prosecuting the Action on behalf of their clients. These expenses were incurred in connection with a variety of activities necessary for the prosecution of the litigation, including: (i) court reporter services for 14 depositions; (ii) expert witness costs; (iii) multiple mediation sessions and separate communications with Judges Gandhi and Infante regarding settlement; (iv) travel, lodging and meals in connection with depositions and hearings before this Court, the California Supreme Court and the Ninth Circuit; (v) document hosting of ESI discovery; (vi) photocopy costs; and (vii) distribution of class notice in 2015 and administration services associated therewith (for which Class Counsel shall pay the notice administrator $94,586.85). Additional costs are expected to be incurred between now and the conclusion of the Action.

58.     Detailed information about the costs incurred by Class Counsel and other Plaintiffs' counsel will be included in Class Counsel's formal motion for an award of such costs, to be filed if preliminary approval is granted.

**The Class Representative Payments and the Service Payments**

59.     At the final approval hearing, Class Counsel will ask the Court to award $10,000 for Plaintiffs and class representatives Seth Dowling, Aaron Gregoroff, Taylor Kalin and Debra Speicher, and $10,000 for Plaintiff Amanda Frlekin. These former Apple employees played an active and invaluable role helping prosecute the Action over a period of many years. They regularly

communicated with their counsel regarding the status of the Action; reviewed and approved complaints and other important court filings; responded to multiple sets of interrogatories and document requests; executed declarations in support of the Motion for Class Certification; prepared -- and appeared -- for depositions conducted by Apple's counsel; and consulted throughout the settlement process to assure the class will be achieving a fair settlement.  Also relevant is the reputational consequences these Plaintiffs were willing to assume from filing a lawsuit against their former employer, as well as the risk they ran that costs would be awarded against them were the case unsuccessful.  Indeed, Apple sought and was awarded $34,859.12 in costs after the original adverse judgment (Dkt. Nos. 351, 352), which award was reversed only due to the successful appeal by Class Counsel.  Notwithstanding this award, the named Plaintiffs stood firm, and the Settlement benefiting the class is the result.

60.     The aggregate sum of the service award payments (*i.e.*, $50,000) represents approximately .0016% of the Total Settlement Amount and .0026% of the estimated Net Settlement Amount.  In addition, the cost to 14,683 Settlement Class Members of $50,000 in incentive awards is approximately $0.29 per Settlement Class Member, which is reasonable consideration for the services Plaintiffs performed and the results they helped achieve on behalf of the Settlement Class.

61.     In connection with the motion for approval of these proposed awards, each Plaintiff will submit a declaration describing the role they played in the Action, the work they performed since the Action was commenced in 2013 and the expenses they incurred, if any, fulfilling their role for the benefit of the class.  The request for these proposed awards will be fully supported in the formal motion to be filed if preliminary approval is granted.

## THE RANGES OF POSSIBLE RECOVERY
## AND RISKS OF FURTHER LITIGATION

62.     Had the Action proceeded to trial, Apple employees would have been entitled to seek the following forms of compensation and penalties under California law for the unpaid security checks they experienced at Apple's California retail stores:

- Straight and overtime wages under Labor Code §1194;

Case No. 13-cv-03451 WHA
DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

- Liquidated damages under Labor Code §1194.2;

- Prejudgment interest under California Civil Code § 3287(b), provided damages are "readily ascertainable";

- Waiting time penalties under Labor Code §§ 201, 202 and 203 equaling normal wages upon separation from employment up to a maximum of 30 days;

- Wage statement penalties under Labor Code § 226 for an employer's failure to furnish accurate itemized wage statements, equaling the greater of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000; and

- PAGA penalties under Labor Code § 2698 *et seq*. which range from $100 per employee per pay period to $250 per employee per pay period.

63.    Each of these claims for damages and penalties are subject to statutes of limitations of between one and four years.  In addition, Apple has consistently argued that that the waiting time and wage statement penalties under Labor Code §§ 201, 202, 203 and 226 require proof that the employer's conduct was "willful" and that class members have suffered a separate "injury" beyond their lost wages, and that the liquidated damages claim under Labor Code §1194.2 and the waiting time and wage statement penalties are subject to a "good faith defense."

