# EXHIBIT 1

| | |
|---|---|
| Lee Shalov (admitted *pro hac vice*) | Julie Dunne (CA Bar No. 160544) |
| lshalov@mclaughlinstern.com | julie.dunne@us.dlapiper.com |
| Brett Gallaway (admitted *pro hac vice*) | Matthew Riley (CA Bar No. 257643) |
| bgallaway@mclaughlinstern.com | matthew.riley@us.dlapiper.com |
| Jason Scott Giaimo (admitted *pro hac vice*) | Vani Parti (CA Bar No. 308468) |
| jgiaimo@mclaughlinstern.com | vani.parti@us.dlapiper.com |
| **McLAUGHLIN & STERN, LLP** | **DLA PIPER LLP (US)** |
| 260 Madison Avenue | 401 B Street, Suite 1700 |
| New York, New York 10016 | San Diego, California 92101 |
| Tel:     (212) 448-1100 | Tel:     (619) 699-2700 |
| Fax:    (212) 448-0066 | Fax:    (619) 699-2701 |

| | |
|---|---|
| Kimberly A. Kralowec (CA Bar No. 163158) | Mandy Chan (CA Bar No. 305602) |
| kkralowec@kraloweclaw.com | mandy.chan@us.dlapiper.com |
| Kathleen Styles Rogers (CA Bar No. 122853) | Andrea Ortega (CA Bar No. 317820) |
| krogers@kraloweclaw.com | andrea.ortega@us.dlapiper.com |
| **KRALOWEC LAW, P.C.** | **DLA PIPER LLP (US)** |
| 750 Battery Street, Suite 700 | 555 Mission Street, Suite 2400 |
| San Francisco, California 94111 | San Francisco, California 94105 |
| Tel:     (415) 546-6800 | Tel:     (415) 836-2500 |
| Fax:    (415) 546-6801 | Fax:    (415) 836-2501 |

Attorneys for Plaintiffs and the Class

Attorneys for Defendant
APPLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER; AND TAYLOR KALIN, on behalf of themselves and all others similarly situated, | Case No. 13cv03451-WHA (lead)<br>Case No. 13cv04727-WHA (consolidated) |
| Plaintiffs, | **STIPULATION REGARDING CLASS AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT AND RELEASE** |
| v. | |
| APPLE INC., | |
| Defendant. | |

**TABLE OF CONTENTS**

Page

1.    DEFINITIONS. ............................................................................................................1

2.    RECITALS. .................................................................................................................9

2.1    Procedural History ..........................................................................................9

2.2    Discovery And Investigation ........................................................................12

2.3    Mediation ......................................................................................................13

2.4    Settlement Class Members' Claims ..............................................................13

2.5    PAGA Settlement Class Members' Claims ..................................................13

2.6    Defendant's Defenses – No Admission Of Liability ....................................13

2.7    Benefits Of Settlement To Settlement Class Members And PAGA
       Settlement Class Members ............................................................................14

2.8    Defendant's Reasons For Settlement ............................................................14

3.    SETTLEMENT TERMS. ..........................................................................................15

3.1    Appointment Of Class Representatives ........................................................15

3.2    Appointment Of Class Counsel And Lead Counsel .....................................15

3.3    Appointment Of Settlement Administrator ..................................................15

3.4    Consideration ................................................................................................17

       3.4.1    Total Settlement Amount ...................................................................17

             3.4.1.1    Class Representative Payments .............................................17

             3.4.1.2    Service Payment ...................................................................18

             3.4.1.3    Attorneys' Fees ....................................................................18

             3.4.1.4    Litigation Costs ....................................................................19

             3.4.1.5    Settlement Administration Costs ..........................................19

             3.4.1.6    PAGA Settlement Amount ....................................................19

                   3.4.1.6.1    PAGA LWDA Payment ............................................20

                   3.4.1.6.2    Individual PAGA Payments .....................................20

             3.4.1.7    Individual Class Payments ....................................................20

       3.4.2    Released Class Claims .......................................................................21

       3.4.3    Released PAGA Claims .....................................................................21

       3.4.4    Plaintiffs' Complete And General Release ........................................22

3.5    Settlement Administration Procedures ..........................................................23

       3.5.1    Settlement Approval And Implementation Procedures ......................23

       3.5.2    Preliminary Approval .........................................................................23

       3.5.3    LWDA Notice .....................................................................................23

       3.5.4    CAFA Notice ......................................................................................24

       3.5.5    Employee List .....................................................................................24

i

| | | | |
|---|---|---|---|
| | 3.5.6 | Notice By First Class U.S. Mail and Email | 24 |
| | 3.5.7 | Undeliverable Notices | 25 |
| | 3.5.8 | Notice Satisfies Due Process | 25 |
| | 3.5.9 | Requests For Exclusion | 26 |
| | | 3.5.9.1 New Class Members' Requests For Exclusion | 26 |
| | | 3.5.9.2 Report Of Requests For Exclusion | 26 |
| | 3.5.10 | Notices Of Objections | 27 |
| | 3.5.11 | No Solicitation Of Exclusions Or Objections | 27 |
| | 3.5.12 | Settlement Administrator Declaration In Support Of Final Approval | 28 |
| | 3.5.13 | Final Approval Hearing | 28 |
| | 3.5.14 | Entry Of Final Approval Order And The Judgment | 28 |
| 3.6 | | Funding And Allocation Of Settlement | 29 |
| | 3.6.1 | Settlement Accounting | 29 |
| | 3.6.2 | Funding The Settlement | 29 |
| | 3.6.3 | Payment Of Class Representative Payments And Service Payment | 29 |
| | 3.6.4 | Payment Of Attorneys' Fees And Litigation Costs | 30 |
| | 3.6.5 | Payment Of Settlement Administration Costs | 30 |
| | 3.6.6 | Payment Of PAGA LWDA Payment | 30 |
| | 3.6.7 | Payment Of Individual PAGA Payments | 31 |
| | 3.6.8 | Payment Of Individual Class Payments | 31 |
| | 3.6.9 | Reminder Postcards | 32 |
| | 3.6.10 | Void Date For Uncashed Checks And Allocation Of Refunded Payroll Taxes | 33 |
| | 3.6.11 | Post-Distribution Accounting | 33 |
| 3.7 | | Miscellaneous | 34 |
| | 3.7.1 | No Pending Or Future Lawsuits By Plaintiffs | 34 |
| | 3.7.2 | No Effect On Employee Benefits | 34 |
| | 3.7.3 | Nullification Of Settlement Agreement | 34 |
| | 3.7.4 | Exhibits | 35 |
| | 3.7.5 | Headings | 35 |
| | 3.7.6 | Interim Stay Of Proceedings | 35 |
| | 3.7.7 | Amendment Or Modification | 35 |
| | 3.7.8 | Entire Agreement | 35 |
| | 3.7.9 | Authorization To Enter Into Settlement Agreement | 36 |
| | 3.7.10 | Binding On Successors And Assigns | 36 |
| | 3.7.11 | California Law Governs | 36 |
| | 3.7.12 | This Settlement Is Fair, Reasonable, And Adequate | 36 |

ii

3.7.13  No Publicity.................................................................................37

3.7.14  Notices.....................................................................................37

3.7.15  Execution By Settlement Class Members ..............................................38

3.7.16  Counterparts .............................................................................38

Case No. 13-cv-03451 WHA
STIPULATION REGARDING CLASS AND PAGA SETTLEMENT AND RELEASE

IT IS HEREBY STIPULATED by Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher, on behalf of themselves and each of the Settlement Class Members (as defined below), and Plaintiffs Amanda Frlekin and Taylor Kalin on behalf of themselves, the State of California, and PAGA Settlement Class Members (as defined below), on the one hand, and Defendant Apple Inc., on the other hand, subject to the approval of the Court, that the Action (as defined below) is hereby compromised and settled pursuant to the terms and conditions set forth below:

1. **DEFINITIONS.**

Unless otherwise defined, capitalized terms used in this Settlement Agreement shall have the meanings set forth below:

1.1 **"Action"** means the two consolidated class and PAGA lawsuits entitled *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA, and *Taylor Kalin v. Apple Inc.*, Case No. 13-cv-04727-WHA, pending before the Court.

1.2 **"Attorneys' Fees"** means such attorney fees as the Court may award to Class Counsel for the services the law firms representing Plaintiffs in the Action have rendered to the Plaintiffs, the Settlement Class Members, and the PAGA Settlement Class Members in the Action, as well as all attorneys' fees yet-to-be incurred by the law firms representing Plaintiffs in the Action to document the Settlement, to secure court approval of the Settlement, to obtain final adjudication of the Action, and in connection with administration of the Settlement. The Attorneys' Fees shall be paid from the Total Settlement Amount.

1.3 **"Class Claims"** means any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for wages, benefits, and related penalties actually asserted or that could have been asserted in the Action by the Plaintiffs on behalf of themselves and/or the Settlement Class Members based on the facts alleged in Plaintiff Amanda Frlekin's November 12, 2013 notice letter to the LWDA, Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, and/or the original, amended, and/or Consolidated Complaint in the

/////

/////

*Frlekin* Action (ECF Nos. 1, 75, 223 (Ex. A)[1]), and/or the original and/or amended complaint in the *Kalin* Action (ECF Nos. 1 and 13 in the *Kalin* Action), including claims for: (i) failure to pay overtime and minimum wages pursuant to Labor Code §§ 204, 226.7, 510, 1194, 1194.2 and 1198 and the applicable Wage Order of the Industrial Welfare Commission; (ii) violation of California's Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*; (iii) failure to provide and maintain accurate wage statements pursuant to Labor Code § 226 and the applicable Wage Order of the Industrial Welfare Commission; (iv) failure to timely pay wages upon termination of employment pursuant to Labor Code §§ 201-204; and (v) attorneys' fees and costs incurred to prosecute the Action on behalf of Settlement Class Members. "Class Claims" also includes all claims that Plaintiffs and/or Settlement Class Members may have against the Released Parties relating to: (a) the payment, taxation, and allocation of Attorneys' Fees and Litigation Costs to Class Counsel pursuant to this Settlement Agreement; (b) the payment, taxation, and allocation of the Class Representatives' Class Representative Payments and Plaintiff Amanda Frlekin's Service Payment pursuant to this Settlement Agreement; and (c) the payment, taxation, and allocation of payments to Participating Settlement Class Members. Notwithstanding the foregoing, "Class Claims" does not include the claims for failure to reimburse business expenses pursuant to Labor Code § 2802 or the claims for failure to pay for time spent waiting in line to clock in and time spent checking out company devices asserted in Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, which were never pursued in the Consolidated Complaint filed in this Action, or claims for violation of Massachusetts, New York, or Ohio law, or the federal Fair Labor Standards Act ("FLSA"), which the Court already dismissed with prejudice. (ECF No. 214.)

1.4    **"Class Counsel"** means McLaughlin & Stern LLP and Kralowec Law, P.C.

1.5    **"Class Period"** means the period from July 25, 2009 through and including December 31, 2015.

/////

---

[1] Citations to "ECF" refer to the Court's docket in the *Frlekin* Action (as defined below) unless otherwise indicated.

1.6  **"Class Representative Payment"** means the amount the Court awards to Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher for prosecuting the Action and for providing a Complete and General Release to the Released Parties. Defendant will not oppose Class Representatives' application for a Class Representative Payment of up to Ten Thousand Dollars ($10,000) each. The Class Representative Payments shall be paid from the Total Settlement Amount.

1.7  **"Class Representatives"** means Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher.

1.8  **"Court"** means the United States District Court for the Northern District of California, the Honorable William Alsup, presiding.

1.9  **"Defendant"** means Apple Inc.

1.10  **"Defense Counsel"** means Julie Dunne and Matthew Riley of DLA Piper LLP (US).

1.11  **"Effective Date"** means the date by which this Settlement is finally approved as provided herein and the Court's Final Approval Order and the Judgment, including the Court's December 23, 2014 order dismissing with prejudice the claims arising under Massachusetts, New York, and Ohio law and under the FLSA (ECF No. 214), become binding and no longer subject to appeal. For purposes of this Settlement Agreement, the Final Approval Order and the Judgment become binding and no longer subject to appeal upon the later of: (a) the day after the last day by which a notice of appeal of the Final Approval Order and the Judgment and/or of an order denying any motion to intervene may be timely filed with the Ninth Circuit, and none is filed; (b) if such an appeal is filed, and the appeal is resolved through any order affirming the Final Approval Order and the Judgment, the day after the last day for filing a petition for writ of certiorari with the United States Supreme Court passes and no such petition is filed; (c) if a petition for writ of certiorari regarding the Ninth Circuit's decision affirming the Final Approval Order and the Judgment is filed, the day after the petition is denied with prejudice and/or no further review of the decision can be requested; or (d) if the petition for writ of certiorari is accepted, the day after the United States Supreme Court affirms the Final Approval Order and the Judgment. Any dispute regarding whether the Effective Date has occurred will be submitted to the Court for binding resolution.

1.12   **"Employee List"** means information regarding Settlement Class Members that Defendant will compile in good faith from its records and provide to the Settlement Administrator. The Employee List shall be provided in a confidential Microsoft Excel spreadsheet and shall include, for each Settlement Class Member: full name, last known address, last known telephone number, the work email address for Settlement Class Members currently employed by Defendant and the personal email address (if available) for Settlement Class Members who are no longer employed by Defendant, social security number, whether the Settlement Class Member is an Existing Class Member or a New Class Member, whether the Settlement Class Member is currently employed by Defendant, whether the Settlement Class Member is a PAGA Settlement Class Member, the number of shifts worked for Defendant in California during the Class Period, and the number of pay periods worked for Defendant in California during the PAGA Period.

1.13   **"Existing Class Members"** means all current and former non-exempt employees of Defendant who worked at an Apple retail store in California between July 25, 2009 and August 10, 2015 who were previously provided notice of the Action in 2015 and who did not opt out of the class.

1.14   **"Final Approval Hearing"** means the hearing held to determine whether the Court will enter a Final Approval Order regarding this Settlement.

1.15   **"Final Approval Order"** means the Court's entry of an order finally approving this Settlement, which shall substantially reflect the material terms of the form attached hereto as **Exhibit D**.

1.16   **"Individual Class Payment"** means the share of the Net Settlement Amount paid to each Participating Settlement Class Member to resolve the Class Claims. The Individual Class Payment shall be paid to each Participating Settlement Class Member on a *pro rata* basis based on the number of shifts each worked for Defendant at an Apple retail store in California during the Class Period.

1.17   **"Individual PAGA Payment"** means the share of the PAGA Settlement Class Member Payment paid to each PAGA Settlement Class Member to resolve the PAGA Claims. The Individual PAGA Payment shall be paid to each PAGA Settlement Class Member on a *pro rata*

basis based on the number of pay periods each worked for Defendant at an Apple retail store in California during the PAGA Period.

1.18 **"Judgment"** means the Court's entry of final judgment pursuant to Federal Rule of Civil Procedure 54 based on the Final Approval Order, which Judgment shall substantially reflect the material terms of the form attached hereto as **Exhibit E**.

1.19 **"Lead Counsel"** means Lee Shalov of McLaughlin & Stern LLP. Lead Counsel is authorized to act on behalf of the Settlement Class Members with respect to all acts required by, or which may be given pursuant to, the Settlement Agreement or such other acts that are reasonably necessary to consummate the proposed settlement set forth in the Settlement Agreement.

1.20 **"Litigation Costs"** means such litigation costs as the Court may award to Class Counsel for the costs incurred to date by the law firms representing Plaintiffs in the Action in the investigation, litigation, and resolution of the Action, including previously-incurred notice costs, as well as all costs yet-to-be incurred by the law firms representing Plaintiffs in the Action to document the Settlement, to secure court approval of the Settlement, and to obtain final adjudication of the Action. The Litigation Costs shall be paid from the Total Settlement Amount.

1.21 **"LWDA"** means the California Labor and Workforce Development Agency.

1.22 **"Net Settlement Amount"** means the Total Settlement Amount minus deductions for the Class Representative Payments, the Service Payment, the Attorneys' Fees, the Litigation Costs, the Settlement Administration Costs, and the PAGA Settlement Amount.

1.23 **"New Class Members"** means all individuals who began working as a non-exempt employee at an Apple retail store in California between August 3, 2015 and December 26, 2015 and to whom a notice of class certification was not mailed in 2015. Through this Settlement Agreement, New Class Members will be bound by this Settlement Agreement unless they timely opt out of the Settlement by the Response Deadline. The Parties agree that New Class Members will become parties to this Action only if they do not timely opt out of the Settlement Agreement by the Response Deadline.

/////

/////

Case No. 13-cv-03451 WHA
STIPULATION REGARDING CLASS AND PAGA SETTLEMENT AND RELEASE

1.24    **"Notice of Objection"** means a written request by a Settlement Class Member to object to this Settlement, which must be completed and filed or mailed in the manner set forth in this Settlement Agreement.

1.25    **"Notices of Settlement"** means the Notices of Pendency of Class Action Settlement that will be mailed and emailed to Settlement Class Members to apprise them of this Settlement, which shall be substantially in the form attached hereto as **Exhibit A** (to Existing Class Members) and **Exhibit B** (to New Class Members).

1.26    **"PAGA"** means the Private Attorneys General Act of 2004, California Labor Code sections 2698 *et seq.*

1.27    **"PAGA Claims"** means any and all claims, rights, and demands of every nature and description, whether known or unknown, for civil penalties actually asserted or that could have been asserted in the Action by the Plaintiffs Amanda Frlekin and Taylor Kalin on behalf of themselves, the State of California, and/or PAGA Settlement Class Members based on the facts alleged in Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, Plaintiff Amanda Frlekin's November 12, 2013 notice letter to the LWDA, and/or the original, amended, and/or Consolidated Complaint in the *Frlekin* Action (ECF Nos. 1, 75, 223 (Ex. A)), and/or the original and/or amended complaint in the *Kalin* Action (ECF Nos. 1 and 13 in the *Kalin* Action), including claims for civil penalties for alleged violations of Labor Code §§ 201-204, 226.7, 510, 512, 1194, 1194.2, and 1198 and the applicable Wage Order of the Industrial Welfare Commission, and for attorneys' fees and costs incurred to prosecute the Action on behalf of the State of California and PAGA Settlement Class Members. "PAGA Claims" also includes all claims that Plaintiffs, the State of California, and/or PAGA Settlement Class Members may have against the Released Parties relating to: (a) the payment, taxation, and allocation of Attorneys' Fees and Litigation Costs as provided in this Settlement Agreement to attorneys representing Plaintiffs; (b) the payment, taxation, and allocation of Class Representatives' Class Representative Payments and Plaintiff Amanda Frlekin's Service Payment pursuant to this Settlement Agreement; and (c) the payment, taxation, and allocation of payments to PAGA Settlement Class Members. Notwithstanding the foregoing, "PAGA Claims" does not include the claims for failure to reimburse business expenses pursuant to Labor Code

6

§ 2802 or the claims for failure to pay for time spent waiting in line to clock in and time spent checking out company devices asserted in Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, which were never pursued in the Consolidated Complaint in the Action, or claims for violation of Massachusetts, New York, or Ohio law, or the FLSA, which the Court already dismissed with prejudice. (ECF No. 214.)

1.28   **"PAGA LWDA Payment"** means the seventy-five percent (75%) of the PAGA Settlement Amount that shall be paid to the LWDA. Assuming the Court approves the PAGA Settlement Amount of $448,500, the PAGA LWDA Payment shall be $336,375.

1.29   **"PAGA Period"** means the period from July 25, 2012 through and including December 31, 2015.

1.30   **"PAGA Settlement Amount"** means the portion of the Total Settlement Amount that is allocated to resolve the PAGA Claims. The PAGA Settlement Amount shall be Four Hundred Forty-Eight Thousand Five Hundred Dollars ($448,500).

1.31   **"PAGA Settlement Class Members"** means all Settlement Class Members who were employed by Defendant in a non-exempt position at an Apple retail store in the State of California at any time during the PAGA Period.

1.32   **"PAGA Settlement Class Member Payment"** means the twenty-five percent (25%) of the PAGA Settlement Amount that shall be paid to PAGA Settlement Class Members. Assuming the Court approves the PAGA Settlement Amount of $448,500, the PAGA Settlement Class Member Payment shall be $112,125.

1.33   **"Participating Settlement Class Members"** means: (a) all Existing Class Members; and (b) all New Class Members who do not submit a timely Request for Exclusion from (*i.e.*, opt-out of) the Settlement.

1.34   **"Parties"** means Plaintiffs and Defendant.

1.35   **"Plaintiffs"** means Seth Dowling, Amanda Frlekin, Aaron Gregoroff, Taylor Kalin, and Debra Speicher.

/////

/////

7

1.36 **"Preliminary Approval Order"** means the Court's entry of an order preliminarily approving this Settlement, which shall substantially reflect the material terms of the form attached hereto as **Exhibit C**.

1.37 **"Released Parties"** means: Defendant Apple Inc. and its subsidiaries, affiliates, and/or parent companies; the employee benefit plans sponsored or maintained by any of the foregoing; the respective successors and predecessors in interest of the foregoing; the officers, directors, employees, administrators, fiduciaries, trustees, beneficiaries, attorneys, and agents of the foregoing; and each of their past, present, and future officers, directors, shareholders, employees, agents, principals, representatives, accountants, auditors, consultants, insurers, and reinsurers.

1.38 **"Request for Exclusion"** means a written request by a New Class Member to exclude himself/herself from the class action aspects of the Settlement, which must be completed and mailed to the Settlement Administrator by the Response Deadline in the manner set forth in this Settlement Agreement and the Notice of Settlement (**Exhibit B**).

1.39 **"Response Deadline"** means the date sixty (60) calendar days after the Settlement Administrator mails and emails the Notices of Settlement to Settlement Class Members and by which: Existing Class Members and New Class Members must submit any objections they may choose to make to the Settlement; and New Class Members must submit any Request for Exclusion they may choose to make from the class action aspects of the Settlement.

1.40 **"Service Payment"** means the amount the Court awards to Plaintiff Amanda Frlekin for her time and effort in prosecuting the Action on behalf of Settlement Class Members, PAGA Settlement Class Members, and the State of California, and for providing a Complete and General Release to the Released Parties. Defendant will not oppose Class Representatives' application for a Service Payment for Plaintiff Amanda Frlekin of up to Ten Thousand Dollars ($10,000). The Service Payment shall be paid from the Total Settlement Amount.

1.41 **"Settlement"** or **"Settlement Agreement"** means this Stipulation Regarding Class and Private Attorneys General Act Settlement and Release.

1.42 **"Settlement Administration Costs"** means the amount the Court awards the Settlement Administrator for administering this Settlement, which may not exceed Eighty-Nine

Thousand Five Hundred Dollars ($89,500). The Settlement Administration Costs shall be paid from the Total Settlement Amount.

1.43   **"Settlement Administrator"** means Angeion Group.

1.44   **"Settlement Class Members"** mean all Existing Class Members and all New Class Members.

1.45   **"Settlement Fund Account"** means the bank account established pursuant to the terms of this Settlement Agreement, from which all monies payable under the terms of this Settlement shall be paid, as set forth herein.

1.46   **"Total Settlement Amount"** means Twenty-Nine Million Nine Hundred Thousand Dollars ($29,900,000), which is the total, non-reversionary amount that Defendant shall be obligated to pay under this Settlement Agreement, except for the employer's share of state and federal payroll taxes on the wage component of the Individual Class Payments, which Defendant shall pay in addition to the Total Settlement Amount.

1.47   **"Void Date"** means the date by which any checks issued to Participating Settlement Class Members and PAGA Settlement Class Members shall become void and which shall be the 181st day after original mailing. If a check is re-mailed or re-issued for any reason, the check shall be valid for 180 days from the mailing of the original check, or for 30 days after mailing of the re-mailed or re-issued check, whichever date is later.

1.48   **"1542 Waiver"** means an express waiver, to the fullest extent permitted by law, of the provisions, rights, and benefits of California Civil Code section 1542, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

2.   **RECITALS.**

2.1   **Procedural History.**

2.1.1   On July 25, 2013, Plaintiff Amanda Frlekin and Dean Pelle filed a Class Action Complaint against Defendant in the United States District Court for the Northern District of California, Case No. 13-cv-03451, alleging claims for unpaid minimum and overtime wages,

penalties, interest, injunctive relief, damages, and attorneys' fees and costs pursuant to the FLSA and California and New York law (the "*Frlekin* Action"). (ECF No. 1.)

2.1.2    On August 14, 2013, Adam Kilker and Brandon Fisher filed a Class Action Complaint against Defendant in the United States District Court for the Northern District of California, Case No. 13-cv-03775, alleging claims for unpaid minimum and overtime wages, penalties, interest, injunctive relief, damages, and attorneys' fees and costs pursuant to the FLSA and Massachusetts and Ohio law (the "*Kilker* Action"). (ECF No. 1 in the *Kilker* Action.)

2.1.3    On October 1, 2013, Plaintiff Taylor Kalin notified the LWDA of his intent to bring a PAGA representative action against Defendant. Among the allegations in Plaintiff Taylor Kalin's notice to the LWDA, he asserted that Defendant failed to reimburse employees for business expenses in violation of Labor Code § 2802 and failed to pay for time spent waiting in line to clock in and time spent checking out company devices.

2.1.4    On October 10, 2013, Plaintiff Taylor Kalin filed a Class Action Complaint against Defendant in the United States District Court for the Northern District of California, Case No. 13-cv-004727, alleging claims for unpaid minimum and overtime wages, statutory penalties, civil penalties under PAGA, interest, injunctive relief, damages, and attorneys' fees and costs pursuant to the FLSA and California law (the "*Kalin* Action"). (ECF No. 1 in the *Kalin* Action.) Plaintiff Taylor Kalin did not allege an expense reimbursement claim in his original or amended complaints in the *Kalin* Action.

2.1.5    On November 12, 2013, Plaintiff Amanda Frlekin notified the LWDA of her intent to bring a PAGA representative action against Defendant.

2.1.6    On December 13, 2013, the Court consolidated the *Frlekin* Action and the *Kilker* Action for trial and pretrial proceedings pursuant to Federal Rule of Civil Procedure 42(a). (ECF No. 74.)

2.1.7    On December 13, 2013, Plaintiffs Amanda Frlekin, Dean Pelle, Adam Kilker, and Brandon Fisher filed a First Amended Complaint in the *Frlekin* Action alleging claims for unpaid minimum and overtime wages, statutory penalties, civil penalties under PAGA, interest,

/////

injunctive relief, damages, and attorneys' fees and costs pursuant to the FLSA and California, Massachusetts, New York, and Ohio law. (ECF No. 75.)

2.1.8   On December 23, 2014, the Court consolidated the *Frlekin* Action and the *Kalin* Action for all purposes, and dismissed with prejudice the claims brought by Dean Pelle, Adam Kilker, and Brandon Fisher under the FLSA and Massachusetts, New York, and Ohio law in light of the United States Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014). (ECF No. 214.)

2.1.9   On January 9, 2015, Plaintiffs filed a motion for leave to file a Consolidated Complaint, which the Court granted on February 2, 2015. (ECF Nos. 220, 221, 222, 223 (Ex. A), 237.) Plaintiffs' Consolidated Complaint did not assert an expense reimbursement claim or claims for failure to pay for time spent waiting in line to clock in and time spent checking out company devices against Defendant.

2.1.10  On May 11, 2015, Class Representatives filed a motion for certification of particular issues pursuant to Federal Rule of Civil Procedure 23(c)(4). (ECF Nos. 241-246.)

2.1.11  On July 16, 2015, the Court granted Class Representatives' Federal Rule of Civil Procedure 23(c)(4) motion for certification of particular issues. (ECF No. 297.)

2.1.12  On November 7, 2015, the Court denied Class Representatives' motion for summary judgment, and granted Defendant's motion for summary judgment. (ECF No. 339.)

2.1.13  Class Representatives appealed the Court's summary judgment order to the United States Court of Appeals for the Ninth Circuit. On August 16, 2017, following briefing and oral argument, the Ninth Circuit panel certified to the California Supreme Court the following legal question, as later reformulated by the California Supreme Court: "Is time spent on the employer's premises waiting for, and undergoing, required exit searches of packages, bags, or personal technology devices voluntarily brought to work purely for personal convenience by employees compensable as 'hours worked' within the meaning of California Industrial Welfare Commission Wage Order No. 7?" *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1042 (2020).

2.1.14  On February 13, 2020, following briefing and oral argument, the California Supreme Court issued a decision answering the certified question in the affirmative: "We conclude

11

1  that plaintiffs' time spent on Apple's premises waiting for, and undergoing, mandatory exit searches

2  of bags, packages, or personal Apple technology devices, such as iPhones, voluntarily brought to

3  work purely for personal convenience is compensable as 'hours worked' within the meaning of

4  Wage Order 7." *Id.* at 1058.

5          2.1.15  On September 2, 2020, the Ninth Circuit issued an order "revers[ing] the

6  district court's grant of [Defendant's] motion for summary judgment and denial of Plaintiffs' motion

7  for summary judgment, and . . . remand[ing] for further proceedings with instructions to (1) grant

8  Plaintiffs' motion for summary judgment on the issue of whether time spent by class members

9  waiting for and undergoing exit searches pursuant to the Policy is compensable as 'hours worked'

10  under California law, and (2) determine the remedy to be afforded to individual class members."

