UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWNLING, DEBRA SPEICHER, AND TAYLOR KALIN, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　　　Defendant. | No. C 13-03451 WHA<br><br>**ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |

**INTRODUCTION**

In this class action alleging violations of California wage and hour law, plaintiffs seek preliminary approval of a class and collective action settlement worth $29.9 million to benefit a total of 14,683 employees and former employees. The suit concerns the failure to compensate for time spent in bag and technology security checks over six years. The parties seek preliminary approval of a class settlement. Because the proposal would award adequate relief, preliminary approval is, to the extent stated below, **GRANTED**.

**STATEMENT**

The facts follow in relevant part. Defendant Apple, Inc. employed settlement class members in its 52 retail stores in California. Those employees were subject to a written

"Employee Package and Bag Searches" policy, which imposed mandatory searches of employees' bags, purses, backpacks, or briefcases whenever they left the store. Employee time-keeping systems were generally kept within the store, so employees had to clock out prior to undergoing a search, and their recorded hours worked did not account for the time waiting for a search to be completed. Therefore, the time went uncompensated.

A class was certified. That order extended the class period "up to the present." After class certification, plaintiffs moved to disseminate notice and Apple produced a list of non-exempt Apple employees working at retail stores and subject to the bag policy between July 25, 2009, and August 10, 2015 (then roughly "the present"). Plaintiffs used this list of 14,293 to disseminate notice in 2015. Eventually, 407 opted out, and a class of 13,884 remained. The parties cross-moved for summary judgment. An order found the waiting time non-compensable, and granted summary judgment for Apple and denied for plaintiffs. That decision was overturned after an expedition through our court of appeals and the California Supreme Court. On remand, a prior order set out a plan for damages trials, including a notice and claims procedure, depositions if necessary, and motions practice (Tran Decl. ¶ 2; Dkt. Nos. 297, 339, 340, 351, 352, 407).

In February 2021, parties stipulated to expand the damages period from August 10, 2015, through December 17, 2015, since the parties agreed that Apple ended its bag-check policy on the latter date. A prior order granted that stipulation. Plaintiffs apparently asked Apple to include additional class members who began employment between those two dates, but they could not reach a stipulation. So, the parties only expanded the damages period, not the class *membership*, to include the period of August 10 through December 17, 2015 (Dkt. Nos. 307, 374, 384).

Our parties mediated three times, the last time with Hon. Edward Infante (Ret.) of JAMS on May 6, 2021, who proposed the settlement figure on which both sides ultimately agreed. During mediation, plaintiffs asked Apple to produce a list of non-exempt workers "employed at an Apple retail store in California between July 25, 2009, and December 17, 2015." For record-keeping reasons, Apple produced a list ending December 26, 2015. According to

2

Apple, 799employees who began their employment during that period and who were previously omitted from the class. As part of its review, Apple also realized that 16 individuals who worked between August 3 and August 10, 2015, and who should have received class notice in 2015, did not receive notice even though they were members of the class. This was probably because of Apple's lag in reporting new hires. These 16 are accounted for in the 799 (Riley Decl. ¶¶ 2–4).

Now the parties propose to end this protracted suit in a settlement which, if approved, would be the largest of any security-check suit in California history. Counsel for both sides declare that they have complied with Class-Action Fairness Act (CAFA) notice requirements to government officials (Riley Decl. ¶ 2; Giaimo Decl. ¶¶ 2–5).

This order follows briefing, a supplemental brief, and a hearing, telephonic due to COVID-19.

**ANALYSIS**

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). A settlement purporting to bind absent class members must be fair, reasonable, and adequate. *See* FRCP 23(e). A district court may consider and weigh a variety of factors as the particular facts of the case demand, including: the amount offered in settlement; the strength of plaintiff's case; the stage of the proceedings; the expense and complexity of further litigation; and other relevant considerations. Above all, the "primary concern" must be the "protection of those class members . . . whose rights may not have been given due regard by the negotiating parties." *Officers for Just.*, 688 F.2d at 624–25.

With a few modifications, this proposed settlement measures up.

*First*, the total settlement figure of $29.9 million appears adequate. A net of $18,895,333 ($19,007,458 when accounting for the PAGA class portion) will go to the class of 14,683. Separately, Apple will pay $757,000 to cover the employer's share of the payroll taxes owed on the wage portion of the settlement fund, for a grand total payment by Apple of $30,656,000.

