Kimberly A. Kralowec (CA Bar No. 163158)
kkralowec@kraloweclaw.com
Kathleen Styles Rogers (CA Bar No. 122853)
krogers@kraloweclaw.com
**KRALOWEC LAW, P.C.**
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:      (415) 546-6800
Fax:     (415) 546-6801

Lee Shalov (admitted *pro hac vice*)
lshalov@mclaughlinstern.com
Brett Gallaway (admitted *pro hac vice*)
bgallaway@mclaughlinstern.com
Jason Scott Giaimo (admitted *pro hac vice*)
jgiaimo@mclaughlinstern.com
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Tel:      (212) 448-1100
Fax:     (212) 448-0066

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA FRELKIN, TAYLOR KALIN, AARON GREGOROFF, SETH DOWLING, and DEBRA SPEICHER, on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>   v.<br><br>APPLE INC., a California corporation,<br><br>                          Defendant. | Case No. 13-cv-3451 WHA (lead)<br>Case No. 13-cv-3775 (consolidated)<br>Case No. 13-cv-4727 (consolidated)<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS**<br><br>Date:  July 7, 2022<br>Time: 8:00 a.m.<br>Place: Ctrm. 12, 19th Floor<br>Judge: Hon. William Alsup |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 7, 2022, at 8:00 a.m., or as soon thereafter as the matter may be heard, plaintiffs Seth Dowling, Amanda Frlekin, Aaron Gregoroff, Taylor Kalin, and Debra Speicher ("Plaintiffs"[1]), together with McLaughlin & Stern LLP and Kralowec Law, P.C. ("Class Counsel"), will and hereby do move the Court for an order:

1.      Awarding Attorneys' Fees to Class Counsel in the amount of one third of the Total Settlement Amount, or $9,966,666.67, to be allocated as the Court directs among Class Counsel and the other law firms that represented Plaintiffs during the litigation; and

2.      Awarding Litigation Costs to Class Counsel in the amount of $372,134.84, to be allocated as the Court directs among Class Counsel and the other law firms that represented Plaintiffs during the litigation.

3.      Directing the allocation of any award of attorneys' fees and litigation costs among Class Counsel and the other law firms that represented Plaintiffs during the litigation in the manner suggested in the Joint Declaration of Class Counsel, filed herewith, or in such other manner as the Court considers reasonable.

The motion is made pursuant to Federal Rules of Civil Procedure 23(h) and 54(d) on the grounds that a fee award of one-third of the common fund (for an estimated multiplier of 1.0063) is reasonable and appropriate in this case in view of the results achieved; the risks presented by the litigation; the complexity of the case; the skill required and the quality of work performed; the contingent nature of the fee; and the financial burden carried by plaintiffs' counsel.  The motion is made on the further grounds that an award of litigation costs of $372,134.84 is appropriate because the costs are reasonable, necessary to the litigation, benefited the class, and would have been charged to a fee-paying client in non-contingency litigation.  The motion is made 30 days before the class

---

[1]      Unless otherwise specified, capitalized terms in this notice of motion and the brief below shall have the same meaning as in the Settlement Agreement (Dkt. 416-2).  All references to "Dkt." are to the docket in the lead case, *Frlekin et al. v. Apple Inc.*, No. 13-cv-3451 WHA.

members' initial objection deadline of April 26, 2022 and will be posted to the settlement website.[2]

This motion is based upon this Notice of Motion; the Memorandum of Points and Authorities below; the Declarations of Kimberly A. Kralowec and Lee Shalov, filed herewith; the Declarations of Lonnie Blanchard, Peter Dion-Kindem, and Louis Ginsberg, filed herewith; the Joint Declaration of Class Counsel, filed herewith; the [Proposed] Order submitted herewith; any oral argument of Class Counsel; all other papers and records in the Court's file, and such additional matters as the Court may consider at the hearing.

Dated: March 25, 2022                              Respectfully submitted,

                                        By:      /s/Kimberly A. Kralowec
                                                 Kimberly A. Kralowec
                                                 Kathleen Styles Rogers
                                                 Kralowec Law, P.C.
                                                 750 Battery Street, Suite 700
                                                 San Francisco, CA 94111
                                                 Tel: (415) 546-6800
                                                 kkralowec@kraloweclaw.com
                                                 krogers@kraloweclaw.com

                                                 Lee S. Shalov
                                                 Brett R. Gallaway
                                                 Jason S. Giaimo
                                                 McLaughlin & Stern, LLP
                                                 260 Madison Avenue
                                                 New York, NY 10016
                                                 Tel: (212) 448-1100
                                                 lshalov@mclaughlinstern.com
                                                 bgallaway@mclaughlinstern.com
                                                 jgiaimo@mclaughlinstern.com

                                                 *Attorneys for Plaintiffs and the Class*

---

[2]      *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010); *see also* Dkt. 430 (Transcript of Proceedings, Dec. 16, 2021, at 11:15-21) ("We need to make sure that motion for attorneys' fees is completely on file and available to members of the class to view and inspect so they have the opportunity to make their objections to the motion.").

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 3

II.   STATEMENT OF FACTS .................................................................................. 4

    A.    Early Procedural History of the Case................................................. 4

    B.    Obstacles Overcome by Class Counsel, 2014 through 2015 ....................... 4

        1.    Obstacle #1: The February 20, 2014 Hearing and Order............................... 5

        2.    Obstacle #2: Apple's First Summary Judgment Motion................................. 5

        3.    Obstacle #3: The Reversal by the U.S. Supreme Court in *Busk* ..................... 6

        4.    Obstacle #4: Class Certification and Apple's Rule 23(f) Petition ................. 6

        5.    Obstacle #5: Apple's Second Summary Judgment Motion and the Judgment Entered in Apple's Favor and Against the Plaintiffs for More than $34,000 in Costs ........................................................ 7

    C.    Obstacles Overcome by Class Counsel on Appeal, 2016 to 2020............................ 8

        1.    Obstacle #6:  Class Counsel's Successful Handling of the Appeal to the Ninth Circuit, Leading to the First Published Opinion, *Frlekin v. Apple, Inc.*, 870 F.3d 867 (2017) ........................................ 8

        2.    Obstacle #7: Class Counsel's Successful Handling of the Proceedings in the California Supreme Court, Leading to the Second Published Opinion, *Frlekin v. Apple Inc.*, 8 Cal.5th 1038 (2020) ...................... 9

        3.    Obstacle #8: Class Counsel's Successful Handling of the Further Proceedings in the Ninth Circuit, Leading to the Third Published Opinion, *Frlekin v. Apple, Inc.*, 979 F.3d 639 (2020)................................... 10

    D.    Obstacles Overcome by Class Counsel in Post-Appeal Proceedings, 2021 .............. 11

        1.    Obstacle #9: Class Counsel's Work in Obtaining an Order Reversing the Prior Judgment in Apple's Favor and Entering Judgment on Liability in Favor of the Certified Class ........................................ 11

        2.    Obstacle #10: This Court's Order Directing a Claims-Made Trial Procedure and Preserving Apple's Remaining Defenses on Damages, Including Potential "*De Minimis*" and "Good Faith" Defenses..................... 11

    E.    The Outstanding Settlement Achieved by Class Counsel in the Face of These Formidable Obstacles......................................................... 12

i

MEMO. IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

III.     ARGUMENT ................................................................................................. 12

         A.     An Award of Attorneys' Fees Should Be Made from the Common Fund ............... 12

                1.     The Common Fund Doctrine and Methods for Calculating Fees ................. 12

                2.     An Award of One-Third of the Recovery Is Justified in this Case ............... 13

                       a.     The Results Achieved: Substantial Benefits to the Class ................. 14

                       b.     The Results Achieved: Benefits to Employees Statewide ................ 16

                       c.     The Risks of Litigation ....................................................... 17

                       d.     The Complexity of the Case, the Skill Required and the
                              Quality of the Work Performed ............................................. 19

                       e.     The Contingent Nature of the Fee and the Financial Burden
                              Carried by Class Counsel .................................................... 21

                       f.     Awards in Comparable Cases ............................................... 21

                3.     A Lodestar Cross-Check Confirms that the Proposed Fee Is
                       Reasonable ...................................................................................... 22

                4.     An Award of Fees as a Percentage of the Total Settlement Amount Is
                       Reasonable and Proper ..................................................................... 24

         B.     An Award of Litigation Costs Should Be Made from the Common Fund ............... 25

         C.     Class Counsel's Proposal for Allocation of Attorneys' Fees and Litigation
                Costs ........................................................................................................... 25

IV.      CONCLUSION ............................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Cases**

3

Aguilar v. Wawona Frozen Foods,
    2017 WL 2214936 (E.D. Cal. May 19, 2017) ...........................................................14, 22

4

In re: Apple Inc. Device Performance Litig.,
    2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)...................................................................20

5

6

Augustus v. ABM Security Servs., Inc.,
    2 Cal.5th 257 (2016) ...........................................................................................................22

7

8

Augustus v. American Comm. Sec. Servs.,
    2017 WL 11417614 (Cal. Super. Jul. 6, 2017) ..................................................................21

9

Bebchick v. Washington Metro. Area Transit Comm'n,
    805 F.2d 396 (D.C. Cir. 1986) ...........................................................................................17

10

11

Bellinghausen v. Tractor Supply Co.,
    306 F.R.D. 245 (N.D. Cal. 2015)........................................................................................22

12

13

In re Bluetooth Headset Products Liability Litig.,
    654 F.3d 935 (9th Cir. 2011) ..............................................................................................13

14

Boeing Company v. Van Gemert,
    444 U.S. 472 (1980).....................................................................................................12, 24

