Kimberly A. Kralowec (CA Bar No.163158)
kkralowec@kraloweclaw.com
Kathleen Styles Rogers (CA Bar No. 122853)
krogers@kraloweclaw.com
**KRALOWEC LAW P.C.**
750 Battery Street, Suite 700
San Francisco, California 94111
Tel:     (415) 546-6800
Fax:    (415) 546-6801

Lee Shalov (admitted *pro hac vice*)
lshalov@mclaughlinstern.com
Brett Gallaway (admitted *pro hac vice*)
bgallaway@mclaughlinstern.com
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Tel:     (212) 448-1100
Fax:    (212) 448-0066

*Attorneys for Plaintiffs and Class Counsel for the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER; AND TAYLOR KALIN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br> vs.<br><br>APPLE, INC.,<br><br>        Defendant. | Case No. 13cv03451-WHA (lead)<br>Case No. 13cv04727-WHA (consolidated)<br><br>**NOTICE OF MOTION AND MOTION FOR SERVICE AWARDS FOR CLASS REPRESENTATIVES AND FOR NAMED PLAINTIFF AMANDA FRLEKIN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    July 7, 2022<br>Time:    8:00 a.m.<br>Dept.:    12 – 19th Floor<br>Judge:   Hon. William Alsup |

<u>**NOTICE OF MOTION AND MOTION FOR SERVICE AWARDS**</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 7, 2022, at 8:00 a.m., or as soon thereafter as the matter may be heard, plaintiffs Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Taylor Kalin, and Debra Speicher ("Plaintiffs"), along with Class Counsel, will and hereby do move the Court for an order awarding service awards (also known as "incentive awards," "stipends," or "compensation for services to the class") to be paid from the Common Fund created by the parties' proposed Settlement, to each of the named Plaintiffs in this action, including the four Class Representatives (Aaron Gregoroff, Seth Dowling, Taylor Kalin, and Debra Speicher) and named plaintiff Amanda Frlekin, in the amount of $10,000 each.

As discussed in the accompanying memorandum, this motion is based upon this notice, the accompanying memorandum of points and authorities, the Joint Declaration Lee S. Shalov and Kimberly A. Kralowec in Support of Plaintiffs' Motion for Preliminary Approval of Settlement (Dkt. 416-1); the separate declarations of Kimberly A. Kralowec and Lee S. Shalov filed concurrently herewith in support of Motion for Award of Attorneys' Fees and Litigation Costs; the declarations of the five named Plaintiffs herein—Seth Dowling, Amanda Frlekin, Aaron Gregoroff, Taylor Kalin and Debra Speicher—filed in support of this motion, the proposed Settlement previously filed with the Court and all papers filed in support thereof, the complete record in this matter, and any argument presented in connection with this motion.

Dated: March 25, 2022

Respectfully submitted,

By:     /s/Lee S. Shalov
        Lee S. Shalov
        Brett R. Gallaway
        Jason S. Giaimo
        McLaughlin & Stern, LLP
        260 Madison Avenue
        New York, NY 10016
        Tel: (212) 448-1100
        lshalov@mclaughlinstern.com
        bgallaway@mclaughlinstern.com
        jgiaimo@mclaughlinstern.com

{N0455686.1}                                    1

1

2      */s/Kathleen Styles Rogers*
       Kimberly A. Kralowec
3      Kathleen Styles Rogers
       Kralowec Law, P.C.
4      750 Battery Street, Suite 700
       San Francisco, CA 94111
5      Tel: (415) 546-6800
       kkralowec@kraloweclaw.com
6      krogers@kraloweclaw.com

7      *Attorneys for Plaintiffs and Class Counsel for*
       *the Class*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28     {N0455686.1}                            2

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................3

II.   STATEMENT OF FACTS ..........................................................................................4

    A.    Plaintiffs' Contributions to this Action....................................................4

    B.    Reputational Harm Plaintiffs Suffered as a Result of This Action..........8

    C.    Plaintiffs' Commitment to their Appeal in the Face of their Exposure to a Judgment and Order to Pay Substantial Costs .........................................9

    D.    Plaintiffs' Agreement to the Arms-Length, Contested Settlement Following Three Mediation Sessions, And Plaintiffs' Broad Release of Their Individual Claims................................................................................10

    E.    Plaintiffs' Requested Service Awards Compared to Class Members' Recovery ..................................................................................................11

III.  ARGUMENT ...........................................................................................................13

    A.    The Relevant Factors Courts Consider in Making Service Awards .....................13

    B.    Plaintiffs' Financial Risks, Including Exposure To A Substantial Costs Order And Refusal To Settle For Apple's Waiver of Costs, Supports The Requested Service Awards .....................................................................16

    C.    The Significant Reputational Risk Plaintiffs Assumed To Sue Their Former Employer Supports The Requested Service Awards ...............................17

    D.    Plaintiffs' Broader Releases Of Their Individual Claims Support The Requested Service Awards .....................................................................19

    E.    The Amount Sought for Service Awards As A Percentage of the Gross (And The Net) Settlement Supports the Requested Service Awards.............................20

    F.    The Amount Sought for Service Awards Compared To The Class Members' Settlement Shares Supports The Requested Service Awards ...............................21

    G.    The Number of Hours Plaintiffs Devoted To This Class Action And Their Valuable Contributions Supports Their Requested Service Awards....................23

    H.    The Protracted Length Of This Litigation, Spanning Almost Nine Years, Supports the Requested Service Awards ..................................................23

IV.  CONCLUSION.........................................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

Cases

3

*Adderley v. National Football League Players Ass'n*.,
4
 No. C 07-00943 WHA, 2009 WL 42550792 (N.D. Cal. Nov. 23, 2009) ................................. 16

5
*Alvarez v. Farmers Ins. Exch*.,
6
 No. 3:14-CV-00574-WHO, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017 ........................... 14, 18

7
*Bellinghausen v. Tractor Supply Co*.,
 306 F.R.D. 245, 267–68 (N.D. Cal. 2015) .............................................................................. 16

8
*Bolton v. U.S. Nursing Corp*.,
9
 No. C 12-4466 LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) ........................................... 22

10
*Briggs v. United States*,
 No. C 07-05760 WHA, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) ..................................... 15
11

12
*Bronson v. Samsung Elecs. Am., Inc.*,
 No. C 18-02300 WHA, 2020 WL 1503662 (N.D. Cal. Mar. 30, 2020) .................................... 19

13
*Carter v. XPO Logistics, Inc*.,
14
 No. 16-CV-01231-WHO, 2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) .................................. 19

15
*Covillo v. Specialtys Café,*
 No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ........................................ 16
16

17
*Deaver v. Compass Bank*,
 No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .............................. 16, 20

18
*Glass v. UBS Fin. Servs., Inc*.,
19
 No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........................................ 18

20
*Gutierrez v. Wells Fargo Bank, N.A*.,
 No. C 07-05923 WHO, 2015 WL 2438274 (N.D. Cal. May 21, 2015) .................................... 22
21

22
*Harris v. Vector Mktg. Corp*.,
 No. C-08-5198 EMC 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ........................................... 20

23
*Hopson v. Hanesbrands Inc*.,
24
 No. CV–08–0844, 2009 WL 928133 (N.D. Cal. Apr.3, 2009) ................................................. 14

25
*Hubbard v. RCM Techs. (USA), Inc*.,
 No. 19-CV-6363-YGR, 2021 WL 5016058 (N.D. Cal. Oct. 28, 2021) .................................... 16

26
*In re Mego Fin. Corp. Sec. Litig*.,
27
 213 F.3d at 457, 463 (9th Cir. 2000) .................................................................................. 14, 20

28

{N0455686.1}                                        ii

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................. 14

*In re Toys R Us-Del., Inc. FACTA Litig.*,
   295 F.R.D. 438, 470–72 (C.D. Cal. 2014) .............................................................. 14

*Jasper v. C.R. England, Inc.*,
   No. CV 08-5266-GW(CWX), 2014 WL 12577426 (C.D. Cal. Nov. 3, 2014) ........... 18

