Kimberly A. Kralowec (CA Bar No.163158)
kkralowec@kraloweclaw.com
Kathleen Styles Rogers (CA Bar No. 122853)
krogers@kraloweclaw.com
**KRALOWEC LAW P.C.**
3132A 24th Street
San Francisco, California 94110
Tel:     (415) 546-6800
Fax:     (415) 546-6801

Lee Shalov (admitted *pro hac vice*)
lshalov@mclaughlinstern.com
Brett Gallaway (admitted *pro hac vice*)
bgallaway@mclaughlinstern.com
**McLAUGHLIN & STERN, LLP**
260 Madison Avenue
New York, New York 10016
Tel:     (212) 448-1100
Fax:     (212) 448-0066

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMANDA FRLEKIN, AARON GREGOROFF, SETH DOWLING, DEBRA SPEICHER; AND TAYLOR KALIN, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>APPLE, INC.,<br><br>     Defendant. | Case No. 13cv03451-WHA (lead)<br>Case No. 13cv04727-WHA (consolidated)<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**<br><br>Date:   July 7, 2022<br>Time:  8:00 a.m.<br>Dept.:  12 – 19th Floor<br>Judge:  Hon. William Alsup |

### NOTICE OF MOTION AND MOTION FOR
### FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 7, 2022, at 8:00 a.m., or as soon thereafter as the matter may be heard, plaintiffs Amanda Frlekin, Aaron Gregoroff, Seth Dowling, Taylor Kalin, and Debra Speicher ("Plaintiffs"), will and hereby do move, pursuant to Federal Rule of Civil Procedure 23(e), for final approval of the class action settlement (the "Motion"), for which this court granted preliminary approval on December 28, 2021 (Dkt. 431), and request that the Court:

1.      Finally approve the proposed class action settlement reflected in the Settlement Agreement (the "Settlement") (Dkt. 416-2) and as amended pursuant to the Amendment to Stipulation Regarding Class and Private Attorneys General Act Settlement and Release ("Amendment"), a copy of which is annexed as Exhibit 1 to the Joint Declaration of Lee S. Shalov and Kimberly A. Kralowec dated June 24, 2022 (the "Joint Declaration");[1]

2.      Enter a final approval order in the form attached to the Amendment as Exhibit 1; and

3.      Enter judgment in the form attached to the Amendment as Exhibit 2.[2]

As discussed in the accompanying memorandum, Plaintiffs make this Motion on the grounds that the Settlement is fair, reasonable, and adequate; was negotiated at arm's-length; is not collusive; and is in the best interests of the class; and on the further ground that the approved class administrator, Angeion Group ("Angeion"), provided notice to the class by U.S. mail and by email where email addresses were available, as directed by the Court and in a manner consistent with due process.  Angeion also established a toll-free number and a website with links to documents relevant to the action. The notice provided was the best notice practicable under the circumstances in compliance with Rule 23(e) and due process.

---

[1]      All references to "Settlement" used herein are to the Settlement as amended pursuant to the Amendment.

[2]      Contemporaneously herewith, the parties are seeking preliminary approval of a separate settlement agreement as it relates to the recently identified proposed Class of 105 Additional Employees who worked as non-exempt employees at an Apple retail store in California between August 3, 2015 and December 26, 2015, and who had not been previously identified as a New Class Member or provided with notice of the Settlement (the "Class of 105 Additional Employees").  The parties will seek final approval of this separate settlement agreement after notice is distributed to the Class of 105 Additional Employees and the Court holds a separate final fairness hearing to determine whether to finally approve that settlement agreement.

As of the date of this filing, no class members filed objections.  Of the 799 New Class Members, only 5 opted out (0.63%).[3]  This $30.5[4] million lump-sum settlement provides an average net payment of $1,328.06[5] per class member after Plaintiffs' requested attorneys' fees, costs, and incentive awards, and without requiring the filing of claim forms, assuming the Court grants Plaintiffs' Motion for Award of Attorneys' Fees and Litigation Costs (Dkt. 434) and Plaintiffs' Motion for Awards for Class Representatives and for Named Plaintiff Amanda Frlekin (Dkt. 435). The settlement fund is non-reversionary and the proposed *cy pres* recipient is California Alliance of Boys & Girls Clubs, Inc., with the fund designated to be used in California for the Boys & Girls Clubs' Workforce Readiness program/job training.

The Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Joint Declaration; the Declaration of Steve Platt of Angeion regarding notice distribution, requests for exclusion, and final administration fees and expenses dated June 15, 2022 (Dkt. 444-1); the Supplemental Declaration of Steve Platt dated June 24, 2022; the previously filed Motion for Preliminary Approval of Class Action Settlement (including the declarations and exhibits submitted in connection with that motion) (Dkt. 416); the Declaration of Alex Erwin, Business Systems Analyst of defendant Apple Inc.; the pleadings and papers filed in this case; and oral argument and any additional material that may be elicited at the hearing on the Motion.

---

[3]   In August 2015, Existing Class Members were afforded the opportunity to exclude themselves from the class, which resulted in 407 opt-outs.  *See* Dkt. 378.

[4]   As further set forth in the Declaration of Alex Erwin in Support of Final Settlement Approval dated June 23, 2022, after the Court granted preliminary approval of the Settlement, Apple learned that it undercounted the total number of shifts worked by 203,557, bringing the total shifts worked during the Class Period to 6,961,913.  To ensure Participating Settlement Class Members receive the same amount per shift as estimated in the notice issued to them, Apple has agreed to pay the additional sum of $569,959.60 to account for the undercounted shifts.  *See* Joint Declaration, Ex. 1. Apple has also agreed to increase the PAGA Settlement Amount by $8,549.39 from $448,500 to $457,049.39.  *Id.*  As a result, the Total Settlement Amount increased by $578,508.99 from $29,900,000 to $30,478,508.99.  *Id.*

[5]   As further set forth in the accompanying Memorandum of Points and Authorities, the average net payment per class member is calculated based on the average number of shifts worked per employee.  Pursuant to the Amendment, Apple has agreed to pay an additional $569,959.60 to account for the undercounted shifts.  *See* Joint Declaration, Ex. 1.  As a result, the average net payment per Settlement Class Member increased from $1,286.96 to $1,328.06.

Dated: June 24, 2022

Respectfully submitted,

By:    */s/Lee S. Shalov*
       Lee S. Shalov
       Brett R. Gallaway
       Jason S. Giaimo
       McLaughlin & Stern, LLP
       260 Madison Avenue
       New York, NY 10016
       Tel: (212) 448-1100
       lshalov@mclaughlinstern.com
       bgallaway@mclaughlinstern.com
       jgiaimo@mclaughlinstern.com

       */s/Kathleen Styles Rogers*
       Kimberly A. Kralowec
       Kathleen Styles Rogers
       Kralowec Law, P.C.