64.    In evaluating the ranges of possible recovery, Class Counsel performed a variety of hypothetical damage calculations using different scenarios that take into account: (i) the wage rate to apply in calculating unpaid straight and overtime wages an employee could recover (*i.e.*, minimum wage rates, advocated by Apple, versus contract hourly rates); (ii) the length of a class member's employment at Apple; (iii) the average number of checks an employee went through during a particular week; and (iv) the average duration of a check an employee went through each time he or she left a retail store (excluding meal breaks).  Given these variations, Class Counsel prepared the following charts (attached as Exhibit 2), which estimate the average recoveries for Settlement Class Members applying different wage rates.

65.     According to data produced by Apple, the Class Members worked an average of 460 shifts, which equates to approximately 92 weeks, or 1 year and 10 months.  Apple produced data reflecting the final rates of pay of the Class Members whose employment had ended as of the date of production in approximately October 2020.  This data was used by an expert retained by Class Counsel to calculate Class Members' estimated average contract rate of pay.  The data yields an average hourly contract rate of pay of $20.89 per hour.  If lower starting rates of pay, and increases in pay rates over time (from the beginning of the limitations period through the final date of employment), were also considered in calculating the average hourly contract rate of pay, the final average hourly figure would be lower than $20.89.  This would yield both lower estimated average unpaid wages owed to each Class Member and lower estimated average unpaid pre-judgment interest owed to each Class Member.

66.     As the charts attached hereto as Exhibit 2 reveal, the average Class Member, who worked at an Apple retail store for 460 shifts, would be entitled to recover $801.13 in unpaid base wages, calculated at the average contract rate of $20.89, assuming an average unpaid Check duration of 5 minutes per day.  In addition, using the same assumptions, the average class member would be entitled to seek to recover approximately $620.88 in pre-judgment simple interest, calculated at the rate of 10% per annum from February 1, 2014 through November 1, 2021, for a total of $1,422.01 in unpaid wages and interest.  (February 1, 2014 is approximately 460 shifts before December 15, 2015, when Apple discontinued the Check policy.)  Using the average *minimum* wage rate instead of the average contract rate, this Class Member would be entitled to $316.77 in unpaid base wages plus $245.50 in interest, for a total of $562.27.

67.     Thus, the Settlement would afford, on average, 160% of base wages owed at contract rates; or 90% of base wages owed at contract rates plus interest.  (These percentages would be even higher if the actual average contract rate of pay, estimated to be lower than $20.89, were used to calculate base wages owed.)  Using minimum wage rates instead, the Settlement would afford, on average, or 407% of base wages owed or 229% of base wages owed plus interest.

DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

68.     The charts also include estimates of the average Class Member's wage statement penalties, waiting time penalties, and liquidated damages.   To summarize, the average Class Member could seek to recover an additional $626.70 in waiting time penalties; $4,000 in wage statement penalties, and $316.77 in liquidated damages, for a total of $4,943.47.  *Id.*  (The figures are the same calculated at minimum wage rates.)  Together with estimated unpaid base wages (at contract rates) plus pre-judgment interest, the *maximum* average recovery per Class Member equals $6,365.48.  The Settlement, on average, would afford the Class Members approximately 20.2% of this figure.  (As explained above, this percentage would be higher if the actual average contract rate of pay were used to calculate base wages owed, rather than the average final rate of pay.)   If minimum wage rates are instead used, the percentage increases to 23.4%.

69.     Of course, the ability of an employee to secure maximum damages and penalties had the Action proceeded to trial would have been highly uncertain.   In this regard, Apple did not maintain records showing the employees who went through security checks or the duration of those checks when they occurred.  Although we would have argued that various evidentiary presumptions should arise from Apple's failure to keep required records, as a practical matter, the absence of records led the Court to impose a detailed notice and claims process.  Had the Action proceeded to trial, an employee's ability to recover compensation  -- and the amount of that compensation -- would have depended upon, among other factors: (i) the employee actually submitting a claim in connection with the trial process; (ii) the employee recalling the approximate number and duration of the security checks he or she went through at a California store (events that for some occurred as long as twelve years ago); (iii) Apple's right to challenge an employee's claim, including the ability to depose the employee upon Court approval; and (iv) the employee appearing for trial if required to do so.  It was very possible that many class members would not have participated in the process, or that Apple would have successfully challenged their claim forms, and they would have recovered nothing.

70.     Securing maximum damages and penalties could also have been adversely impacted by Apple's defenses.  As noted above, Apple had maintained throughout the Action that its actions

Case No. 13-cv-03451 WHA
DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

were undertaken in "good faith" (which may have vitiated several of Plaintiffs' theories of recovery) and that many of the checks were subject to a "*de minimis*" defense.  The success of one or more of these defenses could have substantially reduced the recovery achieved by employees who submitted claims during the trial process.