11  *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020).

12          2.1.16  On April 14, 2021, the Court vacated its November 7, 2015 summary

13  judgment order and cost orders, and entered judgment as follows: "At all material times Apple was

14  liable to compensate the class members for time spent standing in line and waiting to have their bags

15  checked." (ECF No. 417 at 1:24-26.) The Court further ordered, "There will be a damages claims

16  process on an individual-by-individual basis, after notice to potential class members." (*Id.* at 1:27-

17  2:1.)

18          2.2    **Discovery And Investigation.** In addition to the extensive litigation outlined above,

19  the Parties further engaged in extensive formal and informal discovery to investigate the Class

20  Claims and PAGA Claims alleged in the Action. Specifically, Plaintiffs and Defendant each served

21  initial disclosures in October 2013. Subsequently, Plaintiffs and Defendant each served amended

22  and supplemental disclosures prior to the discovery cut-off deadline.

23          Plaintiffs served Defendant with 65 requests for production of documents, 51 interrogatories,

24  and 100 requests for admissions to which Defendant responded. In total, Defendant served over

25  57,414 pages of documents (including videos) related to Plaintiffs' allegations.

26          Defendant served Plaintiffs with a combined total of 207 requests for production of

27  documents and 120 interrogatories to which Plaintiffs responded. Plaintiffs produced approximately

28  1,162 pages of documents.

1    Defendant took a total of 20 depositions (including the Plaintiffs' depositions). Plaintiffs

2    took a total of 14 depositions (including Defendant's persons most knowledgeable, and Defendant's

3    store leaders and managers).

4    2.3    **Mediation.** On October 1, 2015, the Parties participated in a Settlement Conference

5    before Magistrate Judge Joseph C. Spero, but no settlement was reached. (ECF No. 312.) On

6    October 20, 2020 and December 12, 2020, the Parties participated in full-day mediation sessions

7    with the Honorable Jay C. Gandhi (Ret.), a well-known and experienced wage-and-hour class action

8    mediator, but no settlement was reached. On May 6, 2021, the Parties participated in a third full-

9    day mediation with the Honorable Edward A. Infante (Ret.), another well-known and experienced

10   wage-and-hour mediator. This mediation resulted in an agreement in principle to resolve the case,

11   which the Parties have further documented in this Settlement. At all times, the Parties were

12   represented by their respective counsel during the arms-length, good-faith negotiations facilitated

13   by Magistrate Judge Spero, Judge Gandhi, and Judge Infante.

14   2.4    **Settlement Class Members' Claims.** Class Representatives, on behalf of the

15   Settlement Class Members, have claimed and continue to claim that the Class Claims alleged in the

16   Action have merit and give rise to liability on the part of Defendant as to each Settlement Class

17   Member. This Settlement Agreement is a compromise of such disputed Class Claims.

18   2.5    **PAGA Settlement Class Members' Claims.** Plaintiffs Amanda Frlekin and Taylor

19   Kalin, on behalf of themselves, the State of California, and all PAGA Settlement Class Members,

20   have claimed and continue to claim that the PAGA Claims alleged in the Action have merit and give

21   rise to liability on the part of Defendant as to each PAGA Settlement Class Member. This Settlement

22   Agreement is a compromise of such disputed PAGA Claims.

23   2.6    **Defendant's Defenses – No Admission Of Liability.** Defendant has contended and

24   continues to contend that the Class Claims and PAGA Claims have no merit and that Defendant has

25   no liability to Settlement Class Members or PAGA Settlement Class Members. Defendant

26   specifically denies that Settlement Class Members and PAGA Settlement Class Members are

27   entitled to compensation for the conduct alleged in the Action. This Settlement Agreement is a

28   compromise of such disputed Class Claims and PAGA Claims. Nothing contained in this Settlement

1  Agreement, no documents referred to herein, and no action taken to carry out this Settlement

2  Agreement may be construed or used as an admission by or against Defendant or any of the Released

3  Parties of any fault, wrongdoing, or liability whatsoever.

4        2.7  **Benefits Of Settlement To Settlement Class Members And PAGA Settlement**

5  **Class Members.** Class Representatives and Class Counsel recognize the expense and length of

6  continued proceedings necessary to litigate their disputes through trial and any further, possible

7  appeals. Class Representatives and Class Counsel have also considered the uncertainty and risk of

8  the outcome of further litigation, as well as the difficulties and delays inherent in such litigation.

9  Class Representatives and Class Counsel are likewise aware of the burdens of proof necessary to

10  establish liability for the Class Claims and PAGA Claims asserted in the Action, both generally and

11  in response to Defendant's defenses thereto, and the difficulties in establishing damages and

12  penalties on behalf of Settlement Class Members, and entitlement to civil penalties on behalf of

13  PAGA Settlement Class Members. Class Representatives and Class Counsel have also considered

14  Defendant's agreement to enter into a settlement that confers substantial relief to Settlement Class

15  Members and PAGA Settlement Class Members. Based on the foregoing, Class Representatives and

16  Class Counsel have determined that the Settlement set forth in this Settlement Agreement is a fair,

17  reasonable, and adequate settlement and is in the best interests of Settlement Class Members, the

18  State of California, and PAGA Settlement Class Members.

19        2.8  **Defendant's Reasons For Settlement.** Defendant has concluded that any further

20  defense of the Action would be protracted and expensive. Substantial amounts of Defendant's time,

21  energy, and resources have been and, unless this Settlement is made, will continue to be devoted to

22  the defense of the Class Claims and PAGA Claims asserted by Plaintiffs on behalf of Settlement

23  Class Members, the State of California, and PAGA Settlement Class Members. Defendant has also

24  considered the risks of further litigation in reaching its decision to enter into this Settlement.

25  Although Defendant strongly disputes Plaintiffs' Class Claims and PAGA Claims and contends no

26  Settlement Class Members or PAGA Settlement Class Members are entitled to compensation for

27  the conduct alleged in the Action, Defendant has nonetheless agreed to settle in the manner and

28  upon the terms set forth in this Settlement Agreement to put to rest the Class Claims and PAGA

14

Claims and to avoid further protracted litigation. Defendant agrees that the Settlement set forth in this Settlement Agreement is fair, reasonable, and adequate.

**3.      SETTLEMENT TERMS.**

      3.1      **Appointment Of Class Representatives.** The Court previously appointed Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher to serve as representatives of the Existing Class Members. (ECF No. 297.) For purposes of this Settlement, the Parties stipulate and agree that Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher shall also be appointed as representatives of New Class Members who do not opt out of the Settlement by the Response Deadline.

      3.2      **Appointment Of Class Counsel And Lead Counsel.** The Court previously appointed McLaughlin & Stern LLP and Kralowec Law, P.C. to serve as Class Counsel for the Existing Class Members, and Lee Shalov of McLaughlin & Stern LLP to serve as Lead Counsel for the Existing Class Members. (ECF No. 297.) For purposes of this Settlement, the Parties stipulate and agree that McLaughlin & Stern LLP and Kralowec Law, P.C. shall also be appointed to serve as Class Counsel for the New Class Members who do not opt out of the Settlement by the Response Deadline, and that Lee Shalov of McLaughlin & Stern LLP shall also be appointed to serve as Lead Counsel for the New Class Members who do not opt out of the Settlement by the Response Deadline.

      3.3      **Appointment Of Settlement Administrator.** For the purposes of this Settlement, the Parties stipulate and agree that Angeion Group shall serve as the Settlement Administrator. The Settlement Administrator shall be responsible for: establishing a toll-free telephone number; establishing a website which will have links to Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, Plaintiff Amanda Frlekin's November 12, 2013 notice letter to the LWDA, the original, amended, and Consolidated Complaint in the *Frlekin* Action (ECF Nos. 1, 75, 223 (Ex. A)), the original and amended complaints in the *Kalin* Action (ECF Nos. 1 and 13 in the *Kalin* Action), the California Supreme Court's February 13, 2020 opinion found at *Frlekin v. Apple Inc.*, 8 Cal.5th 1038 (2020), the Court's April 14, 2021 Order Vacating Prior Judgment and Related Orders and re Cross Motions for Summary Judgment, Notice and Claim Procedure, and Judicial Notice (ECF No. 407), the Court's September 20, 2021 Order on the Parties' Second Joint

Stipulation to Further Extend Deadlines (ECF No. 413), the Notices of Settlement, the Settlement Agreement, and motions for approval of the Settlement and for attorneys' fees and costs; establishing a Post Office Box for receipt of Settlement Class Member communications; preparing, printing, and mailing the Notices of Settlement to Settlement Class Members; emailing the Notices of Settlement to the work email address for Settlement Class Members currently employed by Defendant and the personal email address (if any) for Settlement Class Members who are no longer employed by Defendant; receiving and reviewing Requests for Exclusion, if any, submitted by New Class Members; providing weekly status reports to Defense Counsel and Class Counsel, which shall include the status of mailings to Settlement Class Members (including the total number of returned, undelivered, and re-mailed Notices of Settlement) and the total number of any responses, Notices of Objections, and Requests for Exclusion received from Settlement Class Members (including the total number of Notices of Objection and Requests for Exclusion that are deficient, late, or otherwise invalid); providing a due diligence declaration for submission to the Court prior to the Final Approval Hearing; mailing the Class Representative Payments to Class Representatives, the Service Payment to Plaintiff Amanda Frlekin, the Attorneys' Fees and Litigation Costs to Class Counsel, the PAGA LWDA Payment to the LWDA, the Individual PAGA Payments to PAGA Settlement Class Members, and the Individual Class Payments to Participating Settlement Class Members; printing and providing Participating Settlement Class Members, PAGA Settlement Class Members, Plaintiffs, and all law firms to whom payments are made pursuant to this Settlement with IRS Form W-2 and 1099 statements as required under applicable law; providing a due diligence declaration for submission to the Court upon the completion of the administration of the Settlement; and for such other tasks as the Parties mutually agree. The Settlement Administrator shall keep the Parties timely apprised of the performance of all Settlement Administrator responsibilities. Any legally mandated tax reports, tax forms, tax filings, or other tax documents required by administration of this Settlement Agreement shall be prepared by the Settlement Administrator. Any expenses incurred in connection with such preparation shall be a Settlement Administration Cost. The Parties agree to cooperate in the Settlement administration process and to make all reasonable efforts to
/////

control and minimize Settlement Administration Costs. The Parties each represent that they do not have any financial interest in the Settlement Administrator.

    3.4    **Consideration.**

        3.4.1    <u>Total Settlement Amount</u>. Provided that the Court approves the Settlement and the Effective Date occurs, Defendant will transmit to the Settlement Administrator the Total Settlement Amount, which is the sum of Twenty-Nine Million Nine Hundred Thousand Dollars ($29,900,000). The Total Settlement Amount represents the maximum monetary payment Defendant shall be required to make for the Settlement of the Action, except for the employer's share of payroll taxes on the wage component of the Individual Class Payments, which Defendant shall pay in addition to the Total Settlement Amount. The Total Settlement Amount shall be used to pay the Class Representative Payments to Class Representatives, the Service Payment to Plaintiff Amanda Frlekin, the Attorneys' Fees, the Litigation Costs, the Settlement Administration Costs, the PAGA LWDA Payment, all Individual PAGA Payments, and all Individual Class Payments.

        3.4.1.1    <u>Class Representative Payments</u>. In recognition of Class Representatives' time and effort in prosecuting the Action on behalf of Settlement Class Members, PAGA Settlement Class Members, and the State of California, as applicable, and as consideration for Class Representatives' Complete and General Release to the Released Parties, Defendant agrees not to oppose Class Representatives' application for a Class Representative Payment in the amount of Ten Thousand Dollars ($10,000) each. However, Defendant reserves its right to oppose any application for Class Representative Payments that disparages Defendant. The Class Representative Payments are subject to the Court's approval and will be paid only from the Total Settlement Amount, including any amount of Class Representative Payments exceeding $10,000 per Class Representative that the Court might award. In the event the Court awards less than the full amount requested for the Class Representative Payments, the un-awarded amount will be added to the Net Settlement Amount. This Settlement is not contingent upon the Court awarding Class Representatives any particular amount in Class Representative Payments. Class Representatives shall not have the right to object to or revoke their agreement to the Settlement if the Court does not

/////

17

1    approve any or all of the requested Class Representative Payments. Class Representatives hereby

2    waive their rights to object to the Settlement.

3              3.4.1.2    <u>Service Payment</u>. In recognition of Plaintiff Amanda Frlekin's time

4    and effort in prosecuting the Action on behalf of Settlement Class Members, PAGA Settlement

5    Class Members, and the State of California, and as consideration for her Complete and General

6    Release to the Released Parties, Defendant agrees not to oppose Class Representatives' application

7    for a Service Payment for Plaintiff Amanda Frlekin in the amount of Ten Thousand Dollars

8    ($10,000). However, Defendant reserves its right to oppose any application for a Service Payment

9    that disparages Defendant. The Service Payment is subject to the Court's approval and will be paid

10   only from the Total Settlement Amount, including any amount of a Service Payment exceeding

11   $10,000 that the Court might award. In the event the Court awards less than the full amount

12   requested for the Service Payment, the un-awarded amount will be added to the Net Settlement

13   Amount. This Settlement is not contingent upon the Court awarding Plaintiff Amanda Frlekin any

14   particular amount as a Service Payment. Plaintiff Amanda Frlekin shall not have the right to object

15   to or revoke her agreement to the Settlement if the Court does not approve any or all of the requested

16   Service Payment. Plaintiff Amanda Frlekin hereby waives her right to object to the Settlement.

17             3.4.1.3    <u>Attorneys' Fees</u>. In full satisfaction of all claims Plaintiffs may have

18   for attorneys' fees arising out of the Action, Defendant agrees not to oppose Class Counsel's

19   application for Attorneys' Fees not to exceed Seven Million Four Hundred and Seventy-Five

20   Thousand Dollars ($7,475,000), representing 25% of the Total Settlement Amount. However,

21   Defendant reserves its right to oppose any application for Attorneys' Fees that disparages

22   Defendant. The Attorneys' Fees are subject to the Court's approval and will be paid only from the

23   Total Settlement Amount, including any amount of Attorneys' Fees exceeding $7,475,000 that the

24   Court might award. At the Final Approval Hearing the Court shall allocate the Attorneys' Fees to

25   the following law firms which represented Plaintiffs during the litigation: McLaughlin & Stern LLP;

26   Kralowec Law, P.C.; the Law Offices of Louis Ginsberg, P.C.; the Blanchard Law Group, APC;

27   Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC. In the event the Court awards less

28   than the full amount requested for the Attorneys' Fees, the un-awarded amount will be added to the

Net Settlement Amount. This Settlement is not contingent upon the Court awarding any particular amount as the Attorneys' Fees.

        3.4.1.4   <u>Litigation Costs</u>. In full satisfaction of all claims Plaintiffs may have for litigation costs and expenses incurred in the prosecution of the Action, Defendant agrees not to oppose Class Counsel's application for Litigation Costs not to exceed Four Hundred Fifty Thousand Dollars ($450,000). However, Defendant reserves its right to oppose any application for Litigation Costs that disparages Defendant. The Litigation Costs are subject to the Court's approval and will be paid only from the Total Settlement Amount, including any amount of Litigation Costs exceeding $450,000 that the Court might award. At the Final Approval Hearing the Court shall allocate the Litigation Costs to the following law firms which represented Plaintiffs during the litigation: McLaughlin & Stern LLP; Kralowec Law, P.C.; the Law Offices of Louis Ginsberg, P.C.; the Blanchard Law Group, APC; Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC. In the event the Court awards less than the full amount requested for the Litigation Costs, the un-awarded amount will be added to the Net Settlement Amount. This Settlement is not contingent upon the Court awarding any particular amount for Litigation Costs.

        3.4.1.5   <u>Settlement Administration Costs</u>. The Parties agree that Defendant shall pay the Settlement Administrator for third-party administration costs that are necessary to administer the Settlement up to a maximum payment of Eighty-Nine Thousand Five Hundred Dollars ($89,500). The Settlement Administration Costs to be paid to the Settlement Administrator are subject to the Court's approval and will be paid only from the Total Settlement Amount. In the event the Court awards less than the full amount set aside for Settlement Administration Costs, the un-awarded amount will be added to the Net Settlement Amount.

        3.4.1.6   <u>PAGA Settlement Amount</u>. The Parties agree that Defendant shall pay Four Hundred Forty-Eight Thousand Five Hundred Dollars ($448,500) – the PAGA Settlement Amount – to resolve the PAGA Claims, which shall be paid only from the Total Settlement Amount, including any amount of PAGA Settlement Amount exceeding $448,500 that the Court might award. This Settlement is not contingent upon the Court approving $448,500 as the PAGA Settlement

/////

Amount. In the event the Court awards less than the full PAGA Settlement Amount, the un-awarded amount will be added to the Net Settlement Amount.

> 3.4.1.6.1   <u>PAGA LWDA Payment</u>. Seventy-five percent (75%) of the PAGA Settlement Amount shall be paid to the LWDA to resolve all claims for civil penalties on behalf of the State of California.

> 3.4.1.6.2   <u>Individual PAGA Payments</u>. Twenty-five percent (25%) of the PAGA Settlement Amount shall be paid to PAGA Settlement Class Members to resolve all claims for civil penalties under PAGA pursued on behalf of the PAGA Settlement Class Members. The Individual PAGA Payments will be allocated 100% as penalties and will be subject to IRS Form 1099 reporting. Each Individual PAGA Payment will be calculated by dividing a PAGA Settlement Class Members' total number of pay periods worked at an Apple retail store in California during the PAGA Period by the total of all pay periods worked by all PAGA Settlement Class Members at an Apple retail store in California during the PAGA Period, and multiplying this result by the 25% portion of the PAGA Settlement Amount. The total number of pay periods worked by individual PAGA Settlement Class Members and the total number of pay periods worked by all PAGA Settlement Class Members shall be determined based on Defendant's business records.

> 3.4.1.7   <u>Individual Class Payments</u>. Defendant shall pay each Participating Settlement Class Member an Individual Class Payment. Each Individual Class Payment is made to resolve the Class Claims. The Individual Class Payments shall be payable from the Total Settlement Amount. Each Individual Class Payment shall be calculated by dividing a Participating Settlement Class Member's individual shifts worked for Defendant at an Apple retail store in California during the Class Period by the total of all shifts worked by all Participating Settlement Class Members for Defendant at an Apple retail store in California during the Class Period, and multiplying this result by the Net Settlement Amount. The total number of shifts worked by individual Settlement Class Members and the total number of shifts worked by all Settlement Class Members shall be determined based on Defendant's business records. The Individual Class Payments will be allocated 20% as wages, 20% as interest, and 60% as penalties. The wage component of the Individual Class Payments shall be subject to W-2 reporting and shall be subject to deductions for employment and

payroll taxes. The interest and penalty components of the Individual Class Payments will be subject to IRS Form 1099 reporting and will not be subject to deductions for employment and payroll taxes.

       3.4.2   <u>Released Class Claims</u>. Upon the Effective Date, Class Representatives – on behalf of themselves and Participating Settlement Class Members – fully and irrevocably release the Released Parties from the Class Claims, as defined in paragraph 1.3, in exchange for the consideration provided by this Settlement Agreement ("Released Class Claims"). The Released Class Claims include a 1542 Waiver but only as to the specific Class Claims that were asserted in the Action. All Released Class Claims are released for the Class Period. Class Representatives and Participating Settlement Class Members may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Class Claims but, upon the Effective Date, Class Representatives and Participating Settlement Class Members shall be deemed to have – and by operation of the Final Approval Order and the Judgment shall have – fully, finally, and forever settled and released any and all of the Released Class Claims. It is the intent of the Parties that the Final Approval Order and the Judgment entered by the Court pursuant to this Agreement shall have full *res judicata* effect and be final and binding upon Class Representatives and Participating Settlement Class Members regarding the Released Class Claims. Class Representatives further agree not to appeal the Court's December 23, 2014 order dismissing with prejudice their claims under Massachusetts, New York, and Ohio law, and under the FLSA (ECF No. 214).

       3.4.3   <u>Released PAGA Claims</u>. Upon the Effective Date, Plaintiffs Amanda Frlekin and Taylor Kalin – on behalf of themselves, the State of California, and PAGA Settlement Class Members – fully and irrevocably release the Released Parties from the PAGA Claims, as defined in paragraph 1.27, in exchange for the consideration provided by this Settlement Agreement ("Released PAGA Claims"). The Released PAGA Claims include a 1542 Waiver but only as to the specific PAGA Claims that were asserted in the Action. All Released PAGA Claims are released for the PAGA Period. Plaintiffs Amanda Frlekin and Taylor Kalin, the State of California, and PAGA Settlement Class Members may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released PAGA Claims but,

1   upon the Effective Date, they shall be deemed to have – and by operation of the Final Approval

2   Order and the Judgment shall have – fully, finally, and forever settled and released any and all of

3   the Released PAGA Claims. It is the intent of the Parties that the Final Approval Order and the

4   Judgment entered by the Court shall have full *res judicata* effect and be final and binding upon

5   Plaintiffs Amanda Frlekin and Taylor Kalin, the State of California, and PAGA Settlement Class

6   Members regarding the Released PAGA Claims.

7       3.4.4    <u>Plaintiffs' Complete And General Release</u>. In consideration for the promises

8   and payments set forth in this Settlement Agreement – including the Class Representative Payments

9   and the Service Payment to which Class Representatives and Plaintiff Amanda Frlekin are otherwise

10  not currently entitled under any agreement or order from the Court – Plaintiffs agree to completely,

11  irrevocably, unconditionally, and generally release the Released Parties from any and all charges,

12  complaints, claims, causes of action, debts, sums of money, controversies, agreements, promises,

13  damages, and liabilities of any kind or nature whatsoever, both at law and equity, known or

14  unknown, suspected or unsuspected, related to the Plaintiffs' employment with Defendant and/or

15  the Action and arising from conduct occurring on or before the respective date that each Plaintiff

16  executes this Settlement Agreement, including but not limited to any rights or claims arising under:

17  the California Constitution; the California Labor Code; the California Business & Professions Code;

18  the California Code of Regulations; the California Fair Employment and Housing Act; the Fair

19  Labor Standards Act; Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act;

20  federal and state family leave statutes; and any and all other federal, state, and local laws, statutes,

21  executive orders, regulations, and common law, including contract, employment, and tort law. This

22  Complete and General Release includes a 1542 Waiver. Plaintiffs may discover facts in addition to

23  or different from those they now know or believe to be true with respect to the subject matter of the

24  Complete and General Release, but upon the Effective Date, Plaintiffs shall be deemed to have –

25  and by operation of the Final Approval Order and the Judgment shall have – fully, finally, and

26  forever settled and released any and all of the claims covered by the Complete and General Release

27  as of the date of their execution of the Settlement Agreement.

28  /////

1

3.5   **Settlement Administration Procedures**.

2

3.5.1   Settlement Approval And Implementation Procedures. As part of this

3

Settlement, the Parties agree to the following procedures for obtaining the Court's preliminary

4

approval of the Settlement, notifying Settlement Class Members of the Settlement, obtaining the

5

Court's final approval of the Settlement, and processing payments under the Settlement.

6

3.5.2   Preliminary Approval. As soon as practicable after execution of this

7

Settlement Agreement, and no later than November 11, 2021, Class Representatives will submit this

8

Settlement Agreement to the Court for preliminary approval. Class Representatives' submission will

9

include this Settlement Agreement, including **Exhibits A-G**, and any motions, memoranda, and

10

evidence as may be necessary for the Court to preliminarily determine that this Settlement

11

Agreement is fair, reasonable, and adequate. Defendant agrees not to oppose Class Representatives'

12

motion for the Preliminary Approval Order unless the motion is inconsistent with the terms set forth

13

in this Settlement Agreement and/or unless the motion disparages Defendant. Plaintiffs shall provide

14

Defendant with a draft of their motion for preliminary approval at least one week before the motion

15

is filed so that Defendant may confirm the brief is accurate as to the class and settlement data

16

referenced in the motion, and that the motion does not disparage Defendant. The Parties will

17

endeavor to resolve any disputed language within the first four days after Plaintiffs provide the brief,

18

and if the Parties are unsuccessful in reaching agreement, they will submit their dispute(s) to Judge

19

Infante for final resolution on days five or six after Plaintiffs provide the brief.

20

3.5.3   LWDA Notice. Pursuant to California Labor Code section 2699(*l*), Class

21

Counsel will provide a copy of this Settlement Agreement to the LWDA concurrently with the filing

22

of the motion for preliminary approval of this Settlement. Class Counsel will also file a declaration

23

in support of the motion for preliminary approval confirming that they have submitted the

24

Settlement Agreement to the LWDA in compliance with California Labor Code section 2699(*l*).

25

The Parties intend to and believe that the notice pursuant to the procedures described in this

26

paragraph complies with the requirements of PAGA, and the Parties will request that the Court

27

adjudicate the validity of the notice to the LWDA in the motion for final approval of the Settlement.

28

/////

23

3.5.4   <u>CAFA Notice</u>. Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), within ten (10) calendar days after the filing of the motion for preliminary approval, Defendant will provide notice of this Settlement to the Attorney General of the United States and the appropriate State officials(s) pursuant to 28 U.S.C. § 1715. The Parties intend to and believe that the notice pursuant to the procedures described in this paragraph complies with the requirements of CAFA, and the Parties will request that the Court adjudicate the validity of the notice in the motion for final approval of the Settlement.

3.5.5   <u>Employee List</u>. No more than fifteen (15) calendar days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the Employee List for purposes of mailing and emailing the Notices of Settlement to Settlement Class Members. Because employees' sensitive personal information is included in the Employee List, the Settlement Administrator shall maintain the Employee List securely in accordance with the Information Security and Services Agreement attached hereto as **Exhibit G**. Access to such Employee List shall be limited to only those employees of the Settlement Administrator with a need to use the Employee List for administration of the Settlement.

3.5.6   <u>Notice By First Class U.S. Mail and Email</u>. Upon receipt of the Employee List, the Settlement Administrator will conduct a national change of address search and a skip trace for the most current mailing address of all former employee Settlement Class Members and will update such former employees' addresses as necessary. The mailing address identified by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Settlement Class Member. Twenty-one (21) calendar days after receipt of the Employee List, the Settlement Administrator shall mail the Notice of Settlement attached as **Exhibit A** to all Existing Class Members and the Notice of Settlement attached as **Exhibit B** to all New Class Members by First Class U.S. Mail. Twenty-one (21) calendar days after receipt of the Employee List, the Settlement Administrator shall also email the Notice of Settlement attached as **Exhibit A** to Existing Class Members and the Notice of Settlement attached as **Exhibit B** to New Class Members, at the email address for such individuals, if any, included in the Employee List.

/////

Case No. 13-cv-03451 WHA
STIPULATION REGARDING CLASS AND PAGA SETTLEMENT AND RELEASE

3.5.7 <u>Undeliverable Notices</u>. Any Notice of Settlement returned to the Settlement Administrator as non-deliverable on or before thirty (30) calendar days before the Response Deadline shall be re-mailed to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall make reasonable efforts to obtain an updated mailing address. If the Settlement Administrator identifies an updated mailing address, or if Class Counsel or a Settlement Class Member provides the Settlement Administrator with an updated mailing address, the Settlement Administrator shall resend the appropriate Notice of Settlement to the Settlement Class Member within seven (7) calendar days after receiving the updated mailing address. The remailing of any Notice of Settlement shall not change or extend the Response Deadline. If a Settlement Class Member's Notice of Settlement is returned to the Settlement Administrator more than once as non-deliverable, then an additional Notice of Settlement shall not be re-mailed unless the Settlement Class Member contacts the Settlement Administrator with an updated mailing address. If, for any reason, a Settlement Class Member's individual Notice of Settlement is non-deliverable, the Settlement Administrator will not mail such individual's Individual Class Payment or Individual PAGA Payment. Rather, the Settlement Administrator will hold such payment(s) until the Void Date, at which time the funds shall be delivered to the California Alliance of Boys & Girls Clubs, Inc., pursuant to paragraph 3.6.10.

3.5.8 <u>Notice Satisfies Due Process</u>. The Parties believe that compliance with the notice procedures specified in this Settlement Agreement constitutes due and sufficient notice to Settlement Class Members of this Settlement and satisfies the requirements of due process. Nothing else shall be required of, or done by, the Parties, Class Counsel, Defense Counsel, or the Settlement Administrator to provide notice of the Settlement. In the event the procedures in this Settlement Agreement are followed and the intended recipient of a Notice of Settlement still does not receive the Notice of Settlement, the intended recipient shall remain a Participating Settlement Class Member and will be bound by all terms of the Settlement and the Final Approval Order and the Judgment entered by the Court.