3

Included in that amount will be $449,000 to solve the PAGA claim, of which 75% will be distributed to the LWDA and 25% ($112,125) to the fund for eligible class members) (Shalov and Kralowec Decl. Exh. 1 (hereafter, "Stip.") §§ 1.32, 3.4.1.6, 3.4.6.1, 3.4.6.2).

*Second*, at this late stage, the parties seek to expand the settlement class by the 799 workers. The parties apparently waited until this late date to agree to expand the settlement class *members* because Apple had contended that employees who worked between August 10 and December 17, 2015, had claims time-barred by the statute of limitations. In settlement, however, Apple agreed to include those individuals so as to resolve all related claims. Again, the period of membership extends to December 26 (not 17) because of Apple's record-keeping system. Valid negotiations appear to have led to this change in the class composition (Dunne Decl. ¶¶ 2–3).

A new settlement class shall be **CERTIFIED** as follows: the settlement class shall consist of the 13,884 workers certified in 2015 (minus opt-outs), plus the 799 proposed "new class members" whose bags were checked between December 17, 2015 and December 31, 2015, for a total of 14,683 class members. This includes all workers who began employment between July 25, 2009, and December 26, 2015; while the *damages* period shall extend between July 25, 2009, and December 31, 2015 (Shalov and Kralowec Decl. ¶ 39).

Given that 799 new class members will join the party at this very late stage, they must receive **105 DAYS**, not 60 days, to lodge any objections or to opt out. This is to ensure that adequate efforts are made to locate these individuals. For the sixteen individuals who should have received notice in 2015 but who Apple left off the roster, Apple shall bear the cost of their notice. Counsel for Apple shall report back to the Court before any motion for final settlement whether or not all sixteen received notice. All class notices must also add an explanation of how and why the class came to add 799 new class members at this stage.

*Third,* individual settlement class members would receive, on average, $1,286.96 (assuming zero additional opt-outs), on a *pro rata* basis. The calculation would use Apple business records to determine the number of shifts that each class member worked during the class period. This payout would represent 90% –160% of the realistic value of their claims.

Parties arrived at this range by utilizing favorable assumptions: an average wage rate that rises far above the minimum and figuring five minutes of waiting in line for the bag/technology check per shift. On average, settlement class members would collect 20.2% of the *maximum* recovery (Shalov and Kralowec Decl. ¶ 67). The above-minimum wage rate and average of five minutes spent in a bag search favor the class members, given the likely proof problems on these points at damages' trials (including the *de minimus* and good faith defenses). The settlement does not require claim forms, another substantial plus. On the other hand, the amounts paid to the settlement class members do not count as earnings or compensation for purposes of any benefits (*e.g.*, § 401(k) plans or retirement plans) sponsored by Apple. This is a blow to those workers who should have received those benefits along with the wages earned but, given the substantial hurdles ahead in the damages suit, it is not dispositive (Stip. § 3.7.2). The overall and net settlement amounts favor settlement.

*Fourth,* the fund is nonreversionary; checks uncashed within 180 days (or 30 days of reissue, whichever is later) go to the California Alliance of Boys & Girls Clubs' Workforce Readiness program (*id*. § 3.6.10; Shalov and Kralowec Decl. ¶ 48). Since the period for cashing checks begins to run with (re)issuance, however, counsel and the claims administrator must respond to any class member's request for reissuance within **SEVEN DAYS,** to prevent a scenario in which the 180 days runs out while a class member's request for reissuance remains unanswered. The notice of outstanding check should explain this to class members.

*Fifth*, all issues concerning attorney's fees and costs will be decided later. A red flag, however, is Apple's "clean sailing" agreement not to oppose an award up to 25% of the fund (Stip. § 3.4.1.4). Our court of appeals has held that this is a red flag indicating a potentially collusive settlement, because "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," a settlement carries a risk of "enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In fact, the Court's prior order

herein regarding class actions and class action settlements forbids such agreements for this exact reason.  The order states (Dkt. No. 21):

> To avoid collusive settlements, the Court prefers that all settlements avoid any agreement as to attorney's fees and leave that to the judge. If the defense insists on an overall cap, then the Court will decide how much will go to the class and how much will go to counsel, just as in common fund cases.  Please avoid agreement on any division, tentative or otherwise.

This violation stands out as a sore thumb and a red flag.  The Court will decide costs and attorney's fees at final approval.

*Sixth,* the settlement seeks $10,000 as a service payment for plaintiff Amanda Frlekin, and the same to each of four other class representatives.  This is another red flag and will not be approved.