15

16

Boone v. Amazon.com Servs., LLC,
    2022 WL 780215 (E.D. Cal. Mar. 11, 2022) .....................................................................17

17

18

Brinker Restaurant Corp. v. Superior Court,
    53 Cal.4th 1004 (2012) .......................................................................................................22

19

Busk v. Integrity Staffing Solutions, Inc.,
    713 F.3d 525 (9th Cir. 2013) ................................................................................................4

20

21

Carlin v. DairyAmerica, Inc.,
    380 F.Supp.3d 998 (E.D. Cal. 2019).............................................14, 15, 17, 19, 20, 21

22

23

Chavez v. Converse, Inc.,
    2020 WL 10575028 (N.D. Cal. Nov. 25, 2020) .................................................................13

24

Chavez v. Netflix, Inc.,
    162 Cal. App. 4th 43 (2008) .........................................................................................13, 23

25

26

27

28

Consumer Privacy Cases,
    175 Cal. App. 4th 545 (2009) ..................................................................13

In Re Equity Funding Corp. Sec. Litig.,
    438 F.Supp. 1303 (C.D. Cal. 1977) .........................................................20

Frlekin v. Apple, Inc.,
    870 F.3d 867 (9th Cir. 2017) ..........................................8, 9, 16, 18

Frlekin v. Apple, Inc.,
    973 F.3d 947 (9th Cir. 2020) .................................................................11

Frlekin v. Apple, Inc.,
    979 F.3d 639 (9th Cir. 2020) ......................................................3, 10, 11

Frlekin v. Apple, Inc.,
    8 Cal.5th 1038 (2020) ......................................................3, 9, 10, 16, 18

Gonzalez v. Arizona,
    677 F.3d 383 (9th Cir. 2012) .................................................................22

In re Google Referrer Header Privacy Litig.,
    869 F.3d 737 (9th Cir. 2017) .................................................................22

Greer v. Dick's Sporting Goods., Inc.,
    2020 WL 5535399 (E.D. Cal. Sept. 15, 2020)...........................13, 14

Hassell v. Uber Techs., Inc.,
    2021 WL 2531076 (N.D. Cal. Jun. 21, 2021) ........................................17

In re Heritage Bond Litig.,
    2005 WL 1594403 (C.D. Cal. Jun. 10, 2005)......................14, 15, 20, 21

Integrity Staffing Solutions, Inc. v. Busk,
    571 U.S. 1236 (2014).................................................................................6

Integrity Staffing Solutions, Inc. v. Busk,
    574 U.S. 27 (2014).....................................................................................6

Joh v. American Income Life Ins. Co.,
    2021 WL 66305 (N.D. Cal. Jan.7, 2021) ...........................................20, 22

Jordan v. Michael Page Int'l, Inc.,
    2020 WL 4919732 (C.D. Cal. Jul. 2, 2020)...........................................14

Kang v. Wells Fargo Bank, N.A.,
    2021 WL 5826230 (N.D. Cal. Dec. 8, 2021)........................13, 22, 23, 25

Laffitte v. Robert Half Int'l., Inc.,
  1 Cal.5th 480 (2016) ................................................................12, 13, 22, 24

Laguna v. Coverall North America Corp.,
  753 F.3d 918 (9th Cir. 2014) .....................................................................13

In re LendingClub Sec. Litig.,
  2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) .........................................23, 25

In re Lidoderm Antitr. Litig.,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .....................................14, 15, 23

Mangold v. Calif. Public Utilities Comm'n,
  67 F.3d 1470 (9th Cir. 1995) .....................................................................12

In re Mego Fin. Corp. Sec. Litig.,
  213 F.3d 454 (9th Cir. 2000) .................................................................13, 24

Mendenhall v. NTSB,
  213 F.3d 464 (9th Cir. 2000) .....................................................................22

In re Mercury Interactive Corp. Sec. Litig.,
  618 F.3d 988 (9th Cir. 2010) ......................................................................2

Mills v. Elec. Auto-Lite Co.,
  396 U.S. 375 (1970).............................................................................12, 16

Moreno v. Capital Bldg. Maint. & Cleaning Servs., Inc.,
  2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) .............................................13

Morillion v. Royal Packing Co.,
  22 Cal.4th 575 (2000) ...............................................................................18

In re Nat'l Collegiate Athletic Assn. etc. Antitrust Litig.,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)............................................21, 23

Oliver v. Konica Minolta Bus. Solutions U.S.A., Inc.,
  51 Cal.App.5th 1 (2020) ...........................................................................17

In re Omnivision Techs.,
  559 F.Supp.2d 1036 (N.D. Cal. 2007) ...............................13, 15, 20, 21, 23, 25

In re Online DVD-Rental Antitrust Litig.,
  779 F.3d 934 (9th Cir. 2015) .....................................................................24

Overton v. Walt Disney Co.,
  136 Cal.App.4th 263 (2006) .......................................................................18

In re Pacific Enters. Sec. Litig.,
　　47 F.3d 373 (9th Cir. 1995) ........................................................13, 16, 17, 24

Parsittie v. Schneider Logistics, Inc.,
　　859 Fed.Appx. 106 (9th Cir. 2021)....................................................17

Paul, Johnson, Alston, & Hunt v. Graulty,
　　886 F.2d 268 (9th Cir. 1989) ..............................................................13

Powers v. Eichen,
　　229 F.3d 1249 (9th Cir. 2000) ............................................................24

In re Prudential Ins. Co. Sales Practices Litig.,
　　148 F.3d 283 (1998)...........................................................................19

Rodriguez v. Nike Retail Servs., Inc.,
　　928 F.3d 810 (9th Cir. 2019) ..............................................................22

Rodriguez v. Nike Retail Servs., Inc.,
　　2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ................................13, 22

Six (6) Mexican Workers v. Ariz. Citrus Growers,
　　904 F.2d 1301 (9th Cir. 1990) ......................................................13, 21

Spears v. First American Eappraiseit,
　　2015 WL 1906126 (N.D. Cal. Apr. 27, 2015) ..................................24

Staton v. Boeing Co.,
　　327 F.3d 938 (9th Cir. 2003) ..............................................................16

Thompson v. County of Santa Clara,
　　1990 WL 300239 (N.D. Cal. Aug. 2, 1990) ......................................17

Vasquez v. Jan-Pro Franchising Int., Inc.,
　　10 Cal.5th 944 (2021) ........................................................................17

Vizcaino v. Microsoft Corp.,
　　290 F.3d 1043 (9th Cir. 2002) ................................................... *passim*

Wal-Mart Stores, Inc. v. Dukes,
　　564 U.S. 338 (2011)...........................................................................20

In re Washington Public Power Supply Sys. Sec. Litig.,
　　19 F.3d 1291 (9th Cir. 1994) ......................................................12, 19, 21

Wershba v. Apple Computer, Inc.,
　　91 Cal. App. 4th 224 (2001) ........................................................12, 23

MEMO. IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

1

2 **<u>Statutes</u>**

3 Federal Rules of Civil Procedure
   Rule 23(f) ...................................................................................................7, 19
4  Rule 23(h) ..................................................................................................1, 25
   Rule 54(d) ........................................................................................................1
5

6 California Code of Regulations
   8 Cal. Code Regs. §11070, ¶2(G) ...................................................................8
7 California Rules of Court
   Rule 8.548(a)(2) ............................................................................................18
8  Rule 8.548(e)(1) ..............................................................................................9

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS

## I.   INTRODUCTION

After nine years of heavily contested litigation in this Court, the Ninth Circuit, and the California Supreme Court, a $29.9 million non-reversionary settlement was reached for the benefit of the class.  This outstanding settlement would not exist but for the extraordinary efforts of Class Counsel.  By November 2015, this case had been totally lost on the merits.  Not only had judgment had been entered in Apple's favor, but $34,859.12 in litigation costs had been awarded to Apple as the prevailing party.  Class Counsel obtained a reversal of this judgment and revived the case through persistent and effective appellate advocacy in the Ninth Circuit and the California Supreme Court.

As a result of their efforts, in February 2020, the California Supreme Court held that time spent by employees waiting for and undergoing mandatory security searches is compensable "hours worked" under California law.  *Frlekin v. Apple Inc.*, 8 Cal.5th 1038, 1045-57 (2020).  In September 2020, the Ninth Circuit issued a published opinion directing this Court to vacate the judgment in Apple's favor and enter a new order granting plaintiffs' summary judgment motion on liability. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (2020).  This Court did so on April 14, 2021.  Dkt. 407 at 1:21-27.  By May 13, 2021, Apple had agreed to pay $29.9 million settle the case.  Dkt. 408.

In short, Class Counsel won a complete appellate victory against one of the most powerful and well-funded technology companies in the world.  The $29.9 million class-wide settlement is the result.  An attorneys' fee award of one third of this common fund will appropriately reward Class Counsel for their successful representation of the class, including their tenacity in pursuing appellate relief in the face of significant setbacks and obstacles early in the litigation, as detailed below.

The proposed award is especially appropriate in view of the sheer volume of work required. Collectively, plaintiffs' counsel expended a combined 11,400 hours of work on this case, and the proposed fee award represents a lodestar multiplier of 1.0063.  Class Counsel's remarkable success in pulling victory from the jaws of defeat should be encouraged—especially here, where the unfavorable judgment, had it become final, would have bound almost 14,000 absent class members.

On the way to the $29.9 million settlement, plaintiffs' counsel also incurred litigation costs of

$372,134.84.  These costs were reasonably incurred and benefited the class members, so they should be reimbursed from the common fund.  For all of these reasons, and as further discussed below, the Court is respectfully asked to grant this motion in full.