*Knight v. Red Door Salons, Inc.*,
   No. 08–01520, 2009 WL 248367 (N.D. Cal. Feb.2, 2009) ....................................... 14

*Kudatsky v. Tyler Techs, Inc.*,
   No. C 19-07647 WHA 2021 WL 5356724 (N.D. Cal. Nov. 17, 2021) ................. 18, 19

*Marshall v. Northrop Grumman Corp.*,
   No. 16-CV-6794 AB (JCX), 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020), *appeal
   dismissed*, No. 20-56096, 2021 WL 1546069 (9th Cir. Feb. 16, 2021) ...................... 24

*McLaughlin v. Wells Fargo Bank, N.A.*,
   No. C-15-02904 WHA, 2017 WL 994969 (N.D. Cal. Mar. 15, 2017) ...................... 23

*McNeal v. RCM Techs. (USA), Inc.*,
   No. 2:16-CV-05170-ODW-SS, 2017 WL 2974918 (C.D. Cal. July 12, 2017) .............. 16, 18, 22

*Messineo v. Ocwen Loan Servicing*,
   No. 15-CV-02076-BLF 2017 WL 733219 (N.D. Cal. Feb. 24, 2017) ....................... 21

*Miguel-Sanchez v. Mesa Packing, LLC* ,
   No. 20-CV-00823-VKD, 2021 WL 4893394 (N.D. Cal. Oct. 20, 2021) ............................. 14, 18

*Navarro v. Servisair*,
   No. C 08-02716 MHP, 2010 WL 1729538 (N.D. Cal. Apr. 27, 2010)................................. 17, 18

*Nevarez v. Forty Niners Football Co., LLC*,
   474 F. Supp. 3d 1041 (N.D. Cal. 2020) .................................................................... 14

*Norton v. LVNV Funding, LLC*,
   No. 18-CV-05051-DMR, 2022 WL 562831 (N.D. Cal. Feb. 24, 2022)...................... 14

*Pierce v. Rosetta Stone, Ltd.*,
   No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013)...................... 17

*Radcliffe v. Experian Information Solutions, Inc.*,
   715 F.3d 1157 (9th Cir. 2013) ................................................................................. 13

*Richardson v. Interstate Hotels & Resorts Inc.*,
   No. C 16-06772 WHA, 2019 WL 803746 (N.D. Cal. Feb. 21, 2019)........................ 23

*Ridgeway v. Wal-Mart Stores Inc.*,
   269 F. Supp. 3d 975 (N.D. Cal. 2017) ...................................................... 18

*Rodriquez v. West Publ'g Corp.*,
   563 F.3d 94 (9th Cir. 2009) ......................................................... 13, 17

*Saechao v. Landrys, Inc.*,
   No. C 15-00815 WHA, 2016 WL 11671870 (N.D. Cal. Aug. 19, 2016) ..................... 17

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
   No. EDCV 08-482-VAP(OP), 2010 WL 2486346 (C.D. Cal. June 15, 2010) .............. 21

*Saravia v. Dynamex Operations W., LLC*,
   No. C 14-05003 WHA, 2017 WL 1295069 (N.D. Cal. Apr. 7, 2017)...................... 23

*Stonehocker v. Kindred Healthcare Operating LLC*,
   No. 19-CV-2494-YGR, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) .................... 16

*Taylor v. FedEx Freight, Inc.*,
   2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ....................................... 20

*Van Vraken v. Atl. Richfield Co.*,
   901 F. Supp. 294, 299 (N.D. Cal. 1995) ....................................... 14, 21

*Wakefield v. Wells Fargo & Co.*,
   No. 3:13-CV-05053 LB, 2015 WL 3430240 (N.D. Cal. May 28, 2015).................. 16

*Waldbuesser v. Northrop Grumman Corp.*,
   2017 WL 9614818 (C.D. Cal. Oct. 2017)....................................... 16, 23

*Willner v. Manpower Inc.*,
   No. 11-CV-02846-JST, 2015 WL 3863625 (N.D, Cal, June 22, 2015) .................. 20

*Winters v. Two Towns Ciderhouse, Inc.*,
   No. 20-CV-00468-BAS-BGS, 2021 WL 1889734( S.D. Cal. May 11, 2021) .............. 21

**Other Authorities**

4 William B. Rubenstein, Newberg on Class Actions
   § 11:38 (4th ed. 2008) .......................................................... 13

Theodore Eisenberg & Geoffrey P. Miller,
   *Incentive Awards to Class Action Plaintiffs: An Empirical Study*
   53 U.C.L.A.L. Rev. 1303 (2006) ................................................... 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SERVICE AWARDS FOR
<u>CLASS REPRESENTATIVES AND FOR NAMED PLAINTIFF AMANDA FRLEKIN</u>**

## I.    <u>INTRODUCTION</u>

Since this action was filed in 2013, Plaintiffs Seth Dowling, Amanda Frlekin, Aaron Gregoroff, Taylor Kalin, and Debra Speicher ("Plaintiffs") have vigorously pursued their claims against Apple, Inc. ("Defendant" or "Apple") for failure to pay them and the members of the class[1] for time spent undergoing required security searches. Apple imposed the searches in a mandatory policy applicable to Plaintiffs and all retail sales employees like them in Apple's California stores. After obtaining class certification in 2015, Plaintiffs pursued their claims through an appeal to the Ninth Circuit, which led to a resounding victory in the California Supreme Court. *Frlekin v. Apple Inc.*, 8 Cal.5th 1038 (2020). That victory benefits not just Plaintiffs and the members of the class in this action, but employees throughout California who have long been subject to unpaid security searches by their employers.

The parties' subsequent settlement, which the Court has preliminarily approved as fair and reasonable to the class, was the result of hard-fought, arms'-length negotiations between Plaintiffs and Apple, including a settlement conference and three mediation sessions in 2020 and 2021 facilitated by two, separate, well-respected mediators. Under the terms of the settlement, all class members will receive a share of the settlement fund estimated to exceed full compensation for their individual unpaid time spent on Apple's mandatory security searches, at their contracted rate of pay.[2]

Throughout this litigation, which has spanned almost nine years, all five named Plaintiffs have devoted substantial time and effort, withstood significant financial and reputational risks, and declined Apple's offer to compromise their individual claims, to stand strong in their

---

[1] "Class" or "Settlement Class" includes the class certified by the Court by order dated July 16, 2015 (Dkt. 297), as well as the "new class members" included in the parties' settlement which the Court has preliminarily approved.

[2] *See* Joint Declaration Lee S. Shalov and Kimberly A. Kralowec in Support of Plaintiffs' Motion for Preliminary Approval of Settlement (Dkt. 416-1) ("Joint Class Counsel Decl."), ¶67.

{N0455686.1}                                                     3

representation of the class, resulting in this excellent settlement of $29.9 million. Plaintiffs, together with Class Counsel, now respectfully request the Court to award $10,000 per named Plaintiff to compensate them for their considerable efforts, costs and risks on behalf of the class.

## II.   STATEMENT OF FACTS

### A.   Plaintiffs' Contributions to this Action

As detailed below and in the Plaintiffs' declarations filed in support of this motion, they have collectively spent an estimated 745-765 hours contributing to the prosecution of this action over the past nearly nine years. Plaintiff Amanda Frlekin filed the initial complaint on July 25, 2013. Dkt. 1.[3]  Her name has been "top of the marquee" in this case since the beginning.  Plaintiffs Seth Dowling, Aaron Gregoroff and Debra Speicher have all been substantially involved in the case since immediately after the *Frlekin* Complaint was filed, when they contacted Class Counsel to participate, and each filed a Consent to be a Party Plaintiff. Dkt. 6 (Speicher) filed 7/30/13; Dkt. 15 (Gregoroff) filed 8/15/13; Dkt. 20 (Dowling) filed 8/5/13.

On October 10, 2013, Plaintiff Taylor Kalin filed an action with similar allegations to those alleged in *Frlekin* (*Kalin v. Apple Inc.*, No. 13-cv-4727-WHA (N.D. Cal.)), which was later consolidated with *Frlekin*.  Dkt. 78; Dkt. 214. On January 9, 2015 (following the Court's dismissal of all but the California claims after the Supreme Court issued its opinion in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014)), Plaintiffs filed their Second Amended Complaint limited to California claims.   The Second Amended Complaint included all five Plaintiffs— Frlekin, Dowling, Gregoroff, Kalin and Speicher—as named plaintiffs and proposed class representatives. (Dkt. 220).