       3132A 24th Street
       San Francisco, California 94110

       Tel: (415) 546-6800
       kkralowec@kraloweclaw.com
       krogers@kraloweclaw.com

       *Class Counsel*

1

## <u>TABLE OF CONTENTS</u>

2   I.    INTRODUCTION................................................................................................4

3   II.   SUMMARY OF THE SETTLEMENT TERMS .................................................6

4        A.  The Settlement Consideration .................................................................6

5        B.  Releases ...................................................................................................8

6        C.  Notice .....................................................................................................8

7        D.  Allocation ...............................................................................................9

8        E.  The Settlement Class & New Class Members Identified ...................................10

9        F.  Apple's Shift Count Investigation and the Impact on Settlement Class Payments..........11

10  III.  THIS SETTLEMENT MEETS THE STANDARDS GOVERNING JUDICIAL
          APPROVAL OF CLASS ACTION SETTLEMENTS .........................................13

11

12  IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE............15

13       A.  The Class Representatives and Class Counsel Have Adequately Represented the
            Class .......................................................................................................16

14       B.  The Settlement Was Negotiated at Arms'-Length .........................................18

15       C.  The Relief for the Class is Adequate .................................................................19

16       D.  The Proposed Settlement Treats Class Members Equitably Relative to Each Other .......21

17       E.  The Reaction of the Class Favors Approval ....................................................22

18  V.    NOTICE TO THE CLASS WAS ADEQUATE .................................................23

19  VI.  CONCLUSION ..................................................................................................26

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Cases**

3

*Arnold v. Fitflop USA, LLC,*

4
   2014 WL 1670133 (S.D. Cal. Apr. 28, 2014) ................................................................... 23

5

*Blair v. Rent-A-Center, Inc.*
   2020 WL 408970 (N.D. Cal. Jan. 24, 2020) .................................................... 13, 16, 23

6

*Carlin v. DairyAmerica, Inc.,*

7
   380 F. Supp. 3d 998 (E.D. Cal. 2019) ........................................................................... 20

8

*Chavez v. Converse Inc.,*
   15-cv3746, Dkt. Nos. 210, 219 (N.D. Cal. 2015) .......................................... 10, 19, 22

9

*Churchill Vill., LLC v. Gen. Elec.,*

10
   361 F.3d 566 (9th Cir. 2004) ......................................................................................... 24

11

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ....................................................................................... 13

12

13

*Frlekin v. Apple, Inc.,*
   8 Cal.5th 1038 (2020) ............................................................................................... 5, 16

14

*Frlekin v. Apple, Inc.,*

15
   973 F.3d 947 (9th Cir. 2020) ......................................................................................... 17

16

*Greer v. Dick's Sporting Goods,*
   15-cv-01063, Dkt. Nos. 73, 89 (C.D. Cal. 2015) ........................................... 10, 19, 22

17

18

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ................................................................................ 14, 23

19

*Il Fornaio (America) Corporation v. Lazzari Fuel Company, LLC,*
   2015 WL 2406966 (N.D. Cal. May 20, 2015) .............................................................. 26

20

21

*In re Anthem, Inc. Data Breach Litigation,*
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................................. 20

22

*In re Critical Path, Inc.,*
   2002 WL 32627559 (N.D. Cal. June 18, 2002) ........................................................... 21

23

24

*In re LendingClub Securities Litig.,*
   2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ............................................................. 18

25

*In re Mego Fin. Corp. Sec. Litig.,*

26
   213 F.3d 454 (9th Cir. 2000) ................................................................................... 13, 21

27

*Karl v. Zimmer Blomet Holdings, Inc.,*
   2022 WL 658970 (N.D. Cal. Mar. 4, 2022) ................................................................. 20

28

*Lao v. H&M Hennes & Morvitz*, LP,
   16-cv-00333, Dkt. Nos. 158, 167 (N.D. Cal. 2016) ....................................................... 10, 19, 22

*Luna v. Marvell Tech Grp.*,
   2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ..................................................................... 23

*Mejia v. Walgreen Co.*,
   19-cv-00218, Dkt. Nos. 21, 30 (E.D. Cal. 2019) .................................................................. 10, 22

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) ........................................................................................... 23, 25

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) ............................................................................................... 24

*Mullane v. Central Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ...................................................................................................................... 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D 523 (C.D. Cal. 2004) ......................................................................................... 13, 14

*Officers for Justice v. Civil Service Commission*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................... 13, 14

*Reyes v. Bakery and Confectionery Union and Industry International Pension Fund*,
   281 F. Supp. 3d 833 (N.D. Cal. 2017) .............................................................................. 22, 23

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2003) ................................................................................................... 13

*Tellez v. Ulta Salon, Cosmetics & Fragrance Inc.*,
   18-cv-02480, Dkt. Nos. 32, 41 (S.D. Cal. 2018) .............................................................. 10, 22

*Torrisi v. Tuscon Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ....................................................................................................... 22

*Vikram v. First Student Mgmt., LLC*,
   2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ......................................................................... 20

**Statutes**

California Labor Code § 1194.2 ....................................................................................... 5, 17

California Labor Code § 203 .................................................................................................. 17

California Labor Code § 226(e) ............................................................................................. 17

Federal Rule of Civil Procedure 23 ........................................................................... 13, 16, 24

**Other Authorities**

Newberg and Conte, Newberg on Class Actions (4th ed. 2002), § 11:41, p. 90 ............................ 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

After nearly nine years of heavily contested litigation in this Court, the Ninth Circuit, and the California Supreme Court, Plaintiffs[1] are pleased to present to the Court for final approval the $30.5[2] million non-reversionary Settlement reached for the benefit of the class, which, if approved, will be the largest reported settlement in a security search case in California history.[3]  The Settlement provides a substantial and immediate recovery for the proposed Settlement Class Members.  If approved, the Settlement Class Members are expected to receive an average *net* settlement payment of $1,328.06 each[4], which represents 161% of average estimated unpaid wages at contract wage rates,[5] or 91% with pre-judgment interest—or 409% to 230% at minimum wage rates—without any claims requirement and with no reversion of any sum to Apple.

---

[1]   Unless otherwise defined, capitalized terms used herein shall have the same meaning as used in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement ("Plaintiffs' Preliminary Approval Motion") (Dkt. 416).

[2]   As discussed in Point II(f) and n. 7, while the original settlement sum was $29.9 million, Apple has agreed to pay an additional $569,959.60 to account for 203,557 shifts Apple undercounted, as well as an additional $8,549.39 to ensure the PAGA Settlement Amount is not reduced for the LWDA or any class member, bringing the Total Settlement Amount to $30,478,508.99.  To this end, the parties entered into the Amendment to Stipulation Regarding Class and Private Attorneys General Act Settlement and Release dated June 24, 2022 (the "Amendment"), which is attached to the Joint Declaration of Lee S. Shalov and Kimberly A. Kralowec dated June 24, 2022 ("Joint Dec.") as Exhibit 1.  References to "Settlement" or "Settlement Agreement" herein are to the Settlement as amended by the Amendment.

[3]   Contemporaneously herewith, the parties are seeking preliminary approval of a separate settlement agreement as it relates to a recently-identified proposed Class of 105 Additional Employees who worked as non-exempt employees at an Apple retail store in California between August 3, 2015 and December 26, 2015, and who had not been previously identified as a New Class Member or provided notice of the Settlement.  As set forth in that motion, Apple has agreed to pay additional sums to such individuals to ensure they receive the same net value of each shift as all other Settlement Class Members.

[4]   As a result of Apple's agreement to add $578,508.99 to the Settlement sum, the average net estimated payment per Settlement Class Member increased from $1,286.96 to $1,328.06.  Specifically, the average net payment per class member is calculated based on the average number of shifts worked per employee.  Plaintiffs' original calculation of the average net payment of $1,286.96 per class member was based on a total of 6,758,356 shifts worked by Class Members during the Class Period, based on records provided by Apple.  Subsequent to the Court's decision granting preliminary approval of the Settlement (Dkt. 431) (the "Preliminary Approval Order"), Apple learned that it undercounted the total number of shifts worked by 203,557, bringing the total shift count to 6,961,913.

[5]   Assuming 5 minutes of unpaid security search time per day.

This is a significant, non-reversionary settlement reached after nearly a decade of hard-fought litigation, including comprehensive discovery, Plaintiffs' successful motion for class certification, the parties' cross-motions for summary judgment, and Plaintiffs' appeals to the Ninth Circuit Court of Appeals and the California Supreme Court.  Indeed, from the inception of this action, Plaintiffs vigorously pursued their claims against Apple for failure to pay them and others for time spent undergoing required security searches.  *See* Dkt. 431 at p. 7 ("Both sides have dueled for a long time.").  In doing so, Plaintiffs achieved a monumental decision from the California Supreme Court that Plaintiffs and other Apple employees "must be paid" for all time spent waiting for and undergoing Checks.  *Frlekin v. Apple, Inc.*, 8 Cal.5th 1038, 1056 (2020).