71.    There were additional and significant litigation risks had a settlement not been realized.  For example, had the Action been prosecuted through trial and judgment, Apple asserts that it would have appealed the class certification order to the Ninth Circuit.  If successful, the reversal of that ruling would necessarily require Class Members to retain their own counsel and prosecute their claims for compensation individually, a highly unlikely scenario at best.

72.    A lengthy appeals process would also have delayed any payment to Settlement Class Members for several more years beyond the eight years the Action has already been pending.  In a circumstance where many Settlement Class Members are hourly-paid wage earners, the ability to secure an immediate and meaningful cash payment is a far more desirable outcome than the uncertainty of a higher payment years from now should an appeal by Apple be unsuccessful.

### CLASS COUNSEL'S VIEWS REGARDING THE SETTLEMENT AND WORK ON COMPARABLE CLASS SETTLEMENTS

**Class Counsel's Views of the Settlement**

73.    Class Counsel have a highly favorable view of the Settlement and believe it will merit the Court's approval at the Final Approval Hearing.  Class Counsel's opinion is premised on a variety of factors, including the following:

- The Net Settlement Fund and the average Individual Settlement Payment are far in excess of similar metrics in other comparable bag check settlements[10];

---

[10]    *See, e.g.*, *See, e.g.*, *Lao v. H&M Hennes & Morvitz, LP*, 16-cv-00333, Dkt. Nos. 163, 167 (N.D. Cal. 2016) ($3.8 million settlement approved on behalf of approximately 13,500 class members, representing 9.6% of total possible recovery and average $164.17 per class member); *Chavez v Converse Inc.*, 15-cv-3746, Dkt. Nos. 217, 219 (N.D. Cal. 2015) ($1.875 million settlement approved on behalf of approximately 1,500 class members, representing 7.6% of total possible recovery and average $363.63 per class member); and *Greer v. Dick's Sporting Goods*, 15-cv-01063, Dkt. Nos. 81, 89 (C.D. Cal. 2015) ($2.9 million settlement approved on behalf of approximately 10,700 class members, with an average payment per class member of $155).

DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

- The Settlement does not require Participating Settlement Members to submit claims as a condition to obtaining compensation, a process that may have left some Apple employees who inadvertently or otherwise failed to submit claims without payment for the time spent in security checks;

- The cash payment to Participating Settlement Members under the Settlement avoids the possibility of successful appeals of the Class Certification Order or other rulings from the Court, which could have delayed for years -- if not entirely eliminated -- the potential recovery by Apple employees who went through security checks;

- None of the Total Settlement Amount is reversionary to Apple;

- Class Counsel are well-informed about the strength and weaknesses of their claims and of Apple's potential defenses given the substantial discovery they secured during the Action, the decisions of this Court, the California Supreme Court and the Ninth Circuit, and the multiple mediations they participated in before several current and former jurists;

- After substantial conversations and an all-day mediation session, Judge Infante expressed a favorable opinion of the Settlement and its terms; and

- The substantial difficulties in proof Plaintiffs would have encountered at trial establishing entitlement to wage statement and waiting time penalties (which comprise the majority of the verdict value of Plaintiffs' claims), including that Apple's conduct was "willful" and that Apple employees sustained "injuries" from the violations alleged.

**Class Counsel's Comparable Class Settlements and Combined Hours and Lodestar Figures**

      **A.**    **Lee S. Shalov and McLaughlin & Stern, LLP**

74.    I am a 1985 law school graduate and have been practicing in the class action field for over 30 years.  During this time, I have been lead or co-lead counsel in well over 100 class actions brought on behalf of aggrieved employees, consumers, and investors nationwide.  These

cases – several of which were litigated in federal and state courts in California – have generated millions of dollars of recoveries for the class members I represented.

75.     As partner and co-chair of the class action department of M&S, my firm and I have been lead or co-lead counsel in scores of wage and hour class actions over the last ten years that have generated millions of dollars in recoveries for aggrieved employees.  These cases include: *Ramirez v. Riverbay Corp.*, Index No.: 13-cv-2367 (S.D.N.Y.) (obtained $6.25 million settlement for over 1,700 employees who were not compensated for work performed before and after scheduled shifts and wrongfully paid compensatory time rather than overtime cash payments); *Civil v. Starrett City, Inc.*, Index No.: 18-2256 (E.D.N.Y.) (obtained $4.75 million settlement on behalf of employees at cooperative housing complex); *Siewharack v. Queens Long Island Medical Group*, P.C., Index No.:11-3603  (E.D.N.Y) (obtained $2.45 million settlement for employees of medical company who were not compensated for time worked); and *Ludwig V. Pret A Manger,* Index No.: 11-05677 (S.D.N.Y.) (obtained $299,000 settlement for misclassified managers in training).