/////

/////

25

3.5.9    Requests For Exclusion.

3.5.9.1    New Class Members' Requests For Exclusion. The Notice of Settlement sent to New Class Members shall substantially reflect the material terms of the Notice of Settlement attached as **Exhibit B**, including by informing New Class Members that they may exclude themselves from the class action aspects of the Settlement. New Class Members who wish to exclude themselves from the class action aspects of the Settlement must submit a written Request for Exclusion to the Settlement Administrator by the Response Deadline. To be valid, the Request for Exclusion must: (a) contain the full name, address, and last four digits of the social security number of the person requesting exclusion; (b) be signed by the person requesting exclusion; and (c) state that the person wishes to exclude himself/herself from the Settlement of the "*Frlekin* case" or the "Apple bag check case." If any Request for Exclusion does not contain the information listed in (a)-(c) or is not postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address, it will not be deemed a timely and valid Request for Exclusion. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a Request for Exclusion has been timely submitted. Any New Class Member who submits a timely and valid Request for Exclusion will not be entitled to an Individual Class Payment and will not be bound by the release of the Released Class Claims. Any New Class Member who submits a timely and valid Request for Exclusion will not have any right to object to, appeal, or comment on the Settlement. New Class Members who do not submit a timely and valid Request for Exclusion on or before the Response Deadline shall be deemed Participating Settlement Class Members and will be bound by all terms of the Settlement and the Final Approval Order and the Judgment entered in this Action. Under no circumstances will a New Class Member who has submitted a timely and valid Request for Exclusion be considered to have opted out of the PAGA aspects of the Settlement or the Released PAGA Claims. The Parties agree that New Class Members will become parties to this Action only if they do not timely opt out of the Settlement Agreement by the Response Deadline.

3.5.9.2    Report Of Requests For Exclusion. No later than fourteen (14) calendar days after the Response Deadline, the Settlement Administrator shall provide: (a) Defense

1   Counsel with a complete list of all New Class Members who have submitted timely and valid

2   Requests for Exclusion, including their names and social security numbers; and (b) Class Counsel

3   with a summary report that includes only the number of New Class Members who have submitted

4   timely and valid Requests for Exclusion.

5             3.5.10   <u>Notices Of Objections</u>. The Notices of Settlement shall state that Settlement

6   Class Members who wish to object to the Settlement must file a written Notice of Objection with

7   the Court by the Response Deadline. Notices of Objection must be submitted to the Court either by

8   mailing them to the Class Action Clerk, United States District Court for the Northern District of

9   California, 450 Golden Gate Avenue, San Francisco, California, 94102, or by filing them in person

10  at any location of the United States District Court for the Northern District of California. To be

11  valid, the Notice of Objection must: (a) contain the full name, address and last four digits of the

12  social security number of the Settlement Class Member; (b) state the case name and number,

13  *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA, state the basis for the objection,

14  and state whether the Settlement Class Member intends to appear at the Final Approval Hearing;

15  (c) be signed by the Settlement Class Member; and (d) be filed or postmarked on or before the

16  Response Deadline. If the Notice of Objection does not contain the information listed in (a)-(c)

17  and/or is not filed or postmarked by the Response Deadline, it will not be deemed a timely and valid

18  Notice of Objection to this Settlement. Settlement Class Members who do not submit a timely and

19  valid Notice of Objection shall be deemed to have waived any objections and shall be foreclosed

20  from making any objections to the Settlement. Settlement Class Members who submit a timely and

21  valid Notice of Objection will have a right to appear at the Final Approval Hearing to have their

22  objections heard by the Court.

23            3.5.11   <u>No Solicitation Of Exclusions Or Objections</u>. The Parties agree to use their

24  best efforts to carry out the terms of this Settlement. At no time shall any of the Parties or their

25  counsel solicit, encourage, or assist Settlement Class Members to submit a Request for Exclusion

26  from, or a Notice of Objection to, the Settlement or to appeal from the Court's Final Approval Order

27  and the Judgment, including through the use of social media or electronic advertisement.

28  /////

Case No. 13-cv-03451 WHA
STIPULATION REGARDING CLASS AND PAGA SETTLEMENT AND RELEASE

3.5.12 <u>Settlement Administrator Declaration In Support Of Final Approval</u>. No fewer than fourteen (14) calendar days after the Response Deadline, the Settlement Administrator shall provide the Parties with a statement detailing the actions taken by the Settlement Administrator to administer the Settlement to date, along with all incurred and anticipated Settlement Administration Costs.

3.5.13 <u>Final Approval Hearing</u>. No earlier than fourteen (14) calendar days after the Response Deadline and no later than thirty (30) calendar days after the Response Deadline, Class Representatives shall submit the motion for final approval of this Settlement to the Court. Plaintiffs shall provide Defendant with a draft of their motion for final approval of the Settlement, motion for Attorneys' Fees, motion for Litigation Costs, motion for Class Representative Payments to the Class Representatives, and motion for the Service Payment to Plaintiff Amanda Frlekin, at least one week before those motions are filed so that Defendant may confirm the briefs are accurate as to the class and settlement data referenced in the motions, and that the motions do not disparage Defendant. The Parties will endeavor to resolve any disputed language within the first four days after Plaintiffs provide the briefs, and if the Parties are unsuccessful in reaching agreement, they will submit their dispute(s) to Judge Infante for final resolution on days five or six after Plaintiffs provide the briefs. The Court shall hold the Final Approval Hearing, where objections, if any, may be heard and the Court shall determine whether the Settlement should be finally approved, and if so, the amounts payable for: (a) Class Representatives' Class Representative Payments; (b) Plaintiff Amanda Frlekin's Service Payment; (c) the Attorneys' Fees; (d) the Litigation Costs; (e) Settlement Administration Costs; (f) the PAGA LWDA Payment; (g) the Individual PAGA Payments; and (h) the Individual Class Payments.

3.5.14 <u>Entry Of Final Approval Order And The Judgment</u>. In support of their motion for final approval of the Settlement, Class Representatives shall request that the Court enter a Final Approval Order, substantially in the form of **Exhibit D**, and the Judgment, substantially in the form of **Exhibit E**. After issuing the Final Approval Order and entering the Judgment, the Court shall retain jurisdiction over the Action to enforce and implement the terms of the Final Approval Order and the Judgment.

3.6    **Funding And Allocation Of Settlement**.

3.6.1    Settlement Accounting. On or before the Effective Date, the Settlement Administrator shall provide the Parties with an accounting of all anticipated payments from the Settlement Fund Account as specified in this Settlement Agreement and approved by the Court, including: (a) Class Representatives' Class Representative Payments; (b) Plaintiff Amanda Frlekin's Service Payment; (c) the Attorneys' Fees; (d) the Litigation Costs; (e) the Settlement Administration Costs; (f) the PAGA LWDA Payment; (g) the Individual PAGA Payments; (h) the Individual Class Payments; and (i) the employer's share of payroll taxes on the wage component of the Individual Class Payments.

3.6.2    Funding The Settlement. Within ten (10) calendar days following the Effective Date, Defendant shall fund the Settlement by providing to the Settlement Administrator the Total Settlement Amount and the amount of the employer's share of payroll taxes on the wage component of the Individual Class Payments. The Settlement Administrator shall deposit the funds in the Settlement Fund Account and will disburse the funds in the manner and at the times set forth in this Settlement Agreement.

3.6.3    Payment Of Class Representative Payments And Service Payment. Within thirty (30) calendar days following the Effective Date, the Settlement Administrator shall distribute from the Settlement Fund Account the Class Representative Payments to Class Representatives and the Service Payment to Plaintiff Amanda Frlekin. Plaintiffs agree to provide the Settlement Administrator with an executed IRS Form W-9 before the Class Representative Payments and Service Payment are issued. The Settlement Administrator (and not Defendant) shall issue an IRS Form 1099 to Class Representatives for their respective Class Representative Payments and to Plaintiff Amanda Frlekin for her Service Payment. Class Representatives shall be solely and legally responsible for paying any and all applicable taxes on the Class Representative Payments, Plaintiff Amanda Frlekin shall be solely and legally responsible for paying any and all applicable taxes on the Service Payment, and Plaintiffs shall hold Defendant harmless from any claim or liability for taxes, penalties, or interest arising as a result of the Class Representative Payments and the Service Payment. The Class Representative Payments and Service Payment shall be in addition to

29

Plaintiffs': (a) Individual Class Payments which they shall receive as a Participating Settlement Class Member; and (b) Individual PAGA Payments which they shall receive as a PAGA Settlement Class Member.

        3.6.4   <u>Payment Of Attorneys' Fees And Litigation Costs</u>. Within thirty (30) calendar days following the Effective Date, the Settlement Administrator shall distribute from the Settlement Fund Account the Attorneys' Fees and Litigation Costs to the firms that represented Plaintiffs in this Action and to whom a share of the Attorneys' Fees and/or Litigation Costs has been allocated. Each of the law firms that have represented Plaintiffs in this Action and to whom a share of Attorneys' Fees and/or Litigation Costs have been awarded agree to provide the Settlement Administrator with an executed IRS Form W-9 before the Attorneys' Fees and Litigation Costs may be disbursed to that firm. The Settlement Administrator (and not Defendant) shall issue an IRS Form 1099 to each law firm that has represented Plaintiffs in this Action and to whom a share of Attorneys' Fees and/or Litigation Costs have been awarded and disbursed pursuant to this paragraph. Neither Class Counsel nor any other current or past counsel for Plaintiffs shall be permitted to petition the Court for, or to accept, any additional payments for attorneys' fees, costs, interest, or any other amount relating to this Action from Defendant except as specified above. Defendant's payment of the Attorneys' Fees and Litigation Costs shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney, or law firm allegedly incurred on behalf of Plaintiffs, Settlement Class Members, the State of California, and/or PAGA Settlement Class Members for the prosecution and settlement of the Action.

        3.6.5   <u>Payment Of Settlement Administration Costs</u>. Within thirty (30) calendar days following the Effective Date, the Settlement Administrator shall pay from the Settlement Fund Account the Court-approved Settlement Administration Costs.

        3.6.6   <u>Payment Of PAGA LWDA Payment</u>. Within thirty (30) calendar days following the Effective Date, the Settlement Administrator shall issue from the Settlement Fund Account a check payable to the LWDA for the PAGA LWDA Payment (*i.e.*, the LWDA's 75% share of the PAGA Settlement Amount).

/////

3.6.7   <u>Payment Of Individual PAGA Payments</u>. Within thirty (30) calendar days following the Effective Date, the Settlement Administrator shall distribute from the Settlement Fund Account to each PAGA Settlement Class Member their Individual PAGA Payment. Any Individual PAGA Payment that is returned to the Settlement Administrator as non-deliverable within thirty (30) calendar days of this original distribution shall be re-mailed to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall make reasonable efforts to obtain an updated mailing address. If, within 180 days of the original mailing of Individual PAGA Payments, either the Settlement Administrator identifies an updated mailing address, or Class Counsel or a PAGA Settlement Class Member provides the Settlement Administrator with an updated mailing address, the Settlement Administrator shall re-send the appropriate Individual PAGA Payment within seven (7) calendar days after receiving the updated mailing address. Also, the Settlement Administrator shall re-issue any Individual PAGA Payments that are reported as lost or destroyed prior to the Void Date. Any Individual PAGA Payment that is re-mailed or re-issued pursuant to this paragraph shall be valid for one hundred eighty (180) days from the date the original Individual PAGA Payment was issued, or thirty (30) days from the re-mailed or re-issued Individual PAGA Payment, whichever is later. One hundred percent (100%) of each Individual PAGA Payment shall be allocated to miscellaneous income for which an IRS Form 1099 will be issued by the Settlement Administrator (and not Defendant), if required by law. The Settlement Administrator shall make no payroll tax deductions from the Individual PAGA Payments. The Parties make no representations as to the tax treatment or legal effect of the Individual PAGA Payments, and PAGA Settlement Class Members are not relying on any statement or representation by the Parties in this regard. PAGA Settlement Class Members will be solely responsible for the payment of any taxes and penalties assessed on the Individual PAGA Payments.

3.6.8   <u>Payment Of Individual Class Payments</u>. Within thirty (30) calendar days following the Effective Date, the Settlement Administrator shall distribute from the Settlement Fund Account the Individual Class Payments to Participating Settlement Class Members. Any Individual Class Payment that is returned to the Settlement Administrator as non-deliverable within thirty (30) calendar days of this original distribution shall be re-mailed to the forwarding address affixed

31

thereto. If no forwarding address is provided, the Settlement Administrator shall make reasonable efforts to obtain an updated mailing address. If, within 180 days of the original mailing of Individual Class Payments, either the Settlement Administrator identifies an updated mailing address, or Class Counsel or a Participating Settlement Class Member provides the Settlement Administrator with an updated mailing address, the Settlement Administrator shall re-send the appropriate Individual Class Payment within seven (7) calendar days after receiving the updated mailing address. Also, the Settlement Administrator shall re-issue any Individual Class Payments that are reported as lost or destroyed prior to the Void Date. Any Individual Class Payment that is re-mailed or re-issued pursuant to this paragraph shall be valid for one hundred eighty (180) days from the date the original Individual Class Payment was issued, or thirty (30) days from the re-mailed or re-issued Individual Class Payment, whichever is later. The Individual Class Payments will be allocated 20% as wages, 20% as interest, and 60% as penalties. The Settlement Administrator shall deduct employee-side payroll taxes from the wage component of the Individual Class Payments. The Settlement Administrator (and not Defendant) shall issue an IRS Form W-2 statement to Participating Settlement Class Members for the wage component of the Individual Class Payments. The Settlement Administrator shall make no payroll tax deductions from the interest or penalty components of the Individual Class Payments. The Settlement Administrator (and not Defendant) shall issue an IRS Form 1099 statement to each Participating Settlement Class Member for the interest and penalty components of the Individual Class Payments, if required by law. The Parties make no representations as to the tax treatment or legal effect of the Individual Class Payments, and Participating Settlement Class Members are not relying on any statement or representation by the Parties in this regard. Participating Settlement Class Members will be solely responsible for the payment of any taxes and penalties assessed on the Individual Class Payments.

        3.6.9   <u>Reminder Postcards</u>. The Settlement Administrator shall mail the Reminder Postcard attached hereto as **Exhibit F** to all Settlement Class Members who have not cashed their Individual PAGA Payment or Individual Class Payment within ninety (90) days following the original mailing of those payments. The Settlement Administrator shall mail the Reminder Postcards

/////

32

within ninety-seven (97) days following the original mailing of the Individual PAGA Payments and Individual Class Payments.

3.6.10  <u>Void Date For Uncashed Checks And Allocation Of Refunded Payroll Taxes</u>. Any checks issued to Participating Settlement Class Members or PAGA Settlement Class Members shall remain valid and negotiable for one hundred and eighty (180) calendar days from the date of their mailing and then shall become void on the 181st day after mailing, *i.e.*, the Void Date. Any re-mailed or re-issued check shall remain valid and negotiable for one hundred eighty (180) days from the date the original check was mailed, or thirty (30) days from the date the check is re-mailed, whichever date is later. Subject to the Court's approval, the Parties agree that any unclaimed funds resulting from Settlement Class Members' failure to cash Individual Class Payment checks and/or Individual PAGA Payment checks within one hundred eighty (180) days from the date the original check was mailed, or thirty (30) days from the date the check is re-mailed, whichever date is later, shall be transmitted by the Settlement Administrator to the California Alliance of Boys & Girls Clubs, Inc. ("Boys & Girls Clubs"), with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training. The Settlement Administrator shall make this payment to the Boys & Girls Clubs within fourteen (14) calendar days of the last date that any Individual Class Payments or Individual PAGA Payments remain valid. The Parties further agree that any refunded employee-side payroll taxes corresponding to the wage component of any uncashed Individual Class Payments shall also be transmitted by the Settlement Administrator to the Boys & Girls Clubs, with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training, within fourteen (14) calendar days of the Settlement Administrator's receipt of the refunded employee-side payroll taxes. The Parties further agree that any refunded employer-side payroll taxes corresponding to the wage component of any uncashed Individual Class Payments shall be returned to Defendant within fourteen (14) calendar days of the Settlement Administrator's receipt of the refunded employer-side payroll taxes.

3.6.11  <u>Post-Distribution Accounting</u>. Within twenty-one (21) calendar days after the last date that any Individual Class Payments or Individual PAGA Payments remain valid (*i.e.*, 180 days after checks are issued or, if any checks are re-issued, 30 days after the issue date for all re-

33

issued checks), the Parties shall file with the Court and post to the Settlement Administrator's website a post-distribution accounting setting forth: (a) the Total Settlement Amount; (b) the total number of Settlement Class Members; (c) the total number of Settlement Class Members to whom a Notice of Settlement was sent and not returned as undeliverable; (d) the number and percentage of opt-outs; (e) the number and percentage of objections; (f) the average and median recovery per Participating Settlement Class Member; (g) the largest and smallest amounts paid to Participating Settlement Class Members; (h) the methods of notice and the method of payment to Settlement Class Members; (i) the number and value of checks not cashed; (j) the amounts distributed to the cy pres recipient; (k) the Settlement Administration Costs; (l) the Attorneys' Fees and Litigation Costs distributed to each law firm that represented Plaintiffs in the Action; and (m) the Attorneys' Fees in terms of percentage of the settlement fund, and the multiplier, if any.

  3.7 **Miscellaneous**.

    3.7.1 <u>No Pending Or Future Lawsuits By Plaintiffs</u>. Other than the Action, Plaintiffs represent that they do not have any pending lawsuits, administrative complaints, or charges against Defendant or any of the Released Parties in any local, state, or federal court or administrative agency. Plaintiffs further acknowledge that all claims raised therein, if any, shall be fully and finally extinguished by virtue of this Settlement Agreement and the Court's Final Approval Order and the Judgment.

    3.7.2 <u>No Effect On Employee Benefits</u>. Amounts paid to Plaintiffs, Participating Settlement Class Members, and PAGA Settlement Class Members pursuant to this Settlement Agreement do not count as earnings or compensation for purposes of any benefits (*e.g.*, 401(k) plans or retirement plans) sponsored by Defendant.

    3.7.3 <u>Nullification Of Settlement Agreement</u>. Unless the Parties agree otherwise pursuant to paragraph 3.7.7, in the event: (a) the Court does not enter the Preliminary Approval Order as provided herein; (b) the Court does not enter a Final Approval Order and the Judgment as provided herein; or (c) the Settlement does not become final for any other reason, this Settlement Agreement shall be null and void and any order entered by the Court in furtherance of this Settlement shall be treated as void from the beginning. In such case, any funds to be awarded under this

Settlement that have been deposited with the Settlement Administrator shall be returned to Defendant, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Settlement Agreement, and the Parties shall proceed in all respects as if this Settlement Agreement had not been executed, except that any Settlement Administration Costs already incurred by the Settlement Administrator shall be allocated to the Parties in equal shares (for purposes of this sentence, "Plaintiffs" are deemed one party and Defendant is deemed one party). However, if the Court reduces the amount of requested Class Representative Payments, Plaintiff Amanda Frlekin's Service Payment, Settlement Administration Costs, Attorneys' Fees, and/or Litigation Costs, that ruling will not constitute a failure to grant approval of the Settlement. In the event an appeal is filed by a Settlement Class Member from the Court's Final Approval Order and the Judgment or from an order denying any motion to intervene, or any other appellate review is sought by a Settlement Class Member, the administration of the Settlement shall be stayed pending final resolution of the appeal and Defendant will not be required to fund this Settlement until and unless the Effective Date is reached.

3.7.4   <u>Exhibits</u>. The terms of this Settlement Agreement include the terms set forth in the **Exhibits A-G** attached, which are incorporated by this reference as though fully set forth herein. All **Exhibits A-G** to this Settlement Agreement are an integral part of the Settlement.

3.7.5   <u>Headings</u>. The descriptive headings of any paragraphs or sections of this Settlement Agreement are inserted for convenience only and do not constitute a part of this Settlement Agreement.

3.7.6   <u>Interim Stay Of Proceedings</u>. Subject to Court approval, the Parties agree to stay all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, pending the Final Approval Hearing to be conducted by the Court.

3.7.7   <u>Amendment Or Modification</u>. This Settlement Agreement may be amended or modified only by a written instrument signed by all Parties or their successors-in-interest.

3.7.8   <u>Entire Agreement</u>. This Settlement Agreement and the attached **Exhibits A-G** constitute the entire agreement among the Parties, and no oral or written representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or

35

its **Exhibits A-G** other than the representations, warranties, and covenants contained and memorialized in the Settlement Agreement and its **Exhibits A-G**.

>    3.7.9   <u>Authorization To Enter Into Settlement Agreement</u>. The person signing this Settlement Agreement on behalf of Defendant represents and warrants that he is authorized to sign this Settlement Agreement on behalf of Defendant. Class Representatives represent and warrant that they are authorized to sign this Settlement Agreement on behalf of themselves and Settlement Class Members, and Plaintiffs Amanda Frlekin and Taylor Kalin represent and warrant that they are authorized to sign this Settlement Agreement on behalf of themselves, the State of California, and PAGA Settlement Class Members. Plaintiffs further represent and warrant that they have not assigned any claim covered by this Settlement to a third party. The Parties and their counsel agree to cooperate with each other fully and to use their best efforts to effect the implementation of the Settlement. Such cooperation includes, but is not limited to, execution of such other documents and the taking of such other actions as may be reasonably necessary to fulfill the terms of this Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

>    3.7.10  <u>Binding On Successors And Assigns</u>. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

>    3.7.11  <u>California Law Governs</u>. All terms of this Settlement Agreement and the **Exhibits A-G** hereto shall be governed by and interpreted according to the laws of the State of California.

>    3.7.12  <u>This Settlement Is Fair, Reasonable, And Adequate</u>. The Parties believe this Settlement is a fair, reasonable, and adequate settlement of the Action and have arrived at this Settlement after lengthy, extensive arms-length negotiations, taking into account all relevant factors, present and potential. This Settlement Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Agreement.

3.7.13 <u>No Publicity</u>. Plaintiffs and their counsel (including McLaughlin & Stern LLP, Kralowec Law, P.C., the Law Offices of Louis Ginsberg, P.C., the Blanchard Law Group, APC, Peter R. Dion-Kindem, P.C., and Holmes Law Group, APC) agree not to publicize the fact, amount, or terms of the Settlement in any way, including through social media, press releases, initiating contact with the press, responding to any press inquiries, or communicating with the press. However, following final approval of the Settlement, Class Counsel (*i.e.*, McLaughlin & Stern LLP and Kralowec Law, P.C.) may: (a) post on their firms' websites a copy of any published decision regarding the Action; and (b) report in their attorney bios, on their firms' websites, and in declarations filed with courts to explain their qualification to serve as class counsel or to seek awards of attorneys' fees in future class actions, the following: "Plaintiffs v. Fortune 500 Silicon Valley Technology Company: secured $___ settlement as class counsel in a class action on behalf of employees who went through security checks." Otherwise, Plaintiffs and their counsel shall keep this Settlement and its terms confidential and may disclose the terms of the Settlement only as necessary to communicate with Settlement Class Members regarding their rights respecting the Settlement and to obtain approval of and enforce the Settlement.

3.7.14 <u>Notices</u>. Unless otherwise specifically provided, all notices, demands or other communications in connection with this Settlement Agreement shall be: (a) in writing; (b) deemed given on the third business day after mailing; and (c) sent via United States registered or certified mail, return receipt requested, addressed as follows:

| **TO PLAINTIFFS:** | **TO DEFENDANT:** |
|---|---|
| Lee Shalov<br>Brett Gallaway<br>Jason Scott Giaimo<br>**McLaughlin & Stern, LLP**<br>260 Madison Avenue<br>New York, New York 10016<br><br>Kimberly A. Kralowec<br>Kathleen Styles Rogers<br>**Kralowec Law, P.C.**<br>750 Battery Street, Suite 700<br>San Francisco, California 94111 | Julie Dunne<br>Matthew Riley<br>**DLA Piper LLP (US)**<br>401 B Street, Suite 1700<br>San Diego, California 92101 |

3.7.15  <u>Execution By Settlement Class Members</u>. It is agreed that it is impossible or impractical to have each Participating Settlement Class Member execute this Settlement Agreement. The Notices of Settlement will therefore advise all Settlement Class Members of the binding nature of the Settlement and the Released Class Claims, which release shall have the same force and effect as if each Participating Settlement Class Member had executed this Settlement Agreement individually.

3.7.16  <u>Counterparts</u>. This Settlement Agreement shall become effective upon its execution by all of the undersigned. All signatories may execute this Settlement Agreement in counterparts, which shall have the same force and effect as if each had signed the same instrument. Copies of the executed Settlement Agreement shall be effective for all purpose as though the signatures contained therein were original signatures. Electronic signature (*e.g.*, Docu-signed signatures) shall not be used to execute this Settlement Agreement; rather, actual ink signatures shall be used to execute this Settlement Agreement.

Dated: November 8, 2021          By: _____

**Seth Dowling**

Dated: November 8, 2021          By: _____

**Amanda Frlekin**

Dated: November ___, 2021          By: _____

**Aaron Gregoroff**

Dated: November ___, 2021          By: _____

**Taylor Kalin**

Dated: November ___, 2021          By: _____

**Debra Speicher**

/////

/////

/////

38

3.7.15 <u>Execution By Settlement Class Members</u>. It is agreed that it is impossible or impractical to have each Participating Settlement Class Member execute this Settlement Agreement. The Notices of Settlement will therefore advise all Settlement Class Members of the binding nature of the Settlement and the Released Class Claims, which release shall have the same force and effect as if each Participating Settlement Class Member had executed this Settlement Agreement individually.

3.7.16 <u>Counterparts</u>. This Settlement Agreement shall become effective upon its execution by all of the undersigned. All signatories may execute this Settlement Agreement in counterparts, which shall have the same force and effect as if each had signed the same instrument. Copies of the executed Settlement Agreement shall be effective for all purpose as though the signatures contained therein were original signatures. Electronic signature (*e.g.*, Docu-signed signatures) shall not be used to execute this Settlement Agreement; rather, actual ink signatures shall be used to execute this Settlement Agreement.

Dated: November ___, 2021          By: _____
                                        **Seth Dowling**

Dated: November ___, 2021          By: _____
                                        **Amanda Frlekin**

Dated: November ___, 2021          By: _____
                                        **Aaron Gregoroff**

Dated: November ___, 2021          By: _____
                                        **Taylor Kalin**

Dated: November ___, 2021          By: _____
                                        **Debra Speicher**

/////

/////

/////

1        3.7.15 Execution By Settlement Class Members. It is agreed that it is impossible or
2  impractical to have each Participating Settlement Class Member execute this Settlement Agreement.
3  The Notices of Settlement will therefore advise all Settlement Class Members of the binding nature
4  of the Settlement and the Released Class Claims, which release shall have the same force and effect
5  as if each Participating Settlement Class Member had executed this Settlement Agreement
6  individually.

7        3.7.16 Counterparts. This Settlement Agreement shall become effective upon its
8  execution by all of the undersigned. All signatories may execute this Settlement Agreement in
9  counterparts, which shall have the same force and effect as if each had signed the same instrument.
10  Copies of the executed Settlement Agreement shall be effective for all purpose as though the
11  signatures contained therein were original signatures. Electronic signature (e.g., Docu-signed
12  signatures) shall not be used to execute this Settlement Agreement; rather, actual ink signatures shall
13  be used to execute this Settlement Agreement.

14  Dated: November ___, 2021        By:  _____

15                                        **Seth Dowling**

16

17  Dated: November ___, 2021        By:  _____

18                                          **Amanda Frlekin**

19  Dated: November ___, 2021        By:  _____

20                                        **Aaron Gregoroff**

21

22  Dated: November 11, 2021        By:  _____

23                                        **Taylor Kalin**

24

25  Dated: November ___, 2021        By:  _____

                                           **Debra Speicher**

26  /////

27  /////

28  /////

1          3.7.15  <u>Execution By Settlement Class Members</u>. It is agreed that it is impossible or

2    impractical to have each Participating Settlement Class Member execute this Settlement Agreement.

3    The Notices of Settlement will therefore advise all Settlement Class Members of the binding nature

4    of the Settlement and the Released Class Claims, which release shall have the same force and effect

5    as if each Participating Settlement Class Member had executed this Settlement Agreement

6    individually.

7          3.7.16  <u>Counterparts</u>. This Settlement Agreement shall become effective upon its

8    execution by all of the undersigned. All signatories may execute this Settlement Agreement in

9    counterparts, which shall have the same force and effect as if each had signed the same instrument.