*Seventh*, the notices of objection and requests for exclusion appear far too burdensome. The request for exclusion requirements would disqualify any request that does not precisely comport with "magic words" tests:  under parties' proposal, class members would be required to request exclusion *by mail* by naming the "*Frlekin* case" or the "Apple bag check case," among other specific requirements.  These specifications are too demanding on non-lawyer class members.  Furthermore, parties must develop and provide a template for opt-out to be mailed to class members and provided electronically, which is pre-filled with the case name and number.  If a class member seeks to opt out not using the provided template, parties must honor opt-out requests that substantially conform to naming the suit, even if their language does not precisely match the above.  Furthermore, a would-be opt-out who omits a required field (e.g. signature) must be given the chance to correct her mistake.

Likewise, the notices of objection may not be disqualified simply because the sender fails to complete one of the requirements (e.g. stating whether or not she will attend the final approval hearing, or stating both the case name *and* number).  Parties shall accept an objection if the sender states either the case name *or* its number, or the descriptors used for opt-outs.  An

6

objecting class member must be informed of any omission within **SEVEN DAYS** and permitted to fix it (Stip. §§ 3.5.9; 3.5.10).

*Eighth*, the release appears reasonable, tailored to the claims pursued in the consolidated complaint in this action and excluding state claims dismissed with prejudice, or claims pursued in named plaintiff Taylor Kalin's notice letter that didn't enter into the consolidated complaint (*id.* §§ 3.4.2, 3.4.3; Dkt. Nos. 1, 75, 223; *Kalin,* No. C 13-04727, Dkt. Nos. 1, 13).

*Ninth*, the proposal suggests serious, non-collusive negotiation. Both sides have dueled for a long time. For example, discovery included twenty depositions by Apple, fourteen by plaintiffs. Apple produced 57,414 documents; plaintiffs produced 1,162 (Stip. § 2.2).

*Tenth*, this case remains reasonably complex. We are poised to set a date for one or more damages trials. Each class member must estimate the bag checks that they suffered. Their accounts would be subject to cross-examination, during batched trials. The parties disagreed about whether minimum wage rates or regular hourly wage rates should apply, the *de minimus* defense, the good-faith defense, and the availability of liquidated damages of California Labor Code Section 1194.2.

*Eleventh*, notice to the class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Here, Angeion would serve as claims administrator. Apple will provide the "employee list." The parties propose to mail notices of settlement (Exh. A) to all existing class members and send a different notice of settlement (Exh. B) to all new class members by First Class U.S. mail *and* email. Angeion "will conduct a national change of address search and a skip trace for the most current mailing address of all former employee settlement class members and will update such former employees' addresses as necessary" (Stip. § 3.5.6).

The exterior of the envelope for the mailing notice shall state "Important Class Action Notice" and shall state that it is "From the United States District Court, Northern District of California, Honorable William Alsup, 450 Golden Gate Avenue, San Francisco, CA 94102,"

with the return address directing service to Class Counsel. The statement shall be printed at a location on the envelope such that the Court's mailing address could not possibly be mistaken as the *class member's* mailing address. This issue has recently arisen in other cases and resulted in the Court receiving the class notices. The administrator must take care to avoid it.

On balance, the factors listed above weigh in favor of the settlement.

## CONCLUSION

The proposed settlement ranks as adequate at this stage, preliminary approval is **GRANTED** subject to final approval. The class definition is **CERTIFIED** to include the additional 799 Apple employees as described above. In the interim:

1. Class counsel will send the approved class notice via email (for class members whose email addresses are known) or via first-class mail (for the remainder) to the class by **JANUARY 11, 2022.** Both Apple and class counsel shall also post such notice to their websites by this date.

2. Class members' objections to the proposed settlement shall be due **APRIL 26, 2022.**

3. The parties' replies to the objections shall be due **MAY 10, 2022.**

4. The parties shall move for final approval, costs, and attorney's fees by **MAY 30, 2022**. The motion for attorney's fees should detail the lodestar.

5. The parties' declarations attesting to the provision of class service is due **June 15, 2022**.

6. Class members' objections to final approval and attorneys' fees and costs motions shall be due **July 5, 2022**.

7. The final approval fairness hearing shall take place at **8:00 A.M.** on **JULY 7, 2022.**

**IT IS SO ORDERED.**

Dated: December 28, 2021.

					_____
					WILLIAM ALSUP
					UNITED STATES DISTRICT JUDGE

8