## II.   STATEMENT OF FACTS

The following facts supplement those previously summarized in plaintiffs' motion for preliminary approval (Dkt. 416 at 4:17-9:4) and the supporting Joint Declaration of Lee Shalov and Kimberly A. Kralowec (Dkt. 416; Dkt. 416-2 at ¶¶2-35, 51-53, 55-56) (hereafter "Joint Class Counsel Decl.").[3]  As will be seen, Class Counsel achieved outstanding results for the class.

### A.   Early Procedural History of the Case

This action, filed on July 25, 2013, alleged that Apple was liable under the Fair Labor Standards Act ("FLSA") and California law for filing to pay non-exempt employees in its retail stores for time spent undergoing mandatory security searches.  Dkt. 1; Joint Class Counsel Decl., ¶3.[4]  The complaint was filed in the wake of a then-recent Ninth Circuit decision, *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. 2013), holding that such time was compensable under the FLSA.  *Id.* at 530-31.  In October 2013, the Court set a comprehensive schedule for the case through trial.  Dkt. 56.  Discovery began.  During the four-month period from October 2013 to January 2014, eleven depositions were taken or defended, fifteen sets of written discovery were served and answered, and over 2,800 pages of documents were produced.[5]  Multiple motions were also filed in this early phase of the case, all scheduled for hearing on February 20, 2014.  Dkt. 129.

### B.   Obstacles Overcome by Class Counsel, 2014 through 2015

By early 2014, a series of obstacles had begun piling up, all of which Class Counsel pushed through and ultimately overcame, leading to the $29.9 million settlement now before the Court.

---

[3]   All facts stated in this brief are supported by documents of record in this matter, including numerous orders of this Court; the Joint Class Counsel Decl.; and the Declarations of Kimberly A. Kralowec ("Kralowec Decl.") and Lee S. Shalov ("Shalov Decl.") filed concurrently herewith.

[4]   Two more actions with similar allegations were filed on August 14, 2013 and October 10, 2013.  *Kilker v. Apple Inc.*, No. 13-cv-3775-WHA (N.D. Cal.); *Kalin v. Apple Inc.*, No. 13-cv-4727-WHA (N.D. Cal.).  These actions were later consolidated with *Frlekin*.  Dkt. 78, 214.

[5]   Joint Class Counsel Decl., ¶52; Kralowec Decl., ¶17; Shalov Decl., ¶¶9-16.

### 1.   Obstacle #1: The February 20, 2014 Hearing and Order

During a critical hearing on February 20, 2014, the Court expressed considerable skepticism about the merits of the case, stating that "artful pleading" may have "left out critical facts that may … eviscerate every single claim." Dkt. 147 (Transcript of Proceedings, Feb. 20, 2014); *see also* Dkt. 132 at 25-26.  The Court directed Apple to move for summary judgment on all individual claims. Dkt. 132 at 2:10-11, 2:17.  With leave of Court, plaintiffs filed a detailed brief on March 27, 2014, together with further supporting evidence, to address the Court's concerns.  Dkt. 153, 153-1.

### 2.   Obstacle #2: Apple's First Summary Judgment Motion

Apple moved for summary judgment as directed on April 10, 2014.  Dkt. 155, 156, 156-1.[6] The motion included over 300 pages of evidence and expert testimony.  *Id.*  The opposition was filed on May 5, 2014.  Dkt. 159, 159-1 & Exs. A-N, 159-6.  The reply was filed on May 9, 2014.  Dkt. 160.

The May 22, 2014 hearing on the motion was lengthy.[7]  By order dated May 30, 2014, the Court denied Apple's summary judgment motion.  Dkt. 166.  The Court held that the claims were potentially meritorious, both legally and factually, despite the concerns the Court had expressed just three months before.  *Id.* at 5:4-8:7.  Put another way, through the efforts of plaintiffs' counsel, the Court developed a somewhat more favorable view of the case—and Apple's first attempt to obtain summary judgment was defeated.  At the same time, however, the Court made several comments suggesting that class certification was unlikely to be granted, such as that the case "involves many varying fact patterns" and "seem[s] to present a range of policies and practices at various stores, rather than a single crisp scenario."  *Id.* at 8:4-5.  The Court also raised the question of whether the search time would be compensable if the employees could "choose" to avoid being searched by leaving their belongings at home—an argument the Court later accepted in ruling on Apple's second summary judgment motion—and the possibility that some "employees may need to bring a bag to work for reasons they cannot control, such as the need for medication, feminine hygiene products, or disability accommodation."  *Id.* at 7:14-25.  Plaintiffs' counsel continued pursuing relief for the proposed class despite the many concerning comments made by the Court in the early stages of the litigation.

---

[6]      Apple also moved for summary judgment in the *Kalin* matter.  *Kalin* Dkt. 31-32.  The Court entered a single combined order on the motions.  Dkt. 166; *Kalin* Dkt. 41.

[7]      Dkt. 163, 167 (Transcript of Proceedings, May 22, 2014 (comprising 57 pages)).

### 3.     Obstacle #3: The Reversal by the U.S. Supreme Court in *Busk*

Meanwhile, on March 3, 2014, another setback occurred:  the U.S. Supreme Court granted cert. in *Busk*.  *Integrity Staffing Solutions, Inc. v. Busk*, 571 U.S. 1236 (2014).  As a result, this Court stayed all proceedings except discovery on the California claims.  Dkt. 166 at 8:25-28.  Over the next twelve months, fifteen more depositions were taken; further sets of written discovery were propounded and answered; over 62,500 more pages of documents were produced by Apple;[8] and comprehensive motion to compel, embracing numerous discovery disputes, was filed.  Dkt. 179-85.

Then, on December 9, 2014, the U.S. Supreme Court reversed the Ninth Circuit's decision in *Busk* and held that security search time is *not* compensable under the FLSA.  *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014).  The Supreme Court's decision eviscerated all claims asserted in the action except those arising under California law.  On December 23, 2014, the Court dismissed all claims except the California claims "with prejudice."  Dkt. 214 at 1:27-28.  The Court directed plaintiffs' counsel to move for leave to file a second amended and consolidated complaint. *Id.* at 2:3-10; see Dkt. 237 (granting this motion).  The consolidated complaint, which remains the operative complaint in the action, asserts violations of California law only.  Dkt. 220, Ex. A.

### 4.     Obstacle #4: Class Certification and Apple's Rule 23(f) Petition

After extensive further work, including review and analysis of Apple's 65,000+ pages of production and the significant discovery summarized above, Class Counsel moved for certification of the California claims on May 11, 2015.  Dkt. 241-45.  The motion included a detailed brief, hundreds of pages of evidence produced by Apple, and declarations of 21 proposed class members. *Id.*  Apple's extensive opposition, including multiple fact declarations, a proposed expert report, and over 500 pages of evidence, was filed on May 28, 2015.  Dkt. 255-60.  Plaintiffs' reply was filed on June 4, 2015, together with a motion to strike the proposed expert report.  Dkt. 271-272, 274, 281-82. The Court conducted a lengthy hearing on July 2, 2015.  Dkt. 283, 295 (Transcript of Proceedings); *see also* Dkt. 285, 288-89, 290, 291-92 (supplemental briefs ordered by Court).

At the hearing, the Court again raised the question of whether some class members may have had a "special need" to carry a bag to work.  *Id.* at 26:25-27:5, 34:11-24.  When the Court proposed

---

[8]     Joint Class Counsel Decl., ¶52; Kralowec Decl., ¶17; Shalov Decl., ¶¶3, 15-16, 21, 27.

that the class should be informed that no "special needs" theory would be asserted at trial, plaintiffs' counsel had no objection, because they believed it was irrelevant to Apple's liability. *Id.* at 35:8-19, 62:4-64:22, 98:20-99:7; *see* Dkt. 325-2 at 3, §2 (original class notice). This was a risky strategy, but plaintiffs' counsel believed in the merits of their theory that under California law, *all* security search time was compensable. Class Counsel pursued that theory all the way to the California Supreme Court and, as will be seen, they resoundingly prevailed.

On July 16, 2015, this Court granted class certification on the central compensability question, but also held that at trial, damages would "be proven via an old-fashioned claims process." Dkt. 297 at 13:13-15. The Court also directed that the class members must be notified that the question of compensability "will be ligated on a class-wide basis [under] the most common scenario, that is, an employee who voluntarily brought a bag to work purely for personal convenience," and that if they wished to assert a different theory, they would be required to intervene. *Id.* at 10:17-28.

A Court-ordered settlement conference took place before Magistrate Judge Spero on July 23, 2015, but the case did not settle. Dkt. 312. One week later, on July 30, 2015, Apple filed a Rule 23(f) petition challenging the class certification order. U.S. Court of Appeals, Ninth Circuit, Case No. 15-80131; Kralowec Decl., ¶18. Class Counsel answered the petition on August 12, 2015 (Kralowec Decl. ¶18 & Ex. C), and the Ninth Circuit summarily denied it on October 21, 2015. Dkt. 333.

Class notice was completed in September 2015. Dkt. 378, ¶3. Only 407 out of 14,291 class members (2.8%) opted out and no class member intervened. *Id.*; *see* Dkt. 416-1, ¶13.

### 5. Obstacle #5: Apple's Second Summary Judgment Motion and the Judgment Entered in Apple's Favor and Against the Plaintiffs for More than $34,000 in Costs

In its order granting class certification, the Court also ordered the parties to file cross-motions for summary judgment on the central question of whether the security search time was compensable under California law. Dkt. 297 at 14. These comprehensive motions were filed on October 1, 2015. Dkt. 314-19. Opposition and reply papers were filed on October 14 and 22, 2015. Dkt. 324-25, 334-35. Plaintiffs also moved, again, to strike Apple's proposed expert report. Dkt. 322.