Plaintiff Amanda Frlekin withdrew from consideration as a proposed class representative on July 6, 2015 (Dkt. 287), but continued to pursue her individual claims and representative claim under the Labor Code Private Attorney General Act ("PAGA").  On July 15, 2015, in its Order

---

[3] Most of the relevant facts and procedural history were previously summarized in. plaintiffs' motion for preliminary approval (Dkt. 416 at 4:17-9:4) and the supporting Joint Class Counsel Decl. (Dkt. 416; Dkt. 416-2 at ¶¶2-35, 51-53, 55-56), as well as in the Motion for Award of Attorneys' Fees and Litigation Costs filed concurrently with this motion.

{N0455686.1}                                    4

1    Approving Class Certification, the Court appointed the other four named plaintiffs—Dowling,

2    Gregoroff, Kalin and Speicher—as class representatives for the certified class. Dkt. 297.

3          In the view of Class Counsel, the full participation of all five Plaintiffs was and has been

4    critical to success in this case, because Apple alleged from the beginning that it implemented its

5    security search policy differently from store to store, which it further alleged precluded

6    certification of the proposed class. Kralowec Decl., ¶¶94, 95.[4] The five named Plaintiffs were

7    employed in four different California Apple stores at different times during the class period and

8    their collective knowledge and experience proved essential to pursuing discovery, formulating case

9    strategy, and rebutting Apple's allegations. *Id.*  Class Counsel also considered it important to have

10   multiple class representatives to protect the class in a case of this size and magnitude.  Kralowec

11   *Id.* Plaintiffs' declarations in support of this motion detail the estimated hours they contributed to

12   this litigation (collectively 745-765 hours):

13         **Seth Dowling** estimates that he spent 125-135 hours assisting Class Counsel for the benefit

14   of the class, including: reviewing the filed Complaint and Consent to be a Party Plaintiff;

15   consulting with Class Counsel regarding his work experiences with security checks in The Grove

16   retail store; reviewing the amended complaints and actively assisting with allegations of the

17   Second Amended Complaint which added him as a plaintiff and proposed class representative;

18   reviewing and approving the motion for class certification; reviewing Apple's motion for summary

19   judgment, Plaintiffs' appeal from the court's order granting that motion, and other court filings;

20   taking time off work to prepare and sit for his deposition for 7-9 hours; assisting Class Counsel

21   with responses and supplemental responses to two sets of interrogatories; assisting Class Counsel

22   with responses to requests for production of documents and producing responsive documents;

23   assisting Class Counsel to draft a detailed declaration in support of the motion for conditional

24   certification; assisting Class Counsel to prepare for status conferences, a settlement conference,

25   and the three mediation sessions; and taking time off work to travel to and attend the settlement

26

27

28   {N0455686.1}                               5

1   conference before Magistrate Judge Spero; consulting with Class Counsel on settlement

2   negotiations and other matters including 127 email communications, over 100 telephone

3   conversations and numerous meetings. Dowling Decl., ¶¶2- 21.  He took two days off work for his

4   deposition and a settlement conference and incurred approximately $31.20 in out-of-pocket

5   expenses. *Id.*, ¶16.

6          **Amanda Frlekin** estimates that she spent <u>160-170 hours</u> assisting Class Counsel for the

7   benefit of the class, including: assisting with allegations and drafting of the original Complaint;

8   consulting with Class Counsel regarding her experiences with security searches in Apple's Century

9   City store; assisting with and reviewing the amended and Second Amended Complaint, reviewing

10  and approving the required PAGA letter to the LWDA; submitting a declaration in support of

11  Plaintiff's Motion for Conditional Certification, taking a day off work to prepare for and attend her

12  full-day deposition; responding to two sets of interrogatories from Apple including supplemental

13  responses; responding to Apple's document requests and producing documents; reviewing and

14  approving Plaintiffs' motion for class certification, reviewing Apple's motion for summary

15  judgment, Plaintiffs' appeal to the Ninth Circuit from the summary judgment order and other

16  appellate briefs; assisting Class Counsel to prepare for the settlement conference and mediations;

17  and consulting with Class Counsel on these and other matters including at least 134 email

18  communications, over 100 telephone conversations and numerous meetings.  Frlekin Decl., ¶¶2-

19  20.  She took off at least three days from work to prepare for and attend her deposition and

20  incurred approximately $97 in out-of-pocket expenses for mileage and parking fees. *Id.*, ¶13.

21         **Aaron Gregoroff** estimates that he spent <u>190 hours</u> assisting Class Counsel for the benefit

22  of the class, including: reviewing the Complaint and becoming a Party Plaintiff; consulting with

23  Class Counsel regarding his experiences with security searches in Apple's Forum Carlsbad store;

24  reviewing the First Amended Complaint and assisting with allegations and review of the Second

25  Amended Complaint, which added him as a named plaintiff and proposed class representative;

26

27  [4] Declaration of Kimberly A. Kralowec in Support of Motion for Award of Attorneys' Fees and
    Litigation Costs; And In Support of Motion for Service Awards for Class Representatives and For

28  {N0455686.1}                                    6

1    reviewing and approving the motion for class certification, reviewing Apple's motion for summary

2    judgment, briefing to the California Supreme Court and other filings; taking a day of work to

3    attend his deposition; responding to two sets of interrogatories and responding to and producing

4    documents in response to Apple's document requests; assisting with preparation for and taking

5    time off work to attend the settlement conference before Magistrate Judge Spero in San Francisco;

6    and consulting with Class Counsel on these and other matters including at least 120 email

7    communications, over 100 telephone conversations and multiple meetings.  Gregoroff Decl., ¶¶2-

8    23.  He took off multiple days from work to prepare for and attend his deposition and the

9    settlement conference. *Id.*, ¶23.

10           **Taylor Kalin** estimates that he spent more than <u>100 hours</u> assisting counsel for the benefit

11   of the class, including: assisting with the preparation and filing of his Complaint; preparing for and

12   attending his deposition and reviewing/approving the transcript; responding to discovery;

13   responding to questions and communications from counsel; reviewing the cross-motions for

14   summary judgment and other pleadings; reviewing the motion for class certification and assisting

15   counsel to draft a supporting declaration; and reviewing briefs filed with the California Supreme

16   Court and the appellate opinions.   Kalin Decl., ¶¶3-8. He took time off work to attend his

17   deposition. *Id.*, ¶6.

18           **Debra Speicher** estimates that she spent <u>160 hours</u> assisting Class Counsel for the benefit

19   of the class, including: reviewing the Complaint and becoming a Party Plaintiff; consulting with

20   Class Counsel regarding her work experiences at Apple's Century City retail store; reviewing the

21   First Amended Complaint and actively assisting with the Second Amended Complaint adding her

22   as a named plaintiff and proposed class representative; reviewing and approving the motion for

23   class certification, reviewing Apple's motion for summary judgment, briefing to the California

24   Supreme Court and other filings; taking two days off work to prepare for and attend her

25   deposition; responding to two sets of interrogatories and responding to and producing documents

26   in response to Apple's document requests; and consulting with Class Counsel on these and other

27   _____

28   Named Plaintiff Amanda Frlekin ("Kralowec Decl.") filed concurrently with this motion.

1    matters including 148 email communications, 50-70 telephone conversations, and multiple

2    meetings.   Speicher Decl., ¶¶2-23.  She took off two days from work to prepare for and attend her

3    deposition and incurred approximately $35 in out-of-pocket costs.  *Id*., ¶¶18, 23.