The Settlement is a culmination of those efforts, and was reached only after extensive arms'-length negotiations, including three full-day mediation sessions and a mediator's proposal conveyed at the conclusion of the third session.  Undoubtedly, the Settlement was the result of serious, well-informed and non-collusive negotiations.  Dkt. 431 at p. 7 ("the proposal suggests serious, non-collusive negotiation.").  And the $30.5 million Settlement is an outstanding result in view of the potential hurdles to recovering monetary relief had the case proceeded through trial.  As the Court recognized in the Preliminary Approval Order, "this case remains reasonably complex" and would require "one or more damages trials" during which class members would be subject to cross-examination regarding the estimated bag checks they suffered.  *Id.*  The parties also had considerable disagreements regarding whether minimum wage rates or regular hourly wage rates should apply, the applicability of Apple's purported *de minimis* defense and "good faith" defense, and the availability of liquidated damages under California Labor Code 1194.2.  *See id.*  In light of these obstacles, the Settlement is even more impressive. The absence of objections to the Settlement and the limited number of requests for exclusion from New Class Members further confirms that the Settlement will provide substantial benefits to the class.

For these and other reasons discussed below, Plaintiffs and Class Counsel believe that this Settlement is eminently fair, adequate, and reasonable. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## II.    SUMMARY OF THE SETTLEMENT TERMS

Plaintiffs presume the Court's familiarity with the litigation and rely upon the summary of the litigation in Plaintiffs' Preliminary Approval Motion (Dkt. 416), including the Joint Declaration of Lee S. Shalov and Kimberly A. Kralowec in support (Dkt. 416-1), which are expressly incorporated by reference herein. For the Court's ease of reference, however, Plaintiffs briefly summarize the pertinent terms of the Settlement.

### A.    The Settlement Consideration

Pursuant to the terms of the Settlement Agreement, Apple agreed to pay $29.9 million to settle the claims alleged in this litigation. *See* Settlement at § 3.4.1. As further discussed in Point II(f), *infra*, after the Preliminary Approval Order, Apple learned that it undercounted the total shifts worked by Class Members by 203,557 shifts. To ensure all Settlement Class Members receive the estimated net settlement payment reflected in the notice distributed to each, Apple has agreed to pay an additional $569,959.60 to account for these shifts. *See* Joint Dec., Ex. 1. Apple has also agreed to pay an additional $8,549.39 to the PAGA Settlement Amount to ensure the PAGA Settlement Amount is not reduced for the LWDA or any class members. *Id.* As such, the total Settlement amount is $30,478,508.99. *Id.* Apple has also agreed to separately pay the employer's share of the payroll taxes owed on the wage portion of the settlement fund. *See* Settlement at § 3.6.2. Based on the increased total Settlement amount, this is valued at approximately $798,000, for a total settlement value of approximately $31,275,000. *See* Dkt. 416-1 ¶ 36 & n.6 (explaining this valuation). The Settlement is non-reversionary; that is, no portion of the $30.5 million fund will ever revert back to Apple. Settlement at § 1.46. Significantly, no Settlement Class Members will be required to submit a claim form. *Id.* at §§ 1.16, 1.32 & 3.4.1.7. As the Court previously recognized, this is "another substantial plus" of the Settlement. Dkt. 431, p. 5. Instead, if the Settlement is approved, checks will be mailed directly to the Participating Settlement Class Members in the amount of their pro rata share of the Settlement fund, net of any Court-approved deductions. *See* Settlement at §§ 3.6.8, 3.4.1.7.

The Net Settlement Amount to be distributed directly to the Settlement Class Members is

estimated at approximately 19,657,419.99.  *Id.* at § 1.22.[6]  Assuming no further opt-outs, average Settlement Class Member payments are expected to be $1,328.06, representing 161% of estimated average wages owed for unpaid Check time, assuming an average unpaid Check of 5 minutes per day).  If estimated pre-judgment interest is included, the average net settlement payment is 91% of average wages plus interest.  If minimum wage rates are used, the average net settlement payment equals 409% of estimated average unpaid wages, or 230% of estimated average unpaid wages inclusive of pre-judgment interest.  The calculation of these estimates is further discussed in Point II(F).

The following sums, if approved by the Court, will be deducted from the Total Settlement Amount to arrive at the Net Settlement Amount: (1) $89,500 to Angeion Group, Inc. ("Angeion"), the Settlement Administrator, for administration services including issuance of notice of the Settlement, distribution of checks, and related administration costs (Settlement at §§ 1.42, 3.3); (2) service awards of $10,000 to each of the five named Plaintiffs in recognition of their time and effort in prosecuting the Action (*id.* at § 3.4.1.1, 3.4.1.2); (3) attorneys' fees of up to one third of the original Total Settlement Amount (or $9,966,666.67), in recognition of the extraordinary results achieved by Class Counsel, to be allocated among all firms who represented the Plaintiffs in the litigation (*id.* at § 3.4.1.3); (4) out-of-pocket litigation costs of $372,134.84, to be allocated among all firms who represented the Plaintiffs in the litigation and who incurred out-of-pocket litigation costs (*id.* at § 3.4.1.4); (5) an allocation of $457,049.39 (1.5% of the Total Settlement Amount, as amended) to the PAGA claim, with 75% of that sum ($342,787.04) to the LWDA and 25% of that sum ($114,262.35) to the eligible class members (the proposed "PAGA Settlement Class Members") (*id.* at §§ 3.4.1.6, 3.4.6.1, 3.4.6.2).

Class Counsel do not seek further attorneys' fees from the additional $578,508.99, which Apple will add to the Settlement fund to account for the shifts it undercounted.  Those funds will be

---

[6]     The parties originally estimated the Net Settlement Amount to be $18,895,333.33.  As a result of Apple's agreement to add $569,959.60 to the Settlement fund to account for the shifts it undercounted and $8,549.39 to the PAGA Settlement Amount (of which 25% will be distributed to eligible class members), the estimated Net Settlement Amount to be distributed to Settlement Class Members inclusive of the PAGA component is $19,648,871.05.

1   used solely to increase proportionately the settlement shares of Settlement Class Members whose

2   shifts originally were undercounted by Apple.

3   **B. <u>Releases</u>**

4       If the Settlement is finally approved, the Class Representatives and the Participating

5   Settlement Class Members will release the Released Parties from all Class Claims, while Plaintiffs

6   Kalin and Frlekin, the PAGA Settlement Class Members, and the State of California will release the

7   Released Parties from the PAGA Claims. *See id.* at §§ 3.4.2, 3.4.3. "Class Claims" and "PAGA

8   Claims" are narrowly defined and limited to claims arising out of the facts alleged in the Action—

9   that is, claims arising out of Apple's failure to pay for all time worked pursuant to the Check policy.

10  *See id.* at §§ 1.3, 1.27. The five named Plaintiffs have also agreed to a general release. *Id.* at § 3.4.4.

11  As the Court noted in the Preliminary Approval Order, "the release appears reasonable, tailored to

12  the claims pursued in the consolidated complaint in this action and excluding state claims dismissed

13  with prejudice, or claims pursued in named plaintiff Taylor Kalin's notice letter that didn't enter into

14  the consolidated complaint." Dkt. 431 at p. 7.

15  **C. <u>Notice</u>**

16      As further discussed in the Declaration of Steve Platt dated June 15, 2022 (Dkt. 444-1) ("Platt

17  Dec.") and in Point IV, *infra*, notice of the Settlement was effectuated by Angeion in accordance

18  with the Preliminary Approval Order and the Settlement. Specifically, within 15 calendar days of

19  the issuance of the Preliminary Approval Order, Apple provided Angeion with an "Employee List"

20  including employee shift data and last known contact information for the Settlement Class Members.