76.     Attached hereto as Exhibit 3 is a chart identifying several cases my firm and I have recently litigated that involved settlements with similar claims and issues as those asserted in the Action.

77.     Through October 15, 2021, I estimate that the professionals of my firm have worked over 4,450 hours on this case, for a lodestar at current rates of approximately $3,470,000. We have incurred over $313,000 in unreimbursed litigation expenses for the benefit of the class.  If preliminary approval is granted, the firm's hours, lodestar and unreimbursed litigation expenses will be fully supported by a detailed declaration to be filed in support of a formal motion for attorneys' fees and litigation costs.

78.     As Lead Counsel, I have requested and received hours and lodestar reports from the other Plaintiffs' Counsel firms who performed tasks for the benefit of the class.  Together, the Plaintiffs' Counsel firms, including Kralowec Law, P.C. (figures stated below), have worked approximately 10,700 hours on this case, for a combined lodestar of approximately $8,550,000.  If the Court awards $9,966,666.67 in fees as requested, the award would represent a multiplier of

1    approximately 1.2.  This figure may change as additional work is performed in the litigation.  All

2    Plaintiffs' Counsel firms seeking fees and costs will be required to provide a detailed declaration in

3    support of the formal motion for attorneys' fees and litigation costs to be filed by Class Counsel.

4         **B.      <u>Kimberly Kralowec and Kralowec Law, P.C.</u>**

5         79.    As the principal of Kralowec Law, P.C., founded in 2010, I have substantial

6    experience litigating wage and hour class actions such as this case.  In brief summary, I have been

7    practicing law since 1992 and have specialized in plaintiff-side class action litigation, including

8    wage and hour class actions, since 2001.  I also have extensive experience handling complex

9    appellate matters.  In 2013, I received a *California Lawyer* Attorney of the Year ("CLAY") Award

10   in recognition of my work as lead appellate counsel for the employees in *Brinker Restaurant Corp.*

11   *v. Superior Court*, 53 Cal.4th 1004 (2012), a wage and hour class action.  In 2020, I was named by

12   the *Daily Journal* as one of the Top Labor & Employment Lawyers in California in recognition of

13   my victory in the California Supreme Court in this case.  As noted by the *Daily Journal*, I "served

14   as lead appellate counsel for the employees in one of the most significant wage and hour outcomes

15   of 2020 so far in which the state Supreme Court held that workers are entitled to be paid for

16   undergoing mandatory security searches of their bags and tech devices."  I personally drafted all of

17   the appellate briefs filed in the Ninth Circuit and in the California Supreme Court on behalf of

18   plaintiffs and the certified class in this case.  I also presented the oral arguments in both Courts.

19        80.    Within the past six years, my firm has settled four class actions (including one in this

20   Court) for which the settlement monies already have been paid and distributed: (1) *Cicairos v.*

21   *Summit Logistics, Inc.*, Case No. CV014837, consolidated with *Bluford v. Safeway Stores, Inc.*, Case

22   No. CV028541, (Alameda Cty. Super. Ct.) (together "*Safeway*"); (2) *Bartoni, et al. v. American*

23   *Medical Response West*, Case No. RG08382130, (Alameda Cty. Super. Ct.) ("*AMR*"); (3) *Fishman,*

24   *et al. v. Tiger Natural Gas, Inc., et al.*, Case No. 3:17-cv-05351 (WHA) (N.D. Cal.) ("*Tiger*"); and

25   (4) *Streit, et al. v. Farmers Group, Inc. et al.*, Case No. BC434852, (Los Angeles Cty. Super. Ct.)

26   ("*Farmers*").