10   Copies of the executed Settlement Agreement shall be effective for all purpose as though the

11   signatures contained therein were original signatures. Electronic signature (*e.g.*, Docu-signed

12   signatures) shall not be used to execute this Settlement Agreement; rather, actual ink signatures shall

13   be used to execute this Settlement Agreement.

14   Dated: November ___, 2021      By: _____

15                                           **Seth Dowling**

16

17   Dated: November ___, 2021      By: _____

18                                           **Amanda Frlekin**

19   Dated: November ___, 2021      By: _____

20                                           **Aaron Gregoroff**

21

22   Dated: November ___, 2021      By: _____

23                                           **Taylor Kalin**

24

25   Dated: November  8 , 2021      By: _____

                                           **Debra Speicher**

26   /////

27   /////

28   /////

1  Dated: November 11, 2021                    **APPLE INC.**

2

3                                              By: _____
                                                   Kwang Kim
4                                                  Employment Law Counsel

5

6  Dated: November ___, 2021                   **McLAUGHLIN & STERN, LLP**

7                                              By: _____
                                                   Lee Shalov
8                                                  Lead Counsel and Class Counsel

9

10 Dated: November ___, 2021                   **KRALOWEC LAW, P.C.**

11

12                                             By: _____
                                                   Kimberly A. Kralowec
13                                                 Class Counsel

14 Dated: November ___, 2021                   **LAW OFFICES OF LOUIS GINSBERG, P.C.**

15

16                                             By: _____
                                                   Louis Ginsberg
17                                                 Attorneys for Plaintiffs Amanda Frlekin,
                                                   Aaron Gregoroff, Seth Dowling, and Debra
18                                                 Speicher

19

20 Dated: November ___, 2021                   **THE BLANCHARD LAW GROUP, APC**

21

22                                             By: _____
                                                   Lonnie C. Blanchard, III
23                                                 Attorneys for Plaintiff Taylor Kalin

24

25 Dated: November ___, 2021                   **PETER R. DION-KINDEM, P.C.**

26

27                                             By: _____
                                                   Peter R. Dion-Kindem
                                                   Attorneys for Plaintiff Taylor Kalin
28

39

Dated: November ___, 2021               **APPLE INC.**

                                        By: _____
                                             Kwang Kim
                                             Employment Law Counsel

Dated: November _11_, 2021              **McLAUGHLIN & STERN, LLP**

                                        By: _____
                                             Lee Shalov
                                             Lead Counsel and Class Counsel

Dated: November ___, 2021               **KRALOWEC LAW, P.C.**

                                        By: _____
                                             Kimberly A. Kralowec
                                             Class Counsel

Dated: November ___, 2021               **LAW OFFICES OF LOUIS GINSBERG, P.C.**

                                        By: _____
                                             Louis Ginsberg
                                             Attorneys for Plaintiffs Amanda Frlekin,
                                             Aaron Gregoroff, Seth Dowling, and Debra
                                             Speicher

Dated: November ___, 2021               **THE BLANCHARD LAW GROUP, APC**

                                        By: _____
                                             Lonnie C. Blanchard, III
                                             Attorneys for Plaintiff Taylor Kalin

Dated: November ___, 2021               **PETER R. DION-KINDEM, P.C.**

                                        By: _____
                                             Peter R. Dion-Kindem
                                             Attorneys for Plaintiff Taylor Kalin

1    Dated: November ___, 2021                **APPLE INC.**

2

3                                             By: _____

4                                                  Kwang Kim
                                                   Employment Law Counsel
5

6    Dated: November ___, 2021                **McLAUGHLIN & STERN, LLP**

7                                             By: _____

8                                                  Lee Shalov
                                                   Lead Counsel and Class Counsel
9

10   Dated: November _11_, 2021               **KRALOWEC LAW, P.C.**

11

12                                            By: _____
                                                   Kimberly A. Kralowec
13                                                 Class Counsel

14   Dated: November ___, 2021                **LAW OFFICES OF LOUIS GINSBERG, P.C.**

15

16                                            By: _____
                                                   Louis Ginsberg
17                                                 Attorneys for Plaintiffs Amanda Frlekin,
                                                   Aaron Gregoroff, Seth Dowling, and Debra
18                                                 Speicher

19

20   Dated: November ___, 2021                **THE BLANCHARD LAW GROUP, APC**

21

22                                            By: _____
                                                   Lonnie C. Blanchard, III
23                                                 Attorneys for Plaintiff Taylor Kalin

24

25   Dated: November ___, 2021                **PETER R. DION-KINDEM, P.C.**

26

27                                            By: _____
                                                   Peter R. Dion-Kindem
                                                   Attorneys for Plaintiff Taylor Kalin
28

Case No. 13-cv-03451 WHA
STIPULATION REGARDING CLASS AND PAGA SETTLEMENT AND RELEASE

1 | Dated: November ___, 2021

**APPLE INC.**

By: _____
      Kwang Kim
      Employment Law Counsel

Dated: November ___, 2021

**McLAUGHLIN & STERN, LLP**

By: _____
      Lee Shalov
      Lead Counsel and Class Counsel

Dated: November ___, 2021

**KRALOWEC LAW, P.C.**

By: _____
      Kimberly A. Kralowec
      Class Counsel

Dated: November 11, 2021

**LAW OFFICES OF LOUIS GINSBERG, P.C.**

By: _____
      Louis Ginsberg
      Attorneys for Plaintiffs Amanda Frlekin, Aaron Gregoroff, Seth Dowling, and Debra Speicher

Dated: November ___, 2021

**THE BLANCHARD LAW GROUP, APC**

By: _____
      Lonnie C. Blanchard, III
      Attorneys for Plaintiff Taylor Kalin

Dated: November ___, 2021

**PETER R. DION-KINDEM, P.C.**

By: _____
      Peter R. Dion-Kindem
      Attorneys for Plaintiff Taylor Kalin

39

1   Dated: November ____, 2021     **APPLE INC.**

2

3                            By:    _____

4                                   Kwang Kim
                                   Employment Law Counsel

5

6   Dated: November ____, 2021     **McLAUGHLIN & STERN, LLP**

7                            By:    _____

8                                   Lee Shalov
                                 Lead Counsel and Class Counsel

9

10  Dated: November ____, 2021     **KRALOWEC LAW, P.C.**

11

12                          By:    _____
                                   Kimberly A. Kralowec

13                                   Class Counsel

14  Dated: November ____, 2021     **LAW OFFICES OF LOUIS GINSBERG, P.C.**

15

16                         By:    _____

17                                   Louis Ginsberg
                                   Attorneys for Plaintiffs Amanda Frlekin,

18                                   Aaron Gregoroff, Seth Dowling, and Debra
                                   Speicher

19

20  Dated: November ____, 2021     **THE BLANCHARD LAW GROUP, APC**

21

22                         By:    _____

23                                     Lonnie C. Blanchard, III
                                   Attorneys for Plaintiff Taylor Kalin

24

25  Dated: November _||_, 2021     **PETER R. DION-KINDEM, P.C.**

26                         By:    _____

27                                     Peter R. Dion-Kindem
                                   Attorneys for Plaintiff Taylor Kalin

28

Dated: November 11, 2021

**THE HOLMES LAW GROUP, APC**

By: _____

Jeff Holmes
Attorneys for Plaintiff Taylor Kalin

Case No. 13-cv-03451 WHA
STIPULATION REGARDING CLASS AND PAGA SETTLEMENT AND RELEASE

WEST/296620782

# EXHIBIT A

## NOTICE OF PENDENCY OF CLASS ACTION SETTLEMENT

To all current and former non-exempt employees of Apple Inc. ("**Apple**") who worked at an Apple retail store in California between July 25, 2009 and August 10, 2015 who were previously provided notice of the Action (defined below) in 2015 and who did not opt out of the class.

## PLEASE READ THIS NOTICE CAREFULLY

IT MAY AFFECT YOUR LEGAL RIGHT TO MONEY IN CONNECTION WITH THE SETTLEMENT OF A CLASS ACTION LAWSUIT.

## A.  WHAT IS THIS NOTICE ABOUT?

A settlement agreement (the "**Settlement**") has been reached between Apple and Plaintiffs Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Debra Speicher, and Taylor Kalin ("**Plaintiffs**") in a class action pending in the United States District Court for the Northern District of California (the "**Court**"). Plaintiffs Aaron Gregoroff, Seth Dowling, Debra Speicher, and Taylor Kalin ("**Class Representatives**") are pursuing the Action on behalf of themselves and individuals who worked as a non-exempt employee at an Apple retail store in California at any time during the Class Period ("**Settlement Class Members**"). The "**Class Period**" is July 25, 2009 to December 31, 2015. Plaintiffs Amanda Frlekin and Taylor Kalin are also pursuing the Action on behalf of themselves, the State of California, and all individuals who worked as a non-exempt employee at an Apple retail store in California at any time from July 25, 2012 to December 31, 2015 (the "**PAGA Settlement Class Members**") seeking civil penalties pursuant to the Private Attorneys' General Act of 2004, California Labor Code section 2698 *et seq.* ("**PAGA**").

The Court has preliminarily approved the Settlement. The Court appointed McLaughlin & Stern LLP and Kralowec Law P.C. to serve as **Class Counsel** for the Settlement Class Members, and Lee Shalov of McLaughlin & Stern LLP to serve as **Lead Counsel** for the Settlement Class Members. In making this appointment and preliminarily approving the Settlement, the Court gave these Class Counsel firms the authority to represent and bind the Plaintiffs and Settlement Class Members regarding the Settlement, subject to the Court's final approval of the Settlement.

You have received this notice because you previously were provided notice of the Action in 2015 and did not opt out of the class. This notice is designed to provide you with a brief description of the Action, inform you of the terms of the proposed Settlement, and discuss your rights in connection with the Settlement, including how you can object to the Settlement.

## B.  WHAT IS THIS LAWSUIT ABOUT?

The Action involves the two consolidated class and PAGA lawsuits entitled *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA, and *Taylor Kalin v. Apple Inc.*, Case No. 13-cv-04727-WHA (the "**Action**"), pending before the Court.

Plaintiffs brought the Action seeking compensation on behalf of hourly-paid, non-exempt Apple employees for time spent waiting for and participating in bag checks and checks of their personally-owned Apple technology at one or more of Apple's retail stores in the State of California. Based on these allegations, Class Representatives assert claims for: (a) failure to pay minimum and overtime wages in violation of California Labor Code sections 204, 226.7, 510, 1194, 1194.2, and 1198 and the applicable Industrial

Welfare Commission Wage Order; (b) unfair competition in violation of California Business & Professions Code sections 17200, *et seq.*; (c) failure to provide accurate wage statements in violation of California Labor Code section 226; (d) failure to pay all wages due on termination in violation of California Labor Code sections 201, 202, 203, and 204; and (e) attorneys' fees and costs incurred in pursuing the Action.

Separately, Plaintiffs Amanda Frlekin and Taylor Kalin allege a claim for civil penalties under PAGA based on the allegation that Apple did not compensate hourly-paid, non-exempt employees for time spent waiting for and participating in bag checks and checks of their personally-owned Apple technology.

The Action was commenced in 2015 and has been heavily litigated. In February 2020, the California Supreme Court held that Apple "must compensate those employees to whom the [bag and technology search] policy applies for the time spent waiting for and undergoing [bag and technology] searches." *Frlekin v. Apple Inc.*, 8 Cal.5th 1038, 1057 (2020). In April 2021, the district court held that "[a]t all material times Apple was liable to compensate the class members for time spent standing in line and waiting to have their bags checked." Dkt. 407. However, the district court further ordered that "[t]here will be a damages claims process on an individual-by-individual basis, after notice to potential class members," and "a trial schedule for all or groups of claimants will be set along with evidentiary disclosure and expert deadlines for each trial." *Id.*

Plaintiffs contend that the Settlement Class Members and PAGA Settlement Class Members are entitled to compensation for the conduct alleged in the Action.

Apple denies that Settlement Class Members and PAGA Settlement Class Members are entitled to compensation for the conduct alleged in the Action.

After lengthy settlement negotiations with the assistance of multiple independent mediators, Plaintiffs and Apple agreed to settle the Action. The Parties and their counsel have concluded that the Settlement is advantageous, considering the risks and uncertainties to each side of continued litigation.

The Settlement represents a compromise of disputed claims. Nothing in the Settlement is intended to be or will be construed as an admission by Apple that Plaintiffs' claims in the Action have merit or that Apple owes compensation to Plaintiffs or Settlement Class Members for the conduct alleged in the Action. On the contrary, Apple denies any and all such liability.

## C. SUMMARY OF THE SETTLEMENT PAYMENTS

1. **Total Settlement Amount:** Apple will pay $29,900,000 as the Total Settlement Amount. The Total Settlement Amount is the total amount that Apple shall be obligated to pay under the Settlement, except for the employer's share of payroll taxes on the wage component of the Individual Class Payments, which Apple shall pay in addition to the Total Settlement Amount. The Total Settlement Amount will include all amounts paid for the Class Representative Payments to Class Representatives; the Service Payment to Plaintiff Amanda Frlekin; the Attorneys' Fees; the Litigation Costs; the Settlement Administration Costs; the PAGA Settlement Amount to resolve the claim for civil penalties; and the Individual Class Payments to Participating Settlement Class Members.

2. **Class Representative Payments:** Class Representatives will seek approval from the Court for a payment of $10,000 each for prosecuting the Action and for the Complete and General Release that they are providing to Apple as part of the Settlement. If awarded by the Court, the Class Representative Payments will be paid out of the Total Settlement Amount.

3. **Service Payment:** Plaintiff Amanda Frlekin will seek approval from the Court for a payment of $10,000 for her time and effort in prosecuting the Action on behalf of the Settlement Class Members, PAGA Settlement Class Members, and the State of California, and for the Complete and General Release she is providing to Apple as part of the Settlement. If awarded by the Court, the Service Payment will be paid out of the Total Settlement Amount.

4. **Attorneys' Fees:** Class Counsel have spent over eight years prosecuting the Action on behalf of the Class. During this time, they have, among other tasks: (i) reviewed thousands of documents relating to Plaintiffs' claims and allegations; (ii) interviewed over 100 Apple employees regarding their experiences with bag and technology checks at Apple retail stores; (iii) taken and defended over thirty depositions of Apple representatives and employees; (iv) prepared multiple briefs and attended multiple hearings before the Court, the United States Court of Appeals for the Ninth Circuit and the California Supreme Court, (v) obtained the California Supreme Court opinion cited above for the benefit of the Class; and (vi) engaged in lengthy mediation sessions before three different mediators. In consideration for these efforts, Class Counsel intend to request one third of the Total Settlement Amount ($9,966,666.67) as an award of attorneys' fees for the services the attorneys representing the Plaintiffs in the Action have rendered and will render to the Settlement Class Members and PAGA Settlement Class Members. The payment of the Attorneys' Fees from out of the Total Settlement Amount will constitute full and complete compensation for all legal fees of all attorneys representing Plaintiffs in the Action (including McLaughlin & Stern LLP, Kralowec Law, P.C., the Law Offices of Louis Ginsberg, P.C., the Blanchard Law Group, APC, Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC) and all work done through the completion of the Action, whatever date that may be.

5. **Litigation Costs:** Class Counsel will also request up to $450,000 for the litigation costs all attorneys representing Plaintiffs in the Action have incurred and will incur in the investigation, litigation, and resolution of the Action. The payment of the Litigation Costs from out of the Total Settlement Amount will constitute full and complete compensation for all costs and expenses of all attorneys representing Plaintiffs in the Action (including McLaughlin & Stern LLP, Kralowec Law, P.C., the Law Offices of Louis Ginsberg, P.C., the Blanchard Law Group, APC, Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC).

6. **Settlement Administration Costs:** The reasonable costs of administering the Settlement, up to a maximum of $89,500, will be paid out of the Total Settlement Amount. The Court has appointed Angeion Group to act as an independent Settlement Administrator for purposes of administering this Settlement.

7. **PAGA Settlement Amount:** $448,500 of the Total Settlement Amount has been allocated to PAGA civil penalties.

8. **Net Settlement Amount:** The Net Settlement Amount means the Total Settlement Amount minus deductions for the Class Representative Payments, the Service Payment, the Attorneys' Fees, the Litigation Costs, the Settlement Administration Costs, and the PAGA Settlement Amount.

9. **Individual Class Payments:** Apple will pay the Net Settlement Amount to **Participating Settlement Class Members** Each Participating Settlement Class Member's share of the Net Settlement Amount (the "**Individual Class Payment**") will be based on the number of individual shifts each worked for Apple at an Apple retail store in California during the Class Period. Each Individual Class Payment shall be calculated by dividing a Participating Settlement Class Member's individual shifts worked for Apple at an Apple retail store in California during the Class Period by the total of all shifts worked by

Participating Settlement Class Members for Apple at an Apple retail store in California during the Class Period, and multiplying this result by the Net Settlement Amount. The Individual Class Payments will be allocated 20% as wages, 20% as interest, and 60% as penalties. The wage component of the Individual Class Payments shall be subject to W-2 reporting and shall be subject to deductions for employee-side employment and payroll taxes. The interest and penalty components of the Individual Class Payments will be subject to IRS Form 1099 reporting, if required by law, and will not be subject to deductions for employment and payroll taxes.

10. The Class Representative Payments, Service Payment, Attorneys' Fees, Litigation Costs, Settlement Administration Costs, PAGA Settlement Amount, and Individual Class Payments will be paid after the Court enters a Final Approval Order and the Judgment, all time for Settlement Class Members to appeal or challenge the Final Approval Order and the Judgment has lapsed, and the Final Approval Order and the Judgment remain enforceable (*i.e.*, the "**Effective Date**").

11. Any unclaimed funds resulting from Settlement Class Members' failure to cash Individual Class Payment checks and/or Individual PAGA Payment checks by the Void Date shall be transmitted by the Settlement Administrator to the California Alliance of Boys & Girls Clubs, Inc. ("**Boys & Girls Clubs**"), with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training. Any refunded employee-side payroll taxes corresponding to the wage component of any uncashed Individual Class Payment checks shall also be transmitted by the Settlement Administrator to the Boys & Girls Clubs, with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training. Any refunded employer-side payroll taxes corresponding to the wage component of any uncashed Individual Class Payment checks shall be returned to Apple.

12. If the Court does not grant final approval of the Settlement or if the Judgment does not become final and binding for any reason, then the Settlement will become null and void; if that occurs, neither Plaintiffs nor Apple will have further obligations under the Settlement, including any obligation by Apple to pay the Total Settlement Amount or any amounts that otherwise would have been owed under this Settlement. An award by the Court of a lesser amount than that sought by Plaintiffs and Class Counsel for the Class Representative Payments, Service Payment, Attorneys' Fees, Litigation Costs, PAGA Settlement Amount, or Settlement Administration Costs will not render the Settlement null and void.

## D.  HOW MUCH WILL I RECEIVE?

Apple's records indicate that during the Class Period (*i.e.*, between July 25, 2009 and December 31, 2015), you worked a total of _____ shifts in a non-exempt position at an Apple retail store in California. Based on this information, it is estimated that your Individual Class Payment will be approximately $_____, assuming the Net Settlement Amount is $_____, after the deductions described above. Assuming the Court approves the Settlement, you do not need to do anything to receive a payment.

[WHERE APPLICABLE] Apple's records also indicate that you are a PAGA Settlement Class Member because you worked as a non-exempt employee at an Apple retail store in California during some period between July 25, 2012 to December 31, 2015 (the "**PAGA Period**"), and that during that time, you worked a total of _____ pay periods. Based on this information, it is estimated that you will receive an additional $_____ as your *pro rata* share of the PAGA Settlement Amount. Assuming the Court approves the Settlement, you do not need to do anything to receive a payment.

## E.  WHAT CLAIMS ARE RELEASED?

As a Participating Settlement Class Member, you will be unable to sue, continue to sue, or be a part of any other lawsuit against the Released Parties regarding the "Released Class Claims" in this Settlement. "**Released Parties**" means Apple and its subsidiaries, affiliates, and/or parent companies; the employee benefit plans sponsored or maintained by any of the foregoing; the respective successors and predecessors in interest of the foregoing; the officers, directors, employees, administrators, fiduciaries, trustees, beneficiaries, attorneys, and agents of the foregoing; and each of their past, present, and future officers, directors, shareholders, employees, agents, principals, representatives, accountants, auditors, consultants, insurers, and reinsurers.

**Released Class Claims:** Upon the Effective Date, Class Representatives – on behalf of themselves and Participating Settlement Class Members – will fully and irrevocably release the Released Parties from the **Class Claims** in exchange for the consideration provided by this Settlement.

"**Class Claims**" means any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for wages, benefits, and related penalties actually asserted or that could have been asserted in the Action by the Plaintiffs on behalf of themselves and/or the Settlement Class Members based on the facts alleged in Plaintiff Amanda Frlekin's November 12, 2013 notice letter to the Labor and Workforce Development Agency ("**LWDA**"), Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, and/or the original, amended, and/or Consolidated Complaint in the *Frlekin* Action, and/or the complaint in the *Kalin* Action (all of which are posted on the settlement website at www._____.com), including claims for: (i) failure to pay overtime and minimum wages pursuant to Labor Code §§ 204, 226.7, 510, 1194, 1194.2 and 1198 and the applicable Wage Order of the Industrial Welfare Commission; (ii) violation of California's Unfair Competition Law, California Business & Professions Code § 17200 et seq.; (iii) failure to provide and maintain accurate wage statements pursuant to Labor Code § 226 and the applicable Wage Order of the Industrial Welfare Commission; and (iv) failure to timely pay wages upon termination of employment pursuant to Labor Code §§ 201-204; and (v) attorneys' fees and costs incurred to prosecute the Action on behalf of Settlement Class Members. "Class Claims" also includes all claims that Plaintiffs and/or Settlement Class Members may have against the Released Parties relating to: (a) the payment, taxation, and allocation of Attorneys' Fees and Litigation Costs to Class Counsel pursuant to this Settlement Agreement; (b) the payment, taxation, and allocation of Class Representatives' Class Representative Payments and Plaintiff Amanda Frlekin's Service Payment pursuant to the Settlement Agreement; and (c) the payment, taxation, and allocation of payments to Participating Settlement Class Members. Notwithstanding the foregoing, "Class Claims" does not include the claims for failure to reimburse business expenses pursuant to Labor Code § 2802 or the claims for failure to pay for time spent waiting to clock in and time spent checking out company devices asserted in Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, which were never pursued in the Consolidated Complaint filed in the Action, or claims for violation of Massachusetts, New York, or Ohio law, or the federal Fair Labor Standards Act, which the Court already dismissed with prejudice as to the individual plaintiffs who brought the non-California claims.

The Released Class Claims include a 1542 Waiver but only as to the specific Class Claims that were asserted in the Action, identified above. "**1542 Waiver**" means an express waiver, to the fullest extent permitted by law, of the provisions, rights, and benefits of California Civil Code section 1542, which states: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Class Representatives and Participating Settlement Class Members may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Class Claims but, upon the Effective Date, Class Representatives and Participating Settlement Class Members shall be deemed to have – and by operation of the Final Approval Order and the Judgment shall have – fully, finally, and forever settled and released any and all of the Released Class Claims. It is the intent of the Parties that the Final Approval Order and the Judgment entered by the Court shall have full *res judicata* effect and be final and binding upon Class Representatives and Participating Settlement Class Members regarding the Released Class Claims. Indeed, the binding nature of the Settlement and the Released Class Claims shall have the same force and effect as if each Participating Settlement Class Member had executed the Settlement Agreement individually.

## F.  WHAT ARE MY RIGHTS AS A SETTLEMENT CLASS MEMBER?

1.  **Participating in the Settlement:** You do not need to do anything to participate in this Settlement. and, if Final Approval is granted by the Court, be entitled to receive a pro rata share of the Net Settlement Amount. You are a Participating Settlement Class Member because you did not opt out of the class in 2015. As a Participating Settlement Class Member, you will be bound by the terms of the Settlement and the Judgment entered by the Court, you will be deemed to have released the Released Class Claims against the Released Parties described above, and you will be entitled to receive a pro rata share of the Net Settlement Amount.

2.  **Objecting to the Settlement:** You can ask the Court to deny approval of the Settlement by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the Action will continue. If that is what you want to happen, you must object.

    Any objection to the proposed Settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

    All written objections and supporting papers must be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, or by filing them in person at any location of the United States District Court for the Northern District of California. All written objections and supporting papers must: (a) contain your full name, address and last four digits of your social security number; (b) state the case name and number, *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA; the basis for the objection; and whether you intend to appear at the Final Approval Hearing; (c) be signed by you; and (d) be filed or postmarked on or before _____, 2022 (the "**Response Deadline**").

## G.  FINAL SETTLEMENT APPROVAL HEARING

The Court will hold a Final Approval Hearing on _____, 2022, at __:__ _.m., in Courtroom 12 on the 19th Floor of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve the requests for the Class Representative Payments, the Service Payment, the Attorneys' Fees, the Litigation Costs, the PAGA Settlement Amount, and the Settlement Administration Costs.

The Final Approval Hearing may be postponed without further notice to Class Members. **It is not necessary for you to appear at this hearing.** If you have submitted an objection, and indicated you intend to appear in the manner set forth above, you may appear at the hearing and be heard. You may check the settlement website at www._____.com or the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov to confirm that the Final Approval Hearing date has not been changed.

## H.  GETTING MORE INFORMATION

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, or if you have questions about the Settlement, please see the Settlement Agreement available at www._____.com, contact the Settlement Administrator (see below contact information), contact Class Counsel (see below contact information), or access the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.cand.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

Settlement Administrator:
  Angeion Group, Inc.
  [Contact Information for Settlement Administrator]

Class Counsel:

Lee Shalov
lshalov@mclaughlinstern.com
Brett Gallaway
bgallaway@mclaughlinstern.com
Jason Scott Giaimo
jgiaimo@mclaughlinstern.com
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Tel:      (212) 448-1100

Kimberly A. Kralowec
kkralowec@kraloweclaw.com
Kathleen Styles Rogers
krogers@kraloweclaw.com
KRALOWEC LAW, P.C.
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:      (415) 546-6800

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

Dated: _____, 2021.

By Order of the Court

# EXHIBIT B

## NOTICE OF PENDENCY OF CLASS ACTION SETTLEMENT

To all individuals who began working as a non-exempt employee at an Apple Inc. ("**Apple**") retail store in California between August 3, 2015 and December 26, 2015 and to whom a notice of class certification was not mailed in 2015.

## PLEASE READ THIS NOTICE CAREFULLY

IT MAY AFFECT YOUR LEGAL RIGHT TO MONEY IN CONNECTION WITH THE SETTLEMENT OF A CLASS ACTION LAWSUIT.

## A.  WHAT IS THIS NOTICE ABOUT?

A settlement agreement (the "**Settlement**") has been reached between Apple and Plaintiffs Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Debra Speicher, and Taylor Kalin ("**Plaintiffs**") in a class action pending in the United States District Court for the Northern District of California (the "**Court**"). Plaintiffs Aaron Gregoroff, Seth Dowling, Debra Speicher, and Taylor Kalin ("**Class Representatives**") are pursuing the Action on behalf of themselves and individuals who worked as a non-exempt employee at an Apple retail store in California at any time during the Class Period ("**Settlement Class Members**"). The "**Class Period**" is July 25, 2009 to December 31, 2015. Plaintiffs Amanda Frlekin and Taylor Kalin are also pursuing the Action on behalf of themselves, the State of California, and all individuals who worked as a non-exempt employee at an Apple retail store in California at any time from July 25, 2012 to December 31, 2015 (the "**PAGA Settlement Class Members**") seeking civil penalties pursuant to the Private Attorneys' General Act of 2004, California Labor Code section 2698 *et seq.* ("**PAGA**").

The Court has preliminarily approved the Settlement. The Court appointed McLaughlin & Stern LLP and Kralowec Law P.C. to serve as **Class Counsel** for the Settlement Class Members, and Lee Shalov of McLaughlin & Stern LLP to serve as **Lead Counsel** for the Settlement Class Members. In making this appointment and preliminarily approving the Settlement, the Court gave these Class Counsel firms the authority to represent and bind the Plaintiffs and Settlement Class Members regarding the Settlement, subject to the Court's final approval of the Settlement.

You have received this notice because Apple's records indicate you began working as a non-exempt employee at an Apple retail store in California between August 3, 2015 and December 26, 2015. This notice is designed to provide you with a brief description of the Action, inform you of the terms of the proposed Settlement, and discuss your rights in connection with the Settlement, including how you can object to the Settlement or opt out of the class action aspects of the Settlement. Unless you submit a timely and valid Request for Exclusion, the Settlement will be binding upon you if and when it is finally approved by the Court.