After extensive briefing and a hearing, on November 7, 2015, the Court granted Apple's motion and denied plaintiffs' motion, concluding that the security searches were voluntary and

therefore non-compensable because the employees could "choose" to leave their personal belongings at home, and for the alternative reason that the activity did not constitute "work." Dkt. 339. On the same date, the Court entered judgment in Apple's favor. Dkt. 340. The Court subsequently amended the judgment to award Apple $34,859.12 in litigation costs. Dkt. 351, 352.

### C.   Obstacles Overcome by Class Counsel on Appeal, 2016 to 2020

Class Counsel commenced an appeal from the adverse judgment on December 3, 2015. Dkt. 342. Apple's offer to waive costs in exchange for dismissal of the appeal was declined. Kralowec Decl., ¶19. Substantial high-level appellate work, performed at a high risk of loss, then ensued.

### 1.   Obstacle #6: Class Counsel's Successful Handling of the Appeal to the Ninth Circuit, Leading to the First Published Opinion, *Frlekin v. Apple, Inc.*, 870 F.3d 867 (2017)

The main issue on appeal was whether the security search time met the definition of compensable "hours worked" within the meaning of Wage Order 7 of the California Industrial Welfare Commission ("IWC"). Under Wage Order 7, all "time during which an employee is subject to the control of the employer" is compensable, as is "all the time the employee is suffered or permitted to work, whether or not required to do so." 8 Cal. Code Regs. §11070, ¶2(G).

On June 27, 2016, Class Counsel filed a 60-page opening brief, 600 pages of excerpts of record in four volumes, and a motion for judicial notice of 40 additional pages of material.[9] The opening brief included a lengthy analysis of the development of the Wage Order's language dating back to 1916, plus extensive argument on the definition of "hours worked," including arguments based on the plain language of the Wage Order's text, the regulatory history of the Order's language, and the decisional law construing the provision to date. Kralowec Decl., ¶21 & Ex. E at 22-48. The opening brief asked the Ninth Circuit to either decide the question of compensability itself or refer the question to the California Supreme Court for decision. *Id.* Ex. E at 21-22.[10]

Apple's 60-page appellee's brief and a 68-page volume of supplemental excerpts of record

---

[9]   U.S. Court of Appeals, Ninth Circuit, Case No. 15-17382, Dkt. 11, 12, 13 ("9th Cir. Dkt."); Kralowec Decl., ¶21 & Exs. E, F, G. For the Court's convenience, a true and correct copy of the Ninth Circuit's docket is attached as Exhibit D to the Kralowec Decl., filed herewith.

[10]   Amicus curiae support was also organized. The California Employment Lawyers' Association ("CELA") filed an amicus brief on July 5, 2016. 9th Cir. Dkt. 18; Kralowec Decl. ¶43.

were filed on September 26, 2016.[11]   The reply brief and a second motion for judicial notice were filed by Class Counsel on December 23, 2016.[12]   Class Counsel performed extensive preparation for oral argument, including multiple moot court sessions.  Kralowec Decl., ¶47.  On July 11, 2017, oral argument was presented before a three-judge panel of the Ninth Circuit.  *Id.* ¶22.  On August 16, 2017, the Ninth Circuit issued a published opinion in which it certified the central question presented on appeal—whether the security search time was compensable under California law—to the California Supreme Court for decision.  *Frlekin v. Apple, Inc.*, 870 F.3d 867 (9th Cir. 2017).

        **2.**        **Obstacle #7: Class Counsel's Successful Handling of the Proceedings in the California Supreme Court, Leading to the Second Published Opinion, *Frlekin v. Apple Inc.*, 8 Cal.5th 1038 (2020)**

Substantial work followed before the California Supreme Court.  The first task was to persuade the Court to accept the certified question.  The detailed letter required by California Rule of Court 8.548(e)(1) urging the Supreme Court to accept the question was submitted on September 1, 2017.[13]   The letter also asked the Court restate the question to embrace technology checks (which had been omitted from the Ninth Circuit's statement of the question).[14]   *See Frlekin*, 870 F.3d at 870.

On September 20, 2017, the California Supreme Court entered an order agreeing to decide the certified question.[15]   A second full round of appellate briefing began.  A 52-page opening brief was filed on behalf of the certified class on December 19, 2017.  Apple filed its 61-page answer brief and a motion for judicial notice on March 19, 2018.  The reply brief of the certified class was filed on June 8, 2018, together with a motion to augment the record.  Kralowec Decl., ¶24 & Exs. M, N.

Work was also done to muster the support of amicus curiae organizations.  In June and July 2018, supporting amicus curiae briefs were filed by four organizations.  In support of Apple, amicus curiae briefs were filed by eight powerful employer-side groups.  On October 9, 2018, Class Counsel filed a 42-page omnibus answer to those briefs.  *Id.*, ¶24 & Ex. O.

---

[11]    9th Cir. Dkt. 29, 30; Kralowec Decl., ¶43.

[12]    9th Cir. Dkt. 36, 37; Kralowec Decl., ¶21 & Exs. H, I.

[13]    Kralowec Decl., ¶24 & Ex. K.

[14]    *Id.* ¶¶24, 48 & Ex. K.  Amicus support was organized for this effort as well.  *Id.* ¶48.

[15]    Cal. Supreme Ct. Case No. S243805 ("CSC Dkt."); see Kralowec Decl., ¶23 & Ex. J (copy of this complete docket for the Court's convenience).

On August 14, 2019, the California Supreme Court issued an order restating the certified question to encompass technology checks in addition to bag checks, as Class Counsel had requested. The Court permitted the parties to file supplemental briefs addressing the restated question.  On August 28, 2019, plaintiffs' supplemental brief regarding the application of California law to Apple's technology check policy was filed.  Apple filed a supplemental brief on the same day.  Class Counsel prepared a reply to Apple's brief and filed it on September 11, 2019.  *Id.* ¶24 & Exs. P, Q.

On November 13, 2019, the matter was placed on the Supreme Court's December oral argument calendar.  Extensive preparation for oral argument immediately ensued, including several moot court sessions.  Class Counsel presented oral argument before the seven members of the California Supreme Court on December 4, 2019.  Kralowec Decl., ¶25.

On February 13, 2020, the California Supreme Court issued its published opinion.  The opinion was a complete victory for plaintiffs and the certified class.  The Supreme Court held that all search-related time was compensable as a matter of law under the "control" test of Wage Order 7. *Frlekin*, 8 Cal.5th at 1045-57.  The work, however, was not over.  On February 28, 2020, Apple filed a petition for rehearing, and Class Counsel filed a 22-page answer on March 9, 2020.[16]  On May 13, 2020, the Supreme Court summarily denied Apple's petition.  The next day, the Court advised the Ninth Circuit by letter that its opinion was final.  9th Cir. Dkt. 71.

### 3. Obstacle #8: Class Counsel's Successful Handling of the Further Proceedings in the Ninth Circuit, Leading to the Third Published Opinion, *Frlekin v. Apple, Inc.*, 979 F.3d 639 (2020)

The day after the California Supreme Court's opinion became final, Class Counsel asked the Ninth Circuit to reverse the judgment with directions to deny Apple's summary judgment motion, grant plaintiffs' summary judgment motion, and conduct further proceedings necessary to award damages to the certified class.  9th Cir. Dkt. 70; Kralowec Decl., ¶26.  Although this is ultimately what the Ninth Circuit directed, more work was necessary to get there.

On May 28, 2020, the Ninth Circuit ordered further briefing on the impact of the California Supreme Court's opinion.  Apple's supplemental brief was filed on June 11, 2020.  Class Counsel

---

[16]      CSC Dkt. at pp. 12-13; Kralowec Decl., ¶24(h) & Ex. R.

filed a response on June 25, 2020 together with supplemental excerpts of record and a further motion for judicial notice.  9th Cir. Dkt. 75, 76, 81, 82; Kralowec Decl., ¶26 & Ex. S.

On September 2, 2020, the Ninth Circuit held that Apple's summary judgment motion should have been denied and that plaintiffs' summary judgment motion should have been granted.  *Frlekin v. Apple, Inc.*, 973 F.3d 947 (9th Cir. 2020).  Apple filed a rehearing petition, which Class Counsel answered on October 9, 2010.  9th Cir. Dkt. 91-94; Kralowec Decl., ¶26 & Ex. T.

On October 29, 2020, the Ninth Circuit issued a slightly amended opinion.  *Frlekin*, 979 F.3d 639.  On November 6, 2020, it issued its mandate.  Dkt. 361.  Almost five years after the appeal on December 3, 2015, the appellate-level work was finally complete.

### D.   Obstacles Overcome by Class Counsel in Post-Appeal Proceedings, 2021

#### 1.   Obstacle #9: Class Counsel's Work in Obtaining an Order Reversing the Prior Judgment in Apple's Favor and Entering Judgment on Liability in Favor of the Certified Class

In late 2020, litigation resumed in the district court.  After a case management conference on December 16, 2020 (Dkt. 369), significant further activity ensued, including a motion for entry of an order granting plaintiffs' original summary judgment motion, filed at the Court's direction.  Dkt. 375-78, 385, 388.  On April 14, 2021, in accordance with the Ninth Circuit's second opinion, this Court vacated the judgment in Apple's favor, denied Apple's summary judgment motion, granted plaintiffs' motion on liability, and vacated the $34,859.12 costs award.  Dkt. 407.