4              **B.       Reputational Harm Plaintiffs Suffered as a Result of This Action**

5              Plaintiffs have risked and endured significant "reputational harm" as a result of their

6    involvement in this litigation.  For example, their testimony was challenged in their depositions

7    (*see*, *e.g.*, Gregoroff Decl., ¶26, Dowling Decl., ¶24) and during an important hearing on February

8    20, 2014 (Dkt. 67).  This prompted the Court to question at the hearing whether Plaintiffs had

9    submitted sworn declarations and then "it turns out that they back off that by a mile in their

10   deposition." Transcript of Proceedings, February 20, 2014 Hearing ("Tr.") at 39:8-18, 43:4-10.

11             Plaintiffs felt the need to clarify the challenges to their testimony in a subsequent,

12   supplemental filing (Dkt. 153, pp. 16-20) that included the following:

13             (1)       It was asserted that every plaintiff testified that for certain periods of time or certain

14   days they brought nothing to work and went through no bag or technology searches (Dkt. 153 at p.

15   17 (citing Tr. at 18)).  Plaintiffs clarified this with testimony including Ms. Frlekin's testimony that

16   she worked for Apple for a period of several years, and that during that entire time she could recall

17   only a few occasions when she did *not* go through bag or technology searches. *See* Dkt. 153 (citing

18   Frlekin Depo. 129:15-17 (emphasis added)).

19             (2)       It was asserted that for significant portions of her employment, Ms. Frilekin did not

20   have Apple technology and did not go through technology checks, suggesting she testified that she

21   went through no checks at all, contrary to her sworn declaration.  Tr. 31:12-15. Plaintiffs clarified

22   this with Ms. Frlekin's clear deposition testimony, entirely consistent with her declaration, that she

23   went through *bag* checks whenever she brought a bag, which was "most times." *See* Dkt. 153

24   (citing Frlekin Depo. 128:23-129:17 (emphasis added)).

25             (3)       It was asserted that Seth Dowling's deposition testimony contradicted his sworn

26   declaration that he went through checks after clocking out, because he worked in a store with an

27   offsite break room. Tr. at 16:10-17:19 (*see also* discussion in Dkt. 153 at 16:21-17:7).   That was

28   {N0455686.1}                                        8

1  clarified by Mr. Dowling's deposition testimony, consistent with his declaration, that the Apple

2  stores he worked in, other than the Los Angeles Grove store, did *not* have off-site break rooms,

3  which was unique to the Grove store (*see id.* (citing Dowling Depo. 55:13-56:11), that the Grove

4  store off-site break room was added only near the end of his employment with Apple (*see id.*

5  (citing Dowling Depo. 55:13-56:11)), that even after it was added, it was not open at the end of

6  closing shifts, so employees could not clock out there when working closing shifts (*id.* (citing

7  Dowling Depo. 50:1-11, 94:14-95:10)); and that he and most of the Geniuses brought their bags to

8  the Genius room rather than the Grove store offsite breakroom even after it opened (*id.* (citing

9  Dowling Depo. 103:22-104:7).

10       The Court issued a Scheduling Order (Dkt. 132) following the February 20, 2014 hearing

11  in which it stated that "plaintiffs'" sworn deposition testimony [may have] contradicted their

12  sworn declaration testimony regarding their personal experiences waiting in line for a security

13  screening."  The challenges to Plaintiffs' veracity on the record impacted their reputations in the

14  eyes of the Court. Plaintiffs later clarified these assertions (Dkt. 153, at pp. 16-20), but the

15  reputational harm was done.

16       Plaintiffs have also deeply felt the stigma attached to having filed suit against their former

17  employer, Apple, one of the largest technology companies in the world.  They all believe it has

18  negatively impacted their chances with prospective employers.  *See*, Dowling Decl., ¶¶22, 33;

19  Frlekin Decl., ¶¶19, 28; Gregoroff Decl., ¶¶27, 31; Kalin Decl., ¶¶9, 16; Speicher Decl., ¶24.

20       The greater their success achieved against Apple's employment policy, the greater their

21  risk that prospective employers will and do view them in a negative light.  Their risk was not

22  limited to association of their names with this suit against their former employer, but the risk of a

23  public judgment against them that any prospective employer could find.

24      **C.**     <u>**Plaintiffs' Commitment to their Appeal in the Face of their**</u>
<u>**Exposure to a Judgment and Order to Pay Substantial Costs**</u>

25

26       On November 7, 2015, the Court issued an order granting Apple's motion for summary

27  judgment against Plaintiffs (Dkt. 339) and entered judgment for Apple (Dkt. 340).  About a week

28  {N0455686.1}                                                9

1    later, on or around November 13, 2015, Apple made an offer to Plaintiffs to settle this action for a

2    waiver of costs in exchange for an agreement not to appeal the Court's summary judgment order.

3    Kralowec Decl., ¶¶ 19, 94.  A few days later, on November 20, 2015, Apple filed a bill of costs

4    against Plaintiffs in the sum of **$60,054.40**. Dkt. 341.

5        In the face of that substantial bill of costs, Plaintiffs all declined Apple's offer to waive

6    costs and committed to their appeal on behalf of the class, thereby exposing themselves to a public

7    judgment and potential order to pay over $60,000 in costs to Apple. Joint Class Counsel Decl.,

8    ¶59; Kralowec Decl., ¶19, 94. (The Court subsequently issued an amended judgment and an award

9    to Apple of $34,859.12 in litigation costs. Dkt. 351, 352.).

10        Plaintiffs' commitment to their appeal resulted in a complete victory for the certified class.

11   On February 13, 2020, the California Supreme Court issued its published opinion holding that all

12   search-related time was compensable as a matter of law under the "control" test of Wage Order 7.

13   *Frlekin*, 8 Cal.5th at 1042, 1046-48.  On October 29, 2020, the Ninth Circuit issued its (amended)

14   opinion expressly holding that Apple's summary judgment motion should have been denied and

15   that summary judgment motion should have been granted for plaintiffs.  *Frlekin v. Apple, Inc.*, 979

16   F.3d 639 (9th Cir. 2020).  On November 6, 2020, it issued its mandate.  Dkt. 361.

17        On January 21, 2021, at the Court's direction, Plaintiffs moved for an order approving a

18   proposed notice and claims procedure for purposes of trial.  Dkt. 377-78.  Ultimately, the Court

19   ordered that damages would be determined by an individualized claims process and that the class

20   members would be required to submit claim forms after notice.  Dkt. 407.  The named Plaintiffs

21   were not exempt from the claims process and would have been required to participate in the trial

22   and testify in the damages phase.

23        D.     **Plaintiffs' Agreement to the Arms-Length, Contested Settlement Following
               Three Mediation Sessions, And Plaintiffs' Broad Release of Their Individual
24             Claims**

25        Soon after the California Supreme Court's decision became final, the parties agreed to

26   participate in mediation.  Three mediation sessions occurred in late 2020 and early 2021.  The

27   Plaintiffs all provided authority to settle within the limits Class Counsel negotiated, and frequently

28   {N0455686.1}                            10

communicated with Class Counsel regarding the status of the mediations. Joint Class Counsel Decl., ¶59.   After lengthy and contentious arms'-length negotiations, Apple finally agreed in principle to pay $29.9 million to settle the case.  All Plaintiffs, along with Class Counsel, approved and support the $29.9 million settlement as an excellent result for the class, whether or not the Court grants the requested service awards.  Joint Class Counsel Decl., ¶73; Dowling Decl., ¶32; Frlekin Decl., ¶27; Gregoroff Decl., ¶30; Kalin Decl., ¶¶13; Speicher Decl., ¶¶29, 30.

As a condition of the Settlement, the Settlement Agreement requires all Plaintiffs to waive and release individual claims of any kind or nature against Apple. This release applies to the named Plaintiffs only; not unnamed class members.  *See* Joint Class Counsel Decl., ¶¶49, 50 (citing Settlement Agreement §§3.4.2, 3.4.3 & 3.4.4.).