21  *See* Platt Dec. at ¶ 4. Upon the receipt of the Employee List, Angeion prepared the individual class

22  notices with shifts worked during the class period and expected payout from the Settlement, and

23  conducted a national change of address search and a skip trace for the most recent mailing addresses

24  of all former employee Settlement Class Members. *Id.* at ¶ 19. Thereafter, Angeion caused the

25  Existing Class Member Notice of Settlement to be mailed to all 13,884 Existing Class Member

26  addresses included on the Employee List, via USPS first-class mail, postage prepaid. *Id.* at ¶ 20.

27  Angeion also caused the New Class Member Notice of Settlement and Opt-Out Form to be mailed

28

{N0486942.1}                                    8

to all 799 New Class Member addresses included on the Employee List, via USPS first-class mail, postage prepaid. *Id.* at ¶ 21. Notices returned as undeliverable by the USPS without a forwarding address were processed through address verification searches and re-mailed to the updated addresses located through this process. *Id.* at ¶ 22. Notices returned as undeliverable by the USPS with a forwarding address were re-mailed to the forwarding address identified by the USPS. *Id.* Of the 14,683 Notices mailed, 14,338 were successfully delivered, and only 345 were not successfully delivered. *Id.* at ¶ 23.

Prior to distributing notice via email, Angeion performed an extensive analysis of the class data records that contain an email address. *Id.* at ¶ 9. The email addresses were subjected to an email cleansing and an email validation process whereby each email address was verified by contacting the Internet Service Provider to determine if the email address exists. *Id.* Thereafter, Angeion caused the distribution of the Notice via email to the valid email addresses included on the Employee List for the Settlement Class Members. *Id.* at ¶¶ 14-15. Approximately one week later, Angeion re-transmitted email notice to the Settlement Class Members. *Id.* at ¶¶ 16-17. Of the 6,432 New and Existing Class Member valid email addresses contained in the Class Member List, 6,356 (98.8%) were successfully delivered. *Id.* at ¶ 18.

In addition to mailing and emailing Notices, Angeion also established a toll-free number and a website with links to documents relevant to the Action. *Id.* at ¶¶ 24-27. Additionally, Class Counsel and Apple maintained a link to the settlement website on their respective websites. *See* Dkt. 443, 444, & 445.

**D. <u>Allocation</u>**

Settlement Class Members' shares (referred to in the Settlement Agreement as the "Individual Class Payments") will be calculated pro rata based on the number of shifts they worked at an Apple retail store in California during the Class Period (July 25, 2009 through December 31, 2015),[7] as reflected in Apple's Employee List., and as stated on each Settlement Class Member's individual class notice (except for Class Members whose shift counts have subsequently been

---

[7] Pursuant to the Preliminary Approval Order, the damages period was extended by 14 days from December 17, 2015 to December 31, 2015. *See* Dkt. 431 at 4.

revised upwards after Apple's investigation of shift data). *Id.* at §§ 1.16, 3.4.1.7.  This is consistent with judicially approved individual settlement class member payments in other bag check and security check class settlements.  *See, e.g., Lao v. H&M Hennes & Morvitz*, LP, 16-cv-00333, Dkt. Nos. 158, 167 (N.D. Cal. 2016); *Greer v. Dick's Sporting Goods*, 15-cv-01063, Dkt. Nos. 73, 89 (C.D. Cal. 2015); *Tellez v. Ulta Salon, Cosmetics & Fragrance Inc.*, 18-cv-02480, Dkt. Nos. 32, 41 (S.D. Cal. 2018); *Mejia v. Walgreen Co.*, 19-cv-00218, Dkt. Nos. 21, 30 (E.D. Cal. 2019); *Chavez v. Converse Inc.*, 15-cv3746, Dkt. Nos. 210, 219 (N.D. Cal. 2015).  In addition, PAGA Settlement Class Members will also receive a share of the $114,262.35 PAGA allocation (25% of the total PAGA allocation), calculated pro rata based on the number of pay periods they worked during the PAGA Period (July 25, 2012 through Dec. 31, 2015), as reflected in Apple's business records.  *Id.* at §§ 1.32, 3.4.1.6.2.

If the Settlement is approved, the Settlement Class Members will not be required to submit a claim in order to receive a share of the Settlement.  *See id.* at §§ 1.16, 1.32 & 3.4.1.8.  Instead, they will simply be mailed a check for their pro rata share of the Net Settlement Amount.  *See id.* at § 3.6.3.

### E. The Settlement Class & New Class Members Identified

Pursuant to the Court's Order preliminarily approving the Settlement, the Settlement Class consists of the 13,884 employees certified in 2015 (which excludes the 407 opt-outs), plus the 799 New Class Members whose bags were checked between December 17, 2015 and December 31, 2015.  Dkt. 431 at p. 4.  Of the 799 New Class Members, only 5 opted out.  *See* Platt Dec. at ¶ 33.

After the Court's Preliminary Approval Order, Apple learned of 105 individuals who worked as non-exempt employees at an Apple retail store in California between August 3, 2015 and December 26, 2015, and who had not been previously identified as a New Class Member and who were not given notice of the Settlement (the "Class of 105 Additional Employees").  *See* Declaration of Alex Erwin ("Erwin Dec.") at ¶ 10.  The Class of 105 Additional Employees worked a total of 10,781 shifts.  *Id.*  The parties have entered into a separate settlement agreement pertaining to these 105 individuals to ensure that they receive the same net payment per shift as all other Settlement

Class Members and receive adequate notice of the settlement and a right to object and opt-out of that separate settlement agreement.  The separate settlement agreement was also formed in order to avoid any prejudice to the existing Participating Settlement Class Members, such as delay in final approval of their Settlement and, if final approval is granted, delay in payment of their Settlement shares—payments for which they have been waiting for many years and to which none of them have objected.  To this end, contemporaneously herewith, the parties are seeking preliminary approval of this separate settlement agreement with the proposed Class of 105 Additional Employees, to run on a separate preliminary and final approval track.

Not including the separate proposed Class of 105 Additional Employees, there are 14,678 Settlement Class Members (*i.e.*, 13,884 employees certified in 2015 less the 407 opt-outs, plus 799 New Class Members less the 5 opt-outs).  This includes all Apple California retail employees who began employment between July 25, 2009 and December 26, 2015 (other than the Class of 105 Additional Employees), while the damages period extends between July 25, 2009 and December 31, 2015.  Dkt. 431 at p. 4.

## F.   Apple's Shift Count Investigation and the Impact on Settlement Class Payments

As further set forth in the accompanying Erwin Dec., in February and March 2022, after the Preliminary Approval Order was entered and notice of the Settlement was distributed, Angeion informed Apple that four class members had disputed the accuracy of the number of shifts reported on their notice of settlement.  *See* Erwin Dec., at ¶ 3.  Apple investigated these disputes and confirmed that Apple had undercounted the number of shifts these four class members had worked, and that the Employee List it had provided to Angeion included inaccurate shift data as to those class members.  *Id.* Apple conducted a further investigation to determine whether it had missed shifts worked by other class members, and ultimately determined that during the period between November 3, 2012 and December 31, 2015, when Apple used the Kronos system to record hours and shifts worked, Apple undercounted class member shifts worked by 137,159 and overcounted shifts worked by 3,192.  *Id.* at ¶¶ 4-6.

In mid-May 2022, one additional class member disputed the accuracy of the number of shifts

1    reported on his notice of settlement. *Id.* at ¶ 7. Apple investigated this dispute and confirmed that

2    it had undercounted the number of shifts this class member had worked and that the Employee List

3    it had provided to Angeion included inaccurate shift data for this class member. *Id.* This class

4    member's hours and shifts were recorded by Apple in part using their Time and Attendance ("T&A")

5    system, which was in place from July 25, 2009 until November 2, 2012. *Id.* at ¶ 8. Apple then

6    conducted a further investigation of its T&A system to determine whether additional shifts were

7    undercounted in the T&A system. *Id.* Through this analysis, Apple concluded that the total number

8    of undercounted shifts during the period the T&A system was in place was 66,398, and the total

9    number of overcounted shifts during this period was 304. *Id.* at ¶¶ 8-9.