27

28   {N0400668.1}                          31

81.     *Safeway* was an employment action brought under the California Labor Code and Unfair Competition Law ("UCL") on behalf of a class of 1,076 truck drivers in Northern California, who were not paid for rest breaks and whose pay stubs and method of calculating pay were indecipherable.  That action spanned 13 years of litigation and two trips up to the California Court of Appeal.  It settled for $30 million in 2015.  No claims process was required.  The class action administrator was Gilardi & Co. LLC (parent company Kurtzman Carson Consultants LLC (KCC)).  Gilardi made repeated efforts to update addresses of class members—many of whom had relocated or even passed away during the 13 years of litigation—but could not locate around 15-20% of the class members, and their checks were going uncashed (and would otherwise escheat to the State of California).  Kralowec Law personally undertook, without further compensation, to locate class members using search methods including social media.  We located many class members by searching names on Facebook and Google, calling children's schools and families' churches, and other efforts.  Many of the class members had limited means, and the sums they received (from as low as $200 up to $60,000) were substantial for the recipient families.  In the end, 96% of the class, or 1,040 of the 1,081 class members (or their heirs), received and cashed their settlement checks, comprising 99.62% of the net settlement fund.

82.     *AMR* was an employment action brought under the Labor Code and UCL on behalf of a class of 8,660 field and communications center employees (including ambulance drivers and paramedics) who were not paid for meal and rest breaks.  That action spanned ten years of litigation, including proceedings in Alameda County Superior Court, the Northern District of California, the Ninth Circuit, and two, separate appeals to the California Court of Appeal.  It settled for $17 million in 2019.  No claims process was required.  The claims administrator was KCC.  In addition to KCC's efforts to locate addresses for class members whose checks were returned, our firm along with other class counsel firms made substantial efforts, without further compensation, to contact by email and telephone every class member with an uncashed check exceeding $100 (1,366 in all) prior to the final check-cashing deadline.  These efforts of my firm and co-counsel firms resulted in more than 400 class members—all first responders, many of whom were then performing critical functions

1   during the Covid pandemic—receiving and cashing their re-issued checks in a total amount of over

2   $285,000.  In the end, 79% of all class members cashed their settlement checks, comprising 93% of

3   the net settlement fund.

4         83.    *Tiger* was a consumer class action litigated before this Court.  It was brought under

5   California's Recording Law and the UCL on behalf of a class of 23,603 natural gas customers whom

6   the defendant contacted to persuade them to switch their service to defendant from Pacific Gas &

7   Electric.  Plaintiff alleged defendant recorded its sales calls unlawfully without the consumers'

8   consent and made misrepresentations regarding the price of its service.  The case settled in 2019 for

9   $3.7 million (based on defendants' limited ability to pay a judgment for more).  No claims process

10  was required.  Each class member was sent a check for $97.31; Angeion Group was the settlement

11  administrator.  Our firm, together with co-counsel, made efforts, without further compensation, to

12  increase the check-cashing rate, including making telephone calls to all class members (for whom

13  defendant provided numbers) who previously resided in Paradise, California before the wildfire

14  caused them to relocate.  In the end, 83.48% of the class members cashed their checks.

15        84.    *Farmers* is a consumer class action brought under the California Insurance Code and

16  UCL on behalf of a class of approximately 340,000 Farmers home and auto insurance policyholders,

17  all of whom canceled their policies before the end of term, and received less than a pro rata return

18  of premium.  That action spanned eleven years of litigation, including two appeals to the California

19  Court of Appeal.  It settled in 2020 for $20 million.  No claims process was required.  Angeion

20  Group is the settlement administrator; final approval was granted, but administration is not yet final.

21        85.    Attached hereto as Exhibit 4 is a "Past Distributions" chart (pursuant to paragraph

22  11 of the Northern District Procedural Guidance for Class Action Settlements) with true and correct

23  data regarding distribution of the settlement funds in the above-described actions.

24        86.    Through October 15, 2021, I estimate that the professionals of my firm have worked

25  approximately 5,100 hours on this case, for a lodestar at current rates of approximately $4,000,000.

26  We have incurred over $38,000 in unreimbursed litigation expenses for the benefit of the class.  If

27  preliminary approval is granted, the firm's hours, lodestar and unreimbursed litigation expenses will

28   

be fully supported by a detailed declaration to be filed in support of a formal motion for attorneys'
fees and litigation costs.

Dated: November 12, 2021

*/s/ Lee S. Shalov*
Lee S. Shalov

*/s/ Kimberly A. Kralowec*
Kimberly A. Kralowec

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

In accordance with Local Rule 5-1(h)(3), I attest that the other Signatories named above
have concurred in the filing of this document.

Dated: November 12, 2021

*/s/ Kimberly A. Kralowec*
Kimberly A. Kralowec (SBN 163158)