## B.  WHAT IS THIS LAWSUIT ABOUT?

The Action involves the two consolidated class and PAGA lawsuits entitled *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA, and *Taylor Kalin v. Apple Inc.*, Case No. 13-cv-04727-WHA (the "**Action**"), pending before the Court.

Plaintiffs brought the Action seeking compensation on behalf of hourly-paid, non-exempt Apple employees for time spent waiting for and participating in bag checks and checks of their personally-owned Apple

technology at one or more of Apple's retail stores in the State of California. Based on these allegations, Class Representatives assert claims for: (a) failure to pay minimum and overtime wages in violation of California Labor Code sections 204, 226.7, 510, 1194, 1194.2, and 1198 and the applicable Industrial Welfare Commission Wage Order; (b) unfair competition in violation of California Business & Professions Code sections 17200, *et seq.*; (c) failure to provide accurate wage statements in violation of California Labor Code section 226; (d) failure to pay all wages due on termination in violation of California Labor Code sections 201, 202, 203, and 204; and (e) attorneys' fees and costs incurred in pursuing the Action.

Separately, Plaintiffs Amanda Frlekin and Taylor Kalin allege a claim for civil penalties under PAGA based on the allegation that Apple did not compensate hourly-paid, non-exempt employees for time spent waiting for and participating in bag checks and checks of their personally-owned Apple technology.

The Action was commenced in 2015 and has been heavily litigated. In February 2020, the California Supreme Court held that Apple "must compensate those employees to whom the [bag and technology search] policy applies for the time spent waiting for and undergoing [bag and technology] searches." *Frlekin v. Apple Inc.*, 8 Cal.5th 1038, 1057 (2020). In April 2021, the district court held that "[a]t all material times Apple was liable to compensate the class members for time spent standing in line and waiting to have their bags checked." Dkt. 407. However, the district court further ordered that "[t]here will be a damages claims process on an individual-by-individual basis, after notice to potential class members," and "a trial schedule for all or groups of claimants will be set along with evidentiary disclosure and expert deadlines for each trial." *Id.*

Plaintiffs contend that the Settlement Class Members and PAGA Settlement Class Members are entitled to compensation for the conduct alleged in the Action.

Apple denies that Settlement Class Members and PAGA Settlement Class Members are entitled to compensation for the conduct alleged in the Action.

After lengthy settlement negotiations with the assistance of multiple independent mediators, Plaintiffs and Apple agreed to settle the Action. The Parties and their counsel have concluded that the Settlement is advantageous, considering the risks and uncertainties to each side of continued litigation.

The Settlement represents a compromise of disputed claims. Nothing in the Settlement is intended to be or will be construed as an admission by Apple that Plaintiffs' claims in the Action have merit or that Apple owes compensation to Plaintiffs or Settlement Class Members for the conduct alleged in the Action. On the contrary, Apple denies any and all such liability.

## C. SUMMARY OF THE SETTLEMENT PAYMENTS

1. **Total Settlement Amount:** Apple will pay $29,900,000 as the Total Settlement Amount. The Total Settlement Amount is the total amount that Apple shall be obligated to pay under the Settlement, except for the employer's share of payroll taxes on the wage component of the Individual Class Payments, which Apple shall pay in addition to the Total Settlement Amount. The Total Settlement Amount will include all amounts paid for the Class Representative Payments to Class Representatives; the Service Payment to Plaintiff Amanda Frlekin; the Attorneys' Fees; the Litigation Costs; the Settlement Administration Costs; the PAGA Settlement Amount to resolve the claim for civil penalties; and the Individual Class Payments to Participating Settlement Class Members.

2. **Class Representative Payments:** Class Representatives will seek approval from the Court for a payment of $10,000 each for prosecuting the Action and for the Complete and General Release that they are providing to Apple as part of the Settlement. If awarded by the Court, the Class Representative Payments will be paid out of the Total Settlement Amount.

3. **Service Payment:** Plaintiff Amanda Frlekin will seek approval from the Court for a payment of $10,000 for her time and effort in prosecuting the Action on behalf of the Settlement Class Members, PAGA Settlement Class Members, and the State of California, and for the Complete and General Release she is providing to Apple as part of the Settlement. If awarded by the Court, the Service Payment will be paid out of the Total Settlement Amount.

4. **Attorneys' Fees:** Class Counsel have spent over eight years prosecuting the Action on behalf of the Class. During this time, they have, among other tasks: (i) reviewed thousands of documents relating to Plaintiffs' claims and allegations; (ii) interviewed over 100 Apple employees regarding their experiences with bag and technology checks at Apple retail stores; (iii) taken and defended over thirty depositions of Apple representatives and employees; (iv) prepared multiple briefs and attended multiple hearings before the Court, the United States Court of Appeals for the Ninth Circuit and the California Supreme Court, (v) obtained the California Supreme Court opinion cited above for the benefit of the Class; and (vi) engaged in lengthy mediation sessions before three different mediators. In consideration for these efforts, Class Counsel intend to request one third of the Total Settlement Amount ($9,966,666.67) as an award of attorneys' fees for the services the attorneys representing the Plaintiffs in the Action have rendered and will render to the Settlement Class Members and PAGA Settlement Class Members. The payment of the Attorneys' Fees from out of the Total Settlement Amount will constitute full and complete compensation for all legal fees of all attorneys representing Plaintiffs in the Action (including McLaughlin & Stern LLP, Kralowec Law, P.C., the Law Offices of Louis Ginsberg, P.C., the Blanchard Law Group, APC, Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC) and all work done through the completion of the Action, whatever date that may be.

5. **Litigation Costs:** Class Counsel will also request up to $450,000 for the litigation costs all attorneys representing Plaintiffs in the Action have incurred and will incur in the investigation, litigation, and resolution of the Action. The payment of the Litigation Costs from out of the Total Settlement Amount will constitute full and complete compensation for all costs and expenses of all attorneys representing Plaintiffs in the Action (including McLaughlin & Stern LLP, Kralowec Law, P.C., the Law Offices of Louis Ginsberg, P.C., the Blanchard Law Group, APC, Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC).

6. **Settlement Administration Costs:** The reasonable costs of administering the Settlement, up to a maximum of $89,500, will be paid out of the Total Settlement Amount. The Court has appointed Angeion Group to act as an independent Settlement Administrator for purposes of administering this Settlement.

7. **PAGA Settlement Amount:** $448,500 of the Total Settlement Amount has been allocated to PAGA civil penalties.

8. **Net Settlement Amount:** The Net Settlement Amount means the Total Settlement Amount minus deductions for the Class Representative Payments, the Service Payment, the Attorneys' Fees, the Litigation Costs, the Settlement Administration Costs, and the PAGA Settlement Amount.

9. **Individual Class Payments:** Apple will pay the Net Settlement Amount to **Participating Settlement Class Members** Each Participating Settlement Class Member's share of the Net Settlement Amount

(the "**Individual Class Payment**") will be based on the number of individual shifts each worked for Apple at an Apple retail store in California during the Class Period. Each Individual Class Payment shall be calculated by dividing a Participating Settlement Class Member's individual shifts worked for Apple at an Apple retail store in California during the Class Period by the total of all shifts worked by Participating Settlement Class Members for Apple at an Apple retail store in California during the Class Period, and multiplying this result by the Net Settlement Amount. The Individual Class Payments will be allocated 20% as wages, 20% as interest, and 60% as penalties. The wage component of the Individual Class Payments shall be subject to W-2 reporting and shall be subject to deductions for employee-side employment and payroll taxes. The interest and penalty components of the Individual Class Payments will be subject to IRS Form 1099 reporting, if required by law, and will not be subject to deductions for employment and payroll taxes.

10. The Class Representative Payments, Service Payment, Attorneys' Fees, Litigation Costs, Settlement Administration Costs, PAGA Settlement Amount, and Individual Class Payments will be paid after the Court enters a Final Approval Order and the Judgment, all time for Settlement Class Members to appeal or challenge the Final Approval Order and the Judgment has lapsed, and the Final Approval Order and the Judgment remain enforceable (*i.e.*, the "**Effective Date**").

11. Any unclaimed funds resulting from Settlement Class Members' failure to cash Individual Class Payment checks and/or Individual PAGA Payment checks by the Void Date shall be transmitted by the Settlement Administrator to the California Alliance of Boys & Girls Clubs, Inc. ("**Boys & Girls Clubs**"), with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training. Any refunded employee-side payroll taxes corresponding to the wage component of any uncashed Individual Class Payment checks shall also be transmitted by the Settlement Administrator to the Boys & Girls Clubs, with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training. Any refunded employer-side payroll taxes corresponding to the wage component of any uncashed Individual Class Payment checks shall be returned to Apple.

12. If the Court does not grant final approval of the Settlement or if the Judgment does not become final and binding for any reason, then the Settlement will become null and void; if that occurs, neither Plaintiffs nor Apple will have further obligations under the Settlement, including any obligation by Apple to pay the Total Settlement Amount or any amounts that otherwise would have been owed under this Settlement. An award by the Court of a lesser amount than that sought by Plaintiffs and Class Counsel for the Class Representative Payments, Service Payment, Attorneys' Fees, Litigation Costs, PAGA Settlement Amount, or Settlement Administration Costs will not render the Settlement null and void.

## D.  HOW MUCH WILL I RECEIVE IF I PARTICIPATE IN THE CLASS SETTLEMENT?

Apple's records indicate that during the Class Period (*i.e.*, between July 25, 2009 and December 31, 2015), you worked a total of _____ shifts in a non-exempt position at an Apple retail store in California. Based on this information, it is estimated that your Individual Class Payment will be approximately $_____, assuming the Net Settlement Amount is $_____, after the deductions described above. Assuming the Court approves the Settlement and you do not exclude yourself from the Settlement, you do not need to do anything to receive a payment.

Apple's records also indicate that you are a PAGA Settlement Class Member because you worked as a non-exempt employee at an Apple retail store in California during some period between July 25, 2012 to

December 31, 2015 (the "**PAGA Period**"), and that during that time, you worked a total of ____ pay periods. Based on this information, it is estimated that you will receive an additional $____ as your *pro rata* share of the PAGA Settlement Amount. Assuming the Court approves the Settlement, you do not need to do anything to receive a payment.

## E. WHAT CLAIMS ARE RELEASED?

If you do not request to be excluded from the class action aspects of the Settlement, you will be a Participating Settlement Class Member and be unable to sue, continue to sue, or be a part of any other lawsuit against the Released Parties regarding the "Released Class Claims" in this Settlement. "**Released Parties**" means Apple and its subsidiaries, affiliates, and/or parent companies; the employee benefit plans sponsored or maintained by any of the foregoing; the respective successors and predecessors in interest of the foregoing; the officers, directors, employees, administrators, fiduciaries, trustees, beneficiaries, attorneys, and agents of the foregoing; and each of their past, present, and future officers, directors, shareholders, employees, agents, principals, representatives, accountants, auditors, consultants, insurers, and reinsurers.

**Released Class Claims:** Upon the Effective Date, Class Representatives – on behalf of themselves and Participating Settlement Class Members – will fully and irrevocably release the Released Parties from the **Class Claims** in exchange for the consideration provided by this Settlement.

"**Class Claims**" means any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for wages, benefits, and related penalties actually asserted or that could have been asserted in the Action by the Plaintiffs on behalf of themselves and/or the Settlement Class Members based on the facts alleged in Plaintiff Amanda Frlekin's November 12, 2013 notice letter to the Labor and Workforce Development Agency ("**LWDA**"), Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, and/or the original, amended, and/or Consolidated Complaint in the *Frlekin* Action, and/or the complaint in the *Kalin* Action (all of which are posted on the settlement website at www._____.com), including claims for: (i) failure to pay overtime and minimum wages pursuant to Labor Code §§ 204, 226.7, 510, 1194, 1194.2 and 1198 and the applicable Wage Order of the Industrial Welfare Commission; (ii) violation of California's Unfair Competition Law, California Business & Professions Code § 17200 et seq.; (iii) failure to provide and maintain accurate wage statements pursuant to Labor Code § 226 and the applicable Wage Order of the Industrial Welfare Commission; and (iv) failure to timely pay wages upon termination of employment pursuant to Labor Code §§ 201-204; and (v) attorneys' fees and costs incurred to prosecute the Action on behalf of Settlement Class Members. "Class Claims" also includes all claims that Plaintiffs and/or Settlement Class Members may have against the Released Parties relating to: (a) the payment, taxation, and allocation of Attorneys' Fees and Litigation Costs to Class Counsel pursuant to this Settlement Agreement; (b) the payment, taxation, and allocation of Class Representatives' Class Representative Payments and Plaintiff Amanda Frlekin's Service Payment pursuant to the Settlement Agreement; and (c) the payment, taxation, and allocation of payments to Participating Settlement Class Members. Notwithstanding the foregoing, "Class Claims" does not include the claims for failure to reimburse business expenses pursuant to Labor Code § 2802 or the claims for failure to pay for time spent waiting to clock in and time spent checking out company devices asserted in Plaintiff Taylor Kalin's October 1, 2013 notice letter to the LWDA, which were never pursued in the Consolidated Complaint filed in the Action, or claims for violation of Massachusetts, New York, or Ohio law, or the federal Fair Labor Standards Act, which the Court already dismissed with prejudice as to the individual plaintiffs who brought the non-California claims.

The Released Class Claims include a 1542 Waiver but only as to the specific Class Claims that were asserted in the Action, identified above. "**1542 Waiver**" means an express waiver, to the fullest extent permitted by

law, of the provisions, rights, and benefits of California Civil Code section 1542, which states: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Class Representatives and Participating Settlement Class Members may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Class Claims but, upon the Effective Date, Class Representatives and Participating Settlement Class Members shall be deemed to have – and by operation of the Final Approval Order and the Judgment shall have – fully, finally, and forever settled and released any and all of the Released Class Claims. It is the intent of the Parties that the Final Approval Order and the Judgment entered by the Court shall have full *res judicata* effect and be final and binding upon Class Representatives and Participating Settlement Class Members regarding the Released Class Claims. Indeed, the binding nature of the Settlement and the Released Class Claims shall have the same force and effect as if each Participating Settlement Class Member had executed the Settlement Agreement individually.

## F.  WHAT ARE MY RIGHTS AS A SETTLEMENT CLASS MEMBER?

1. **Participating in the Settlement:** You do not need to do anything to participate in this Settlement. and, if Final Approval is granted by the Court, be entitled to receive a pro rata share of the Net Settlement Amount. If you do not submit a valid and timely Request for Exclusion from the class action aspects of the Settlement, you will be bound by the terms of the Settlement and the Judgment entered by the Court, you will be deemed to have released the Released Class Claims against the Released Parties described above, and you will be entitled to receive a pro rata share of the Net Settlement Amount.

2. **Objecting to the Settlement:** You can ask the Court to deny approval of the Settlement by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the Action will continue. If that is what you want to happen, you must object.

   Any objection to the proposed Settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

   All written objections and supporting papers must be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, or by filing them in person at any location of the United States District Court for the Northern District of California. All written objections and supporting papers must: (a) contain your full name, address and last four digits of your social security number; (b) state the case name and number, *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA; the basis for the objection; and whether you intend to appear at the Final Approval Hearing; (c) be signed by you; and (d) be filed or postmarked on or before _____, 2022 (the "**Response Deadline**").

3. **Excluding Yourself from the Settlement:** If you do not wish to participate in the Individual Class Payment portion of the Settlement, you must submit a Request for Exclusion which must be completed, dated, signed by you, and returned to the Settlement Administrator by mail postmarked by the Response Deadline. Any Request for Exclusion must: (a) contain your full name, address, and last four digits of

your social security number; (b) be signed by you; and (c) state that you wish to exclude yourself from the Settlement of the "*Frlekin* case" or the "Apple bag check case."

If the Request for Exclusion does not contain the information listed in (a)-(c) or is not postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address, it will not be deemed a timely and valid Request for Exclusion. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a Request for Exclusion has been timely submitted. If you submit a timely and valid Request for Exclusion you will not be entitled to an Individual Class Payment and will not be bound by the release of the Released Class Claims. If you submit a timely and valid Request for Exclusion you will not have any right to object to, appeal, or comment on the Settlement.

If you choose to submit a Request for Exclusion, send your Request for Exclusion to the Settlement Administrator at the following address:

[Settlement Administrator]
[Address of Settlement Administrator]

If you do not submit a timely and valid Request for Exclusion on or before the Response Deadline you shall be deemed a Participating Class Members and will be bound by all terms of the Settlement and the Final Approval Order and the Judgment entered in this Action. There will be no retaliation or adverse action taken against any Settlement Class Member who participates in the Settlement or elects not to participate in the Settlement.

## G.  FINAL SETTLEMENT APPROVAL HEARING

The Court will hold a Final Approval Hearing on _____, 2022, at __:__ _.m., in Courtroom 12 on the 19th Floor of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve the requests for the Class Representative Payments, the Service Payment, the Attorneys' Fees, the Litigation Costs, the PAGA Settlement Amount, and the Settlement Administration Costs.

The Final Approval Hearing may be postponed without further notice to Class Members. **It is not necessary for you to appear at this hearing.** If you have submitted an objection, and indicated you intend to appear in the manner set forth above, you may appear at the hearing and be heard. You may check the settlement website at www._____.com or the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov to confirm that the Final Approval Hearing date has not been changed.

## H.  GETTING MORE INFORMATION

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, or if you have questions about the Settlement, please see the Settlement Agreement available at www._____.com, contact the Settlement Administrator (see below contact information), contact Class Counsel (see below contact information), or access the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.cand.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San

Francisco, California, 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

Settlement Administrator:
  Angeion Group, Inc.
  [Contact Information for Settlement Administrator]

Class Counsel:

Lee Shalov
lshalov@mclaughlinstern.com
Brett Gallaway
bgallaway@mclaughlinstern.com
Jason Scott Giaimo
jgiaimo@mclaughlinstern.com
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Tel:      (212) 448-1100

Kimberly A. Kralowec
kkralowec@kraloweclaw.com
Kathleen Styles Rogers
krogers@kraloweclaw.com
KRALOWEC LAW, P.C.
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:      (415) 546-6800

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

Dated: _____, 2021.

By Order of the Court

# EXHIBIT C

Lee Shalov (admitted *pro hac vice*)
lshalov@mclaughlinstern.com
Brett Gallaway (admitted *pro hac vice*)
bgallaway@mclaughlinstern.com
Jason Scott Giaimo (admitted *pro hac vice*)
jgiaimo@mclaughlinstern.com
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Tel:     (212) 448-1100
Fax:     (212) 448-0066

Kimberly A. Kralowec (CA Bar No. 163158)
kkralowec@kraloweclaw.com
Kathleen Styles Rogers (CA Bar No. 122853)
krogers@kraloweclaw.com
**KRALOWEC LAW, P.C.**
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:     (415) 546-6800
Fax:     (415) 546-6801

Attorneys for Plaintiffs and the Class

Julie Dunne (CA Bar No. 160544)
julie.dunne@us.dlapiper.com
Matthew Riley (CA Bar No. 257643)
matthew.riley@us.dlapiper.com
Vani Parti (CA Bar No. 308468)
vani.parti@us.dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, California 92101
Tel:     (619) 699-2700
Fax:     (619) 699-2701

Mandy Chan (CA Bar No. 305602)
mandy.chan@us.dlapiper.com
Andrea Ortega (CA Bar No. 317820)
andrea.ortega@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105
Tel:     (415) 836-2500
Fax:     (415) 836-2501

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER; AND TAYLOR KALIN, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>APPLE INC.,<br><br>                    Defendant. | Case No. 13cv03451-WHA (lead)<br>Case No. 13cv04727-WHA (consolidated)<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT AND NOTICE PROCEDURES** |

Plaintiffs Amanda Frlekin, Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher have filed a motion for preliminary approval of the Parties' Stipulation Regarding Class and Private Attorneys General Act Settlement and Release in the above-referenced, consolidated action. Plaintiffs' motion for preliminary approval came on regularly for hearing on _____, 2021, in Courtroom 12 on the 19th Floor of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William Alsup.

Plaintiffs were represented by their counsel, McLaughlin & Stern, LLP and Kralowec Law, P.C. (collectively, "Class Counsel"). Defendant Apple Inc. ("Defendant") was represented by its counsel, DLA Piper LLP (US).

Plaintiffs and Defendant have agreed, subject to Court approval following notice to the Settlement Class Members and a hearing, to settle the Action upon the terms and conditions set forth in the Settlement Agreement, which is attached as Exhibit 1 to the Joint Declaration of Lee Shalov and Kimberly A. Kralowec in support of Plaintiffs' motion for preliminary approval.

Based upon the Court's review of the Settlement Agreement, the moving papers submitted in support of preliminary approval, and all of the files, records, and proceedings herein, and in recognition of the Court's duty to make a preliminary determination as to the reasonableness of this proposed class action settlement and to ensure proper notice to all Settlement Class Members in accordance with due process requirements, the Court preliminarily finds: (1) the Settlement of the Class Claims was entered into in good faith and appears to be fair, reasonable, and adequate, such that the Parties should distribute notice of the Settlement to all Settlement Class Members, and a hearing regarding final approval of the Settlement should be set; and (2) the Settlement of the PAGA Claims appears consistent with PAGA's underlying purpose of benefitting the public. Accordingly, the Court **GRANTS** preliminary approval of the Parties' Settlement for the reasons stated below, and sets the below schedule for notice to Settlement Class Members and the Final Approval Hearing:

**THEREFORE, IT IS HEREBY ORDERED:**

1.      This Order incorporates by reference the definitions in the Settlement Agreement, and all terms defined therein shall have the same meaning in this Order.

2.      The Court finds that it has subject-matter jurisdiction over the Action and all acts

1

1   within the Action, and over all the Parties to the Action, including Plaintiffs, Defendant, the State

2   of California, Settlement Class Members, and PAGA Settlement Class Members.

3       3.    It appears to the Court on a preliminary basis that the Settlement is fair, reasonable,

4   and adequate. More specifically, it appears to the Court that counsel for the Parties have engaged in

5   extensive investigation, research, and discovery, such that Class Counsel and Defense Counsel are

6   able to reasonably evaluate their respective positions. The Court preliminarily finds that the

7   Settlement appears to be within the range of reasonableness of a settlement that could ultimately be

8   given final approval by this Court. Indeed, the Court has reviewed the monetary recovery that is

9   being granted as part of the Settlement and preliminarily finds that the monetary settlement awards

10  made available to all Settlement Class Members are fair, reasonable, and adequate when balanced

11  against the probable outcome of further litigation relating to liability and damages issues. The Court

12  further preliminarily finds that the relief provided for under PAGA is genuine, meaningful, and

13  consistent with PAGA's underlying purpose of benefitting the public. It further appears to the Court

14  that settlement, at this time, will avoid substantial additional costs by all Parties, as well as avoid

15  the delay and risks that would be presented by the further prosecution of the Action. It further

16  appears that the Settlement has been reached as a result of multiple, arms' length mediation sessions

17  before three different mediators at different phases of the Action.

18      4.    Additional factors weigh in favor of granting preliminary approval. The proposed

19  Settlement does not require Settlement Class Members to participate in a claims process in order to

20  claim their share of the Total Settlement Amount. Any funds not claimed will not revert to

21  Defendant, but will be paid to a cy pres recipient to be approved by the Court. The Parties have

22  proposed the California Alliance of Boys & Girls Clubs, Inc., with the funds designated to be used

23  in California for the Boys & Girls Clubs' Workforce Readiness program/job training. The Court

24  preliminary finds that the Parties' proposed cy pres recipient and funds designation are fair,

25  adequate, and reasonable.

26      5.    For the purposes of this Settlement only, the Court hereby provisionally modifies the

27  certified class definition to include the New Class Members, for a revised class definition

28  comprising the "Settlement Class Members," which means all Existing Class Members and all New

Class Members. "Existing Class Members" means all current and former non-exempt employees of Defendant who worked at an Apple retail store in California between July 25, 2009 and August 10, 2015 who were previously provided notice of the Action in 2015 and who did not opt out of the class. "New Class Members" means all individuals who began working as a non-exempt employee at an Apple retail store in California between August 3, 2015 and December 26, 2015 and to whom a notice of class certification was not mailed in 2015. The Court finds, for settlement purposes only, that the elements of Federal Rule of Civil Procedure 23 are satisfied as to the New Class Members, including that the New Class Members are so numerous that joinder of all of them is impracticable, there are common questions of law or fact common to the New Class Members, the claims of the Class Representatives are typical of the claims of the New Class Members, the Class Representatives will fairly and adequately protect the interests of the New Class Members, the questions of law or fact common to New Class Members predominate any questions affecting only individual New Class Members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Should for whatever reason the Settlement not become final, the fact that the Parties were willing to stipulate to certification of the Class Claims on behalf of New Class Members as part of the Settlement shall have no bearing on, nor be admissible in connection with, the issue of whether a class of such individuals should be certified in a non-settlement context in this Action or in any other lawsuit.

6.     The Court previously appointed Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher to serve as representatives of the Existing Class Members. (ECF No. 297.) For purposes of this Settlement, the Court also preliminarily appoints Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher to serve as representatives of New Class Members who do not opt out of the Settlement by the Response Deadline.

7.     The Court previously appointed McLaughlin & Stern, LLP and Kralowec Law, P.C. to serve as Class Counsel for the Existing Class Members, with Lee Shalov of McLaughlin & Stern, LLP designated as Lead Counsel for the Existing Class Members. For purposes of this Settlement, the Court also preliminarily appoints McLaughlin & Stern, LLP and Kralowec Law, P.C. to serve as Class Counsel for the New Class Members who do not opt out of the Settlement by the Response

3

Deadline, with Lee Shalov of McLaughlin & Stern, LLP designated as Lead Counsel for the New Class Members who do not opt out of the Settlement by the Response Deadline. Class Counsel is authorized to represent and bind the Plaintiffs and Settlement Class Members with respect to all acts or consents required by this Order. Any Settlement Class Member may enter an appearance through counsel of such individual's own choosing and at such individual's own expense. Any Settlement Class Member who does not enter an appearance or appear on his or her own will be represented by Class Counsel.

8.      The Court finds, based on Class Counsel's declaration, that Class Counsel has notified the California Labor and Workforce Development Agency ("LWDA") of the PAGA settlement in this action and provided a copy of the Settlement Agreement in compliance with California Labor Code section 2699(*l*).

9.      The Court finds that Defendant's notice of the proposed Settlement submitted to the Attorney General of the United States and the appropriate State officials fully and adequately complied with the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

10.     For the purposes of this Settlement, the Court hereby preliminarily approves the definition and disposition of the Total Settlement Amount and related matters provided for in the Settlement Agreement. In accordance with the Settlement Agreement, the Court hereby preliminarily approves the Total Settlement Amount of Twenty-Nine Million Nine Hundred Thousand Dollars ($29,900,000), which is the total, non-reversionary amount that Defendant shall be obligated to pay under the Settlement Agreement in order to settle the Action. Separately, Defendant shall also pay the employer's share of payroll taxes on the wage component of the Individual Class Payments. Any portion of the employer's share of payroll taxes refunded by state or federal taxing authorities as a result of uncashed Individual Class Payment checks shall be returned to Defendant.

11.     For the purposes of this Settlement, the Court hereby preliminary approves the Class Representative Payments to Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher in the amount of _____ Dollars ($_____) each in recognition of their role

4

in prosecuting the Action on behalf of Settlement Class Members and for providing a Complete and General Release to the Released Parties. The Court will decide the final amount of the Class Representative Payments at the Final Approval Hearing, and the Class Representative Payments will be paid from the Total Settlement Amount.

12.    For the purposes of this Settlement, the Court hereby preliminarily approves the Service Payment to Plaintiff Amanda Frlekin in the amount of _____ Dollars ($_____) in recognition of her time and effort in prosecuting the Action on behalf of Settlement Class Members, PAGA Settlement Class Members, and the State of California and for providing a Complete and General Release to the Released Parties. The Court will decide the final amount of the Service Payment at the Final Approval Hearing, and the Service Payment will be paid from the Total Settlement Amount.

13.    For purposes of this Settlement, the Court hereby preliminarily approves a payment of Attorneys' Fees of up to _____ Dollars ($_____) for the services the attorneys representing the Plaintiffs in the Action (including McLaughlin & Stern LLP, Kralowec Law, P.C., the Law Offices of Louis Ginsberg, P.C., the Blanchard Law Group, APC, Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC) have rendered and will render to the Plaintiffs, the Settlement Class Members and the PAGA Settlement Class Members. Except for Class Counsel's application for Attorneys' Fees as set forth above, neither Class Counsel, nor any other current or past counsel for Plaintiffs, shall be permitted to file or maintain an action in this Court or any other venue (including but not limited to another court, tribunal, or arbitrator) for, or to accept, any additional payments for attorneys' fees relating to this Action from Defendant or any other party. The Court will decide, and shall have exclusive jurisdiction regarding, the final amount and allocation of the Attorneys' Fees at the Final Approval Hearing, and the Attorneys' Fees will be paid from the Total Settlement Amount.