#### 2.   Obstacle #10: This Court's Order Directing a Claims-Made Trial Procedure and Preserving Apple's Remaining Defenses on Damages, Including Potential "*De Minimis*" and "Good Faith" Defenses

On January 21, 2021, at the Court's direction, plaintiffs moved for an order approving a proposed notice and claims procedure for purposes of trial.  Dkt. 377-78.  Opposition and reply briefs were filed.  Dkt. 386-87.  Ultimately, the Court ordered that to establish damages, the class members would be required to submit individual claim forms after notice, that Apple would be allowed to challenge the claims and potentially depose the class members, and that a full schedule for trial and pre-trial deadlines would be set after the notice process was completed.  Dkt. 407.

### E. The Outstanding Settlement Achieved by Class Counsel in the Face of These Formidable Obstacles

Soon after the California Supreme Court decision, the parties agreed to participate in mediation. After lengthy and contentious negotiations, Apple agreed to pay $29.9 million to settle the case. On May 13, 2021, the parties filed a joint notice of settlement stating that the matter had settled subject to the Court's approval. Dkt. 408. This Court preliminarily approved the settlement—describing it as "the largest of any security-check suit in California history"—on December 16, 2021. Dkt. 431 at 3:8. Notice has been completed, and Class Counsel are informed that no objections to the proposed attorneys' fees and costs awards, which were fully disclosed in the class notice, have been received to date. Kralowec Decl., ¶27.

## III. ARGUMENT

### A. An Award of Attorneys' Fees Should Be Made from the Common Fund

Class Counsel request a fee award of $9,966,666.67, which represents one third of the recovery. This award is justified both legally and factually, as explained below.

#### 1. The Common Fund Doctrine and Methods for Calculating Fees

The Supreme Court has recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970). The purpose of the common fund doctrine is to avoid unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (hereafter *WPPSS*); *see also Laffitte v. Robert Half Int'l., Inc.*, 1 Cal.5th 480, 489-90 (2016) (California courts recognize the common fund doctrine).

When, as here, the claims arise under California law, California law governs the calculation and award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)). Both the Ninth Circuit and California courts recognize two methods of awarding attorneys' fees in class action cases: the percentage-of-recovery method and the lodestar/multiplier method. *WPPSS*, 19 F.3d at 1295; *Laffitte*, 1 Cal.5th at 489-90; *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254

12

MEMO. IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS
Case No. 13-cv-3451-WHA; Consolidated Case Nos. 13-cv-4727-WHA, 13-cv-3775-WHA

(2001).  Trial courts may cross-check one method against the other to ensure that the fee award is reasonable.  *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 944 (9th Cir. 2011); *Laffitte*, 1 Cal. 5th at 503; *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009).

### 2.    An Award of One-Third of the Recovery Is Justified in this Case

The percentage-of-recovery method is most appropriate where, as here, the settlement results in a true common fund.  *Laguna v. Coverall North America Corp.*, 753 F.3d 918, 922 (9th Cir. 2014). The "'recognized advantages of the percentage method'" include "'relative ease of calculation,'" which reduces the burden on the court, "alignment of incentives between counsel and the class," and "a better approximation of [private] market conditions'" in contingency-fee litigation.  *Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 WL 5826230, *16 (N.D. Cal. Dec. 8, 2021) (quoting *Laffitte*, 1 Cal.5th at 503, 505)).  The percentage method has long been the "dominant" method of determining fees in cases like this one, in which counsel's efforts generated a non-reversionary cash settlement fund in a fixed amount for the benefit of the class.  *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007) (Conti, J.) (citing *Vizcaino*, 290 F.3d at 1046; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311; *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

Although the Ninth Circuit has established a "benchmark" fee of 25% for common fund cases, which a district court may increase or decrease if warranted in a particular case, *Six Mexican Workers*, 904 F.2d at 1311 (9th Cir. 1990), there is no such benchmark under California law.  In appropriate cases, state and federal courts applying the percentage-of-recovery method frequently award 33-1/3% of the common fund.  *See*, *e.g.*, *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average around one-third of the recovery); *Laffitte*, 1 Cal.5th at 486-88 (affirming 33-1/3% fee); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (same); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 456, 463 (9th Cir. 2000) (same).[17]

---

[17]    *Accord Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF, 2022 WL 254349, *5-*6 (N.D. Cal. Jan. 27, 2022); *Moreno v. Capital Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021 WL 4133860, *4-*6 (N.D. Cal. Sept. 10, 2021); *Chavez v. Converse, Inc.*, No. 15-CV-03746-NC, 2020 WL 10575028, *5-*6 (N.D. Cal. Nov. 25, 2020); *Greer v. Dick's Sporting Goods.*,

In *Vizcaino*, the Ninth Circuit identified five factors relevant to determining whether a particular percentage fee is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the complexity of the case, the skill required and the quality of work performed by plaintiffs' counsel; (4) the contingent nature of the fee and the financial burden carried by plaintiffs' counsel; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50. Applying the *Vizcaino* analysis, the requested one-third fee is reasonable under the circumstances of this case.

### a.    The Results Achieved: Substantial Benefits to the Class

As a result of Class Counsel's efforts, a $29.9 million non-reversionary monetary recovery has been established for the benefit of the class. This an outstanding result.

The estimated average *net* sum of $1,286.96 to be distributed to the class members (after deduction of the proposed awards of attorneys' fees and costs, named plaintiff payments, and settlement administration costs) represents 90% to 160% of average estimated unpaid wages, *plus* pre-judgment interest, at contract wage rates—or 229% to 407% at minimum wage rates—without any claims requirement and with no reversion of any sum to the defendant. *See* Dkt. 416 at 3-4, 17-18; Joint Class Counsel Decl., ¶¶37, 64-67, & Ex. 2. This outcome is exceptional and fully justifies the proposed one-third fee award. *See*, *e.g.*, *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1020-21 (E.D. Cal. 2019) (recovery of 48% to 80% of estimated *gross* damages (31% to 51% of estimated *net* damages) "weighs in favor of a higher-than-benchmark award of fees"; awarding 33% of common fund); *Lidoderm*, 2018 WL 4620695 at *2 (recovery of 46% of estimated *gross* damages, or 29% of estimated *net* damages, justified one third fee award); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, *19 (C.D. Cal. Jun. 10, 2005) (recovery of 36% of estimated *gross* damages, or 23% of estimated *net* damages, was an "exceptional result" and justified one third fee award).

When awarding fees, courts routinely rely on the estimated *gross* recovery per class member,

---

*Inc.*, No. 2:15-CV-01063-KJM, 2020 WL 5535399, *11 (E.D. Cal. Sept. 15, 2020); *Jordan v. Michael Page Int'l, Inc.*, 2020 WL 4919732, *8-*10 (C.D. Cal. Jul. 2, 2020); *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1018-23 (E.D. Cal. 2019); *In re Lidoderm Antitr. Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, *1 (N.D. Cal. Sept. 20, 2018); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD, 2017 WL 2214936 (E.D. Cal. May 19, 2017) (all awarding one third under *Vizcaino*).

rather than the estimated *net* recovery, in order to assess the value to the class of the monetary settlement achieved by counsel.  *E.g.*, *Carlin*, 380 F.Supp.3d at 1020-21; *Lidoderm*, 2018 WL 4620695 at *2; *Omnivision*, 559 F.Supp.2d at 1046; *see also Heritage Bond*, 2005 WL 1594403 at *19 (considering both).  In this case, the average *gross* share is $2,036.37 per class member, which represents 254% of average estimated unpaid base wages at contract rates, or 143% of average estimated unpaid base wages at contract rates, plus pre-judgment interest.  *See* Joint Class Counsel Decl. ¶¶65-67 & Ex. 2.[18]  At minimum wage rates, these percentages increase to 643% and 362%. *See id.*  Whether calculated using gross or net average recoveries, the class members will essentially be made whole for all their lost wages, plus interest, and on top of that, they will receive a portion of the potentially recoverable penalties and liquidated damages—a share of the latter that recognizes Apple's yet-to-be-litigated defenses.[19]  This outcome is an outstanding one.

What is more, the $29.9 million recovery is not the only benefit that Class Counsel's efforts yielded for the class.  Through hard work, persistence, and skilled appellate advocacy, Class Counsel obtained a published, binding California Supreme Court opinion construing the "control" test for compensable "hours worked," and doing so broadly in favor of protecting the class.  Although Apple discontinued its search policy in December 2015, there was no guarantee that Apple would not have reinstituted such a policy had Class Counsel not prevailed in the California Supreme Court.  The Supreme Court's opinion will preclude Apple from re-imposing an unpaid security search policy on any of its current and future retail store employees in California, functioning as a *de facto* injunction of such conduct and eliminating any purported "good faith" defense on Apple's part.  In this way, Class Counsel's work "generated benefits beyond the cash settlement fund."  *Vizcaino*, 290 F.3d at 1049.  The value of this non-monetary benefit to Apple employees, including at least some of the

---

[18]     The average gross recovery amounts to 32% of the average *maximum* possible recovery in this case—that is, estimated unpaid wages at contract rates, plus pre-judgment interest, plus the maximum recoverable liquidated damages and penalties—or 37% if minimum wage rates are used instead of contract rates.  *See* Joint Class Counsel Decl., ¶68.  The average *net* recovery amounts to 20.2% of that maximum sum (or 23.4% if minimum wage rates are used).  *Id.*  However parsed, this result is exceptional given the risks involved in the damages phase of the case, including the claims process that would have ensued and Apple's remaining defenses.  *Id.* ¶¶69-70.