E.     **Plaintiffs' Requested Service Awards Compared to Class Members' Recovery**

The aggregate sum of the service awards Plaintiffs now seek, (i.e., $50,000), represents **0.167%** of the Total Settlement Amount (of $29.9 million) and **0.26%** of the estimated Net Settlement Amount after payment of estimated attorneys' fees, costs and the full requested service awards.  Shalov Decl., ¶86.[5]

The average gross share each Settlement Class Member will receive as a result of this settlement is $2,036.37, which represents 254% of average estimated unpaid base wages at contract rates, or 143% of average estimated unpaid base wages at contract rates plus pre-judgment interest.  *See* Joint Class Counsel Decl., ¶¶65-67 & Ex. 2.6. At minimum wage rates, these percentages increase to 643% and 362%.  *See id.*

The estimated average *net* sum of $1,286.96 to be distributed to the class members (after deduction of the proposed awards of attorneys' fees and costs, the full requested service awards, and settlement administration costs) represents 90% to 160% of average estimated unpaid wages, *plus* pre-judgment interest, at contract wage rates—or 229% to 407% at minimum wage rates—

---

[5] Declaration of Lee S. Shalov in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Shalov Decl."), filed concurrently with this motion.

1    without any claims requirement and with no reversion of any sum to the defendant.  *See* Dkt. 416

2    at 3-4, 17-18; Joint Class Counsel Decl., ¶¶37, 64-67, & Ex. 2.  When prejudgment interest is

3    excluded, the estimated average **net** share of $1,286.96 to be distributed to the class members

4    represents **160%** of their base wages at their contract rates.  Joint Class Counsel Decl., ¶67 & Ex.

5    2.  All class members are expected to receive net shares exceeding 100% (on average 160%) of

6    their unpaid wages at their contract rates.  Shalov Decl., ¶87.

7           The cost to each of the 14,683 class members of the requested service awards is

8    approximately $0.68 per class member for each requested Plaintiff award, and $3.40 per class

9    member for the aggregate $50,000 for all five Plaintiffs.  Shalov Decl., ¶86.  This represents 0.05%

10   of the average class member's estimated *net* settlement share of $1,286.96 for each requested

11   Plaintiff award, and 0.26% of each class member's *net* settlement share for the aggregate requested

12   $50,000 to all Plaintiffs. *See, id*.

13          As already stated, the average net share each class member is estimated to receive from the

14   settlement is $1,286.96.  The largest net share is $4,702.67.  Joint Class Counsel Decl., ¶¶37 & Ex.

15   2.  The estimated average net shares for each of the named Plaintiffs is as follows:

16   - Amanda Frlekin: 445 shifts, $1,244.15, PAGA $4.32; total share $1,248.47

17   - Seth Dowling: 695 shifts, $1,943.11, PAGA $1.20; total share $1,944.31

18   - Taylor Kalin: 315 shifts, $880.69, PAGA $1.92; total share $882.61

19   - Aaron Gregoroff: 191 shifts, $534.01, no PAGA; total share $534.01

20   - Debra Speicher: 600 shifts, $1,677.51, PAGA $0.48; total share $1,677.99[7]

21   Three of the five named Plaintiffs, Frlekin, Kalin and Gregoroff, will receive less than the average

22   class member for their settlement shares.  The other two, Dowling and Speicher, will receive more

23   than the average class member but substantially less than the largest net share of $4,702.67.

24

25

26   ───────────────

     [7] Plaintiffs were sent notices from the class administrator with their estimated shifts and shares, as
27   was every other member of the Settlement Class. Plaintiff's notices are attached to Shalov Decl.,
     as Exhibits 13.

28   {N0455686.1}                              12

1    III.    **ARGUMENT**

2         Plaintiffs, along with Class Counsel, request that the Court grant service awards to each of

3    the five named Plaintiffs in the amount of $10,000 each, to compensate them for their efforts,

4    costs, risks, and the extraordinary result they achieved, on behalf of the class.

5         A.    **The Relevant Factors Courts Consider in Making Service Awards**

6         "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*,

7    563 F.3d 948, 958 (9th Cir. 2009) (citing 4 William B. Rubenstein, Newberg on Class Actions §

8    11:38 (4th ed. 2008); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action*

9    *Plaintiffs: An Empirical Study*, 53 U.C.L.A.L. Rev. 1303 (2006) (finding twenty-eight percent of

10   settled class actions between 1993 and 2002 included an incentive award to class representatives)).

11   Such awards are "particularly appropriate in wage-and-hour actions where plaintiffs undertake a

12   significant 'reputational risk' by bringing suit against their former employers." *Rodriguez*, 563

13   F.3d at 958-59.

14        Incentive awards "are discretionary, and are intended to compensate class representatives

15   for work done on behalf of the class, to make up for financial or reputational risk undertaken in

16   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

17   general." *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 958-59 (9th Cir. 2013).

18   Such awards are often paid out of the class's recovery. *Id* at 1163. District courts must

19   "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class

20   representatives." *Radcliffe*, 715 F.3d at 1163.

21        "'In order to evaluate the reasonableness of the size of a service award, the Ninth Circuit

22   looks to 'the number of named plaintiffs receiving incentive payments, the proportion of the

23   payments relative to the settlement amount, and the size of each payment.'" *Nevarez v. Forty*

24   *Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020) (quoting *In re Online*

25   *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015)).   Additional factors courts

26   consider include: "(1) the risk to the class representative in commencing a suit, both financial and

27   otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3)

28   {N0455686.1}                              13

1  the amount of time and effort spent by the class representative; (4) the duration of the litigation;

2  and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the

3  litigation." *See, e.g.*, *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-CV-00823-VKD, 2021 WL

4  4893394, at *12 (N.D. Cal. Oct. 20, 2021) (citing *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp.

5  294, 299 (N.D. Cal. 1995) (approving $50,000 incentive award on total settlement fund of

6  $76,723,213.26)).

7       While incentive awards of $5,000 are "presumptively reasonable" in the Ninth Circuit[8], as

8  discussed *infra*, courts in this Circuit and this district have made larger service awards, up to

9  $25,000 or more, to named plaintiffs like those here who (1) spent a greater amount of time

10  assisting class counsel; (2) secured a settlement fund large enough to compensate the class for their

11  full damages; (3) signed broader releases than the other members of the class; (4) absorbed

12  significant reputational risk in representing the class, particularly in suits against former

13  employers; and (4) shouldered substantial financial risks in pursuing the litigation.

14       Based on all of the above factors, the $10,000 awards sought by this motion are appropriate

15  to compensate Plaintiffs, not just for their achievement of the $29.9 million settlement, but also for

16  their extraordinary service to the class spanning almost nine years and totaling 745-765 collective

17  hours, for their reputational risk and courage in taking on the employment policies of their former

18  employer—one of the largest and most influential technology companies in the world—and for

19  their steadfast advancement of the best interests of the class over their own, including their refusal

20

21

22  [8] *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 457, 463 (9th Cir. 2000) (endorsing $5,000
service awards to named representatives); *Norton v. LVNV Funding, LLC*,
23  No. 18-CV-05051-DMR, 2022 WL 562831, at *8 (N.D. Cal. Feb. 24, 2022) (granting $5,000
award to plaintiff whose work on behalf of the class was "typical of other named plaintiffs in these
24  cases"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting
cases); *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014)
25  (awarding plaintiffs $5,000 each "consistent with the amounts courts typically award as incentive
payments"), *Hopson v. Hanesbrands Inc.*, No. CV–08–0844, 2009 WL 928133, at *10 (N.D. Cal.
26  Apr.3, 2009) (awarding $5,000 to named plaintiffs who helped to recover $408,000); and *Knight v.
Red Door Salons, Inc.*, No. 08–01520, 2009 WL 248367, at *7 (N.D. Cal. Feb.2, 2009) (awarding
27  $5,000 to named plaintiffs expending 40–50 hours each to help recover $500,000).

28  {N0455686.1}                                    14

1   of Apple's offer to settle their individual claims at the expense of the class claims, despite the risk

2   that by not settling, they would have to pay a court award to Apple of over $60,000 in costs.

3        Although this Court has cautioned that incentive awards may raise a "red flag" causing the

4   Court to question plaintiffs' motives to settle, that concern is not supported or justified on these

5   facts. Plaintiffs settled this action for $29.9 million after litigating it for almost nine years, after

6   following through with a precedent-setting appeal and refusing Apple's offer to settle their

7   individual claims for waiver of a substantial costs bill, and after a settlement conference and three

8   arms'-length, hard-fought mediation sessions with two, separate, well-respected mediators.