10         To ensure Class Members are paid for the full number of shifts Apple has identified, and that

11   Class Members are paid for all shifts referenced in their notices of settlement, Apple has agreed to

12   add the 137,159 new Kronos shifts and to honor the originally-quoted but overcounted 3,192 shifts.

13   *See* Joint Dec, Ex. 1. Likewise, to ensure Class Members are paid for the full number of shifts Apple

14   has identified, and that Class Members are paid for all shifts referenced in their notices of settlement,

15   Apple has agreed to add the 66,398 new T&A shifts and to honor the originally-quoted but

16   overcounted 304 shifts. *See id.* Apple has agreed that it will provide Angeion with an updated

17   Employee List in which the errors Apple identified are corrected. *Id.*

18         Because the total number of shifts at issue is higher than the parties originally understood to

19   be correct, and because Apple has agreed to add funds to the Settlement to account for these

20   undercounted shifts, the average net settlement payment is *higher* than originally anticipated.[8]

21         Pursuant to the Settlement, each Participating Class Member will receive from the Net

22   Settlement Amount, his or her Individual Class Payment, calculated on a *pro rata* basis based on the

23   number of shifts each Participating Settlement Class Member worked at an Apple retail store in

24   California during the Class Period. *See* Settlement at § 1.16. Specifically, each Individual Class

25   Payment shall be calculated by dividing a Participating Settlement Class Member's individual shifts

26   worked by the total of all shifts worked by all Participating Settlement Class Members during the

27

28   [8]      Specifically, the average net settlement payment increased from $1,286.96 to $1,328.06.

Class Period (including all shifts Apple originally overcounted), and multiplying this result by the Net Settlement Amount.  *See id.* at § 3.4.1.7.

## III.   THIS SETTLEMENT MEETS THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," particularly where class action litigation is involved.  *See Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."). In determining if a class settlement warrants final approval under Federal Rule of Civil Procedure 23, the district court must find that the settlement is "fair, reasonable, and adequate" considering whether: (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arms'-length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(A)-(D); *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2003); *Blair v. Rent-A-Center, Inc.* 2020 WL 408970, at *2 (N.D. Cal. Jan. 24, 2020) (Alsup, J.) (identifying various factors courts look at in determining whether a settlement is fair, reasonable, and adequate). The Court should also balance the continuing risks of litigation against the benefits afforded to the class and the immediacy and certainty of a substantial recovery.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D 523, 526 (C.D. Cal. 2004).  When, as here, a proposed class settlement is negotiated at arms'-length and presented for court approval, there is an initial presumption of fairness.  *See* Newberg and Conte, Newberg on Class Actions (4th ed. 2002), § 11:41, p. 90.

As the Ninth Circuit has explained, a decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.  The function of final approval is merely to "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (the question is "not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). As such, courts have taken a liberal approach towards approval of class action settlements. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms.*, 221 F.R.D. at 526.

Guidelines issued by this District also require Class Counsel to include in their motion for final approval of the settlement:

> information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who elected to opt out of the class, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.

*See* Procedural Guidance for Class Action Settlements (updated November 1, 2018 and December 5, 2018) at *https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements*.

Here, as further discussed below, the Settlement is fair, reasonable, and adequate, and is a highly favorable result for the class. Class Counsel and the Class Representatives have adequately represented the class, having vigorously litigated this action for nearly nine years against one of the largest technology companies in the world. To this end, Class Counsel and the Class Representatives overcame significant hurdles in ultimately prevailing on liability against Apple, leading to this significant Settlement. Additionally, the Settlement was negotiated at arms'-length over the course of three different mediations, each of which were overseen by an experienced and well-respected mediator. And the relief afforded to the class is more than adequate, providing an average *net* payment of $1,328.06 each, which represents 161% of average estimated unpaid wages at contract wage rates, or 91% with pre-judgment interest—or 409% to 230% at minimum wage rates. What is more, the $30.5 million recovery is not the only benefit to the class. Plaintiffs obtained a published, binding California Supreme Court opinion construing the "control" test for compensable "hours

worked," and doing so broadly in favor of protecting the class.  Apple terminated its bag check policy in December 2015.  Dkt. 368.  Still, this opinion will preclude Apple from re-imposing an unpaid security search policy on any of its current and future retail store employees in California, functioning as a *de facto* injunction of such conduct and eliminating any purported "good faith" defense on Apple's part.  The value of this non-monetary benefit to Apple employees, including at least some of the class members, can be reasonably quantified.  The Supreme Court's opinion became final on May 13, 2020.  During the 26-month period from that date through the estimated date of final approval (July 7, 2022), Apple's employees have either been paid or been spared over $4.7 million in average estimated unpaid search time.[9]  Put another way, the binding opinion represents an estimated $2.2 million per year in unpaid wages (or uncontrolled personal time) to Apple's employees.

The proposal also treats class members equitably relative to each other based on an allocation that is driven by the number of shifts each Settlement Class Member worked. Additionally, notice of the Settlement was the best notice practicable under the circumstances.  To this end, notice was distributed by Angeion, an experienced settlement claims administrator, in accordance with the Preliminary Approval Order, as further discussed in Part V, below.

For these reasons, as further discussed below, the Settlement warrants final approval.

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A district court may approve a proposed class settlement only upon finding that it is fair, reasonable, and adequate, taking into account: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence

---

[9]     This figure assumes that Apple employs 5,000 non-exempt retail sales employees (about one third of the class size) in California at any one time.  It also uses the class members' average contract rate, which does not account for wage increases since the end of the class period, which was six and a half years ago.  Assuming an average unpaid Check duration of 5 minutes, and an average contract rate of $20.89, a full-time Apple employee would accrue $36.42 in unpaid search time per month. Assuming 5,000 employees, that amounts to $182,100 per month in unpaid search time. *See* Dkt. 416-1, ¶¶ 65-66 (explaining figures used to compute estimated average unpaid wages).

of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Blair*, 2020 WL 408970, at *2 (citing Fed. R. Civ. P. 23(e)).  Each of these factors were addressed at length in Plaintiffs' Motion for Preliminary Approval – which the Court considered and found "weigh in favor of the settlement" (Dkt. 431 at p. 8) – and are expressly incorporated herein. Pursuant to Rule 23(e)(2), the Court should also consider whether (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arms'-length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(A)-(D).

## A.  <u>The Class Representatives and Class Counsel Have Adequately Represented the Class</u>

Class Counsel and the Class Representatives overcame significant hurdles for the benefit of the class, ultimately culminating in the substantial $30.5 million settlement.  As an initial matter, during a critical hearing on February 20, 2014, the Court expressed considerable skepticism about the merits of the case, stating that "artful pleading" may have "left out critical facts that may … eviscerate every single claim."  Dkt. 147 (Transcript of Proceedings, Feb. 20, 2014) at 46:5-8; *see also* Dkt. 132 at 25-26.  Nonetheless, Plaintiffs were able to defeat Apple's first motion for summary judgment.  Dkt. 166.  Thereafter, Plaintiffs successfully moved for class certification.  Dkt. 297. Plaintiffs were likewise successful in defeating Apple's Rule 23(f) petition challenging the class certification order.  Dkt. 333. Class notice was completed in September 2015.  Dkt. 378, ¶ 3.  Only 407 out of 14,291 class members (2.8%) opted out and no class member intervened.  *Id.*; *see* Dkt. 416-1, ¶ 13.