14.    For purposes of this Settlement, the Court hereby preliminarily approves a payment of Litigation Costs not to exceed a total of Four Hundred Thousand Five Hundred Dollars ($450,000) for the litigation costs all attorneys representing Plaintiffs in the Action (including McLaughlin & Stern LLP, Kralowec Law, P.C., the Law Offices of Louis Ginsberg, P.C., the

Blanchard Law Group, APC, Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC) have incurred and will incur in the investigation, litigation, and resolution of the Action. Except for Class Counsel's application for Litigation Costs as set forth above, neither Class Counsel, nor any other current or past counsel for Plaintiffs, shall be permitted to file or maintain an action in this Court or any other venue (including but not limited to another court, tribunal, or arbitrator) for, or to accept, any additional payments for costs relating to this Action from Defendant or any other party. The Court will decide, and shall have exclusive jurisdiction regarding, the final amount and allocation of the Litigation Costs at the Final Approval Hearing, and the Litigation Costs will be paid from the Total Settlement Amount.

15.     For purposes of this Settlement, the Court hereby preliminary approves a maximum payment of Eighty-Nine Thousand Five Hundred Dollars ($89,500) to the Settlement Administrator for third-party administration fees that are necessary to administer the Settlement ("Settlement Administration Costs"). The Court will decide the final Settlement Administration Costs at the Final Approval Hearing, and the Settlement Administration Costs will be paid from the Total Settlement Amount.

16.     For purposes of this Settlement, the Court hereby preliminarily approves the PAGA Settlement Amount as fair, reasonable, and adequate, and as providing genuine and meaningful relief that is consistent with PAGA's underlying purpose of benefitting the public. The Settlement Agreement provides that the PAGA Settlement Amount, which is Four Hundred Forty-Eight Thousand Five Hundred Dollars ($448,500), shall be allocated as follows: (a) seventy-five percent (75%) as a PAGA LWDA Payment to the LWDA; and (b) twenty-five percent (25%) as a PAGA Settlement Class Member Payment to the PAGA Settlement Class Members. The PAGA Settlement Amount shall resolve all claims for civil penalties under the PAGA for the PAGA Claims alleged in the Action. The Settlement Agreement provides that the PAGA Settlement Class Member Payments shall be distributed to PAGA Settlement Class Members on a *pro rata* basis based on the number of pay periods each worked for Defendant at an Apple retail store in California during the PAGA Period (July 25, 2012 through December 31, 2015). The Court preliminarily approves this proposed allocation and distribution of the PAGA Settlement Amount as fair, reasonable, and

6

1    adequate. The Court will decide the final PAGA Settlement Amount at the Final Approval Hearing,

2    and the PAGA Settlement Amount will be paid from the Total Settlement Amount.

3         17.    The Net Settlement Amount to be distributed to Participating Settlement Class

4    Members is the Total Settlement Amount minus deductions for the Class Representative Payments,

5    Service Payment, Attorneys' Fees, Litigation Costs, Settlement Administration Costs, and PAGA

6    Settlement Amount. The Settlement Agreement provides that the Individual Class Payments shall

7    be calculated by dividing a Participating Settlement Class Member's individual shifts worked for

8    Defendant at an Apple retail store in California during the Class Period by the total of all shifts

9    worked by all Participating Settlement Class Members for Defendant at an Apple retail store in

10   California during the Class Period, and multiplying this result by the Net Settlement Amount. The

11   Court finds that the Net Settlement Amount confers a substantial benefit to Settlement Class

12   Members. Absent this Settlement, each Existing Class Member would be required to submit a claim

13   form under penalty of perjury attesting to an estimate to the best of their recollection of any off-the-

14   clock time that she/he waited for and participated in uncompensated bag and/or technology checks.

15   (ECF No. 407 at ¶¶ 6-8.) Further, absent this Settlement, Defendant would be entitled to challenge

16   each claim submitted and could seek to depose each claimant who submits a challenged claim. (*Id.*

17   at ¶ 11.) In addition, Defendant raised several defenses which it alleges would negate Existing Class

18   Members' claims, which raises a further risk that Existing Class Members would have difficulty

19   proving their claims. Defendant has vigorously pursued all possible defenses throughout this Action.

20   Moreover, absent this Settlement, New Class Members may otherwise not be eligible to participate

21   in the Action at all. Accordingly, for purposes of this Settlement, the Court preliminarily approves

22   the Net Settlement Amount and the Individual Class Payments as fair, reasonable, and adequate.

23   The Court will ultimately decide the fairness and adequacy of the distribution of the Net Settlement

24   Amount at the Final Approval Hearing, and the Net Settlement Amount will be paid from the Total

25   Settlement Amount.

26        18.    The Court finds that – provided that all blanks/missing information is filled out – the

27   form and content of the proposed Notice of Settlement to Existing Class Members (attached to the

28   Settlement Agreement as Exhibit A) will fairly and adequately advise Existing Class Members of

the terms of the proposed Settlement, of the preliminary approval of the proposed Settlement, of their right to receive their share of the Total Settlement Amount, of the scope and effect of the Released Class Claims, of their rights relating to objecting to the Settlement, of the date of the Final Approval Hearing, and of their right to appear at the Final Approval Hearing. Thus, the Court finds that the Notice of Settlement to Existing Class Members comports with all constitutional requirements and the requirements of Rules 23(c)(2)(B) and 23(e)(1) of the Federal Rules of Civil Procedure, including those of due process. The Court further finds that the distribution of the Notice of Settlement to Existing Class Members as specifically described within the Settlement Agreement, with measures taken for verification of addresses, as set forth therein, constitutes a fair and effective method of providing notice of this Settlement.

19.    The Court finds that – provided that all blanks/missing information is filled out – the form and content of the proposed Notice of Settlement to New Class Members (attached to the Settlement Agreement as Exhibit B) will fairly and adequately advise New Class Members of the terms of the proposed Settlement, of the preliminary approval of the proposed Settlement, of their right to receive their share of the Total Settlement Amount, of the scope and effect of the Releases Class Claims, of their rights and obligations relating to opting out of or objecting to the Settlement, of the date of the Final Approval Hearing, and of their right to appear at the Final Approval Hearing. Thus, the Court finds that the Notice of Settlement to New Class Members comports with all constitutional requirements and the requirements of Rules 23(c)(2)(B) and 23(e)(1) of the Federal Rules of Civil Procedure, including those of due process. The Court further finds that the distribution of the Notice of Settlement to New Class Members as specifically described within the Settlement Agreement, with measures taken for verification of addresses, as set forth therein, constitutes a fair and effective method of providing notice of this Settlement.

20.    The Court hereby appoints Angeion Group as the Settlement Administrator to provide notice of the Settlement, as more specifically set forth in the Settlement Agreement.

21.    The Court understands that the Settlement includes a release of Class Claims. The Settlement Agreement provides that Class Representatives – on behalf of themselves and Participating Settlement Class Members – will fully and irrevocably release the Released Parties

8

from the Class Claims, as defined in the Settlement Agreement. Participating Settlement Class Members will release such Released Class Claims for the Class Period, *i.e.*, from July 25, 2009 through and including December 31, 2015. Participating Settlement Class Members may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Class Claims but, upon the Effective Date, Class Representatives and Participating Settlement Class Members shall be deemed to have – and by operation of the Final Approval Order and the Judgment shall have – fully, finally, and forever settled and released any and all of the Released Class Claims. In light of the consideration provided under the Settlement, the Court makes a preliminary finding that the release of the Released Class Claims is fair, reasonable, and adequate.

22.     The Court understands that the Settlement includes a release of PAGA Claims. The Settlement Agreement provides that Plaintiffs Taylor Kalin and Amanda Frlekin – on behalf of themselves, the State of California, and PAGA Settlement Class Members – will fully and irrevocably release the Released Parties from the PAGA Claims, as defined in the Settlement Agreement. Plaintiffs Taylor Kalin and Amanda Frlekin, the State of California, and PAGA Settlement Class Members will release such Released PAGA Claims for the PAGA Period, *i.e.*, from July 25, 2012 through and including December 31, 2015. Plaintiffs Taylor Kalin and Amanda Frlekin, the State of California, and PAGA Settlement Class Members may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released PAGA Claims, but upon the Effective Date, they shall be deemed to have – and by operation of the Final Approval Order and the Judgment shall have – fully, finally, and forever settled and released any and all of the Released PAGA Claims. In light of the consideration provided under the Settlement, the Court makes a preliminary finding that the release of the Released PAGA Claims is fair, adequate, and reasonable.

23.     The Court understands that, under the Settlement, Plaintiffs will provide a Complete and General Release, including a 1542 Waiver (as defined in the Settlement Agreement) to the Released Parties in consideration for the promises and payments set forth in the Settlement Agreement – including the Class Representative Payments and the Service Payment to which Class

9

Representatives and Plaintiff Amanda Frlekin are otherwise not entitled. Plaintiffs may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Complete and General Release, but upon the Effective Date, Plaintiffs shall be deemed to have – and by operation of the Final Approval Order and the Judgment shall have – fully, finally, and forever settled and released any and all of the claims covered by the Complete and General Release as of the date of their execution of the Settlement Agreement. In light of the considerations provided under the Settlement, the Court makes the preliminary finding that the Plaintiffs' Complete and General Release is fair, adequate, and reasonable.

24.     The Court understands that the Settlement provides for the following procedures, all of which the Court has considered and finds to be fair, adequate, and reasonable:

a.      No later than fifteen (15) calendar days after the date of this Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the Employee List, which shall include, for each Settlement Class Member: full name, last known address, last known telephone number, the work email address for Settlement Class Members currently employed by Defendant and the personal email address (if available) for Settlement Class Members who are no longer employed by Defendant, social security number, whether the Settlement Class Member is an Existing Class Member or a New Class Member, whether the Settlement Class Member is currently employed by Defendant, whether the Settlement Class Member is a PAGA Settlement Class Member, the number of shifts worked for Defendant in California during the Class Period, and the number of pay periods worked for Defendant in California during the PAGA Period.

b.      No later than twenty-one (21) calendar days after receipt of the Employee List from Defendant, the Settlement Administrator shall mail the Notice of Settlement attached to the Settlement Agreement as Exhibit A to all Existing Class Members and the Notice of Settlement attached as Exhibit B to the Settlement Agreement to all New Class Members by First Class U.S. Mail pursuant to the terms of the Settlement Agreement.

c.      No later than twenty-one (21) calendar days after receipt of the Employee List from Defendant, the Settlement Administrator shall email the Notice of Settlement attached to the Settlement Agreement as Exhibit A to Existing Class Members and the Notice of Settlement

10

attached as Exhibit B to the Settlement Agreement to New Class Members, at the email address for such individuals, if any, included in the Employee List.

d.    No later than twenty-one (21) calendar days after receipt of the Employee List from Defendant, the Settlement Administrator shall establish the Settlement website and post to the website copies of the Notices of Settlement and the other documents the Parties agreed to post on the website, as identified in the Settlement Agreement.

e.    New Class Members shall be given an opportunity to exclude themselves from the settlement of the Class Claims by submitting a Request for Exclusion. No later than the Response Deadline, which is sixty (60) calendar days after the Settlement Administrator mails and emails the Notices of Settlement to Settlement Class Members, any New Class Member requesting exclusion from the class action aspects of the Settlement must submit his/her Request for Exclusion by mail to the Settlement Administrator. To be valid, the Request for Exclusion must: (a) contain the full name, address, and last four digits of the social security number of the person requesting exclusion; (b) be signed by the person requesting exclusion; and (c) state that the person wishes to exclude himself/herself from the Settlement of the "*Frlekin* case" or the "Apple bag check case." If any Request for Exclusion does not contain the information listed in (a)-(c) or is not postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address, it will not be deemed a timely and valid Request for Exclusion. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a Request for Exclusion has been timely submitted. Any New Class Member who submits a timely and valid Request for Exclusion will not be entitled to an Individual Class Payment and will not be bound by the release of the Released Class Claims. Any New Class Member who submits a timely and valid Request for Exclusion will not have any right to object to, appeal, or comment on the Settlement. New Class Members who do not submit a timely and valid Request for Exclusion on or before the Response Deadline shall be deemed Participating Settlement Class Members and will be bound by all terms of the Settlement and the Final Approval Order and the Judgment entered in this Action. Under no circumstances will a New Class Member who has submitted a timely and valid Request for Exclusion be considered to have opted out of the PAGA aspects of the Settlement or the Released

11

1    PAGA Claims.

2           f.      Any Settlement Class Member wishing to object to the settlement of the Class

3    Claims must submit his/her objection to the Court by the Response Deadline. Notices of Objection

4    must be submitted to the Court either by mailing them to the Class Action Clerk, United States

5    District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco,

6    California, 94102, or by filing them in person at any location of the United States District Court for

7    the Northern District of California. To be valid, the Notice of Objection must: (a) contain the full

8    name, address and last four digits of the social security number of the Settlement Class Member; (b)

9    state the case name and number, *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA,

10   state the basis for the objection, and state whether the Settlement Class Member intends to appear

11   at the Final Approval Hearing; (c) be signed by the Settlement Class Member; and (d) be filed or

12   postmarked on or before the Response Deadline. If the Notice of Objection does not contain the

13   information listed in (a)-(c) and/or is not filed or postmarked by the Response Deadline, it will not

14   be deemed a timely and valid Notice of Objection to this Settlement. Settlement Class Members

15   who do not submit a timely and valid Notice of Objection shall be deemed to have waived any

16   objections and shall be foreclosed from making any objections to the Settlement. Settlement Class

17   Members who submit a timely and valid Notice of Objection will have a right to appear at the Final

18   Approval Hearing to have their objections heard by the Court.

19          25.     As of the date this Order is signed, all dates and deadlines associated with the Action

20   shall be stayed, other than those pertaining to the administration of the Settlement, to be re-set if

21   final approval is not granted. To the extent permitted by law, pending final determination as to

22   whether the Settlement should be finally approved, Settlement Class Members whether directly,

23   representatively, or in any other capacity, may not institute or prosecute any of the Released Class

24   Claims against the Released Parties. Nothing in this paragraph is intended to create a basis for

25   imposing monetary sanctions against Settlement Class Members, but rather is intended only to

26   prevent duplicative litigation.

27          26.     This Settlement is not a concession or admission and shall not be used against

28   Defendant or any of the Released Parties as an admission of liability with respect to the Class Claims

or PAGA Claims. Whether or not the Settlement is finally approved, neither the Settlement, nor any document, statement, proceeding, or conduct related to the Settlement, nor any reports or accounts thereof, shall in any event be: (a) construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Released Parties including, but not limited to, evidence of a presumption, concession, indication, or admission by Defendant or any of the Released Parties of any liability, fault, wrongdoing, omission, concession, or damage; or (b) disclosed, referred to, offered, or received in evidence against any of the Released Parties in any further proceeding in the Action, or in any other civil, criminal, or administrative action or proceeding, except for purposes of enforcing the Settlement.

27.     Class Counsel's motions for awards of the Class Representative Payments, the Service Payment, the Attorneys' Fees, and the Litigation Costs shall be filed no later than thirty (30) calendar days before the Response Deadline and shall be posted to the Settlement website within one (1) business day after filing. The Parties' briefs and other papers in support of final approval of the proposed Settlement, including responses to any objections to the Settlement, shall be filed with the Court no earlier than fourteen (14) calendar days after the Response Deadline and no later than thirty (30) calendar days after the Response Deadline.

28.     A Final Approval Hearing shall be held on _____, 2022 in Courtroom 12 on the 19th Floor of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, to determine whether the proposed Settlement of the Action is fair, reasonable, and adequate and should be finally approved. The Final Approval Hearing may be postponed, adjourned, transferred, or continued by order of the Court without further notice to Settlement Class Members. After the Final Approval Hearing, the Court may enter a Final Approval Order and the Judgment in accordance with the Settlement that will adjudicate the rights of all Settlement Class Members, PAGA Settlement Class Members, and the State of California.

29.     In the event that the proposed Settlement is not finally approved by the Court, or for any reason the Effective Date does not occur, then the Settlement and all orders entered in connection therewith shall be null and void and of no effect, and shall not be used or referred to for any purposes whatsoever, other than in connection with any further attempts to obtain approval of

13

a settlement in the Action. If the Settlement is not ultimately approved, the Settlement shall be withdrawn without prejudice as to the rights of the Parties thereto.

**IT IS SO ORDERED.**

DATED:_____, 2021

_____
Hon. William Alsup
United States District Judge

WEST/296620972

# EXHIBIT D

Lee Shalov (admitted *pro hac vice*)
lshalov@mclaughlinstern.com
Brett Gallaway (admitted *pro hac vice*)
bgallaway@mclaughlinstern.com
Jason Scott Giaimo (admitted *pro hac vice*)
jgiaimo@mclaughlinstern.com
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Tel:     (212) 448-1100
Fax:     (212) 448-0066

Kimberly A. Kralowec (CA Bar No. 163158)
kkralowec@kraloweclaw.com
Kathleen Styles Rogers (CA Bar No. 122853)
krogers@kraloweclaw.com
**KRALOWEC LAW, P.C.**
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:     (415) 546-6800
Fax:     (415) 546-6801

Attorneys for Plaintiffs and the Class

Julie Dunne (CA Bar No. 160544)
julie.dunne@us.dlapiper.com
Matthew Riley (CA Bar No. 257643)
matthew.riley@us.dlapiper.com
Vani Parti (CA Bar No. 308468)
vani.parti@us.dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, California 92101
Tel:     (619) 699-2700
Fax:     (619) 699-2701

Mandy Chan (CA Bar No. 305602)
mandy.chan@us.dlapiper.com
Andrea Ortega (CA Bar No. 317820)
andrea.ortega@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105
Tel:     (415) 836-2500
Fax:     (415) 836-2501

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER; AND TAYLOR KALIN, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>APPLE INC.,<br><br>              Defendant. | Case No. 13cv03451-WHA (lead)<br>Case No. 13cv04727-WHA (consolidated)<br><br>**[PROPOSED] FINAL APPROVAL ORDER** |

{N0364420.1}

Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher, on behalf of themselves and each of the Settlement Class Members, and Plaintiffs Amanda Frlekin and Taylor Kalin on behalf of themselves, the State of California, and the PAGA Settlement Class Members, have filed a motion for final approval of the Parties' Stipulation Regarding Class and Private Attorneys General Act Settlement and Release in the above-referenced consolidated action. Plaintiffs' motion for final approval came on regularly for hearing on _____, 2022, in Courtroom 12 on the 19th Floor of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William Alsup.

Plaintiffs and the Settlement Class Members were represented by their counsel, McLaughlin & Stern, LLP and Kralowec Law, P.C. Defendant Apple Inc. ("Defendant") was represented by its counsel, DLA Piper LLP (US).

The Court has: (1) reviewed and considered the terms and conditions of the proposed Settlement; (2) reviewed and considered the results of the Notices of Settlement mailed and emailed to Settlement Class Members in accordance with the Court's Order Granting Preliminary Approval of Class and Private Attorneys General Act Settlement and Notice Procedures entered on _____, 2021 (the "Preliminary Approval Order"); (3) reviewed and considered the motions for Attorneys' Fees, Litigation Costs, Class Representative Payments, and Service Payment and held a hearing on those motions; (4) held a Final Approval Hearing; (5) taken into account the presentations and other proceedings at the Final Approval Hearing; and (6) considered the Settlement in the context of all prior proceedings had in this Action.

Based thereon, the Court enters the following **FINDINGS** and **CONCLUSIONS**:

A.    Capitalized terms used in this Order that are not otherwise defined herein shall have the meaning assigned to them in the Settlement Agreement.

B.    The Court has subject-matter jurisdiction over the Action and all acts within the Action, and over all the Parties to the Action, including Plaintiffs, Defendant, the State of California, Settlement Class Members, and PAGA Settlement Class Members.

C.    In the Preliminary Approval Order, the Court conditionally modified the certified class definition to include the New Class Members for a revised class definition comprising the

"Settlement Class Members." In response to the Notices of Settlement, ____ New Class Members requested exclusion from the Settlement. Accordingly, the Court's order preliminarily approving modification of the class definition to include all New Class Members (except for the ____ New Class Members who opted out of the Settlement) is now finally certified for settlement purposes. Class Counsel and the appointed Class Representatives have fairly and adequately represented all Settlement Class Members for purposes of negotiating and seeking approval of the Settlement.

D.       Pursuant to the Preliminary Approval Order and according to the Declaration of _____, the appointed Settlement Administrator, Angeion Group, mailed by First Class U.S. Mail a Notice of Settlement in the form attached as Exhibit A to the Settlement Agreement to all Existing Class Members, and a Notice of Settlement in the form attached as Exhibit B to the Settlement Agreement to all New Class Members. The Settlement Administrator also emailed the Notice of Settlement attached to the Settlement Agreement as Exhibit A to Existing Class Members and the Notice of Settlement attached to the Settlement Agreement as Exhibit B to New Class Members, at the email address for such individuals, if any, included in the Employee List. The Notices of Settlement fairly and adequately advised Settlement Class Members of the terms of the proposed Settlement, of the preliminary approval of the proposed Settlement, of their right to receive their shares of the Total Settlement Amount, of the scope and effect of the Released Class Claims, of Settlement Class Members' rights relating to objecting to the Settlement, of New Class Members' rights relating to opting out of the Settlement, of the date of the Final Approval Hearing, and of Settlement Class Members' right to appear at the Final Approval Hearing. Settlement Class Members had adequate time to consider this information and to use the procedures identified in the Notices of Settlement. The Court finds and determines that this notice procedure afforded adequate protections to Settlement Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Settlement Class Members. The Court finds and determines that the Notices of Settlement provided to Settlement Class Members was the best notice practicable, which satisfied the requirements of law and due process.

E.       The Court finds that Plaintiffs' notice of the proposed Settlement submitted to the California Labor and Workforce Development Agency ("LWDA") was sufficient and valid pursuant

to California Labor Code section 2699(*l*). The LWDA has not filed any document related to this Action with the Court.

   F. The Court finds that Defendant's notice of the proposed Settlement submitted to the Attorney General of the United States and the appropriate State officials fully and adequately complied with the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Neither the Attorney General of the United States nor any State official filed any document related to this action with the Court.

   F. In response to the Notices of Settlement, _____ Settlement Class Members objected to the Settlement and _____ New Class Members requested exclusion from the Settlement.

   G. The Settlement is in all respects fair, reasonable, adequate, and proper, and in the best interests of the Settlement Class Members. In reaching this conclusion, the Court considered a number of factors, including: (1) the strength of Plaintiffs' claims; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of Class Counsel and Defense Counsel; and (6) the reaction of the Settlement Class Members to the proposed Settlement. The Court finds that the Settlement offers significant monetary recovery to all Participating Settlement Class Members, and finds that such recovery is fair, reasonable, and adequate when balanced against the risk of further litigation related to damages issues. The Court further finds that counsel for the Parties engaged in extensive investigation, research, and discovery such that Class Counsel and Defense Counsel were able to reasonably evaluate their respective positions at the time of settlement. The Court finds that the Settlement will avoid substantial additional costs by all Parties, as well as avoid the risks and delay inherent to further prosecution of the Action. The Court further finds that the Settlement has been reached as the result of serious and non-collusive arms-length negotiations. The Court further finds that the relief provided for under PAGA is genuine, meaningful, and consistent with PAGA's underlying purpose of benefitting the public. Thus, the Court finally approves the Settlement set forth in the Settlement Agreement and finds that the Settlement is, in all respects, fair, reasonable, and adequate. Accordingly, the Court directs the Parties to effectuate the Settlement according to its terms.

H.     Participating Settlement Class Members (as certified below) shall be subject to all of the provisions of the Settlement, the Settlement Agreement, and this Final Approval Order and the Judgment to be entered by the Clerk of the Court, as set forth herein, including with respect to the Released Class Claims.

On the basis of the foregoing findings and conclusions, as well as the submissions and proceedings referred to above, **NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED**:

1.     Plaintiffs' motion for final approval of the Settlement is **GRANTED**. The Settlement is hereby approved as fair, reasonable, adequate, and in the best interests of the Settlement Class Members, and the requirements of due process and Federal Rule of Civil Procedure 23 have been satisfied. The Parties are ordered and directed to effectuate the Settlement according to its terms.

2.     The Court, having found that each of the elements of Rule 23 are satisfied, certifies the following Class regarding the Class Claims: All current and former non-exempt employees of Defendant who worked at an Apple retail store in California between July 25, 2009 and August 10, 2015 who were previously provided notice of the Action in 2015 and who did not opt out of the class (*i.e.*, Existing Class Members), and all individuals who began working as a non-exempt employee at an Apple retail store in California between August 3, 2015 and December 26, 2015 and to whom a notice of class certification was not mailed in 2015 (*i.e.*, New Class Members).

3.     Plaintiffs' motion for approval of Settlement Administration Costs is **GRANTED**. For purposes of this Final Approval Order and this Settlement, the Court hereby confirms the appointment of Angeion Group as the Settlement Administrator to administer the Settlement as more specifically set forth in the Settlement Agreement, and further finally approves Settlement Administration Costs, as fair and reasonable, of _____ Dollars ($_____).

4.     For purposes of this Final Approval Order and this Settlement, the Court hereby confirms the appointment of Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher (all of whom were previously appointed as Class Representatives for the Existing Class Members) as the Class Representatives for the Settlement Class Members. Further, Plaintiffs' motion for approval of Class Representatives Payments is **GRANTED**. The Court finally approves

1   the Class Representative Payments, as fair and reasonable, to Plaintiffs Seth Dowling, Aaron

2   Gregoroff, Taylor Kalin, and Debra Speicher in the amount of _____ Dollars

3   ($_____) each, for the reasons stated in the Court's order granting motions for Attorneys' Fees,

4   Litigation Costs, Class Representative Payments, and Service Payment, issued herewith. The Court

5   hereby orders the Settlement Administrator to distribute the Class Representative Payments to the

6   Class Representatives in accordance with this Order and the provisions of the Settlement.

7       5.      Plaintiffs' motion for approval of the Service Payment is **GRANTED**. For purposes

8   of this Final Approval Order and this Settlement, the Court finally approves the Service Payment,

9   as fair and reasonable, to Plaintiff Amanda Frlekin in the amount of _____ Dollars

10  ($_____), for the reasons stated in the Court's order granting motions for Attorneys' Fees,

11  Litigation Costs, Class Representative Payments, and Service Payment, issued herewith. The Court

12  hereby orders the Settlement Administrator to distribute the Service Payment to Plaintiff Amanda

13  Frlekin in accordance with this Order and the provisions of the Settlement.

14      6.      For purposes of this Final Approval Order and this Settlement, the Court hereby

15  extends the appointment of Class Counsel McLaughlin & Stern, LLP and Kralowec Law P.C. (with

16  Lee Shalov of McLaughlin & Stern, LLP as Lead Counsel) to also represent the New Class

17  Members, such that Class Counsel represents all Settlement Class Members for purposes of the

18  Settlement. Further, Plaintiffs' motion for approval of Attorneys' Fees is **GRANTED**. The Court

19  finally approves the payment of Attorneys' Fees in the amount of _____ Dollars

20  ($_____) as fair and reasonable, for the reasons stated in the Court's order granting motions for

21  Attorneys' Fees, Litigation Costs, Class Representative Payments, and Service Payment, issued

22  herewith. The Attorneys' Fees shall fully satisfy all legal fees for all attorneys representing Plaintiffs

23  in the Action (including McLaughlin & Stern LLP; Kralowec Law, P.C.; the Law Office of Louis

24  Ginsberg, P.C.; the Blanchard Law Group, APC; Peter R. Dion-Kindem, P.C., and the Holmes Law

25  Group, APC). The issue of allocation of the Attorneys' Fees award is addressed in the Court's order

26  granting motions for Attorneys' Fees, Litigation Costs, Class Representative Payments, and Service

27  Payment, issued herewith. The Court's allocation of the Attorneys' Fees among the law firms that

28  have represented Plaintiffs in the Action shall not affect the total amount of Attorneys' Fees awarded

{N0364420.1}                                    5

1  in this case or require Defendant to pay more for Attorneys' Fees. No other attorneys or law firms

2  shall be entitled to any award of attorneys' fees from Defendant in any way connected with the

3  Action. The Court hereby orders the Settlement Administrator to distribute the Attorneys' Fees in

4  accordance with the provisions of this Order, the Court's order granting motions for Attorneys'

5  Fees, Litigation Costs, Class Representative Payments, and Service Payment, and the Settlement

6  Agreement.

7      7.    Plaintiffs' motion for approval of Litigation Costs is **GRANTED**. For purposes of

8  this Final Approval Order and this Settlement, the Court finally approves the payment of Litigation

9  Costs in the amount of _____ Dollars ($_____) as fair and reasonable, for the reasons

10  stated in the Court's order granting motions for Attorneys' Fees, Litigation Costs, Class

11  Representative Payments, and Service Payment, issued herewith. The Litigation Costs shall fully

12  satisfy all litigation costs incurred by the attorneys representing Plaintiffs in the Action (including

13  McLaughlin & Stern LLP; Kralowec Law, P.C.; the Law Office of Louis Ginsberg, P.C.; the

14  Blanchard Law Group, APC; Peter R. Dion-Kindem, P.C., and the Holmes Law Group, APC). The

15  issue of allocation of the Litigation Costs award is addressed in the Court's order granting motions

16  for Attorneys' Fees, Litigation Costs, Class Representative Payments, and Service Payment, issued

17  herewith. The Court's allocation of the Litigation Costs among the law firms that have represented

18  Plaintiffs in the Action shall not affect the total amount of Litigation Costs awarded in this case or

19  otherwise require Defendant to pay more for Litigation Costs. No other attorneys or law firms shall

20  be entitled to any award of costs from Defendant in any way connected with the Action. The Court

21  hereby orders the Settlement Administrator to distribute the Litigation Costs in accordance with the

22  provisions of this Order, the Court's order granting motions for Attorneys' Fees, Litigation Costs,

23  Class Representative Payments, and Service Payment, and the Settlement Agreement.

24      8.    For purposes of this Final Approval Order and this Settlement, the Court hereby

25  approves the PAGA Settlement Amount in the amount of Four Hundred Forty-Eight Thousand Five

26  Hundred Dollars ($448,500) as fair and reasonable. Pursuant to the terms of the Settlement

27  Agreement, seventy-five percent (75%) of the PAGA Settlement Amount (*i.e.*, $336,375) shall be

28  distributed to the LWDA and twenty-five percent (25%) of the PAGA Settlement Amount (*i.e.*,

$112,125) shall be distributed to the PAGA Settlement Class Members. Payment of the PAGA Settlement Amount shall resolve all claims for civil penalties under PAGA for the PAGA Claims alleged in the Action. The Court hereby orders the Settlement Administrator to distribute the PAGA LWDA Payment to the LWDA and to distribute the PAGA Settlement Class Member Payments to the PAGA Settlement Class Members in accordance with the provisions of this Order and the Settlement Agreement.