[19]     *See* Dkt. 416 at 15:25-16:8, 18:4-19:3; Joint Class Counsel Decl., ¶¶69-70 (discussing Apple's defenses to these possible remedies, including Apple's "good faith" defense).

class members, can be reasonably quantified.  The Supreme Court's opinion became final on May 13, 2020.  During the 26-month period from that date through the estimated date of final approval (July 7, 2022), Apple's employees have either been paid or been spared over $4.7 million in average estimated unpaid search time.[20]  Put another way, the binding opinion represents an estimated $2.2 million per year in unpaid wages (or uncontrolled personal time) to Apple's employees.

These benefits are significant, will continue to accrue indefinitely, and may be considered in assessing the propriety of the proposed one-third fee award.  *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *Vizcaino*, 290 F.3d at 1049.

### b.    The Results Achieved: Benefits to Employees Statewide

The Supreme Court opinion obtained by Class Counsel benefited not only the class members and Apple's current and future employees, but also "benefited employers and workers [state]wide by clarifying the law of" compensable "hours worked."  *See Vizcaino*, 290 F.3d at 1049.  As the Ninth Circuit observed, the compensability question was "of extreme importance to numerous employees and employers in California," had "significant legal, economic, and practical consequences for employers and employees throughout the state of California," and its resolution would "govern the outcome of many disputes in both state and federal courts in the Ninth Circuit."  *Frlekin*, 870 F.3d at 868, 873.[21]  Due to Class Counsel's persistent efforts, the compensability question has been resolved in favor of employees across California—security search time is compensable.  *Frlekin*, 8 Cal.5th at 1045-57.  Such extraordinary "non-monetary benefits conferred by the litigation are a relevant circumstance" in determining an appropriate percentage fee to be awarded to the attorneys who achieved it.  *Id.* (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *Pacific Enters.*, 47

---

[20]    This figure assumes that Apple employs 5,000 non-exempt retail sales employees (about one third of the class size) in California at any one time.  It also uses the class members' average contract rate, which does not account for wage increases since the end of the class period, which was six and a half years ago.  Assuming an average unpaid Check duration of 5 minutes, and an average contract rate of $20.89, a full-time Apple employee would accrue $36.42 in unpaid search time per month.  Assuming 5,000 employees, that amounts to $182,100 per month in unpaid search time. *See* Joint Class Counsel Decl., ¶¶65-66 (explaining figures used to compute estimated average unpaid wages).

[21]    Because all of California's Wage Orders have the same relevant "control" test language as Wage Order 7, the California Supreme Court's analysis in *Frlekin* applies to all non-exempt employees working across California in all industries.

1  F.3d at 379; *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C. Cir.

2  1986) (considering "the public benefits of counsel's efforts," including their "success in overturning"

3  unfavorable decisions, "in determining the level of reasonable compensation")); *see also Carlin*, 380

4  F.Supp.3d at 1020 (fact that class counsel "successfully argued for reinstatement of their claims at

5  the Ninth Circuit" justified higher-than-benchmark fee award of 33%); *Thompson v. County of Santa*

6  *Clara*, 1990 WL 300239, *29 (N.D. Cal. Aug. 2, 1990) (class counsel's work may be considered an

7  "exceptional success" when "a new legal precedent [is] established").

8      Class Counsel's work in obtaining the *Frlekin* opinion has already materially benefited

9  numerous members of other proposed and certified classes across California.  *See*, *e.g.*, *Parsittie v.*

10  *Schneider Logistics, Inc.*, 859 Fed.Appx. 106, 108 (9th Cir. 2021) (citing *Frlekin* in reversing

11  dismissal of security search claim); *Boone v. Amazon.com Servs., LLC*, ___ F.Supp.3d ___, 2022 WL

12  780215, *4-*7 (E.D. Cal. Mar. 11, 2022) (citing *Frlekin* in denying motion to dismiss plaintiffs' claim

13  for time spent undergoing COVID-19 screenings at Amazon fulfillment centers); *Hassell v. Uber*

14  *Techs., Inc.*, No. 20-cv-04062-PJH, 2021 WL 2531076, *15-*18 (N.D. Cal. Jun. 21, 2021) (citing

15  *Frlekin* in denying motion to dismiss claim by Uber Eats drivers for unpaid waiting time); *see also*

16  *Vasquez v. Jan-Pro Franchising Int., Inc.*, 10 Cal.5th 944, 958 (2021) (citing *Frlekin* in holding that

17  landmark *Dynamex* opinion on employee misclassification applies retroactively to all pending cases);

18  *Oliver v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 51 Cal.App.5th 1, 21-25 (2020) (citing *Frlekin*

19  in reversing summary judgment of claim for service technicians' unpaid commute time).

20      In view of the exceptional success and results achieved by Class Counsel, a fee award of one

21  third of the common fund is justified and appropriate.

22              **c.    The Risks of Litigation**

23      This litigation presented a very significant risk of total failure.  Apple pursued a vigorous

24  defense from day one.  Apple moved for summary judgment twice, won its second summary judgment

25  motion, and obtained a class-wide judgment on the merits in its favor—plus an award of $34,859.12

26  in costs.  Dkt. 351.  At that point, Class Counsel were faced with the decision whether to allow the

27  judgment to become final or pursue an appeal on the merits.  At the time, the federal appeals court

28

reversal rate in civil matters was 4.2%.[22]  In spite of the low odds, Class Counsel devoted thousands of hours to full briefing in the Ninth Circuit and a second round of full briefing in the California Supreme Court, all while facing a very low statistical probability of success.[23]

The risk undertaken by Class Counsel is underscored by the then-unsettled state of the decisional law governing compensable "hours worked" in the context of security searches.  As this Court observed, "there [was] no decision on point."  Dkt. 339 at 21-22.  The Ninth Circuit, too, found that "no clear controlling California precedent exists."  *Frlekin I*, 870 F.3d at 868.[24]  There was no guarantee that either the Ninth Circuit or the California Supreme Court would concur with Class Counsel's interpretation of the Wage Orders' definition of "hours worked," or with Class Counsel's interpretation of the two most closely relevant decisions, *Morillon* and *Overton*.[25]  Nevertheless, Class Counsel persisted in pursing all available arguments on appeal for the benefit of the named plaintiffs and the certified class.  And they won.  The California Supreme Court agreed with their reading of the Wage Orders' text and with their interpretations of *Morillion*, *Overton*, and other decisions construing the "control" test in differing factual contexts.  *Frlekin*, 8 Cal.5th at 1046-57.

Even before judgment was entered in Apple's favor, the case presented a series of setbacks, all of which increased the risk of failure and all of which Class Counsel overcame.  Class Counsel persisted even after the Court expressed serious reservations about the substantive merits of the case in February 2014 (Dkt. 147, 132), and they subsequently defeated Apple's first summary judgment motion.  Dkt. 166.  Class Counsel also persisted after December 9, 2014, when the U.S. Supreme Court reversed the Ninth Circuit's *Busk* opinion and "held that time spent during mandatory security screenings was not compensable under the FLSA."  Dkt. 339 at 5:10-11.  Despite this significant setback, Class Counsel filed a comprehensive class certification motion on May 11, 2015 (Dkt. 241-48), five months after the U.S. Supreme Court's reversal of *Busk*, with no guarantee that they could

---

[22]    https://www.uscourts.gov/news/2016/12/20/just-facts-us-courts-appeals

[23]    During the relevant time period, the California Supreme Court granted only 3-7% of petitions for review.   https://www.courts.ca.gov/documents/2019-Court-Statistics-Report.pdf

[24]    *See also Frlekin*, 870 F.3d at 870 ("California law provides no clear answer to the certified question.").  *Accord* Cal. R. Ct. 8.548(a)(2) ("no controlling precedent").

[25]    *Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000); *Overton v. Walt Disney Co.*, 136 Cal.App.4th 263 (2006).

overcome "the absence of … precedents" on the merits and prevail under California law. *Viscaino*, 290 F.3d at 1048. The motion was successful, and Class Counsel also defeated Apple's Rule 23(f) petition. They incurred the cost of class notice (almost $95,000 (Shalov Decl., ¶76 & Ex. 3)), again without any assurance that the cost would ever be recouped. They mounted a vigorous opposition to Apple's second summary judgment motion (Dkt. 319, 322, 324, 334), and initially lost every point, reviving the case only through five years of high-level appellate litigation in the Ninth Circuit and the California Supreme Court, followed at long last by an order of this Court in April 2021 granting plaintiffs' motion for summary judgment on liability. Dkt. 407. The ensuing $29.9 million non-reversionary settlement is the fruit of Class Counsel's labor, skill, and persistence.

With each unfavorable ruling, the case became riskier and riskier. Nonetheless, Class Counsel did not give up and "succeeded in reviving their case on appeal." *Vizcaino*, 290 F.3d at 1048. All of the high-risk work was performed in the face of a formidable adversary. Apple is one of the most powerful technology companies in the country, and it vigorously defended this action, asserting every available defense at every stage of the litigation. *Cf. WPPSS*, 19 F.3d at 1301 n.10 ("The stronger the defense, the higher the risk involved … and the greater the [fee] necessary to compensate plaintiff's attorney for bringing the action."); *Carlin*, 380 F.Supp.3d at 1020 (overcoming "vigorous opposition" of "exceptionally skilled [defense] counsel" warranted above-benchmark fee percentage of 33%).

In short, this case was "extremely risky for class counsel" and the "results achieved were 'nothing short of remarkable.'" *Vizcaino*, 290 F.3d at 1048 (quoting *In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 339 (1998)). The proposed one-third fee is appropriate to reward Class Counsel for undertaking such high-risk litigation and for doing so skillfully and successfully.