9        This settlement provides the average class member 160% of his or her compensation for

10   the base unpaid hours spent in Apple's security searches at contract rates, a factor which this Court

11   has found in other cases to negate any "red flag" concerns. *See*, *e.g.*, *Briggs v. United States,* No.

12   C 07-05760 WHA, 2010 WL 1759457, at *12 (N.D. Cal. Apr. 30, 2010) (court granted service

13   award of $3300 to named plaintiff on settlement of $7.4 million (plus fees and costs), finding the

14   "risk is not present" regarding service payments where the class obtained a "100% recovery.").

15   There is no reason to question Plaintiffs' motives for agreeing to this excellent settlement.[9]

16        As this Court has found in similar cases, there is reason to compensate these named

17   Plaintiffs for their extended time and efforts, unusual level of risk and extraordinary achievements

18   for the class, which go far beyond those typically presented to this Court in making or declining to

19   make incentive awards. *See*, *e.g. Adderley v. National Football League Players Ass'n.*, No. C 07-

20   00943 WHA, 2009 WL 4250792 at *7 (N.D. Cal. Nov. 23, 2009) (this Court granted $10,000

21   service award to class representative to compensate for the "unusual burden" of a "lengthy trial"

22   preceding settlement).

23

24

25

---

26   [9] All Plaintiffs have confirmed in their declarations that they were not motivated by the possibility of a service award to agree to the settlement with Apple; they approved the settlement because it

27   was in the best interests of the class. *See*, Dowling Decl., ¶32; Frlekin Decl., ¶27; Gregoroff Decl., ¶30; Kalin Decl., ¶¶13; Speicher Decl., ¶¶29, 30.

28   {N0455686.1}                                      15

1

2

### B. Plaintiffs' Financial Risks, Including Exposure To A Substantial Costs Order And Refusal To Settle For Apple's Waiver of Costs, Supports The Requested Service Awards

3

4

Plaintiffs' exposure to the risk of an order to pay defense costs is a significant factor courts

5

have considered in granting service awards. *See, e.g.*, *McNeal v. RCM Techs. (USA), Inc.*, No.

6

2:16-CV-05170-ODW-SS, 2017 WL 2974918, at *1–2 (C.D. Cal. July 12, 2017) (citing, *inter alia*,

7

the risk of responsibility to pay defense costs in awarding $10,000 service awards to each of the

8

two named plaintiffs); and *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. at 267-68 (N.D. Cal.

9

2015) (citing the risk of a costs order and plaintiff's refusal to settle his individual claims to drop

10

the class action in granting $10,000 incentive award plus $5,000 payment for agreed-upon release

11

of claims to named plaintiff on a $1 million settlement).[10]  In this case, the risk of a costs award to

12

[10] *See also Hubbard v. RCM Techs. (USA), Inc.*, No. 19-CV-6363-YGR, 2021 WL 5016058, at *6

13

(N.D. Cal. Oct. 28, 2021) (citing, *inter alia*, the financial risk of responsibility to pay defense costs in awarding $10,000 incentive award to named plaintiff on $1.5 million settlement); *Stonehocker*

14

*v. Kindred Healthcare Operating LLC*, No. 19-CV-2494-YGR, 2021 WL 1643226, at *8 (N.D. Cal. Apr. 27, 2021) (citing, *inter alia*, the financial risk of responsibility to pay defense costs in

15

ordering $5,000 service award from $1.9 million settlement); *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) (citing, *inter*

16

*alia*, the risk of a potential, "staggering" costs order in granting awards of $25,000 to each of the four named plaintiffs on $16.75 million settlement); *McNeal*, 2017 WL 2974918, at *1–2 (C.D.

17

Cal. July 12, 2017) (citing, *inter alia*, the risk of a costs order in awarding $10,000 to each of the two named plaintiffs); *Bellinghausen*, 306 F.R.D. 245, 267–68 (N.D. Cal. 2015) (citing, *inter alia*,

18

the risk of a costs order and plaintiff's refusal to settle his individual claims in granting $10,000 incentive award plus $5,000 payment for agreed-upon release of claims to named plaintiff on a $1

19

million settlement); *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, at *15 (N.D. Cal. Dec. 11, 2015) (citing, *inter alia*, the risk of a costs order in awarding named plaintiff a

20

service award of $7,500 on $500,000 settlement); *Wakefield v. Wells Fargo & Co.*, No. 3:13-CV-05053 LB, 2015 WL 3430240, at *6 (N.D. Cal. May 28, 2015) (citing, *inter alia*, the risk of a costs

21

order in awarding $10,000 to the two named plaintiffs on $7,420,000 settlement as "within the range of such awards that the Ninth Circuit has either affirmed or cited with approval."); *Covillo v.*

22

*Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing, *inter alia*, the financial risk of responsibility to pay defense costs in awarding $8,000 incentive

23

awards to each named plaintiff in a wage and hour action); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *7 (N.D. Cal. Sept. 26, 2013) (citing, *inter alia*, the risk of a

24

costs order in awarding $5,000 incentive awards to each of the two class representatives); *Navarro v. Servisair*, No. C 08-02716 MHP, 2010 WL 1729538 at *4 (N.D. Cal. Apr. 27, 2010) (citing,

25

*inter alia*, the risk of a costs order in awarding named plaintiff a $10,000 service award in a wage and hour action).

26

27

28

{N0455686.1}                                        16

Apple was considerable.   Apple's bill of costs filed in November of 2015 subsequent to the Court's summary judgment order totaled $60,054.40 (Dkt. 341).

Not only did Plaintiffs expose themselves to that risk, but they declined Apple's offer to waive costs in exchange for Plaintiffs' agreement not to appeal the summary judgment order.  Joint Class Counsel Decl., ¶59; Kralowec Decl., ¶¶19, 94.  Apple's costs bill of over $60,000 filed a few days after its "offer" lent it considerable teeth.

This sum that Plaintiffs risked is more than 10% higher than the collective $50,000 Plaintiffs seek in service awards. (Although the Court ultimately issued a cost award to Apple of $34,859.12 on its costs bill (Dkt. 351, 352) prior to that order being overturned by the Ninth Circuit, the risk Plaintiffs assumed equaled the full amount Apple sought, $60,054.40). The considerable risk Plaintiffs shouldered of an order to pay Apple's costs, particularly in the face of Apple's offer to waive them in exchange for an agreement not to appeal, ultimately led to the successful, precedent-setting appeal and the favorable settlement for the class. This risk was not shared by the other members of the class.  As many courts have recognized, this risk justifies the rewards (or "compensation") Plaintiffs seek.[11]

## C.   The Significant Reputational Risk Plaintiffs Assumed To Sue Their Former Employer Supports The Requested Service Awards

As stated, the Ninth Circuit has held that service awards are "particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Rodriguez*, 563 F.3d at 958-59.

> An employee who lends his name to a lawsuit against a current or former employer is placed in a financially vulnerable position. Plaintiffs who take on this risk for the genuine enforcement of wage and hour provisions should be encouraged. Further, when individual plaintiffs faithfully execute their duties as a class representative, they should be rewarded.

---

[11] Plaintiffs also incurred the out-of-pocket costs detailed in their declarations for such things as transportation and parking for their depositions.  This Court has recognized that it is appropriate to compensate class representatives for their out-of-pocket costs. *See*, *e.g.*, *Saechao v. Landrys, Inc.*, No. C 15-00815 WHA, 2016 WL 11671870, at *2 (N.D. Cal. Aug. 19, 2016)

1   *Navarro v. Servisair*, 2010 WL 1729538 at *4 (granting requested $10,000 service award). [12]

2   In a recent order granting incentive awards of $7,500 in this district, the court noted that

3   "Plaintiffs' status as class representatives also may expose them to the risk that

4   future employers will be reluctant to hire them because of plaintiffs' public role in this litigation

5   challenging their conditions [of] employment." *Miguel-Sanchez*, 2021 WL 4893394, at *13 (N.D.