After class certification, the Court granted Apple's second motion for summary judgment and denied Plaintiffs' motion for summary judgment, concluding that the Checks were "voluntary" and therefore non-compensable because the employees could "choose" to leave their personal belongings at home, and for the alternative reason that the activity did not constitute "work."  Dkt. 339.  Through the substantial work and advocacy of Class Counsel, however, Plaintiffs achieved a complete victory before the California Supreme Court for the benefit of the class.  Specifically, the Supreme Court held that all search-related time was compensable as a matter of law under the

1   "control" test of Wage Order 7.  *Frlekin*, 8 Cal.5th at 1045-57.  The work, however, was not over.

2   Apple petitioned for rehearing, and Class Counsel filed an extensive answer.  On May 13, 2020, the

3   Supreme Court summarily denied Apple's petition.  The next day, the Court advised the Ninth

4   Circuit by letter that its opinion was final.  U.S. Court of Appeals, Ninth Circuit, Case No. 15-17382,

5   Dkt. 71; Dtk. 434-5.

6          On September 2, 2020, the Ninth Circuit held that Apple's summary judgment motion should

7   have been denied and that plaintiffs' summary judgment motion should have been granted.  *Frlekin*

8   *v. Apple, Inc.*, 973 F.3d 947 (9th Cir. 2020).  On April 14, 2021, in accordance with the Ninth

9   Circuit's second opinion, this Court vacated the judgment in Apple's favor, denied Apple's summary

10  judgment motion, granted plaintiffs' motion on liability, and vacated the $34,859.12 costs award.

11  Dkt. 407.  Soon after the California Supreme Court decision, the parties agreed to participate in

12  mediation.  After lengthy and hard-fought negotiations, Apple agreed to pay $29.9 million to settle

13  the case (which, as discussed above, has been increased to approximately $30.5 million).

14         Additional significant hurdles remained if the case proceeded to trial.  On the issue of the

15  base amount of unpaid wages owed for the Check time, Apple repeatedly claimed that the amount

16  of time spent undergoing Checks was *de minimis* and that the time is therefore non-compensable

17  under California law.  Apple also repeatedly argued that the unpaid wages should be calculated using

18  the minimum wage rates in effect at the time of the Checks, rather than the contract rates.  These

19  arguments, if accepted, would significantly reduce, if not eliminate, the Class Members' claim for

20  base unpaid wages and interest.  The average minimum wage during the relevant period ($8.26) is

21  less than 40% of the estimated average contract rate ($20.89). Even assuming the Class Members

22  overcame these hurdles, the derivative claims for waiting time and wage statement penalties under

23  Labor Code sections 203 and 226(e), and for liquidated damages under Labor Code section 1194.2,

24  would be subject to even more potential defenses.  Throughout the litigation, Apple has contended

25  that waiting time and wage statement penalties both require proof that the employer's conduct was

26  "willful" and in order to recover these penalties, the Class Members must have suffered a separate

27  "injury" beyond their lost wages.  Apple made clear its intention to argue that it believed in "good

28

{N0486942.1}                              17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No. 13-cv-03451 WHA

faith" that the Check time was not compensable under California law, which, according to Apple, represented a complete defense to the Class Members' claims for waiting time and wage statement penalties, as well as liquidated damages.  Any or all of these defenses might have wholly eliminated Class Members' ability to recover these forms of relief, which represent the lion's share of their projected maximum potential damages.

Additionally, as the Court recognized in granting preliminary approval of the Settlement, despite Plaintiffs prevailing on liability, "this case remains reasonably complex" and would require "one or more damages trials" during which class members would be subject to cross-examination regarding the estimated bag checks they suffered.  Dkt. 431 at 7.  In light of these potential impediments to recovery, and in recognition of the significant victories obtained by Class Counsel in the litigation, including a determination that Apple is liable to Class Members for the time spent undergoing Checks, Class Counsel negotiated the Settlement, which provides immediate and substantial relief to the class.  Class Counsel and the Class Representatives have more than adequately represented the class.

**B.  <u>The Settlement Was Negotiated at Arms'-Length</u>**

The Settlement was reached only after the parties engaged in three full-day mediation sessions before two well-respected mediators.  Specifically, the Parties first engaged in a Settlement Conference before Magistrate Judge Joseph C. Spero on October 1, 2015 (Dkt. 312), followed by two full-day mediation sessions with Hon. Jay C. Gandhi (Ret.) of JAMS on October 20, 2020 and December 12, 2020, and a full-day mediation session with Hon. Edward A. Infante (Ret.) of JAMS on May 6, 2021.  In fact, the Settlement amount resulted from a mediator's proposal made by Judge Infante at the conclusion of the Parties' last mediation session.  As the Court aptly noted, "the proposal suggests serious, non-collusive negotiation." Dkt. 431 at p. 7. Indeed, that the Settlement was a result of extensive, supervised mediation efforts further supports a finding that the Settlement is the product of serious, informed, and non-collusive negotiations. *See In re LendingClub Securities Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (Alsup, J.).

C. **The Relief for the Class is Adequate**

The Settlement provides substantial relief for the class.  If approved, the $30.5 million Settlement will be the largest bag check settlement in California history and compares extremely favorably to other bag check/security check cases, both in terms of the total dollar value and the average amount of recovery per class member. *See Lao v. H&M Hennes & Morvitz, LP*, 16-cv-00333, Dkt. Nos. 163, 167 (N.D. Cal. 2016) ($3.8 million settlement approved on behalf of approximately 13,500 class members, representing 9.6% of total possible recovery and average $164.17 per class member); *Chavez v Converse Inc.*, 15-cv-3746, Dkt. Nos. 217, 219 (N.D. Cal. 2015) ($1.875 million settlement approved on behalf of approximately 1,500 class members, representing 7.6% of total possible recovery and average $363.63 per class member); *Greer v. Dick's Sporting Goods*, 15-cv-01063, Dkt. Nos. 81, 89 (C.D. Cal. 2015) ($2.9 million settlement approved on behalf of approximately 10,700 class members, with an average payment per class member of $155).

The Net Settlement Amount to be distributed to the Settlement Class Members is estimated at approximately $19,534,608.70, exclusive of the portion of the proposed PAGA allocation that would be distributed to PAGA Settlement Class Members.  Including that figure, the total net figure to be distributed to eligible class members is $19,648,871.05.  Moreover, Apple will pay approximately $798,000 to cover the employer's share of the payroll taxes owed on the wage portion of the settlement fund, bringing the grand total payment by Apple to over $31,250,000.  Settlement at § 3.6.2; Dkt. 416-1 ¶ 36 & n. 6.

Average *net* settlement payments are expected to be $1,328.06 each, which represents 161% of average estimated unpaid wages at contract wage rates assuming 5 minutes of unpaid Check time per day, which, as the Court noted, favors the Class Members. Dkt. 431 at p. 5.  When including pre-judgment interest, the average net settlement payments represent 91% of average estimated unpaid wages at contract wage rates.  Using the lower minimum wage rates, the average net settlement payments represent 409% of average estimated unpaid wages, and 230% of average estimated unpaid wages when including estimated pre-judgment interest. *See id.*

A Class Member who worked the average number of shifts during the class period (474.31 shifts) would be entitled to recover $825.65 in base unpaid wages at the average contract rate of $20.89, exclusive of liquidated damages, assuming one Check per shift with an average duration of 5 minutes.  With prejudgment simple interest at 10% per annum from February 1, 2014[10] through November 1, 2021, this Class Member would be entitled to $1,465.81 in base wages plus interest (which would be lower if the actual average contract rate of pay were used instead of the average *final* contract rate of pay).   Using average *minimum wage* rates, the average Class Member's projected base unpaid wages plus interest would drop to $576.81.  While the Class Members would also be entitled to seek penalties and liquidated damages, Apple's potential defenses to those remedies are stronger and more numerous than Apple's defenses to Class Member claims for base unpaid wages. *See, e.g.*, *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *5 (N.D. Cal. Mar. 7, 2019) (recognizing the serious risk that the class would not be entitled to wage statement penalties, stating that "there is a substantial risk of no recovery to any Plaintiff on the penalty claims, which are worth the vast majority of the full verdict value of the non-PAGA claims.").  Absent approval of the Settlement, the average Class Member could seek an estimated additional sum of $626.70 in waiting time penalties; $4,000 in wage statement penalties; and $324.90 in liquidated damages, for a total sum, inclusive of interest and payable at average hourly rates, of $6,417.41. Thus, the Settlement would afford approximately 20.7% of the average Class Member's *maximum* potential recovery.  *Id.*  As set forth in the Supplemental Declaration of Steve Platt dated June 24, 2022 ("Platt Supp. Dec."), 7,432 Settlement Class Members are expected to receive between $.01 and $999.99, while 7,126 Settlement Class Members are expected to receive between $1,000.00 and $4,999.99.  Platt Supp. Dec. ¶ 5.