9. For purposes of this Final Approval Order and this Settlement, the Court hereby approves the Individual Class Payments in the aggregate amount of _____ Dollars ($_____) as fair, reasonable, and adequate. The Court hereby orders the Settlement Administrator to distribute the Individual Class Payments to Participating Settlement Class Members in accordance with the provisions of this Order and the Settlement Agreement.

10. Any checks issued to Participating Settlement Class Members or PAGA Settlement Class Members shall remain valid and negotiable for one hundred and eighty (180) calendar days from the date of their issuance and then shall become void on the 181st day after mailing, *i.e.*, the Void Date. Any re-mailed or re-issued check shall remain valid and negotiable for one hundred eighty (180) calendar days from the date the original check was mailed, or thirty (30) calendar days from the date the re-issued check is re-mailed, whichever date is later. Any unclaimed funds resulting from Settlement Class Members' failure to cash Individual Class Payment checks and/or Individual PAGA Payment checks by the Void Date shall be transmitted by the Settlement Administrator to the California Alliance of Boys & Girls Clubs, Inc. ("Boys & Girls Clubs"), with the funds designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training, within fourteen (14) calendar days of the Void Date. The Court approves the Boys & Girls Clubs as an appropriate recipient of these funds. Any refunded employee-side payroll taxes corresponding to the wage component of any uncashed Individual Class Payment checks shall be transmitted by the Settlement Administrator to the Boys & Girls Clubs with the funds designated to be used in California for Boys & Girls Clubs' Workforce Readiness program/job training, within fourteen (14) calendar days of the Settlement Administrator's receipt of the refunded employee-side payroll taxes. Any refunded employer-side payroll taxes corresponding to the wage component of

1  any uncashed Individual Class Payment checks shall be returned to Apple within fourteen (14)

2  calendar days of the Settlement Administrator's receipt of the refunded employer-side payroll taxes.

3        11.     As of the Effective Date, Plaintiffs Seth Dowling, Aaron Gregoroff, Amanda Frlekin,

4  Taylor Kalin, and Debra Speicher shall be deemed to have provided a Complete and General Release

5  to the Released Parties.

6        12.     As of the Effective Date, Plaintiffs Amanda Frlekin and Taylor Kalin – on behalf of

7  themselves, the State of California, and PAGA Settlement Class Members – shall be deemed to have

8  fully and irrevocably released the Released Parties from the PAGA Claims, as defined in the

9  Settlement Agreement. Plaintiffs Amanda Frlekin and Taylor Kalin, the State of California, and

10 PAGA Settlement Class Members will release such Released PAGA Claims for the PAGA Period,

11 *i.e.*, from July 25, 2012 through and including December 31, 2015. Plaintiffs Amanda Frlekin and

12 Taylor Kalin, the State of California, and PAGA Settlement Class Members may discover facts in

13 addition to or different from those they now know or believe to be true with respect to the subject

14 matter of the Released PAGA Claims, but upon the Effective Date, they shall be deemed to have –

15 and by operation of this Final Approval Order and the Judgment that will be entered concurrently

16 herewith, they shall have – fully, finally, and forever settled and released any and all of the Released

17 PAGA Claims. On behalf of the State of California and all PAGA Settlement Class Members,

18 Plaintiffs Amanda Frlekin and Taylor Kalin agree that, as of the Effective Date, Plaintiffs Amanda

19 Frlekin and Taylor Kalin, the State of California, and all PAGA Settlement Class Members are

20 hereby forever barred and enjoined from prosecuting the Released PAGA Claims against the

21 Released Parties. Nothing in this paragraph is intended to create a basis for imposing monetary

22 sanctions against Settlement Class Members, but rather is intended to confirm the finality of the

23 releases provided in the Settlement.

24       13.     As of the Effective Date, Class Representatives and each of the Participating

25 Settlement Class Members shall be deemed to have fully and irrevocably released the Released

26 Parties from the Class Claims, as defined in the Settlement Agreement. Participating Settlement

27 Class Members will release such Released Class Claims for the Class Period, *i.e.*, from July 25,

28 2009 through and including December 31, 2015. Class Representatives and Participating Settlement

Class Members may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Class Claims, but upon the Effective Date, they shall be deemed to have – and by operation of this Final Approval Order and the Judgment that will be entered concurrently herewith, they shall have – fully, finally, and forever settled and released any and all of the Released Class Claims. On behalf of all Participating Settlement Class Members, Class Representatives agree that, as of the Effective Date, Class Representatives and all Participating Settlement Class Members are hereby forever barred and enjoined from prosecuting the Released Class Claims against the Released Parties. Nothing in this paragraph is intended to create a basis for imposing monetary sanctions against Settlement Class Members, but rather is intended to confirm the finality of the releases provided in the Settlement.

14.     The terms of the Settlement Agreement, and this Final Approval Order and the Judgment that will be entered concurrently herewith, are binding on Plaintiffs, the State of California, Participating Settlement Class Members, and the PAGA Settlement Class Members, and those terms shall have, to the fullest extent permitted by law, *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of the State of California, Participating Settlement Class Members and PAGA Settlement Class Members, to the extent those claims, lawsuits or other proceedings fall within the scope of Released Class Claims and/or Released PAGA Claims as set forth in the Settlement Agreement.

15.     Neither this Final Approval Order, the Judgment, the Settlement Agreement, nor any document referred to herein, nor any action taken to carry out the Settlement Agreement is, may be construed as, or may be used as an admission by or against Defendant or any of the other Released Parties of any fault, wrongdoing, or liability whatsoever. Nor is this Final Approval Order or the Judgment a finding of the validity of any of the Class Claims or PAGA Claims in the Action or of any wrongdoing by Defendant or any of the other Released Parties. The entering into or carrying out of the Settlement Agreement, and any negotiations or proceedings related thereto, shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials or defenses by Defendant or any of the other Released Parties and shall not be offered in evidence against Defendant or any of the Released Parties in any action or proceeding in any court,

administrative agency or other tribunal for any purpose whatsoever other than to enforce the provisions of this Final Approval Order and the Judgment, the Settlement Agreement, or any related agreement or release. Notwithstanding these restrictions, any of the Released Parties may file in the Action or in any other proceeding this Final Approval Order, the Judgment, the Settlement Agreement, or any other papers and records on file in the Action as evidence of the Settlement and to support a defense of *res judicata*, collateral estoppel, release, waiver, or other theory of claim preclusion, issue preclusion, or similar defense.

16. In the event that the Settlement does not become final and effective in accordance with the terms of the Settlement Agreement, then this Final Approval Order, the Judgment and all orders entered in connection herewith, shall be rendered null and void and be vacated. Moreover, any funds tendered by Defendant shall be returned and/or retained by Defendant consistent with the terms of the Settlement.

17. Within twenty-one (21) calendar days after the Void Date, the Parties shall file with the Court and post to the Settlement Administrator's website a post-distribution accounting setting forth: (a) the Total Settlement Amount; (b) the total number of Settlement Class Members; (c) the total number of Settlement Class Members to whom a Notice of Settlement was sent and not returned as undeliverable; (d) the number and percentage of opt-outs; (e) the number and percentage of objections; (f) the average and median recovery per Participating Settlement Class Member; (g) the largest and smallest amounts paid to Participating Settlement Class Members; (h) the methods of notice and the method of payment to Settlement Class Members; (i) the number and value of checks not cashed; (j) the amounts distributed to the cy pres recipient; (k) the Settlement Administration Costs; (l) the Attorneys' Fees and Litigation Costs; and (m) the Attorneys' Fees in terms of percentage of the settlement fund, and the multiplier, if any.

18. The terms of the Settlement Agreement, and this Final Approval Order, and the Judgment that will be entered concurrently herewith, are binding on the Parties.

19. A compliance hearing is set for _____, 2022 at _____.

20. Judgment will be entered separately.

**IT IS SO ORDERED.**

1

2   DATED:_____, 2022

3

4   _____

5   Hon. William Alsup
    United States District Judge

6

7   WEST/296621341

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT E

Lee Shalov (admitted *pro hac vice*)
lshalov@mclaughlinstern.com
Brett Gallaway (admitted *pro hac vice*)
bgallaway@mclaughlinstern.com
Jason Scott Giaimo (admitted *pro hac vice*)
jgiaimo@mclaughlinstern.com
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Tel:     (212) 448-1100
Fax:     (212) 448-0066

Kimberly A. Kralowec (CA Bar No. 163158)
kkralowec@kraloweclaw.com
Kathleen Styles Rogers (CA Bar No. 122853)
krogers@kraloweclaw.com
**KRALOWEC LAW, P.C.**
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:     (415) 546-6800
Fax:     (415) 546-6801

Attorneys for Plaintiffs and the Class

Julie Dunne (CA Bar No. 160544)
julie.dunne@us.dlapiper.com
Matthew Riley (CA Bar No. 257643)
matthew.riley@us.dlapiper.com
Vani Parti (CA Bar No. 308468)
vani.parti@us.dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, California 92101
Tel:     (619) 699-2700
Fax:     (619) 699-2701

Mandy Chan (CA Bar No. 305602)
mandy.chan@us.dlapiper.com
Andrea Ortega (CA Bar No. 317820)
andrea.ortega@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105
Tel:     (415) 836-2500
Fax:     (415) 836-2501

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER; AND TAYLOR KALIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 13cv03451-WHA (lead)<br>Case No. 13cv04727-WHA (consolidated)<br><br>**[PROPOSED] JUDGMENT** |

{N0364417.1}

In the Court's Final Approval Order entered _____ (ECF No. ___), the Court granted Plaintiffs Seth Dowling, Amanda Frlekin, Aaron Gregoroff, Taylor Kalin, and Debra Speicher's motion for final approval of the parties' class action settlement agreement, and motions for: (a) Class Representative Payments to Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher; (b) a Service Payment to Plaintiff Amanda Frlekin; (c) Settlement Administration Costs; (d) Attorneys' Fees; and (e) Litigation Costs. Accordingly, the Court hereby enters final Judgment on the Class Claims of Plaintiffs Dowling, Gregoroff, Kalin and Speicher, and of the Participating Settlement Class Members, and on the PAGA Claims of Plaintiffs Frlekin and Kalin, the State of California, and the PAGA Settlement Class Members, pursuant to Federal Rule of Civil Procedure 54(b) and based on the findings, conclusions, and orders set forth in the Final Approval Order and the order granting motions for Attorneys' Fees, Litigation Costs, Class Representative Payments, and Service Payment. In addition, the Court's December 23, 2014 order dismissing with prejudice the claims of the individual plaintiffs arising under Massachusetts, New York, and Ohio law and under the Fair Labor Standards Act (ECF No. 214) is incorporated herein by reference. The Court enters final Judgment on the Massachusetts, New York, Ohio and federal claims of the individual plaintiffs who brought those non-California claims pursuant to the Court's prior dismissal order and Federal Rule of Civil Procedure 54(b) and based on the findings and conclusions set forth in the prior dismissal order. The Court determines that there is no just reason for delay of final Judgment with respect to these claims. Each party shall bear its own costs, other than as specified in the Settlement Agreement, the Final Approval Order, and the order granting motions for Attorneys' Fees, Litigation Costs, Class Representative Payments, and Service Payment.

Without affecting the finality of this Judgment in any way, this Court retains jurisdiction over: (a) the implementation of the Settlement and the terms of the Settlement Agreement; (b) the distribution of the Total Settlement Amount to Plaintiffs, Participating Settlement Class Members, PAGA Settlement Class Members, the Labor and Workforce Development Agency, Class Counsel and the other law firms that represented Plaintiffs during the litigation, the Settlement Administrator, and, as applicable, the agreed-upon cy pres recipient; and (c) all other proceedings related to the

implementation, interpretation, administration, consummation, and enforcement of the terms of the

Settlement Agreement.

The time to appeal from this final Judgment shall commence upon its entry.

**IT IS SO ORDERED.**

DATED:_____, 2022

_____
Hon. William Alsup
United States District Judge

WEST/296621348

# EXHIBIT F

## <u>NOTICE OF OUTSTANDING CHECK</u>

[date of mailing of reminder post cards]


On _____, 2022, a settlement payment check was mailed to you for the Apple Bag Check Litigation (*Frlekin v. Apple*) Settlement. That check will become void on _____, 2022. Please be sure to cash your check immediately.

If you already cashed your check, please disregard this notice.

If you did not receive your check, or if the check has been lost or destroyed, please contact the Settlement Administrator by emailing [insert settlement administrator's email address], or calling them at [insert settlement administrator's phone number] to make arrangements to have your settlement payment check reissued to you.

1

# EXHIBIT G

*INFORMATION SECURITY AND SERVICES AGREEMENT*
*Proprietary & Confidential*

**DATE: November 8, 2021**
**PROJECT NAME:** *Frlekin v. Apple Inc.* **Bag Check Class Action**
**REQUESTED BY: DLA Piper LLP (US) on behalf of Apple Inc.**

**SCOPE OF WORK & COST BREAKDOWN:**

**The scope of work (hereafter "Services") and cost breakdown for this agreement are reflected in the Angeion Group Project Proposal dated November 8, 2021 attached as Exhibit A.**

Angeion Group ("Angeion") agrees that Services performed shall be invoiced up to $89,500 as set forth in the attached Project Proposal (Exhibit A).

**TERMS AND CONDITIONS:**

1.   Services. Angeion agrees to perform the Services described in the above-referenced Project Proposal and this Information Security and Services Agreement (collectively, the "Agreement"). Apple Inc. ("Apple," and together with Angeion, the "Parties") represents and warrants to Angeion that Apple has reached a class action settlement with the plaintiffs in the consolidated class and Private Attorneys General Act lawsuits pending before the Court entitled *Amanda Frlekin, et al. v. Apple Inc.*, Case No. 13-cv-03451-WHA, and *Taylor Kalin v. Apple Inc.*, Case No. 13-cv-04727-WHA (the "Action"). Apple further represents that the parties to the Action have agreed, subject to the Court's approval, that Angeion shall administer the settlement. Angeion agrees to administer the settlement and be bound by the terms of the Protective Order (Dkt. 176, 177) entered by the Court on October 3, 2014 and attached as Exhibit B, and any other Court order relating to the Services.

2.   Price and Payment. Apple agrees to pay Angeion pursuant to the above-referenced Project Proposal and terms of payment contained herein. Any modifications to the Project Proposal shall be governed by the terms set forth in this Information Security and Services Agreement, and shall be subject to the Court's approval. Payment to Angeion for the Services rendered in administering the settlement shall be paid out of the settlement fund as directed by the Court's anticipated final approval order. In the event the settlement does not become final and binding, any costs already incurred by Angeion in administering the settlement (e.g., costs incurred in providing notice of the settlement to class members) shall be allocated between the Plaintiffs (50%) and Apple (50%) in equal shares.

3.   Confidentiality. Angeion acknowledges that it will have access to certain confidential and/or proprietary materials and information from Apple in connection with the Services, including the Employee List as defined in the settlement agreement between the plaintiffs and Apple (hereinafter, "Apple Confidential Information"). Angeion agrees that all Apple Confidential Information will remain the property of Apple along with any electronic or other versions of such Apple Confidential Information created by Angeion hereunder. All Apple Confidential Information

shall be maintained by Angeion for five years from the conclusion of the Action, unless Apple requests that the Apple Confidential Information be deleted and/or destroyed by Angeion at an earlier time. In addition to agreeing to the terms of the Protective Order attached as Exhibit B, Angeion represents and warrants that it will maintain the confidentiality of all Apple Confidential Information and will not sell, license, or provide Apple Confidential Information to any other person or entity without the express written consent of Apple. Angeion shall ensure that its employees, independent contractors and agents comply with the terms of this Agreement. Angeion's obligations under this paragraph shall survive termination of this Agreement.

Angeion shall maintain industry-standard best practices and physical controls, policies, procedures and systems necessary to protect Apple Confidential Information and keep such Apple Confidential Information confidential and safe from loss, theft and unauthorized access, copying, modification, use and disclosure. Angeion shall promptly notify Apple in writing as soon as possible without unreasonable delay, but in no event, no later than within 24 hours, upon learning of any breach, alleged breach, and/or ransom demand, of the system or network of Angeion (or third-party contractor) that results in the unauthorized access to, or loss, breach, damage, or theft of Apple Confidential Information, and take all such actions as are necessary to contain and/or remedy such breach. Angeion shall fully cooperate with Apple, at Angeion's expense, and assist Apple with any actions Apple may require of Angeion in connection with said breach. In the event that Apple is subject to any claims resulting from or arising out of such a breach, Angeion shall indemnify Apple in accordance with Section 5 of this Agreement.

4.    <u>Warranties</u>. Angeion warrants that Angeion's Services and work product hereunder will meet industry standards. Any Services or work product of Angeion which do not meet industry standards will be redone by Angeion at no additional charge. Apple must notify Angeion of any problems within 30 days of data delivery or Services performed. Angeion will make reasonable efforts to meet Apple deadlines but does not warrant meeting specific deadlines or the timeliness of completion of any project, except as ordered by the Court.

5.    <u>Indemnification</u>.

   a.   Angeion shall defend Apple, Plaintiffs Seth Dowling, Aaron Gregoroff, Taylor Kalin, and Debra Speicher (collectively, "Plaintiffs"), and Class Counsel (i.e., McLaughlin & Stern, LLP and Kralowec Law, P.C.) and hold Apple, Plaintiffs, and Class Counsel harmless against any third-party claim, action, expenses (including legal fees and costs), suit or proceeding arising out of (i) any breach of Angeion's representations, warranties, and/or covenants contained in this Agreement; or (ii) any claims arising out of the Services, including the obligations outlined in Section 3 above, other than claims due to the gross negligence or intentional conduct of Apple, Plaintiffs, or Class Counsel.

   b.   Apple shall defend Angeion and hold Angeion harmless against any third-party claim, action, expenses (including legal fees and costs), suit or proceeding arising out of (i) any breach of Apple's representations, warranties, and/or covenants contained in this

Agreement; or (ii) any claims arising out of the Services, including the obligations outlined in Section 3 above, due to the gross negligence or intentional conduct of Apple.

6.  <u>Termination</u>. Apple may terminate this Agreement prior to its scheduled completion, subject to the terms and conditions contained herein. Following preliminary approval of the settlement and the Court's order appointing Angeion to administer the settlement, Apple may terminate this Agreement only with approval of the Court. If Apple elects to terminate this Agreement, Apple shall provide at least 15 days' written notice to Angeion and to Class Counsel. Additionally, if this Agreement is terminated for convenience by Apple, Angeion will be paid by Apple an amount equal to the value of the Services provided prior to Angeion's receipt of such termination notice plus the unamortized project start-up costs incurred by Angeion.

7.  <u>Miscellaneous</u>. For purposes of this paragraph, "the Parties" includes Plaintiffs.

    a.  <u>Conflicts with Court Orders</u>. In the event of any conflict between this Agreement and any Court order, the Parties shall confer regarding any modifications that may be necessary.

    b.  <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties. No representations were made or relied on by either Party, other than those that are expressly set forth herein. This Agreement may only be amended by a writing signed by both Parties.

    c.  <u>Notices</u>. Notices by a Party under this Agreement shall be deemed given when the same shall have been mailed, provided the same is mailed registered or certified, return receipt requested, and the postage is prepaid, addressed to the other Party.

    d.  <u>Force Majeure</u>. The Parties hereto shall be excused for the period of any delay in the performance of any obligations hereunder when prevented from so doing by cause or causes beyond such Party's reasonable control, which shall include, without limitation, labor disputes, civil commotion, war, war-like operations, invasion, rebellion, hostilities, military or usurped power, sabotage, governmental regulations, controls, and/or shutdowns that directly impact the ordinary course of business, inability to obtain any required materials or services, fire or other casualty, or through an act of God.

    e.  <u>Modifications</u>. Any modifications to this Agreement shall be set forth in writing. Angeion will be promptly advised of any material changes to Apple's project specifications as such changes may affect the Services of Angeion hereunder.

    f.  <u>Jurisdiction and Venue</u>. The Parties agree that, with respect to any dispute arising under or in connection with this Agreement, the exclusive jurisdiction and venue shall reside with the United States District Court for the Northern District of California, and such appellate courts as have supervision thereover.

g.  <u>Choice of Law</u>. This Agreement, and all claims or causes of action (whether in contract, tort, or statute) that may be based upon, arise out of, or relate to this Agreement, or the negotiation, execution, or performance of this Agreement (including any claim or cause of action based upon, arising out of, or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement), shall be governed by, and enforced in accordance with, the internal laws of the State of California, including its statutes of limitations, without regard to conflict-of-law principles.

## **ACCEPTANCE AND AUTHORIZATION**

The terms and conditions set forth herein shall become effective upon the execution of this Agreement by Apple, Angeion, and Lead Counsel for Plaintiffs.

Company:     Apple Inc.

Name:        Kwang Kim

Position:    Employment Counsel

Signature:   _____

Date:        11/11/21


Company:     Angeion Group

Name:        Steven Weisbrot, Esq.

Position:    Partner

Signature:   _____

Date:        _____


Company:     McLaughlin & Stern LLP, Lead Counsel for Plaintiffs

Name:        Lee Shalov, Esq.

Position:    Partner

Signature:   _____

Date:        _____

g.  Choice of Law. This Agreement, and all claims or causes of action (whether in contract, tort, or statute) that may be based upon, arise out of, or relate to this Agreement, or the negotiation, execution, or performance of this Agreement (including any claim or cause of action based upon, arising out of, or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement), shall be governed by, and enforced in accordance with, the internal laws of the State of California, including its statutes of limitations, without regard to conflict-of-law principles.

## ACCEPTANCE AND AUTHORIZATION

The terms and conditions set forth herein shall become effective upon the execution of this Agreement by Apple, Angeion, and Lead Counsel for Plaintiffs.

Company:   Apple Inc.

Name:   _____

Position:   _____

Signature:   _____

Date:   _____


Company:   Angeion Group

Name:   Steven Weisbrot, Esq.

Position:   Partner

Signature:   *Stm M. West*

Date:   11/09/2021


Company:   McLaughlin & Stern LLP, Lead Counsel for Plaintiffs

Name:   Lee Shalov, Esq.

Position:   Partner

Signature:   *Lee J. Shalov*

Date:   11/11/21

# EXHIBIT A
# [PROJECT PROPOSAL]

## Angeion Group Project Proposal Schedule of Fees and Charges

**Case/Project Name:** *Frlekin v. Apple*  **-- Settlement Notice**
**Type of Project:** **Employment**
**Submission Date:** **June 25, 2021 - REV.11 08 21**
**Firm(s) Submitted to:** **DLA Piper**
**Firm(s) Contact:** **Julie Dunne, Esq. & Matthew Riley, Esq.**
**Angeion Representative:** **Steven Weisbrot, Esq.**



### Core Assumptions

| | |
|---|---|
| Class Size | *14,683 (13,884 existing and 799 new)* |
| Duration | *12 months* |
| Notice Format | *Email & 5-page notice package* |
| Number of Email Notices | *6,600* |
| Number of Mailed Notices | *14,683* |
| Pct. of Undeliverable Mail | *10%* |
| Website | *Yes* |
| Telephone Support | *Yes, IVR with Voicemail* |
| Distribution | *check (W-2, 1099-MISC & INT)* |
| Worked-in States | *1 (California)* |
| Uncashed checks | *Cy pres* |

### Notification Fees & Costs

| Email Notice Notice* | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Set up, formatting and proofing the email notice (English only) | 1 | Per Hour | 150.00 | 150.00 |
| Generate the list of applicable email addresses, standardizing and validating the email addresses | 1 | Per Hour | 140.00 | 140.00 |
| Email blast setup fee | 1 | One-Time Fee | 950.00 | 950.00 |
| Release email blast to class members whose email address was obtained | 6,600 | Per Email | 0.08 | 528.00 |
| | | | **SUBTOTAL** | **1,768.00** |

| Mail to class members | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Set up, formatting and proofing the notice (***assumed 6 pages, additional variable field***) | 1 | Per Hour | 150.00 | 150.00 |
| Award/work week calculations, generate the list of applicable addresses and standardizing the list | 1 | Per Hour | 140.00 | 140.00 |
| NCOA (National Change of Address) | 1 | One-Time Fee | 195.00 | 195.00 |
| Printing the Notice | 14,683 | Per Notice | 0.42 | 6,166.86 |
| Postage estimate for Notices* | 14,683 | Per Notice | 0.465 | 6,827.60 |
| | | | **SUBTOTAL** | **13,479.46** |

| Processing Undeliverable Direct Mail Notices | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Process notices returned as undeliverable (est. @ 10%) | 1,469 | Per Notice | 0.75 | 1,101.75 |
| Residential Address Verification (Skip tracing) assuming a 60% hit rate | 882 | Per Hit | 0.30 | 264.60 |
| Print returned notices & notices that have a forwarding address (est. @ 1%) | 897 | Per Notice | 1.20 | 1,076.40 |
| Postage estimate for remailing returned notices to a new address* | 897 | Per Notice | 0.53 | 475.41 |
| | | | **SUBTOTAL** | **2,918.16** |

PROPRIETARY AND CONFIDENTIAL (PAGE 1)

## Angeion Group Project Proposal Schedule of Fees and Charges

**Case/Project Name:** *Frlekin v. Apple* **-- Settlement Notice**
**Type of Project:** **Employment**
**Submission Date:** **June 25, 2021 - REV.11 08 21**
**Firm(s) Submitted to:** **DLA Piper**
**Firm(s) Contact:** **Julie Dunne, Esq. & Matthew Riley, Esq.**
**Angeion Representative:** **Steven Weisbrot, Esq.**



| Processing Notice Requests and Class Member | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Receive and respond to requests for Long Form Notice (includes | 15 | Per Notice | 2.50 | 37.50 |
| Class member correspondence (returning emails and speaking to class members on the phone). | 20 | Per Hour | 65.00 | 1,300.00 |
| Special Letters to class members including project management time | - | Per Letter | 5.00 | - |
| Postage estimate for claimant responses & request for Notice* | 15 | Per Notice/Letter | 0.53 | 7.95 |
| | | **SUBTOTAL** | | **1,345.45** |

| Website Requirements | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Set-up fee for Angeion Group website w/relevant case documents | 1 | One-Time Fee | 1,950.00 | 1,950.00 |
| Monthly maintenance/monthly hosting | 12 | Per Month | 165.00 | 1,980.00 |
| Revisions to website subsequent to set-up | 1 | Per Hour | 160.00 | 160.00 |
| Additional programming time for online claims filing or other programming requirements | - | Per Hour | 200.00 | - |
| | | **SUBTOTAL** | | **4,090.00** |

| Call Center Requirements | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Set-up, design and implementation of IVR (Integrated Voice Response) | 1 | One-Time Fee | 950.00 | 950.00 |
| "IVR" Operating System (estimated number of minutes) | 2,500 | Per Minute | 0.18 | 450.00 |
| Monthly Maintenance Fee is $55.00 if minimum usage time does not meet threshold | - | Per Month | 55.00 | - |
| Transcription Services (regular reporting) for address updates, call backs and notice requests | 1 | One-Time Fee | 450.00 | 450.00 |
| Per Transcription | 50 | Per Trans. | 2.00 | 100.00 |
| | | **SUBTOTAL** | | **1,950.00** |

| Angeion Reporting & Dispute Resolution Requirements | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Drafting court documents, resolving disputes, affidavits, status reports and opt out reports to counsel. | 15 | Per Hour | 135.00 | 2,025.00 |
| Additional reporting (e.g. class member address updates & other class member reporting reqs.) | 2 | Per Hour | 75.00 | 150.00 |
| | | **SUBTOTAL** | | **2,175.00** |

| Process Opt Outs and Objections | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Review and process Opt Outs and Objections received | 4 | Per Form | 6.50 | 26.00 |
| | | **SUBTOTAL** | | **26.00** |