### d. The Complexity of the Case, the Skill Required and the Quality of the Work Performed

The complexity of this class action is evident from the record, including the California Supreme Court's comprehensive opinion; this Court's own detailed orders on Apple's summary judgment motions and plaintiffs' class certification motion; the volume of discovery conducted; the magnitude of the evidentiary record presented on class certification and on summary judgment; and the fact that the litigation has been ongoing for nine years, since July 2013, through appeals in the

Ninth Circuit and California Supreme Court.  The skill employed and the quality of the work performed by Class Counsel are demonstrated by the outstanding results they achieved and the volume and magnitude of the risks they overcame on their way to the $29.9 million settlement.  Class Counsel brought to bear their extensive and award-winning prior experience handling wage and hour class actions and appellate litigation in the Ninth Circuit and California Supreme Court.[26]

Successful pursuit of a complex class action requires unique skills and abilities.  *Carlin*, 380 F.Supp.3d at 1021; *Joh v. American Income Life Ins. Co.*, No. 18-cv-06364-TSH, 2021 WL 66305, *7 (N.D. Cal. Jan.7, 2021) (citing *Omnivision*, 559 F.Supp.2d at 1047).  That is particularly true in this case.  Class Counsel prevailed without the benefit of any factually on-point precedents, both on the merits of their "hours worked" theory of liability and on the application of class certification principles to that theory.  The case also required considerable appellate expertise in order to achieve a reversal of an unfavorable judgment that, had it become final, would have eliminated the case entirely and would have bound all absent members of the certified class.  "[T]he quality of Class Counsel's effort, experience and skill is demonstrated in the exceptional result achieved."  *In re Heritage Bond Litig.*, 2005 WL 1594403 at *19.

The quality of opposing counsel is also important in evaluating the excellence of Class Counsel's work.  *See In Re Equity Funding Corp. Sec. Litig.*, 438 F.Supp. 1303, 1337 (C.D. Cal. 1977) (counsel who faced off "against established and skillful defense lawyers … should be compensated accordingly").[27]  Apple was represented by three prominent defense firms—Littler Mendelson; Gibson Dunn & Crutcher; and DLA Piper—all with significant experience in complex litigation, including wage and hour class actions.  Apple retained Theodore J. Boutrous, Jr., one of the most well-known and successful appellate specialists in the nation, to represent it in the California Supreme Court.[28]  That Class Counsel prevailed in the face of such capable opposition further

---

[26]     Joint Class Counsel Decl., ¶¶74-76, 79-85 & Exs. 3, 4; Kralowec Decl., ¶¶4-12 & Ex. A; Shalov Decl., ¶¶79-85 & Exs. 8-11.

[27]     *In re: Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, *6 (N.D. Cal. Mar. 17, 2021) ("Here, Class Counsel faced a company [Apple] with significant financial and legal resources. … Apple's attorneys are highly qualified, litigation savvy, and aggressive.").

[28]     Kralowec Decl., ¶25.  For example, Mr. Boutrous successfully represented the defendant in a very high profile class action, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

underscores the high quality of the work and skill they brought to bear for the benefit of the class.[29]

### e.   The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel

All plaintiffs' counsel undertook this litigation on a pure contingency basis.[30]   Class Counsel pursued the litigation for over eight years in the face of significant setbacks, expending thousands of hours in professional time and declining other potentially remunerative work.[31]   "These burdens are relevant circumstances." *Vizcaino*, 290 F.3d at 1050 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311).   Attorneys should be "reward[ed]" "for taking the risk of non-payment by paying them a premium … for winning contingency cases," thereby "assuring competent representation for plaintiffs who could not afford to pay on an hourly basis …." *WPPSS*, 19 F.3d at 1299-1300.   What is more, the firms representing plaintiffs collectively incurred over $372,000 in out-of-pocket litigation costs (as discussed in Part III.B, *infra*).   "This substantial outlay, when there [was] a risk that none of it [would] be recovered, further supports the award of the requested fees." *Omnivision*, 559 F. Supp. 2d at 1047.   "A higher-than-benchmark award exists to reward counsel for investing "substantial time, effort, and money, especially in light of the risks of recovering nothing." *Carlin*, 380 F.Supp.3d at 1021 (quoting *WPPSS*, 19 F.3d at 1299-300); *see also Vizcaino*, 290 F.3d at 1051 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.").

### f.   Awards in Comparable Cases

This case generated a landmark California Supreme Court precedent on the "control" test for compensable "hours worked."   In other wage and hour cases generating comparable California Supreme Court precedents, class counsel were awarded at least one third of the common fund. *E.g.*, *Augustus v. American Comm. Sec. Servs.*, 2017 WL 11417614 (Cal. Super. Jul. 6, 2017) (awarding

---

[29]     *See*, *e.g.*, *In re Nat'l Collegiate Athletic Assn. etc. Antitrust Litig.*, No. 4:14-md-2541-CA, 2017 WL 6040065, *3 (N.D. Cal. Dec. 6, 2017) (hereafter "*NCAA*") ("Plaintiffs' counsel achieved these exceptional raw-dollar, percentage, and per capita results despite facing off against some of the best, and most well-resourced, defense lawyers in the country."); *In re Heritage Bond*, 2005 WL 1594403, *20 (noting defense counsel's "local and nationwide reputations for vigorous advocacy in the defense of their clients" in approving one-third fee to plaintiffs' counsel).

[30]     Joint Class Counsel Decl., ¶53; Kralowec Decl., ¶82; Shalov Decl., ¶5; Blanchard Decl., ¶10; Dion-Kindem Decl., ¶12; Ginsberg Decl., ¶19.

[31]     Kralowec Decl., ¶¶83-84; Shalov Decl., ¶¶4-5.

21

33.3% in fees to counsel responsible for *Augustus v. ABM Security Servs., Inc.*, 2 Cal.5th 257 (2016));

*Hohnbaum v. Brinker Rest. Corp.*, San Diego Super. Ct., no. CIG834348, Order filed Dec. 12, 2014

(Kralowec Decl., ¶28 & Ex. Y) (awarding 41.8% in fees to counsel whose work "resulted in a

landmark Supreme Court case, *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012)");

*see also Rodriguez*, 2022 WL 254349 at *6 (awarding 33.3% in fees to counsel who obtained reversal

of a defense judgment by successfully appealing to the Ninth Circuit, generating a published wage

and hour precedent, *Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810 (9th Cir. 2019)).

### 3.    A Lodestar Cross-Check Confirms that the Proposed Fee Is Reasonable

Generally, a district court is "not required" to conduct a lodestar cross-check to assess the

reasonableness of a fee award.  *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748

(9th Cir. 2017).  A district court may, however, elect to perform such a check in order to confirm "the

reasonableness of the percentage award."  *Vizcaino*, 290 F.3d at 1050.  Even a pure lodestar-based

fee award does not require mathematical precision.  *Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir.

2000)[32]; *Laffitte*, 1 Cal.5th at 505.  "Where a lodestar is merely being used as a cross-check, the court

'may use a rough calculation ….'"  *Joh*, 2021 WL 66305 at *7 (quoting *Aguilar*, 2017 WL 2214936

at *5));  *Kang*, 2021 WL 5826230, *17 ("on a lodestar cross-check this Court is not required to

flyspeck the time sheets"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal.

2015) ("lodestar cross-check calculation need entail neither mathematical precision nor bean

counting").  "[T]he lodestar calculation can be helpful in suggesting a higher percentage when," as in

this case, the "litigation has been protracted."  *Vizcaino*, 290 F.3d at 1050.

Class Counsel's lodestar[33] to date is $8,811,283.25, reflecting 9,981.85 hours of professional

time that have been devoted to this case thus far.  Kralowec Decl. ¶13; Shalov Decl. ¶72-73.  The

other law firms representing plaintiffs have accumulated a lodestar of $1,093,343.75, reflecting

1,420.75 hours of professional time.[34]  The combined lodestar for Class Counsel and other plaintiffs'

---

[32]    *Overruled on other grounds*, *Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012).

[33]    All lodestar figures are stated at current hourly rates.  *See Vizcaino*, 290 F.3d at 1051 (affirming use of current rates "to compensate for delay" in fee payment).  The figures exclude time spent on this motion and on the motion for approval of named plaintiff payments, filed herewith.

[34]    Blanchard Decl., ¶9; Dion-Kindem Decl., ¶11; Ginsberg Decl., ¶13.

counsel is $9,904,627.00, representing 11,402.6 total hours of professional time.[35]   The lodestar

figures are based on hourly rates ranging from $310 for paralegals up to $1,075 for senior partners,

which have been accepted by other courts as fair and reasonable.[36]   The blended rate is $868.83 per

hour.  Kralowec Decl., ¶89.

Based on the current combined lodestar, the proposed fee award of $9,966,666.67 represents

a multiplier of 1.0063.  This is eminently reasonable in view of "the substantial risk class counsel

faced, compounded by the litigation's duration and complexity"—factors that would have justified a

significantly higher multiplier under both federal and California law.  *Vizcaino*, 290 F.3d at 1051

(affirming multiplier of 3.65); *Omnivision*, 559 F.Supp.2d at 1048 (courts have approved multipliers

between 1 and 4); *NCAA*, 2017 WL 6040065 at *7 (approving 3.66 multiplier); *Wershba v. Apple

Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher");

*Chavez*, 162 Cal.App.4th at 66 (2.5 multiplier).

Between now and the close of settlement administration, Class Counsel anticipate devoting

additional hours to such tasks as communicating with class members, coordinating with the

Settlement Administrator and defense counsel, drafting the final approval motion, presenting

argument at the final approval hearing, and overseeing post-approval distribution.  Kralowec Decl.

¶70; Shalov Decl. ¶74.  As the litigation continues, the multiplier will become even more modest and

will likely become a fractional multiplier of less than 1.0 before the conclusion of the litigation.