6   Cal. Oct. 20, 2021).  *See*, *also*, *Alvarez v. Farmers Ins. Exch*., No. 3:14-CV-00574-WHO, 2017

7   WL 2214585, at *1 (N.D. Cal. Jan. 18, 20170 (awarding $10,000 service awards to each of the 9

8   named plaintiffs on a $4.9 million settlement, recognizing that "potential employers might look

9   unfavorably upon the decision to sue a former employer.").

10   Similarly, in *Ridgeway v. Wal-Mart Stores Inc*., 269 F. Supp. 3d 975, 1003 (N.D. Cal.

11   2017), Judge Illston granted incentive awards of $15,000 (albeit after trial) to each of the nine

12   named plaintiffs "based on the work performed in this case, and accounting for the risk undertaken

13   in suing a former employer."  This Court recently granted a service award (in an action litigated

14   over two years that settled for just over $3 million) of $1,000 to a named plaintiff who "declare[d]

15   that he sought employment in the same technology field after leaving [defendant's] employ but

16   suffered eleven months of unemployment after initiating this suit."  *Kudatsky v. Tyler Techs, Inc*.,

17   No. C 19-07647 WHA 2021 WL 5356724, at *5-6 (N.D. Cal Nov. 17, 2021).

18   The reputational risk Plaintiffs assumed in bringing this action should not be treated lightly.

19   As Plaintiffs note in their declarations, they believe they have suffered substantial reluctance to

20   hire by prospective employers as a result of bringing this action against Apple, one of the world's

21   largest technology companies. *See*, Dowling Decl., ¶¶22, 33; Frlekin Decl., ¶¶19, 28; Gregoroff

22   Decl., ¶¶27, 31; Kalin Decl., ¶¶9, 16; Speicher Decl., ¶24.  The extent of their success on behalf of

23

24   _____

25   [12] *See also Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D.

26   Cal. Jan. 26, 2007) (awarding $25,000 incentive awards from a $45 million settlement to each of four named plaintiffs who "placed something at risk by putting their names on a complaint against one of the largest brokerage houses in America"), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Jasper v. C.R. England, Inc*., No. CV 08-5266-GW(CWX), 2014 WL 12577426, at *10 (C.D. Cal. Nov. 3,

27   2014) (service awards of $10,000 to a named plaintiff still employed by defendant, and $7,500 to a named plaintiff who was a former employee); and *McNeal*, at *1-2 (granting service awards of

28   {N0455686.1}

18

the class, and the notoriety this case has attracted, only increases their risk of this kind of continued reputational harm.

The risk of suing their former employer was compounded, in this case, by assertions that questioned Plaintiffs' veracity and credibility in their depositions and sworn declarations, and by the publicly-filed judgment and costs award against them (before these were reversed). These reputational risks and harms were not shared by the other members of the class.[13] *See, e.g.*, *Bronson v. Samsung Elecs. Am., Inc.*, No. C 18-02300 WHA, 2020 WL 1503662, at *6 (N.D. Cal. Mar. 30, 2020) (this Court awarded $500 service award to plaintiff in settlement that afforded only injunctive relief, where plaintiff's deposition "purportedly devolved into disparaging personal attacks, challenging plaintiff's commitment to the litigation.").

### D.  Plaintiffs' Broader Releases Of Their Individual Claims Support The Requested Service Awards

The parties' Settlement Agreement includes a separate and broad release of claims by each of the five named Plaintiffs. It applies to the named Plaintiffs only; not the unnamed class members. See Joint Class Counsel Decl., ¶¶49, 50 (citing Settlement Agreement §§3.4.2, 3.4.3 & 3.4.4).

All other class members will receive their settlement shares without this broad release. The release is not limited to Plaintiff's individual claims in this action. It extends to all claims they might have against Apple, in any context.

Such broad releases of a plaintiff's individual claims is a factor courts emphasize in granting service awards. *See, e.g.* *Taylor v. FedEx Freight, Inc.*, No. 13-CV-01137-DAD, 2016

---

$10,000 to each of the two named plaintiffs for reasons including that "potential employers might look unfavorably upon the decision to sue a former employer.").

[13] While plaintiff Amanda Frlekin ultimately withdrew her name from consideration as a class representative, she initiated this action, continued as a named plaintiff, and did not settle or dismiss her claims. As far as reputational risk is concerned, her name "tops the marquee" of this highly-publicized action against Apple. *See*, *Kudatsky*, 2021 WL 5356724, at *5-6 (N.D. Cal. Nov. 17, 2021) (service award of $1000 based on factors including that plaintiff's name "tops the marquee."). *See, also, Carter v. XPO Logistics, Inc.*, No. 16-CV-01231-WHO, 2019 WL 5295125 at *4 (N.D. Cal. Oct. 18, 2019)  (awarding $2500 service award to class representative who passed away early in the litigation but spent 33-38 hours assisting counsel).

1  WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) ($15,000 service payment for a $3,750,000 total

2  settlement, with an average award of $2,616, in part because class representative "had a broader

3  release of liability.").[14]

**E.**  **The Amount Sought for Service Awards As A Percentage of the Gross (And The Net) Settlement Supports the Requested Service Awards**

Courts frequently focus on the amount of service awards as a percentage of the settlement

to determine whether the amounts are reasonable. *See*, *e.g. In re Mego*, 213 F.3d at 463.  That

focus is usually on the gross settlement fund, before any deductions for attorneys' fees, costs or

any service awards.

In this case, the collective $50,000 Plaintiffs request the Court consider as service awards is

0.167% of the gross settlement, and 0.26% of the estimated net settlement. Shalov Decl.,¶86.

Individually, the requested $10,000 awards per plaintiff are .03% of the gross settlement, and .05%

of the net settlement.  All of these figures are far below the ratio of awards to settlements that

courts have cited as reasonable when making service awards.  *See*, *e.g.*, *In re Mego*, 213 F.3d at

463 (approving incentive award of $5,000.00 to two plaintiff representatives of 5,400 potential

class members in $1.75 million settlement, constituting 0.56% of the settlement); and

*Waldbuesser*, 2017 WL 9614818 at *8 (awarding $25,000 to each of four named plaintiffs on

---

[14]  *See*, *also*, *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, at *15 (N.D. Cal. Dec. 11, 2015) (service award of $7,500 to named plaintiff on $500,000 settlement "as compensation for her efforts on behalf of the class and for a personal release of her claims."); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (service award of $7,500 based on "the significant time and energy Willner has invested in this litigation over a period of four years, including sitting for a deposition; the risk to her reputation and work opportunities; and the broad general release she has signed, which releases her pled individual claim under Section 203."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC 2012 WL 381202, at *7–8 (N.D. Cal. Feb. 6, 2012) ($12,500.00 service award from a $13 million settlement fund; "though the approximate net payments were $57.00 and $75.00 to each of two subclasses, the class representative signed a broader general release than did her fellow class members, spent more than 100 hours on the litigation, had her friends and family subpoenaed, and disclosed her private information.").

{N0455686.1}                                    20

$16.75 million settlement fund, equaling "only .15% of the total settlement fund per Plaintiff, and only .60% of the total fund when combined.").[15]

**F.      The Amount Sought for Service Awards Compared To The Class Members' Settlement Shares Supports The Requested Service Awards**

The Court has noted that this $29.9 million settlement is "the largest of any security-check suit in California history." (Dkt. 431, at 7-8). It is large enough to compensate all members of the Settlement Class for 100% (on average 160%) of their unpaid time spent on Apple's security searches at their contracted rates, even after payment of the requested attorneys' fees, costs and the requested service awards. *See*, Joint Class Counsel Decl., ¶67 & Ex. 2.

The average gross share each class member will receive as a result of this settlement is $2,036.37. The average estimated *net* share will be $1,286.96; and the largest net share will be $4,702.67. Joint Class Counsel Decl., ¶¶37, 38 & Ex. 2. Absent the requested service awards, three of the five named Plaintiffs, Frlekin, Kalin and Gregoroff, for all of their efforts, risks, costs and success achieved for the class, will receive less than the average class member for their settlement shares. The other two, Dowling and Speicher, will receive more than the average class member, but far below the largest net share of $4702.67 (Dowling 58% lower and Speicher 64% lower than the largest class member net share).