The results achieved are exceptional and fully support approval of the Settlement.  *See, e.g.*, *Karl v. Zimmer Blomet Holdings, Inc.*, 2022 WL 658970, at *2 (N.D. Cal. Mar. 4, 2022) (Alsup, J.) (approving settlement representing 6.9% of defendant's total exposure); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1020-21 (E.D. Cal. 2019) (approving settlement where the class would

---

[10]    This date is approximately 460 shifts before December 2015, when Apple discontinued the Check policy, and represents an average starting point for interest.

recover 48% to 80% of estimate *gross* damages and 31% to 51% of estimated *net* damages); *In re Anthem, Inc. Data Breach Litigation*, 2018 WL 3960068, at *10 (N.D. Cal. Aug. 17, 2018) (approving settlement where the settlement fund represented 14.5% of the projected recovery that class members would be entitled to if they prevailed); *In re Critical Path, Inc.*, 2002 WL 32627559, at *5-6 (N.D. Cal. June 18, 2002) (Alsup, J.) (approving settlement representing 8.5% of estimated damages); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (finding a settlement amount of one-sixth of the potential recovery to be fair and reasonable).

In addition to the monetary recovery, Plaintiffs obtained a published, binding California Supreme Court opinion construing the "control" test for compensable "hours worked," and doing so broadly in favor of protecting the class. Apple discontinued its bag check policy in December 2015. Dkt. 368. Still, this opinion will preclude Apple from re-imposing an unpaid security search policy on any current or future retail store employees in California, functioning as a *de facto* injunction of such conduct and eliminating any purported "good faith" defense on Apple's part. Plaintiffs estimate that Apple's employees have either been paid or been spared over $4.7 million in average estimated unpaid search time as a result of the successful prosecution of this action. *See* Dkt. 434 at 16; *see also* Dkt. 416-1, ¶¶ 65-66 (explaining figures used to compute estimated average unpaid wages).

### D. <u>The Proposed Settlement Treats Class Members Equitably Relative to Each Other</u>

The Settlement treats each Class Member equitably relative to each other as each Settlement Class Member will receive payment calculated pro rata based on the number of shifts he or she worked at an Apple retail store in California during the Class Period (July 25, 2009 through December 31, 2015). *See* Settlement at § 1.16. Specifically, each Participating Class Member will receive, from the Net Settlement Amount, his or her Individual Class Payment, calculated on a *pro rata* basis based on the number of shifts each Participating Settlement Class Member worked at an Apple retail store in California during the Class Period, calculated by dividing a Participating Settlement Class Member's individual shifts worked by the total of all shifts worked by all Participating Settlement Class Members during the Class Period (including all original overcounted shifts), and multiplying this result by the Net Settlement Amount. *See id.* at §§ 1.16, 3.4.1.7. The

1   number of shifts worked by each Class Member for the purposes of calculating Individual Class

2   Payments is based on Apple's business records as reflected in its Employee List, and as subsequently

3   corrected for undercounted shifts.  *Id.* at §§ 1.16, 3.4.1.7.  This is consistent with judicially approved

4   individual settlement class member payments in other bag check and security check class

5   settlements.  *See, e.g.*, *Lao v. H&M Hennes & Morvitz*, LP, 16-cv-00333, Dkt. Nos. 158, 167 (N.D.

6   Cal. 2016) ; *Greer v. Dick's Sporting Goods*, 15-cv-01063, Dkt. Nos. 73, 89 (C.D. Cal. 2015) ; *Tellez*

7   *v. Ulta Salon, Cosmetics & Fragrance Inc.*, 18-cv-02480, Dkt. Nos. 32, 41 (S.D. Cal. 2018); *Mejia*

8   *v. Walgreen Co.*, 19-cv-00218, Dkt. Nos. 21, 30 (E.D. Cal. 2019); *Chavez v. Converse Inc.*, 15-

9   cv3746, Dkt. Nos. 210, 219 (N.D. Cal. 2015).

10   In addition, PAGA Settlement Class Members will also receive a share of the $114,262.35

11   PAGA allocation (25% of the total PAGA allocation), calculated pro rata based on the number of

12   pay periods they worked during the PAGA Period (July 25, 2012 through December 31, 2015), as

13   reflected in Apple's business records.  Settlement at §§ 1.32, 3.4.1.6.2.

14   Within ten calendar days following the date by which the Settlement is finally approved and

15   the Court's final approval order and the Judgment become binding and no longer subject to appeal

16   (*i.e.*, the Effective Date), Apple shall fund the Settlement by transferring $30.5 million to Angeion,

17   along with Apple's share of payroll taxes on the wage component of the Individual Class Payments

18   (valued at $798,000).  *See id.* at § 3.6.2.  The Settlement Class Members' shares of the Net Settlement

19   Amount and the LWDA's share of the PAGA allocation will then be distributed by check within

20   thirty calendar days of the Effective Date.  *See id.* at §§ 3.6.6-3.6.8.  The Settlement Class Members

21   will have 180 days after mailing to cash their checks (*id.* at § 3.6.8), with reminder notices to be sent

22   90 days after the mailing date to any Settlement Class Members who have not cashed their checks

23   (*id.* at § 3.6.9).

24   **E.   The Reaction of the Class Favors Approval**

25   In evaluating the fairness, reasonableness, and adequacy of a settlement, courts also consider

26   the reaction of the class.  *See Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993);

27   *Reyes v. Bakery and Confectionery Union and Industry International Pension Fund*, 281 F. Supp.

28

3d 833, 848 (N.D. Cal. 2017) ("class members' positive reaction to a settlement weighs in favor of settlement approval"); *Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (the reaction of the class to the proposed settlement "presents the most compelling argument favoring settlement."). Indeed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Reyes*, 281 F. Supp. 3d at 848) (internal quotations omitted); *see also Hanlon*, 150 F.3d at 1027 ("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Here, the reaction of the class favors approval. The Settlement Notice advised the class of the terms of the Settlement, the plan of allocation, and counsels' request for an award of attorneys' fees and expenses, as well as the procedure and deadline for filing objections (and for New Class Members, opting out of the class). *See* Dkt. 416-2. 13,884 Notice Packages were mailed to Class Members. *See* Platt Dec. ¶ 20. As of the date of this filing, not a single Class Member has filed an objection to the Settlement, the plan of allocation, counsels' request for an award of attorneys' fees and expenses, and service awards to the class representatives and named plaintiff Amanda Frlekin. Moreover, of the 799 New Class Members, only 5 opted-out (*i.e.*, less than 1%). *See* Platt Dec., ¶ 33. Accordingly, this factor weighs in favor of final approval of the Settlement.

## V.  NOTICE TO THE CLASS WAS ADEQUATE

Notice of a class action settlement "must be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Blair¸*2020 WL 408970 at *2 (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'" *Luna v. Marvell Tech Grp.*, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (Alsup, J.) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is reasonably

1   calculated to apprise interested parties of the pendency of the action and afford them an opportunity

2   to present their objections.  *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 452 (E.D.