## Angeion Group Project Proposal Schedule of Fees and Charges

**Case/Project Name:** *Frlekin v. Apple* **-- Settlement Notice**
**Type of Project:** **Employment**
**Submission Date:** **June 25, 2021 - REV.11 08 21**
**Firm(s) Submitted to:** **DLA Piper**
**Firm(s) Contact:** **Julie Dunne, Esq. & Matthew Riley, Esq.**
**Angeion Representative:** **Steven Weisbrot, Esq.**



| Distribution and Post Distribution | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| *Assumes Counsel will provide settlement calculations. Settlement paid as wages, 1099-MISC and 1099-INT* | | | | |
| Generate Distribution list & Post Distribution Services | 10 | Per Hour | 100.00 | 1,000.00 |
| Settlement Calculations (estimated number of hours) - employer payroll tax calculations | 2 | Per Hour | 125.00 | 250.00 |
| Checks to Eligible Class Members | 14,107 | Per Check | 1.05 | 14,812.35 |
| Postage estimate for mailing checks* | 14,107 | Per Check | 0.465 | 6,559.76 |
| Process checks returned as undeliverable (includes data entry) | 141 | Per Check | 1.50 | 211.50 |
| Address Verification (Skip tracing) assuming a 90% hit rate | 127 | Per Hit | 1.00 | 127.00 |
| Print reissued checks (sent in 2 to 3 batches) | 127 | Per Check | 5.00 | 635.00 |
| Postage estimate for mailing reissued checks* | 127 | Per Check | 0.53 | 67.31 |
| TIN Matching | 2 | Per Hour | 75.00 | 150.00 |
| | | | **SUBTOTAL** | **23,812.92** |

| Reminder Postcards for Class Members with Uncashed Checks (90 days after initial check) | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Set up, formatting and proofing the postcard check cashing reminder | 1 | Per Hour | 150.00 | 150.00 |
| Generate the list of applicable addresses and standardizing the list | 1 | Per Hour | 140.00 | 140.00 |
| Printing the reminder postcard - *assumes 20% of checks are uncashed* | 2,821 | Per Postcard | 0.45 | 1,269.45 |
| Postage estimate for mailing reminder postcards* | 2,821 | Per Postcard | 0.40 | 1,128.40 |
| Process notices returned as undeliverable | 42 | Per Notice | 0.75 | 31.50 |
| Residential Address Verification (Skip tracing) assuming a 60% hit rate | 26 | Per Hit | 0.30 | 7.80 |
| Print returned reminder notices & notices that have a forwarding address (est. @ 1%) | 27 | Per Notice | 1.75 | 47.25 |
| Postage estimate for remailing returned notices to a new address* | 27 | Per Notice | 0.40 | 10.80 |
| | | | **SUBTOTAL** | **2,785.20** |

| Tax Return | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Tax return for the QSF | 1 | Per Return | 1,950.00 | 1,950.00 |
| State & Federal Registrations for California and W2's | 1 | One-Time Fee | 875.00 | 875.00 |
| *(Additional state registrations in excess of 1)* | - | Per State | 125.00 | - |
| Printing tax forms *(combine W2 and 1099, where applicable, in a single mailing)* | 11,979 | Per Form | 1.00 | 11,979.05 |
| Postage estimate for tax forms, blended postage rate* | 11,979 | Per Form | 0.465 | 5,570.26 |
| Process undeliverable tax forms (includes data entry) | - | Per Check | 0.75 | - |
| Re-issue tax forms, as required | - | Per Form | 5.00 | - |
| *Cy pres* distribution | 2 | Per Hour | 150.00 | 300.00 |
| | | | **SUBTOTAL** | **20,674.31** |

## Angeion Group Project Proposal Schedule of Fees and Charges

**Case/Project Name:**         *Frlekin v. Apple*  **-- Settlement Notice**
**Type of Project:**           **Employment**
**Submission Date:**           **June 25, 2021 - REV.11 08 21**
**Firm(s) Submitted to:**      **DLA Piper**
**Firm(s) Contact:**           **Julie Dunne, Esq. & Matthew Riley, Esq.**
**Angeion Representative:**    **Steven Weisbrot, Esq.**



| Other Relevant Costs | VOLUME | RATE ($) | TOTAL ($) |
|---|---|---|---|
| Sales tax if applicable | | Estimated | |
| P.O. Box for Opt Outs & Objections | 3 | Per Month | 75.00 | 225.00 |
| Photocopying | | NO CHARGE | NO CHARGE |
| Scanning of all documents | 219 | Per Page | 0.08 | 17.52 |
| Document Storage (estimated for 18 months) (estimate 2500 documents per bankers box) | 1 | Per Box/Month | 1.95 | 23.40 |
| Image Storage (estimated for 18 months) | 219 | Per Image/Month | 0.009 | 23.64 |
| | | **SUBTOTAL** | **289.56** |

**ESTIMATED PROJECT FEES & COSTS (excl. postage)**                          **54,667**
**ESTIMATED POSTAGE COSTS**                                                   **20,647**
**TOTAL ESTIMATED COSTS**                                                     **75,314**
**NOT TO EXCEED TOTAL COSTS**                                                 **89,500**

Email notice, self-mailer notice, and check printing costs are an estimate and are based upon volume, number of pages or other parameters.  Pricing may increase or decrease if the volume, number of pages or other variable factors are altered.

The pricing for check printing in this proposal only accounts for printing on the front side of checks.  If additional language is required to be printed on the back side of checks (i.e. release language) there will be additional costs.

The estimated hours listed in this proposal for services performed are minimum hourly estimates.  Any additional time will be billed at the rates quoted in this proposal.

* Postage is an estimate.

** Banking fees associated with distribution related accounts may be charged.

# EXHIBIT B
# [PROTECTIVE ORDER]

**United States District Court**
For the Northern District of California

1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10  AMANDA FRLEKIN, *et al.*,

11               Plaintiffs,                    No. C 13-03451 WHA
                                                    C 13-03775 WHA
12     v.

13  APPLE, INC.,                          **ORDER APPROVING
                                           STIPULATED PROTECTIVE
14               Defendant.                 ORDER SUBJECT TO
    _____/       STATED CONDITIONS**

15

16  ADAM KILKER, *et al.*,

17               Plaintiffs,

18     v.

19  APPLE, INC.,

20               Defendant.
    _____/

21

22        The stipulated protective order submitted by the parties is hereby **APPROVED**, subject to

23  the following conditions, including adherence to the Ninth Circuit's strict caution against sealing

24  orders (as set out below):

25        1.       The parties must make a good-faith determination that any

26  information designated "confidential" truly warrants protection under Rule 26(c)

27  of the Federal Rules of Civil Procedure.  Designations of material as

28  "confidential" must be narrowly tailored to include only material for which there

is good cause.  A pattern of over-designation may lead to an order un-designating all or most materials on a wholesale basis.

2.     In order to be treated as confidential, any materials filed with the Court must be lodged with a request for filing under seal in compliance with Civil Local Rule 79-5.  Please limit your requests for sealing to only those narrowly tailored portions of materials for which good cause to seal exists.  Please include all other portions of your materials in the public file and clearly indicate therein where material has been redacted and sealed.  Each filing requires an individualized sealing order; blanket prospective authorizations are no longer allowed by Civil Local Rule 79-5.

3.     Chambers copies should include all material — both redacted and unredacted — so that chambers staff does not have to reassemble the whole brief or declaration.  All chambers copies more than two-inches thick shall include tabs.  Although chambers copies should clearly designate which portions are confidential, chambers copies with confidential materials will be handled like all other chambers copies of materials without special restriction, and will typically be recycled, not shredded.

4.     In *Kamakana v. Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), the Ninth Circuit held that *more* than good cause, indeed, "compelling reasons" are required to seal documents used in dispositive motions, just as compelling reasons would be needed to justify a closure of a courtroom during trial.  Otherwise, the Ninth Circuit held, public access to the work of the courts will be unduly compromised.  Therefore, no request for a sealing order will be allowed on summary judgment motions (or other dispositive motions) unless the movant first shows a "compelling reason," a substantially higher standard than "good cause."  This will be true regardless of any stipulation by the parties.  *Counsel are warned that most summary judgment motions and supporting material should be completely open to public view.*  Only social security numbers, names of juveniles, home addresses and

United States District Court

For the Northern District of California

1   phone numbers, and trade secrets of a compelling nature (like the recipe for Coca
2   Cola, for example) will qualify.  If the courtroom would not be closed for the
3   information, nor should any summary judgment proceedings, which are, in effect, a
4   substitute for trial.  Motions *in limine* are also part of the trial and must likewise be
5   laid bare absent compelling reasons.  Please comply fully.  Noncompliant
6   submissions are liable to be stricken in their entirety.

7       5.      Any confidential materials used openly in court hearings or trial will
8   not be treated in any special manner absent a further order.

9       6.      This order does not preclude any party from moving to undesignate
10  information or documents that have been designated as confidential.  The party
11  seeking to designate material as confidential has the burden of establishing that the
12  material is entitled to protection.

13      7.      The Court will retain jurisdiction over disputes arising from the
14  proposed and stipulated protective order for only **NINETY DAYS** after final
15  termination of the action.

16

17      **IT IS SO ORDERED.**

18

19  Dated:   October 3, 2014.

                                    WILLIAM ALSUP
20                                  UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

3

1  [COUNSEL LISTED ON FOLLOWING PAGE]

2

3

4

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT FOR THE

11                       NORTHERN DISTRICT OF CALIFORNIA

12   AMANDA FRLEKIN, *et al.*,              Lead Case No.  C 13-03451 WHA;
                                            Consolidated Case No.  C 13-3775-WHA
13                      Plaintiffs,
                                            **STIPULATED PROTECTIVE ORDER**
14          v.

15   APPLE INC.,

16                      Defendant.

17   ADAM KILKER, *et al.*,                 Judge:      Hon. William H. Alsup
                                            Courtroom:  8
18                      Plaintiffs,

19          v.

20   APPLE INC.,

21                      Defendant.

22

23

24

25

26

27

28

1  Kimberly A. Kralowec, Bar No. 163158
   kkralowec@kraloweclaw.com
2  Kathleen Styles Rogers, Bar No. 122853
   krogers@kraloweclaw.com
3  THE KRALOWEC LAW GROUP
   180 Montgomery Street, Suite 2000
4  San Francisco, CA 94104
   Telephone:     415.545.6800
5  Facsimile:     415.546.6801

6  Lee S. Shalov (admitted *pro hac vice*)
   lshalov@mclaughlinstern.com
7  Brett Gallaway (admitted *pro hac vice*)
   bgallaway@mclaughlinstern.com
8  McLAUGHLIN & STERN, LLP
   260 Madison Avenue
9  New York, NY 10016
   Telephone:     212.448.1100
10 Facsimile:     212.448.0066

11 Louis Ginsberg (admitted *pro hac vice*)
   lg@louisginsberglawoffices.com
12 LAW FIRM OF LOUIS GINSBERG, P.C.
   1613 Northern Blvd.
13 Roslyn, NY 11576
   Telephone: 516.6250105 x13
14
   Attorneys for Plaintiffs AMANDA FRLEKIN, DEAN PELLE,
15 ADAM KILKER and BRANDON FISHER

16 Julie A. Dunne, Bar No. 160544
   jdunne@littler.com
17 LITTLER MENDELSON, P.C.
   501 W. Broadway, Suite 900
18 San Diego, California  92101
   Telephone:     619.232.0441
19 Facsimile:     619.232.4302

20 Todd K. Boyer, Bar No. 203132
   tboyer@littler.com
21 LITTLER MENDELSON, P.C.
   50 W. San Fernando, 15th Floor
22 San Jose, California  95113.2303
   Telephone:     408.998.4150
23 Facsimile:     408.288.5686

24 Joshua D. Kienitz, Bar No. 244903
   jkienitz@littler.com
25 LITTLER MENDELSON, P.C.
   650 California Street, 20th Floor
26 San Francisco, CA  94108
   Telephone:     415.399.8451
27 Facsimile:     415.358.4566
   Attorneys for Defendant APPLE INC.
28

STIPULATED PROTECTIVE ORDER

Case Nos. 13-cv-03451 WHA
Consolidate Case No. 13-cv-3775-WHA

## STIPULATION FOR PROTECTIVE ORDER
### REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS

Plaintiffs AMANDA FRLEKIN, DEAN PELLE, ADAM KILKER and BRANDON FISHER (collectively "Plaintiffs)" and Defendant APPLE INC. ("Apple"), by and through their respective counsel of record, hereby enter into the following stipulation with reference to the following facts: Plaintiffs and Apple anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Stipulation for Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

### 1.    PURPOSES AND LIMITATIONS

a)    Protected Material, as defined in Paragraph 2(e), designated under the terms of this Protective Order shall be used by a Receiving Party solely for the case entitled *Amanda Frlekin, et al. v. Apple Inc.*, Case No. CV13-3451 WHA, consolidated with *Adam Kilker et al v. Apple Inc.* Consolidated Case No. C 13-3775-WHA (hereinafter, the "Action"), and shall not be used directly or indirectly for any other purpose whatsoever.

b)    The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a). Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

**2.** **DEFINITIONS**

        a)     "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

        b)     "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

        c)     "Party" means any party to the Action, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

        d)     "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in the Action.

        e)     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," or "CONFIDENTIAL - ATTORNEYS' EYES ONLY," as provided for in this Order. Protected Material shall not include: (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

        f)     "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

**3.** **COMPUTATION OF TIME**

        The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

**4.** **SCOPE**

        a)     The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

b)     Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material.

c)     Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with the consent of the Producing Party or by order of the Court.

d)     This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

**5.     DURATION**

Even after the termination of this case, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

**6.     ACCESS TO AND USE OF PROTECTED MATERIAL**

a)     Basic Principles.  All Protected Material shall be used solely for the Action or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

b)     Secure Storage, No Export.  Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a reasonably secure manner that ensures that access is limited to the persons authorized under this Order.

c)     Legal Advice Based on Protected Material.  Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to the Action based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

d)      Limitations.  Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order shall restrict in any way the use or disclosure of Protected Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court.

## 7.      **DESIGNATING PROTECTED MATERIAL**

a)      Available Designations.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein:  "CONFIDENTIAL," or "CONFIDENTIAL - ATTORNEYS' EYES ONLY."

b)      Written Discovery and Documents and Tangible Things.  Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Paragraph a) may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.  In the event that original documents are produced for inspection, the original documents shall be presumed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" during the inspection and re-designated, as appropriate during the copying process.

c)      Native Files.  Where electronic files and documents are produced in native electronic format, such electronic files and documents shall be designated for protection under this Order by appending to the file names or designators information indicating whether the file contains "CONFIDENTIAL," or "CONFIDENTIAL - ATTORNEYS' EYES ONLY," material, or shall use any other reasonable method for so designating Protected Materials produced in electronic format.

When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to Paragraph 12, the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file. No one shall seek to use in this litigation a .tiff, .pdf or other image format version of a document produced in native file format without first (1) providing a copy of the image format version to the Producing Party so that the Producing Party can review the image to ensure that no information has been altered, and (2) obtaining the consent of the Producing Party, which consent shall not be unreasonably withheld if the documents have not been modified or altered.

          d)    <u>Depositions and Testimony</u>. Parties or testifying persons or entities may designate depositions and other testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony is designated within thirty (30) days of receipt of the transcript of the testimony. If no indication on the record is made, all information disclosed during a deposition shall be deemed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" until the time within which it may be appropriately designated as provided for herein has passed. Any Party that wishes to disclose the transcript, or information contained therein, may provide written notice of its intent to treat the transcript as non-confidential, after which time, any Party that wants to maintain any portion of the transcript as confidential must designate the confidential portions within fourteen (14) days, or else the transcript may be treated as non-confidential. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases, the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof

to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

## 8. DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"

    a)  A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

    b)  Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

      (i)  The Receiving Party's Outside Counsel, such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

      (ii)  The individually named Plaintiffs of the Receiving Party, provided that each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

      (iii)  Court reporters, stenographers and videographers retained to record testimony taken in this action;

      (iv)  The Court, jury, and court personnel;

      (v)  Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

      (vi)  Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(vii)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(viii)    Any other person with the prior written consent of the Producing Party;

(ix)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent reasonably necessary to perform such work; and provided that:  (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibits A and B; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (d) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction.

**9.**    **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY"**

a)    A Producing Party may designate Discovery Material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party.  It is Defendant's position (which Plaintiffs reserve the right to oppose) that the following information, if non-public, shall be presumed to merit the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation:  trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, personal and non-public employee information, and other non-public information of similar competitive and business sensitivity.

b)    Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)    The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent reasonably necessary to perform such work; and provided that:  (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibits A and B; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (d) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (e) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 10, below;

(iii)    Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)    The Court, jury, and court personnel;

(v)    Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vi)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vii)    Any other person with the prior written consent of the Producing Party.

**10.    NOTICE OF DISCLOSURE**

a)    Prior to disclosing any Protected Material to any person described in Paragraph 9(b)(ii), (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i)    the name of the Person;

(ii)    an up-to-date curriculum vitae of the Person;

(iii)    the present employer and title of the Person;

(iv)    an identification of all of the Person's past and current employment and consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person, including but not limited to an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of computer hardware, or relating to the acquisition of intellectual property assets relating to computer hardware;

(v)    an identification of all pending patent applications on which the Person is named as an inventor, in which the Person has any ownership interest, or as to which the Person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

(vi)    a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant.  During the pendency of and for a period of two (2) years after the final resolution of this action, including all appeals, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in

the design, development, operation or patenting of computer hardware, or the acquisition of intellectual property assets relating to computer hardware.

b)     Within fourteen (14) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause.  In the absence of an objection at the end of the fourteen (14) day period, the Person shall be deemed approved under this Protective Order.  There shall be no disclosure of Protected Material to the Person prior to expiration of this fourteen (14) day period.  If the Producing Party objects to disclosure to the Person within such fourteen (14) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis.  If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  If relief is not sought from the Court within that time, the objection shall be deemed withdrawn.  If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

c)     For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order.

d)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

e)     An initial failure to object to a Person under this Paragraph 12 shall not preclude the non-objecting Party from later objecting to continued access by that Person for good cause.  If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally.  If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection.  If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court

1    resolves the matter or the Producing Party withdraws its objection. Notwithstanding the foregoing,

2    if the Producing Party fails to move for a protective order within seven (7) business days after the

3    meet and confer, further Protected Material may thereafter be provided to the Person.

4    **10.    CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

5           (a)    A Party shall not be obligated to challenge the propriety of any designation of

6    Protected Material under this Order at the time the designation is made, and a failure to do so shall

7    not preclude a subsequent challenge thereto.

8           (b)    Any challenge to a designation of Protected Material under this Order shall be

9    written, shall be served on outside counsel for the Producing Party, shall particularly identify the

10   documents or information that the Receiving Party contends should be differently designated, and

11   shall state the grounds for the objection. Thereafter, further protection of such material shall be

12   resolved in accordance with the following procedures:

13          (i)    The objecting Party shall have the burden of conferring either in

14   person, in writing, or by telephone with the Producing Party claiming protection (as well as any

15   other interested party) in a good faith effort to resolve the dispute. The Producing Party shall have

16   the burden of justifying the disputed designation;

17          (ii)    Failing agreement, the Receiving Party may bring a motion to the

18   Court for a ruling that the Protected Material in question is not entitled to the status and protection of

19   the Producing Party's designation. The Parties' entry into this Order shall not preclude or prejudice

20   either Party from arguing for or against any designation, establish any presumption that a particular

21   designation is valid, or alter the burden of proof that would otherwise apply in a dispute over

22   discovery or disclosure of information;

23          (iii)    Notwithstanding any challenge to a designation, the Protected Material

24   in question shall continue to be treated as designated under this Order until one of the following

25   occurs: (a) the Party who designated the Protected Material in question withdraws such designation

26   in writing; or (b) the Court rules that the Protected Material in question is not entitled to the

27   designation.

28

**11.   SUBPOENAS OR COURT ORDERS**

(a)   If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

**12.   FILING PROTECTED MATERIAL**

(a)   Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file or disclose in the public record any Protected Material.

(b)   Any Party is authorized under Northern District Local Rule 79-5 to file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order.

**13.   INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)   The inadvertent production by a Party of Protected Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Protected Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Protected Material is made promptly after the Producing Party learns of its inadvertent production.

(b)   Upon a request from any Producing Party who has inadvertently produced Protected Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)   Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Protected

Material and such other information as is reasonably necessary to identify the Protected Material and describe its nature to the Court in any motion to compel production of the Protected Material.

**14.    INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)    The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Protected Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Protected Material that was not designated properly.

(b)    A Receiving Party shall not be in breach of this Order for any use of such Protected Material before the Receiving Party receives such notice that such Protected Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Protected Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Protected Material (subject to the exception in Paragraph 17(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)    Notwithstanding the above, a subsequent designation of "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" materials while the materials were not marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY" from engaging in the activities set forth in Paragraph 6(b).

**15.    INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)    In the event of a disclosure of any Protected Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party

responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Protected Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Protected Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made

(b)     Unauthorized or inadvertent disclosure does not change the status of Protected Material or waive the right to hold the disclosed document or information as Protected.

## 16.     **FINAL DISPOSITION**

Not later than ninety (90) days after the Final Disposition of this case, each Party shall return all Protected Material of a Producing Party to the respective outside counsel of the Producing Party or destroy such Material, at the option of the Producing Party. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

All Parties that have received any such Protected Material shall certify in writing that all such materials have been returned to the respective outside counsel of the Producing Party or destroyed. Notwithstanding the provisions for return of Discovery Material, outside counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes.

## 17.     **DISCOVERY FROM EXPERTS OR CONSULTANTS**

(a)     Absent good cause, drafts of reports of testifying experts, and reports and other written materials, including drafts, of consulting experts, shall not be discoverable.

(b)     Reports and materials exempt from discovery under the foregoing Paragraph shall be treated as attorney work product for the purposes of this case and Protective Order.

(c)     Testifying experts shall not be subject to discovery with respect to any draft of his or her report(s) in this case. Draft reports, notes, or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

(d) Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case. No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

(e) No conversations or communications between counsel and any testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

(f) Materials, communications, and other information exempt from discovery under the foregoing Paragraphs 17(a)–(c) shall be treated as attorney-work product for the purposes of this litigation and Order.

**18.    MISCELLANEOUS**

(a) Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b) Termination of Matter and Retention of Jurisdiction. The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Determination of the above-captioned matter. The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

(c) Successors. This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

1         (d)     **Right to Assert Other Objections.** By stipulating to the entry of this Protective

2 Order, no Party waives any right it otherwise would have to object to disclosing or producing any

3 information or item.  Similarly, no Party waives any right to object on any ground to use in evidence

4 of any of the material covered by this Protective Order.  This Order shall not constitute a waiver of

5 the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion

6 thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or

7 any other proceeding.

8         (e)     **Burdens of Proof.**  Notwithstanding anything to the contrary above, nothing in

9 this Protective Order shall be construed to change the burdens of proof or legal standards applicable

10 in disputes regarding whether particular Discovery Material is confidential, which level of

11 confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions

12 should apply.

13         (f)     **Modification by Court.**  This Order is subject to further court order based

14 upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the

15 interests of justice.  The United States District Court for the Northern District of California is

16 responsible for the interpretation and enforcement of this Order.  All disputes concerning Protected

17 Material, however designated, produced under the protection of this Order shall be resolved by the

18 United States District Court for the Northern District of California.

19         (g)     **Discovery Rules Remain Unchanged.**  Nothing herein shall alter or change in

20 any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the

21 United States District Court for Northern District of California, or the Court's own orders.

22 Identification of any individual pursuant to this Protective Order does not make that individual

23 available for deposition or any other form of discovery outside of the restrictions and procedures of

24 the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for

25 Northern District of California, or the Court's own orders.

26

27

28

Dated: October 3, 2014

//s// *Todd K. Boyer*
TODD K. BOYER
LITTLER MENDELSON, P.C.
Attorneys for Defendant
APPLE INC.

Dated: October 3, 2014

//s// *Lee Shalov*
LEE S. SHALOV
McLAUGHLIN & STERN, LLP
Attorneys for Plaintiffs

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: _____

HONORABLE WILLIAM H. ALSUP
United States District Court Judge

1

2 **EXHIBIT A**

3 **Protective Order Acknowledgment and Non-Disclosure Agreement**

4       The undersigned hereby acknowledges and agrees to the following:

5       I have had the opportunity to review the protective order in *Amanda Frlekin, et al. v. Apple*

6 *Inc., Case No. CV13-3451 WHA, consolidated with Adam Kilker et al v. Apple Inc. Consolidated*

7 *Case No.  C 13-3775-WHA* currently pending in the United States District Court for the Northern

8 District of California.  I certify that I am an appropriate person for receipt of Confidential

9 Information under the protective order.  I understand and agree to be bound by the terms of the

10 protective order and will not disclose any of the Protected Material provided to me to any third

11 person, except as allowed in the protective order.  I understand and agree that my use of any

12 Protected Material shall be solely and exclusively for purposes relating to the prosecution or defense

13 of the above-titled litigation, including but not limited to appeals and writs relating thereto,

14 discovery, and/or mediation or settlement of this action in accordance with the provisions of the

15 protective order.

16       I also agree that upon being informed of the termination or settlement of this action, I will

17 promptly surrender all Protected Material provided to me to the counsel that provided it to me so that

18 it may be returned to the party that it belongs to in accordance with the terms of the protective order.

19 I will not retain copies of any such Protected Material in any form of any kind, including but not

20 limited to electronic format, for any reason whatsoever and understand that it would be a violation of

21 the terms of the protective order to do so.  By signing this Non-Disclosure Agreement, I hereby

22 consent to the jurisdiction of the U.S. District Court for the Northern District of California for

23 purposes of enforcing the terms of this nondisclosure Order and Non-Disclosure Agreement.

24

25 Dated: _____          _____
                                                    [Signature]

26
                                            _____
27                                                  [Print Name]

28

1

2 **EXHIBIT B**

3 **Protective Order Acknowledgment and**

4 **Attorneys Eyes Only Non-Disclosure Agreement**

5     The undersigned hereby acknowledges and agrees to the following:

6     I have had the opportunity to review the protective order in *Amanda Frlekin, et al. v. Apple*

7 *Inc., Case No. CV13-3451 WHA, consolidated with Adam Kilker et al v. Apple Inc. Consolidated*

8 *Case No. C 13-3775-WHA* currently pending in the United States District Court for the Northern

9 District of California. I certify that I am an appropriate person for receipt of Confidential Attorneys

10 Eyes Only material under the protective order. I understand and agree to be bound by the terms of

11 the protective order and will not disclose any of the Confidential Attorneys Eyes Only material

12 provided to me to any third person, except as allowed in the protective order. I understand and agree

13 that my use of any Confidential Attorneys Eyes Only material shall be solely and exclusively for

14 purposes relating to the prosecution or defense of the above-titled litigation, including but not

15 limited to appeals and writs relating thereto, discovery, and/or mediation or settlement of this action

16 in accordance with the provisions of the protective order.

17     I also agree that upon being informed of the termination or settlement of this action, I will

18 promptly surrender all Confidential Attorneys Eyes Only material provided to me to the counsel that

19 provided it to me so that it may be returned to the party that it belongs to in accordance with the

20 terms of the protective order. I will not retain copies of any such Confidential Attorneys Eyes Only

21 material in any form of any kind, including but not limited to electronic format, for any reason

22 whatsoever and understand that it would be a violation of the terms of the protective order to do so.

23     By signing this Non-Disclosure Agreement, I hereby consent to the jurisdiction of the U.S.

24 District Court for the Northern District of California for purposes of enforcing the terms of this

25 agreement.

26 Dated: _____

                                         _____

27                                             [Signature]

                                       _____

28                                          [Print Name]