---

[35]   Kralowec Decl., ¶90.  Detailed summaries of the work performed and time spent from inception through the present are set forth in the declarations of Class Counsel and other plaintiffs' counsel, filed herewith.  Each firm is responsible for the contents of its own declaration.

[36]   Kralowec Decl., ¶¶71-81; Shalov Decl., ¶¶64-66, 72; Blanchard Decl., ¶8; Dion-Kindem Decl., ¶10; Ginsberg Decl., ¶¶13, 18.   These rates fall well within the range approved in other class action litigation in this district in recent years.  *See* , *e.g.*, *Kang*, 2021 WL 5826230 at *17 (approving rates ranging from $350 for associates to $950 for partners and $1,150 for "experienced appellate counsel"); *Lidoderm*, 2018 WL 4620695 at *2 (approving as "reasonable" rates "rang[ing] from $350 to $1,050 for partners and senior counsel, $300 to $675 for associates, and $100 to $400 for paralegals and other litigation staff"); *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, *2 (N.D. Cal. Sept. 24, 2018) (3.5 years ago; approving hourly rates ranging from $275 for paralegals to $1,030 for senior partners as "high but within the range of reasonable"); *NCAA*, 2017 WL 6040065 at *8 (four years ago; approving partner rates from $578 to $1,035; "of counsel" rates from $450 to $900, associate rates from $350 to $635, "staff and law clerk" rages from $175 to $225; "a reputable survey of billing rates" shows rates of "$200 to $1,080" for "attorneys in California in 2015").

In sum, a lodestar cross-check confirms that a fee award of one third of the common fund is reasonable and appropriate in this case.

### 4. An Award of Fees as a Percentage of the Total Settlement Amount Is Reasonable and Proper

The Settlement Agreement contemplates that the fee award be calculated as a percentage of the Total Settlement Amount, not the Net Settlement Amount.  Dkt. 416-2 at ¶3.4.1.3; *id.* at p. 56 of 140, ¶4.[37]  This approach to attorneys' fees is consistent with both federal and California law. Awarding fees as a percentage of the gross settlement is equitable because it spreads the fees "proportionally among those benefited by the suit," "in the exact proportion that the value of [each class member's] claim bears to the total recovery."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479, 480 (1980); *see Laffitte*, 1 Cal.5th at 486, 506 (affirming fee award calculated as percentage of gross settlement fund).[38]  For the reasons explained in detail above, an award of one third of the gross settlement amount is reasonable and appropriate in view of the excellent results achieved through the extraordinary efforts and success of Class Counsel.  As a cross-check, the requested fee award would represent 33.91% of the estimated *net* settlement amount of $29,388,365.16 (after deducting litigation costs of $372,134.84 (detailed below), settlement administration costs of $89,500 (SA ¶3.4.1.5), and proposed named plaintiff payments of $50,000 (SA ¶¶3.4.1.1, 3.4.1.2), and a multiplier of 1.01.  In view of the high quality of the work performed, the risks undertaken, and the results achieved by Class Counsel, an award of 33.91% of the net settlement amount is as reasonable and appropriate as an award of 33.33% of the gross settlement amount.  As the Ninth Circuit has held, in a proper case, if fees are calculated as a percentage of "net recovery," a *higher* percentage of up to "thirty-five percent net would be reasonable."  *Powers*, 229 F.3d at 1258.[39]  Here, the higher percentage would

---

[37]     The class was notified accordingly.  *See* Kralowec Decl., ¶27 & Exs. U-X (final forms of notice provided to the class advising them of proposed fee award).

[38]     *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (affirming fee award calculated as percentage of "entire" settlement fund); *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (rejecting objector's argument that fee percentage should have been applied to "net recovery"); *In re Mego*, 213 F.3d at 456, 463 (affirming award calculated as percentage of gross settlement); *Vizcaino*, 290 F.3d at 1052 (same); *Pacific Enters.*, 47 F.3d at 379 (same).

[39]     *See Spears v. First American Eappraiseit*, No. 5:08-cv-00868-RMW, 2015 WL 1906126, *2 (N.D. Cal. Apr. 27, 2015) (awarding 35% of net settlement fund).

be an increase of 0.58%, from 33.33% to 33.91%.  Such an award is justified in this matter.

### B.   An Award of Litigation Costs Should Be Made from the Common Fund

In a common fund settlement, Class Counsel are entitled to recover the reasonable expenses incurred in prosecuting the litigation.  Fed. R. Civ. P. 23(h); *Omnivision*, 559 F.Supp.2d at 1047.  Here, Class Counsel initially estimated that the out-of-pocket litigation costs incurred by all plaintiffs' counsel would not exceed $450,000.  Dkt. 416-2 at 3.[40]  The actual costs to date turned out to be less than the estimated figure.  This motion seeks costs totaling $372,134.84 (*see* **Appendix A**, below; Kralowec Decl., ¶93),[41] including $94,586.65 for the 2015 class notice; $63,585.48 in computerized legal research costs over 8.5 years of litigation; $47,767.90 in expert costs (including a damages expert and a consulting expert); and $34,591.69 for three mediation sessions.

All of these costs were reasonably incurred in the prosecution of this matter over the past nine years, benefitted the class, and would have been charged to a paying client had this been a non-contingency case.[42]  The costs are therefore reimbursable.  *Kang*, 2021 WL 5826230 at *16 (awarding $99,000 in costs); *LendingClub*, 2018 WL 4586669 at *3 ($456,000 in costs); *Omnivision*, 559 F. Supp. 2d at 1047 ($560,000 in costs).  The Court is respectfully asked to award them.

### C.   Class Counsel's Proposal for Allocation of Attorneys' Fees and Litigation Costs

The Settlement Agreement states that at the final approval hearing, the Court shall enter an order allocating any award of attorneys' fees and litigation costs among plaintiffs' counsel.  Dkt. 416-2 at ¶¶3.4.1.3, 3.4.1.4.  Class Counsel respectfully propose that the Court adopted the suggested allocation stated in their Joint Declaration, filed herewith, subject to possible reallocation at a later time if significant post-final-approval work is performed for the benefit of the class.

## IV.   CONCLUSION

For the reasons stated above, the Court is respectfully asked to grant the motion for attorneys' fees and litigation costs in full.

---

[40]   This figure was included in the class notices.  *See* Kralowec Decl., ¶27 & Exs. U-X.

[41]   *See* Joint Decl., ¶57.  The costs are detailed in Kralowec Decl., ¶¶85-87; Shalov Decl. ¶75 & Exs. 3-8; Blanchard Decl., ¶14; Dion-Kindem Decl., ¶16; and Ginsberg Decl., ¶¶20, 22.

[42]   Kralowec Decl. ¶86; Shalov Decl. ¶75; *see also* Blanchard Decl., ¶14; Dion-Kindem Decl., ¶16; Ginsberg Decl., ¶20.

1   Dated:  March 25, 2022                    Respectfully submitted,

2                                            */s/ Kimberly A. Kralowec*
                                             Kimberly A. Kralowec
3                                            Kathleen Styles Rogers
                                             KRALOWEC LAW, P.C.
4                                            750 Battery Street, Suite 700
                                             San Francisco, CA  94111
5                                            Telephone:     (415) 546-6800
                                             Facsimile:     (415) 546-6801
6                                            kkralowec@kraloweclaw.com
                                             krogers@kraloweclaw.com
7
                                             Lee S. Shalov (*pro hac vice*)
8                                            Brett R. Gallaway (*pro hac vice*)
                                             Jason S. Giaimo (*pro hac vice*)
9                                            McLAUGHLIN & STERN, LLP
                                             260 Madison Avenue
10                                           New York, NY 10016
                                             Tel.: (212) 448-1100
11                                           Facsimile: (212) 448-0066
                                             lshalov@mclaughlinstern.com
12                                           bgallaway@mclaughlinstern.com
                                             jgiaimo@mclaughlinstern.com
13
                                             *Attorneys for Plaintiffs and the Class*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

26

**APPENDIX A:**
**COMBINED LITIGATION COSTS (*see* Kralowec Decl., ¶93)**

| Cost Category | Amount |
|---|---|
| 2015 Class Notice and Administration Costs | $94,586.85 |
| Court Costs/Filing Fees | $3,514.28 |
| Courier and Messenger Costs | $1,668.38 |
| Attorney Service Costs | $202.68 |
| Postage/U.S. Mail | $1,927.93 |
| Computerized Research (Westlaw/LEXIS) | $63,585.48 |
| Computerized Research (PACER) | $423.50 |
| ESI Discovery Hosting Costs | $1,382.18 |
| Research (Other) | $8,892.84 |
| Copies – In House | $18,922.70 |
| Copies – Outside | $841.40 |
| Service of Process | $970.70 |
| Hearing Transcripts | $1,145.10 |
| Experts/Consultants | $47,767.90 |
| Mediation Costs (for multi-day mediation sessions) | $34,591.69 |
| Deposition Costs (excluding travel) | $27,711.58 |
| Appellate Costs | $7,473.27 |
| Travel – Local | $932.49 |
| Meals – Local | $190.58 |
| Travel – Non-Local – Transportation (Deposition travel expenses) | $19,924.84 |
| Travel – Non-Local – Hotels (Deposition travel expenses) | $6,896.24 |
| Travel – Non-Local – Meals (Deposition travel expenses) | $746.44 |
| Travel – Non-Local – Transportation (Hearing travel expenses) | $20,859.61 |
| Travel – Non-Local – Hotels (Hearing travel expenses) | $5,438.62 |
| Travel – Non-Local – Meals (Hearing travel expenses) | $1,537.56 |
| **Total Costs:** | **$372,134.84** |