The cost to each of the 14,683 class members of the requested service awards is approximately $0.68 for each requested Plaintiff award, and $3.40 for the aggregate $50,000 for all

---

[15] *See also Winters v. Two Towns Ciderhouse, Inc.*, No. 20-CV-00468-BAS-BGS, 2021 WL 1889734 *at 3 (S.D. Cal. May 11, 2021) , at *3 (S.D. Cal. May 11, 2021) (service awards of $7,500 and $5,000 to the two plaintiffs, amounting to 1.27% of the total settlement fund); *Alvarez*, 2017 WL, 2214585 at *1–2 (service awards of $10,000 to each of nine plaintiffs, constituting 1.8% of the total settlement of $4.9 million was "fair and reasonable, particularly in light of the actions Plaintiffs have taken to benefit the class, the degree to which the class has benefited from these actions, and the risks and burdens the Plaintiffs took on by serving as class representatives."); *Messineo v. Ocwen Loan Servicing LLC*, No. 15-CV-02076-BLF, 2017 WL 733219, at *10 (N.D. Cal. Feb. 24, 2017) at *10 (N.D. Cal. Feb. 24, 2017) (service awards of $5,000 which was "less than one percent, a 'tiny fraction of the common fund.'" (citing *Van Vranken*, 901 F. Supp. at 299); and *Sandoval v. Tharaldson Emp. Mgmt., Inc*., No. EDCV 08-482-VAP(OP), 2010 WL 2486346, *10 (C.D. Cal. June 15, 2010) (granting $7,500 service award which was 1% of the total settlement).

1    five Plaintiffs.  Shalov Decl., ¶86.  When the requested service awards are added to Plaintiffs' net

2    shares of the settlement, they increase Plaintiffs' total shares to a range of $10,534.01 (the lowest,

3    Gregoroff) to $11,944.31 (the highest, Dowling). The average Plaintiff recovery with the requested

4    $10,000 service rewards would be $11,239.16.[16]

5          The requested service awards would put Plaintiffs' recovery at slightly more than double

6    the amount of the highest net share of the other class members.  Given Plaintiffs' substantial

7    efforts, risks, costs and success achieved for the class, the requested awards compare favorably to

8    the class recovery.  The ratio is well within those approved by courts in this district in making

9    service awards. *See, e.g., McNeal*,  2017 WL 2974918 at *1-2 (service awards of $10,000 to the

10   two named plaintiffs were "proportional to the range of possible awards under the settlement,"

11   where the average class member payout was $1,951.89 (with "some class members" recovering in

12   excess of $25,000)); *Bolton v. U.S. Nursing Corp*., No. C 12-4466 LB, 2013 WL 5700403, at *6

13   (N.D. Cal. Oct. 18, 2013) (service award of $10,000 where class average settlement recovery was

14   $595.91, and the largest settlement recovery was $3,602.67 "does not misalign the settlement

15   interest.").

16         In *Gutierrez v. Wells Fargo Bank, N.A*., No. C 07-05923 WHA, 2015 WL 2438274, at *9

17   (N.D. Cal. May 21, 2015), this Court granted a service award to class representatives of $2,000

18   each (after trial), which was "55.9 times the average class members [gross] pro rata share of the

19   money judgment.").  While this case did not go to trial, the Court arguably should afford

20   considerable, possibly even greater, weight to Plaintiffs' substantial reputational and financial risks

21   undertaken for the class, compared to the hours the *Gutierrez* plaintiffs spent in trial.  Further, the

22   service awards Plaintiffs request here align far more closely with the *net* shares the other class

23   members will receive from this settlement than the Court considered to be reasonable in *Gutierrez*.

24

25

26   [16] While several additional class members provided declarations and were deposed in this action
     regarding Apple's contentions that each California store adopted different procedures for its search
27   policy, these class members were involved in the case for a very limited time, and did not assume
     the substantial reputational and financial risks Plaintiffs have in pursuing this action for the class.
28   These facts are in stark contrast to *Saravia v. Dynamex Operations W., LLC*, No. C 14-05003

1
2

### G.   The Number of Hours Plaintiffs Devoted To This Class Action And Their Valuable Contributions Supports Their Requested Service Awards

3
4
5
6
7
8
9
10
11
12

Collectively, Plaintiffs have spent an estimated 745-765 hours assisting Class Counsel to prosecute this case.  Individually, they each have spent over 100 hours, ranging to an estimated 190 hours.  *See*, Dowling Decl., ¶20 (125-135 hours); Frlekin Decl., ¶17 (160-170 hours); Gregoroff Decl., ¶22 (190 hours); Kalin Decl., ¶8 (over 100 hours); Speicher Decl., ¶22 (160 hours).  This level of effort and participation on behalf of a class, particularly where there is a settlement of this size, is a key factor courts cite in granting service awards above the "presumptively reasonable" $5,000.  For example, in *Harris v. Vector Mktg. Corp*., No. C-08-5198 EMC, 2012 WL 381202, at *7–8, the court based its $12,500 service award from the $13 million settlement fund in part on the "more than 100 hours" the class representative spent on the litigation.

13
14
15
16
17
18
19
20

This Court, too, has considered the number of hours spent on the litigation in making service awards.  *See*, *e.g*., *McLaughlin v. Wells Fargo Bank, N.A*., No. C-15-02904 WHA, 2017 WL 994969, at *1 (N.D. Cal. Mar. 15, 2017) (service award of $3,000 to a the class representative who estimated he spent over 100 hours in connection with that action which spanned 1 year, 9 months and settled for $880,000); *Richardson v. Interstate Hotels & Resorts Inc*., No. C 16-06772 WHA, 2019 WL 803746, at *4 (N.D. Cal. Feb. 21, 2019) (service award of $2,000 to class representative who spent 60 hours on the action which spanned 2 years, 3 months and settled for $800,000).

21
22

### H.   The Protracted Length Of This Litigation, Spanning Almost Nine Years, Supports the Requested Service Awards

23
24
25
26

Plaintiffs have been litigating this case for almost nine years.  "When litigation is protracted, an incentive award is especially appropriate." *Waldbuesser v. Northrop Grumman Corp*., 2017 WL 9614818 at *8 (awarding $25,000 to each of four named plaintiffs in litigation pending for almost eleven years). *See also, Marshall v. Northrop Grumman Corp*., No. 16-CV-

27
28

WHA, 2017 WL 1295069, at *4 (N.D. Cal. Apr. 7, 2017), in which this Court denied service awards because "dozens of [other plaintiffs] responded to discovery requests."

{N0455686.1}                                   23

6794 AB (JCX), 2020 WL 5668935, at *11 (C.D. Cal. Sept. 18, 2020), *appeal dismissed*, No. 20-56096, 2021 WL 1546069 (9th Cir. Feb. 16, 2021) (awarding $25,000 to each of the six class representatives on $16,750,000 settlement in litigation lasting over three years). As detailed in their declarations, throughout the entire course of this litigation, all five Plaintiffs have remained dedicated to its prosecution on behalf of the class.

## IV.    **CONCLUSION**

For all the reasons stated above, the Court is respectfully asked to grant the requested service awards to each of the five named Plaintiffs in this action.

Dated: March 25, 2022                        Respectfully submitted,

                        By:    /s/Lee S. Shalov
                               Lee S. Shalov
                               Brett R. Gallaway
                               Jason S. Giaimo
                               McLaughlin & Stern, LLP
                               260 Madison Avenue
                               New York, NY 10016
                               Tel: (212) 448-1100
                               lshalov@mclaughlinstern.com
                               bgallaway@mclaughlinstern.com
                               jgiaimo@mclaughlinstern.com

                               /s/Kathleen Styles Rogers
                               Kimberly A. Kralowec
                               Kathleen Styles Rogers
                               Kralowec Law, P.C.
                               750 Battery Street, Suite 700
                               San Francisco, CA 94111
                               Tel: (415) 546-6800
                               kkralowec@kraloweclaw.com
                               krogers@kraloweclaw.com

                               *Attorneys for Plaintiffs and Class Counsel for the Class*