3   Cal. 2013).

4          The Court previously approved the parties' Notices in connection with the parties' motion

5   for preliminary approval.  Specifically, the parties distributed a Notice of Settlement for Existing

6   Class Members who are PAGA Class Members who worked shifts during the Class Period (Dkt.

7   444-1, Ex. A); a Notice of Settlement for Existing Class Members who are PAGA Class Members

8   who worked no shifts during the Class Period[11] (Dkt. 444-1, Ex. B); a Notice of Settlement for

9   Existing Class Members who are not PAGA Settlement Class Members and who worked shifts

10  during the Class Period (Dkt. 444-1, Ex. C); a Notice of Settlement for Existing Class Members who

11  are not PAGA Class Members and who worked no shifts during the Class Period (Dkt. 444-1, Ex.

12  D); a Notice of Settlement for New Class Members who worked shifts during the Class Period (Dkt.

13  444-1, Ex. E); and a Notice of Settlement for New Class Members who worked no shifts during the

14  class period (Dkt. 444-1, Ex. F) (collectively, the "Notices").  The Notices advise class members of

15  the essential terms of the Settlement, sets forth the procedure and deadline for submitting objections

16  (and, for New Class Members, to request exclusion), identifies contacts for additional information,

17  and provides specifics regarding the date, time, and place of the final fairness hearing.  The Notices

18  also include: (1) the estimated amount of the Settlement the class member can expect to receive; (2)

19  a statement indicating that Plaintiffs' counsel intend to make an application for attorneys' fees and

20  costs, and the maximum amount of attorneys' fees they will seek; (3) the name, telephone number,

21  and address of Class Counsel who will be reasonably available to answer questions from class

22  members; (4) a brief statement explaining the reasons why the parties are proposing the Settlement;

23  (5) the plan of allocation; and (6) a website dedicated to the Settlement

24  (www.applebagchecksettlement.com) with information and links to pertinent documents.  The

25  content of the Notice is sufficient to satisfy Rule 23(c)(2)(B).  *See Churchill Vill., LLC v. Gen. Elec.,*

26  361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the

27
28  [11]    Some Settlement Class Members were employed by Apple during the Class Period, but worked no shifts during that Period because, for example, they were on vacation or on leave.

{N0486942.1}                          24

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting *Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).   In addition, pursuant to the Court's instructions in the Preliminary Approval Order (Dkt. 431 at 6), Angeion prepared an Opt-Out Form to accompany the Notices to the New Class Members.  Platt Supp. Dec, at ¶ 4 & Exs. B & C.

As required by the Settlement, Apple provided Angeion with an "Employee List" within 15 days of the Preliminary Approval Order, which included shift data for the Settlement Class Members during the class period, and last known contact information for the Settlement Class Members.  *See* Platt Dec. at ¶ 4.   Upon the receipt of the Employee List, Angeion prepared the individual class notices including shifts worked and estimated payment from the Settlement, and conducted a national change of address search and a skip trace for the most recent mailing addresses of all former employee Settlement Class Members.  *Id.* at ¶ 19.  On January 11, 2022, Angeion caused the tailored Existing Class Member Notice of Settlement to be mailed to all 13,884 Existing Class Member addresses included on the Employee List, via USPS first-class mail, postage prepaid.  *Id.* at ¶ 20. Pursuant to the Preliminary Approval Order, the exterior of the envelope for mailing the Existing Class Member Notice of Settlement stated "Important Class Action Notice" and that it was "From the United States District Court, Northern District of California, Honorable William Alsup, 450 Golden Gate Avenue, San Francisco, CA 94102" with the return address directing service to Class Counsel.  *Id.*

Also on January 11, 2022, Angeion also caused the New Class Member Notice of Settlement and Opt Out Form to be mailed to all 799 New Class Member addresses included on the Employee List, via USPS first-class mail, postage prepaid.  *Id.* at ¶ 21.  Pursuant to the Preliminary Approval Order, the exterior of the envelope for mailing the Existing Class Member Notice of Settlement stated "Important Class Action Notice" and that it is "From the United States District Court, Northern District of California, Honorable William Alsup, 450 Golden Gate Avenue, San Francisco, CA 94102" with the return address directing service to Class Counsel.  *Id.*

Also on January 11, 2022, Class Counsel and Apple complied with the Court's Preliminary

1    Approval Order (Dkt. 431 at 8:12-13) by causing notice of the settlement to be posted to their

2    respective websites.  Dkt. 443 ¶ 2; Dkt. 444 ¶ 2; Dkt. 445 ¶ 2.

3          As of June 5, 2022, the USPS has returned 593 of the Existing and New Class Member

4    Notices ("Notices") initially mailed as undeliverable.  *Id.* at ¶ 22.  Notices returned as undeliverable

5    by the USPS without a forwarding address were processed through address verification searches and

6    re-mailed to the updated addresses located through this process.  *Id.*  Notices returned as

7    undeliverable by the USPS with a forwarding address were re-mailed to the forwarding address

8    identified by the USPS.  *Id.*  As a result of the above-described efforts, a total of 248 Notices have

9    been re-mailed.  *Id.* Of the 14,683 Notices mailed, 14,338 were successfully delivered, and only 345

10   were not successfully delivered (*i.e.*, over 96% were successfully delivered).  *Id.* at ¶ 23.

11         Prior to distributing notice via email, Angeion performed an extensive analysis of the class

12   data records that contain an email address.  *Id.* at ¶ 9.  The email addresses were subjected to an

13   email cleansing and an email validation process whereby each email address was verified by

14   contacting the Internet Service Provider to determine if the email address exists.  *Id.* at ¶.    On

15   January 11, 2022, Angeion caused the distribution of the Notice via email to the valid email

16   addresses included on the Employee List for the Settlement Class Members.  *Id.* at ¶¶ 14-15.    On

17   January 18, 2022, Angeion re-transmitted email notice to the Settlement Class Members.  *Id.* at ¶¶

18   16-17.  Of the 6,432 New and Existing Class Member valid email addresses contained in the Class

19   Member List, 6,356 (98.8%) were successfully delivered.  *Id.* at ¶ 18.

20         This is well-within the parameters in this Circuit.  *See, e.g. Il Fornaio (America) Corporation*

21   *v. Lazzari Fuel Company, LLC*, 2015 WL 2406966, at *1-2 (N.D. Cal. May 20, 2015) (Alsup, J.)

22   (approving notice where approximately 13% of the notices were undeliverable).  Accordingly, notice

23   to the class was adequate.

24   **VI.    CONCLUSION**

25         Based on the foregoing, Plaintiffs respectfully request that the Court finally approve the

26   Settlement, enter a final approval order in the form attached to the Settlement as Exhibit D, enter

27   judgment substantially in the form attached to the Settlement as Exhibit E, together with such other

28

1   and further relief as the Court deems just and proper.

2

3   Dated: June 24, 2022                  Respectfully submitted,

4

5                                    By:   */s/ Lee S. Shalov*
                                          Lee S. Shalov

6                                         Brett R. Gallaway
                                          Jason S. Giaimo

7                                         McLaughlin & Stern, LLP
                                          260 Madison Avenue

8                                         New York, NY 10016
                                          Tel: (212) 448-1100

9                                         lshalov@mclaughlinstern.com

10                                        bgallaway@mclaughlinstern.com
                                          jgiaimo@mclaughlinstern.com

11
                                          */s/ Kimberly A. Kralowec*
12                                        Kimberly A. Kralowec

13                                        Kathleen Styles Rogers
                                          Kralowec Law, P.C.

14                                        3132A 24th Street
                                          San Francisco, CA 94110

15                                        Tel: (415) 546-6800
                                          kkralowec@kraloweclaw.com

16                                        krogers@kraloweclaw.com

17                                        *Class Counsel*

18

19

20

21

22

23

24

25

26

27

28